Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Proposed Lead Counsel and Counsel for Movant, José Luis Villasenin*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/DEFINANCE TECHNOLOGIES OY, GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS, and DO KWON,<br><br>Defendants. | Case No. 5:22-cv-03600-BLF<br><br>**JOSÉ LUIS VILLASENIN'S NOTICE OF MOTION AND MOTION TO APPOINT HIM AS LEAD PLAINTIFF AND TO APPROVE HIS SELECTION OF LEAD COUNSEL**<br><br>**CLASS ACTION**<br><br>Judge:    Hon. Beth Labson Freeman<br>Date:     Thursday, November 17, 2022<br>Time:    9:00 AM<br>Courtroom: Courtroom 3, 5TH Floor |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 17, 2022 at 9:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, California 95113, José Luis Villasenin will and hereby does move for an order: (i) appointing him as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (ii) approving his selection of Kahn Swick & Foti, LLC as Lead Counsel for the putative class. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the attached declaration and exhibits, the pleadings on file in this action, oral argument, and such other matters as the Court may consider in hearing this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Mr. Villasenin should be appointed as Lead Plaintiff pursuant to the PSLRA. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002); § IV.B, *infra*.

2. Whether the Court should approve Mr. Villasenin's selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel. *See generally In re Cohen*, 586 F.3d 703 (9th Cir. 2009); § V, *infra*.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Mr. Villasenin respectfully submits this memorandum of law in support of his motion to: (i) appoint him as lead plaintiff in the above-referenced action pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), as amended by the PSLRA, 15 U.S.C. § 78u-4, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, Sections 5, 12(a)(1) and 15 of the Securities Exchange Act of 1933 (the "Securities Act), 15 U.S.C. §§ 77e, 77l(a)(1), and 77o, respectively, as amended by the PSLRA, 15 U.S.C. § 77z-1; and (ii) approve his selection of KSF as Lead Counsel for the putative class. *See In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).

As described in the Certification and Loss Chart attached to the Declaration of Ramzi Abadou in Support of Mr. Villasenin's Motion to Appoint Him as Lead Plaintiff and to Approve His Selection

of Lead Counsel ("Abadou Decl.") (Exhibits A & B), Mr. Villasenin suffered losses of approximately $192,000 from his purchases of LUNA cryptocurrency tokens between May 20, 2021 and May 25, 2022, inclusive ("Class Period"). To the best of his knowledge, this loss represents the largest financial interest of any investor seeking to be appointed lead plaintiff. In addition, Mr. Villasenin's Certification and Declaration demonstrate his awareness of the fiduciary duties associated with serving as a lead plaintiff. *See* Abadou Decl., Ex's. A & C. Hence, Mr. Villasenin also satisfies the applicable typicality and adequacy requirements of Rule 23. Accordingly, he seeks an order: (i) appointing him as Lead Plaintiff in this action pursuant to Sections 10(b) of the Exchange Act and Sections 5, 12(a)(1) and 15 of the Securities Act; and (ii) approving his selection of KSF as Lead Counsel for the putative class.

## II. PROCEDURAL BACKGROUND

On June 17, 2022, Nick Patterson filed the Complaint in the above-captioned action against eleven different Defendants, including: (i) Terraform Labs, PTE. LTD.; (ii) Jump Crypto; (iii) Jump Trading LLC; (iv) Republic Capital; (v) Republic Maximal LLC; (vi) Tribe Capital; (vii) DeFinance Capital/DeFinance Technologies Oy; (viii) GSR/GSR Markets Limited; (ix) Three Arrows Capital PTE. LTD.; (x) Nicholas Platias; and (xi) Do Kwon. *See* ¶¶ 8-21.[1] The Complaint brings claims on behalf of investors who purchased various Terra Tokens during the Class Period including, *inter alia*, LUNA. ¶¶ 1, 45-53.

Notice of this action was published on June 20, 2022 through *BusinessWire,* a widely circulated national business-oriented wire service, triggering the sixty-day window for putative class members to seek appointment as lead plaintiff. *See* Abadou Decl., Ex. D; *see also* 15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i); *Yen Hoang v. Contextlogic, Inc.*, 2022 U.S. Dist. LEXIS 88146, at *10-

---

[1] "¶" or "¶¶" refer to the corresponding paragraphs in the Class Action Complaint for Violations of the Federal Securities Laws (*see* ECF No. 1, "Complaint"). All capitalized terms have the same definitions as in the Complaint, unless otherwise stated. For any quoted materials, all emphasis has been added and internal citations omitted unless otherwise indicated.

NOTICE OF AND MOTION TO APPOINT LEAD PLAINTIFF AND APPROVE SELECTION OF LEAD COUNSEL     2     CASE NO. 5:22-CV-03600-BLF

11 (N.D. Cal. 2022) ("A notice was published in *Business Wire* [. . .] contain[ing] all required information [. . .] the Court finds that the PSLRA's notice requirement was satisfied.") (Freeman, J.).

### III. STATEMENT OF FACTS

This putative class action brings seven causes of action against Defendants, alleging: (i) violations of Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder; (ii) violations of Sections 5 and 12(a)(1) of the Securities Act; (iii) violations of Section 15 of the Securities Act of 1933; (iv) California common law claims for aiding and abetting; (v) common law conspiracy claims; (vi) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*; and (vii) unjust enrichment/restitution claims. ¶¶ 169-262. These claims are brought on behalf of a putative class of investors who purchased Terra Tokens between May 20, 2021 and May 25, 2022, inclusive (the "Class Period") and were damaged thereby (the "Class"). ¶ 1.

TerraForm Labs (the "Company" or "TFL") operates the Terra blockchain and its related protocol which hosts, supports, and funds a community of decentralized financial applications and products collectively dubbed the "Terra ecosystem." ¶ 2. Within the Terra ecosystem, TFL develops, hosts, and markets a suite of digital assets and financial products called "Terra Tokens." *Id.* Tokens are contractually-based financial products, created and permanently uploaded to a given blockchain. *Id*. at n.2. Investors who purchase them expect that buying, selling, or exchanging these tokens will function according to the terms of the original contract and similar to other tokens on the same blockchain. *Id*. The Terra Tokens include, *inter alia*, native and governance tokens, so-called "stablecoins," "mirrored assets," bonded assets, liquidity pool tokens, and other protocols geared toward supporting and facilitating their sales. ¶ 2. At their highest peak, the various Terra Tokens were worth tens of billions of dollars in total market capitalization. *Id*. However, despite bearing all the hallmarks of an investment contract and meeting the definition of a security under the *Howey* test, none of the Terra Tokens were registered as such with the SEC. ¶¶ 3-4, 61-79.

In addition to selling unregistered securities throughout the Class Period, Defendants also made several false and misleading statements regarding their largest Terra ecosystem digital assets—UST

and LUNA—to induce investors into purchasing these tokens at inflated prices. ¶ 4. For example, as part of a promotional campaign TFL repeatedly touted UST's stability as an "algorithmic" stablecoin paired to LUNA and the sustainability of its Anchor Protocol—a type of high-yield savings account whereby investors could "stake" (*i.e.*, a locked-up deposit made in exchange for rewards) their UST tokens with TFL in exchange for a guaranteed 20% APY interest rate. ¶¶ 5, 55. TFL, in turn, would lend out the staked UST to interested borrowers. ¶ 55. In return, TFL would receive interest payments and use of the borrowers' collateral. *Id*. Co-founders of a rival stablecoin called Maker DAO, however, derided UST as a "ponzi" and predicted on December 30, 2021 that "UST will collapse in a death spiral with LUNA hyper-inflating to try to cover the peg[,]" prompting dismissive retorts from Defendant Do Kwon. ¶ 36. Subsequently, when the head of research at Arcane Crypto tweeted his opinion that UST was not sustainable, Defendant Kwon made similar put downs and insults. ¶ 119.

Cryptocurrency markets are incredibly volatile, sometimes with intraday price swings of 10% occurring within a matter of hours. ¶ 46. Certain currencies called "stablecoins" attempt to solve this problem by attempting to tie (or "peg") their market values to an external collateral with greater stability, such as U.S. dollars, gold, or another financial instrument. *Id*. On or around January 19, 2022, TFL attempted to do so here by announcing it had formed the "Luna Foundation Guard" (a group of six venture capital firms), which promised to support and fund the Terra ecosystem and "defend the peg" in the event that high volatility caused the UST/LUNA pairing to become untethered. ¶¶ 1, 5, 38-42. The announcement specifically downplayed the "misconception" that algorithmic stablecoins were "unsustainable." ¶ 39. The Luna Foundation Guard was originally funded with a 50 million LUNA gift from TFL, followed by a $1 billion private token sale for "use in establishing a UST Forex Reserve denominated in Bitcoin" to serve as collateral for the TFL stablecoins. ¶¶ 43-44. Other rounds of funding would follow. ¶ 44.

Members of the Luna Foundation Guard included Defendants Jump Crypto, Jump Trading LLC, Republic Capital, Republic Maximal LLC, Tribe Capital, DeFinance Capital/DeFinance Technologies Oy, GSR/GSR Markets Limited, and Three Arrows Capital Pte. Ltd. ¶ 1. These entities acted on behalf of TFL to promote the stability of UST, and misled investors into believing that Luna

Foundation Guard: (i) had established a reserve pool that would be adequate to defend the peg against a "run on the bank" by UST/LUNA investors; and (ii) would be able to maintain interest payments from the Anchor Protocol through a well-capitalized "Anchor Yield Reserve" fund. ¶¶ 5, 38-42. Investors, buoyed by the promise of a purportedly "stable" digital asset in UST which would provide outsized returns, deposited some $14 billion of UST's market capitalization (approximately 75% of same) into Anchor at its peak. ¶ 6.

But by May 2022, the size of deposits in Anchor and related interest payments owed to investors grew too great for the Terra ecosystem to bear, prompting a massive selloff of both UST and LUNA. ¶¶ 7, 125. On the revelation that TFL's largest digital assets were unstable and unsustainable, prices of UST and LUNA dropped by 91% and 99.7%, respectively, between May 7, 2022 and May 12, 2022. ¶¶ 7, 126-29. UST fell from $1.00 to just $0.07 by May 25, 2022. ¶ 129. Later, in a so called "post-mortem analysis," Luna Foundation Guard Governing Council Member Remi Tetot admitted that the 20% APY was unsustainable, and that Defendants had known as much all along. ¶ 130.

## IV.     MR. VILLASENIN SHOULD BE APPOINTED AS LEAD PLAINTIFF

### A.     The Requirements of the PSLRA Are Satisfied Here

Notice was published on June 20, 2022 through *BusinessWire*. *See* Abadou Decl., Ex. D. The notice satisfies the statutory language of the PSLRA (15 U.S.C. § 77z-1(a)(3)(A); 15 U.S.C. § 78u-4(a)(3)(A)) by announcing the pendency of the action, the claims asserted, the proposed Class Period, and advising of the date to seek appointment as lead plaintiff. *Abadilla v. Precigen, Inc.*, 2021 U.S. Dist. LEXIS 68718, at *12 (N.D. Cal. 2021) (Freeman, J.), *Hurst v. Enphase Energy*, 2020 U.S. Dist. LEXIS 223696, at *6 (N.D. Cal. 2020) (Freeman, J.).

The PSLRA further provides that the Court shall appoint as lead plaintiff the investor that the Court determines to be most capable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also* 15 U.S.C. § 77z-1(a)(3)(B)(i).

To select the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—

(aa) has either filed the complaint or made a motion in response to a notice…

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii) (same).

Only by a showing of proof that a lead plaintiff will not fairly and adequately represent the Class or is subject to unique defenses that will render such plaintiff incapable of adequately representing the putative class, can this presumption be overcome. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

### B. Mr. Villasenin is the "Most Adequate Plaintiff"

#### 1. Mr. Villasenin's Motion is Timely and Complies with the PSLRA

The lead plaintiff selection process begins when the first plaintiff files an action and publicizes its pendency, thereby commencing the sixty-day window to seek appointment as lead plaintiff. *See Guohua Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010). Because notice was published on June 20, 2022 (*see* § IV.A, *supra*), Mr. Villasenin has satisfied that requirement here by timely seeking appointment. *See id.* As set forth below, Mr. Villasenin also has a substantial financial interest in this litigation arising from his Class Period transactions in LUNA tokens. *See* Abadou Decl., Ex. B. He has also demonstrated his willingness to represent the Class, as demonstrated by his Certification, which details his transactions during the Class Period, as well as a Declaration establishing his understanding of a lead plaintiff's fiduciary duties to the Class. *See* Abadou Decl., Ex's. A & C, respectively. Additionally, Mr. Villasenin has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. *See* Abadou Decl., Ex. E (KSF firm résumé).

#### 2. Mr. Villasenin Has the "Largest Financial Interest" in the Relief Sought by the Class

"As long as the plaintiff with the largest losses satisfies the typicality and adequacy

requirements, he or she is entitled to lead plaintiff status." *GGCC, L.L.C. v. Dynamic Ledger Sols., Inc.*, 2018 U.S. Dist. LEXIS 43728, at *12 (N.D. Cal. 2018). Here, Mr. Villasenin: (i) purchased 2,532.28 LUNA tokens; (ii) retained the entirety of his holdings at the end of the Class Period; (iii) expended a net sum of $191,991; and (vi) suffered a loss of approximately $191,991 from his purchases of LUNA during the Class Period. *See* Abadou Decl., Ex. B; *Contextlogic*, 2022 U.S. Dist. LEXIS 88146, at *11-12 (discussing four-factor *Lax-Olsten* test generally used to determine which movant has the "largest financial interest"); *see also Veal v. LendingClub Corp.*, 2018 U.S. Dist. LEXIS 190912, at *9 (N.D. Cal. 2018) (Freeman, J.) (same).

### 3. Mr. Villasenin Satisfies the Requirements of Rule 23

A proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of a proposed lead plaintiff. *See Kim v. Advanced Micro Devices, Inc.*, 2018 U.S. Dist. LEXIS 98172, at *5 (N.D. Cal. 2018) ("When ruling on a motion for appointment as lead plaintiff, the main focus is on the typicality and adequacy requirements of Rule 23."). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Cavanaugh*, 306 F.3d at 732.

#### a. Mr. Villasenin's Claims Are Typical

Typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) is satisfied, as here, when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class members, and when the claims are based on the same legal theory. *See Gudimetla v. Ambow Educ. Holding Ltd.*, 2012 U.S. Dist. LEXIS 195807, at *9 (C.D. Cal. 2012); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017).

Here, Mr. Villasenin's claims are typical. Mr. Villasenin purchased the unregistered Terra

Tokens (LUNA) during the Class Period at artificially inflated values due to Defendants' alleged misrepresentations. *See* Abadou Decl., Ex. A. Both Mr. Villasenin and the putative class suffered damages due to their purchases of Terra Tokens during the Class Period. Accordingly, Mr. Villasenin's claims arise from the same conduct from which the other Class members' claims and injuries arise. *See Gudimetla,* 2012 U.S. Dist. LEXIS 195807, at *9.

### b. Mr. Villasenin Will Adequately Represent the Class

A representative party must also "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The PSLRA directs a court to limit its inquiry regarding adequacy to whether: (1) there are any conflicts between his interests and the members of the Class; (2) a Class member's interests are aligned with those of other members of the Class; and (3) there is evidence of any antagonism between their respective interests. *See Ziolkowski v. Netflix, Inc.*, 2017 U.S. Dist. LEXIS 91848, at *9-10 (N.D. Cal. 2017). Here, Mr. Villasenin's interests are clearly aligned with the members of the putative class because his claims are substantially identical to theirs. *See* ¶¶ 1-7, 155-262; *Deinnocentis v. Dropbox, Inc.*, 2020 U.S. Dist. LEXIS 8680, at *11-12 (N.D. Cal. 2020) (Freeman, J.). Mr. Villasenin also has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the financial interest he suffered due to Defendants' alleged misconduct. *See* Abadou Decl., Ex. B.

In addition, Mr. Villasenin—an accredited manager of an electrical company, who invests in the capital markets for his own portfolio—has demonstrated his understanding of a lead plaintiff's role in controlling the litigation, supervising counsel, and the fiduciary duties he owes to the Class. Abadou Decl., Ex. C at ¶¶ 2-6. Further, as set forth below, Mr. Villasenin has selected and retained a law firm highly experienced in successfully prosecuting securities class actions and complex litigation as his proposed lead counsel. *Id.* at ¶¶ 4-6; *see also* Abadou Decl., Ex. E.

## V. THE COURT SHOULD APPROVE MR. VILLASENIN'S SELECTION OF COUNSEL

The PSLRA vests authority in the appointed Lead Plaintiff to select and retain counsel to represent the putative class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15

U.S.C. § 77z–1(a)(3)(B)(v) (same); *see also Cohen*, 586 F.3d at 711-12; *Cavanaugh*, 306 F.3d at 734. Mr. Villasenin has selected KSF to serve as Lead Counsel for the putative class, a firm with substantial expertise in the prosecution of securities class actions in federal and state courts across the country. *See* Abadou Decl., Ex's. C & E.

Courts throughout the country have found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See, e.g., Ziolkowski*, 2017 U.S. Dist. LEXIS 91848, at *11 (appointing KSF, noting its "extensive experience as lead counsel in securities class actions"); *Moradpour v. Velodyne Lidar, Inc.*, 2021 U.S. Dist. LEXIS 124472, at *8-9 (N.D. Cal. 2021) (appointing KSF as lead counsel); *Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 109608, at *42-43 (M.D. Tenn. 2017) (after approving KSF as lead counsel, appointing KSF as class counsel pursuant to FED. R. CIV. P. 23(g)); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 U.S. Dist. LEXIS 49786, at *29 (S.D.N.Y. 2020) (same); *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal. 2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case.").

KSF also prevailed on behalf of the court appointed lead plaintiff in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom.* 139 S. Ct. 2615 (2019), which significantly altered the federal securities laws (and civil pleading practice generally) in this Circuit. *See* Abadou Decl., Ex. E. In the court's order granting final approval in *Khoja*, Judge Sammartino highlighted KSF's "extensive experience prosecuting complex securities class actions[,]" and stated that "settlement may not have been reached without Lead Counsel's skill and expertise." *Khoja v. Orexigen Therapeutics*, 2021 U.S. Dist. LEXIS 230105, at *21 (S.D. Cal. 2021). KSF also served as counsel to the lead plaintiff in the *Halliburton* securities litigation matter, where lead plaintiff twice prevailed before the United States Supreme Court and ultimately obtained a $100 million recovery for the class. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179 (2011). The firm's experience and successes should assure the Court that in granting this motion, the Class will receive legal representation of the

highest caliber from KSF. *In re Health Ins. Innovations Secs. Litig.*, 2021 U.S. Dist. LEXIS 61051, at *34 (M.D. Fla. 2021) (noting KSF "practices extensively in complex federal civil litigation, particularly securities class actions, and has successfully litigated these types of actions in courts throughout the country.").

## VI. CONCLUSION

For the foregoing reasons, Mr. Villasenin respectfully requests that the Court: (i) appoint him as Lead Plaintiff; and (ii) approve his selection of KSF as Lead Counsel for the Class.

Dated: August 19, 2022

Respectfully submitted,

**KAHN SWICK & FOTI, LLP**

By: *s/ Ramzi Abadou*
Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(to be admitted *pro hac vice*)
Alexander L. Burns
(to be admitted *pro hac vice*)
Morgan M. Embleton
(to be admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
morgan.embleton@ksfcounsel.com

*Proposed Lead Counsel and Counsel for Movant, José Luis Villasenin*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper *via* the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

          *s/ Ramzi Abadou*
          RAMZI ABADOU

# Mailing Information for a Case 5:22-cv-03600-BLF Patterson v. TerraForm Labs Pte Ltd. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **John T. Jasnoch**
  jjasnoch@scott-scott.com,scott-scott@ecf.courtdrive.com,scaesar@scott-scott.com,edewan@scott-scott.com

- **Sean T. Masson**
  smasson@scott-scott.com

- **Colby Brian Springer**
  cspringer@polsinelli.com,sfdocketing@polsinelli.com,sildocketing@polsinelli.com,catherine-schmitz-7536@ecf.pacerpro.com,caschmitz@polsinelli.com

- **Daniel Amon Zaheer**
  daniel.zaheer@kobrekim.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`