John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

[Additional Counsel on Signature Page.]

*Attorneys for Lead Plaintiff Movant Nick Patterson*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/ DEFINANCE TECHNOLOGIES OY, GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS, and DO KWON,<br><br>Defendants. | Case No. 5:22-cv-03600<br><br>**NOTICE OF MOTION AND MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:           December 15, 2022<br>Time:          9:00 a.m.<br>Courtroom.:  Courtroom 3, 5th Floor<br>Judge:         Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................2

    I.     INTRODUCTION ..........................................................................................2

    II.    FACTUAL BACKGROUND........................................................................3

    III.   ARGUMENT ..................................................................................................5

          A.    Patterson Should Be Appointed Lead Plaintiff.............................................5

               1.    Patterson's Motion Is Timely............................................................5

               2.    Patterson Has the Largest Financial Stake in the Relief Sought by the Class..........................................................................5

               3.    Patterson Is Otherwise Qualified Under Rule 23.............................7

          B.    The Court Should Approve Patterson's Choice of Counsel ........................9

          C.    Scott+Scott Should Be Appointed as Lead Counsel over the Non-Securities Claims .......................................................................................10

    IV.   CONCLUSION.............................................................................................12

i

NOTICE OF MOTION & MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL; MEMO. IN SUPPORT THEREOF – CASE NO. 5:22-cv-03600

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
    586 F.3d 703 (9th Cir. 2009) ...................................................................................................9

*Combs, et. al., v. Safemoon, LLC*,
    No. 2:22-cv-01108-SVW-MRW (C.D. Cal) (ECF No. 52).......................................................11

*Cornwell v. Credit Suisse Grp.*,
    No. 08-cv-03758, 2011 WL 13263367 (S.D.N.Y. July 20, 2011)............................................9

*Feyko v. Yuhe Int'l Inc.*,
    No. CV 11-05511, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) ................................................6

*In re AT&T Mobility Wireless Data Servs. Tax Litig.*,
    MDL No. 2147, ECF No. 47 (N.D. Ill. June 23, 2010) ...........................................................11

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...........................................................................................2, 6, 9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).......................................................................................................9

*In re Facebook, Inc., IPO Sec. and Deriv. Litig.*,
    288 F.R.D. 26 (S.D.N.Y. 2012) ...............................................................................................11

*In re Interest Rate Swaps Antitrust Litig.*,
    No. 16-MD-2704, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016).............................................11

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..........................................................................................6

*In re Terazosin Hydrochloride*,
    220 F.R.D. 672 (S.D. Fla. 2004)..............................................................................................11

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................................................6

*Lax v. First Merchs. Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)......................................................6

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
    No. 13-CV-05368, 2014 WL 2604991 (N.D. Cal. June 10, 2014) ...........................................5

*Richardson v. TVIA, Inc.*,
    No. C 06 06304, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)................................................6

ii

NOTICE OF MOTION & MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF &
APPROVAL OF LEAD COUNSEL; MEMO. IN SUPPORT THEREOF – CASE NO. 5:22-cv-03600

*Russo v. Finisair Corp.*,
    No. 5:CV11-01252, 2011 WL 5117560 (N.D. Cal. Oct. 27, 2011)..........................................8

*Westley v. Oclaro, Inc.*,
    No. C-11-2448, 2011 WL 4079178 (N.D. Cal. Sept. 12, 2011) ..........................................7, 8

**Statutes, Rules, and Regulations**

15 U.S.C.
    §77z-1(a)(3)(A)(i) .................................................................................................................5
    §77z-1(a)(3)(A)(i)(II).............................................................................................................5
    §77z-1(a)(3)(A)-(B) ..............................................................................................................5
    §77z-1(a)(3)(B) ..................................................................................................................2, 7
    §77z-1(a)(3)(B)(i) ..................................................................................................................6
    §77z-1(a)(3)(B)(iii) ................................................................................................................2
    §77z-1(a)(3)(B)(iii)(I)(bb) .....................................................................................................6
    §77z-1(a)(3)(B)(iii)(I)(cc)......................................................................................................7
    §77z-1(a)(3)(B)(iii)(II)(aa) ....................................................................................................9
    §77z-1(a)(3)(B)(v) .............................................................................................................2, 9
    §78u-4(a)(3)(B)......................................................................................................................1
    §78u-4(a)(3)(B)(v) .................................................................................................................2

Securities Act of 1933
    §5............................................................................................................................................3
    §12(a)(1) ................................................................................................................................3
    §15..........................................................................................................................................3

Securities Exchange Act of 1934
    §10(b) .....................................................................................................................................3

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................................ *passim*
    Rule 23(a)...............................................................................................................................7
    Rule 23(a)(3)..........................................................................................................................8
    Rule 23(g)(1)(A) ..................................................................................................................11

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION
    §10.221................................................................................................................................10
    §10.224................................................................................................................................11

NEWBERG ON CLASS ACTIONS (4th ed. 2008)
    §3:13 ......................................................................................................................................8

iii

NOTICE OF MOTION & MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL; MEMO. IN SUPPORT THEREOF – CASE NO. 5:22-cv-03600

# NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that Lead Plaintiff movant Nick Patterson ("Patterson" or "Movant"), by and through his undersigned counsel, hereby moves this Court before the Honorable Beth Labson Freeman in Courtroom 3, 5th Floor, of the U.S. District Court for the Northern District of California, San Jose Courthouse, 80 South 1st Street, San Jose, California 95113, on December 15, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, for the entry of an order: (1) appointing Patterson as Lead Plaintiff for the putative Class, pursuant to §21D of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (2) approving his selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the putative Class; and (3) appointing Scott+Scott as lead counsel over the non-securities claims asserted in the complaint.

This motion is made on the grounds that Patterson timely filed this motion and is the "most adequate plaintiff."  Based on the information presently available, Patterson has the largest financial interest in the relief sought by the Class amongst movants for lead plaintiff, meets the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), as his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.  In addition, Patterson has selected and retained Scott+Scott, a law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel.

This motion is based on this notice of motion and memorandum of points and authorities herein, the Declaration of John T. Jasnoch ("Jasnoch Decl.") filed concurrently herewith and in support hereof, including Exhibits A-C attached thereto, the pleadings and other files and records previously entered in these actions, and such other written or oral argument as may be presented to the Court.

# STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court should appoint Patterson as Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

2. Whether the Court should approve Patterson's selection of Scott+Scott as Lead Counsel for the Class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).

3. Whether the Court should appoint Scott+Scott as Lead Counsel for the non-securities claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The above-captioned case (the "Action") is a securities class action on behalf of all those who purchased Terra ecosystem tokens from May 20, 2021 and May 25, 2022. Movant purchased Terra tokens and suffered significant damages as a result of the conduct alleged by the Action. Movant respectfully submits this memorandum of points and authorities in support of his motion for: (1) appointment as Lead Plaintiff pursuant to §27 of the Securities Act, 15 U.S.C. §77z-1(a)(3)(B), as amended by the PSLRA; and (2) approval of his selection of Scott+Scott to serve as Lead Counsel for the putative Class.

The PSLRA provides that the Court is to appoint as lead plaintiff the member of the purported plaintiff class with the largest financial interest in the action that otherwise satisfies the requirements of Rule 23. 15 U.S.C. §77z-1(a)(3)(B)(iii). As demonstrated below, Movant should be appointed to serve as Lead Plaintiff for this litigation because: (1) his motion for appointment is timely filed; (2) based on information presently available, he has the largest financial interest in this litigation; and (3) he is an adequate and typical Class member. *See* 15 U.S.C. §77z-1(a)(3)(B)(iii) (describing the PSLRA standard for lead plaintiff appointment); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (same). In addition, Movant's selection of Scott+Scott to serve as Lead Counsel for the putative Class should be approved. *See* 15 U.S.C. §77z-1(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). Scott+Scott has a long history of successfully litigating securities class actions and possesses the necessary resources to aggressively prosecute this action on behalf of the putative Class.

2
NOTICE OF MOTION & MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL; MEMO. IN SUPPORT THEREOF – CASE NO. 5:22-cv-03600

## II. FACTUAL BACKGROUND

On June 17, 2022, this putative class action was filed against Defendants TerraForm Labs Pte. Ltd ("TFL"), Jump Crypto, Jump Trading LLC, Republic Capital, Republic Maximal LLC, Tribe Capital, DeFinance Capital, DeFinance Technologies, GSR/GSR Market Limited, Three Arrows Capital Pte. Ltd, TFL's co-founder and Chief Executive Officer, Do Kwon, and its Head of Research, Nicholas Platias. The Action asserts claims under §§5, 12(a)(1), and 15 of the Securities Act of 1933 (the "Securities Act"), as well as under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased so-called Terra Tokens from May 20, 2021, and May 25, 2022 inclusive (the "Class Period"), and who were damaged thereby.

TFL is a company that operates the Terra blockchain and its related protocol, which hosts, supports, and funds a community of decentralized financial applications and products known collectively as the Terra ecosystem. TFL's primary focus is developing, marketing, and selling a suite of digital assets and financial products within the Terra ecosystem, including the native and governance tokens within the Terra ecosystem, so-called "stablecoins," a bevy of financial products such as "mirrored assets," bonded assets, liquidity pool tokens, along with various protocols (*e.g.*, Anchor, Mirror, etc.) to support and facilitate their sale. These digital assets are collectively referred to as the "Terra Tokens" and are worth tens of billions of dollars in total market cap. Terra tokens include the unregistered securities known as: UST, LUNA, KRT, ANC, WHALE, ASTRO, APOLLO, XDEFI, MINE, aUST, vUST, MIR, Mirrored Assets (*e.g.*, mBTC, mETH, mVIXY, mTSLA, etc.), Liquidity Pool tokens (*e.g.*, UST-mVIXY-LP, bLUNA-LUNA-LP, XDEFI-UST-LP, etc.) and/or Bonded Assets (*e.g.*, bLUNA and bETH).

TFL repeatedly touted the stability of UST as an "algorithmic" stablecoin that is paired with the Terra ecosystem's native token LUNA and the sustainability of the Anchor Protocol ("Anchor") – a type of high-yield savings account whereby investors can "stake" or deposit UST with TFL in exchange for a guaranteed 20% APY interest rate. As a part of this promotional campaign, TFL formed the Luna Foundation Guard – a group of six venture capital groups that

promised to support and fund the Terra ecosystem and to "defend the peg" in the event that high volatility caused the UST/LUNA pair to become untethered from one another. The Luna Foundation Guard and its members, Defendants Jump Crypto, Tribe Capital, Republic Capital, GSR, DeFinance Capital, and Three Arrows Capital acted on behalf of TFL to promote the stability of UST and mislead investors into believing that (1) the Luna Foundation Guard's reserve pool would be sufficient to defend the peg against a proverbial run on the bank by UST/LUNA investors, and (2) that the Luna Foundation Guard would be able to maintain interest payments from the Anchor Protocol through a well-capitalized "Anchor Yield Reserve" fund.

These promotions, along with the announcement of financial backing of major venture capitalists in the sector, were a siren song to both veteran and rookie crypto investors alike, luring them in with a purportedly "stable" digital asset in UST that would nevertheless provide outsized returns on investment via Anchor. The marketing of UST and Anchor was so effective that approximately $14 billion of UST's market cap (75%) was deposited into Anchor at its peak.

Between May 6, 2022 and May 9, 2022, however, structural infirmities specific to the Terra ecosystem exposed a crack in UST's ability to maintain its peg to $1. The truth regarding the stability and sustainability of the UST/LUNA pair and the Anchor Protocol could not be hidden any longer from investors, and within a week, the price of Terra tokens plummeted, with UST and LUNA collapsing by approximately 91% and 99.7%, respectively.

The complaint alleges that Defendants violated provisions of the Exchange Act by carrying out a plan, scheme, and course of conduct that TFL intended to and did deceive retail investors and thereby caused them to purchase Terra Tokens at artificially inflated prices; endorsed false statements they knew or recklessly should have known were materially misleading; and, made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading. The complaint alleges that TFL and the Individual Defendants also violated provisions of the Securities Act by selling non-exempt security without registering it. The complaint alleges that the TFL and Individual Defendants also violated provisions of the Securities Act by participating in TFL's failure to register the Terra Tokens. The complaint further

1  alleges non-securities claims, such as California common law claims for aiding and abetting and
2  for civil conspiracy.  Finally, the complaint alleges that all Defendants violated provisions of the
3  Racketeer Influenced and Corrupt Organizations Act ("RICO") by conducting the affairs of an
4  enterprise through a pattern of racketeering activity.  The complaint further alleges that the
5  Defendants violated provisions of California Common Law by possessing the monetary value of
6  Terra Tokens at inflated value which rightfully belong to the Plaintiff and members of the Class.

### III.    ARGUMENT

#### A.    Patterson Should Be Appointed Lead Plaintiff

##### 1.    Patterson's Motion Is Timely

Within 20 days of filing a securities class action, the plaintiff must publish a notice informing putative class members of his right to file a motion for appointment as lead plaintiff (the "Early Notice").  15 U.S.C. §77z-1(a)(3)(A)(i).  Following the commencement of the Action, on August 11, 2021, Counsel for Plaintiff published notice of pendency of the action via PRNewswire. *See* Jasnoch Decl., Ex. A.  Because the Early Notice was published within 20 days of the Action, notice was timely.  *See Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368, 2014 WL 2604991, at *4 (N.D. Cal. June 10, 2014) (finding notice "timely because it was published within 20 days after the filing of the complaint").

All putative Class members seeking to be appointed lead plaintiff in this matter are required to move for appointment within 60 days of publication of the Early Notice, or August 19, 2022. 15 U.S.C. §77z-1(a)(3)(A)-(B).  Since the instant motion was filed within 60 days from the publication of the Early Notice, it is timely.  15 U.S.C. §77z-1(a)(3)(A)(i)(II).  Moreover, Movant has submitted a certification stating his willingness to serve as a representative party on behalf of the Class.  *See* Jasnoch Decl., Ex. B.

##### 2.    Patterson Has the Largest Financial Stake in the Relief Sought by the Class

The PSLRA provides that courts: "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately

5

representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') in accordance with this subparagraph." 15 U.S.C. §77z-1(a)(3)(B)(i). Furthermore, there is a "rebuttable presumption that the most adequate plaintiff in any private action arising under this [title]" is the movant that "has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(bb); *see also Richardson v. TVIA, Inc.*, No. C 06 06304, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007) (discussing the PSLRA lead plaintiff appointment process); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511, 2012 WL 682882, at *2 (C.D. Cal. Mar. 2, 2012) (same) (citing *Cavanaugh*, 306 F.3d at 730). "District courts have typically considered the Olsten-Lax factors to determine who has the largest financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), and *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). "Of the Olsten-Lax factors, courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss." *Richardson*, 2007 WL 1129344, at *4.

Based on the information presently available, Patterson is the class member with the largest financial interest in the relief sought in this litigation. As set forth in Patterson's certification, Patterson made the following purchases of Terra tokens with U.S. dollars, which were then swapped into other various assets in the Terra ecosystem:

| Date | Transaction | Asset | Amount | Price Per Token/ SWAP Cost | Dollar Estimate |
| --- | --- | --- | --- | --- | --- |
| 1/31/2022 | Buy | LUNA | 3.99 | $51.97 | $207.40 |
| 3/4/2022 | Buy | LUNA | 8 | $91.03 | $728.30 |
| 3/5/2022 | Buy | LUNA | 2.89 | $82.44 | $238.27 |
| 3/5/2022 | Buy | LUNA | 5 | $82.37 | $411.87 |
| 3/5/2022 | Buy | LUNA | 16.1 | $87.14 | $1,403.01 |
| 3/10/2022 | Buy | LUNA | 40 | $101.50 | $4,060.24 |
| 3/10/2022 | Buy | LUNA | 16 | $96.49 | $1,543.97 |

| 3/10/2022 | Buy | LUNA | 40 | $101.50 | $4,060.24 |
| 4/12/2022 | Buy | LUNA | 15 | $86.25 | $1,293.78 |
| 4/20/2022 | Buy | LUNA | 2.1 | $94.45 | $198.35 |
| 4/25/2022 | Buy | LUNA | 5 | $96.53 | $482.69 |
| 5/5/2022 | Buy | UST | 11,624.31 | $0.9956 | $11,675 |
| 5/11/2022 | Buy | LUNA | 60 | $7.86 | $471.77 |

With these transactions, Patterson alleges that he purchased an estimated $26,774.89 worth of LUNA and UST using U.S. dollars. *See* Jasnoch Decl., Ex. B. Patterson used these purchases of LUNA and UST to swap into the other Terra tokens that are the subject of the complaint, including aUST, ANC-UST_LP, XDEFI, MINE, mVIXY, bLUNA, WHALE, ASTRO, mETH, mBTC, ANC, bETH, kUST, wETH, Apollo, and MIR. *Id.* Given that Movant has the largest financial interest in this litigation, has standing to bring the claims associated with all of the Terra tokens at issue (as opposed to only holding, for example, UST or LUNA), and, as discussed below, satisfies all of the PSLRA prerequisites for appointment as lead plaintiff, he should be appointed Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(3)(B).

### 3. Patterson Is Otherwise Qualified Under Rule 23

Pursuant to §27(a)(3)(B) of the Securities Act, a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the court need only make findings as to the typicality and adequacy of the proposed lead plaintiff and, at this stage, those findings need only be "preliminary." *See*, *e.g.*, *Westley v. Oclaro,*

7

*Inc.*, No. C-11-2448, 2011 WL 4079178, at *2 (N.D. Cal. Sept. 12, 2011) (noting that only a "preliminary showing" of typicality and adequacy satisfies Rule 23 at the lead plaintiff stage).

The typicality requirement of Rule 23(a)(3) is satisfied when the representative party "'has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues.'" *Id*. Here, Patterson's claims are typical of the claims of the other members of the putative Class because, like all other Class members, he: (1) purchased Terra tokens between May 20, 2021 and May 25, 2022; (2) was adversely affected by Defendants' alleged misconduct; and (3) suffered damages as a result thereof. *See Russo v. Finisair Corp.*, No. 5:CV11-01252, 2011 WL 5117560, at *4 (N.D. Cal. Oct. 27, 2011) (discussing ways in which a lead plaintiff movant can meet the typicality requirement). Since the claims asserted by Movant are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members," typicality is satisfied. NEWBERG ON CLASS ACTIONS §3:13 (4th ed. 2008).

With respect to adequacy, a movant is an adequate class representative when they possess common interests and an absence of conflict with fellow class members and movant's attorneys are qualified, experienced, and vigorously able to conduct the litigation. *See Westley*, 2011 WL 4079178, at *2 (explaining that, with regard to the adequacy requirement, a court must evaluate "'whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation'"). Patterson satisfies the "adequacy" requirement in the instant litigation because his interests are clearly aligned with the interests of the putative Class. Moreover, Movant, like all other members of the Class, suffered losses as a result of purchasing Terra tokens. Patterson will, therefore, benefit from the same relief as other Class members. In short, there is absolutely no evidence of antagonism between Patterson and the putative Class.

Patterson has also demonstrated that he is an adequate representative in this matter by retaining competent and experienced counsel. As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Accordingly,

Movant has made a *prima facie* showing that he satisfies all of the requirements of Rule 23 for the purposes of this motion.

### B.     The Court Should Approve Patterson's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §77z-1(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734-35. As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class[.]" 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa); *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *Cavanaugh*, 306 F.3d at 733 n.12.

Patterson has selected the law firm of Scott+Scott to represent the Class. Scott+Scott has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation. *See* Jasnoch Decl., Ex. D. Specifically, Scott+Scott has served as lead counsel in many high-profile class actions and recovered hundreds of millions of dollars for victims of corporate fraud.[1]

Scott+Scott's efforts have not gone unnoticed by the courts. For instance, in *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011), a case in which Scott+Scott served as Lead counsel and recovered $70 million for the class, the Court stated:

> Lead Plaintiff' counsel demonstrated that notwithstanding the barriers erected by the PSLRA, they would develop evidence to support a convincing case. Based upon Lead Plaintiff' counsel's diligent efforts on behalf of the Settlement Class, as well as his skill and reputations, Lead Plaintiff' counsel were able to negotiate a

---

[1]     Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *Weston v. RCS Capital Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *In re Priceline.com Inc. Secs. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Secs. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Secs. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cty.) ($50 million); *In re Nw. Corp. Secs. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Irvine v. ImClone Serys., Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Secs. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); and *In re Conn's, Inc. Secs. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million).

    very favorable result for the Settlement Class.  Lead Plaintiff' counsel are among the most experienced and skilled practitioners in the securities litigation field, and have unparalleled experience and capabilities as preeminent class action specialists.  (*Id.*)

Scott+Scott currently serves as court-appointed lead or Lead counsel in various federal securities class actions, including: *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.); *Gupta v. Athenex, Inc.*, No. 21-cv-00337 (W.D.N.Y.); *Garnett v. Wang [RLX Technology, Inc.]*, No. 21-cv-05125 (S.D.N.Y.); *Blake v. MacroGenics, Inc.*, No. 8:19-cv-02713 (D. Md.); *Kanugonda v. Funko, Inc.*, No. 2:18-cv-00812 (W.D. Wash.); *Corwin v. ViewRay, Inc.*, No. 1:19-cv-02115 (N.D. Ohio); *Mo-Kan Iron Workers Pension Fund v. Teligent, Inc.*, No. 1:19-cv-03354 (S.D.N.Y.); *In re Weight Watchers Int'l, Inc. Secs. Litig.*, No. 1:19-cv-02005 (S.D.N.Y.); *Mustafin v. GreenSky, Inc.*, No. 1:18-cv-11071 (S.D.N.Y.) ($27.5 million settlement preliminarily approved); *In re Evoqua Water Techs. Corp. Secs. Litig.*, No. 1:18-cv-10320 (S.D.N.Y.) ($14.5 million settlement preliminary approved); *Silverberg v. DryShips Inc.*, No. 2:17-cv-04547 (E.D.N.Y.); and *Robinson v. Diana Containerships Inc.*, No. 2:17-cv-06160 (E.D.N.Y.).

In light of the foregoing, the Court should approve Patterson's selection of Scott+Scott as Lead Counsel.  The Court can be assured that by approving Patterson's choice of counsel, the putative Class will receive the highest caliber of representation.

**C.     Scott+Scott Should Be Appointed as Lead Counsel over the Non-Securities Claims**

Scott+Scott has devoted substantial time and resources to pioneer the non-securities legal theories (*i.e.*, conspiracy, aiding and abetting, and RICO claims) asserted in this litigation and is prepared to advance the necessary resources to prosecute all claims.  Appointing lead counsel for the non-securities claims would ensure efficient management of the litigation and the protection of all plaintiffs' interests.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §10.221 ("The most important [factor in appointing lead counsel] is achieving efficiency and economy without jeopardizing fairness to the parties. . . .").

The criteria for appointing lead counsel for complex non-securities class claims include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *accord In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL No. 2147, ECF No. 47 at 2-3 (N.D. Ill. June 23, 2010) (applying same criteria for lead counsel); *see also* MANUAL FOR COMPLEX LITIGATION, §10.224.

Scott+Scott's substantial efforts were instrumental in piecing together a complex set of facts and in developing the novel claims raised in this litigation. In appointing lead counsel, courts consistently recognize that such efforts are crucial and should be given weight. *See In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012). Similarly, courts give significant weight to which firm investigated and filed the first complaint. *See In re Interest Rate Swaps Antitrust Litig.*, No. 16-MD-2704, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016). Here, Scott+Scott attorneys have filed a 97-page, thoroughly-investigated complaint that sets forth in great detail the various violations of law perpetrated by multiple Defendants.

Scott+Scott has a track record of success in similar cases, and the firm's "experience in, and knowledge of, the applicable law" also justify its selection as lead counsel over the non-securities claims. *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 702 (S.D. Fla. 2004). Scott+Scott is a preeminent litigation law firm with attorneys in offices in San Diego, New York City, London, Amsterdam, Berlin, Richmond, Connecticut, and Cleveland, with a concentration in consumer protection, antitrust and securities litigation. Scott+Scott has been recently appointed lead counsel in multiple other cryptocurrency-related lawsuits. *See In re Ethereum Max Investor Litigation*, No. 2:22-cv-00163-MWF-(SKx) (C.D. Cal) (ECF No. 29); *Combs, et. al., v. Safemoon, LLC,* No. 2:22-cv-01108-SVW-MRW (C.D. Cal) (ECF No. 52); and *Pasquinelli, et. al., v. HUMBL LLC,* No. 3:22-cv-00723-AJB-BLM (S.D. Cal) (ECF No. 22). In addition, recently as co-lead counsel, Scott+Scott recovered more than $2.3 billion in settlements for investors injured

by collusion to manipulate foreign exchange rates and benchmark prices. *See In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-CV-7789, ECF No. 925 (S.D.N.Y. Jan. 12, 2018). Mediator Kenneth R. Feinberg concluded that the settlement "represent[ed] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and that Scott+Scott attorneys were "superlative, sophisticated, and determined plaintiff's lawyers." *Id.*, ECF No. 926, ¶29.

Scott+Scott is committed to devote the necessary amount of time and money without guarantee of reimbursement and Scott+Scott's proven record of devoting substantial resources to prosecute class actions clearly supports appointment as lead counsel over the non-securities claims. *See* Jasnoch Decl., ¶7. *See In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, ECF No. 67 at 1-2 (D. Kan. Jan. 22, 2015) (appointing lead counsel that will "bring the resources necessary to sustain this litigation").

**IV.     CONCLUSION**

For all of the foregoing reasons, Patterson respectfully requests that the Court: (1) appoint Patterson as Lead Plaintiff; and (2) approve Patterson's selection of Scott+Scott to serve as Lead Counsel.

DATED:  August 19, 2022                         **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

   *s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Sean T. Masson (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
smasson@scott-scott.com

*Attorneys for Lead Plaintiff Movant Nick Patterson*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I caused the foregoing, along with the Declaration of John T. Jasnoch in support thereof (with Exhibits A-C thereto), and Proposed Order, to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on August 19, 2022, at San Diego, California.

      *s/ John T. Jasnoch*
JOHN T. JASNOCH (CA 281605)