| | |
|---|---|
| Kyle Roche (*pro hac vice forthcoming*) | Tibor L. Nagy, Jr. (*pro hac vice forthcoming*) |
| Edward Normand (*pro hac vice forthcoming*) | Gregory N. Wolfe (*pro hac vice forthcoming*) |
| Joseph Delich (*pro hac vice forthcoming*) | William LaGrange (*pro hac vice forthcoming*) |
| Alex Potter (*pro hac vice forthcoming*) | Diego J. Martinez-Krippner (*pro hac vice forthcoming*) |
| Ivy T. Ngo (SBN 249860) | |

**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: (646) 350-0527
kyle@rochefreedman.com
tnormand@rochefreedman.com
jdelich@rochefreedman.com
apotter@rochefreedman.com
ingo@rochefreedman.com

**DONTZIN NAGY & FLEISSIG LLP**
980 Madison Avenue
New York, NY 10075
Tel.: (212) 717-2900
tibor@dnfllp.com
greg@dnfllp.com
wlagrange@dnfllp.com
dmartinezkrippner@dnfllp.com

*Counsel for Lead Plaintiff Movant Josh Golder and Proposed Co-Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICK PATTERSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/DEFINANCE TECHNOLOGIES OY GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS and DO KWON,<br><br>Defendants. | Case No.: 5:22-cv-03600-BLF<br><br>**NOTICE OF MOTION AND MOTION TO APPOINT JOSH GOLDER AS LEAD PLAINTIFF AND APPROVE HIS SELECTION OF ROCHE FREEDMAN LLP AND DONTZIN NAGY & FLEISSIG LLP AS CO-LEAD COUNSEL**<br><br>Date: December 15, 2022<br>Time: 9:00 a.m.<br>Judge: Hon. Beth Labson Freeman<br>Courtroom: No. 3, 5th Floor |

1

**NOTICE OF MOTION AND MOTION**

2   TO:   ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

3   PLEASE TAKE NOTICE that on December 15, 2022, at 9:00 a.m., or as soon thereafter as
4   the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District
5   of California, 280 South 1st Street, San Jose, California, before the Honorable Beth Labson
6   Freeman, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-
7   1(a)(3)(B)(i), 78u-4(a)(3)(B)(i), Josh Golder ("Movant") will move the Court to appoint him as lead
8   plaintiff and approve his selection of Roche Freedman LLP ("Roche Freedman") and Dontzin Nagy
9   & Fleissig LLP ("DNF") as co-lead counsel. In support of this motion, Movant respectfully submits
10  herewith a Memorandum of Points and Authorities and the Declaration of Kyle W. Roche ("Roche
11  Decl.").

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.   INTRODUCTION ..................................................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED ....................................................................... 2

III. STATEMENT OF FACTS ........................................................................................................ 2

    A.   Summary Of The Case ................................................................................................... 2

    B.   Movant ............................................................................................................................ 4

IV.  LEGAL STANDARD ................................................................................................................ 4

    A.   Lead Plaintiff ................................................................................................................... 4

    B.   Lead Counsel .................................................................................................................. 5

V.   ARGUMENT .............................................................................................................................. 6

    A.   The Court Should Appoint Movant As Lead Plaintiff .................................................. 6

        1.   Movant has the largest financial interest in this matter ......................................... 6

        2.   Movant satisfies Rule 23's typicality and adequacy requirements ........................ 8

    B.   The Court Should Appoint Roche Freedman And DNF As Co-Lead Counsel ............ 9

VI.  CONCLUSION ........................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Cases**

*Cohen v. U.S. Dist. Court for N. Dist. of Cal.*,
  586 F.3d 703 (9th Cir. 2009) .................................................................................................... 5

*Doherty v. Pivotal Software, Inc.*,
  2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ............................................................................ 9

*Habelt v. iRhythm Techs., Inc.*,
  2021 WL 2207365 (N.D. Cal. June 1, 2021) ......................................................................... 5, 9

*Hessefort v. Super Micro Comput., Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018) ..................................................................................... 8

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) .................................................................................................. 4, 5

*In re Lyft Securities Litig.*,
  2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) .......................................................................... 6, 9

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021) ......................................................................................................... 5

*In re Stitch Fix, Inc. Securities Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019) ....................................................................................... 5

*Malriat v. QuantumScape Corp.*,
  2021 WL 1550454 (N.D. Cal. Apr. 20, 2021) ........................................................................... 8

*Melucci v. Corcept Therapeutics Inc.*,
  2019 WL 4933611 (N.D. Cal. Oct. 7, 2019) .............................................................................. 7

*Mulquin v. Nektar Therapeutics*,
  2019 WL 1170774 (N.D. Cal. Mar. 13, 2019) ........................................................................... 9

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .......................................................................... 7, 9

*Saint Jermain v. Fluidigm Corp.*,
  2020 WL 7342717 (N.D. Cal. Dec. 14, 2020) ........................................................................... 9

*Vataj v. Johnson*,
  2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ................................................................................ 9

*Xu v. FibroGen, Inc.*,
  2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ....................................................................... 6, 7

*Ziolkowski v. Netflix, Inc.*,
  2017 WL 2572583 (N.D. Cal. June 14, 2017) ................................................................................ 9

**Other Authorities**

15 U.S.C. § 77l(a) ............................................................................................................................ 3

15 U.S.C. § 77e(c) ............................................................................................................................ 3

15 U.S.C. § 77z-1(a)(3)(B)(i) ....................................................................................................... 1, 2

15 U.S.C. § 77z-1(a)(3)(B)(iii) ......................................................................................................... 1

15 U.S.C. § 77z-1(a)(3)(B)(v) .......................................................................................................... 2

15 U.S.C. § 78j(b) ............................................................................................................................ 3

15 U.S.C. § 78u-4(a)(3)(B)(i) ...................................................................................................... 1, 2

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(v) ......................................................................................................... 2

15 U.S.C. §§77e(a) ........................................................................................................................... 3

15 U.S.C. §77o ................................................................................................................................. 3

17 C.F.R. § 240.10b-5(b) ................................................................................................................. 3

18 U.S.C. § 1961 .............................................................................................................................. 3

*Bitcoin: Order Without Law in the Digital Age*, 94 Indiana L.J. 1497 (2019) ............................... 10

*Why Bitcoin is Booming*, Wall Street Journal (July 10, 2017) ...................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is a securities class action against Jump Crypto, Jump Trading LLC, Republic Capital, Republic Maximal LLC, Tribe Capital, DeFinance Capital/DeFinance Technologies Oy, GSR Markets Limited, Three Arrows Capital Pte. Ltd. (collectively, the "Luna Foundation Guard"), TerraForm Labs Pte. Ltd. ("TFL"), and Individual Defendants Nicholas Platias and Do Kwon (together with the Luna Foundation Guard and TFL, the "Defendants") seeking to recover damages caused by Defendants' unlawful promotion and sale of the Terra Tokens (as defined in the Complaint), which are unregistered securities, and Defendants' fraudulent misrepresentations and omissions leading to the Class's purchase of those unregistered securities at an inflated price. This action was commenced on June 17, 2022, on behalf of a proposed class consisting of all persons who purchased Terra Tokens between May 20, 2021, and May 25, 2022 (the "Class Period").

The PSLRA directs the Court to appoint as lead plaintiff the class member the Court "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). Under the applicable standards, Movant is the "most adequate plaintiff" to represent the class. *See id.* §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).

Movant timely filed this motion, has substantial financial interests in this action, and satisfies the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23. He will fairly and adequately protect the Class's interests by prosecuting this litigation and seeking the fullest recovery for the Class, and he is not subject to unique defenses that would render him incapable of serving as lead plaintiff. He has also selected highly qualified and experienced counsel, Roche Freedman and DNF, who will provide him and the Class with the highest-caliber representation against these sophisticated Defendants and their counsel. For these reasons, Movant respectfully requests that the Court appoint him as lead plaintiff and approve his selection of Roche Freedman and DNF as co-lead counsel.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should appoint Movant as Lead Plaintiff pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).

2. Whether the Court should approve Movant's selection of Roche Freedman and DNF as Co-Lead Counsel pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).

## III. STATEMENT OF FACTS

### A.   Summary Of The Case

Terraform Labs ("TFL") is a company founded by Do Kwon that operates the Terra blockchain and its related protocol—the "Terra ecosystem"—and develops, markets, and sells financial products within that ecosystem. (Compl. ¶ 2.) Among those financial products are the "Terra Tokens"—which include the "stablecoin" UST, the token LUNA, various "mirrored" assets, and bonded tokens—and related protocols that are designed to facilitate the sale of the Terra Tokens. (*Id.*) Defendants not only promoted and sold the Terra Tokens, which are all unregistered securities, but also made false statements and omissions of material fact regarding UST and LUNA to induce investors to purchase those assets, between May 20, 2021, and May 25, 2022, inclusive (the "Class Period"). (*Id.* ¶¶ 3-4.)

TFL touted the stability of UST as an "algorithmic" stablecoin—meaning a digital asset intended to maintain its peg to one U.S. dollar through its relationship to a secondary asset—here, the Terra ecosystem's LUNA token. (*Id.* ¶¶ 5, 46.) It also created and touted the sustainability of the "Anchor Protocol," which is a high-yield savings account in which investors "stake" UST in exchange for a guaranteed 20% APY interest rate. (*Id.* ¶ 5.)

At the behest of TFL, the Luna Foundation Guard was formed to create a reserve pool of assets that would be used to "defend the peg" in the event that high volatility caused the UST/LUNA pair to become untethered, and thereby undermine the "peg" of UST to one U.S. dollar. (*Id.*) The Luna Foundation Guard was utilized to promote the stability of UST and mislead investors into believing that (1) the Luna Foundation Guard's reserve pool would be sufficient to defend the peg,

and (2) the Luna Foundation Guard would be able to maintain interest payments from the Anchor Protocol. (*Id*.)

In May 2022, the price of UST and LUNA collapsed by approximately 91% and 99.7%, respectively, when it was revealed that those two instruments were unstable and unsustainable, contrary to the misrepresentations and omissions of Defendants. (*Id*. ¶ 5.)

Based on the foregoing facts, on June 17, 2022, Plaintiff Nick Patterson commenced this action against Defendants, asserting claims on behalf of himself and the proposed Class. In Count I, Plaintiff alleges that Defendants carried out a scheme to deceive retail investors into purchasing Terra Tokens at artificially inflated prices, in violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(b) promulgated thereunder, 17 C.F.R. § 240.10b-5(b). (*Id.* ¶¶ 169-193.) In Count II, Plaintiff alleges that TFL and the Individual Defendants are all statutory sellers of unregistered securities—the Terra Tokens—in violation of §§ 5(c), and 12(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77e(a), 77e(c), and 77l(a). (*Id.* ¶¶ 194-203.) In Count III, Plaintiff alleges control person liability against Defendants under § 15 of the Securities Act, 15 U.S.C. §77o. (*Id.* ¶¶ 204-211.)

In Counts IV, V, and VII, Plaintiff asserts violations of California common law—respectively alleging aiding and abetting liability against the Luna Foundation Guard for promoting the Terra Tokens (*id.* ¶¶ 212-219), conspiracy liability against all Defendants for conspiring to misleadingly promote the Terra Tokens (in particular the UST and LUNA tokens) to retail investors in order to artificially inflate their price and trading volume, (*id.* ¶¶ 220-224), and for unjust enrichment and restitution, (*Id.* ¶¶ 259-262.)

In Count VI, Plaintiff asserts a RICO claim under 18 U.S.C. §§ 1961, *et seq*., alleging that Defendants formed a RICO enterprise with the purpose of ensuring that they could sell off their Terra Token holdings to retail investors at artificially inflated prices without their fraud being detected (*id.* ¶¶ 228-241, 252) and engaged in a pattern of racketeering activity that included mail and wire fraud (*id.* ¶¶ 242-251), thereby causing investors to purchase Terra Tokens at fraudulently inflated prices. (*Id.* ¶¶ 253-258.)

On June 20, 2022, Scott+Scott, which represents Mr. Patterson, issued a press release informing investors and prospective plaintiffs of the pending action against Defendants. The notice summarized the allegations and notified investors that if they "wish to serve as lead plaintiff, [they] must move the Court no later than August 19, 2022."

### B.     Movant

Movant is 40 years old, lives in Miami, Florida, and is an entrepreneur. (Roche Decl. Ex. C ¶ 2.) He is also a relatively experienced crypto investor and began investing in the sector two years ago. (*Id*.) He purchased over $29,239,250.15 in UST, LUNA and WLUNA,[1] investments on which he has suffered losses of approximately $28,787,815.13 including fees. (*See* Roche Decl. Ex. B at 1.)

## IV.    LEGAL STANDARD

### A.     Lead Plaintiff

The PSLRA "instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members'"—that is, the "most adequate plaintiff"—and "provides a simple three-step process" for making that selection. *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).

"In step one, notice of the action must be posted so purported class members can move for lead plaintiff appointment." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). "In step two," the

---

[1] Wrapped Luna (WLUNA) is the functional equivalent of LUNA. It is an Ethereum token that is intended to represent Terra (LUNA) on the Ethereum blockchain and is designed to track LUNA's value. WLUNA was created to allow LUNA holders to trade, hold, and participate in decentralized finance ("DeFi") on Ethereum. Through a WLUNA partner, one LUNA can be exchanged for one WLUNA, and vice versa. Although not specific on this point, the allegations in the Complaint with respect to LUNA apply with equal force to WLUNA.

"district court must 'adopt a presumption that the most adequate plaintiff' is the movant with the largest financial interest who 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)). "This means the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality." *Id.*

"Once the district court has determined that the movant with the largest stake has made a prima facie showing of adequacy and typicality, that movant 'becomes the presumptively most adequate plaintiff.'" *Id.* (quoting *Cavanaugh*, 306 F.3d at 730). "If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry." *Id.* In the third step, other prospective lead plaintiffs "have 'an opportunity to rebut the presumptive lead plaintiff's showing' by 'present[ing] evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy.'" *In re Stitch Fix, Inc. Securities Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (quoting *Cavanaugh*, 306 F.3d at 730) (alterations in original).

### B. Lead Counsel

"The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval." *Habelt v. iRhythm Techs., Inc.*, 2021 WL 2207365, at *2 (N.D. Cal. June 1, 2021). "The Court should interfere with the Lead Plaintiff's selection only when necessary 'to protect the interests of the class,'" *id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)), such as where the selection "is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff," *Cavanaugh*, 306 F.3d at 732-33. In other words, "if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 711-12 (9th Cir. 2009).

## V. ARGUMENT

### A. The Court Should Appoint Movant As Lead Plaintiff

Movant respectfully requests that the Court appoint him as Lead Plaintiff—he is the "most adequate" plaintiff because, to his knowledge, he has the largest financial interest in this matter and because he satisfies the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23. Indeed, he lost $28,787,815.13, suffered the same injuries as absent class members as a result of the same conduct by Defendants, has no conflicts with other class members, and will prosecute this action vigorously on behalf of the Class. Movant accordingly asserts, pursuant to Local Civil Rule 23-1(b), that he is entitled to the presumptions set forth in Section 27(a)(3)(B)(iii)(I) of the Securities Act and Section 21D(a)(3)(B)(iii)(I) of the Exchange Act, but reserves the right to attempt to rebut those presumptions to the extent that they are invoked by another prospective lead plaintiff.

#### 1. Movant has the largest financial interest in this matter

To his knowledge, Movant suffered the largest alleged losses and therefore has the largest financial interest in this matter. "The Ninth Circuit has not provided clear guidance on what metric district courts should use in determining which potential plaintiff has the largest financial interest in a case, noting only that 'the court may select accounting methods that are both rational and consistently applied.'" *Xu v. FibroGen, Inc.*, 2021 WL 3861454, at *4 (N.D. Cal. Aug. 30, 2021) (quoting *Mulligan v. Impax Labs., Inc.*, 2013 WL 3354420, at *4 (N.D. Cal. July 2, 2013)). "Courts in this district primarily have relied on two methods: '[m]ethods in the first category equate financial interest with actual economic losses suffered.'" *In re Lyft Securities Litig.*, 2020 WL 1043628, at *3 (N.D. Cal. Mar. 4, 2020) (quoting *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011)). "In contrast, a second category of methods equates largest financial interest with potential recovery." *Id.* (quoting *Perlmutter*, 2011 WL 566814, at *3).

"Within the first category, courts have used the *Lax-Olsten* four-factor test to approximate economic losses." *Id.* "These four factors are '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds

expended during the class period; and (4) the approximate losses suffered during the class period.'" *Id.* (quoting *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). "Courts then consider the totality of these factors in order to determine an approximate loss for each movant." *Id.*

With respect to the second category—potential recovery—some courts endeavor to exclude "economic losses that are not caused by a defendant's misrepresentations." *Xu*, 2021 WL 3861454, at *5; *compare Perlmutter*, 2011 WL 566814, at *5 ("[R]ecent Ninth Circuit authority favors considering loss causation on a motion for appointment as lead plaintiff."), *with Melucci v. Corcept Therapeutics Inc.*, 2019 WL 4933611, at *4 (N.D. Cal. Oct. 7, 2019) ("Assessing potential recovery in a case involving gradual disclosures would require fact-intensive loss causation inquiries that are not amenable to analysis at this stage of the proceedings."). Courts adopting this approach "have chosen 'not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud' when evaluating potential plaintiffs' financial interests in the litigation." *Xu*, 2021 WL 3861454, at *5 (quoting *Perlmutter*, 2011 WL 566814, at *4).

Pursuant to the foregoing principles, Movant's financial interest in this matter is summarized in the table below (*see* Roche Decl. Ex. B):

**Summary of Losses**

| Metric | 10(b) Claims | 12(a)(1) Claims |
|---|---|---|
| Economic Loss | | |
|    Total Tokens Purchased | 2,719,921 | 2,719,921 |
|    Net Tokens Purchased | 2,224,394 | 2,224,394 |
|    Net Funds Expended | $28,742,792.29 | $28,742,792.29 |
|    Approximate Loss | $28,742,792.29 | $28,787,815.13 |
| Potential Recovery | $28,742,792.29 | $28,787,815.13 |

2. <u>Movant satisfies Rule 23's typicality and adequacy requirements</u>

Movant likewise satisfies the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23. "Once a movant has demonstrated that it has the largest financial interest, it need only make a prima facie showing of its typicality and adequacy." *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1061 (quoting *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012)). "The test for adequacy is whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Id.* (quoting *City of Royal Oak Ret. Sys.*, 2012 WL 78780, at *5).

Movant's claims are typical of those possessed by other class members because he suffered the same injury, from the same conduct. Indeed, during the Class Period, Movant (i) purchased at an inflated price unregistered securities from, or that were promoted by, Defendants (*see* Roche Decl. Ex. C ¶ 3); (ii) purchased those unregistered securities in reliance on Defendants' misrepresentations and omissions; and (iii) sold his Terra Tokens at a significant loss following the disclosure of Defendants' fraudulent conduct (*see* Roche Decl. Ex. B).

Movant and his counsel are likewise adequate representatives of the Class because, to their knowledge, they do not have any conflicts of interest with other class members, and they will vigorously prosecute this action. The latter point is confirmed not only by the efforts of Roche Freedman and DNF to date in investigating the claims set forth in the Complaint, but also by the fact that Movant is an experienced and knowledgeable crypto investor who (i) incurred significant losses as a result of Defendants' conduct, (ii) adopts the allegations in the Complaint, and (iii) is fully committed to obtaining the best result for the Class. (*See* Roche Decl. Ex. A ¶ 2; Roche Decl. Ex. C ¶ 3); *see also Malriat v. QuantumScape Corp.*, 2021 WL 1550454, at *4 (N.D. Cal. Apr. 20, 2021) (adequacy requirement satisfied where prospective lead plaintiff was experienced investor

who lost money as a result of defendant's alleged misconduct); *Saint Jermain v. Fluidigm Corp.*, 2020 WL 7342717, at *4 (N.D. Cal. Dec. 14, 2020) (adequacy requirement satisfied where prospective lead plaintiff contended that there was "no evidence of antagonism between his interests and those of the class" and that he had "a significant interest in prosecuting the action based on his large financial losses").

### B. The Court Should Appoint Roche Freedman And DNF As Co-Lead Counsel

Movant has selected Roche Freedman and DNF as his counsel and represents that Roche Freedman and DNF are fully capable of litigating this case. (*See* Roche Decl. Ex. C ¶¶ 9-10); *see also Perlmutter*, 2011 WL 566814, at *14 (deferring to selection, where lead plaintiff represented that "its chosen counsel is fully capable of litigating this case effectively and expeditiously"). Given that Roche Freedman and DNF have extensive experience in prosecuting securities fraud claims, Movant's choice is reasonable and should not be set aside. *See Mulquin v. Nektar Therapeutics*, 2019 WL 1170774, at *3 (N.D. Cal. Mar. 13, 2019) (deferring to lead plaintiff's selection, where counsel had "extensive experience as counsel in securities class actions"); *accord Ziolkowski v. Netflix, Inc.*, 2017 WL 2572583, at *3 (N.D. Cal. June 14, 2017); *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *12 (N.D. Cal. Nov. 8, 2019); *Vataj v. Johnson*, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020); *Habelt*, 2021 WL 2207365, at *2; *In re Lyft Securities Litig.*, 2020 WL 1043628, at *7.

Indeed, in *D'Arcy v. Sequential Brands Group, Inc.*, the court recognized that Roche Freedman "has extensive experience and expertise in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors," and appointed Roche Freedman as lead counsel. No. 2:21-cv-02305, Dkt. No. 25 (C.D. Cal. June 11, 2021). Roche Freedman has likewise recently secured lead counsel appointments in numerous other matters, including *Valenti v. Dfinity USA Research LLC et al.,* No. 3:21-cv-06118-JD (N.D. Cal.); *In re Qutoutiao Inc. Sec. Litig.*, No. 1:20-cv-06707 (SHS) (S.D.N.Y.); *Carl D. Cachia v. Bellus Health Inc. et al.*, No. 1:21-cv-02278 (S.D.N.Y.); *In re Renewable Energy Grp. Sec. Litig.*, No. 1:21-cv-01832 (S.D.N.Y.); *In re Qiwi Plc Sec. Litig.*, No.

1:20-cv-06054 (E.D.N.Y.); *Chapman v. Fennec Pharma Inc. et al.*, No. 1:20-cv-812 (M.D.N.C.); *Garcia v. J2 Global, Inc. et al.*, No. 2:20-cv-06096 (C.D. Cal.); *Lowry v. RTI Surgical Holdings, Inc. et al.*, No. 1:20-cv-01939 (N.D. Ill.) (co-lead counsel); and *Hartel v. Geo Group, Inc. et al.*, No. 9:20-cv-81063 (S.D. Fla.) (co-lead counsel). In one of these recent appointments, Roche Freedman has already obtained preliminary approval of a $10.5 million recovery for investors. *See Lowry v. RTI Surgical Holdings, Inc., et al.*, No. 1:20-cv-01939, Dkt. No. 99 (N.D. Ill. Sept. 10, 2021).

In addition to such extensive experience in prosecuting traditional securities claims, Roche Freedman's lawyers also have unique and unparalleled expertise with respect to litigation involving cryptoassets like UST. Mr. Roche, a lead attorney from Roche Freedman, is a recognized thought leader in the industry. He has published multiple articles on the intersection of cryptoassets and law (*see, e.g.*, *Bitcoin: Order Without Law in the Digital Age*, 94 Indiana L.J. 1497 (2019); *Why Bitcoin is Booming*, Wall Street Journal (July 10, 2017)), and is a frequent speaker and lecturer on the topic, having guest-lectured a course at the Northwestern Pritzker School of Law. Together with his colleagues, he represents plaintiffs in some of the most significant disputes in the crypto industry, both outside of the class action context, *see Kleiman v. Wright*, No. 9:18-cv-80176-BB (S.D. Fla.) (litigation concerning the rightful ownership of billions of dollars' worth of bitcoin and bitcoin-related intellectual property rights); *Shin v. Icon Found.*, No. 20-cv-07363-WHO (N.D. Cal.) (litigation concerning ownership of automatically-generated cryptoassets), and inside the class action context, where Roche Freedman has secured several notable lead counsel appointments, *see In re Tether & Bitfinex Crypto Asset Litig.*, No. 19-cv-9236-KPF (S.D.N.Y.) (litigation concerning multibillion-dollar crypto market manipulation scheme); *Valenti v. Dfinity USA Research LLC et al.,* No. 3:21-cv-06118-JD (N.D. Cal.) (unregistered securities and manipulation action); *Lee v. Binance*, No. 1:20-cv-02803-ALC (S.D.N.Y.) (unregistered securities offering); *accord Clifford v. TRON Found.*, No. 20-cv-2804-VSB (S.D.N.Y.); *Williams v. KuCoin*, No. 1:20-cv-02806-GBD (S.D.N.Y.); *Messieh v. HDR Global Trading Ltd.*, No. 1:20-cv-03232-ALC (S.D.N.Y.). In addition to working with Mr. Roche on these significant crypto-related disputes, *see also, e.g.*, *Jeong v. Nexo Financial LLC*, 5:21-cv-02392-BLF (N.D. Cal.) (class-action litigation concerning the operation of

the popular "Nexo" crypto-asset exchange), Edward Normand worked on complex class action-related matters while at Boies Schiller Flexner LLP for more than two decades, including representing Vanguard against ARCP, *In re American Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y.), and a class of employee health benefit plans against Merck-Medco, *In re Medco Health Sols., Inc., Pharm. Benefits Mgmt. Litig.*, No. 7:03-md-01508 (S.D.N.Y.).

DNF is a trial firm with a long history of successfully representing plaintiffs and defendants in complex litigation, including securities litigation. *See, e.g.*, *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt., Inc.*, No. 603755/08 (N.Y. Sup. Ct.) (securing successful settlement two weeks into a trial of multibillion-dollar claims involving the sale of subprime securities); *Ambac Assurance UK Ltd. v. J.P. Morgan Inv. Mgmt., Inc.*, No. 650259/09 (N.Y. Sup. Ct.); *Fairfax Fin. Holdings Ltd. v. SAC Cap. Mgmt.*, No. A-0963-12T1 (N.J. Super. Ct. App.) (affirming dismissal of multibillion-dollar claim predicated on short shelling conspiracy allegations); *Eljay Trust UA 10/25/1993 v. BLC Secured Credit Partners II LP*, No. 18-cv-00710 (N.D. Cal.). DNF has also arbitrated numerous matters involving securities, including by securing the dismissal of fraud claims and an award of attorneys' fees and costs for a major brokerage firm following a week-long arbitration; the dismissal of all claims against a major investment firm following a two-week arbitration; and a confidential settlement in connection with an initial public offering. DNF is presently arbitrating claims of frontrunning on behalf of an investor against a major investment bank.

DNF also has demonstrated experience representing various stakeholders—including investors, founders, blockchain companies, foundations, mining companies, and executives—in crypto-asset related disputes. *See, e.g.*, *BlockCrushr Inc. v. ConsenSys Inc.*, No. 20-cv-03134 (E.D.N.Y.); *Clifford v. Status Rsch. & Dev. GmbH*, No. 20-cv-02815 (S.D.N.Y.); *LeBeau v. Lubin*, No. 655673/2021 (N.Y. Sup. Ct.); *Gupta v. Lubin*, No. 650023/2022 (N.Y. Sup. Ct.); *ConsenSys Inc. v. Gupta*, No. 2022-0029 (Del. Ch.). In addition, DNF routinely represents clients in confidential matters, including one of the world's largest crypto-asset investors in prevailing in an arbitration against a prominent crypto-exchange; a major crypto-incubator in successfully resolving a founder dispute; and blockchain companies, mining companies, and investors in a variety of

disputes involving, among other things, securities fraud and breach of contract claims. Finally, Tibor L. Nagy, lead counsel for DNF in this matter, has achieved remarkable success in class actions, for example, prevailing in a nine-figure class action following a three-week jury trial where he was hired one week before trial, *see Beller v. William Penn Life Ins. Co.*, No. 0004845/2002 (N.Y. Sup. Ct.), and securing a nine-figure settlement in a class action against the NCAA, *see White v. National Collegiate Athletic Association*, No. 06-cv-0999 (C.D. Cal.).

In short, Roche Freedman and DNF's attorneys have decades of experience in complex litigation, including securities litigation and class actions on behalf of plaintiffs and defendants. (*See* Roche Decl. Exs. D, E.) The firms' attorneys have previously been appointed as lead or co-lead counsel in securities class actions throughout the country, and have clerked for federal judges sitting in the First Circuit, Second Circuit, Fourth Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, Ninth Circuit, Tenth Circuit, and United State Supreme Court. *See id.* Movant respectfully submits that this wealth of experience and qualifications demonstrates Roche Freedman and DNF's ability to vigorously and zealously prosecute this action on behalf of Movant and the Class.

## VI.   CONCLUSION

Movant respectfully requests, for the foregoing reasons, that the Court appoint him as lead plaintiff and approve his selection of Roche Freedman and DNF as co-lead counsel.

Dated: August 19, 2022

Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Kyle W. Roche*
Kyle W. Roche (*pro hac vice forthcoming*)
Edward Normand (*pro hac vice forthcoming*)
Joseph Delich (*pro hac vice forthcoming*)
Alex Potter (*pro hac vice forthcoming*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: (646) 350-0527
kyle@rochefreedman.com
tnormand@rochefreedman.com
jdelich@rochefreedman.com
apotter@rochefreedman.com

ingo@rochefreedman.com

**DONTZIN NAGY & FLEISSIG LLP**
Tibor L. Nagy, Jr. (*pro hac vice forthcoming*)
Gregory N. Wolfe (*pro hac vice forthcoming*)
William LaGrange (*pro hac vice forthcoming*)
Diego J. Martinez-Krippner (*pro hac vice forthcoming*)
980 Madison Avenue
New York, NY 10075
Tel.: (212) 717-2900
tibor@dnfllp.com
greg@dnfllp.com
wlagrange@dnfllp.com
dmartinezkrippner@dnfllp.com

13
NOTICE OF MOTION AND MOTION TO APPOINT
LEAD PLAINTIFF AND CO-LEAD COUNSEL – 5:22-CV-03600-BLF

**Certificate Pursuant to Local Rule 5-1(h)(3)**

I, Ivy T. Ngo, am the ECF User whose ID and password are being used to file this brief. In compliance with Local Rule 5-1(h)(3), I hereby attest that Kyle W. Roche concurs in this filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of August, 2022.

                                          */s/ Ivy T. Ngo*
                                          Ivy T. Ngo

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Ivy T. Ngo
Ivy T. Ngo