**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
Pronouns: he/him/his
355 South Grand Avenue, Suite 2450
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/DEFINANCE TECHNOLOGIES OY, GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS, and DO KWON,<br><br>Defendants. | Case No. 22-cv-03600-TLT<br><br>**MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br><u>CLASS ACTION</u><br><br>Judge: Trina L. Thompson<br>Hearing: October 11, 2022<br>Time: 2:00 PM<br>Ctrm: 9 – 19th Floor (San Francisco) |

0

MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
22-cv-03600-TLT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF LAW IN OPPOSITION TO
### <u>COMPETING LEAD PLAINTIFF MOTIONS</u>

Movant Michael Tobias ("Mr. Tobias") respectfully submits this Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel. Dkt. Nos. 24, 25, 28, and 32.

Only two movants claim a larger financial interest than Mr. Tobias:

- Josh Golder ("Mr. Golder") ($28,787,815 in purported losses) is inadequate and atypical for a number of reasons. Mr. Golder has selected inadequate and conflicted counsel.  Mr. Golder has failed to submit a proper PSLRA certification. Mr. Golder appears to be an atypical high frequency trader; and

- Shing Yiu Ng ("Mr. Ng") ($3,559,997 in purported losses) likewise is inadequate and atypical. Mr. Ng continued to purchase Terra Tokens even after the destabilization. He also has failed submit a proper PSLRA certification and has failed to document his losses properly by way of a loss chart. More importantly, Mr. Ng, potentially a foreign national, is potentially subject to unique jurisdiction defenses under *Morrison v. National Australia Bank Ltd.,* 561 U.S. 247, (2010).

Neither of the competing movants claiming larger losses than Mr. Tobias have made the initial showing of Rule 23 adequacy and typicality required to trigger the most adequate plaintiff presumption under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u-4(a)(3)(B)(iii). It is critical to note that courts determining the most adequate lead plaintiff do not merely perform a rote mathematical calculation of comparing alleged losses. Numerical loss is only the first step in the process. The second step is analyzing a proposed lead plaintiff's typicality and adequacy under Rule 23.

In contrast to the inadequate and atypical movants noted above, Mr. Tobias lost $441,062. Mr. Tobias is a citizen of New York. Mr. Tobias is an experienced and sophisticated investor with approximately 20 years of investing experience. He earned a mechanical engineering degree from Georgia Tech and is a Professional Engineer. Mr. Tobias is also an entrepreneur. He has acquired and sold companies in the past and also has an architectural engineering firm which is involved

1
2
3

in thousands of construction projects every year. As such, and as an expert witness in construction cases, Mr. Tobias is well versed in the legal world and comfortable and able to control counsel in this case.

4

**ARGUMENT**

5

**I.      MR. GOLDER IS INADEQUATE AND ATYPICAL**

6

**A.      Mr. Golder Selected Conflicted, Inadequate Counsel**

7
8
9
10

Mr. Golder is inadequate for selecting counsel with substantial issues which are specifically at issue in this case. Roche Freedman LLP ("Roche Freedman") and named partner Kyle Roche—the signatory of Mr. Golder's papers—are subject to intense scrutiny in crypto cases like this one.[1]

11
12
13
14
15
16
17
18
19
20

On August 26, 2022 (and updated August 31, 2022), *Crypto Leaks*, released a report entitled "Ava Labs (Avalanche) attacks Solana & cons SEC in evil conspiracy with bought law firm, Roche Freedman" (the "Report") [2], attached as Exhibit A to Declaration of Laurence M. Rosen ("Rosen Decl."), filed herewith. According to the Report, Kyle Roche, and his firm entered into a secret pact with blockchain company Ava Labs whereby Kyle Roche and his firm would pursue class action litigation against competing blockchain companies. Through these suits, Kyle Roche would damage and distract Ava Labs' and its token AVAX's competitors, lure federal authorities to focus on Ava Labs' and AVAX's competitors, gain insight into Ava Labs' and AVAX's competitors through discovery, and generally protect and grow his large stake in Ava Labs and AVAX through litigation—specifically securities class actions.

21
22

Not surprisingly, Kyle Roche, in a video in the Report, also made disparaging remarks about class members in general by referring to them as "100,000 idiots out there."

23

24
25
26

[1] This issue is in addition to the ongoing litigation surrounding a founding member of the law firm Roche Cyrulnik Freedman LLP which also, in part, relates to crypto assets. *See Roche Cyrulnik Freedman LLP v. Jason Cyrulnik*, case no. 1:21-cv-1746 (S.D.N.Y.); *Cyrulnik v. Roche*, case no. 2021-005837-CA-01 (Fla.Cir.Ct.); and *Kyle Roche et al. v. Jason Cyrulnik*, case co. 3D21-1741 (Fla. 3d DCA).

27

[2] https://cryptoleaks.info/case-no-3;
https://web.archive.org/web/20220902154151/https://cryptoleaks.info/case-no-3.

28

2

MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
22-cv-03600-TLT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In the wake of these revelations, Kyle Roche has withdrawn as counsel in numerous crypto class actions, many of which are in this Court. *See Lockhart v. BAM Trading Services Inc. (Binance U.S.), et al.*, case no. 3:22-cv-03461-JSC (N.D. Cal.), Dkt. No. 33; *Valenti v. DFINITY USA Research LLC, et al.*, case no. 3:21-cv-06118-JD (N.D. Cal.), Dkt. No. 70; *Jeong v. Nexo Capital Inc., et al.*, case no. 5:21-cv-02392-BLF (N.D. Cal.), Dkt. No. 70; *Hardin and Williams v. TRON Foundation, et al.*, case no. 1:20-cv-02804-VSB (S.D.N.Y.), Dkt. No. 88; *Anderson, et al. v. Binance, et al.,* case no. 1:20-cv-02803-ALC (S.D.N.Y.), Dkt. No. 80. In another case, Roche Freedman has filed a motion to withdraw its representation of the class due to "recent restructuring of its class action practice group, the press of its current business, and the early stage of this litigation, the firm seeks leave to withdraw from this case." *Williams v. Block.One, et al.*, case no. 1:20-cv-02809-LAK (S.D.N.Y.), Dkt. No. 154.

Kyle Roche's withdrawals have also faced unique issues. In *In re Tether and Bitfinex Crypto Asset Litigation*, case no. 1:19-cv-09236-KPF (S.D.N.Y.), Dkt. Nos. 229-232, the defendants have filed letters in response to his withdrawal which raise the same issues which defendants undoubtedly will here because of the Report—including risks that Roche Freedman and Kyle Roche would use confidential discovery material for financial gain on the part of Ava Labs and AVAX. Rosen Decl. Exs. B and C. Interestingly, in the face of these allegations and withdrawals elsewhere, Kyle Roche has not withdrawn in this instant case.

In short, Mr. Golder's selection of counsel demonstrates his inadequacy. *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 482 (N.D. Cal. 2001) ("if a representative plaintiff does not select competent counsel, he cannot meet the adequacy requirement of FRCP 23 and the PSLRA."). Aside from Mr. Golder's selecting a firm that the class cannot trust, Mr. Golder has other defects which render him inadequate.

### B.      Mr. Golder Submitted a Defective PSLRA Certification

Mr. Golder failed to submit a proper PSLRA certification. The PSLRA requires "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, … that … ***sets forth all of the transactions of the plaintiff in the security that is***

3

1   *the subject of the complaint during the class period specified in the complaint*."  15 U.S.C. §

2   78u-4(a)(2)(A)(iv) (emphasis added).

3          Instead, Mr. Golder appears to have provided an incomplete listing of his transactions.

4   Mr. Golder's PSLRA certification removes the unequivocal language requiring a plaintiff to set

5   forth all his class period transactions and replaces it with "[t]o the best of my knowledge"

6   language setting forth his transactions.  On this ground alone the PSLRA certification is defective

7   and improper. 15 U.S.C. § 78u-4(a)(2)(A)(iv) ("sets forth all of the transactions of the plaintiff in

8   the security that is the subject of the complaint during the class period specified in the

9   complaint").

10          Courts find lead plaintiff movants that fail to file proper PSLRA certifications to be

11   inadequate and/or atypical. *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at \*3

12   (D.N.J. Nov. 21, 2017) (deficient initial PSLRA certifications, later amended after the 60-day

13   lead plaintiff deadline, subject movant "to a unique defense that renders them 'incapable of

14   adequately representing the class' and, as a result, they are not the presumptively most adequate

15   lead plaintiff.") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)); *Oklahoma L. Enf't Ret. Sys. v.*

16   *Adeptus Health Inc.*, 2017 WL 3780164, at \*3 (E.D. Tex. Aug. 31, 2017) ("compliance with the

17   procedural requirements of the PSLRA is mandatory and should be strictly enforced.") (citing

18   cases).

19       **C.**    **Mr. Golder's (Potentially Incomplete) Trading History Supports the Fact**

20   **that He is an Atypical High-Frequency Trader**

21          Mr. Golder appears to be a high frequency trader, rendering him atypical. Mr. Golder has

22   over 200 pages of transactions, including over 15,000 transactions, in under three months from

23   August 11, 2021 through October 15, 2021. Dkt. No. 32-3. Over that time period, Mr. Golder

24   averaged over 200 transactions a day, though many days he did not trade, so when he actively

25   traded he made hundreds and up to thousands of transactions depending on the day. Dkt. No. 32-

26   3.  Courts often refuse to appoint high frequency traders as lead plaintiff because they are atypical.

27   *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008) ("A review

28

4

MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
22-cv-03600-TLT

1   of Robert McCullough, Jr.'s trading history reveals that he was unusually active, making as many

2   as 80 separate transactions of Syntax–Brillian stock in a single day. [] Such a high-volume day

3   trader might be subject to the unique defense that frantic trading belies any true reliance on

4   company reports or even on the integrity of the stock price itself. (citing *In re Safeguard*

5   *Scientifics,* 216 F.R.D. 577, 582 (E.D.Pa. 2003).

6   Thus, Mr. Golder's inadequacy and atypicality prevent him from being a proper Lead

7   Plaintiff.

8   **III.     MR. NG IS INADEQUATE AND ATYPICAL**

9   **A.     Mr. Ng Continued Buying LUNA After the Peg Destabilized in Early May**

10  **2022**

11  Mr. Ng continued to purchase LUNA on May 11, 2022 even after the truth of the alleged

12  fraud was revealed. Dkt. No. 28-2 at 26. Indeed, Mr. Ng even notes in his opening papers that:

13  > Between May 6, 2022 and May 9, 2022, however, structural infirmities specific to
    > the Terra ecosystem exposed a crack in UST's ability to maintain its peg to $1. ¶¶
14  > 7, 125-31. The truth regarding the stability and sustainability of the UST/LUNA
    > pair and the Anchor Protocol could not be hidden any longer from investors, and
15  > within a week, the price of UST and LUNA collapsed by approximately 91% and
    > 99.7%, respectively. *Id*
16

17  Dkt. No. 28 at 9.

18  Mr. Ng also traded in several other pages worth of transaction types around that same time

19  from May 7 through May 24, 2022 which are vague due to his PSLRA certification lacking clear

20  transaction codes. Dkt. No. 28 at 11-13.

21  That Mr. Ng disregarded key information about the Terra ecosystem, specifically the

22  UST/LUNA peg, will subject him (and if lead plaintiff, the class) to unnecessary risks. *See, e.g.,*

23  *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("this court has

24  consistently held that 'a person that increasing his holdings in a security after the revelation of an

25  alleged fraud involving that security is subject to an unique defense that precludes him from

26  serving as a class representative.'") (quoting *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69

27  (S.D.N.Y. 2000)); *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019)

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(rejecting lead plaintiff movant because of his significant post fraud disclosure purchases "could undermine his ability to assert the fraud-on-the-market presumption of reliance."); *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 480 (W.D. Mich. 1994) ("Because plaintiff purchased 1,000 of his 1,200 shares after the curative disclosure, his interest in the case will be different with regard to the materiality of the curative disclosure than the interest of class members who purchased prior to the curative disclosure. This renders Mr. Acito an atypical plaintiff for the entire original class period.").

### B.   Mr. Ng Submitted a Defective PSLRA Certification

Similar to Mr. Golder (*supra* at Section I.B), Mr. Ng failed to submit a proper PSLRA certification. The PSLRA requires "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, … that … sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint."  15 U.S.C. § 78u-4(a)(2)(A)(iv). As opposed to traditional PSLRA certifications which feature clear transactions and the financial interest from each purchase or sale, Mr. Ng's certification features significant vague transactions which, without a loss chart (*see infra* at Section II.C), further muddies Mr. Ng's financial interest and raises the likelihood of further atypical transaction schemes. Dkt. No. 28 at 5-18, 22-23.

These vague "Transaction" types and how they are calculated in the financial interest asserted include "Debit" (*Id*. at 14-18, 22-23), "Send" (*Id*. at 5-13), "cw20Mint" (*Id*. at 5, 8), "cw20Send" (*Id*. at 5-13), "cw20Transfer" (*Id*. at 5-13), "cw20TransferFrom" (*Id*. at 6-9, 13), "MsgExecuteContract" (*Id*. at 12).

This improper certification falls well short of the PSLRA's intent and language by failing to allow the Court and fellow class members verify Mr. Ng's financial interest.

### C.   Mr. Ng Neglected to File a Customary Loss Chart

Mr. Ng, as opposed to custom in PSLRA cases, neglected to file a loss chart. Loss charts are universally filed with  lead plaintiff motions as that is the way the Court and other lead plaintiff movants can compare financial interests. The failure to do so here, further demonstrates Mr. Ng's

6

MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
22-cv-03600-TLT

inadequacy. *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000) (even where a movant "submitted a conclusory affidavit and a collection of indecipherable financial statements that purported to support the affidavit's conclusion … even assuming Wolverine Trading's evidence of loss was sufficient, its application did not satisfy the statutory requirements of typicality and adequacy[.]") (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)); *see also In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000) ("courts may only look to the losses sustained by the class members actually being put forward by any particular group to act as lead plaintiffs").

While often it is easy to replicate a loss calculation based on PSLRA certifications (which is part of the purpose of PSLRA certifications), here, again, we cannot. As discussed above, some "transactions" in Mr. Ng's PSLRA certification are vague and he neglected to provide any amount for many of his transactions—completely denying fellow class members and the Court an opportunity to verify his claimed financial interest. *See* Dkt. No. 28-2.

### D.   Mr. Ng May be Subject to *Morrison* Issues

We do not know much about Mr. Ng, which is generally fine as background information is generally not required for individual movants per the PSLRA. *See Kaslingam v. Tilray*, 2020 WL 4530357, at * 3 (S.D.N.Y. Aug. 6, 2020). However, in this case, due to the nature of the securities at issue, we do not know if Mr. Ng actually has valid claims under the federal securities laws in this case due to *Morrison*. "In *Morrison []*, the Supreme Court held that § 10(b) does not apply extraterritorially, and adopted a transactional test requiring that the purchase or sale of securities be made in the United States." *Abu-Lughod v. Calis*, 2016 WL 11759919, at *1 (C.D. Cal. Mar. 7, 2016). "After *Morrison*, courts have applied a two-prong test to determine whether a particular securities transaction is properly within the territorial reach of Section 10(b): (1) whether the transaction is in 'securities listed on domestic exchanges'; or (2) whether the transaction is a 'domestic transaction[ ] in other securities.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281, at *3 (N.D. Cal. Jan. 4, 2017) (quoting *Morrison*, 561 U.S. at 267).

1
2
3
4
5
6
7
8
9
10
11
12

There is no indication that Mr. Ng or his relevant transactions have a sufficient American connection under *Morrison*.  He may not have been an American citizen, resident, visitor, etc. nor have bought American securities (as Terra Tokens are not American) nor have purchased on a necessarily American exchange. It is possible that Mr. Ng is American, purchased on an American exchange, or otherwise has sufficient American connections (for a sufficient amount of his relevant transactions) under *Morrison* but we simply do not know. There is also no reason to subject the class to such risks. *See Williams v. Block.One, et al.*, case no. 1:20-cv-03829-LAK (S.D.N.Y.), Dkt. No. 46 (motion for final approval of crypto-based securities class action settlement denied because the lead plaintiff was found to inadequately represent the class at that stage because most of, but not all of, his purchases of crypto assets were foreign under the federal securities laws incentivizing the lead plaintiff to accept a lower settlement amount); *see also Koos,* 496 F.2d 1162, 1164.

13

## IV.     MR. TOBIAS SHOULD BE APPOINTED LEAD PLAINTIFF

14
15
16
17
18

Mr. Tobias, with losses of approximately $441,062, from one clear American-based purchase as a New York resident is the presumptive Lead Plaintiff as he has the remaining largest financial interest *and* satisfies the typicality and adequacy requirements of Rule 23. *See* Dkt. No. 19-3 and 19-4. Mr. Tobias should be appointed Lead Plaintiff, and his selection of Lead Counsel should be approved.

19
20
21
22
23
24
25
26
27

To overcome the strong presumption entitling Mr. Tobias to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case, and any arguments to the contrary should be flatly rejected. Competing movants may attempt to conjure up speculative arguments to rebut the presumption in favor of Mr. Tobias. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively most adequate plaintiff may only be rejected if a rival movant presents "proof" that the presumptive Lead Plaintiff, here Mr. Tobias, will not adequately protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Lomingkit v. Apollo Educ. Grp. Inc.*, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016).

28

8

1
2
3

As Mr. Tobias has made a demonstration of his typicality and adequacy and has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Tobias must be appointed Lead Plaintiff.

4

## V.    MR. TOBIAS' SELECTION OF COUNSEL SHOULD BE APPOINTED

5
6
7
8

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. See 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also In re Cavanaugh,* 306 F.3d 726, 734 n. 14 (9th Cir. 2002).

9
10
11
12
13

Mr. Tobias selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. The firm has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 19-5.

14
15
16
17
18
19
20
21

Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. *Id*. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen as the Number 3 securities class action firm both in terms of amount recovered for investors - $438,340,000 – and the number of settlements – 12.[3] Founding partner, Laurence Rosen was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[4]   Thus, the Court may be assured that by approving Mr. Tobias' selection of counsel, the members of the class will receive excellent legal representation.

22

## VI.    COMPETING MOTIONS SHOULD BE DENIED

23
24
25

The competing motions should be denied as Mr. Tobias satisfies the requirements of Rule 23, has the greatest remaining financial interest in the litigation, and should therefore be appointed Lead Plaintiff without further analyses. *Cavanaugh,* 306 F.3d at 732 ("The statutory process is

26
27

[3] https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.
[4] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

28

MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
22-cv-03600-TLT

1   sequential: The court must examine potential lead plaintiffs one at a time, starting with the one

2   who has the greatest financial interest, and continuing in descending order if and only if the

3   presumptive lead plaintiff is found inadequate or atypical.").

4           The remaining competing movants, after Mr. Golder, Mr. Ng, and Mr. Tobias, the

5   remining movants hold smaller claimed financial interests: José Luis Villasenin with $191,991,

6   and Nick Patterson with $26,774. *See* Dkt. Nos. 24 at 8, 24-3, and 25 at 11. In no way is Mr.

7   Tobias conceding or acknowledging that the competing movants are adequate or that their claims

8   are typical. Mr. Tobias reserves the right to address the competing movant's adequacy or

9   typicality, should the Court reach those motions.

10                                      **CONCLUSION**

11          For the foregoing reasons, Mr. Tobias respectfully requests the Court issue an Order: (1)

12   appointing Mr. Tobias as Lead Plaintiff of the Class; (2) approving Mr. Tobias' selection of The

13   Rosen Law Firm P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem

14   to be just and proper.

15

16   Dated: September 2, 2022                Respectfully submitted,

17                                           **THE ROSEN LAW FIRM, P.A.**

18                                           /s/Laurence M. Rosen
                                             Laurence M. Rosen, Esq. (SBN 219683)
19                                           Pronouns: he/him/his
                                             355 South Grand Avenue, Suite 2450
20                                           Los Angeles, CA 90071
                                             Telephone: (213) 785-2610
21                                           Facsimile: (213) 226-4684
                                             Email: lrosen@rosenlegal.com
22
23                                           *Counsel for Movant and [Proposed]*
                                             *Lead Counsel for the Class*
24

25

26

27

28
                                              10
     MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO
                 COMPETING LEAD PLAINTIFF MOTIONS
                          22-cv-03600-TLT

1

**PROOF OF SERVICE**

2

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

3

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand

4

Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

5

On September 2, 2022 I electronically filed the following **MEMORANDUM OF LAW**

6

**OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO COMPETING LEAD**

7

**PLAINTIFF MOTIONS** with the Clerk of the Court using the CM/ECF system which sent

8

notification of such filing to counsel of record.

9

I certify under penalty of perjury under the laws of the United States of America that the

10

foregoing in true and correct.

11

Executed on September 2, 2022.

12

13

/s/ Laurence M. Rosen
Laurence M. Rosen

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

MEMORANDUM OF LAW OF MOVANT MICHAEL TOBIAS IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
22-cv-03600-TLT