Edward Normand (*pro hac vice forthcoming*)
Joseph Delich (*pro hac vice forthcoming*)
Alex Potter (*pro hac vice forthcoming*)
Ivy T. Ngo (SBN 249860)
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: (646) 350-0527
tnormand@rochefreedman.com
jdelich@rochefreedman.com
apotter@rochefreedman.com
ingo@rochefreedman.com

*Counsel for Lead Plaintiff Movant Josh Golder
and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICK PATTERSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/DEFINANCE TECHNOLOGIES OY GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS and DO KWON,<br><br>Defendants. | Case No.: 5:22-cv-03600-TLT<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO APPOINT TOBIAS, VILLASENIN, PATTERSON, OR NG AS LEAD PLAINTIFFS, AND IN FURTHER SUPPORT OF MOTION TO APPOINT JOSH GOLDER AS LEAD PLAINTIFF AND APPROVE HIS SELECTION OF ROCHE FREEDMAN LLP AS LEAD COUNSEL**<br><br>Date: November 1, 2022<br>Time: 2:00 p.m.<br>Judge: Hon. Trina L. Thompson<br>Courtroom: No. 9, 19th Floor |

Five motions were filed pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") by movants seeking appointment as lead plaintiffs of the class of investors who purchased the Terra Tokens (the "Class"). Josh Golder ("Golder") respectfully submits this memorandum of law in opposition to the motions of Michael Tobias ("Tobias") (Dkt. No. 19), José Luis Villasenin ("Villasenin") (Dkt. No. 24), Nick Patterson ("Patterson") (Dkt. No. 25), and Shing Yiu Ng ("Ng") (Dkt. No. 28) (collectively, "Movants") for appointment as lead plaintiffs, and in further support of his motion for appointment as lead plaintiff and approval of his selection of Roche Freedman LLP as lead counsel (Dkt. No. 32).[1] On September 2, 2022, Ng filed a notice of non-opposition (*see* Dkt No. 38) and Tobias and Villasenin stated that they do not appear to possess the largest financial interest in this matter (*see* Dkt. Nos. 35, 37).

## ARGUMENT

### I.    The Court Should Appoint Golder Lead Plaintiff

Golder respectfully requests that the Court appoint him as Lead Plaintiff because he is the "most adequate" plaintiff, having suffered the largest financial interest in this matter of all Movants, and he satisfies the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure ("Rule") 23. Unlike Golder, all other Movants suffer from extraterritoriality questions that undermine their adequacy. Golder lost approximately **$28.7 million**, suffered the same injuries as absent class members, as a result of the same conduct by Defendants, has no conflicts with other class members, and will prosecute this action vigorously on behalf of the Class.

#### A.    Golder Has The Largest Financial Interest

To identify the "most adequate plaintiff," the PSLRA provides for "a presumption that the most adequate plaintiff in any private action arising under [15 U.S.C. § 77a et seq.] is the person or group of persons that … has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Courts in this District have held on numerous occasions that magnitude of loss is the most significant factor in

---

[1] Dontzin Nagy & Fleissig LLP has withdrawn as counsel for Golder in this case.

determining financial interest under the PSLRA. *See, e.g., Bruce v. Suntech Power Holdings Co.*, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012) ("As long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status."); *Rieckborn v. Velti PLC*, 2013 WL 6354597, at *4 (N.D. Cal. Dec. 3, 2013) ("Nor can the fact that Yadegar's suffered 'enormous' losses by itself give rise to unique defenses that would undermine his typicality, especially in light of the PSLRA's clear mandate that a Lead Plaintiff should have suffered the largest losses").

The class that Movants propose to lead is defined to include all purchasers of the various types of Terra Tokens that suffered damages due to the misconduct of Defendants. *See* Compl. ¶155; *see also id*. ¶¶45-53 (providing illustrative examples of Terra Tokens). Where there are multiple securities at issue, as here, a proposed lead plaintiff's loss is measured by aggregating the losses across all security types he or she purchased. *See, e.g., In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569, at *2-*5 (N.D. Cal. Dec. 17, 2018); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 999 (N.D. Cal. 1999); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). This makes sense given that "courts often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned." *Hoang v. ContextLogic, Inc.*, 2022 WL 1539533, at *5 (N.D. Cal. May 16, 2022) (quoting *In re CTI Biopharma Corp. Sec. Litig.*, 2016 WL 7805876, at *4 (W.D. Wash. Sept. 2, 2016)).

With aggregate Terra Token losses of **$28.7 million**, Golder has the largest financial interest by far. The financial interests of the other Movants are not even close: Ng alleges aggregate Terra Token losses of **$3,559,997.02** (about 12% of Golder's losses), Tobias of **$452,991.00** (less than 2% of Golder's losses), Villasenin of **$191,991.00**, and Patterson of **$26,774.89**. Golder is presumptively the most adequate plaintiff. *See Tesla*, 2018 WL 6609569, at *4.

### B.   Golder Is the Only Movant Who Satisfies Rule 23's Requirements

Golder is also the only movant to meet his burden of a *prima facie* showing of typicality and adequacy under Rule 23. "Once a movant has demonstrated that it has the largest financial interest,

it need only make a prima facie showing of its typicality and adequacy." *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018). In support of his burden, Golder has shown that his transactions are nearly all domestic under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). In contrast, the other Movants have not met their burden to show their adequacy as representatives of the Class because they have not shown that their purchases are domestic transactions.

In *Williams v. Block One et al.*, 1:20-cv-02809-LAK (S.D.N.Y.), Judge Kaplan recently denied certification of a class settlement because the majority of the appointed lead plaintiff's cryptoasset purchases were extraterritorial under *Morrison.* The court found that the lead plaintiff there was an inadequate representative pursuant to Rule 23, since its predominantly foreign transactions incentivized it to take a bigger "haircut" on the aggregate settlement amount compared to other class members (the "Order," attached as Exhibit 1). Ex. 1 at 19-25.

Under *Morrison* and its progeny, U.S. securities law reaches "(1) transactions in securities listed on domestic exchanges, and (2) domestic transactions in other securities." *Id.* at 13 (cleaned up). Pursuant to the first prong, "investors who acquired . . . tokens on a domestic exchange . . . could recover damages under the federal securities laws should the remainder of their requirements be met." *Id.* at 13. Nearly all of Golder's purchases were made on domestic exchanges—namely, Coinbase and Gemini. *See* Dkt. No. 32-4; Ex. 1 at 8 (noting Coinbase is a cryptocurrency exchange based in the United States).[2] No other Movant has disclosed how they purchased Terra Tokens, let alone whether they purchased them through a domestic exchange. *See* Dkt. Nos. 19-3, 19-4 (Tobias); 24-2 (Villasenin); 25-3 (Patterson); 28-2 (Ng).

Under the second prong of *Morrison*, whether purchases of securities not listed on domestic

---

[2] *See also* Gemini, "About," ("Gemini is a New York trust company regulated by the New York State Department of Financial Services (NYSDFS)"), *available at* https://www.gemini.com/about (last accessed September 1, 2022); Complaint, *SEC v. Ishan Wahi, Nikhil Wahi, and Sameer Ramani*, 2:22-cv-01009 (W.D. Wash.) ("Coinbase is one of the largest crypto asset trading platforms in the U.S., with more than 98 million registered users."), *available at* https://www.sec.gov/litigation/complaints/2022/comp-pr2022-127.pdf (last accessed September 1, 2022).

exchanges are also "domestic transactions" is "more complicated." Ex. 1 at 14. Courts have, for example, considered the location of the purchaser, where the blockchain's validating nodes are located, including by requiring a "transaction by transaction approach" to the issue. *Id.* at 17 (considering various approaches). Since there were "*questions* regarding the proportion of Lead Plaintiff's purchases of tokens which were domestic," Judge Kaplan declined to certify a settlement class based on that inadequacy. *Id.* (emphasis added). As an overwhelmingly domestic purchaser, Golder does not have "an incentive to take a bigger 'haircut' on the aggregate settlement price than" other Class members. *Id.* at 19. Instead, Golder is incentivized to pursue the best outcome for members of the Class with claims arising from purchases on domestic exchanges—he will not "trade away" meritorious domestic claims to obtain a settlement for non-domestic purchasers. *Id.*

In contrast, multiple questions exist regarding the extraterritoriality of the other Movants' purchases, including (1) whether they were purchased on domestic exchanges, (2) the location from which they purchased, and (3) the location of the nodes on which they were purchased. Villasenin is a resident of La Coruña, Spain (Dkt. No. 24-4); neither Tobias (Dkt. No. 19-3) nor Patterson (Dkt No. 25-3) disclose their residencies; and Ng is a resident of Hong Kong (Dkt. No. 28-2). *See* Ex. 1 at 14 (noting that the lead plaintiff there contended "the location – or, perhaps, the nationality – of the token purchaser is relevant if not dispositive" of domesticity); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (noting that while it is not the *test* for domesticity, "it may be more *likely* for domestic transactions to involve parties residing in the United States."); *Eichenholtz v. Verifone Holdings, Inc*., No. C07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) (finding that movants that "suffer[ed] from . . . foreign investor issues" were "not fit to be appointed lead plaintiff"). Movants have not provided any allegations or information to indicate they have made, or primarily made, domestic purchases. In contrast, Golder is a resident of the United States (Dkt. No. 32-5) and does not face extraterritoriality issues given that nearly all his purchases occurred on domestic exchanges.

There are also typicality issues with respect to other Movants because Ng (Dkt. No. 28), Villasenin (Dkt. No. 24), and Tobias (Dkt. No. 19) did not purchase both of the tokens that make

up the central algorithmic stablecoin pair at issue in this action—UST and LUNA. *See Hessefort*, 317 F. Supp. 3d at 1061 ("The test of typicality is whether other members have the same or similar injury" among other factors).

The lead plaintiff analysis thus begins and ends with Golder as he has the largest financial interest, and is the only movant who has satisfied his *prima facie* burden to show adequacy and typicality under Rule 23.

## II.    The Court Should Not Split Claims Between Various Proposed Lead Counsel

Movant Patterson appears to propose that his counsel, Scott+Scott, should be separately appointed as Lead Counsel over the *non-securities claims* alleged in the Complaint. *See* Dkt. No. 25 at 10-12. While it is unclear exactly what Patterson intends, there is no reason for the Court to deviate from "the statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999). If what Patterson suggests is that, in the event he is not chosen as lead plaintiff under the PSLRA, his counsel should nonetheless be appointed as lead counsel over the non-securities claims, such a ruling would exceed the Court's authority under the PSLRA. *See Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 709 (9th Cir. 2009) ("It would be difficult for the statute to be more clear that it is the lead plaintiff who selects lead counsel, not the district court."). Roche Freedman is currently working with Scott+Scott in other class action litigations, however, and is willing to work cooperatively with them as counsel in this action.

## CONCLUSION

Golder respectfully requests, for the foregoing reasons, that the Court appoint him as Lead Plaintiff and approve his selection of Roche Freedman as lead counsel.

Dated: September 2, 2022                    Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Edward Normand*
Edward Normand (*pro hac vice forthcoming*)
Joseph Delich (*pro hac vice forthcoming*)
Alex Potter (*pro hac vice forthcoming*)

Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: (646) 350-0527
tnormand@rochefreedman.com
jdelich@rochefreedman.com
apotter@rochefreedman.com
ingo@rochefreedman.com

GOLDER OPPOSITION TO LEAD PLAINTIFF MOTIONS
No. 5:22-cv-03600-TLT

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 5-1(H)(3)</u>

I, Ivy T. Ngo, am the ECF User whose ID and password are being used to file this brief. In compliance with Local Rule 5-1(h)(3), I hereby attest that Edward Normand concurs in this filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of September, 2022.

*/s/ Ivy T. Ngo*
Ivy T. Ngo

GOLDER OPPOSITION TO LEAD PLAINTIFF MOTIONS
No. 5:22-cv-03600-TLT

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Ivy T. Ngo*
Ivy T. Ngo