John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

[Additional Counsel on Signature Page.]

*Attorneys for Lead Plaintiff Movant Nick Patterson*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/ DEFINANCE TECHNOLOGIES OY, GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS, and DO KWON,<br><br>Defendants. | Case No. 3:22-cv-03600 (TLT)<br><br>**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Date:          December 13, 2022<br>Time:         2:00 p.m.<br>Courtroom.:  San Francisco Courthouse<br>                      Courtroom 9, 19 Floor<br>Judge:         Hon. Trina L. Thompson |

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

    I.      INTRODUCTION ............................................................................................. 1

    II.     ARGUMENT ..................................................................................................... 2

          A.        Appointment of Mr. Patterson as Lead Plaintiff Is Necessary to Protect the Interests of the Entire Class ........................................ 2

          B.        Patterson Has the Largest Financial Stake in Multiple Tokens Subject to the Complaint ....................................................... 5

          C.        Other Movants Suffer from Unique Defenses ................................ 5

          D.        Patterson's Choice of Counsel Should Be Appointed Lead Counsel ............................................................................................. 7

          E.        Scott+Scott Should Be Appointed as Lead Counsel ....................... 7

                1.        Scott+Scott Has Done the Most Comprehensive, Meaningful Work in This Action Thus Far .......................................................... 8

                2.        Counsel's Experience in Handling Complex Actions ..................... 9

                3.        Counsel's Knowledge of the Applicable Law ................................ 9

          F.        Scott+Scott Will Commit Substantial Resources to Litigation ....................................................................................... 11

          G.        Discretionary Factors Favoring Appointment of Scott+Scott as Lead Counsel over Both the Securities and Non-Securities Claims ........................................................................................... 11

    III.    CONCLUSION ............................................................................................... 14

i

MEMO. OF LAW IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aberin v. Am. Honda Motor Co., Inc.*,
  No. 16-CV-04384-JST, 2017 WL 3641793 (N.D. Cal. Aug. 24, 2017)...................................8

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................3

*Armour v. Network Assocs.*,
  171 F. Supp. 2d 1044 (N.D. Cal. 2001) ...............................................................................3

*Borochoff v. Glaxosmithkline PLC*,
  246 F.R.D. 201 (S.D.N.Y. 2007) ..........................................................................................6

*City of Providence, Rhode Island v. AbbVie Inc.*,
  No. 20-CV-5538, 2020 WL 6049139 (S.D.N.Y. Oct. 13, 2020)............................................12

*Cohen v. U.S. Dist. Ct. for N. Dist. of California*,
  586 F.3d 703 (9th Cir. 2009) ................................................................................................7

*Diaz v. Univ. of S. California*,
  No. 20-cv-4066, 2020 WL 5044419 (C.D. Cal. July 17, 2020).............................................8

*Doherty v. Pivotal Software, Inc.*,
  No. 3:19-CV-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ..............................6

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................................6

*Friedman v. Quest Energy Partners LP*,
  261 F.R.D. 607 (W.D. Okla. 2009).......................................................................................2

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir.1992) .................................................................................................6

*Harold Roucher Tr. U/A DTD 09/21/72 v. Franklin Bank Corp.*,
  No. 4:08-cv-1810, 2009 WL 1941864 (S.D. Tex. July 6, 2009) ............................................4

*In re BP PLC Sec. Litig.*,
  758 F. Supp. 2d 438 (S.D. Tex. 2010) ..................................................................................3

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ........................................................................................3, 5, 7

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..................................................................................................7

*In re Mersho*,
　6 F.4th 891 (9th Cir. 2021) ................................................................................................3, 4

*In re Network Assocs., Inc., Sec. Litig.*,
　76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................................................................6

*In re Oxford Health Plans, Inc. Sec. Litig.*,
　182 F.R.D. 42 (S.D.N.Y. 1998) ....................................................................................2, 3, 4

*In re Peregrine Sys., Inc. Sec. Litig.*,
　No. Civ. 02 CV 870-J, 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ....................................4

*Janbay v. Canadian Solar, Inc.*,
　272 F.R.D. 113 (S.D.N.Y. 2010) ............................................................................................4

*Malasky v. IAC/Interactivecorp*,
　No. 04-cv7447, 2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004) ................................................4

*Miller v. Ventro Corp.*,
　No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ..........................................5

*Mohanty v. BigBand Networks, Inc.*,
　No. C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ..........................................3

*Ortiz v. Fibreboard Corp.*,
　527 U.S. 815 (1999) ................................................................................................................4

**Statutes, Rules, and Regulations**

15 U.S.C.
　§78u-4(a)(3)(B) ........................................................................................................................1
　§78u-4(a)(3)(B)(i) ................................................................................................................2, 3
　§78u-4(a)(3)(B)(iii)(I) .............................................................................................................3
　§78u-4(a)(3)(B)(iii)(I)(bb) ......................................................................................................5
　§78u-4(a)(3)(B)(iii)(II)(aa) ......................................................................................................7
　§78u-4(a)(3)(B)(iii)(II)(aa)-(bb) ..............................................................................................5
　§78u-4(a)(3)(B)(iii)(II)(aa)-(bb) ..............................................................................................3
　§78u-4(a)(3)(B)(v) ...............................................................................................................1, 7

Federal Rules of Civil Procedure
　Rule 23 .................................................................................................................................3, 6
　Rule 23(a)(4) ............................................................................................................................3
　Rule 23(g) ................................................................................................................................1
　Rule 23(c)(5) ............................................................................................................................2
　Rule 23(g)(1)(A) ......................................................................................................................8
　Rule 23(g)(1)(B) ..................................................................................................................8, 11
　Rule 23(g)(3) .........................................................................................................................7, 8

Securities Act
    §12(a)(1) .................................................................................................................................10

**Other Authorities**

BOLCH JUDICIAL INSTITUTE, DUKE LAW GUIDELINES AND BEST PRACTICES
    ADDRESSING CHRONIC FAILURE TO DIVERSIFY LEADERSHIP POSITIONS IN THE
    PRACTICE OF LAW (Part 1) (May 10, 2018) ..........................................................................12

Bryant G. Garth, *Conflict and Dissent in Class Actions: A Suggested Perspective*,
    77 NW. U. L. REV. 492 (1982) ...............................................................................................13

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004)
    §21.11.................................................................................................................................7, 8

Martha L. Minow, *From Class Actions to Miss Saigon: The Concept of
    Representation in the Law*,
    39 CLEV. ST. L. REV. 269 (1991) ...........................................................................................13

iv

MEMO. OF LAW IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS
LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

**STATEMENT OF THE ISSUES TO BE DECIDED**

1.  Whether the Court should appoint Lead Plaintiff Movant Nick Patterson ("Patterson") as Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B);

2.  Whether the Court should approve Patterson's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the Class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and

3.  Whether the Court should appoint Scott+Scott as Lead Counsel for the non-securities claims pursuant to Rule 23(g).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Currently pending before the Court are five motions seeking appointment as lead plaintiff for a class of Terra token purchasers. ECF Nos. 19, 24, 25, 28 and 32. Of all movants, only one of them, Nick Patterson, has actual standing to pursue the claims at issue in this action. Unlike the other movants who only have standing to bring claims for UST and LUNA losses, Patterson can pursue claims for the broader Terra ecosystem, having suffered financial losses with UST, LUNA, as well as with Terra tokens like the ANC (Anchor) token, mirrored assets (mBTC, mETH, mVIXY), bonded assets (like bETH, bLUNA) and other unregistered securities described in the complaint. Compl., ¶¶48-56. Moreover, only one movant, Patterson, seeks to have its counsel appointed as lead over the non-securities claims asserted in the complaint. While other movants claim a greater financial interest with respect to the UST or LUNA tokens, they are each subject to one or more of the same unique defenses thereby rebutting the presumption of appointing the movants with larger financial losses. Furthermore, Patterson has the greatest financial interest with respect to the remaining unregistered securities subject to the complaint. Indeed, no other movant identifies Terra ecosystem token transactions beyond UST and LUNA tokens. It is thus appropriate to appoint Patterson as Lead Counsel over the entire class, or at minimum as co-lead plaintiff over the non-UST and non-LUNA securities claims (and non-securities claims generally) asserted by this action.

Notably, where class members' interests are divergent or potentially antagonistic based on their purchases of different types of securities, it is appropriate to divide them into separate classes or subclasses and appoint separate lead plaintiffs to represent their divergent interests. Quite simply, LUNA and UST purchaser claims are not typical of claims by purchasers of other Terra ecosystem tokens. Indeed, the "the nature of the claims asserted by the two classes [is] materially different." *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 610-11 (W.D. Okla. 2009) (appointing two separate classes as "a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes due to the inherent conflict that is caused by the competition for the same limited funds for recovery").

The plain language of the PSLRA expressly allows for the appointment of more than one lead plaintiff. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 47 (S.D.N.Y. 1998) (citing 15 U.S.C. §78u-4(a)(3)(B)(i): "the court . . . [shall] appoint as lead plaintiff the member ***or members*** of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class.") (emphasis added). In addition, Federal Rule of Civil Procedure 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule."

As such, Patterson respectfully requests that, in the event that the Court finds he has not rebutted the presumption and appoints one of the other movants as Lead Plaintiff, a Terra token purchaser Class be recognized as a separate class in the action and, in light of his greatest financial interest, that he be appointed Co-Lead Plaintiff to prosecute the claims of the Class members for Terra tokens beyond UST and LUNA.

## II.     ARGUMENT

### A.     Appointment of Mr. Patterson as Lead Plaintiff Is Necessary to Protect the Interests of the Entire Class

The process for selection of lead plaintiff under the PSLRA is neither overly complex nor ambiguous. Initially, the court must determine which movant is the "most adequate plaintiff," which is defined as the plaintiff "most capable of adequately representing the interests of class

2

MEMO. OF LAW IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

1  members." 15 U.S.C. §78u-4(a)(3)(B)(i). To do so, the district court must "adopt a presumption
2  that the most adequate plaintiff" is the movant with the largest financial interest who "otherwise
3  satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id*. §78u-
4  4(a)(3)(B)(iii)(I). The presumption may be rebutted upon a showing that the presumptively most
5  adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to
6  unique defenses that render such plaintiff incapable of adequately representing the class." 15
7  U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

8      In the context of determining the appropriate lead plaintiff under the PSLRA, the
9  requirements of "typicality" and "adequacy" of representation are the key factors. *See In re*
10 *Cavanaugh*, 306 F.3d 726, at 730 (9th Cir. 2002); *see also Armour v. Network Assocs.*, 171 F.
11 Supp. 2d 1044, 1051 (N.D. Cal. 2001); *Oxford,* 182 F.R.D. 42, 49. ("[t]ypicality and adequacy of
12 representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff
13 under the PSLRA."). The "adequacy" requirement of Rule 23(a)(4) is satisfied when the proposed
14 lead plaintiff "does not have interests antagonistic to the proposed class . . . ." *Mohanty v. BigBand*
15 *Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, at *5 (N.D. Cal. Feb. 14, 2008); *see also*
16 *In re Mersho*, 6 F.4th 891, at 899-900 (9th Cir. 2021) ("Courts determine whether a plaintiff will
17 adequately represent a class by answering two questions: (1) do the movant and its 'counsel have
18 any conflicts of interest with other class members' and (2) will the movant and its 'counsel
19 prosecute the action vigorously on behalf of the class?'"). Indeed, it is "***particularly important at***
20 ***this early stage of the case to avoid prejudicing the claims of absent class members through the***
21 ***appointment of a lead plaintiff who cannot fully and fairly represent them***." *In re BP PLC Sec.*
22 *Litig.*, 758 F. Supp. 2d 438 (S.D. Tex. 2010) (emphasis added). The U.S. Supreme Court, in
23 *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626-7 (1997), noting that Rule 23's adequacy
24 inquiry is designed to uncover conflicts of interest between class members and their named
25 representatives, cautioned that a class representative "must be part of the class and possess the
26 same interest and suffer the same injury as the class members . . . [t]o ensure the 'fair and adequate
27 representation for the diverse groups and individuals affected.'" In the event that a conflict arises,
28

the court "must then look to the movant with the next largest losses and repeat the inquiry" until the most adequate plaintiff can be found. *Mersho*, 6 F.4th at 899.

Similarly, in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999), the Supreme Court again emphasized the need to "provide the structural protection of independent representation as for subclasses with conflicting interests." *See also Harold Roucher Tr. U/A DTD 09/21/72 v. Franklin Bank Corp.*, No. 4:08-cv-1810, 2009 WL 1941864, at *2 (S.D. Tex. July 6, 2009) ("In instances where conflicts of interest exist between different groups of plaintiffs, . . .[t]he Court is required to ensure that independent classes with conflicts are protected by subdivision and separate representation."); *Oxford*, 182 F.R.D. at 48 (appointing two institutional investors and a group of investors co-lead plaintiffs to "ensure that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by differing aims of differently situated claimants."); *Malasky v. IAC/Interactivecorp*, No. 04-cv7447, 2004 WL 2980085, at *14 (S.D.N.Y. Dec. 21, 2004) (finding a co-lead plaintiff structure "provides flexibility and stability to the class" in the event either co-lead plaintiff "fails to address certain interests within the class, drops out of the action or compromises the class in some fashion").

Numerous courts have recognized that the creation of separate classes or subclasses can promote efficiency and judicial economy and avoid potential conflicts of interest. *See*, *e.g.*, *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120-21 (S.D.N.Y. 2010) (appointing an individual as Co-Lead Plaintiff with a group of seven investors to prevent "the possibility that conflicts do ultimately arise . . . "); *In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ. 02 CV 870-J, 2002 WL 32769239, at *11 (S.D. Cal. Oct. 11, 2002) (appointing "co-lead plaintiffs, one to lead litigation with respect to the section 11 plaintiffs and another to lead litigation with respect to the section 10(b) plaintiffs."); *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *11 (N.D. Cal. Nov. 28, 2001) (appointing one stockholder and one bondholder co-lead plaintiffs, with each having "final decision-making authority for" their respective issues.); *In re PSINet Sec. Litig.*, No. 00-1850 (E.D. Va. Jan. 19, 2001) (appointing separate lead plaintiffs for shareholders, bond purchasers and

preferred shareholders); *In re Williams Sec. Litig.*, No. 02-CV-72 (June 21, 2002) (consolidating noteholder and shareholder cases with bifurcated subclasses following company's bankruptcy filing); *see also Muzinich v. Safety-Kleen Corp.*, No. 3:00-1145-17 (D.S.C. Aug. 3, 2000) (noting potential conflicts of interest between shareholder and bondholder claims following company's bankruptcy filing but encouraging coordination of discovery in parallel actions).

Here, all of the movants besides Patterson have interests antagonistic to the proposed class. To avoid such conflicts between Terra token purchasers and UST/LUNA token purchasers, Patterson should be appointed as Lead Plaintiff as he is the only movant who can represent all of the tokens at issue without conflict. At a minimum, Patterson should be appointed as Co-Lead for the purchasers of the non UST/LUNA tokens within the Terra ecosystem to ensure that the interests of all Terra token investors in the Class are adequately protected. A movant that does not have, at the absolute minimum, both of the "sister" tokens (UST and LUNA) should have their lead plaintiff motion categorically denied. The claims alleged in this action are related to an algorithmic stablecoin (UST) that maintains its peg to $1 based in relation to its sister token (LUNA). Any plaintiff that does not have both of these tokens (at a bare minimum) simply cannot adequately represent the class. Movant Tobias only claims to have suffered losses from UST. Since Movant Tobias only has a single security at issue in this action (and even that is exponentially less than the actual presumptive lead, Movant Golder), his lead plaintiff motion should be denied.

**B.      Patterson Has the Largest Financial Stake in Multiple Tokens Subject to the Complaint**

As noted above, no other movant can assert claims based on tokens beyond UST and LUNA. As such, Patterson has the "largest financial interest in the relief sought" based on these tokens. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *In re Cavanaugh*, 306 F.3d at 730.

**C.      Other Movants Suffer from Unique Defenses**

The presumption in favor of appointing the movant with the largest financial interest may be rebutted if that movant would be subject to unique defenses that could result in a finding that the lead plaintiff is inadequate or that class cannot be certified. *See* 15 U.S.C. §78u-

4(a)(3)(B)(iii)(II)(aa)-(bb). Here, all of the movants other than Patterson are subject to such unique defenses. First, every movant except of Patterson will be subject to real standing challenges since none of them have demonstrated standing for anything other than the UST and LUNA tokens. Notably, Movants Ng (ECF. No. 28), Villasenin (ECF. No. 24), and Tobias (ECF. No. 19) do not even have both of the "sister" tokens UST and LUNA, which are absolutely crucial for standing purposes. And none of the other movants besides Patterson have all of the Terra Tokens at issue. Patterson is the only moving plaintiff not subject to a standing challenge and should, thus, be appointed lead over the other movants. *See Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *7 (N.D. Cal. Nov. 8, 2019) (finding the failure to adequately plead standing to pursue Securities Act claims rendered a lead plaintiff movant atypical under Rule 23). The lack of standing of the other movants here also renders them atypical of the purported class since the other movants have not "suffered the same injuries as absent class members." *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).

Second, Movants NG (ECF. No. 28) and Villasenin (ECF. No. 24) are both foreign investors living outside of the U.S. This fact also subjects them to additional unique defenses not applicable to Patterson beyond their fatal standing issues. This court (and others) have long held that foreign investors like Movants NG and Villasensin are not the "most adequate" plaintiff despite their presumptive lead status. *See*, *e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) (finding that movants that "suffer[ed] from the same . . . foreign investor issues" were "not fit to be appointed lead plaintiff" and that their presumptive lead status had been overcome); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (declining to appoint "foreign" movants as lead plaintiff and reasoning that "the distances involved and some differences in business culture would impede their ability to manage and to control American lawyers conducting litigation in California"); *see also Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (declining to appoint as lead plaintiff a German institutional investor that purchased the securities on a foreign

1  exchange because doing so would be "improvident" in light of the "substantial" arguments for its
2  exclusion from the class).

3       Patterson is the only movant without conflict or antagonistic issues with the class he seeks
4  to represent.  This rebuts the presumptive lead status of each of the other movants with larger
5  financial interests in just two of the tokens at issue.

6       **D.**     **Patterson's Choice of Counsel Should Be Appointed Lead Counsel**

7       Because Patterson should be appointed as Lead Plaintiff for the entire class (or, at the very
8  least, the vast majority of the unregistered securities at issue in the complaint), his choice of
9  counsel should be appointed as Lead Counsel.  The PSLRA vests authority in the lead plaintiff to
10 select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v);
11 *Cavanaugh*, 306 F.3d 734-35.  As such, this Court should not disturb the lead plaintiff's choice of
12 counsel unless necessary to "protect the interests of the class[.]"  15 U.S.C. §78u-
13 4(a)(3)(B)(iii)(II)(aa); *see also Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 712
14 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court
15 should generally defer to that choice.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d
16 Cir. 2001)); *In re Cavanaugh*, 306 F.3d at 733, n.12.

17      In light of the foregoing, the Court should approve Patterson's selection of Scott+Scott as
18 Lead Counsel for the entire class (or at a bare minimum for the Terra tokens that he uniquely has
19 standing to assert claims on).  The Court can be assured that by approving Patterson's choice of
20 counsel, the putative Class will receive the highest caliber of representation.

21      **E.**     **Scott+Scott Should Be Appointed as Lead Counsel**

22      Rule 23(g)(3) of the Federal Rules of Civil Procedure grants the Court authority to appoint
23 pre-certification "interim" class counsel.  *See* Fed. R. Civ. P. 23(g)(3).  The appointment of interim
24 class counsel is discretionary and is particularly suited to complex claims, such as the non-
25 securities claims asserted in the complaint.  *See* MANUAL FOR COMPLEX LITIGATION (Fourth)
26 §21.11 (2004).  Critically, as the 2003 Advisory Committee Notes explain, interim counsel should
27 be appointed "if necessary to protect the interests of the putative class[.]"  Fed. R. Civ. P. 23(g)(3),
28

7

MEMO. OF LAW IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS
LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

Advisory Committee's Notes (2003); *see also Diaz v. Univ. of S. California*, No. 20-cv-4066, 2020 WL 5044419, at *4 (C.D. Cal. July 17, 2020) (finding appropriate appointment of interim class counsel where there were "competing lawsuits"). Designation of lead counsel for the non-securities claims protects class members because it "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Aberin v. Am. Honda Motor Co., Inc*., No. 16-CV-04384-JST, 2017 WL 3641793, at *1 (N.D. Cal. Aug. 24, 2017) (quoting MANUAL FOR COMPLEX LITIGATION (Fourth) (2004) §21.11).

Fed. R. Civ. P. 23(g)(1)(A) provides the criteria a court considers in deciding whether to appoint Interim Co-Lead Class Counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). None of these factors are individually determinative; rather, they provide a framework under which the Court may determine whether counsel can fairly and adequately represent the class. Further, the Court may consider any other criteria it deems relevant. Fed. R. Civ. P. 23(g)(1)(B).

### 1. Scott+Scott Has Done the Most Comprehensive, Meaningful Work in This Action Thus Far

Scott+Scott is the only firm that can claim to have done any work to ***help this class*** prior to filing this Action. Importantly, Scott+Scott alone conducted extensive detailed factual and legal research to unravel the complexity of novel blockchain technology (*e.g*., the algorithmic "stablecoin" functionality) alleging the best possible claims in the complaint. Scott+Scott additionally investigated Defendants' conduct in light of the prevailing precedent. These efforts resulted in the filing of a highly detailed complaint, asserting four claims for relief beyond the federal securities claims governed by the PSLRA (*i.e*., conspiracy, aiding and abetting, and unjust enrichment claims under California, as well as a federal RICO claim). Scott+Scott also conducted

1  an extensive investigation into Defendants' deep ties to California for personal jurisdiction and
2  venue purposes.
3    Moreover, since filing the operative (and only) complaint, Scott+Scott has been in contact
4  with over 1,400 class members, many of whom are seeking to be active participants, confidential
5  witnesses, or whistleblowers in the case going forward.  Scott+Scott intends to use the information
6  provided by these absentee class members in an amended complaint once a lead plaintiff has been
7  appointed.  Furthermore, Scott+Scott has created a network whereby these absentee class members
8  can have their voice heard.  In a case as large as this one, it is important to ensure that the litigation
9  is being driven by the plaintiffs not simply the attorneys.  Scott+Scott is the only firm that has done
10 the work to set up such a network for class members.
11   In short, none of the other movants can claim to have done anything other than waiting for
12 another firm (*i.e.*, Scott+Scott) to actually do the work of investigating the claims, marshalling the
13 facts, developing the legal theories, and actually bringing the claims at issue in this litigation. This
14 factor should weigh heavily in favor of appointing Scott+Scott as Lead Counsel.

### 2. Counsel's Experience in Handling Complex Actions

16   As set forth in Mr. Patterson's opening motion, Scott+Scott specializes in complex
17 litigation, including an emphasis on class action matters.  *See* Jasnoch Decl. Ex. C (firm resume)
18 (ECF No. 25-4).  Based on the experience gained in the successful prosecutions and landmark
19 litigation victories, Scott+Scott is uniquely positioned to represent the interests of the proposed
20 class to lead the successful prosecution of this case.

### 3. Counsel's Knowledge of the Applicable Law

22   Scott+Scott has the requisite knowledge of the substantive and procedural law applicable
23 to the claims asserted in this case.  In fact, Scott+Scott is one of the only moving law firms to have
24 any experience with cryptocurrency litigation whatsoever.  Scott+Scott has been recently
25 appointed lead counsel in multiple other cryptocurrency-related lawsuits.  *See In re Ethereum Max*
26 *Investor Litigation*, No. 2:22-cv-00163-MWF-(SKx) (C.D. Cal) (ECF No. 29) (alleging celebrity
27 influencers like Kim Kardashian, Paul Pierce, and Floyd Mayweather Jr. engaged in a "pump and

dump" scheme of the EMAX token); *Combs v. Safemoon, LLC*, No. 2:22-cv-01108-SVW-MRW (C.D. Cal) (ECF No. 52) (alleging the project developers and company executives improperly marketed the SAFEMOON token to retail investors); and *Pasquinelli v. HUMBL LLC*, No. 3:22-cv-00723-AJB-BLM (S.D. Cal) (ECF No. 22) (alleging 10b fraud claims related to common stock and 12(a)(1) claims related to the company's the BLOCKS tokens). Similarly, Scott+Scott is also counsel in other cryptocurrency class action cases currently being litigated around the country. *See*, *e.g.*, *Morgan v. Constellation Networks,* Case No. 3:21-cv-08869 (JSW) (N. D. Cal) (alleging that defendants improperly excluded investors from a "token swap"); *Goines v. Celsius,* Case No. 3:22-cv-03600 (D.N.J.) (alleging 12(a)(1) and 10b claims on behalf of retail crypto investors who, like the investors in this action, saw their investments plummet due to misconduct by company executives).

More importantly, **Scott+Scott has already successfully plead violations under §12(a)(1)** ***of the Securities Act in another cryptocurrency litigation***. *See* Order, *Ocampo v. Dfinity USA Research LLC*, No. 21-CIV-03843 (September 1, 2022) (denying demurrer of section 12(a)(1) claims and granting leave to amend additional control person claims) (filed herewith as Exhibit 1 to the Declaration of John T. Jasnoch in Further Support of Motion of Nick Patterson for Appointment as Lead Plaintiff and Approval of Lead Counsel). This highly-specific experience in crypto litigation, coupled with the firm's vast experience in successfully litigating securities claims generally (*see* Firm Resume), distinguishes Scott+Scott from all of the other movants.

Scott+Scott a is also well-versed in the various discovery issues that may arise during this litigation. While much of the conduct giving rise to Plaintiff's and the Class' claims took place in the United States, evidence of the conduct may be found abroad. Obtaining that evidence will require navigating the complex requirements of foreign jurisdictions' discovery laws, as well as utilization of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. Scott+Scott, with multiple international offices, has demonstrated their ability to effectively conduct discovery abroad on several occasions. For example, in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, Scott+Scott successfully applied for and received

international judicial assistance in the United Kingdom to take the depositions of several witnesses. *See*, *e.g.*, *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789, (S.D.N.Y) at ECF Nos. 1174, 1276-1281, 1294, and 1295.  Scott+Scott anticipates this case necessitating similar undertakings.  For example, Scott+Scott's New York, San Diego, and London offices have already conducted the research and are preparing to seek a Worldwide Freezing Order against the international defendants in order to protect against the hiding of funds.

### 4. Scott+Scott Will Commit Substantial Resources to Litigation

Scott+Scott has more than 100 attorneys across the globe that specialize in class action litigation and has the financial wherewithal to have advanced millions of dollars on behalf of the classes they have represented.  The firm is likewise prepared to advance similar substantial sums in the prosecution of this case.

### F. Discretionary Factors Favoring Appointment of Scott+Scott as Lead Counsel over Both the Securities and Non-Securities Claims

Rule 23(g)(1)(B) states that courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Several additional factors support appointment of Jasnoch as Lead Class Counsel:  First, Paterson is the only proposed lead plaintiff that can legitimately claim to represent the entire class.  Second, through their extensive, multi-decade experience prosecuting complex class actions with the highest standard of professionalism, Scott+Scott has developed significant relationships with industry experts, regulatory personnel, and settlement administration experts.  These relationships have already been put to work as the firm continues to investigate the highly-complex and tangled web of blockchain transactions at issue in this litigation, as well as developing information from potential confidential witnesses and whistleblowers that have reached out to my firm since it filed this action months ago.  Third, Scott+Scott has longstanding relationships with many of the lawyers and most of the plaintiffs' firms involved in this litigation.  In fact, Scott+Scott has been appointed co-lead counsel with counsel for Movant Goldberg in the *Humbl* action (as well as having them serve as additional counsel in the *Safemoon* action).  Scott+Scott has also either currently or previously served as co-

1   counsel with all but one of the other movants.  Should the Court find it appropriate, Scott+Scott is
2   more than willing to work cooperatively with the other plaintiffs' counsel in this action.
3          Fourth, the bench and bar have recognized the importance of considering diversity as a
4   relevant factor in selecting interim class counsel.  *See*, *e.g.*, *City of Providence, Rhode Island v.*
5   *AbbVie Inc.*, No. 20-CV-5538, 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020).  Scott+Scott,
6   was recently recognized by Law360 as a "Ceiling Smasher" for its representation of women in
7   their equity partnership.  Female attorneys make up more than a third of Scott+Scott's equity
8   partnership and Scott+Scott's Executive Committee.  Scott+Scott's commitment to diversity does
9   not end with the identity of those attorneys set to staff this action or with simply "look[ing] good
10  on paper."[1]  Far from merely promoting diversity quotas or "box-ticking,"[2] Scott+Scott has had a
11  long-standing commitment to equity and diversity in the workplace, which is one of the reasons it
12  was recognized by U.S. News & World Report for 2021 as a "Best Law Firm."  Scott+Scott has
13  numerous attorneys throughout offices in New York, Connecticut, California, Ohio, and Virginia,
14  as well as abroad in London, Amsterdam, and Germany.  Complementing its litigators are the
15  firm's in-house investigation department and eDiscovery litigation support team.  This firm is
16  committed to employing a diverse group of attorneys to work on this action.
17         In addition to Scott+Scott's commitment to work-place equity, Scott+Scott has been at the
18  forefront in litigation representing consumer's rights.  Scott+Scott represented the Vulcan Society,
19  the fraternal organization of black firefighters, as well as three FDNY minority applicants against
20  the City of New York alleging the Fire Department of the City of New York had engaged in certain
21  practices which had a disparate impact upon Black and Latino applicants in violation of Title VII
22  of the Civil Rights Act of 1964, the New York State Human Rights Law, and New York City
23  Administrative Code.  *United States of America and The Vulcan Society v. The City of New York*,
24  No. 07-cv-2076 (S.D.N.Y).  In 2014, a $98 million dollar settlement was reached on behalf of

---

[1]   *See* BOLCH JUDICIAL INSTITUTE, DUKE LAW GUIDELINES AND BEST PRACTICES ADDRESSING CHRONIC FAILURE TO DIVERSIFY LEADERSHIP POSITIONS IN THE PRACTICE OF LAW (Part 1) (May 10, 2018).

[2]   *Id.*

12

Black and Latino candidates. In addition, Scott+Scott represented workers of United Parcel Service ("UPS") nationwide, alleging that UPS violated the Americans with Disabilities Act. *See Hohider v. United Postal Service, Inc.*, No. 07-4588 (W.D. Pa). Concurrently, as part of the firm's focus on linking diversity initiatives with pro bono programs, Scott+Scott continues to strengthen its unique collaboration with local bar association activities. Through its work with the Center for Women & Enterprise, Scott+Scott has helped female entrepreneurs obtain formal certification for woman-owned businesses and gain access to public funding and corporate markets. In short, Scott+Scott has a host of attorneys with diverse backgrounds, related experience, and a history of successfully representing clients of all types. If appointed, these vast resources will be brought to bear to represent the diverse interests of all Class members.

Finally, another aspect of representation to consider is the connection that counsel has with potential class members. As Professor Bryant Garth noted, "A court presented only with arguments, not with the representatives of real constituencies, might ignore the interests and views of what might be a majority of a lawsuit's beneficiaries."[3] This sentiment was endorsed by former dean of Harvard Law School, Professor Martha Minow, who observed:

> **It is not enough merely to protect or advocate a legal interest. . . . [T]he representative in some way must stand for, symbolize, or depict the members of the class**. . . . Part of the advocacy, part of the right to be heard seems to include the presentation and representation of actual people who in some important way look like those they represent. That resemblance may serve as a proxy or predictor for who is likely to share interests or have access to knowledge about the interests of the others. But that resemblance may be important separately for the symbolic effect in the represented community and in the fora where they perform their representative tasks.[4]

(Emphasis Added.)

In this regard, Patterson very much symbolizes the members of the class. Indeed, the class members in this case are predominantly retail investors, not so-called crypto whales. This

---

[3] Bryant G. Garth, *Conflict and Dissent in Class Actions: A Suggested Perspective*, 77 NW. U. L. REV. 492, 503 (1982).

[4] Martha L. Minow, *From Class Actions to Miss Saigon: The Concept of Representation in the Law*, 39 CLEV. ST. L. REV. 269, 294-95 (1991) (emphasis added).

background, coupled with Scott+Scott's extensive class action experience, makes Patterson particularly well suited to advocate for the many retail investors who make up the class here.

## III.      CONCLUSION

For the foregoing reasons, Patterson respectfully requests that the Court: (i) appoint him as Lead Plaintiff of the entire class (or at a minimum as Co-Lead Plaintiff for the Terra Tokens that he alone has standing to pursue claims on); (ii) approve his selection of Scott+Scott to serve as Lead Counsel over the securities claims; and (iii) appoint Scott+Scott as lead counsel over the non-securities claims.

DATED:  September 2, 2022         **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

  *s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Sean T. Masson (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
smasson@scott-scott.com

*Attorneys for Lead Plaintiff Movant Nick Patterson*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on September 2, 2022, at San Diego, California.

 *s/ John T. Jasnoch*
JOHN T. JASNOCH (CA 281605)