# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| DANIEL OCAMPO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC; DFINITY STIFTUNG; ANDREESEN HOROWITZ; POLYCHAIN CAPITAL; DOMINIC WILLIAMS; and DOES 1-20,<br><br>Defendants. | Case No.: 21-CIV-03843<br><br>Assigned for All Purposes to Hon. Danny Y. Chou<br><br>**ORDER OVERRULING IN PART AND SUSTAINING IN PART DEMURRER**<br><br>**FILED**<br>SAN MATEO COUNTY<br>SEP 0 1 2022<br>Clerk of the Superior Court<br>By _____<br>DEPUTY CLERK |

The Demurrer to Plaintiff's Amended Class Action Complaint (Demurrer) of Defendants Dfinity USA Research, LLC and Dfinity Foundation (collectively, Dfinity) came for hearing before this Court on September 1, 2022 at 9:00 a.m. All parties appeared through their counsel. Having considered all papers filed in support of and in opposition to the Demurrer, oral arguments of the parties, any testimony and evidence presented at the hearing, and all other pleadings and papers on file herein, the Court:

1. OVERRULES the Demurrer of Dfinity Foundation to the first cause of action for violation of sections 5(a), 5(c), and 12(a) of the Securities Act of 1933 (Securities Act);

2. SUSTAINS WITH LEAVE TO AMEND the Demurrer of Dfinity USA Research, LLC to the first cause of action for violation of sections 5(a), 5(c), and 12(a) of the Securities Act; and

3. SUSTAINS WITH LEAVE TO AMEND the Demurrer of Dfinity to the second cause of action for violation of section 15 of the Securities Act.

ORDER OVERRULING DEMURRER IN PART AND SUSTAINING DEMURRER IN PART - 1

# BACKGROUND[1]

Dfinity Foundation is a nonprofit organization that created the Internet Computer Project (ICP) tokens. (FAC, ¶ 16.) Dfinity USA Research LLC (Dfinity USA) is a U.S.-based subsidiary of Dfinity Foundation. (*Id.*, ¶ 15.) Defendant Dominic Williams is the "Founder, President, member of the Board of Directors, and Chief Scientist of Dfinity and Internet Computer project . . . since October 2016."[2] (*Id.*, ¶ 17.)

Dfinity's Internet Computer Project "is a smart contract platform designed to power blockchain versions of the internet's most popular applications . . . which would displace the need to use centralized, gatekeeping hosting services like Amazon Web Services." (FAC, ¶ 44.) "The purported native cryptocurrency for Dfinity's Internet Computer project is the ICP token." (*Id.*, ¶ 45.)

"From 2016 to the present," Defendants promoted Dfinity's Internet Computer Project and its ICP tokens. (FAC, ¶ 73.) These promotional efforts included a web page (*id.*, ¶ 74), blog posts (*id.*, ¶¶ 76-79), articles (*id.*, ¶¶ 80-82, 84), statements at conferences (*id.*, ¶ 82), tweets (*id.*, ¶ 83), virtual events (*id.*, ¶ 85), and press tours (*id.*, ¶ 86-89).

"In February 2017, Dfinity held a 'Seed' fundraising round . . . to use for its operations and investments in projects developed using ICP technology." (FAC, ¶ 51.) As part of the "Seed" round, Dfinity raised approximately $40 million from " 'enthusiasts.' " (*Id.*, ¶¶ 51, 54.) Although no ICP tokens existed at the time of the Seed fundraising round (see *id.*, ¶ 46 ["all 469,213,710 ICP tokens in existence were simply created by Dfinity in May 2021"], Dfinity, at some point, promised its " 'Seed' Contributors' " 24.72% of the ICP tokens created in May 2021 (*id.*, ¶ 57).

In January or February 2018, Dfinity held a " 'Strategic' fundraising round." (FAC, ¶ 58.) Investors in that round received 7% of the ICP tokens created in May 2021. (*Id.*, ¶ 60.)

In August 2018, Dfinity held its " 'Private Presale' " of ICP tokens. (FAC, ¶ 62.) Participants in the Presale were "eligible to receive 4.96% of the initial supply of ICP tokens." (*Ibid.*)

---

[1] These facts are taken from the First Amended Class Action Complaint for Violations of the Securities Act of 1933 (FAC).
[2] Dfinity Foundation, Dfinity USA, and Williams are referred to as Defendants.

In May 2021, Dfinity created 469,213,710 ICP tokens "as part of its "Genesis" launch, the "functional equivalent of an" Initial Coin Offering (ICO). (FAC, ¶ 46.) The ICP tokens were "listed on multiple cryptocurrency exchanges like Coinbase, Binance, Huobi, OKEx and others." (*Id.*, ¶ 90.)

Dfinity Foundation owned and controlled 107,024,038 ICP tokens in a wallet address (Dfinity Wallet). (FAC, ¶ 192.) From that wallet, Dfinity made nine deposits of ICP token to three Coinbase custodial wallet addresses on May 10, 2021—the opening date of the Genesis Launch. (*Id.*, ¶ 194). As for the ICP tokens sold on Coinbase shortly after the opening of the Genesis Launch, Dfinity sold those tokens "directly to investors" like Ocampo (*id.*, ¶ 196), by making a series of deposits of its ICP tokens to three Coinbase wallet addresses a few hours before the opening of the Launch (*id.*, ¶¶ 191, 197-202). Thus, Dfinity "provided *all of the liquidity for ICP trading on Coinbase on the first day of the Genesis Launch.*" (*Ibid.*, emphasis added.) "The transaction histories of" the three Coinbase wallets reveal that they 'belong to an exchange that is facilitating trading on its platform." (*Id.*, ¶ 203.) "Upon information and belief," the three Coinbase wallets were "owned and directly controlled by Dfinity." (*Ibid.*) This is confirmed by "Coinbase's own terms of service"—which establish that Coinbase did not own any of the ICP tokens sold from the three Coinbase wallets on May 10, 2021. (*Id.*, ¶¶ 204-205.) It is also confirmed by Williams' public acknowledgment that Dfinity did not restrict its sale of ICP tokens during the first day of the Genesis Launch on May 10, 2021 (*id.*, ¶ 206) and the Arkham Report (*id.*, ¶ 207).

The ICP tokens "debuted at a price of $731 on its first day." (FAC, ¶ 93.) Soon after, however, the price of ICP tokens plummeted, eventually dropping as low as $30. (*Id.*, ¶¶ 94, 112-113, 115, 120.) Despite this, investors in the Seed, Strategic, and Private Presale fundraising rounds "saw a staggering return on" their investments. (*Id.*, ¶¶ 71-72.)

"Plaintiff Daniel Ocampo is an individual and a resident of the State of California." (FAC, ¶ 14.) He purchased ICP tokens "shortly after the opening of the Genesis Launch on May 10, 2021 through June 25, 2021 on the U.S. based cryptocurrency exchange Coinbase, and suffered losses on those investments." (*Id.*, ¶ 14.) Because Ocampo purchased ICP tokens soon after the opening of the Genesis Launch on May 10, 2021, he necessarily purchased those tokens "directly" from Dfinity and "received title from Dfinity to" those tokens. (*Id.*, ¶ 196.)

ORDER OVERRULING DEMURRER IN PART AND SUSTAINING DEMURRER IN PART - 3

Ocampo filed this class action on July 15, 2021. (Compl.) On April 8, 2022, this Court sustained Dfinity's demurrer to Ocampo's original complaint with leave to amend. In doing so, the Court rejected Dfinity's claim that Ocampo's causes of action, as pled, were "barred by the three-year statute of repose." (Apr. 8, 2022, at p. 3.) The Court, however, sustained the demurrer as to the cause of action under sections 5 and 12 of the Securities Act because Ocampo had "not adequately pled facts establishing that" Dfinity was a "statutory seller." (*Id.* at p. 4.) The Court also sustained the demurrer as to the cause of action under section 15 of the Securities Act because Ocampo had "not alleged a primary violation of section 12(a)(1) of the Securities Act against any Defendant or facts sufficient to establish that any Defendant is a control person as defined by 15 U.S.C. § 770(a)." (*Id.* at pp. 6-7.)

Ocampo filed the FAC on May 24, 2022. Like the original Complaint, the FAC alleges two causes of action again Dfinity: (1) violation of sections 5 and 12 of the Securities Act; and (2) violation of section 15 of the Securities Act.

## DISCUSSION

### A. Legal Standard

On a demurrer, the Court must "assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts." (*Miklosy v. Regents of the University of Cal.* (2008) 44 Cal.4th 876, 883 (*Miklosy*).) The Court "may also consider material documents referred to in the allegations of the complaint" (*City of Port Hueneme v. Oxnard Harbor Dist.* (2007) 146 Cal.App.5th 511, 514 (*Port Hueneme*)) and "consider matters that may be judicially noticed" (*Brown v. Deutsche Bank Natl. Trust Co.* (2016) 247 Cal.App.4th 275, 279). The Court does "not, however, assume the truth of contentions, deductions or conclusions of law." (*Guerrero v. Pacific Gas & Electric Co.* (2014) 230 Cal.App.4th 567, 571.)

### B. Analysis

#### 1. *Section 12 Claim*

Dfinity contends Ocampo lacks standing to assert a claim under section 12 of the Securities Act because he has not pled facts establishing that Dfinity are statutory sellers. The Court disagrees as to Dfinity Foundation but agrees as to Dfinity USA.

ORDER OVERRULING DEMURRER IN PART AND SUSTAINING DEMURRER IN PART - 4

Under section 12(a)(1) of the Securities Act, "[a]ny person who—[¶] (1) offers or sells a security in violation of section 77e of this title . . . [¶¶] . . . shall be liable . . . to the person purchasing such security from him . . . ." (15 U.S.C. § 77l(a)(1).) In construing this language, *Jensen v. iShares Trust* (2020) 44 Cal.App.5th 618, 646 (*Jensen*) held that "[l]iability . . . 'extends only to the "immediate sellers" of securities or "those who solicit purchasers to serve their own financial interests or those of the securities owner." ' " Thus, Ocampo may assert a cause of action under section 12(a)(1) of the Securities Act against the person who actually "pass[ed] title to the" ICP tokens to him (see *Jensen*, at p. 648), or who "direct[ly] or immediate[ly]" solicited his purchase of the tokens (*id.*, at p. 649).

Here, Ocampo alleges that Dfinity Foundation sold "its ICP [t]okens directly to investors on Coinbase, *including to Plaintiff who received title from Dfinity to the ICP [t]okens he purchased shortly after the opening of the Genesis Launch*." (FAC, ¶ 196, emphasis added.) This allegation, which the Court must assume is true (*Miklosy, supra*, 44 Cal.4th at p. 883), is sufficient to establish that Dfinity Foundation was the "immediate seller" of the ICP tokens that Ocampo purchased when the Genesis Launch opened on May 10, 2021. (*Jensen, supra*, 44 Cal.App.5th at p. 646, internal quotations omitted.)

Even without this allegation, Ocampo has alleged facts creating a reasonable inference that Dfinity Foundation "pass[ed] title to the" at least some of the ICP tokens that Ocampo purchased on Coinbase on May 10, 2021. The FAC alleges facts establishing that the ICP tokens offered for sale on Coinbase at the opening of the Genesis Launch on May 10, 2021 came solely from Dfinity Foundation. (See FAC, ¶¶ 196-202.) The FAC further alleges facts establishing that the transfer of those ICP tokens by Dfinity Foundation to Coinbase did not transfer ownership of the tokens from Dfinity Foundation to Coinbase or any other person or entity.[3] (See *id.*, ¶¶ 203-207.) Finally, the FAC alleges that Ocampo purchased ICP tokens "*on* May 10, 2021" and "*shortly after* the opening of the Genesis Launch." (*Id.*, ¶ 14, emphasis added.) These allegations are sufficient to create a reasonable inference that Ocampo purchased ICP tokens *directly* from Dfinity Foundation immediately after ICP tokens were first made available for purchase on May 10, 2021 as part of the Genesis Launch. (See *Miklosy*, at p. 883 [court must draw all reasonable inferences from the facts alleged].)

---

[3] Whether Coinbase's User Agreement is sufficient to establish this fact cannot be resolved on a demurrer.

ORDER OVERRULING DEMURRER IN PART AND SUSTAINING DEMURRER IN PART - 5

Dfinity Foundation's arguments do not compel a contrary conclusion.

First, Ocampo's failure to expressly allege that Dfinity Foundation owned or controlled the "[n]ine pass-through wallet addresses" that received the initial deposits of ICP tokens that "supplied the trading liquidity to Coinbase on opening day" does not compel a contrary conclusion. (FAC, ¶ 194.) The other allegations in the FAC establish that the transfer of ICP tokens from the Dfinity Wallet to the three Coinbase wallets for the Genesis Launch on May 10, 2021 did not transfer ownership of those tokens from Dfinity Foundation to any other person or entity. (See *id.*, ¶¶ 196-202.) It is therefore reasonable to infer that Dfinity Foundation owned or controlled those pass-through wallet addresses as well.

Second, the other allegations in the FAC do not conflict with Ocampo's allegation that the ICP tokens available for sale on Coinbase at the opening of the Genesis Launch came from Dfinity Foundation. For example, paragraphs 65, 66, 70, and 71 of the FAC merely establish the allocation of ICP tokens as of May 10, 2021. They say nothing about whose ICP tokens were sold on Coinbase at the beginning of the Genesis Launch on May 10, 2021. Meanwhile, paragraph 121—the only other paragraph cited by Dfinity (see Reply, at p. 4)—merely states that "project insiders deposited billions of dollars' worth of ICP to exchanges at the time of the Genesis listing and the following weeks." (FAC, ¶ 121.) It does not state that any ICP token deposited by those insiders were available for purchase at the *very inception* of the Genesis Launch—much less on Coinbase. Indeed, paragraph 121 confirms that "deposits made by the Dfinity Treasury provided *initial liquidity* on exchanges." (Emphasis added.) This is consistent with allegations Dfinity Foundation deposited the ICP tokens "that supplied the trading liquidity to Coinbase on opening day"—i.e., May 10, 2021 (FAC, ¶ 194)—and that Ocampo purchased on Coinbase on May 10, 2021 "shortly after" the Genesis Launch began (*id.*, ¶ 14).

Thus, Ocampo has plead facts establishing that Dfinity Foundation qualifies as a statutory seller. He therefore has standing to assert a claim against Dfinity Foundation under sections 5 and 12 of the Securities Act. Accordingly, the Demurrer of Dfinity Foundation to the first cause of action is overruled.

Whether Dfinity USA qualifies as a statutory seller based on the facts alleged in the FAC is not so clear. Most of the allegations relating to the ICP tokens sold on Coinbase at the opening of the Genesis Launch on May 10, 2021 group Dfinity Foundation and Dfinity USA together, without distinguishing between them. (See FAC, ¶¶ 1 [Foundation and Company "collectively referred to as

'Dfinity' "], 191, 194-207.) However, the lone exception is arguably significant. Paragraph 192 states that the "Dfinity Wallet is directly owned and controlled by the Dfinity Foundation"—without mentioning Dfinity USA. The apparently purposeful failure of Ocampo to allege that Dfinity USA owned or controlled the Dfinity Wallet casts doubt on the other allegations in the FAC asserting that Dfinity USA passed title of the ICP tokens sold to Ocampo at the opening of the Genesis Launch. On the other hand, the allegation that Dfinity Foundation owned and controlled the Dfinity Wallet does not necessarily preclude an inference that Dfinity USA also exercised some ownership or control over that Wallet. Nonetheless, because there appears to be some inconsistent allegations as to Dfinity USA's relationship to the Dfinity Wallet, and because only "material facts property pleaded that are not inconsistent with other allegations" should be considered by the Court on a demurrer (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292), the Court sustains the Demurrer of Dfinity USA to the first cause of action. The Court, however, grants Ocampo leave to amend so he can clarify any apparent inconsistencies in the FAC as to Dfinity USA's ownership or control of the ICP tokens sold at the opening of the Genesis Launch.

  2. *Section 15 Claim*

    To allege a violation of section 15 of the Securities Act, Ocampo must "allege (1) a primary violation of federal securities law and (2) that" Dfinity" exercised actual power or control over the primary violator." (*Welgus v. TriNet Group, Inc.* (N.D.Cal. Jan. 17, 2017) 2017 WL 167708, *20.) Ocampo has satisfied the first prong by alleging facts sufficient to establish that Dfinity violated sections 5 and 12 of the Securities Act. (See, *supra*, at pp. 4-6.) The FAC, however, added *no* new allegations relating to the control issue. Nor does the FAC explain how "Dfinity" had "the power to direct or cause the direction of" "Dfinity." (See FAC, ¶¶ 227-230.) To the extent that Ocampo is alleging that Dfinity Foundation exercised actual power or control over Dfinity USA or vice versa, the FAC has not "plead the circumstances of the control relationship with sufficient particularity." (*In re Peregrine Systems, Inc. Securities Litigation* (S.D.Cal. Mar. 30, 2005) 2005 WL 8158825, *74.) Accordingly, the Demurrer is sustained as to the second cause of action for violation of section 15 of the Securities Act. The Court, however, gives Ocampo a last chance to plead this cause of action because it cannot conclude, at this

time, that there is no "reasonable possibility the defect can be cured to state a cause of action." (Code Civ. Proc., § 430.41, subd. (e)(1).)

### C. Evidentiary Issues

Ocampo filed a declaration attaching the First Amended Class Action Complaint in *Jensen v. iShares Trust*, CGC 16-552567. (See Jasnoch Decl., ex. A.) Dfinity filed a declaration attaching Coinbase's User Agreement. (See Concannon Decl., ex. A.) Neither party, however, requested judicial notice of the attached documents. On the other hand, neither party objected to the Court's consideration of those two documents. The Court has therefore considered both exhibits and takes judicial notice of them on its own motion. In doing so, however, the Court notes that neither document affected the Court's ruling on the Demurrer.

### ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Demurrer of Dfinity Foundation is OVERRULED as to the first cause of action for violation of sections 5 and 12 of the Securities Act.

2. The Demurrer of Dfinity USA is SUSTAINED WITH LEAVE TO AMEND as to the first cause of action for violation of sections 5 and 12 of the Securities Act.

3. The Demurrer is SUSTAINED WITH LEAVE TO AMEND as to the second cause of action for violation of section 15 of the Securities Act.

4. Ocampo MUST file a second amended complaint within 10 days from the date of written notice of entry of this Order.

5. The stay of discovery imposed under 77 U.S.C. § 77z-1(b)(1) is LIFTED as to Dfinity Foundation.

Dated: Sept. 1, 2022

Danny Y. Chou
Judge of the Superior Court