John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

[Additional Counsel on Signature Page.]

*Attorneys for Lead Plaintiff Movant Nick Patterson*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/ DEFINANCE TECHNOLOGIES OY, GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS, and DO KWON,<br><br>Defendants. | Case No. 3:22-cv-03600 (TLT)<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Date:        December 13, 2022<br>Time:        2:00 p.m.<br>Courtroom: San Francisco Courthouse<br>                    Courtroom 9, 19 Floor<br>Judge:       Hon. Trina L. Thompson |

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................... 1

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

    I.    INTRODUCTION ............................................................................................... 1

    II.    ARGUMENT ....................................................................................................... 1

        A.    Movants Golder and Tobias Have Antagonistic Conflicts with the Proposed Class Rendering Them Inadequate to Serve as PSLRA Lead Plaintiff ............................................................ 1

        B.    Movant Tobias Has a Defective PSLRA Certification ................... 5

        C.    The Moving Papers of Movants Golder and Tobias Demonstrate that They Both Do Not Understand the Allegations in The Proposed Complaint ........................................... 6

        D.    In the Event Movant Patterson Is Not Selected as Sole Lead, He Should at Least Be Appointed Co-Lead to Ensure the Proposed Class's Interests Are Protected ........................................ 6

    III.    CONCLUSION ................................................................................................. 10

i

REPLY IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
 521 U.S. 591 (1997)......................................................................................................................2

*Burke v. Ruttenberg*,
 102 F. Supp. 2d 1280 (N.D. Ala. 2000).........................................................................................8

*EZRA Charitable Tr. v. Rent–Way, Inc.*,
 136 F. Supp. 2d 435 (W.D. Pa. 2001)............................................................................................8

*Friedman v. Quest Energy Partners LP*,
 261 F.R.D. 607 (W.D. Okla. 2009)................................................................................................7

*In re Cable & Wireless, PLC Sec. Litig.*,
 217 F.R.D. 372 (E.D. Va. 2003) ....................................................................................................7

*In re Cree, Inc., Sec. Litig.*,
 219 F.R.D. 369 (M.D.N.C. 2003) ..................................................................................................8

*In re Lucent Techs., Inc. Sec. Litig.*,
 221 F. Supp. 2d 472 (D.N.J. 2001)................................................................................................8

*In re Mersho*,
 6 F.4th 891 (9th Cir. 2021) ............................................................................................................2

*In re Peregrine Sys., Inc. Sec. Litig.*,
 No. 02 CV 870, 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002)....................................................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 182 F.R.D. 42 (S.D.N.Y. 1998) .....................................................................................................8

*In re WorldCom, Inc. Sec. Litig.*,
 294 F. Supp. 2d 392 (S.D.N.Y. 2003)............................................................................................9

*In re Worlds of Wonder Sec. Litig.*,
 1990 WL 61951, slip op. (N.D. Cal. 1990)....................................................................................6

*In re Zillow Grp., Inc. Sec. Litig.*,
 No. C17-1387, 2020 WL 6318692 (W.D. Wash. Oct. 28, 2020) ..................................................6

*Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*,
 No. 00 Civ. 152, 2000 WL 486956 (D.N.J. Apr. 24, 2000) ..........................................................8

*Malasky v. IAC/Interactivecorp*,
 No. 04 CIV. 7447, 2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004)...............................................10

*Miller v. Ventro Corp.*,
    No. 01 Civ. 1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001)..........................................7

*Mohanty v. BigBand Networks, Inc.*,
    No. C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008).....................................1, 2

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................................2, 7, 10

*Weisz v. Calpine Corp.*,
    No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ......................................9

**Statutes, Rules, and Regulations**

15 U.S.C.
    §77e..................................................................................................................................4
    §78f(l) ..............................................................................................................................4
    §78o(a) .............................................................................................................................4
    §78u-4(a)(2)(A)(iv)..........................................................................................................6
    §78u-4(a)(3)(B)................................................................................................................1
    §78u-4(a)(3)(B)(v) ...........................................................................................................1
    §80a–7..............................................................................................................................4

**Federal Rules of Civil Procedure**
    Rule 23 .....................................................................................................................2, 6, 9
    Rule 23(a)(4)....................................................................................................................1
    Rule 23(g) ........................................................................................................................1

iii

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Whether the Court should appoint Lead Plaintiff Movant Nick Patterson ("Patterson") as Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B);

2. Whether the Court should approve Patterson's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the Class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and

3. Whether the Court should appoint Scott+Scott as Lead Counsel for the non-securities claims pursuant to Rule 23(g).

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Of the five movants that initially sought appointment as lead plaintiff for a class of Terra token purchasers, only three remain in contention: Movants Golder (ECF No. 32), Tobias (ECF No. 19), and Patterson (ECF No. 25). While Movants Golder ("Golder") and Tobias ("Tobias") have a greater financial interest in particular securities at issue, their respective presumptive lead status is rebutted for failure to satisfy the requirements under Rule 23(g) of the Federal Rules of Civil Procedure. Neither Movant Golder nor Tobias has shown that they are capable (at least on their own) of fairly and adequately protecting the interests of the class. At the same time, both Movant Golder and Tobias are subject to unique defenses that render them incapable of adequately representing the class. Movant Patterson ("Patterson"), conversely, suffers from none of those issues. And, Patterson's selected counsel, Scott+Scott, is uniquely equipped to handle this case.

**II.   ARGUMENT**

    **A.    Movants Golder[1] and Tobias Have Antagonistic Conflicts with the Proposed Class Rendering Them Inadequate to Serve as PSLRA Lead Plaintiff**

The "adequacy" requirement of Rule 23(a)(4) can only be satisfied when the proposed lead plaintiff "does not have interests antagonistic to the proposed class . . . ." *Mohanty v. BigBand*

---

[1] Counsel for Movant Patterson is aware of the allegations against counsel for Movant Golder that Movant Tobias raised in his opposition brief. ECF No. 35 at 2-3. As far as counsel

1
REPLY IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD
PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

*Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, at *5 (N.D. Cal. Feb. 14, 2008); *see also In re Mersho*, 6 F.4th 891, at 899-900 (9th Cir. 2021) ("Courts determine whether a plaintiff will adequately represent a class by answering two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'"); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626-7 (1997) (noting that Rule 23's adequacy inquiry is designed to uncover conflicts of interest between class members and their named representatives and warning that a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members . . . [to ensure the] fair and adequate representation for the diverse groups and individuals affected").  In the event a conflict arises, the court "must then look to the movant with the next largest losses and repeat the inquiry" until the most adequate plaintiff can be found. *Mersho*, 6 F.4th at 899.

A review of some of the allegations in the complaint before this court (as opposed to any allegations Movants Golder and Tobias might claim they can add later to cure their own standing defects)[2] demonstrates that both movants are inadequate due to conflicts of interest with other class members.  Thus, under the terms of the PSLRA, since Movant Patterson is the movant with the next largest losses *and* satisfies all the requirements under Rule 23, he is the most adequate plaintiff and should be appointed lead.

Significantly, the complaint alleges that TerraForm Labs ("TFL") is a company that "hosts, supports, and funds a community of decentralized financial applications and products known collectively as the Terra ecosystem" and that

> "TFL's primary focus is developing, marketing, and selling ***a suite of digital assets and financial products within the Terra ecosystem, including the native and***

---

can tell, there have been no findings of fact regarding these allegations.  Accordingly, Movant Patterson is limiting his discussion on reply to why Movant Golder is inadequate to serve as sole lead plaintiff on different grounds.

[2] See *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) (noting that the supplementation of a movant's losses "'is not contemplated by the PSLRA . . . [and] supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein.'").

*governance tokens within the Terra ecosystem, so-called "stablecoins," a bevy of financial products such as "mirrored assets," bonded assets, liquidity pool tokens*, along with various protocols (e.g., Anchor, Mirror, etc.) to support and facilitate their sale.  These digital assets are *collectively referred to as the "Terra Tokens"* and are worth tens of billions of dollars in total market cap."
¶2.[3]

This case inherently involves more than just the UST or LUNA – the sister tokens that operate in tandem as TFL's algorithmic stablecoin.  That Movants Golder and Tobias moved for lead in an action without first addressing their standing deficiencies – particularly in light of the specific allegations in the complaint, which clearly shows that the case is about the broader Terra ecosystem – demonstrates their inadequacy.

For example, in the declaration that Movant Golder submitted in support of his motion for appointment as lead plaintiff, he states that he purchased UST, LUNA, and WLUNA, and that "because he suffered substantial losses, [he is] motivated to seek the best possible result for myself and the *proposed* class."  ECF No. 32-5, ¶3 (emphasis added); *see also id*., ¶4 (confirming that Movant Golder had "discussed the claims against Defendants" and his "interest in serving as Lead Plaintiff" with counsel).  Moreover, Movant Golder affirmed that he understood that his duties as lead plaintiff "including fair and adequate representation to all member of the class. . . ."  ECF No. 32-5, ¶5.  Likewise, Movant Golder affirmed that he "will . . . review pleadings and motion papers." ECF No. 32-5, ¶7. Given the phrasing of this declaration, along with his earlier statement that he "discussed the claims against Defendants," it is unclear whether Movant Golder properly reviewed the allegations in the operative complaint and appreciated his potential conflict of interest with other class members.

Movant Golder's interest lies in having whatever recovery is successfully achieved in this case go solely to holders of UST, LUNA, and wLUNA.  It would be against his interest to ultimately include the claims against the entire "suite of digital assets and financial products within the Terra ecosystem" that are alleged in the complaint in this case after being appointed sole lead. In particular, any recovery for the current class would include holders of TFL's "native and

---

[3] Unless otherwise noted, references to "¶" refer to the paragraphs in the operative complaint.

3
REPLY IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

governance tokens" and the "bevy of financial products such as "mirrored assets," bonded assets, [and] liquidity pool tokens" in the Terra ecosystem. This would dilute the recovery of a plaintiff like Movant Golder who only holds a select few of the digital assets at issue. Consequently, Movant Golder has an interest in using his "input in litigation decisions" (*see* ECF. No. 32-5, ¶7) to drop the claims against the broader Terra ecosystem tokens and amend the complaint to only include claims involving UST and LUNA. In short, his personal financial interest is antagonistic to the interests of the proposed class in this action.

Movant Tobias is in an arguably more conflicted position. To begin, while Tobias explicitly states that he "reviewed *a* complaint and authorized its filing or the filing of an amended complaint" (ECF. No. 19-3 at 2), it is not clear that he reviewed *this* complaint, which includes a "bevy" of Terra tokens beyond the UST that he purchased. As with Movant Golder, Tobias has an interest in excluding the broader Terra ecosystem claims from the case going forward as it would dilute his recovery beyond strictly UST holders. This would be especially detrimental to the *class in this case*, many of whom hold the pair of UST and LUNA tokens together.

Movant Tobias would have a similar conflict of interest towards pursuing claims involving the TFL's Mirror tokens. ¶¶47-49. These tokens in particular represent a significant source of liability against the Company and its CEO, Do Kwon as they are also the subject of an active SEC investigation for similar violations as those alleged presently. ¶49. As the complaint states:

> The Commission's Mirror Protocol Investigation concerns, among other things, whether persons or entities *have engaged in acts constituting violations of various provisions of the federal securities laws,* including, but not limited to, Section 5 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77e], prohibiting the unregistered offer or sale of securities; Section 6(l) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78f(l)], prohibiting any person from effecting transactions in a security-based swap with or for a person that is not an eligible contract participant unless such transaction is effected on a national security exchange; Section 15(a) of the Exchange Act [15 U.S.C. §78o(a)], prohibiting acting as an unregistered broker or dealer; and Section 7(a) of the Investment Company Act of 1940 ("Investment Company Act") [15 U.S.C. §80a–7], prohibiting securities transactions by unregistered investment companies, *in connection with Terraform's involvement with the Mirror Protocol, including Terraform's participation in the creation, promotion, and offer to sell mAssets and MIR tokens to U.S. investors*.

1 ¶49 (emphasis added).

2 The Complaint further alleges that on May 7, 2021, as part of its investigation of TFL for, among other things, the sale of unregistered securities regarding TFL's Mirrored Assets and the MIR token, the Securities Exchange Commission ("SEC") issued an order directing TFL and Kwon to produce documents and provide testimony concerning the Mirror Protocol and its related tokens. According to a declaration submitted in support of the SEC's subsequent motion to comply with subpoenas, the SEC's investigating attorney, Roger J. Landsman, confirmed that "the SEC staff was investigating whether MIR tokens and mAssets were securities and had concerns these potential securities were being offered and sold in the United States in violation of the federal securities laws . . . ." ¶132. Notably, the Landsman declaration notes Terraform's contacts with the United States: "For example, I explained that Terraform employees continued to promote the Mirror Protocol and its associated assets (the MIR tokens and mAssets) to investors located in the United States." ¶132. These allegations help support the jurisdictional and venue claims against TFL and Kwon – which are surely to be challenged in this action after lead plaintiff and counsel are appointed. Tobias' conflict, thus, is that he will be motivated to reduce the number of non-UST claimants overall to benefit himself personally even though it could jeopardize the proposed class's ability to maintain jurisdiction over the nominal defendant and chief wrongdoer.

### B.  Movant Tobias Has a Defective PSLRA Certification

While Movant Tobias takes Movant Golder to task for having a defective PSLRA certification (*see* ECF No. 37 at 3-4), it appears that his own PSLRA certification is also fatally deficient by his own standards. In particular, the Loss Chart submitted by Tobias does not actually list the specific token(s) that he purchased. Only by the "Price per Token" can it be inferred that he purchased UST. *See* ECF No. 19-4. Movant Golder's PSLRA certification only makes things more unclear. In the chart he included for his "purchases," it lists the "Type of Security" as being "Common Stock" (ECF. No. 19-3 at 2). Likewise, the chart asked for the "Price per *Share*" (ECF. No. 19-3 at 2) (emphasis added).

This case has nothing to do with common stock or shares. Rather, this is a cryptocurrency case, and Movant Tobias' inferred UST holding is one half of a pair of intrinsically linked tokens that create an algorithmic stablecoin. It is a single security in a case about many securities. And Tobias' certification failed to set forth "all of the transactions of the plaintiff in *the security that is the subject of the complaint* during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv) (emphasis added).

### C. The Moving Papers of Movants Golder and Tobias Demonstrate that They Both Do Not Understand the Allegations in The Proposed Complaint

As noted in Movant Patterson's opposition brief, Scott+Scott is the only firm that can claim to have done any work to assert the purposed class's claims prior to filing this Action. Importantly, Scott+Scott alone conducted the extensive factual research to unravel the complexity of novel blockchain technology (*e.g.*, the algorithmic "stablecoin" functionality). It appears that Movant Tobias does not understand or appreciate the nature of this algorithmic stablecoin, how TFL has a pair of sister tokens – UST and LUNA – pegged to each other, and how the allegations of the purposed class encompass both of these tokens. If he had, Tobias surely would not have moved for lead plaintiff knowing that he had standing to bring a claim on only one of the tokens at issue. The same must be true for Movant Golder. The complaint clearly alleges that the class includes purchasers of a suite of digital assets within the Terra ecosystem. Despite this, Movant Golder still moved with losses in only UST, LUNA, and wrapped LUNA. At a minimum, Rule 23 requires that a plaintiff be familiar with the basic elements of the claims and understand the "gravamen" of the complaint. *See In re Zillow Grp., Inc. Sec. Litig.*, No. C17-1387, 2020 WL 6318692, at *6 (W.D. Wash. Oct. 28, 2020) (citing *In re Worlds of Wonder Sec. Litig.*, 1990 WL 61951, slip op. at 3 (N.D. Cal. 1990)).

### D. In the Event Movant Patterson Is Not Selected as Sole Lead, He Should at Least Be Appointed Co-Lead to Ensure the Proposed Class's Interests Are Protected

Unlike Movants Golder and Tobias, Movant Patterson has actual standing to pursue the claims at issue in this action. And unlike the other movants who only have standing to bring claims

1  for UST and LUNA losses (and would need to recruit a named plaintiff later on to shore up their
2  inadequacies), Patterson can pursue claims for the broader Terra ecosystem, having suffered
3  financial losses with UST, LUNA, as well as with Terra tokens like the ANC (Anchor) token,
4  mirrored assets (mBTC, mETH, mVIXY), bonded assets (like bETH, bLUNA) and other
5  unregistered securities described in the complaint.  ¶¶48-56.  More importantly, as discussed
6  above, as a result of their lack of standing Movants Golder and Tobias have debilitating conflicts
7  of interest with the proposed class and claims in the complaint at issue.  As such, should this Court
8  determine that the PSLRA mandates the appointment of either Golder or Tobias due to one of them
9  having the greatest financial losses, it would be in the best interest of the proposed class to appoint
10 a co-lead to act as a check against decisions that would adversely affect the greater Terra token
11 class.  *See, e.g.*, *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 610-11 (W.D. Okla.
12 2009) (noting that "a single lead plaintiff will be unable to have undivided loyalties to vigorously
13 pursue recovery on behalf of both classes due to the inherent conflict that is caused by the
14 competition for the same limited funds for recovery").

15       Numerous courts around the country have determined that, under similar circumstances,
16 the interests of a proposed class would be served best by the appointment of co-lead plaintiffs.  *In*
17 *re Peregrine Sys., Inc. Sec. Litig.*, No. 02 CV 870, 2002 WL 32769239, *12 (S.D. Cal. Oct. 11,
18 2002) (appointing co-lead plaintiffs to represent Securities Act claimants and Exchange Act
19 claimants to "better represent the class members' varying and perhaps conflicting interests");
20 *Pirelli*, 229 F.R.D. at 416 (appointing co-lead plaintiffs in an action where the conflicting views
21 of the lead plaintiff movants made it "outright imperative" to have a joint decision-making
22 structure); *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003)
23 (concluding that the presumptively most adequate plaintiff, an individual investor, was not
24 "particularly . . . ideal" and deciding to appoint an institutional investor – and competing movant
25 – as co-lead plaintiff in furtherance of the PSLRA's goal to involve institutional investors in
26 securities class actions); *Miller v. Ventro Corp.*, No. 01 Civ. 1287, 2001 WL 34497752, at *11–12
27 (N.D. Cal. Nov. 28, 2001) (appointing as co-lead plaintiffs separate movants in order to ensure
28

1. that the distinct classes involving both bondholders and stockholders were adequately represented); *In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 483, 488 (D.N.J. 2001) (having consolidated a new wave of complaints with a series of previous actions for which a lead plaintiff had already been appointed, concluding that, in light of the different claims raised over varying periods of time, appointing a co-lead plaintiff would provide "additional representation [that] may benefit the class and provide flexibility, if needed, in the future" and that appointment of the co-lead plaintiff in question was "consistent with the purpose of the PSLRA"); *Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, No. 00 Civ. 152, 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000) (appointing two competing movants as co-lead plaintiffs in view of the desirability of having both institutional investors and individual investors as lead plaintiffs "since each may bring a unique perspective to the litigation"); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1342–43 (N.D. Ala. 2000) (appointing as lead plaintiff a committee composed of certain competing movants on the grounds that the inclusion of each member of the committee "shores up holes in the representation" of the proposed class and "does not appear likely to result in a significant loss of control by plaintiffs over the litigation"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (appointing three competing movants as co-lead plaintiffs on the grounds that such a structure "provides the proposed class with the substantial benefits of joint decision-making and joint funding and is consistent with the language of the PSLRA and the purpose of Congress in enacting it").

In addition, other courts are amenable to the idea of the appointment of co-lead plaintiffs when the need for or benefit of such a structure was established in the circumstances of the particular case. *See, e.g.*, *In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003) ("Plaintiffs have not identified, nor has the court determined, any reason why co-lead plaintiffs would be helpful or appropriate or why the presumptive lead plaintiff alone should not be appointed . . . . Plaintiffs have done nothing to show that joint lead plaintiffs are necessary or beneficial to the class."); *EZRA Charitable Tr. v. Rent–Way, Inc.*, 136 F. Supp. 2d 435, 444 (W.D. Pa. 2001) (declining to appoint a competing group of plaintiffs as co-lead plaintiffs where the

group in question had "not established that its perspective as a small group of individual investors will materially add to the overall quality of lead representation in this case"); *see also In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 422 (S.D.N.Y. 2003) ("While the PSLRA certainly envisions appointment of co-lead plaintiffs, there was no competitor or group of competitors for the position of lead plaintiff that presented any serious challenge on the merits to the application made by [the movant later named lead plaintiff] when measured by the standards that apply to selection of lead plaintiff.").

Given the unique circumstances of this action and the Court's discretion in the lead plaintiff appointment process, a co-lead plaintiff structure is appropriate here. Such a structure, as noted in Movant Patterson's leadership papers, will help to ensure that adequate resources, experience, and professionalism are available to the prospective class in the prosecution of this action. Moreover, because Movants Golder and Tobias have interests antagonistic to the proposed class, Patterson should be appointed as Co-Lead Plaintiff to avoid such conflicts between Terra token purchasers and UST/LUNA token purchasers. Since "[n]either party, standing alone, is a particularly ideal lead plaintiff" the Court should "exercise[ ] its discretion" and appoint one of them to serve as Co-Lead Plaintiff with Movant Patterson. *See Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002). The decision in *Weisz* is instructive in this regard. There the court exercised its discretion under the PSLRA and Rule 23 of the Federal Rules of Civil Procedure to appoint a movant that had significantly less losses than any other movant (especially the first presumptive lead that had millions in losses) to be co-lead plaintiff. *Id*. at *9. The court noted that the PSLRA contemplated having a class representative with a "sufficient interest in the outcome of the case to ensure vigorous advocacy" and found that the small and larger movants "collectively have a significant financial stake in the action, and therefore, they may be assumed to have a strong interest in fully prosecuting the action." *Id*. at *8-9 ("The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately be represented in the prosecution of this action.").

Finally, creating a co-lead structure here "will have the salutary effect of providing greater stability in the prosecution of [this action], should a decision be reached at some later stage in the litigation that either co-lead plaintiff will not adequately represent the class or that the financial interest of one of the co-lead plaintiffs demonstrably eclipses that of the other co-lead plaintiff." *Pirelli*, 229 F.R.D. at 420; *see also Malasky v. IAC/Interactivecorp*, No. 04 CIV. 7447, 2004 WL 2980085, at *14 (S.D.N.Y. Dec. 21, 2004) (finding that a co-lead plaintiff structure "provides flexibility and stability to the class" in the event either co-lead plaintiff "fails to address certain interests within the class, drops out of the action or compromises the class in some fashion")

## III. CONCLUSION

For the foregoing reasons, Movant Patterson respectfully requests that the Court: (i) appoint him as Lead Plaintiff of the entire class (or at a minimum as Co-Lead Plaintiff with one of the other movants); (ii) approve his selection of Scott+Scott to serve as Lead Counsel over the securities claims; and (iii) appoint Scott+Scott as lead counsel over the non-securities claims.

DATED:  September 9, 2022                      **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 *s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Sean T. Masson (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
smasson@scott-scott.com

*Attorneys for Lead Plaintiff Movant Nick Patterson*

10
REPLY IN FURTHER SUPPORT OF MOTION OF NICK PATTERSON FOR APPOINTMENT AS LEAD PLAINTIFF & APPROVAL OF LEAD COUNSEL – CASE NO. 3:22-cv-03600(TLT)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on September 9, 2022, at San Diego, California.

           *s/ John T. Jasnoch*
           JOHN T. JASNOCH (CA 281605)