Edward Normand (*pro hac vice forthcoming*)
Joseph Delich (*pro hac vice forthcoming*)
Alex Potter (*pro hac vice forthcoming*)
Ivy T. Ngo (SBN 249860)
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: (646) 350-0527
tnormand@rochefreedman.com
jdelich@rochefreedman.com
apotter@rochefreedman.com
ingo@rochefreedman.com

*Counsel for Lead Plaintiff Movant Josh Golder*
*and Proposed Co-Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK PATTERSON, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/DEFINANCE TECHNOLOGIES OY GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS and DO KWON,<br><br>      Defendants. | Case No.: 3:22-cv-03600-TLT<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOSH GOLDER'S MOTION TO APPOINT HIM LEAD PLAINTIFF AND APPROVE HIS SELECTION OF ROCHE FREEDMAN LLP AS LEAD COUNSEL**<br><br>Date: December 13, 2022<br>Time: 2:00 p.m.<br>Courtroom: No. 9, 19th Floor<br><br>Judge: Hon. Trina L. Thompson |

There are currently three competing motions before the Court for appointment as lead plaintiff for the proposed class (the "Class"). While five individuals moved initially, two movants filed statements of non-opposition,[1] which leaves just three movants seeking appointment: Josh Golder, Michael Tobias, and Nick Patterson. *See* Dkt. Nos. 41 (Golder), 42 (Patterson), 37 (Tobias). Golder respectfully submits this reply in further support of his motion for appointment as lead plaintiff and approval of his selection of Roche Freedman LLP as Lead Counsel (Dkt. No. 32).

<u>**ARGUMENT**</u>

**I.    THE COURT SHOULD APPOINT GOLDER LEAD PLAINTIFF**

In appointing a Lead Plaintiff under the PSLRA, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit"—that movant is "the presumptive lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). The Court "must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* To overcome the strong presumption that the movant with the largest financial loss should be lead plaintiff, the PSLRA requires "proof," not speculation or accusations, that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case to rebut Golder's presumptive status as lead plaintiff.

**A.    Golder is the presumptive Lead Plaintiff**

With aggregate Terra Token losses of **$28.7 million**, Golder has the largest financial interest in this matter by far. Golder is accordingly the presumptive lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569, at *4 (N.D. Cal. Dec. 17, 2018). For that reason, both Ng and Villasinin filed motions of non-opposition, and Patterson

---

[1] Movants Shing Yiu Ng and José Luis Villasenin filed statements of non-opposition because they do not have the largest financial interests in the relief sought by the class and accordingly are not the presumptive lead plaintiffs. *See* Dkt. Nos. 38, 35.

recognizes in his opposition that Golder is the "actual presumptive lead" and that Tobias has "exponentially less" losses. Dkt. No. 42 at 5.

**B.    Golder's presumptive status as lead plaintiff has not been rebutted**

**1.    Golder's choice of Roche Freedman as counsel does not make him inadequate**

The PSLRA "mandate[s] that the lead plaintiff, not the district court, selects lead counsel." *Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 710 (9th Cir. 2009). Tobias argues in opposition that the Court should find Golder inadequate as lead plaintiff because he selected Roche Freedman LLP—one of the most prominent crypto litigation firms in the country—as counsel. Tobias's argument is premised solely on the argument that a single Roche Freedman partner, Kyle Roche, is being "subject to intense scrutiny" in crypto cases because of certain comments he made that were illegally captured and then strategically spliced out of context. Dkt. No. 37 at 2.

But such concerns regarding Golder's choice of lead counsel "is relevant only to determine whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 732–33 (9th Cir. 2002). And even in that case, "the choice of counsel is only an indicator—and a relatively weak one at that—of plaintiff's fitness." *Id*. at 733.

*First*, Tobias raises no "proof" that Golder's selection of Roche Freedman as Lead Counsel is so "irrational" or represents any conflict of interest that might impact his adequacy. Instead, Tobias relies on a "report" issued by an anonymous "media" outlet, apparently controlled by defendants in another class action, that has a clear agenda, is not balanced, and that includes misleadingly spliced videos that are taken out of context. The article itself makes claims and allegations that have absolutely no connection to the misleading video snippets themselves. Moreover, while Tobias raises letters drafted to another court by defendants in another action

seeking to strategically leverage this circumstance, he fails to attach the Firm's response which debunks the report's absurd allegations. *See* Normand Decl. Ex. A (Roche Aff.), B, C.

Such discredited "reports" are a far cry from what's required to disqualify counsel. In fact, numerous courts have rejected disqualifying entire law firms as class counsel, even when there has been ***an actual indictment*** of associated attorneys (which is a far cry from the situation here). *See Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 487 (E.D. Pa. 2007) (certifying class and noting "the existence of the indictment does not overcome our finding that the firm is well-qualified to serve the interests of the class in this particular case. There is no evidence that any wrongdoing has occurred with respect to the filing of the claim here, or that any of the indicted partners have participated in the case since the filing of the Amended Complaint."). In fact, in *In re Novastar Fin. Securities Litig.*, 2007 WL 465649, at *4 (W.D. Mo. Feb. 8, 2007), the Court certified a class and appointed Milberg Weiss and Entwistle because

> [t]he attorneys listed in the indictment are not involved in this case and have, in fact, taken a leave of absence from the firm. Entwistle & Cappucci LLP, the co-lead counsel involved in this case assures all parties against any behavior of the type alleged in the indictment. Further, removal of Milberg Weiss as co-lead counsel would not only harm the class, but prematurely punish the firm for unproven allegations. The Court does not believe it is be appropriate to consider disqualification of the firm unless and until the claims have been substantiated.

In such circumstances, "no one should be punished through disqualification." *State Compensation Ins. Fund v. Drobot*, 2014 WL 12579808, at *10 (C.D. Cal. July 11, 2014); *accord TI Payments LLC v. New U Life Corp.*, 2021 WL 139989, at *9-11 (D. Nev. Jan. 14, 2021) (under the "high standard" to be met, finding not "necessary" the disqualification of law firm for individual lawyer's possession of information from prior client on the conditions that the lawyer withdraws from the case, the firm screens the lawyer, and the lawyer will not share in any fees).

*Second*, while the statements Tobias takes issue with are demonstrably false, and Mr. Roche has sworn to that, Mr. Roche has nonetheless taken extraordinary steps to protect against even any appearance of impropriety. The Firm has removed him from this case, from its entire class action practice group, and has screened him from all class action cases (this case included). *See* Dkt. No. 43 (Notice of Withdrawal). Moreover, to ensure there is no cause for distraction whatsoever, Mr.

Roche has forfeited any financial interest in this case. It would make no sense to deprive Mr. Golder of his chosen counsel, and disqualify the *entire* Firm, for a single lawyer's comments. This is especially true where the Firm did not even draft the complaint in this action, and Mr. Roche's sole participation in this case has been the preparation of initial lead plaintiff papers. As discussed above, courts have declined to subject firms to such punitive measures based on allegations of improper conduct by individual attorneys. And any suggestion of inadequacy owing to the fact that some Roche Freedman lawyers own AVAX tokens is meritless. The result of this lawsuit would not have any particularized effect on Ava Labs or the AVAX crypto-asset.

*Third*, Golder's choice of Roche Freedman is in the best interests of the Class. The Court should not credit competing counsel's attempt to utilize unfounded allegations to undermine the otherwise clear benefit to the Class of Roche Freedman serving as Lead Counsel. The lawyers from the Firm that remain on this case are some of the most experienced crypto-class action litigation attorneys in the country and the same attorneys working on the Firm's many other crypto-related cases and class actions, *see* Dkt. No. 32 at 10-11 (discussing Mr. Normand's practice), including with Patterson's counsel Scott+Scott, who positively noted that collaboration here. *See* Dkt. No. 42 at 11.

### 2.   Tobias fails to show how Golder's PSLRA certification is flawed

Tobias claims that Golder "appears" to have "provided an incomplete listing of his transactions" such that his PSLRA certification is defective. Dkt. No. 37 at 4. Tobias bases his objection not on any evidence of such an "incomplete listing," but solely on Golder's PSLRA certification stating that all of his transactions in the Terra Tokens were attached, "to the best of my knowledge." There is no dispute that Golder has submitted "a sworn certification" as required by the PSLRA. 15 U.S.C. § 78u-4(a)(2)(A). And Tobias points to no case law for the proposition that the inclusion of the "to the best of my knowledge" language regarding the movant's transaction history compromises an otherwise valid PSRLA certification, let alone overcomes Golder's presumptive status as lead plaintiff. There are multiple reasons why such a rule would make little sense.

*First*, courts have found that where one "submit[s] a sworn declaration subject to the penalty of perjury," that the inclusion of language that the statements are "correct and true to the best of my knowledge" does not obviate the oath. *United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002); *accord Kelly v. Richard*, 2019 WL 935117, at *9 (S.D. Ohio Feb. 26, 2019) (noting the party "cites no authority and we are aware of none that the prefatory language 'to the best of my knowledge' insulates a person from a subsequent perjury conviction."), *supplemented,* 2019 WL 2088067 (S.D. Ohio May 13, 2019), *report and recommendation adopted,* 2020 WL 419438 (S.D. Ohio Jan. 27, 2020).

*Second*, "since 'it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit [ ] a certificate,' at this stage of the litigation, the adequacy of the certificate should not be the determinative factor in selecting the lead plaintiff." *Bhojwani v. Pistiolis*, 2007 WL 2197836, *8 (S.D.N.Y. July 31, 2007); *see also Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146, 1155 (N.D. Cal. 1999) (concluding that only those filing a complaint need complete a certification, since "[i]t seems strained to recast the words 'filed with the complaint' to mean 'filed with the complaint or motion.'"); *Doherty v. Pivotal Software, Inc.,* No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *7 (N.D. Cal. Nov. 8, 2019) ("That Doherty filed inconsistent shareholder certifications does not prevent him from serving as lead plaintiff.").

*Third*, should the Court find that the "to the best of my knowledge" language is a technical deficiency, it should allow Golder to correct it. *See Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016) ("As the certification requirement in the PSLRA does not have a time limit, many courts have allowed lead plaintiff movants to amend their certifications if issues arose." (collecting cases).)

### 3. Tobias fails to show that Golder's trading history renders him inadequate

Tobias has also failed to rebut Golder's adequacy based on his trading patterns. Courts in this District have found "that whether [movant] is a day trader is inconsequential to his request to be appointed lead plaintiff." *In re Zynga Inc. Sec. Litig.*, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013); *see also Serafimov v. Netopia, Inc.,* 2004 WL 7334061, at *5 (N.D. Cal. Dec. 3, 2004) ("The

5

Ninth Circuit has held that day traders suffer as do other traders under fraud-on-the-market theory. Many districts courts that have considered the issue or surveyed case law have largely concluded that day traders may serve as class representatives"). Nonetheless, Tobias's concern that Golder's trading pattern "belies any true reliance" is misplaced. Dkt. No. 37 at 5 (citing *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008)). Golder states in his motion that he "purchased th[e]se unregistered securities in reliance on Defendants' misrepresentations and omissions" and that he "sold his Terra Tokens at a significant loss following the disclosure of Defendants' fraudulent conduct." Dkt. No. 32 at 8 (citation omitted).

**C.**    **Golder believes a Co-Lead Plaintiff structure with Patterson and their respective counsel (Roche Freedman and Scott+Scott) would be in the best interests of the class**

Patterson requests that he "should be appointed as Co-Lead for the purchasers of the non UST/LUNA tokens within the Terra ecosystem to ensure that the interests of all Terra token investors in the Class are adequately protected." Dkt. No. 42 at 5.

*First*, Golder agrees that appointment of Patterson as Co-Lead Plaintiff would inure to the benefit of the Class by including a Lead Plaintiff that had purchased Terra Tokens related to Defendant's Mirror Protocol. And while Golder previously suggested the Court should not split the Class into securities and non-securities claims (Dkt. No. 41 at 5), a Co-Lead Plaintiff and Co-Lead Counsel structure eliminates that prospect.

*Second*, it would also inure to the benefit of the Class because Patterson's counsel, Scott+Scott, has researched and drafted the original complaint in this action, identified additional class members and confidential witnesses in the matter, and the Class therefore stands to substantially benefit from their previous work and ongoing involvement. *See id.* at 9. Moreover, Roche Freedman and Scott+Scott have productively worked on many cases together, which will contribute to their effective representation of the Class. *See* Dkt. No. 42 at 11 ("Scott+Scott has been appointed co-lead counsel with counsel for Movant Goldberg in the Humbl action (as well as having them serve as additional counsel in the Safemoon action)."). Finally, to the extent the Court

has any concerns regarding Golder's choice of Roche Freedman as Lead Counsel (it shouldn't) a Co-Lead Counsel structure with Scott+Scott should allay any such concern.

To be sure, Golder and Roche Freedman are ready to proceed alone if that is the Court's preference, but given the unique tokens Patterson purchased, and the research/work Scott+Scott has done to date, Golder believes a Co-Lead structure would inure to the benefit of the Class.

### **CONCLUSION**

Golder respectfully requests, for the foregoing reasons, that the Court appoint him as Lead Plaintiff and approve his selection of Roche Freedman as Lead Counsel, and further approve Patterson and Scott+Scott as Co-Lead Plaintiff and Counsel.

Dated: September 9, 2022                    Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Edward Normand*
Edward Normand (*pro hac vice forthcoming*)
Joseph Delich (*pro hac vice forthcoming*)
Alex Potter (*pro hac vice forthcoming*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: (646) 350-0527
tnormand@rochefreedman.com
jdelich@rochefreedman.com
apotter@rochefreedman.com
ingo@rochefreedman.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE PURSUANT TO LOCAL RULE 5-1(H)(3)**

I, Ivy T. Ngo, am the ECF User whose ID and password are being used to file this brief. In compliance with Local Rule 5-1(h)(3), I hereby attest that Edward Normand concurs in this filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of September, 2022.


*/s/ Ivy T. Ngo*

Ivy T. Ngo

GOLDER REPLY MEMORANDUM
No. 3:22-cv-03600-TLT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ Ivy T. Ngo*

Ivy T. Ngo

9