# EXHIBIT C



September 6, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *In re Tether and Bitfinex Crypto Asset Litigation*, 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

    We write in reply to Defendants' further additional letter arguing that, despite the strong objection of all five named Plaintiffs, the Court remove Roche Freedman LLP ("Firm") as co-lead counsel in this matter.

    Defendants' initial letter sought the extraordinary remedy of disqualification based solely on a series of spliced video recordings of a single lawyer who has since sworn those statements were false or misinterpreted.

    In addition to Mr. Roche's sworn testimony, the Firm's response marshalled facts that demonstrate the statements are either (i) false, (ii) spun by Defendants to imply something not stated, or (iii) do not provide cause to disqualify the entire Firm. Specifically, the Firm submitted a signed pleading stating unequivocally that the initiation of this matter had nothing to do with any relationship between the Firm and Ava Labs, and that Plaintiffs' retention of the Firm pre-dates any work the Firm did for Ava Labs.[1] Discovery was not, and could not have been, abused because no discovery was produced before the video statements were made. Moreover, while Defendants argue the statements imply discovery abuse occurred, the actual recorded statements *never even mention discovery*, much less that Mr. Roche used it for an improper purpose; the statements refer to whistleblower submissions. The Firm's co-counsel, moreover, approved all discovery requests and likewise deny any wrongdoing. Finally, whether any lawyer in this action (on either side) holds an unrelated cryptoasset is both factually and legally irrelevant.

    The Firm also took appropriate steps to avoid any appearance of impropriety. The Firm removed Mr. Roche from its class action practice group, screened him from this case, and Mr. Roche will not receive any portion of the proceeds from this litigation. That should be the end of it. In fact, while other movants stand to benefit from the Firm's removal, the five named plaintiffs who actually retained the Firm and stand to lose the most if deprived of their counsel of choice, all

---

[1] While it should not be necessary to go further than this, the Firm's partners can prove unequivocally that they began preparing this suit long before they ever met Ava Labs.

Roche Freedman LLP

99 Park Ave., Suite 1910, New York, NY 10016  |  (t) 646.350.0527 (f) 646.392.8842  |  www.rochefreedman.com

The Honorable Katherine Polk Failla
September 6, 2022
Page 2 of 5

oppose the Firm's disqualification, and all "express a strong preference that Roche Freedman remain in the case." DE 234.

Under these circumstances, Defendants' continued insistence that the Firm be removed, despite their inability to show any concrete wrongdoing, demonstrates that the Defendants' request is a litigation tactic intended to remove Plaintiffs' preferred counsel—the firm responsible for originating this case, and the firm with the most cryptoasset litigation experience. The inequity Defendants seek, through this gamesmanship, is particularly sharp given the evidence that the videoclips were the apparent result of efforts by defendants in another class action who are seeking to deter the Firm from prosecuting cryptocurrency cases, and who may have now escalated to threats of violence.[2]

Below, the Firm further addresses and refutes each of the main arguments seeking its disqualification.

*First*, Defendants request directly implicates the well-established law that strongly disfavors strategic motions to disqualify opposing counsel. *Scantek Medical, Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008) ("In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny.") (collecting authority). Defendants actions demonstrate this is a tactic. For example, consistent with the irrelevance of such facts, they have expressed no intent to inquire into co-lead counsel's personal cryptoasset holdings at all. And while all three co-lead counsel helped draft the amended complaint and authorized every discovery request, Defendants only seek to remove this Firm, *i.e.*, the firm that investigated, developed, pursued, and filed the case, and the firm with by far the most experience in the crypto-asset space. Such disqualification efforts are improper. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012) ("It is in a defendant's best interests to object to class counsel who are, in fact, best suited to protect the class [so] . . . new class counsel [] will more readily compromise the claims . . . It is this presumption of strategic behavior by class action defendants that has convinced courts to preclude, or severely limit, their ability to raise alleged ethical violations in the context of class certification."). Consequently, "except in rare cases, ethical issues regarding attorneys are properly dealt with in professional disciplinary bodies rather than by motions to disqualify counsel, which are subject to abuse." *Universal City Studios, Inc. v. Reimerdes*, 104 F. Supp. 2d 334, 358 (S.D.N.Y. 2000), *on reconsideration*, 2000 WL 1016649 (S.D. N.Y. 2000).

To be clear, while Mr. Roche's statements were improper, Defendants have failed to show any evidence that the Firm's attorneys remaining on the case have done anything questionable. On this record, the reasonable inference is that Defendants' continued pursuit of disqualification is because they stand to benefit from it. In short, Defendants wrongly impugn the Firm's motives and

---

[2] In the last several days the Firm has heard these defendants may intend physical harm against Mr. Roche. While it is difficult to verify the severity of this threat, whether someone in fact possesses such an intent, or simply wants Mr. Roche to believe they do, the Firm has contacted law enforcement about the matter.

actions while they would have the Court ignore their own motives in making those accusations—which the law accounts for in strongly disfavoring the relief they seek.

*Second*, Defense counsel argues there has been discovery abuse, but that argument collapses under scrutiny. Mr. Roche never said he shared confidential discovery materials. That is an inference Defendants are urging the Court to make from comments in the video that, Mr. Roche has explained, simply referred to whistleblower/insider submissions. Mr. Roche has now sworn he did not share confidential discovery, the timeline demonstrates such sharing was impossible, the Firm has signed a pleading under Rule 11 that no such discovery was shared, the alleged recipient has likewise denied receiving it,[3] and co-counsel agrees that no improper discovery was sought. Defense counsel nevertheless urges the Court to ignore the facts, timeline, and sworn testimony, construe Mr. Roche's statements in the worst possible way, impute that conduct to the entire Firm, and then disqualify the Firm for it. That is unreasonable.

*Third*, the Firm brought this suit because we concluded, as other analysts in the crypto-asset space had concluded (without appreciating or analyzing the applicable law), that Tether was not fully backed and that Defendants were manipulating prices. Defendants have already tried and failed to show that the allegations based on these conclusions are wrong as a matter of law. The Firm did not bring suit to try to affect the price of any crypto-asset, and the supposed prospect that the prosecution of the lawsuit could have such an effect could implicate any lawyer holding crypto-assets. Nor are Plaintiffs entitled to discovery to determine whether any such motivations are at play. The relevant question, from either an ethical or optical perspective, is whether counsel is mounting non-frivolous claims and defenses and whether counsel is representing the best interests of the class. Any other rule would require Courts supervising class actions to mandate full and frank disclosure of class counsel's assets, and then require that Court—presumably by hiring experts—to determine whether the resolution of the case could affect those assets to such a degree that counsel should be conflicted out of the representation. That has never been the law.

*Fourth*, although we respect our co-counsel's submission, and remain amenable to continuing the good work the firms have done together over the past two years, both the solution they propose and the rationales underlying it are incorrect. Removal of this Firm would not avoid potential discovery disputes, as Defendants reserve the right to take issue with the origins and prosecution of this claim regardless. The proper way to address an argument that co-lead counsel are seeking discovery for the wrong reasons is not to remove this Firm, but for co-lead counsel collectively to show that any such argument is baseless—that the requested discovery is relevant, that no counsel has ever breached the confidentiality order in this case and that there is no reasonable basis for somehow presupposing an officer of the court intends to do so.

In addition, contrary to what seems to be implicit in our co-counsel's submission, their clients are the named Plaintiffs—not absent class members. These Plaintiffs, the ones who have overseen the day-to-day conduct of this litigation for the past three years, "have all reviewed [co-

---

[3] https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752 ("We do not receive materials or information from him").

The Honorable Katherine Polk Failla
September 6, 2022
Page 4 of 5

counsel's] letter and stated that they disagree with its content and recommendation; in short, the named plaintiffs express a strong preference that Roche Freedman remain in the case." DE 234. Under these circumstances, it is incorrect for co-counsel to suggest that our Firm's continued involvement is not in the best interest of the proposed class.

Inasmuch as our co-counsel mean to suggest that the named Plaintiffs are making an ill-informed decision, or one that should simply be disregarded, we disagree. Our co-counsel are understandably upset with the optics of the video statements, but, as detailed above and in our earlier letter, the Firm has addressed those optics. Removing the Firm is not necessary to address any optical issue. In fact, while removing the Firm would inure to co-counsel's financial benefit, it would harm the class and override the named Plaintiff's' express preference. Our co-counsel does not adequately account for these facts in their submission, and they fail to address at all the optical issue they run the risk of raising themselves.[4] They also discount some of the named plaintiffs' statements that they do not feel comfortable continuing acting as a fiduciary to the class without this Firm's continued involvement.

*Fifth*, Defendants' proposed removal would, in multiple respects, send the wrong message. The following is indisputable: someone carefully orchestrated the meetings, statements, and circumstances to record Mr. Roche making compromising statements. Someone then edited the video recordings to feature the statements prompting these submissions, released the edited recordings to the general public on a website along with a story that went far further than the actual statements, and within five minutes of that release, a named defendant in a class action the Firm has brought Tweeted that the video recordings had been released. It is telling that every other story on the website involves those same defendants, that historic postings and registrations demonstrate collaboration between the site and those defendants, and that the release was made less than two weeks before a scheduled oral argument on the motion to dismiss in that class action.

These actions were clearly taken to hurt Mr. Roche, discredit his good work in the cryptocurrency space, and thereby obtain an advantage against the classes we represent in this space. While we do not condone Mr. Roche's statements, we do submit that to afford these Defendants the relief they seek would effectively signal that any and all parties could benefit from targeting opposing counsel and their firms through underhanded means. We respectfully submit that is not good precedent to set or conduct to incentivize.

In this case, in sum, the demanding legal standards for disqualifying the Firm have not been met. Defendants have not even met their initial, burden-shifting showing that any Firm attorney improperly shared any confidential information in this case with any third party. *See Kassis v. Teacher's Ins. & Annuity Ass'n*, 717 N.E.2d 674, 677-78 (N.Y. 1999) (applying this threshold requirement with respect to a firm attorney's alleged acquisition of confidential client information

---

[4] In the absence of any concrete suggestion that the Firm's continued involvement would somehow hurt the case, we believe the message on requests like Defendants' here should be that co-lead counsel in class actions should focus their resources towards prosecuting and winning the case.

The Honorable Katherine Polk Failla
September 6, 2022
Page 5 of 5

at a former law firm). Nor have Defendants shown that any Firm attorney disclosed any confidential information with any third party. In addition, where Mr. Roche has withdrawn from the matter and the Firm has set up an ethical wall preventing his participation, disqualification is not necessary, because there is no evidence that any Firm attorney intends to use any confidential information in this case in any improper respect. *See, e.g.*, *TI Payments LLC v. New U Life Corp.*, Case No. 19-cv-01816-APG-DJA, 2021 WL 139989, at *9-11 (D. Nev. Jan. 14, 2021) (under the "high standard" to be met, finding not "necessary" the disqualification of law firm for individual lawyer's possession of information from prior client on the conditions that the lawyer withdraws from the case, the firm screens the lawyer, and the lawyer will not share in any fees). In such circumstances, "no one should be punished through disqualification." *State Compensation Ins. Fund v. Drobot*, No. SACV 13-956 AG (CWx), 2014 WL 12579808, at *10 (C.D. Cal. July 11, 2014). The "Court's focus must be forward, not backward," and there is "no reason to believe the outcome of this case will be affected if [the Firm] continues to represent Plaintiff[s]." *Drobot*, 2014 WL 12579808, at *10. The ethical wall the Firm has put in place resolves any concerns with any appearance of impropriety going forward and thereby gives the requisite weight to the precept that a "party's entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged absent a clear showing—on which the party seeking disqualification bears the burden—that counsel's removal is warranted." *Total Asset Recovery Servs., LLC v. Huddleston Capital Partners VIII LLC*, No. 1:21-CV-2466-ALC, 2022 WL 1125924, at *1 (S.D.N.Y. Apr. 15, 2022) (quotations omitted). This a proposed class action, to be sure, but as to the Court-appointed lead Plaintiffs, it remains true here that "[d]isqualification denies a party's right to representation by the attorney of its choice." *Id*. (quotations omitted). Finally, for all of these reasons, no submission remotely meets the standard of showing that the Firm's disqualification is "absolutely necessary" under the circumstances. 6 *Newberg & Rubenstein on Class Actions* § 19:13 (6th ed. June 2022 update) (quotations omitted).

For the foregoing reasons we respectfully request that the Court deny Defendants' request or, in the alternative, schedule a conference so that the Firm has an opportunity to address these issues in more detail including any concerns that Your Honor may have.

Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Devin "Vel" Freedman
Edward Normand
Joseph M. Delich
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
vel@rochefreedman.com
tnormand@rochefreedman.com
jdelich@rochefreedman.com