# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HILL,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SILVER LAKE GROUP, L.L.C., et al.,<br><br>　　Defendants. | **ORDER APPOINTING LEAD PLAINTIFF, APPROVING SELECTION OF LEAD COUNSEL, AND CONSOLIDATING CASES**<br><br>Case No. 4:20-cv-02341-JSW<br><br>Re: Dkt. Nos. 25, 36, 52, 54 |
| FNY PARTNERS FUND LP, et al.,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>BC PARTNERS LLP, et al.,<br><br>　　Defendants. | Case No. 4:20-cv-03741-JSW<br><br>Re: Dkt. Nos. 17, 33, 42 |
| SAM RACHIMI,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SILVER LAKE GROUP, L.L.C., et al.,<br><br>　　Defendants. | Case No. 4:20-cv-03766-JSW<br><br>Re: Dkt. Nos. 6, 9, 23 |

Now before the Court are the motions filed by (1) Steven Connor, James Hill, and Sergey Parakhnevich (collectively, "Intelsat Investor Group"); (2) FNY Partners Fund LP, FNY Managed

1

1  Accounts LLC, and Infinity Capital Markets Limited (collectively, "FNY Group"); (3) Walleye
2  Opportunities Master Fund Ltd and Walleye Manager Opportunities LLC (together, "Walleye
3  Group"); and (4) Sam Rachimi for appointment of lead plaintiff, approval of lead counsel, and
4  consolidation of the above-captioned purported class actions alleging securities fraud by
5  defendants BC Partners LLP, Silver Lake Group LLC, Raymond Svider, and Justin Bateman.

The Court finds these motions suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Having carefully reviewed the parties' papers and relevant legal authority, the Court hereby APPOINTS the Walleye Group as lead plaintiff, APPROVES its selection of lead counsel, and CONSOLIDATES the cases.

## ANALYSIS

**A.  Lead Plaintiff.**

    **1.  Legal Standard**

The selection of lead plaintiff and approval of lead counsel must comply with the requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u-4. The PSLRA provides that "the court shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). The "'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Federal Rule of Civil Procedure] 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The statute, therefore, imposes a rebuttable presumption that the most capable plaintiff is the class member with the largest financial interest in the relief sought by the class. *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 584 (N.D. Cal. 1999). Once such a plaintiff is identified, Rule 23(a) requires that the plaintiff must assert claims or defenses that are typical of the claims or defenses of the class and the court must find that the representative parties will fairly and adequately protect the interests of the class. *Cavanaugh*, 306 F.3d at 730 n.5 (citing Fed. R. Civ. P. 23(a)).

The lead plaintiff determination requires three steps. First, the plaintiff files an action and publicizes the claims, class period, and lawsuit and gives notice that "any member of the purported

class may move the court to serve as lead plaintiff." *Id*. at 729; 15 U.S.C. § 78u-4(a)(3)(A)(i). Any member of the purported class may move to serve as lead plaintiff "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Second, the court considers the losses suffered by each movant to select the "presumptively most adequate plaintiff." *Cavanaugh*, 306 F.3d at 729-30. The court then focuses on that plaintiff to determine whether the requirements of Rule 23 are met based on the plaintiff's complaint and declarations. *Id*. at 730. Third, and finally, the other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's compliance with Rule 23 by submitting their own evidence. *Id*. at 730. If the presumptive lead plaintiff does not meet the typicality and adequacy requirements of Rule 23, the process repeats for the plaintiff having the next largest alleged loss. *Id*. at 731.

### 2. Step 1: Timely Filing of Motions

Each of the lead plaintiff motions pending before the Court is timely: the notice of pendency of the first-filed action was published on April 7, 2020, and each of the pending motions was filed no later than June 8, 2020. (*See* Case No. 20-2341, Dkt. No. 53-1.)

### 3. Step 2: Presumptive Lead Plaintiff

The parties do not dispute that the Intelsat Investor Group has the largest financial loss—approximately $834,000 compared to $539,000 for the next largest movant, the Walleye Group. However, after the initial motions were filed, the FNY and Walley Groups changed their stances to seek joint appointment as lead plaintiffs. (*See* Case No. 20-2341, Dkt. No. 84.) Such after-the-fact consolidation is improper. *See In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 19-20 (D.D.C. 2006); *Rozenboom v. Van Der Moolen Holding, N.V.*, No. 03 Civ. 8284, 2004 WL 816440, at *4 (S.D.N.Y. Apr. 14, 2004); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1069 (C.D. Cal. 1999). Consolidating lead plaintiff motions after the initial deadline violates two principles of the PSLRA. *In re Vaxgen Sec. Litig.*, No. C 03-1129-JSW, 2004 U.S. Dist. LEXIS 29812, at **12-13 (N.D. Cal. Apr. 14, 2004). First, it is contrary to the strict sixty day deadline provided by the PSLRA and "effectively render[s] the strict timeliness set forth in the PSLRA meaningless." *Id.* at *14 (quoting *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803. 819 (N.D. Ohio 1999)). Second, it violates the spirit of the PSLRA by encouraging lawyer-driven litigation

3

1   based on artificially created groups. *Id.* at *15; *see In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D.
2   156, 158 (S.D.N.Y. 1997) (in enacting the PSLRA, "Congress hoped that the lead plaintiff would
3   seek the lawyers, rather than having the lawyers seek the lead plaintiff").

4         The facts here confirm both concerns. The FNY and Walleye Groups' consolidation
5   spurred additional arguments and made already unusually-complicated competing lead plaintiff
6   motions more complicated. *See Vaxgen*, 2004 U.S. Dist. LEXIS 29812, at *16 (noting that "the
7   confusion caused by overlapping group memberships and the consequent greater loss asserted by
8   the newly formed group . . . invited additional rounds of replies and sur-replies" and "added to the
9   delay in ruling on the motions"). Moreover, the resulting group—which consists of *five* plaintiffs
10  and *three* lead counsel firms—appears to have little in common and may present conflicts in
11  communication and management of the case. *See XM Satellite Radio*, 237 F.R.D. at 20 n.4 (citing
12  cases that raise concern that "multiplicity of counsel could impede the progress of the litigation,
13  complicate discovery and communication among the parties, and increase the potential for conflict
14  among the plaintiff class"). The Court declines to encourage such plaintiff groups assembled "for
15  the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff"
16  and disregards the FNY and Walleye Groups' amended request. *See Peters v. Jinkosolar Holding*
17  *Co., Ltd.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *8 (S.D.N.Y. Mar. 19, 2012). The Intelsat
18  Group thus has the largest financial stake and is the presumptive "most capable plaintiff."

19        Turning to adequacy and typically, the Intelsat Group has made a preliminary showing that
20  it satisfies the requirements of Rule 23. *See Westley v. Oclaro, Inc.*, No. C-11-2448 EMC, 2011
21  WL 4079178, at *2 (N.D. Cal. Sept. 12, 2011). Similar to the other plaintiffs, the Intelsat Group
22  asserts that it purchased defendants' stock during the class period and suffered loss when their
23  alleged insider trading was revealed. The legal theories appear to be identical across the various
24  actions. Moreover, the Intelsat Group has no obvious conflicts of interests, is represented by
25  competent counsel, and has a substantial financial stake in the outcome. Although the three
26  named plaintiffs comprising the Intelsat Investment Group appear to be unrelated, the Court
27  applies the "rule of reason" and finds that the plaintiffs are adequate because the group is small
28  and cohesive and the individual Intelsat plaintiffs submitted a declaration jointly committing to

1  maximizing recovery and efficiently coordinating among themselves. *See In re Aqua Metals Sec.*
2  *Litig.*, No. 17-CV-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018); (Case No. 20-
3  2341, Dkt. No. 54-4.)

4  Accordingly, the Intelsat Investment Group is the presumptive lead plaintiff.

**4.   Step 3:  Rebuttal of Presumptive Lead Plaintiff**

The FNY and Walleye Groups and Mr. Rachimi raise several concerns regarding the Intelsat Group's adequacy and typicality. The concerns focus on Mr. Parakhnevich, a broker bringing the case on behalf of six unnamed clients. Specifically, the other plaintiffs argue that Mr. Parakhnevich may lack standing because he received the initial assignments from clients orally (the clients subsequently assigned their rights in writing, but only after the lead plaintiff motions were filed), the assignments have purported irregularities, and Mr. Parakhnevich has no "skin in the game" or injury-in-fact because he is obligated to remit any proceeds from litigation back to the clients.[1] (*See* Case No. 20-2341, Dkt. No. 79-3.)

On balance, the Court finds that the other plaintiffs have rebutted the Intelsat Investment Group's typicality as lead plaintiff. Even if the Intelsat Group can ultimately show that the assignments were valid and confer standing, Mr. Parakhnevich undoubtedly has different defenses than the other class members. *See In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC, 12-1030 LHK, 2012 WL 1496171, at *5 (N.D. Cal. April 27, 2012) (declining to appoint lead due to "substantial likelihood that a unique defense could be raised against that plaintiff"); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring that lead plaintiffs are subject to no "unique defenses"). The litigation over Mr. Parakhnevich's standing may prejudice the class at the class certification stage and

---

[1] Typically, an assignee "unquestionably has the same standing to file a complaint that the assignor could have filed." *Northstar Fin. Adv. Inc. v. Schwab Invest.*, 779 F.3d 1036, 1047 (9th Cir. 2015) (quoting *Sprint Commn's Co. v. APCC Servs.*, 554 U.S. 269, 271 (2008)). This remains the case even where the assignee promises to remit all payments back to the assignors. *Sprint*, 554 U.S. at 286-87. While the FNY and Walleye Groups argue that the assignments merely granted power of attorney, they appear to transfer legal title, which is sufficient. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008). Nonetheless, each assignment took place after the lawsuits were filed, and it is unclear whether the alleged oral assignments at the inception of the suit were sufficient (i.e., whether they assigned legal title or something less). *See Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000) (requiring standing "at the outset of the litigation"). The assignments, on their face, enact present grants and do not acknowledge any earlier oral assignments.

would, in any case, subject it to highly individualized determinations inapplicable to the rest of the class. *Cf. In re IMAX Sec. Litig.*, No. 06 Civ. 6128, 2009 WL 1905033, at *2-3 (S.D.N.Y. Jun. 29, 2009) (declining to appoint lead plaintiff due to individualized Article III issues). Accordingly, the Intelsat Investment Group is not the most capable plaintiff.

Turning to the plaintiff with the next highest financial loss, the Walleye Group shows that it has $538,979 losses for the Class Period. The other plaintiffs challenge Walleye Group's loss on the ground that it includes "in-and-out" trades under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). There is considerable dispute, however, regarding whether *Dura* applies to this litigation. In particular, the claims here involve insider trading, not misrepresentation, which may require a different damages analysis. *See, e.g.*, *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 338 (S.D.N.Y. 2014). In any case, many courts have declined to apply *Dura* at the lead plaintiff stage, finding that the fact-specific inquiry of whether plaintiff's losses were caused by defendants' fraud is inappropriate for such early resolution. *See Pelmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011) (recognizing "different methods to calculate financial interest" and that many courts "equate financial interest with actual economic losses suffered"); *Fialkov v. Celladon Corp.*, 15cv1458 AJB (DHB), 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) (adopting "the most expansive view of potential recovery"); *cf. Cavanaugh*, 306 F.3d at 730 & n.4 (permitting district courts to "select accounting methods that are both rational and consistently applied" without requiring a specific method). In light of the lack of clarity regarding the recovery in this case, the Court adopts an expansive view of financial loss and finds that Walleye Group is presumptively the next most capable plaintiff.[2]

Because the Walleye Group appears to otherwise satisfy Rule 23 requirements, having the same claims and defenses as the other plaintiffs and no apparent conflicts of interest or individual defenses,[3] the Court appoints the Walleye Group as lead plaintiff.

---

[2] As noted in the FNY and Walleye Groups' reply, the other plaintiffs disagree on the amount of loss under the *Dura* methodology, confirming that the issue is not yet ready for resolution.

[3] The only other challenge to the Walleye Group's typicality and adequacy comes from its status as a net seller. This issue is largely coterminous with whether "in-and-out" losses are recoverable, and the Court does not address it at this stage for the same reasons.

B.   **Lead Counsel.**

The PSLRA provides that once the most adequate plaintiff is selected, the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 784-u(a)(3)(B)(v). Although courts have the power to approve lead counsel, the choice is "an important client prerogative" and lies "in the hands of the lead plaintiff." *Cavanaugh*, 306 F.3d at 735. Thus, courts will not disturb a lead plaintiff's choice of counsel unless that choice "is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id*. at 733. That is not the case here. Labaton Sucharow LLP, chosen by the Walleye Group as lead plaintiff, has strong experience prosecuting securities class actions and has served as lead counsel in many high profile securities actions. The liaison counsel, Wagstaffe, von Loewenfeldt, Busch & Radwick LLP, also has experience. Accordingly, the Walleye Group's choice of counsel is rational and not indicative of self-dealing, and the Court therefore does not disturb it. *Id*. at 733.

The Court approves Labaton Sucharow as lead counsel and Wagstaffe, von Loewenfeldt, Busch & Radqick LLP as liaison counsel.

C.   **Consolidation.**

Under Federal Rule of Civil Procedure 42, district courts have broad authority to consolidate matters if the involve common questions of law or fact. *See Inv. Res. Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). In making the decision to consolidate, courts "weigh the interest of judicial convenience against the potential for delay, confusion and prejudice." *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010). Here, each of the cases here involves the same factual allegations, the same defendants, and the same legal claims. The plaintiffs uniformly agree that the cases should be consolidated. Accordingly, the Court consolidates the cases for all purposes.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion of the Walleye Group for appointment of Lead Plaintiff, APPROVES its selection of lead counsel, and CONSOLIDATES the cases. The first filed case, 4:20-cv-02341, shall serve as the lead case. All future filings shall

7

be filed in 4:20-cv-02341 and bear the caption: "In re Silver Lake Group, L.L.C. Securities Litigation." The Court DENIES the remaining motions for lead counsel. Lead Plaintiffs shall file a consolidated complaint within thirty (30) days of this Order.

**IT IS SO ORDERED.**

Dated: December 1, 2020

JEFFREY S. WHITE
United States District Judge