# EXHIBIT 1

```
         MADHTetD

 1       UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
 2       ------------------------------x

 3       IN RE TETHER AND BITFINEX
         CRYPTO ASSET LITIGATION,
 4
                                                    19 Civ. 9236 (KPF)
 5
                                                    Decision
 6       ------------------------------x
                                                    New York, N.Y.
 7                                                  October 13, 2022
                                                    2:15 p.m.
 8
         Before:
 9
                         HON. KATHERINE POLK FAILLA,
10
                                                    District Judge
11
                                APPEARANCES
12
13       ROCHE FREEDMAN LLP
              Attorneys for Plaintiffs
14       BY:  CONSTANTINE PHILIP ECONOMIDES
              DEVIN FREEDMAN
15            EDWARD JOHN NORMAND
              -and-
16       SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
         BY:  TODD MICHAEL SCHNEIDER
17            MATTHEW SINCLAIR WEILER
              -and-
18       SELENDY GAY ELSBERG PLLC
         BY:  ANDREW RIGGS DUNLAP
19            MITCHELL D. NOBEL

20       KIRBY McINERNEY LLP
              Attorneys for Consolidated Plaintiffs
21       BY:  KAREN M. LERNER
              DAVID E. KOVEL
22            -and-
         RADICE LAW FIRM, P.C.
23       BY:  JOHN D. RADICE

24

25
```

```
 1                      APPEARANCES (Cont'd)

 2   DEBEVOISE & PLIMPTON, LLP (NYC)
          Attorneys for Defendants iFinex, BFXNA, BFXWW, Tether
 3   Holdings Limited, Tether Operations Limited, Tether
     International Limited, DigFinex, Giancarlo Devasini, Ludovicus
 4   Jan van der Velde, and Tether Limited
     BY:  ELLIOT GREENFIELD
 5        MELANIE BURKE
          MAEVE L. O'CONNOR
 6        -and-
     LAW OFFICES OF MICHAEL JASON LEE, APLC
 7        Attorneys for Defendant Potter
     BY:  MICHAEL JASON LEE
 8        -and-
     DILLON MILLER & AHUJA, LLP
 9   BY:  SUNJINA KAUR AHUJA
          CHRISTOPHER BEAL
10
     WILLKIE FARR & GALLAGHER LLP
11        Attorneys for Defendant Potter
     BY:  CHARLES DEAN CORDING
12        AMANDA PAYNE

13   NELSON MULLINS RILEY & SCARBOROUGH LLP
          Attorneys for Defendant Poloniex, LLC
14   BY:  MATTHEW G. LINDENBAUM
          ROBERT LAURI LINDHOLM JR.
15
     McNAUL EBEL NAWROT & HELGREN PLLC
16        Attorneys for Defendant Bittrex, Inc.
     BY:  ABBY FAITH RUDZIN
17        GREGORY HOLLON
```

1          (The Court and all parties present remotely)

2          THE COURT:  The case has been called.  I'm not going
3  to ask the parties to identify themselves because I'm aware
4  that my deputy has already taken appearances.

5          I am now going to be giving an oral decision on the
6  applications regarding Mr. Roche and the Roche Freedman firm,
7  and I'm going to ask you all, please, to mute your phones as I
8  do so, so that there aren't interruptions once I begin.  I'll
9  give you a second or two to mute your phones at this time.

10          Now I will begin.

11          As always, I thank you, those of you who have given me
12  written and oral submissions on these points, and I do
13  genuinely and sincerely appreciate your giving me some
14  opportunities, some time, to consider what was said at the
15  October 3 oral argument and to reflect on what I think is a
16  very serious issue.  For the reasons that I am about to
17  outline, I am modifying my order appointing interim class
18  counsel to remove the Roche Freedman firm from that class
19  counsel.

20          This decision does not require extensive citation to
21  cases.  Unlike Roche Freedman's framing of the issue as one of
22  disqualification of a firm, I find that this dispute actually
23  arises under Federal Rule of Civil Procedure 23(d)(2), which
24  allows an order under Rule 23(d)(1) to be altered or amended
25  from time to time and to be combined with an order under

1    Rule 16.
2            The order in question is my February 27, 2020, order
3    by way of minute entry appointing lead plaintiff and interim
4    class counsel, and it is the latter portion that I am being
5    asked to revisit.  I have considered the views of the named
6    plaintiffs in this case.  They are the putative class
7    representative, but, ultimately, I conclude that their
8    preferred counsel structure is not in the best interests of the
9    class, and of course, if that causes any of the plaintiffs, the
10   named plaintiffs, to wish to exit the case, I will hear from
11   them when it is appropriate to do so.
12            But before I get to the legal analysis, I do want to
13   spend a moment on the reasons why I am revisiting my prior
14   order, and this is not to beat the proverbial dead horse, but
15   rather just to provide a factual framework for my decision.
16           In January of 2022, nearly two years after my
17   appointment of an interim class counsel team that included the
18   Roche Freedman firm and before the production of discovery in
19   this case, one of the principals at the Roche Freedman, Kyle
20   Roche, made a series of ill-advised comments suggesting, if not
21   asserting, his close ties to and financial interest in Ava
22   Labs, a research and development company that is involved in
23   developing the Avalanche platform and the AVAX cryptocurrency,
24   as well as Mr. Roche's strategic deployment of class action
25   litigation to aid Ava Labs both by focusing regulators on Ava's

competitors and on obtaining confidential information concerning those competitors through the class action process.

Mr. Roche claims that the video recordings of these statements are highly edited and taken out of context, that he was set up by a competitor, and that he was inebriated at the time he made the statements. All of that notwithstanding, Mr. Roche has moved to withdraw from representing the class plaintiffs in this case. The Roche Freedman firm has represented that it will or has walled him off financially from receiving any fees from this case, and Mr. Roche is not currently involved with the firm's plaintiff-side crypto-asset class action practice.

Roche Freedman has suggested that this is sufficient to allow them to remain on as one of the three interim class counsel. Their cocounsel, as well as defendants' counsel, and an earlier contender for interim class counsel all disagree.

In an early effort to frame this issue, I considered whether the factual bases for my decision to include Roche Freedman in the trio of law firms appointed as interim class counsel has changed. That answer is an easy, indisputable yes.

At the February 24, 2020, oral argument, it was Mr. Roche that I heard from first who began by explaining his firm's expertise in the crypto-asset space, and in so doing countering the position offering by the competing Robbins Geller firm regarding the appropriate definition of the class.

             Ms. Halligan then came in to explain the selling
points of each firm and, more to the point, why I should
appoint all three of them.  Roche Freedman for their -- her
words, not mine -- unparalleled expertise in cryptocurrency;
Schneider Wallace for their class action experience; and what
was, I believe, then the Selendy & Gay firm, it's now Selendy
Gay & Elsberg, for their experience with complex litigation and
state law claims.
             Mr. Roche and Ms. Halligan's arguments convinced me to
appoint the three firms as interim class counsel despite my
initial expressed hesitancy to do so.
             In my oral decision, which I believe was issued
February 27 of 2020, I remarked, and I'm quoting here, that
"what interests me about this case is that it is an interesting
combination of old and new.  The cryptocurrency laws is quite
novel and lots of issues and not a lot of resolution, but there
is a lot of established law out there with respect to the
pleading requirements, with respect to traditional antitrust
issues and RICO and the Commodities Exchange Act."
             I included the Roche Freedman to address the novel
legal issues that were expected to arise.  I did so based
largely on the oral advocacy and anticipated involvement of
Mr. Roche, and he is no longer involved in the litigation.
             But that analysis, while accurate, is also a bit
facile.  We are more than two and a half years removed from my

order appointing interim class counsel, and I daresay that we all know more about crypto-assets, crypto exchanges, stablecoin, and crypto commodities than we did when this litigation began.  That said, Mr. Freedman, from the Roche Freedman firm, has forcefully argued that the firm still has a leg up on their cocounsel when it comes to this particular area of the law.

On the other side of the equation is the additional litigation that would ensue if the Roche Freedman firm were to remain in the case.  Defense counsel has made it clear that there will be additional litigation both during the discovery phase if Roche Freedman continues to have access to materials produced by the defendants under the protective order, and then later in connection with the class certification stage.

I want to be clear, or I should say that I'm not optimistic that discovery will be entirely free from disputes if Roche Freedman is out of the case, particularly given the disputes I've already resolved.  But I do acknowledge that there will be additional litigation if and because the firm remains in the case.

The question here distills to what counsel structure is in the best interests of the putative class, and to me that further distills to whether the incremental benefits of Roche Freedman remaining as interim class counsel in terms of their institutional knowledge and their expertise in one of the

1  substantive areas of the law implicated by the case outweigh
2  the additional litigation burdens occasioned by their
3  involvement.  Ultimately, I find that the burdens outweigh the
4  benefits.
5        For starters, we are two years into this litigation.
6  Everyone has benefited from the on-the-job instruction we've
7  received on crypto-assets and crypto exchanges.  And as a
8  result, I believe that the Selendy and the Schneider firms are,
9  or quickly can be, up to speed on that area of the law.
10 Further, I believe that they already have superior expertise in
11 other areas of the law implicated by this litigation, including
12 the Sherman Act, the Commodities Exchange Act, common law
13 fraud, and issues of class action certification.  So in
14 consequence, I find that the putative class will not suffer any
15 loss in the quality of their representation if the Roche
16 Freedman firm is discontinued as interim class counsel.
17       Now, just to amend what I've just said, I said we're
18 two years into this litigation.  I think we're closer to three.
19 We've been in this litigation for several years.  Let me look
20 at the converse position, though.
21       The parties have been fighting since long before
22 Mr. Roche's disclosures were made.  I am concerned that
23 establishing another front for the parties' disputes will
24 derail this litigation.  What is more, I cannot be sure at this
25 time of the size of this new front.  So in this regard, I don't

1  share Mr. Normand's view expressed in oral argument that this
2  additional litigation would be but a brief distraction and not
3  disabling.  These ancillary disputes will extend this
4  litigation, they cannot be dismissed summarily, and I don't
5  think that it's in the best interests of the class if they
6  persist.
7  　　　　　Related to this point is my concern that Mr. Roche's
8  problems will extend to others at his firm or will otherwise
9  adversely impact the case before me.
10 　　　　　Now, this is almost certainly a consequence of the
11 recency of these disclosures, but the fact is we, or anyone,
12 had not yet gotten to the bottom of the relationship that
13 Mr. Roche has or had with Ava Labs and, by extension, whether
14 the litigation strategies suggested in his recorded comments
15 were implemented by him with respect to Ava Labs or other
16 clients of the firm or by others at the firm.
17 　　　　　It is too easy to say that Mr. Roche was drunk and
18 stupid.  His statements were coherent and logical and too
19 detailed for me to dismiss out of hand.  Roche Freedman has
20 offered a number of arguments seeking to mitigate or
21 contextualize these statements, but largely they do not
22 succeed.  For example, the firm asserts that their involvement
23 in the instant litigation, or their decision to bring the
24 instant litigation, predates the formation of or certainly the
25 retention by Ava Labs, and that may be.  But Mr. Roche's

1  comments did not suggest that his strategic use of class action
2  litigation only came into existence after his dealings with Ava
3  Labs.  Similarly, even if I accept Roche Freedman's arguments
4  that the defendants in this litigation are not competitors of
5  Ava Labs, I cannot say that Mr. Roche's professed class action
6  litigation strategy was limited to that one client.
7           Furthermore, given what Mr. Roche did say on the
8  point, I am not comforted by the fact that he did not
9  specifically say in the recordings that he shared confidential
10 materials produced in discovery in this case.  And I completely
11 reject the counterargument that removing the Roche Freedman
12 firm as interim class counsel would somehow incentivize
13 misconduct by defense attorneys.
14          Nor am I persuaded after reading and considering
15 Mr. Roche's declaration that he didn't capitalize on synergies
16 between this litigation and the interests of other Roche
17 Freedman clients.  To begin, I currently don't accept his
18 current explanation that he was merely referring to
19 whistleblowers or insiders, given the comments that were made.
20          More fundamentally, the issues created by -- for
21 Mr. Roche by these disclosures are evolving.  They clearly
22 extend beyond this case.  I have only limited visibility into
23 these issues, and I will not make findings about what
24 Mr. Roche did or did not do or meant or did not mean based on a
25 two-and-a-half page declaration without a more extensive

1  investigation.

2         Now, to be clear, I acknowledge that there is a
3  difference between Mr. Roche and the Roche Freedman firm, but
4  at this point in time, I have concerns about the firm as well.
5  I acknowledge that similar disclosures haven't been made about
6  other lawyers at the firm, but it remains the case that one of
7  the two named partners at the firm, and the very person who
8  persuaded me to add the Roche Freedman firm to the interim
9  class counsel team, touted a theory of class action litigation
10 that I believe amounts to improper purposes.

11        If Mr. Roche's boasts are true -- and, again, I can't
12 reject them out of hand -- then it would actually surprise me
13 if such an ethos were limited to Mr. Roche alone.  In any
14 event, the degree to which the Roche Freedman firm has
15 attempted to minimize Mr. Roche's statements gives me concern
16 that they don't appreciate the seriousness of those statements,
17 and I've already explained the dim view with which I hold the
18 firm's arguments in mitigation.

19        I want now to return to my earlier point, and that is
20 that allowing the Roche Freedman firm to continue as interim
21 class counsel with the metaphorical baggage they now carry is
22 not in the best interests of the class.  Put somewhat
23 differently, I see this as a case of subtraction by addition,
24 wherein three law firms will have a more difficult time
25 litigating this case than two law firms because of the

aftershocks of Mr. Roche's comments.

And to repeat, I do not believe that the class will suffer any diminution in their representation if the Selendy and the Schneider firms remain, and for all of these reasons, I am amending my prior order to remove Roche Freedman as interim class counsel.

There is one related issue to address, and that is that the Kirby Radice team of attorneys argued that the best course of action here was to start with a clean slate, whereby the Kirby and Radice firms would take over at interim class counsel and, if and as appropriate, new class plaintiffs could be substituted in.

While I have given this option consideration, serious consideration, I have ultimately rejected it.  We are too many years into this litigation to switch horses entirely, and I see nothing to suggest that the Selendy and the Schneider firms have comparable issues that would impact their ability to represent the putative class adequately.  So the Selendy and the Schneider firms will remain interim counsel.

In short, I am granting Mr. Roche's earlier motion to withdraw because I don't believe I have done that.  I am modifying my prior order to remove Roche Freedman as one of the three interim class counsel.  To the extent appropriate, I will direct Roche Freedman to withdraw from any relevant protective order entered in this case and to return any confidential

1  materials that are covered by that agreement.
2  　　　　That is my decision in this case.  I thank you all for
3  listening to it, and I appreciate your allowing me to give it
4  as an oral decision rather than a written.
5  　　　　I wish you, your families, and your clients continued
6  safety and good health in this pandemic.
7  　　　　We are adjourned.  Thank you.
8  　　　　(Adjourned)