1
2
3
4
5
6
7
8
9
10
11
12

KOBRE & KIM LLP
Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Leif T. Simonson (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: +1 212 488 1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
leif.simonson@kobrekim.com

Daniel A. Zaheer (SBN 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: +1 415 582 4751
daniel.zaheer@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: +1 202 664 1965
erika.berman@kobrekim.com
*Attorneys for Defendant Jump Trading, LLC*

13
14
15

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

16
17
18
19
20
21
22
23
24
25
26
27
28

NICK PATTERSON, Individually and On Behalf of All Others Similarly Situated

Plaintiff,

vs.

TERRAFORM LABS, PTE. LTD., JUMP TRADING LLC, TRIBE CAPITAL, DEFIANCE CAPITAL/DEFIANCE TECHNOLOGIES OY, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS and DO KWON,

Defendants.

Case No. 3:22-cv-03600-TLT

**DEFENDANT JUMP TRADING, LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Honorable Trina L. Thompson
Hearing Date: September 19, 2023, 2:00pm

# TABLE OF CONTENTS

I.   INTRODUCTION & SUMMARY OF ARGUMENT ....................................................... 1

II.  STATEMENT OF RELEVANT ALLEGATIONS ........................................................... 2

III. ARGUMENT .......................................................................................................................... 5

   A.  Plaintiffs Fail to Allege That Jump Trading Committed Securities Fraud. ........................ 6

      1.  Plaintiffs Fail to Allege That Jump Trading Made Material Misrepresentations. .......... 6

      2.  Plaintiffs Cannot Establish Scheme Liability Because They Do Not Allege That Jump
         Trading Committed a Manipulative or Deceptive Act. ................................................. 10

      3.  Plaintiffs Have Failed to Allege That Jump Trading Acted With Scienter. ................... 12

      4.  Plaintiffs Fail to Allege Reliance on Jump Trading's Statements. ............................... 15

      5.  Plaintiffs Have Not Alleged That Jump Trading's Actions Caused Their Losses. ....... 17

      6.  Plaintiffs Fail to Allege Fraud in Connection With a Security. .................................... 18

   B.  Plaintiffs Fail to Plead Control Person Liability for TFL and the LFG's Actions. ........... 18

   C.  Plaintiffs Have Not Alleged That Jump Trading Committed a Pattern of Racketeering
      Activity Causing Their Injuries. ..................................................................................... 21

      1.  Plaintiffs Have Not Adequately Alleged Predicate Acts by Jump Trading. ................. 22

      2.  Plaintiffs Have Not Alleged That Jump Trading's Actions Proximately Caused Their
         RICO Injury. ............................................................................................................... 22

      3.  Plaintiffs Fail to Allege a Sufficient Pattern of Racketeering by Jump Trading. .......... 23

   D.  Plaintiffs' State Law Claims Must Be Dismissed. ........................................................... 24

      1.  Supreme Court and Ninth Circuit Precedents Preclude Plaintiffs' Aiding and Abetting
         and Conspiracy Claims. ............................................................................................... 24

      2.  Plaintiffs' Unjust Enrichment Claim Fails as They Have Not Alleged Fraud. ............. 24

IV. CONCLUSION ..................................................................................................................... 25

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 5

*Astiana v. Hain Celestial Group, Inc.*,
  783 F.3d 753 (9th Cir. 2015) ................................................................................ 24

*Bao v. SolarCity Corp.*,
  2015 WL 1906105 (N.D. Cal. Apr. 27, 2015) ..................................................... 20

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ...................................................................................... 12, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 19

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) .............................................................................. 16

*Borteanu v. Nikola Corp.*,
  2023 WL 1472852 (D. Ariz. Feb. 2, 2023) .......................................................... 12

*Burnett v. Rowzee*,
  2007 WL 4754539 (C.D. Cal. Oct. 18, 2007) ................................................ 10, 24

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) .............................................................................................. 24

*Chiarella v. United States*,
  445 U.S. 222 (1980) .............................................................................................. 12

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
  856 F.3d 605 (9th Cir. 2017) .............................................................................. 8, 9

*City of Royal Oak Retirement System v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................ 7, 8, 9, 10, 15

iii

*County of Marin v. Deloitte Consulting LLP*,

   836 F. Supp. 2d 1030 (N.D. Cal. 2011) ................................................................................. 23

*Cooper v. Pickett*,

   137 F.3d 616 (9th Cir. 1997) ...................................................................................................... 10

*DeMarco v. DepoTech Corp.*,

   32 F. App'x 260 (9th Cir. 2002) ................................................................................................... 7

*Dura Pharmaceuticals, Inc. v. Broudo*,

   544 U.S 336 (2005) ............................................................................................................... 17, 18

*Erica P. John Fund, Inc. v. Halliburton Co.*,

   563 U.S. 804 (2011) .............................................................................................................. 16, 17

*ESG Capital Partners, LP v. Stratos*,

   828 F.3d 1023 (9th Cir. 2016) ...................................................................................................... 5

*Grimmett v. Brown*,

   75 F.3d 506 (9th Cir. 1996) ........................................................................................................ 21

*H.J. Inc. v. Northwestern Bell Telephone Co.*,

   492 U.S. 229 (1989) .................................................................................................................... 23

*Hemi Group v. City of New York*,

   559 U.S. 1 (2010) ........................................................................................................................ 22

*Hollinger v. Titan Capital Corp.*,

   914 F.2d 1564 (9th Cir. 1990) .................................................................................................... 19

*Holmes v. Securities Investor Protection Corp.*,

   503 U.S. 258 (1992) .................................................................................................................... 22

*In re BofI Holding, Inc. Securities Litigation*,

   977 F.3d 781 (9th Cir. 2020) ................................................................................................ 17, 18

*In re Brocade Communications Systems, Inc. Derivative Litigation*,

   615 F. Supp. 2d 1018 (N.D. Cal. 2009) ..................................................................................... 11

iv

*In re Energy Recovery Inc. Securities Litigation*,

   2016 WL 324150 (N.D. Cal. Jan. 27, 2016) ........................................................ 21

*In re Facebook, Inc. Securities Litigation*,

   477 F. Supp. 3d 980 (N.D. Cal. 2020) ................................................. 8, 9, 10, 12

*In re GlenFed, Inc. Securities Litigation*,

   60 F.3d 591 (9th Cir. 1995) ................................................................................ 24

*In re Kirkland Lake Gold Ltd. Securities Litigation*,

   2021 WL 4482151 (S.D.N.Y. Sept. 30, 2021) .................................................... 12

*In re ZZZZ Best Securities Litigation*,

   864 F. Supp. 960 (C.D. Cal. 1994) ............................................................. 10, 11

*Janus Capital Group, Inc. v. First Derivative Traders*,

   564 U.S. 135 (2011) ............................................................................................. 7

*Kay v. Copper Cane, LLC*,

   549 F. Supp. 3d 1014 (N.D. Cal. 2021) ............................................................. 25

*Lancaster Community Hospital v. Antelope Valley Hospital District*,

   940 F.2d 397 (9th Cir. 1991) .............................................................................. 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,

   547 U.S. 71 (2006) ............................................................................................... 1

*Metaxas v. Lee*,

   503 F. Supp. 3d 923 (N.D. Cal. 2020) ............................................................... 23

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,

   540 F.3d 1049 (9th Cir. 2008) ......................................................................... 6, 8

*Nacarino v. Chobani, LLC.*,

   2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ..................................................... 25

*Nationstar Mortgage LLC v. Presley*,

   2023 WL 121746 (E.D. Cal. Jan. 6, 2023) ......................................................... 24

v

*New York City Employees' Retirement System v. Berry*,

    616 F. Supp. 2d 987 (N.D. Cal. 2009) ................................................................. 10

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*,

    320 F.3d 920 (9th Cir. 2003) ............................................................................... 19

*Oregon Public Employees' Retirement Fund v. Apollo Group Inc.*,

    774 F.3d 598 (9th Cir. 2014) ........................................................................... 6, 19

*Paracor Finance, Inc. v. General Electric Capital Corp.*,

    96 F.3d 1151 (9th Cir. 1996) ....................................................... 9–10, 12, 19

*Petrie v. Electronic Game Card, Inc.*,

    308 F.R.D. 336 (C.D. Cal. 2015) .......................................................................... 16

*Picard v. Kohn*,

    907 F. Supp. 2d 392 (S.D.N.Y. 2012) .................................................................. 23

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,

    759 F.3d 1051 (9th Cir. 2014) ......................................................................... 9, 15

*Powell v. Idacorp, Inc.*,

    2007 WL 1498881 (D. Idaho May 21, 2007) ...................................................... 18

*Public Employees. Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*,

    714 F. Supp. 2d 475 (S.D.N.Y. 2010) ............................................................ 19, 20

*Puri v. Khalsa*,

    674 F. App'x 679 (9th Cir. 2017) ......................................................................... 25

*Purple Mountain Trust v. Wells Fargo & Co.*,

    432 F. Supp. 3d 1095 (N.D. Cal. 2020) .......................................................... 19–20

*Retail Wholesale & Deparment Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*,

    845 F.3d 1268 (9th Cir. 2017) ........................................................................ 11–12

*S&S Worldwide, Inc. v. Wells Fargo Bank*,

    509 F. Supp. 3d 1154 (N.D. Cal. 2020) ........................................................ 24–25

vi

*ScripsAmerica, Inc. v. Ironridge Global LLC*,

   119 F. Supp. 3d 1213 (C.D. Cal. 2015) ........................................................................ 12, 16–17

*Seaman v. California Busisness Bank*,

   2013 WL 5890726 (N.D. Cal. Oct. 30, 2013) ............................................................... 13

*Simpson v. AOL Time Warner, Inc.*,

   452 F.3d 1040 (9th Cir. 2006) ..................................................................................... 10

*Sneed v. AcelRx Pharmaceuticals, Inc.*,

   2022 WL 4544721 (N.D. Cal. Sept. 28, 2022) ........................................................... 14

*Sprewell v. Golden State Warriors*,

   266 F.3d 979 (9th Cir. 2001) ..................................................................................... 5, 13

*Swartz v. KPMG LLP*,

   476 F.3d 756 (9th Cir. 2007) ....................................................................................... 13

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,

   690 F. Supp. 2d 959 (D. Ariz. 2010) ........................................................................... 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

   551 U.S. 308 (2007) ............................................................................................... 13, 15

*United States v. Woods*,

   335 F.3d 993 (9th Cir. 2003) ....................................................................................... 22

*UPPI LLC v. Cardinal Health, Inc.*,

   2022 WL 3594081 (9th Cir. Aug. 23, 2022) ................................................................. 5

*Waterford Township Police v. Mattel, Inc.*,

   321 F. Supp. 3d 1133 (C.D. Cal. 2018) ......................................................................... 8

*Webb v. Solarcity Corp.*,

   884 F.3d 844 (9th Cir. 2018) ....................................................................................... 13

**Statutes**

15 U.S.C. § 78u-4(b) ....................................................................................... 5, 9, 13

15 U.S.C. § 78u-4(e) ........................................................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on September 19, 2023, at 2:00 p.m., or at such other date as may be agreed upon or ordered in the United States District Court for the Northern District of California, Courtroom of the Honorable Trina L. Thompson, Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Jump Trading, LLC ("Jump Trading") will and hereby does move this Court to dismiss Counts I–III and V–IX of the Second Amended Complaint ("SAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF ISSUES TO BE DECIDED

1.      Should the Court dismiss Counts I and II for failure to state a claim under Rule 12(b)(6) where Plaintiffs have not sufficiently pled that Jump Trading made actionable misstatements or conducted a scheme to defraud, pled Jump Trading's scienter, alleged reliance on Jump Trading's statements, established that those statements caused Plaintiffs' loss, or adequately alleged that the tokens at issues are securities?

2.      Should the Court dismiss Counts III and V for failure to state a claim under Rule 12(b)(6) where Plaintiffs have neither established a primary violation by Terraform Labs ("TFL") or the Luna Foundation Guard ("LFG") nor adequately pled that Jump Trading had control over either TFL or the LFG?

3.      Should the Court dismiss Count VIII for failure to state a claim under Rule 12(b)(6) where Plaintiffs have failed to plead that Jump Trading engaged in a pattern of racketeering activity that caused Plaintiffs' losses?

4.      Should the Court dismiss Counts VI, VII, and IX for failure to state a claim under Rule 12(b)(6) where Plaintiffs' state law claims are precluded under Supreme Court and Ninth Circuit precedents and otherwise fail to allege the essential elements of the claims?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION & SUMMARY OF ARGUMENT

Hoping to recover alleged losses resulting from their purchase of a cryptocurrency—TerraUSD ("UST")—Plaintiffs have sued a plethora of individuals and entities peripheral to the UST project in scattershot fashion.  Among them is Jump Trading.  But even accepting Plaintiffs' allegations as true for purposes of this motion, none of them suggests that Jump Trading should somehow be blamed for Plaintiffs' losses.  On the contrary, Plaintiffs' case against Jump Trading is the epitome of the type of lawsuit that Congress had in mind when it passed the Private Securities Litigation Reform Act ("PSLRA") in 1995 to prohibit plaintiffs from the then-rampant tactic of using the class action device to, amongst other abuses, "target[] deep-pocket defendants" and extract "extortionate settlements."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006).

Plaintiffs purport to assert securities fraud and racketeering claims against Jump Trading based upon little more than a handful of benign statements by Jump Trading that reflected its belief that UST was a worthwhile project.  But merely expressing enthusiasm or support for a new project, even if one has a vested interest in the success of that project, is not illegal.  That Jump Trading said positive things about UST does not constitute securities fraud or any other actionable misconduct, particularly where, as here, there is no basis to assert that Jump Trading did not genuinely believe in that project.

Plaintiffs' allegations against Jump Trading do not satisfy the stringent pleading requirements for stating a claim for securities fraud or RICO, and likewise fall short on their state law claims as well.  Each count of the SAC contains glaring deficiencies requiring dismissal in its entirety as against Jump Trading.

*First*, Plaintiffs fail to allege with particularity that Jump Trading committed a securities fraud violation.  Plaintiffs neither identify any actionable misstatements by Jump Trading nor establish a scheme to defraud involving Jump Trading.  Further, Plaintiffs do not plead facts giving rise to a "strong inference" that Jump Trading acted with scienter, facts supporting that the market

for Terra Tokens was efficient as required to invoke a presumption of reliance, facts tying their losses to Jump Trading's actions, or facts establishing that any of the relevant tokens are securities.

*Second,* Plaintiffs cannot establish that Jump Trading is subject to control person liability for TFL's and the LFG's actions, because they fail to allege a primary violation by TFL and the LFG.  And even if a primary violation were alleged, Plaintiffs have not adequately alleged that Jump Trading controlled TFL—a separate entity—or identified Jump Trading's purported responsibilities in connection with the management of the LFG (also a separate entity).

*Third*, Plaintiffs do not allege any predicate acts of racketeering by Jump Trading or that such acts were the proximate cause of Plaintiffs' losses.  Even were they to satisfy those requirements, Plaintiffs do not come close to alleging a pattern of continuous criminal activity, as they allege only a single month of activity.  Separately, and in any event, Plaintiffs' RICO claim is barred by the PSLRA, because the predicate acts upon which it is based are the same as those that form the basis of their securities fraud claim.

*Fourth,* Plaintiffs fail to adequately allege that Jump Trading aided and abetted or conspired to commit securities fraud or that Jump Trading was unjustly enriched.  The Supreme Court and the Ninth Circuit have held that a plaintiff may not maintain an aiding and abetting or conspiracy claim for securities fraud.  Plaintiffs' unjust enrichment claim is precluded by their allegations of an adequate remedy at law, attempts impermissibly to rely on group pleading, and falls with their failure to allege securities fraud.

Accordingly, and for the reasons discussed below, the SAC must be dismissed in its entirety as against Jump Trading.

## II.     STATEMENT OF RELEVANT ALLEGATIONS[1]

Jump Trading incorporates by reference the background of the Terra Ecosystem and tokens at issue in the case, including LUNA and UST, in the Motion to Dismiss filed by TFL ("TFL Mot.

---

[1] Many of Plaintiffs' allegations are demonstrably false.  Jump Trading accepts them as true only for purposes of this motion to dismiss.  Additionally, for the purposes of this motion, Jump Trading addresses the allegations brought by Mr. Patterson in addition to Lead Plaintiff Mr. Tobias; however,

2

to Dismiss").  As an algorithmic stablecoin, UST was designed to maintain a $1 value; in turn, one UST could be exchanged for $1 worth of LUNA through a smart contract.  SAC ¶ 62(b).  The Anchor Protocol, as discussed in more detail in the TFL Motion to Dismiss, was a mechanism through which investors could lend UST to or borrow UST from the protocol.  *Id.* ¶ 70.  In addition to the detailed overview of the ecosystem and tokens in the TFL Motion to Dismiss, Jump Trading summarizes below the limited allegations made against it specifically.

Plaintiffs allege Jump Trading was a third-party investor in the Terra Ecosystem and through its cryptocurrency arm, Jump Crypto, provided funding to the ecosystem's developer, TFL.  *See generally id.* ¶¶ 18, 189, 192.  Though Plaintiffs allege that the Terra Ecosystem began with an April 2019 whitepaper and launched in or around April 2019, *id.* ¶¶ 26, 61, 120, they do not allege Jump Trading participated in any wrongdoing whatsoever for the first two years of the Ecosystem's existence.  *See generally id.*  Rather, the allegations of purported misconduct specific to Jump Trading begin in May 2021, and are limited to the following:

- In May 2021, the value of UST briefly "unpegged" from the U.S. dollar, with the price declining almost to $0.90.  *Id.* ¶ 187, 191.  During this depeg, Jump "discussed plans" with Mr. Kwon to buy a "large amount[] of UST in order to restore its value."  *Id.* ¶ 187.  "Jump responded by purchasing large quantities of UST."  *Id.* ¶ 192.

- On October 11, 2021, Jump published a blog post in which it "touted Terra as one of the future 'winners'" and a "'prominent example' of algorithmic stablecoins," "insisting: 'We believe there will be several winners in the stablecoin space . . . We are particularly excited about Terra and their dollar stablecoin UST, which we believe is the most elegant solution for creating a highly scalable and more decentralized stablecoin.'"  *Id.* ¶ 129.

- On January 28, 2022, Jump Crypto's President, Kanav Kariya, tweeted his opinion in response to some "confusion and panic" concerning UST, stating that "[i]t's difficult to imagine a sustained mass exodus to UST given the circumstances," but if that were to occur, "there is potential for UST to be sold/burned and provide some downward pressure on Luna price."  *Id.* ¶ 131.  Mr. Kariya also "stated, '$450M contraction of the economy (assuming a highly conservative 50% don't find the UST useful anymore) should be manageable over a couple days and not impactful to

---

Jump Trading does not concede that Mr. Patterson's continued involvement in this case beyond as a member of the proposed class is proper.

prospects of the project.  Crazily enough, on this 'bearish' day, there has been a net burn of LUNA.'" *Id.*

- On February 22, 2022, the LFG issued a press release that included a statement by Mr. Kariya that a reserve the LFG had raised would "further strengthen[] confidence in the peg . . . [because] [i]t can be used to help protect" it. *Id.* ¶ 138.  In the statement, Mr. Kariya compared this reserve to "how many central banks hold reserves of foreign currencies to back monetary liabilities and protect against dynamic market conditions." *Id.*  That same day, Jump retweeted this opinion, "stating: 'As @KariyaKanav has mentioned, the UST Forex Reserve will strengthen confidence in the peg [g]iving users confidence by following central banks that hold a variety of foreign currencies to protect against severe market risks.'" *Id.* ¶ 139.

- On February 22, 2022, Jump "promoted its relationship with TFL," tweeting, "We're excited to share our latest collaboration with @terra_money. . . . Our goal is to make DeFi more accessible and meaningful for everyone. . . . By making $UST more accessible we can create the decentralized finance world that keeps us moving forward." *Id.* ¶ 140.

- On March 1, 2022, Mr. Kariya appeared with Mr. Kwon on a podcast called the Ship Show and "promoted [the] stability and security of the UST and LUNA peg as Terra's two most 'attractive' features." *Id.* ¶ 142.  Plaintiffs, however, make no allegations at all about what Mr. Kariya actually said on the podcast.

- "On March 8, 2022, [Mr.] Kariya announced that 'UST is in high demand [at the moment] and is generally trading at a premium.'" *Id.* ¶ 144.

- "On March 10, 2022, Jump promoted an article on the Jump Crypto website titled 'Yield Farming for Serious People,' which purport[ed] to 'illuminate' the concept of 'yield farming.'" *Id.* ¶ 145.  According to Plaintiffs, in the article "Jump provides the following solicitation for Terra Securities: 'There are many examples, but consider two prominent ones that are more retail facing.  First, traders on Coinbase have the option to stake their Ether on the platform, i.e., delegate their Ether to Coinbase as it participates in upgrading the Ethereum Network to Ethereum 2.0, in exchange for interest of around 5% (at the time of writing).  Second, Terra traders can use the Terra Station app to stake their Luna, i.e., delegate their Luna tokens to one of the several different validators who process the Terra network, in exchange for rewards.'" *Id.*  The article "provides a link to an article 'Here's How to Stake $LUNA and Earn Rewards in the Terra Ecosystem,' which encourages investors to stake LUNA directly through the Terra Station wallet." *Id.*

Notably, Plaintiffs never allege that any of these statements are false.  They merely claim that a single statement by Mr. Kariya from February 22, 2022 (set forth above), in which he expresses his ***opinion*** regarding the prospects of the UST reserve, was "misleading" because "the Luna Foundation Guard" allegedly failed to disclose that "UST was not as 'stable' as promoted, that

4

the peg of UST/LUNA would be unable to be maintained during periods of high volatility in the market; and that Anchor's staking rewards program was unsustainable and causing the 'stressful conditions' that would (and did) precipitate the de-pegging of UST and LUNA." *Id.* ¶ 250(f).

Apparently recognizing the paucity of factual allegations tying Jump Trading to any wrongdoing in connection with UST and LUNA, Plaintiffs resort to allegations against Jump Trading regarding wholly unrelated matters (e.g., a 2019 NYSE settlement) and unreliable Twitter theories (e.g., speculation regarding Jump Trading's involvement with Sam Bankman-Fried, the now-maligned founder of FTX, unrelated to UST). *See id.* ¶¶ 57–60.

## III.   ARGUMENT

Plaintiffs' allegations fall woefully short of what is required to state claims against Jump Trading.  Glaringly, Plaintiffs fail to allege that Jump Trading committed any actionable misconduct. Instead, the SAC is replete with allegations against other defendants, conclusory statements, and group pleading—none of which are sufficient.  While courts "must accept as true the facts alleged in a well-pleaded complaint, [] mere legal conclusions are not entitled to an assumption of truth," *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031 (9th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)), and courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As Federal Rule of Civil Procedure 9(b) applies to the allegations of fraud here, Plaintiffs were required to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *UPPI LLC v. Cardinal Health, Inc.*, 2022 WL 3594081, at *1 (9th Cir. Aug. 23, 2022) (internal citations omitted); 15 U.S.C. § 78u–4(b)(2)(A) (pleadings must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").  They have fallen far short of this

exacting standard.  Plaintiffs' claims against Jump Trading for securities fraud, civil RICO, and under various state law theories must therefore all be dismissed.

### A.  Plaintiffs Fail to Allege That Jump Trading Committed Securities Fraud.

Plaintiffs' securities fraud claims, Counts I and II, are subject to heightened pleading requirements under both Rule 9(b) and the PSLRA and must be dismissed because they fail to adequately allege: (i) that Jump Trading made any material misrepresentation or omission, (ii) that Jump Trading committed any deceptive conduct, (iii) that Jump Trading acted with the requisite scienter, (iv) that Plaintiffs, or anyone else, relied on Jump Trading's purported misstatements, (v) that Jump Trading's alleged misstatements caused Plaintiffs' losses, and (vi) that any of the tokens at issue here are securities.  Each one of these deficiencies independently necessitates dismissal of Counts I and II against Jump Trading.

"To plead a claim under section 10(b) and Rule 10b–5, the Plaintiffs must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation."  *Oregon Pub. Emps.' Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014).  Each element of a securities fraud action must satisfy the "exacting" and "formidable" pleading standards of Rule 9(b) and the PSLRA.  *Id.* at 604; *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).  Plaintiffs' allegations come nowhere close to meeting this heightened standard.

### 1.  Plaintiffs Fail to Allege That Jump Trading Made Material Misrepresentations.

Although Plaintiffs allege numerous statements made by others, they do not establish even a single false or misleading statement by Jump Trading.  Instead, almost all of the statements attributable to Jump Trading are classic statements of opinion and optimism, which are not actionable.  And as to the few alleged statements of fact, Plaintiffs fail to even allege—much less explain how—these statements were materially false or misleading.  Without a material misrepresentation made by Jump Trading, Plaintiffs' securities fraud claims must be dismissed.

As an initial matter, a defendant cannot be liable for false or misleading statements not "made" by it (as opposed to others).  *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1070 (N.D. Cal. 2012); *see DeMarco v. DepoTech Corp.*, 32 F. App'x 260, 263 (9th Cir. 2002) (holding company "cannot be held liable for statements made" by others).  The "maker" of a statement is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *City of Royal Oak,* 880 F. Supp. 2d at 1070 (quoting *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)).  Plaintiffs' myriad allegations of statements by other Defendants (over whose statements Plaintiffs do not allege Jump Trading had authority) are thus irrelevant.[2]

The only statement attributed to Jump Trading that Plaintiffs actually allege to be false or misleading is Mr. Kariya's statement contained in the LFG press release dated February 22, 2022, predicting that the UST Forex Reserve would "further strengthen confidence in the peg."  *See* SAC ¶¶ 138, 250(f).  Plaintiffs allege this was "misleading" because it failed to disclose that "UST was not as 'stable' as promoted" and the UST peg "would be unable to be maintained during periods of high volatility" in the market.  *Id.* ¶ 250(f).  But there is nothing even remotely misleading about this expression of opinion.  Mr. Kariya did not promise, or even imply, that UST would always automatically remain stable.  To the contrary, he merely expressed his belief that, in his view, the UST Forex Reserve would result in increased public confidence.  His statement that having a reserve was a positive development—i.e., because it could be deployed to "*help protect* the peg . . . in *stressful conditions*"—is, if anything, an acknowledgement that UST *could* become unstable.  *See id.* ¶ 138 (emphasis added).  Mr. Kariya was simply offering an opinion that, in such a scenario, people would likely have more "confidence in the peg" now that it would be backed by a large reserve.

---

[2] The SAC's heavy reliance on the SEC's complaint in its suit against TFL and Do Kwon (ECF No. 102-1) does not help Plaintiffs here.  The SEC did not sue Jump Trading and its complaint likewise does not identify any alleged misstatements by Jump Trading.

Moreover, not only is this not a misstatement of fact, but Plaintiffs also do not allege any lack of belief by Mr. Kariya regarding these statements, let alone set forth any facts that would support such a conclusion.  Thus, the statements are not actionable.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017). (liability for an opinion requires that "the statement is not actually believed"); *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1023 (N.D. Cal. 2020) (noting that "statements projecting 'excellent results'" were inactionable).

As to the other statements attributed to Jump Trading (*see* supra pp. 3-4), only three even arguably contain alleged statements of fact: (i) the March 10, 2022, article about yield farming (SAC ¶ 145); (ii) the portion of Mr. Kariya's January 28, 2022, tweet stating that "[c]razily enough, on this 'bearish' day, there has been a net burn of LUNA" (*id.* ¶ 138); and (iii) Mr. Kariya's March 8, 2022, tweet stating that "UST is in high demand atm and is generally trading at a premium" (*id.* ¶ 144).  But Plaintiffs never allege that any of these three statements were actually false nor explain how they could be false (they are not), falling far short of Rule 9(b)'s and the PSLRA's specificity requirements.  *See Metzler*, 540 F.3d at 1070 ("A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard."); *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1146–47 (C.D. Cal. 2018) (dismissing allegations for failure to plead falsity).

Nor are the alleged statements material.  Materiality requires a plaintiff to "allege a statement or omission that a reasonable investor would have considered significant in making investment decisions."  *City of Royal Oak*, 880 F. Supp. 2d at 1060–61.  As to the article, Plaintiffs do not allege (and there is no reason to believe) that Jump Crypto's reference to the existence of staking through the Terra Station app would be considered significant information by anyone deciding to purchase Terra Tokens.[3]  And both tweets (1) allegedly occurred years after the creation and promotion by

---

[3] This is underscored by the fact that the link that Jump Crypto included in the article, which allegedly "encourage[d]" investment in Terra, was written by a third-party, chaindebrief, which publishes crypto guides, news, analyses, and opinion pieces.  Jump Crypto's article merely notes

others of the Terra Ecosystem; and (2) were made by a person who would be understood by a reasonable person as an advocate expressing support for something.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (noting that "professional investors, and most amateur investors as well, know how to devalue the optimism" of those connected to a project (internal citations omitted)).  Accordingly, neither tweet would have "induce[d] the reliance of a reasonable investor."  *In re Facebook*, 477 F. Supp. 3d at 1012 (internal citations omitted).  As Plaintiffs have failed to identify a single material misrepresentation made by Jump Trading, their securities fraud claims must be dismissed.

None of the other statements attributed to Jump Trading in the SAC even contains a statement of fact, let alone is a misleading statement.[4]  Instead, Plaintiffs allege tweets by Jump Crypto and Mr. Kariya that merely express enthusiasm for the development of the Terra Ecosystem or describe goals for the future of the DeFi space.  *See, e.g.*, SAC ¶¶ 131, 138–40, 144.  However, absent allegations of fact that would give rise to an inference that the beliefs were not genuine, neither predictions about the future nor expressions of optimism such as those in the tweets are actionable statements of fact.  *See City of Dearborn Heights*, 856 F.3d at 615; *City of Royal Oak*, 880 F. Supp. 2d at 1063 ("In the Ninth Circuit, 'vague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws' because no reasonable investor would rely on such statements.").  Here, Jump Crypto's and Mr. Kariya's tweets supporting the Terra Ecosystem or DeFi in general are nothing more than the predictable enthusiasm of alleged participants in the space—reflected by their repeated use of classic opinion language like "we believe" and "we're excited."  *See, e.g.*, SAC ¶¶ 129, 140; *see also Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1158 (9th Cir. 1996) (holding that statement that defendant "had tremendous enthusiasm for the deal" was

_____

the ability to stake.  But Plaintiffs allege no facts from which to plausibly infer that this would sway an investor.

[4] Plaintiffs' allegation regarding Mr. Kariya's appearance on a podcast on March 1, 2022, fails to identify any particular statement made by Mr. Kariya and thus does not "specify [the] statement alleged to have been misleading."  15 U.S.C. § 78u-4(b)(1).

9

opinion); *In re Facebook*, 477 F. Supp. 3d at 1023 (noting that the statement "we are very pleased" was inactionable puffery).  Such statements expressing confidence in a company's business and outlook are thus not actionable.  *See City of Royal Oak*, 880 F. Supp. 2d at 1064.

### 2. Plaintiffs Cannot Establish Scheme Liability Because They Do Not Allege That Jump Trading Committed a Manipulative or Deceptive Act.

Plaintiffs' second cause of action purports to establish liability for Jump Trading for a scheme to defraud based upon the May 2021 depeg, but this claim necessarily fails as Plaintiffs do not and cannot allege that Jump Trading committed any manipulative or deceptive act.

Scheme liability under Rule 10b-5(a) and (c) differs from liability for misrepresentations under Rule 10b-5(b) only in that "a plaintiff must allege a device, scheme or artifice to defraud, or an act, practice or course of business which would operate as a fraud," rather than material misstatements.  *See New York City Empls.' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 996 (N.D. Cal. 2009).  "[T]o be liable for using a 'scheme to defraud' a defendant must have committed a manipulative or deceptive act 'in furtherance of the scheme.'"  *Burnett v. Rowzee*, 2007 WL 4754539, at *5 (C.D. Cal. Oct. 18, 2007) (quoting *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997)).  Plaintiffs must allege that Jump Trading's own acts, not merely the overarching alleged scheme, were manipulative or deceptive.  *See Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, 519 F.3d 1041 (9th Cir. 2008) ("It is not enough that a transaction in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect." (emphasis in original)); *In re ZZZZ Best Sec. Litig.*, 864 F. Supp. 960, 969 (C.D. Cal. 1994) (plaintiff must allege that defendant's "own acts were manipulative").

Plaintiffs' scheme liability theory appears to rest on Plaintiffs' allegations that the public purportedly understood that UST repegged solely as a result of the algorithm's functioning when, according to Plaintiffs, UST repegged due to significant purchases of UST by Jump Trading.  As to Jump Trading, Plaintiffs allege only that it purchased "massive amounts" of UST to stabilize UST during the depeg in May 2021.  SAC ¶¶ 192, 269.  Yet, purchasing UST, even if in "massive

1  amounts" and for the purpose of restoring the peg, is not inherently deceptive, and Plaintiffs do not

2  contend otherwise.[5]  Just as making investments in a struggling business is not illegal, so too was

3  Jump Trading's alleged conduct here far from illegal or in any way inconsistent with a belief that

4  this project would ultimately be a success.[6]

5        Plaintiffs vaguely allege that Jump Crypto's purchases "operated as a fraud or deceit"

6  because they were "in the face of" alleged statements by TFL and Mr. Kwon that UST's algorithm

7  was the "lynchpin of the entire [Terraform] ecosystem" and that the algorithm "self-heal[s]" where

8  human decisions may have failed.  *Id.* ¶ 269.  But Plaintiffs confuse the alleged timeline: According

9  to the SAC and the SEC complaint on which it is based, the bulk of Jump Trading's purchases of

10  UST in "large quantities" were made on May 23, 2021, demonstrably before and not "in the face of"

11  TFL and Kwon's alleged misstatements made on May 24, 2021, and in March 2022.  *See id.* ¶¶ 191–

12  92, 199; *see also* SEC Compl. ¶ 157.  Thus, even taking at face value the allegations that TFL and

13  Mr. Kwon's later statements were misleading, there was nothing deceptive about Jump Trading's

14  purchases, most of which happened prior to those statements.  *See, e.g.*, *In re Brocade Commc'ns*

15  *Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1044 (N.D. Cal. 2009); *In re ZZZZ Best*, 864

16  F. Supp. at 969.

17        To the extent Plaintiffs contend (although they do not actually allege) that Jump Trading

18  should be held liable for not informing the public that it had helped stabilize UST—i.e., that Jump

19  Trading made an omission—Jump Trading had no duty to disclose its trading, nor do Plaintiffs

20  allege one.[7]  "Absent a duty to disclose, an omission does not give rise to a cause of action under

21  _____

22  [5] Nor do Plaintiffs allege that Jump Trading's UST purchases had a deceptive purpose at that time.
   To the contrary, the alleged deception occurred after this trading.  Per Plaintiffs' apparent theory,

23  the deception occurred when TFL and Mr. Kwon made certain allegedly misleading statements and
   Jump Trading's purchases were not made public.  But as discussed below, Jump Trading had no

24  duty to announce its trading—particularly prior to trading—nor to address others' alleged statements
   on the topic.

25

26  [6] Aside from a passing reference to a "manipulative scheme," Plaintiffs do not allege any
   manipulative conduct.  SAC ¶ 203.

27  [7] In fact, Plaintiffs have not even specifically alleged that *Jump Trading* made an omission; instead,
28  Plaintiffs impermissibly group plead that "*Defendants* never disclosed that it was the conduct of
   TFL, Kwon and Jump, and not the algorithm, that restored UST's peg," without plausibly alleging

11

§ 10(b) and Rule 10b–5." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017); *In re Facebook*, 477 F. Supp. 3d at 1012 ("[s]ilence, absent a duty to disclose, 'is not misleading under Rule 10b-5,'" (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988))).   Nor does a duty to disclose "arise from the mere possession of non-public information." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1245 (C.D. Cal. 2015) (quoting *Chiarella v. United States*, 445 U.S. 222, 235 (1980)).   In determining whether a defendant has a duty to disclose, courts in the Ninth Circuit consider: "(1) the relationship of the parties, (2) their relative access to information, (3) the benefit that the defendant derives from the relationship, (4) the defendant's awareness that the plaintiff was relying upon the relationship in making his investment decision, and (5) the defendant's activity in initiating the transaction." *Paracor*, 96 F.3d at 1157.   Like the court held in *Paracor*, even if Jump Trading was a party to a financial transaction "from which it stood to benefit," Plaintiffs have not alleged that they "assumed a relationship of trust and confidence" with Jump Trading. *Id.* at 1157–58 ("[T]he parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship . . . or circumstances such that one party has placed trust and confidence in the other.").   The SAC thus fails to allege that Jump Trading had a duty to disclose its alleged UST purchases in May 2021.

### 3. Plaintiffs Have Failed to Allege That Jump Trading Acted With Scienter.

Plaintiffs do not include even a single non-conclusory allegation about Jump Trading's intent and offer no facts from which this Court could draw a "strong inference" of scienter.   Instead, Plaintiffs claim, without supporting factual allegations, that "all of the Defendants" "knew" the

---

that *Jump Trading* had a duty to do so. *See* SAC ¶ 202 (emphasis added).   To the extent that Plaintiffs envision holding Jump Trading liable for failing to correct alleged misstatements made by TFL and/or Mr. Kwon, Plaintiffs have identified no duty to make that correction—nor could they, as no such duty exists. *See Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *24 (D. Ariz. Feb. 2, 2023) (rejecting a scheme to defraud alleging that "certain defendants failed to correct or otherwise take action against the false or misleading statements of another," as "such a duty to correct does not exist"); *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2021 WL 4482151, at *6 (S.D.N.Y. Sept. 30, 2021) (allegation that defendant merely "remained silent" in the face of another's false statements "falls short of the inherently deceptive act that scheme liability requires").

Terra Ecosystem was "unsustainable." *See, e.g.*, SAC ¶¶ 256, 163.  But, under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), here, the "intent to deceive, manipulate, or defraud," *Seaman v. Cal. Bus. Bank*, 2013 WL 5890726, at *6 (N.D. Cal. Oct. 30, 2013).  A "strong" inference must be "more than merely plausible or reasonable."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  It must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Webb v. Solarcity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018).  "The bar set by *Tellabs*" for pleading scienter under the PSLRA "is not easy to satisfy."  *Id.*  Plaintiffs' conclusory allegations do not meet that bar, for at least three reasons, each of which requires dismissal of their claims.

*First*, Plaintiffs' threadbare allegations that "Defendants knew" that the Terra Ecosystem was unsustainable necessarily fail because they improperly lump all Defendants together.  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal citations omitted).  The SAC contains no allegations regarding *Jump Trading's* intent and therefore fails to state a claim against Jump Trading for securities fraud.

*Second*, even had Plaintiffs alleged specifically that Jump Trading "knew" Terra was "unstable" and "unsustainable," such a bald allegation would not satisfy Rule 9(b)'s heightened requirements to plead scienter in any event.  *Sprewell*, 266 F.3d at 988 (court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").  As noted above, Plaintiffs admit that Jump Trading publicly acknowledged that UST could lose its peg in volatile conditions (i.e., could become unstable).  *See* SAC ¶ 138; *see also* The Ship Show, *Kanav Kariya and Do Kwon Talk DeFi* (Mar. 1, 2022), https://terraspaces.org/transcriptions/transcript-the-ship-show-ep-1-kanav-kariya-and-do-kwon-talk-defi/ (noting Mr. Kariya's statement in a portion of the podcast that Plaintiffs chose not to quote

13

that "it's extremely useful to have a reserve that can step in until the market is able to kind of reconsolidate liquidity around those positions . . . And it's basically meant to take out these extreme spikes and inject liquidity into the book and allow markets to consolidate again around the new prices, when there are extreme price movements, **which do happen** every sometime" (emphasis added).[8]  Contrary to showing scienter, this demonstrates that Jump Trading was being candid with the market and does not support an inference that Jump Trading said one thing but believed another.

Plaintiffs' attempt to rely on a 2022 blog post by Remi Tetot—a person who Plaintiffs do not allege is associated with Jump Trading—for this purpose is both unavailing and misleading. *See* SAC ¶ 256.  Plaintiffs claim that Mr. Tetot "explicitly admitted [that] all of the Defendants knew before the May 2022 collapse that the algorithmic stablecoin pair UST and LUNA, along with the Anchor Protocol, was entirely unstable and unsustainable."  *Id*.  To make this assertion, Plaintiffs selectively and misleadingly quote Mr. Tetot's blog post to attempt to cast it as an admission concerning what all the Defendants knew or believed. *Id.* ¶ 256.  But Mr. Tetot's statement, read in its entirety, flatly contradicts that.  He explicitly states in the first sentence of that post that he was not purporting to speak about what others knew or intended.[9]  Further, Plaintiffs' excerpt of Mr. Tetot's post makes clear that Mr. Tetot was referring only to the sustainability of the Anchor Protocol, not the sustainability of UST and LUNA.  *See id.* ¶ 163 (including Tetot's statement that "the 20% *yield on Anchor . . .* was essentially the marketing budget and the cost of customer acquisition, we knew it wasn't sustainable but *I think it was acceptable for the time being*, yield should have been dynamic as the system gr[e]w" (emphasis added)).  While Plaintiffs allege

---

[8] The Court may consider Mr. Kariya's statements made during the Ship Show podcast because Plaintiffs rely on its contents.  *Sneed v. AcelRx Pharms., Inc.*, 2022 WL 4544721, at *3 (N.D. Cal. Sept. 28, 2022) ("The incorporation by reference doctrine permits the Court to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [Plaintiffs'] pleading." (internal quotation marks omitted)).

[9] The Court may consider the entirety of the blog post because Plaintiffs rely heavily on it and its authenticity is not questioned.  *Sneed*, 2022 WL 4544721, at *3.  Plaintiffs conveniently leave out: "Before going into this, I want to clarify that this is my personal opinion . . . This article is meant to acknowledge why own [sic] mistakes along the Luna journey, not to put the blame on anyone or analyze TFL or LFG actions during the collapse."  Remi Tetot, *Luna—The fall of a giant*, Medium (June 2, 2022), https://medium.com/@remi.tetot/luna-the-fall-of-a-giant-af0244cce8e5.

connections between Jump Trading and the LFG (which Mr. Tetot was alleged to have been associated with), there is no basis to infer that Jump Trading shared Mr. Tetot's alleged knowledge or opinions about the sustainability of the Anchor Yield.   Other than this deficient, misleading reference to Mr. Tetot's assertion, the SAC is entirely devoid of a single specific allegation that Jump Trading had knowledge of any alleged unsustainability.

*Third*, Plaintiffs' general allegations of Defendants' motive and opportunity are insufficient to allege scienter.  *See id.* ¶ 259.  Here again, Plaintiffs fail to specify a motive or opportunity possessed by Jump Trading in particular.[10]  But even were the allegations tied to Jump Trading, "'motive and opportunity' evidence alone is insufficient to establish scienter at the pleadings stage." *City of Royal Oak*, 880 F. Supp. 2d at 1069; *see Police Ret. Sys. of St. Louis*, 759 F.3d at 1061–62 (rejecting motive and opportunity arguments as "not independently sufficient").

With regards to Plaintiffs' claim for scheme liability, they fail to allege a strong inference of scienter for an additional reason:  As the only action Jump Trading allegedly took in connection with the scheme allegations was trading in May 2021, the relevant scienter is Jump Trading's intent at the time of that trading.  *See Tellabs*, 551 U.S. at 319 ("a private plaintiff must prove that the defendant *acted* with scienter" (emphasis added)).  But Plaintiffs do not allege—nor could they— that at that point Jump Trading knew or was reckless in not knowing that TFL or Mr. Kwon would later make the alleged misrepresentations regarding the event.

In sum, as Plaintiffs have failed to allege facts giving rise to a strong inference of scienter with respect to Jump Trading, their securities fraud claims against Jump Trading must be dismissed.

### 4.  Plaintiffs Fail to Allege Reliance on Jump Trading's Statements.

Plaintiffs do not adequately plead that they relied on Jump Trading's alleged misstatements, nor do they allege that the market for Terra Tokens was efficient such that they could avail themselves of the fraud-on-the-market presumption of reliance.

---

[10] This allegation's inapplicability to Jump Trading is illustrated by the allegation's focus on a motive in connection with the "*distribution* of the UST/LUNA Tokens," SAC ¶ 259 (emphasis added), which cannot refer to Jump Trading as Plaintiffs do not allege Jump Trading distributed tokens.

15

Plaintiffs have not alleged any facts that would support an inference that they themselves relied on Jump Trading's statements in making their decisions to buy UST or LUNA.  In fact, they do not even allege that they saw a single statement made by Jump Trading.

Instead, it appears that Plaintiffs are attempting to proceed on the fraud-on-the-market theory of reliance.  *See, e.g.*, SAC ¶ 260 ("As a result of the publication and dissemination of the materially false and misleading information and failure to disclose material facts…the price of the UST/LUNA Tokens…was artificially inflated".); *id.* ¶ 261 (alleging that "Plaintiffs and the *other Class members*" relied "directly or *indirectly* on the false, misleading, and materially incomplete statements that Defendants made and approved" (emphasis added)).  But Plaintiffs have not alleged an efficient market, as required to invoke that theory.

"The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business." *Basic*, 485 U.S. at 241–42 (internal citation omitted).  To establish a presumption of reliance through fraud-on-the-market, Plaintiffs must plead that (1) "the alleged misrepresentations were publicly known," (2) the security "traded in an efficient market," and (3) "the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011) (internal citations omitted).  "Efficiency must be pled with particularity under Rule 9(b)." *ScripsAmerica*, 119 F. Supp. 3d at 1252.

The SAC is devoid of any—let alone particularized—allegations that the market for any Terra Tokens was efficient.  Nor do Plaintiffs allege any of the indicia of an efficient market, including a high volume of trading or that there are "numerous market makers and arbitrageurs."[11] *See Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015) (quoting *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999)).  Plaintiffs' allegations pale in comparison even to those other courts have found lacking.  In *ScripsAmerica*, for example, the plaintiff referenced the

---

[11] In fact, Plaintiffs allege that in September 2020, TFL loaned LUNA to Jump to "improve liquidity," implying that there were few market makers for Terra Tokens at that time.  SAC ¶ 33.

16

volume of trading, identified eight market makers and arbitrageurs, and alleged "a cause and effect relationship between financial releases and an immediate response in [its] stock price," but the court found these allegations to be conclusory, not plausible, and insufficient to invoke fraud-on-the-market reliance. 119 F. Supp. 3d at 1253–58 (alteration in original). Here, without any allegations of an efficient market, Plaintiffs are not entitled to the presumption of reliance based on the fraud-on-the-market theory, and therefore they have not pleaded reliance on Jump Trading's purported misstatements.

### 5. Plaintiffs Have Not Alleged That Jump Trading's Actions Caused Their Losses.

Plaintiffs also fail to allege that Jump Trading's purported fraud caused their (or anyone else's) losses because they do not allege with particularity that such fraud was revealed prior to the price drop in May 2022. Without such allegations, it is not possible to tie the decline in price to any statements made by Jump Trading, as opposed to, for example, changed economic circumstances or the highly publicized volatility of the cryptocurrency markets.

The loss causation requirement is akin "to the showing of proximate causation required in ordinary tort actions." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). The Supreme Court has made clear that "the fact that a stock's price on the date of purchase was inflated because of [a] misrepresentation does not necessarily mean that the misstatement is the cause of a later decline in value," as "the drop could instead be the result of other intervening causes, such as changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Erica P. John Fund*, 563 U.S. at 812–13. "To establish loss causation in a fraud-on-the-market case, the plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI*, 977 F.3d at 789 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S 336, 347 (2005)). A "truth becom[ing] known" occurs most commonly through a corrective disclosure, which occurs when "information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *Id.* at 790; *see* 15 U.S.C. § 78u-4(e)(1).

Plaintiffs have not alleged any such disclosure.  The sole allegations regarding a revelation of the purported fraud are, generically, that "it was revealed that [UST and LUNA] were unstable and unsustainable" and that "Defendants disclosed, and the market discovered" that UST was not stable and the peg was unsustainable.  SAC ¶¶ 159, 263.  These conclusory and bare-bones allegations do not meet Rule 9(b)'s particularity requirement.  *See In re BofI*, 977 F.3d at 793–94. Plaintiffs do not assert when these supposed revelations occurred or that they predated the fall in price (nor could they).  In fact, the thrust of their theory is that the occurrence of the depeg itself revealed the instability, not that a revelation of prior misstatements caused the depeg.  *See, e.g.*, SAC ¶ 158 ("In early May 2022, structural vulnerabilities within the Terra ecosystem precipitated a massive selloff of both UST and LUNA.").

But a lower later price—particularly in admittedly "notoriously volatile" cryptocurrency markets, *id.* ¶ 62—does not mean the market was reacting to revelation of the truth about a misrepresentation.  As the Supreme Court has recognized, it may instead reflect countless other causes.  *Dura Pharms.*, 544 U.S. at 343 (referring to "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events"); *see Powell v. Idacorp, Inc.*, 2007 WL 1498881, at *5 (D. Idaho May 21, 2007) ("Based on the facts alleged here, it is impossible to say that the price reduction on these particular days in the volatile energy market was caused by Defendants' misconduct because the misconduct was not yet known to the market.").  Without any particular allegations that the depeg in May 2022 was caused by a revelation of the supposed fraud, Plaintiffs have failed to adequately plead that Jump Trading's putative misstatements caused their losses.

### 6. Plaintiffs Fail to Allege Fraud in Connection With a Security.

Jump Trading incorporates by reference the arguments in the TFL Motion to Dismiss concerning Plaintiffs' failure to allege fraud in connection with a security, as Plaintiffs have not adequately alleged that the tokens at issue here are securities.  *See* TFL Mot. to Dismiss.

### B.  Plaintiffs Fail to Plead Control Person Liability for TFL and the LFG's Actions.

Apparently recognizing the fatal deficiencies of their primary violation allegations against Jump Trading, Plaintiffs attempt to pin liability on Jump Trading for the alleged securities violations

18

of others.  That tactic fares no better.  Plaintiffs assert in Counts III and V two control person claims against Jump Trading—one in connection with TFL's and the LFG's alleged material misrepresentations and one in connection with TFL's and the LFG's putative failure to register the Terra Tokens as securities.  *See* SAC ¶¶ 277, 294.  To state a claim for control person liability under Section 15 of the Securities Act and Section 20(a) of the Exchange Act, Plaintiffs must allege that (1) "a primary violation was committed" and (2) "the defendant 'directly or indirectly' controlled the violator."[12]  *Paracor*, 96 F.3d at 1161; *accord No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).  Plaintiffs' allegations fail on both prongs.

> *First*, as discussed in the TFL Motion to Dismiss, Plaintiffs do not adequately allege TFL's and the LFG's primary liability for either securities fraud or TFL's primary liability for failure to register securities. *See* TFL Mot. to Dismiss.  Without primary liability by TFL or the LFG, Plaintiffs cannot establish control person liability.  *Oregon Pub. Emps.'*, 774 F.3d at 610 (dismissing control person claim for failure to allege a violation of section 10(b) and Rule 10b-5).

> *Second,* Plaintiffs fail to allege any facts supporting their conclusory assertions that Jump Trading had actual power or control over TFL.  Plaintiffs' boilerplate allegations that the "Control Person Defendants" had "sufficient influence" over TFL and that "Defendant[] . . . Jump" "participated in the operation and management of TFL," SAC ¶¶ 277, 297–98, are merely a "formulaic recitation of the elements," *see Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (dismissing control person claims where complaint lacked anything "more than 'a formulaic recitation of the elements' of control person liability" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (dismissing as conclusory the allegation that "[b]y virtue of their positions and their power to control public statements about Wells Fargo,

---

[12] The analysis under both provisions is identical.  *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) (confirming that factual analysis of control person liability under Section 15 of the Securities Act is identical to that of Section 20(a) of the Exchange Act).

1   the Individual Defendants had the power and ability to control the actions of Wells Fargo").  The

2   cursory nature of Plaintiffs' allegations is particularly evident in its reference to unspecified

3   "Defendants" being "officers and/or directors of entities that issues (sic) securities."  SAC ¶ 278.

4   Jump Trading (itself an entity) obviously is not alleged to be an officer or director of TFL, the only

5   putative issuer of securities in this case.  Jump Trading and TFL are entirely separate, unrelated

6   corporate entities, and Plaintiffs do not make a single specific allegation of control Jump Trading

7   had over TFL.  This is insufficient to plead a control person claim.  *See Pub. Emps.' Ret. Sys.*, 714

8   F. Supp. 2d at 484 (dismissing where, aside from boilerplate allegations, the complaint merely

9   "indicate[d] that [Defendant] is a wholly separate corporate entity from [the primary violator]").

10       The same conclusion applies with regard to the LFG.  Plaintiffs' allegations that Jump

11   Trading provided funding to the LFG and was "a member of the Luna Foundation Guard," or that

12   Mr. Kariya was on "the Luna Foundation Governing Council" are not sufficient to state a claim for

13   control person liability.  SAC ¶¶ 18, 57.  Indeed, even an allegation that "a person is a CEO or other

14   high-ranking officer within a company"—which, of course, Plaintiffs do not allege here against

15   Jump Trading—"does not create a presumption that he or she is a 'controlling person.'"  *Purple*

16   *Mountain*, 432 F. Supp. 3d at 1107 (internal citations omitted).  Instead, Plaintiffs must allege

17   specific facts that "demonstrate [a defendant's] involvement in the day-to-day affairs of the

18   company or specific control over the preparation and release of the allegedly false and misleading

19   statements."  *Bao v. SolarCity Corp.*, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015).  They

20   have not.

21       Plaintiffs' vague allegations of control fall flat, merely asserting that

22   "Defendants . . . [including] Jump" "conducted and participated, directly and indirectly, in the

23   conduct of [the LFG's] business affairs" and that "Defendants" "were able to, and did, control the

24   contents of the various reports, press releases and public statements cand (sic) course of conduct

25   during the Relevant Period."  SAC ¶¶ 277, 279.  In addition to constituting impermissible group

26   pleading, these barebones and conclusory allegations are not sufficient to establish control liability.

27   *Purple Mountain*, 432 F. Supp. 3d at 1106.  Courts regularly dismiss control person claims lacking

28

20

specific allegations of the defendant's responsibilities.  *See In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016) (holding that allegations of a CEO running the day-to-day operations were sufficient to state a control person claim but dismissing control person claim where plaintiff only alleged the defendant served as Chief Marketing Officer and failed to allege responsibilities); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 978 (D. Ariz. 2010) (dismissing complaint that failed to include allegations of responsibilities of outside director, which "make it impossible to discern whether [Defendant] was responsible for controlling any aspect of [primary violator's] management or policies").  Without allegations of any responsibilities that Jump Trading had with regards to the operations of the LFG, Jump Trading cannot be held liable for the LFG's actions.

## C. Plaintiffs Have Not Alleged That Jump Trading Committed a Pattern of Racketeering Activity Causing Their Injuries.

Plaintiffs' racketeering claim fails as it does not adequately allege fraudulent acts by Jump Trading that proximately caused Plaintiffs' alleged losses.  Nor do Plaintiffs allege that these acts (were they to qualify as predicate acts) occurred over a "substantial period" as required for racketeering liability.

To allege a civil RICO claim, Plaintiffs must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the Plaintiffs' 'business or property.'"  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).  RICO claims based on fraud, like Plaintiffs', must satisfy Rule 9(b)'s heightened pleading requirements. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).  As with their securities fraud claims, Plaintiffs' inability to allege that Jump Trading committed the required predicate acts and that those actions were the proximate cause of Plaintiffs' injury is fatal to their RICO claim.  In addition, this claim fails because Plaintiffs do not allege a continuing pattern of racketeering activity beyond a few months.  Jump Trading further adopts the argument set forth in the TFL Motion to Dismiss regarding the preclusion of Plaintiffs' RICO claims under the PSLRA bar.  *See* TFL Mot. to Dismiss.  Plaintiffs' RICO claim thus must be dismissed.

**1. Plaintiffs Have Not Adequately Alleged Predicate Acts by Jump Trading.**

Plaintiffs' allegations of racketeering activity through mail and wire fraud fail for the same reasons as their securities fraud allegations. Wire, mail, and securities fraud largely share elements. Wire and mail fraud require, among other things, (1) a materially false or fraudulent representation, pretense, promise, or omission (2) made with the intent to defraud. *See United States v. Woods*, 335 F.3d 993, 997 (9th Cir. 2003). For the same reasons Plaintiffs' securities fraud claims fail, *see supra* pp. 6–15, Plaintiffs' allegations of Jump Trading's (1) material misstatements or omissions and (2) scienter are as insufficient to satisfy the RICO pleading requirements.

**2. Plaintiffs Have Not Alleged That Jump Trading's Actions Proximately Caused Their RICO Injury.**

Plaintiffs likewise have failed to allege that Jump Trading's actions directly caused their losses. As with securities fraud, a RICO claim requires Plaintiffs to allege proximate cause, i.e., a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Invest. Prot. Corp.*, 503 U.S. 258, 259 (1992). Merely alleging but-for causation is insufficient. *See id.* at 266. It is well established that a plaintiff may not recover damages unless his injury occurs at the "first step" in the proximate cause inquiry; relief is foreclosed when there are "independent factors" between the alleged wrongdoing and the alleged harm. *See Hemi Grp. v. City of New York*, 559 U.S. 1, 10, 15 (2010) (denying recovery where the "theory of causation requires us to move well beyond the first step"); *Holmes*, 503 U.S. at 269, 271. This limitation exists because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation." *Holmes*, 503 U.S. at 269.

As discussed above with regard to their securities claims, Plaintiffs have failed to allege that Jump Trading's actions were the proximate cause of their injuries. Plaintiffs have not, and cannot, establish that the purported fraud was revealed before the prices of LUNA and UST dropped in May 2022. In addition, given that Jump Trading's earliest alleged misconduct did not occur until May 2021, two years after the first purported misrepresentation by other Defendants in April 2019, the price drop is not plausibly attributable to Jump Trading. *See* SAC ¶ 120 (citing the April 2019

LUNA whitepaper).  At most, Jump Trading's alleged conduct, even if accepted as true, "merely furthered, facilitated, permitted or concealed an injury which happened or could have happened independently" of Jump Trading's actions.  *See Picard v. Kohn*, 907 F. Supp. 2d 392, 397 (S.D.N.Y. 2012) (internal quotation marks omitted).  As a result, the connection between Jump Trading's alleged conduct and Plaintiffs' purported injuries is "too indirect to satisfy the proximate cause requirement."  *Id.*  Plaintiffs thus have failed to adequately allege that Jump Trading caused their injury, and their RICO claim must be dismissed.

### 3.  Plaintiffs Fail to Allege a Sufficient Pattern of Racketeering by Jump Trading.

Even were Plaintiffs' predicate acts and causation allegations sufficient, they do not allege that Jump Trading engaged in a pattern of related conduct "over a substantial period of time." *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020).  Plaintiffs' allegations of predicate acts against Jump Trading span just one month, which does not meet RICO's continuity requirement.

"[U]nder RICO, a plaintiff must show that the underlying 'racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'"  *Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1043–44 (N.D. Cal. 2011) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, (1989)).  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id.* (internal quotation marks omitted).  Here, Plaintiffs allege an end to the activity, thus they are proceeding on the basis of a closed-ended theory of liability.  Closed-ended continuity "entails a series of related predicates extending over a substantial period of time, i.e., *more than a few weeks or month*s."  *Metaxas*, 503 F. Supp. 3d at 941 (quoting *H.J. Inc.*, 492 U.S. at 241) (internal quotation marks omitted) (emphasis added).  In its analysis, "the Court may only consider predicate acts attributable to [Jump Trading]."  *Cnty. of Marin*, 836 F. Supp. 2d at 1043.

Plaintiffs fail to allege a pattern as to Jump Trading because, even assuming that the conduct attributed to Jump Trading constituted predicate acts, Plaintiffs have alleged only a single month of racketeering conduct by Jump Trading.  The first apparent alleged predicate act by Jump Trading

occurred in late May 2021.  SAC ¶¶ 191–92.  Plaintiffs then allege that the pattern of racketeering activity "was continuing until June 27, 2021."  *Id.* ¶ 335.  A month of potential activity by Jump Trading is insufficient to establish a pattern, warranting dismissal of the RICO claim.  *See Nationstar Mortg. LLC v. Presley*, 2023 WL 121746, at *6 (E.D. Cal. Jan. 6, 2023) (dismissing RICO claim where "Plaintiff arguably pleaded at most two predicate acts of mail fraud occurring during a discrete four-month period").

### D.  Plaintiffs' State Law Claims Must Be Dismissed.

Plaintiffs' California state law claims for aiding and abetting, conspiracy, and unjust enrichment/restitution fare no better than their federal claims.  Plaintiffs cannot bring aiding and abetting and conspiracy claims for securities fraud violations.  Plaintiffs' unjust enrichment claim is doomed by the same flaws as their securities fraud claims and likewise must be dismissed.

### 1.  Supreme Court and Ninth Circuit Precedents Preclude Plaintiffs' Aiding and Abetting and Conspiracy Claims.

Plaintiffs allege state law violations of aiding and abetting and conspiracy.  However, the SAC fails to indicate what primary violation Jump Trading allegedly aided and abetted or conspired to commit.  Given the thrust of the allegations, it appears that Plaintiffs intended to allege aiding and abetting and conspiracy in connection with securities fraud.  Those, however, are not viable theories of liability under established law.  The Supreme Court has made clear that "a private plaintiff may not maintain an aiding or abetting suit" for securities fraud under Securities Act Section 10(b).  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994); *see Burnett*, 2007 WL 4754539, at *6 (applying *Cent. Bank*).  Nor is there a private right of action for conspiracy to commit securities fraud in the Ninth Circuit.  *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 592 (9th Cir. 1995).  Plaintiffs' allegations therefore fail as a matter of law.

### 2.  Plaintiffs' Unjust Enrichment Claim Fails as They Have Not Alleged Fraud.

Plaintiffs' unjust enrichment claim fails due to their lack of allegations evidencing fraud by, or a benefit conferred on, Jump Trading.  In California, a claim for unjust enrichment is "not a cause of action . . . or even a remedy."  *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154,

24

1   1166 (N.D. Cal. 2020).  Instead, it is construed as a quasi-contract claim seeking restitution.  *Astiana*

2   *v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  As such, "a plaintiff must allege

3   that it conferred an unjust benefit on the defendant through mistake, fraud, coercion, or request."

4   *Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014, 1025 (N.D. Cal. 2021).  Where, as here, the

5   underlying acts are based on fraud, unjust enrichment must be plead with specificity pursuant to

6   Rule 9(b).  *See Puri v. Khalsa*, 674 F. App'x 679, 689–90 (9th Cir. 2017) (applying Rule 9(b) to

7   fraud-based unjust enrichment claim).  Plaintiffs fail to do so.

8   　　　As an initial matter, Plaintiffs' unjust enrichment claim is based on the same facts as its

9   statutory claims for securities fraud and RICO.  Plaintiffs thus have not alleged that they lack an

10  adequate remedy at law, precluding an equitable remedy under unjust enrichment.  *See Nacarino v.*

11  *Chobani, LLC*, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021).  Beyond that, Plaintiffs'

12  allegations against Jump Trading suffer from the same deficiencies plaguing their other claims.

13  Their unjust enrichment claim is unquestionably based on fraud, but, as detailed above, they have

14  not sufficiently alleged fraud by Jump Trading because they identify no actionable misstatements

15  or omissions by Jump Trading and fail to plead scienter.  Further, their allegation that they

16  "conferred a monetary benefit on Defendants" is impermissible group pleading.  *See* SAC ¶ 350.

17  Plaintiffs have thus failed to allege that they conferred a benefit on Jump Trading due to fraud by

18  Jump Trading, and their unjust enrichment claim must be dismissed.

19  **IV.   CONCLUSION**

20  　　　Plaintiffs filed an original complaint, a First Amended Complaint, and now a Second

21  Amended Complaint.  The allegations against Jump Trading nonetheless remain wholly insufficient,

22  with deficiencies at the core of the PSLRA's pleading requirements, among other things.

23  Accordingly, Jump Trading respectfully requests that the Court dismiss the Second Amended

24  Complaint in its entirety as against Jump Trading.

25

26

27

28

1  Dated: May 2, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KOBRE & KIM LLP

/s/ Jonathan D. Cogan

Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Leif T. Simonson (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Tel.: +1 212 488 1206
Fax: +1 212 488 1231
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
leif.simonson@kobrekim.com

Daniel Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, California 94111
Tel.: +1 415 582 4751
Fax: +1 415 582 4811
daniel.zaheer@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: +1 202 664 1965
Fax: +1 202 664 1920
erika.berman@kobrekim.com

*Attorneys for Defendant Jump Trading, LLC*