1   JOEL D. SIEGEL (SBN 155581)
    joel.siegel@dentons.com
2   ANDREW M. PENDEXTER (SBN 310752)
    andrew.pendexter@dentons.com
3   DENTONS US LLP
    601 South Figueroa Street, Suite 2500
4   Los Angeles, California 90017-5704
    Telephone: 213.623.9300
5   Facsimile: 213.623.9924

6   DOUGLAS HENKIN (Admitted *Pro Hac Vice*)
    douglas.henkin@dentons.com
7   DENTONS US LLP
    1221 Avenue of the Americas
8   New York, New York 10020-1089
    Telephone: 212.768.6700
9   Facsimile: 212.768.6800

10  STEPHEN J. SENDEROWITZ (Admitted *Pro Hac Vice*)
    stephen.senderowitz@dentons.com
11  DENTONS US LLP
    233 South Wacker Drive, Suite 5900
12  Chicago, Illinois 60606-6361
    Telephone: 312.876.8141

13

14  Attorneys for Defendants
    TERRAFORM LABS, PTE. LTD. and
15  DO KWON

    UNITED STATES DISTRICT COURT

16  NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

17

18  NICK PATTERSON, Individually and on Behalf      Case No. 3:22-cv-03600
    of All Others Similarly Situated,
19                                                   **NOTICE OF MOTION AND MOTION
                        Plaintiffs,                   TO (I) DISMISS FOR LACK OF
20                                                   PERSONAL JURISDICTION
               v.                                    PURSUANT TO FED. R. CIV. P. 12(b)(2)
21                                                   AND (II) COMPEL ARBITRATION
    TERRAFORM LABS, PTE. LTD., JUMP                   PURSUANT TO THE FEDERAL
22  CRYPTO, JUMP TRADING LLC, REPUBLIC              ARBITRATION ACT; MEMORANDUM
    CAPITAL, REPUBLIC MAXIMAL LLC,                   OF POINTS AND AUTHORITIES**
23  TRIBE CAPITAL, DEFINANCE
    CAPITAL/DEFINANCE TECHNOLOGIES OY,              Date:        September 19, 2023
24  GSR/GSR MARKETS LIMITED, THREE                  Time:    2:00 p.m.
    ARROWS CAPITAL PTE. LTD., NICHOLAS              Dept.:   Courtroom 9, 19th Floor
25  PLATIAS, AND DO KWON,                           Judge:    Hon. Trina L. Thompson

26                      Defendants.                  Action Filed: July 17, 2022

27                                                   Trial Date: None Set

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213.623.9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## NOTICE OF MOTION AND MOTION

TO THE ABOVE-ENTITLED COURT AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 19, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, Courtroom of the Honorable Trina L. Thompson, 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 9, 19th Floor, Defendants Terraform Labs PTE Ltd. and Do Kwon hereby move this Court to dismiss the Second Amended Complaint ("SAC") in its entirety.

First, the Court should dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(2) because it does not have personal jurisdiction over Defendants.

If the Court decides that it does have personal jurisdiction over Defendants, then it should strike the SAC's class claims pursuant to Federal Rule of Civil Procedure 23 and compel arbitration of Lead Plaintiff's claims pursuant to the FAA and the Court's inherent power dismiss.

Finally, and in the alternative, and pursuant to Defendants' contemporaneously filed motion, the Court should dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) because none of its counts state claims upon which relief can be granted.[1]

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declaration of Arrash Chris Amani, the declaration of Douglas W. Henkin, and the Defendants' Request for Judicial Notice.

Accordingly, Defendants respectfully request this Court to dismiss the SAC with prejudice.

---

[1] Defendants apologize to the Court for combining their Rule 12(b)(2) motion and motion to compel arbitration in a single motion, and their Rule 12(b)(6) motion in a separate motion. Defendants originally had planned to file all three requests in a single omnibus motion (ECF 112 at 2); however, the Court reduced the parties' stipulated pages for such an omnibus motion from 60 to 30. ECF No. 113. Given the time constraints and page limitations, Defendants have instead opted to file two separate motions, each under the 25-page limit set forth in Local Rule 7-2(b). Defendants do not intend to waive any arguments asserted in their separate motions and have made all arguments contemporaneously.

**GLOSSARY**

| '33 Act | Securities Act of 1933 |
|---------|------------------------|
| '34 Act | Securities Exchange Act of 1934 |
| Amani Decl. | Declaration of Arrash Chris Amani dated May 2, 2023 |
| Anchor TOS | Anchor Protocol Terms of Service |
| Convention | United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Section 201 |
| Defendants | Terraform Labs PTE Ltd. and Do Kwon |
| DeFi | Decentralized finance |
| FAA | Federal Arbitration Act |
| Henkin Decl. | Declaration of Douglas W. Henkin dated May 2, 2023 |
| Interface | Anchor Protocol Interface |
| Lead Plaintiff | Michael Tobias |
| LFG | Luna Foundation Guard |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| SAC | Second Amended Class Action Complaint for Violations of the Federal Securities Laws, Violations of the Racketeer Influenced and Corrupt Organizations Act, and Violations of California Law |
| SEC | Securities and Exchange Commission |
| TFL | Terraform Labs PTE Ltd. |
| UST | TerraUSD |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1

## TABLE OF CONTENTS

2   INTRODUCTION ..................................................................................................... 10

3   STATEMENT OF FACTS ....................................................................................... 11

4   STANDARDS OF REVIEW .................................................................................... 17

5   ARGUMENT ............................................................................................................ 17

6          I.      LEAD PLAINTIFF CANNOT RELY ON THE SEC'S ALLEGATIONS ........ 18

7          II.     THE SAC SHOULD BE DISMISSED FOR LACK OF PERSONAL
                   JURISDICTION ................................................................................................ 18
8
9          III.    THE SAC MUST BE DISMISSED PURSUANT TO THE FAA AND THE
                   DOCTRINE OF *FORUM NON CONVENIENS* ................................................. 22

10  CONCLUSION .......................................................................................................... 29

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*19 Tao Vega LLC v. Holo Ltd.*,
    No. C 19-5640 ..................................................................................................... 20, 21

*Aaron v. Durrani*,
    Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471 (S.D. Ohio Mar. 13, 2014) ..................... 18

*Adema Techs., Inc. v. Wacker Chem. Corp.*,
    657 F. App'x 661 (9th Cir. 2016) ........................................................................ 23, 25

*Aguilera v. Ducart*,
    No. 18-CV-03389-HSG, 2019 WL 4168892 (N.D. Cal. Sept. 3, 2019) ........................... 11

*Albright v. Terraform Labs, Pte. Ltd, et al.*,
    Case No. 1:22-cv-07281-JSR (S.D.N.Y.), ECF No. 1 ...................................................... 15

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ................................................................................ 21

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
    622 F. Supp. 2d 825 (N.D. Cal. 2007) ...................................................................... 28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................... 17, 18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................................. 29

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013) ......................................................................................... 23, 25

*Azod v. Robinson*,
    No. CV 16-440-JFW (EX), 2016 WL 6603950 (C.D. Cal. May 10, 2016) ......................... 23

*Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.*,
    819 F.2d 247 (9th Cir. 1987) .................................................................................. 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 17

*Bos. Telecomms. Grp., Inc. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ................................................................................ 26

*Brown v. 140 NM LLC*,
    No. 17-CV-05782-JSW, 2019 WL 118425 (N.D. Cal. Jan. 7, 2019) ................................ 21

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................................................... 21

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
    109 F. Supp. 2d 1236 (S.D. Cal. 2000) ..................................................................... 22

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Comer v. Micor, Inc.*,
　436 F.3d 1098 (9th Cir. 2006) ................................................................................. 27

*In re Connetics Corp. Sec. Litig.*,
　542 F. Supp. 2d 996 (N.D. Cal. 2008) ..................................................................... 18

*Crypto Asset Fund, LLC v. MedCredits, Inc.*,
　No. 19cv1869-LAB (MDD), 2020 WL 1506220 (S.D. Cal. Mar. 30, 2020) ........................ 23

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014) .................................................................................................. 19

*Davis v. Metro Prods., Inc.*,
　885 F.2d 515 (9th Cir. 1989) .................................................................................... 20

*DIRECTV, Inc. v. Imburgia*,
　577 U.S. 47 (2015) .................................................................................................... 26

*Donovan v. Coinbase Global, Inc.*,
　2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) (Thompson, J.) .................................... 26

*Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap., LLC*,
　769 F. App'x 429 (9th Cir. 2019) ..................................................................... 23, 25

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
　131 F.3d 1336 (9th Cir. 1997) .......................................................................... 22, 24

*Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*,
　No. 16-CV-00920-LB, 2016 WL 4259126 (N.D. Cal. Aug. 12, 2016) ................................ 25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915 (2011) .................................................................................................. 19

*Green Tree Fin. Corp.-Ala. v. Randolph*,
　531 U.S. 79 (2000) .................................................................................................... 27

*Houtchens v. Google, LLC*,
　No. 22-cv-02638-BLF, 2023 WL 122393 (N.D. Cal. Jan. 6, 2023) ........................ 23

*Int'l Shoe Co. v. Washington*,
　326 U.S. 310 (1945) .................................................................................................. 19

*Ivy Bridge Univ., LLC v. Higher Learning Comm'n*,
　No. 15-CV-02187-SC, 2015 WL 6555428 (N.D. Cal. Oct. 28, 2015) .................................. 19

*Jeong v. Nexo Fin. LLC*,
　No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) .................................. 22

*Krystal, Inc. v. China United Transp., Inc.*,
　No. CV 16-02406-RSWL-SPX, 2017 WL 6940544 (C.D. Cal. Apr. 12, 2017) ..................... 25

*Loewen v. Lyft, Inc.*,
　129 F. Supp. 3d 945 (N.D. Cal. 2015), *abrogated on other grounds, Henry
　Schein Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ......................... 27

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*M/S Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972) .................................................................................................. 25

*Martensen v. Koch*,
    942 F. Supp. 2d 983 (N.D. Cal. 2013) .................................................................. 19

*McIntosh v. Adventist Health*,
    No. C 12–05589, 2013 WL 968293 (N.D. Cal. Mar. 12, 2013) ............................ 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) .............................................................................................. 22

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .............................................................................. 27

*Nguyen v. OKCoin USA, Inc.*,
    2023 WL 2095926 (N.D. Cal. Feb. 17, 2023) ....................................................... 27

*Nobelbiz, Inc. v. Veracity Networks, LLC*,
    No. 13-CV-2518 YGR, 2013 WL 5425101 (N.D. Cal. Sept. 27, 2013) ................. 21

*Oat Sols., LLC v. Rihko*,
    No. 216CV01046CASEX, 2016 WL 6602557 (C.D. Cal. Nov. 7, 2016) ................ 22

*Pearl v. Coinbase Global. Inc.*,
    2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) .......................................................... 27

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017) ................................................................................ 27

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .............................................................................. 17

*Republic of Kazakhstan v. Ketebaev*,
    No. 17-CV-00246-LHK, 2018 WL 2763308 (N.D. Cal. June 8, 2018) ................. 19

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) .................................................................. 19

*Roberts v. Obelisk, Inc.*,
    18CV2898-LAB, 2019 WL 1902605 (S.D. Cal. Apr. 29, 2019) ............................ 23

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) .............................................................................................. 22

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................................... 17, 20

*SEC v. TFL*,
    No. 23-cv-1346 (S.D.N.Y.), ECF No. 29 ...................................................... 11, 12, 18

*Shearson/Am. Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987) .............................................................................................. 25

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Spy Optic, Inc. v. AreaTrend, LLC,*
    843 F. App'x 66 (9th Cir. 2021) ............................................................... 21

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) .................................................................... 17

*Swiger v. Rosette,*
    989 F.3d 501 (6th Cir. 2021) .................................................................... 27

*Vallarta v. United Airlines, Inc.,*
    497 F. Supp. 3d 790 (N.D. Cal. 2020) ..................................................... 19

**Statutes**

9 U.S.C. § 201 .................................................................................................... 6

9 U.S.C. §§ 201-208 ........................................................................................ 22

9 U.S.C. § 206 .................................................................................................. 23

15 U.S.C. § 78 ........................................................................................... 16, 18

Private Securities Litigation Reform Act of 1995 (PSLRA) ..................... 10, 11, 16, 18

**Other Authorities**

*Cosmos Around the World – Catch the Highlights, Messari Mainnet 2021, New York* (Nov. 23, 2021), https://blog.cosmos.network/cosmos-around-the-world-catch-the-highlights-2c1825599190 ............................................................... 21

*Cutting-Edge Crypto Coins Tout Stability. Critics Call Them Dangerous.*, Wall Street Journal (April 18, 2022) .................................................................. 14

Federal Rule of Civil Procedure 12 .................................................. 10, 11, 17, 29

Federal Rule of Civil Procedure 23 ................................................................ 10, 29

*Giving Finance Experts Nightmares*, Coindesk (April 22, 2022), https://www.coindesk.com/layer2/2022/04/22/built-to-fail-why-terrausds-growth-is-giving-finance-experts-nightmares/ ................................................ 14

https://articles.apollo.farm/ ................................................................................ 17

https://astroport.fi/en ........................................................................................ 16

https://docs.pylon.money/ ................................................................................. 16

https://github.com/Anchor-Protocol ................................................................ 13

https://github.com/terra-money/core (last visited May 1, 2023) ...................... 12

https://siac.org.sg/siac-rules-2016 .................................................................. 27

https://siac.org.sg/wp-content/uploads/2022/06/SIAC-AR2021-FinalFA.pdf ............ 26

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

https://twitter.com/whitewhaledefi/status/1491493034021855238?lang=en ............................. 16

https://whitewhale.money/LitepaperV2.pdf ........................................................................ 16

https://www.uscourts.gov/file/45196/download ............................................................... 26

https://www.xdefi.io/article/tokenomics-xdefi-token-economics/ ..................................... 17

Local Civil Rule 10-1 ...................................................................................................... 18

Rule 8(a) .......................................................................................................................... 18

Rule 11 ............................................................................................................................ 18

Rule 28.1 ......................................................................................................................... 27

Rule 28.2 ......................................................................................................................... 27

Rules 2016 ....................................................................................................................... 27

Ryan Clements, *Built to Fail: The Inherent Fragility of Algorithmic Stablecoins*,
    11 Wake Forest L. Rev .............................................................................................. 14

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants respectfully submit this memorandum of law in support of their motion to (i) dismiss the SAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), (ii) strike the SAC's class claims pursuant to Federal Rule of Civil Procedure 23 and compel arbitration of Lead Plaintiff's claims pursuant to the FAA and the Court's inherent power, and (iii) in the alternative pursuant to Defendants' contemporaneously filed motion, dismiss any remaining claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

The SAC is remarkable for the sheer number of flaws packed into it, not least that it violates nearly every standard set by Congress in the PSLRA, even the PSLRA's provisions relating to the appointment of lead plaintiffs and lead counsel.

TFL developed UST and the companion cryptocurrency LUNA.[2] Lead Plaintiff claims to have purchased UST and staked it on the Anchor Protocol, and seeks to recover alleged losses. The claims in the SAC fail for multiple reasons:

- This Court lacks personal jurisdiction over Defendants.

- Lead Plaintiff is bound by the waiver of class claims and mandatory arbitration provision in the Anchor TOS, which require dismissal of the class claims and that this case be dismissed in favor of arbitration.

- All of the SAC claims fail because they are impermissibly extraterritorial.

- The federal securities claims fail because none of the "Terra Tokens" are securities, TFL was not the "issuer" of any of them, no "Terra Tokens" were required to be registered with the SEC, and Lead Plaintiff fails to plead the other elements of his federal securities claims.

- The SAC's state law aiding and abetting and conspiracy claims fail because private secondary liability claims based on federal securities claims do not exist, and there are no

---

[2] The SAC pleads that ten different tokens are "Terra Tokens" (SAC ¶ 61), but, as demonstrated below, many of those tokens were part of protocols with which neither Defendant was involved and, in any event, Lead Plaintiff only purchased UST and thus lacks standing to assert claims related to tokens other than UST and aUST. Unless otherwise stated in citations, footnotes, quotations, and citations are omitted and emphases are as in the original.

non-federal claims pleaded that could be the bases for state law conspiracy or aiding and abetting claims. The unjust enrichment claim fails because the SAC does not allege that Defendants obtained funds from Lead Plaintiff (or any other purported class member) at all, let alone in any unjust manner.

- The SAC's RICO claim is barred by the PSLRA, and in any event the SAC fails to properly allege RICO injury, a RICO enterprise, RICO predicate acts, that Defendants participated in the operation or management of the alleged enterprise, or RICO continuity.

## STATEMENT OF FACTS[3]

TFL: TFL is an open-source software development firm incorporated and headquartered in Singapore. SAC ¶¶ 17, 41.[4] At all relevant times, Mr. Kwon was TFL's CEO and lived outside the United States. SAC ¶¶ 23, 41. Beginning in 2018, TFL created the Terra protocol, a decentralized and open-source public blockchain protocol for algorithmic stablecoins. Terra stablecoins would not require a centralized issuer to hold reserves or users to pledge collateral in order to maintain their pegs, but would maintain their pegs programmatically through smart contracts operating directly on the blockchain, with the open-source code for those contracts adjusting money supply in response to changes in demand. SAC ¶¶ 50, 120.

UST: In September 2020, TFL announced the launch of UST. SAC ¶¶ 62, 72. TFL had previously published the Terra Money Whitepaper. SAC ¶ 120; Henkin Decl. Ex. A. Released in April 2019, the Terra Money Whitepaper fully disclosed the structure and functionality of Terra stablecoins such as UST to prospective users of these stablecoins. The Terra Money Whitepaper described how the Terra protocol works to stabilize Terra stablecoin prices through an "elastic money supply." Henkin Decl. Ex. A. Given that market prices are determined by supply and demand, when the market price of UST falls below $1, "***all conditions held equal***," decreasing the supply of UST should gradually move its price back up towards $1, and when the market

---

[3] Defendants accept the SAC's *well-pleaded* allegations as true only for the purposes of the portions of the accompanying motion brought under Fed. R. Civ. P. 12(b)(6). Documents relied on in the SAC may be considered in reviewing that motion. *See Aguilera v. Ducart*, No. 18-CV-03389-HSG, 2019 WL 4164892, at *2 (N.D. Cal. Sept. 3, 2019).

[4] Lead Plaintiff incorrectly alleges that TFL is based in Seoul, Korea and headquartered in Singapore. This error by Lead Plaintiff does not matter because TFL is not domiciled in the U.S.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

price of UST rises above $1, "***all conditions held equal***," increasing the supply of UST should gradually move its price back down towards $1. *Id*. at 4 (emphasis added). Thus, the protocol adjusts the supply of UST in response to changes in demand to keep its price stable. *Id*. at 13. This depends on LUNA, the token used by the protocol as the stabilizer for UST. SAC ⁋⁋ 61, 72.

The Terra Money Whitepaper further described how the supplies of UST and LUNA are adjusted through transactions between users and Terra protocol smart contracts using a mint-burn mechanism. Henkin Decl., Ex. A at 4. When UST falls below $1, UST holders can burn their UST tokens and receive (from the protocol itself, not TFL), $1 of newly minted LUNA. *Id*. at 5-6. When UST is valued above $1, LUNA holders can mint new UST using the Terra protocol by burning $1 worth of LUNA. *Id*. Because the protocol was designed so that users can profit by burning UST when priced below $1 and minting UST when priced above $1, users are incentivized to interact with the protocol (not TFL) to decrease and increase the supply of UST and LUNA as needed to normalize the price of UST relative to $1. *Id*.

The source code for the Terra Protocol is and was publicly available: The code, and the history of changes to it, resides in a GitHub repository and can and could be examined by anyone interested in reviewing it or analyzing its function or potential vulnerabilities. *See* Amani Decl. Ex. A at 3; https://github.com/terra-money/core (last visited May 1, 2023). Lead Plaintiff does not allege that the code running the protocol at any time was other than what was publicly disclosed.

Anchor: In March 2021, TFL announced the launch of the Anchor Protocol. SAC ⁋ 69. In June 2020, prior to launching Anchor, TFL published the "Anchor Whitepaper," SAC ⁋⁋ 71, 121; Henkin Decl. Ex. C, which fully disclosed Anchor's structure and functionality to prospective users. The Anchor Whitepaper explained how the protocol accepts UST deposits from staking users and lends out UST deposits to users who wish to borrow UST, and those borrowers pledge digital assets to the protocol as collateral for the loans. Henkin Decl. Ex. C at 1. The yield earned by the protocol from its programmatic use of that collateral is paid to the staking users as "interest." *Id*. at 1, 4. Staking users can make instant withdrawals and their staked tokens are protected in two ways: (1) The protocol requires all loans to be over-collateralized and (2) loans at risk of violating collateral requirements are immediately called via a liquidation mechanism—

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

third parties are incentivized to pay off the at-risk loans in exchange for the collateral plus a fee. *Id*. at 6-7. Since the Anchor Whitepaper was published the protocol has been updated and changed over time, which changes and updates were announced on the Anchor website and other online platforms.

The Anchor Protocol offered staking users 20% annual "interest" on their staked tokens subject to certain terms and conditions. SAC ⁋⁋ 6, 70, 122. The Anchor TOS, published on the Anchor website, cautioned that the "Rate" was a "forward-looking projection" and not a guarantee. Amani Decl. Ex. A at 5. And the Anchor TOS expressly warned that "[e]ven if the Rate is achieved as projected, you may still suffer a financial loss in fiat-denominated terms if the fiat-denominated value of the relevant tokens (your deposit and any tokens allocated or distributed to you pursuant to the Rate) declines during the deposit period." *Id.* Lead Plaintiff does not allege that any Anchor user (a) failed to receive the disclosed "interest rate" on staked tokens or (b) lost any staked tokens due to the operation of the Anchor Protocol; rather, Lead Plaintiff alleges losses due to declines in the market (*i.e.*, "fiat-denominated") values of UST and LUNA.

The source code for the Anchor Protocol is and was publicly available; indeed, as explained in the Anchor TOS, the Anchor Protocol "is comprised entirely of open-source software running on the public Terra blockchain and is not [TFL's] proprietary property." *Id.* ¶ 7. The code, and the history of changes to it, resides in a GitHub repository and can and could be examined by anyone interested in reviewing it or analyzing its function or potential vulnerabilities. *See* Amani Decl. Ex. A at 3; https://github.com/Anchor-Protocol. Lead Plaintiff does not allege that the code running the Anchor Protocol at any time was other than what had been publicly disclosed.

Mirror: In December 2020, TFL announced the launch of the Mirror Protocol. SAC ⁋ 69. Mirror allowed users to choose any real-world asset with a live price feed and create a digital asset that mirrored its price movements. SAC ⁋⁋ 63-64; Henkin Decl. Ex. D at C.3.1. Users created mirrored assets, or "mAssets," referencing a range of financial assets, including U.S. equities, indices, and other cryptocurrencies. mAssets could be traded in peer-to-peer transactions

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

on trading platforms developed by third parties. The community of Mirror users decided collectively which mAssets to create. Governance proposals were made to whitelist new mAssets, with proposals that gained the necessary community support passing. Users who staked MIR tokens (Mirror's governance token) could vote on proposals. The protocol granted MIR tokens to users for undertaking activity beneficial to the protocol, such as providing liquidity for mAsset trading and voting on governance proposals.

The Risk of a UST Depeg is Debated Publicly: In May 2021, the market price of UST declined from its peg but recovered. SAC ¶¶ 191, 199. As Lead Plaintiff concedes, a robust public debate followed as to whether UST could lose its peg and not recover:

- In July 2021, a British economist publicly argued that algorithmic stablecoin models such as UST's could not defend against a bank run. SAC ¶ 45; *see also* Ryan Clements, *Built to Fail: The Inherent Fragility of Algorithmic Stablecoins*, 11 Wake Forest L. Rev. Online 131 (2021) http://www.wakeforestlawreview.com/2021/10/built-to-fail-the-inherent-fragility-of-algorithmic-stablecoins/.

- In December 2021, an engineer at MakerDAO, creator of the DAI stablecoin, publicly argued that "UST will collapse in a death spiral with LUNA hyper-inflating to try to cover the peg." SAC ¶ 46.

- Numerous articles appeared in journals and news media regarding the risks associated with UST and algorithmic stablecoins generally. *See, e.g.*, Alexander Osipovich, *Cutting-Edge Crypto Coins Tout Stability. Critics Call Them Dangerous.*, Wall Street Journal (April 18, 2022), https://www.wsj.com/articles/cutting-edge-crypto-coins-tout-stability-critics-call-them-dangerous-11650226597?mod=itp_wsj&ru=yahoo; David Z. Morris, *"Built to Fail": Why TerraUSD's Growth is Giving Finance Experts Nightmares*, Coindesk (April 22, 2022), https://www.coindesk.com/layer2/2022/04/22/built-to-fail-why-terrausds-growth-is-giving-finance-experts-nightmares/.

LFG Is Formed: In January 2022, the Luna Foundation Guard ("LFG") was formed to help address the risk that UST might materially lose its peg and require additional support to prevent a more significant collapse. SAC ¶¶ 48-52. LFG is a non-profit organization incorporated and headquartered in Singapore. SAC ¶¶ 48, 50. On January 19, 2022, LFG announced its formation whose "first prerogative is to focus on building reserves to better safeguard the UST peg during adverse market conditions." SAC ¶ 48-52; Henkin Decl. Ex. E at 1. Mr. Kwon emphasized the importance of LFG's "mandate to continuously support the peg stability of Terra's stablecoins" and LFG confirmed that it "will prioritize the peg stability and sustainability

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

of Terra's flagship stablecoin," UST. *Id.*[5]

May 2022 Depeg: In May 2022, the disclosed risk that had been publicly debated for months or more materialized. UST experienced a market event, lost its peg, and failed to recover. On May 7, 2022, a massive selloff of both UST and LUNA occurred and by May 25, 2022, both coins had lost nearly all their value. SAC ¶¶ 158-62. While this was happening, and as it had promised to do, LFG expended roughly $2.8 billion to defend the UST peg. Henkin Decl., Ex. F. LFG was not alone in trying to defend the peg: TFL spent hundreds of millions of dollars of its own in trying to defend the peg. *See* Henkin Decl. Ex. G.

U.S. Litigations: On June 17, 2022, this action was filed. Five competing motions, each to appoint a single person as lead plaintiff and a single firm as lead counsel, were filed on August 19, 2022. *See* ECF Nos. 19, 24, 25, 28, and 32. Throughout the briefing of those motions, no movant sought appointment of more than one lead plaintiff or more than one lead counsel. On December 13, 2022, this Court entered an order appointing Michael Tobias as sole lead plaintiff and the Rosen Law Firm as sole lead counsel. *See* ECF No. 73. No one sought court approval to include additional plaintiffs or law firms to represent the proposed class in this case.[6]

Despite this Court's order appointing one lead plaintiff and one lead counsel (ECF No. 73), the SAC purports to be brought by "Lead Plaintiff Michael Tobias and named plaintiff

---

[5] Although UST was structured to incentivize users to engage in arbitrage trades with the Terra protocol to support the peg, LFG acknowledged that "[o]ne of the common criticisms of algorithmic stablecoins is their reflexive nature during extreme volatility, where the arbitrage incentives to bring the peg back to parity can potentially deteriorate." Henkin Decl. Ex. H at 1. LFG explained that the reserve fund would "provide[] an additional avenue to maintain the stability of the peg," as "[t]he Reserve assets can be utilized in instances where protracted market sell-offs deter buyers from restoring the UST peg's parity and deteriorate the Terra protocol's open market arbitrage incentives." *Id.; see also* Henkin Decl. Ex. I at 1 ("The premise of the UST Reserve is to provide a backstop against UST peg deviations in instances of sharp contractions of UST demand exogenous to Terra's algorithmic model.").

[6] On August 25, 2022, Matthew Albright, a member of the proposed class in this case, filed a mostly identical complaint in the United States District Court for the Southern District of New York. *See Albright v. Terraform Labs, Pte. Ltd, et al.*, Case No. 1:22-cv-07281-JSR (S.D.N.Y.), ECF No. 1. On November 11, 2022, Albright filed an amended complaint. *Albright*, ECF No. 42. The parties fully briefed motions to dismiss Albright's amended complaint, and oral argument on those motions was scheduled for January 11, 2023. However, the week before argument it came to light that Albright had not lost money at all on UST and LUNA—*he made $35,000* on a total of $20,067 purchases of UST and LUNA, all after the depeg had happened (a nearly 75% profit in just a few days), and he thus lacked Article III standing to sue. *See Albright*, ECF No. 78. On January 9, 2023, Albright voluntarily dismissed that case. *See id.* ECF No. 79.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Nick Patterson" (SAC at p. 1) by the Rosen Law Firm as "*Lead Counsel for Lead Plaintiffs and the Putative Class*" and Scott+Scott (Patterson's original counsel) as "*Additional Counsel*" (SAC at p. 89, italics in original). But neither Patterson (who was not appointed lead plaintiff by this Court) nor Scott+Scott (which was not approved by this Court for any role in the case) have any authority to act in this case. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Mr. Tobias selected the Rosen Law Firm, not Scott+Scott, and no one asked the Court to approve Scott+Scott remaining involved in this case.[7]

- The SAC's definition of "Terra Tokens" is wrong. UST and LUNA are companion tokens, "ANC" tokens are the native governance tokens of the Anchor Protocol, and "MIR" tokens are the native governance tokens of the Mirror Protocol; both Anchor and Mirror were developed by TFL but are governed by their communities of governance token holders. SAC ¶ 61. "aUST" tokens are tokens created by the Anchor Protocol when UST is deposited into the Anchor Protocol—they are used to reclaim deposited UST from the Anchor Protocol. *Id.*[8] But the SAC also claims that "vUST," "$WHALE," "ASTRO," "APOLLO," and "XDEFI" are "Terra Tokens." They are not: "$WHALE" is the governance token of the White Whale DeFi system, which was neither created nor run by Defendants. *See* https://whitewhale.money/LitepaperV2.pdf at 12. "vUST" was a token created by the White Whale system for using UST in *that* protocol. *See* https://twitter.com/whitewhaledefi/status/1491493034021855238?lang=en. "ASTRO" is the native token of the Astroport system, which was neither created nor run by Defendants. *See* https://astroport.fi/en. "APOLLO" was the token of the Apollo DAO, a series of projects also not

---

[7] Contemporaneous documents from Twitter and a Discord group called the "UST Restitution Group," a public Discord group set up by FatManTerra for UST and LUNA purchasers to talk to each other about filing lawsuits, show developments relating to this lawsuit that are not reflected in the lead plaintiff motions. FatManTerra appears to be the driving force behind this litigation, having begun preparations for it in late May 2022. *See* Henkin Decl. Ex. B. He apparently selected Scott+Scott to bring this case. *See* Henkin Decl. Ex. O. And when he thought that Roche Freedman had "won" lead plaintiff and lead counsel, he told the Discord group that "Scott+Scott will be working under them," *see* Henkin Decl. Ex. P, suggesting that an agreement in violation of the PSLRA had been reached in September 2022. Roche Freedman, of course, is the firm that was involved with the Kyle Roche scandal (ECF No. 43) and whose lead plaintiff candidate later withdrew entirely (ECF No. 70), and it appears that the Scott+Scott arrangement followed that withdrawal to the Rosen Firm, *see* Henkin Decl. Ex. Q.

[8] "$MINE" is the native governance token for the Pylon Protocol, a separate protocol developed by TFL. *See* https://docs.pylon.money/.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   built by Defendants. *See* https://articles.apollo.farm/. "XDEFI" is the native token—which

2   operates on the Ethereum blockchain, not the Terra blockchain—for the XDEFI wallet system

3   designed by the company Delphi Digital, not Defendants. *See*

4   https://www.xdefi.io/article/tokenomics-xdefi-token-economics/.

## STANDARDS OF REVIEW

6          On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden

7   of demonstrating that the Court has personal jurisdiction over a defendant. *Schwarzenegger v.*

8   *Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). Courts may consider documents

9   beyond the four corners of the complaint in determining whether personal jurisdiction exists, and

10  a plaintiff may not "simply rest on the bare allegations of its complaint." *Ranza v. Nike, Inc*., 793

11  F.3d 1059, 1068 (9th Cir. 2015); *Schwarzenegger,* 374 F.3d at 800. Bare bones assertions of

12  minimum contacts with the forum or legal conclusions unsupported by specific factual allegations

13  are not sufficient. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

14         Only a complaint that states a plausible claim for relief can survive a Rule 12(b)(6) motion

15  to dismiss, and determining the plausibility of a complaint "requires the reviewing court to draw

16  on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A

17  complaint must contain enough well-pleaded facts to state a claim for relief that is "plausible on

18  its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to

19  provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

20  formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The rules demand

21  more than "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

23         If the Court agrees that it lacks personal jurisdiction over TFL and Mr. Kwon, it need not

24  reach any other arguments. If it disagrees with respect to personal jurisdiction, it should next

25  determine whether to compel arbitration and strike the class claims pursuant to the Anchor TOS.

26  Only if any claims remain against TFL or Mr. Kwon would the Court need to address whether

27  those claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6), pursuant to

28  Defendants' contemporaneously filed motion.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## I.   LEAD PLAINTIFF CANNOT RELY ON THE SEC'S ALLEGATIONS

Lead Plaintiff purports to "incorporate[ ] by reference in its entirety herein" a complaint filed by the SEC in the United States District Court for the Southern District of New York without any independent investigation of the allegations therein. *See* SAC ¶ 2. This violates Rule 8(a), Rule 11, and *Iqbal*. Rule 11 requires an attorney, prior to filing a complaint, "to conduct a reasonable factual investigation." *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004 (N.D. Cal. 2008). Downloading the SEC complaint, attaching it to the SAC as an exhibit, and pasting the SEC's allegations into the SAC verbatim (or otherwise citing them) at least *69 times* (*e.g.,* SAC ¶¶ 27-34) is not an investigation at all, let alone a "reasonable factual investigation." The SEC complaint was filed 7 days before Lead Plaintiff filed the SAC, and Lead Plaintiff does not have the pre-filing investigative powers the SEC does; in fact, the PSLRA precludes pre-filing discovery. *See* 15 U.S.C. § 78u-4(b)(3)(B). Relying on assertions made by a non-party in an entirely separate proceeding also violates Rule 8(a) and *Iqbal*.[9] The SEC allegations and complaint should thus be stricken from the SAC. *See Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d at 1006 (striking allegations based on SEC complaint without independent investigation).[10]

## II.   THE SAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Lead Plaintiff's jurisdictional allegations are based primarily on arguments made by the SEC in connection with the SEC's investigation of the Mirror Protocol and MIR tokens. *See*, *e.g.*, SAC ¶ 41. Lead Plaintiff cannot rely on assertions made by a non-party in an entirely separate proceeding. *See supra* Point I. Moreover, the SEC's jurisdictional assertions were made in the context of a proceeding to enforce investigative subpoenas, not a plenary action. But even putting these issues aside, the SAC does not plead personal jurisdiction over TFL or Mr. Kwon.

---

[9] *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d at 1005-06; *see also Aaron v. Durrani*, Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471, at *2 (S.D. Ohio Mar. 13, 2014); *FIA Card Servs., N.A. v. Karagianis (In re Karagianis)*, Adversary No. 09-1056-JMD, 2009 WL 4738188, at *4 (Bankr. D.N.H. Dec. 4, 2009); *accord* Local Civil Rule 10-1.

[10] The claims in the SEC complaint fail for the reasons set forth in Defendants' motion to dismiss that complaint with prejudice. *See SEC v. TFL*, No. 23-cv-1346 (S.D.N.Y.), ECF No. 29. Under the sauce-for-the-goose rule, if the Court permits Lead Plaintiff to rely on the SEC complaint, it must also examine Defendants' asserted motion to dismiss that complaint.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**A.** **Defendants Are Not Subject to General Jurisdiction**

The Court may assert general jurisdiction over a foreign corporation only when the corporation's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in exceptional cases may general jurisdiction extend over a corporation beyond where it is domiciled. *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1003 (N.D. Cal. 2020). Just conducting business or having employees in the forum is not enough. *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020). Because TFL is incorporated and headquartered in Singapore (SAC ¶ 17) and there are no other allegations suggesting bases for general jurisdiction over TFL, the Court lacks general jurisdiction over TFL.

Because "the paradigm forum for the exercise of general jurisdiction is the individual's domicile," *Goodyear*, 564 U.S. at 924, general jurisdiction does not apply to individuals who are not U.S. residents, *Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308, at *9, *13-14 (N.D. Cal. June 8, 2018); *Ivy Bridge Univ., LLC v. Higher Learning Comm'n*, No. 15-CV-02187-SC, 2015 WL 6555428, at *3 (N.D. Cal. Oct. 28, 2015). Lead Plaintiff's concession that Mr. Kwon is not a U.S. resident (SAC ¶ 23) and failure to allege that he transacted business in the U.S. in his individual capacity thus preclude the assertion of general jurisdiction over Mr. Kwon. *See Martensen v. Koch*, 942 F. Supp. 2d 983, 992 (N.D. Cal. 2013), *on reconsideration in part*, No. C-12-05257 JSC, 2013 WL 4734000 (N.D. Cal. Sep. 3, 2013).

**B.** **Defendants Are Not Subject to Specific Jurisdiction**

Specific jurisdiction is predicated on an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919. Due process requirements prevent a court from exercising personal jurisdiction over a defendant unless the defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945).

A non-resident defendant must purposefully *direct* his activities or consummate some transaction with the forum or resident thereof or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, the claim must be one which arises out of or relates to those forum-related activities, and the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *See Schwarzenegger*, 374 F.3d at 802. Because all claims in the SAC sound in tort, Defendants focus on lack of "purposeful direction." *See 19 Tao Vega LLC v. Holo Ltd.*, No. C 19-5640 SBA, 2019 WL 9607733, at *4 (N.D. Cal. Dec. 17, 2019). In order to show purposeful direction, a plaintiff must show that each defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. The SAC does not satisfy those requirements.

Lead Plaintiff makes boilerplate allegations that Defendants "have continuous and systematic contacts with this District, do substantial business in this State and within this District, and engage in unlawful practices in this District as described in this Complaint and the SEC Compl., subjecting themselves to personal jurisdiction in this District[.]" SAC ¶ 25.[11] He further asserts that TFL "actively conducted business in the United States and within this District" because it had employees in the U.S., distributed white papers regarding the Anchor Protocol, allegedly made misleading statements to the public, offered and sold products to U.S.-based investors, and received funding from this District. SAC ¶¶ 26-34, 41. That is not sufficient.[12]

In an attempt to find a jurisdictional "hook," Lead Plaintiff cites one trip by Mr. Kwon to New York where Mr. Kwon spoke on a panel entitled "The Multi-Chain Future is Here" and

---

[11] Much of the SAC is pure speculation, such as Lead Plaintiff's allegation that "TFL's origins are firmly rooted in California and began, *upon information and belief*, during Defendant Kwon's time at Stanford." (SAC ¶ 36, emphasis added) The SAC pleads nothing to support that assertion.

[12] To the extent Lead Plaintiff attempts to impute TFL's purported contacts with the U.S. to Mr. Kwon, (a) as demonstrated above those alleged contacts do not support jurisdiction and (b) even if they did, imputing them to Mr. Kwon for jurisdictional purposes is improper. *See Davis v. Metro Prods., Inc.,* 885 F.2d 515, 520 (9th Cir. 1989).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    makes vague allegations about meetings in San Francisco.[13] But Lead Plaintiff fails to connect

2    Mr. Kwon's comments during that panel with the allegations in the SAC, which precludes relying

3    on it for specific jurisdiction. *See 19 Tao Vega LLC*, 2019 WL 9607733, at *5; *Brown v. 140 NM*

4    *LLC*, No. 17-CV-05782-JSW, 2019 WL 118425, at *9 (N.D. Cal. Jan. 7, 2019). And the SAC

5    alleges nothing specific about the alleged San Francisco meetings. Lead Plaintiff's allegations do

6    not support specific jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 790 (1984).

7         Lead Plaintiff also alleges that whitepapers, prepared and posted outside of the United

8    States, were available to and impacted residents in this District. SAC ⁋ 26. But the mere

9    possibility that someone in this District may have had access to whitepapers published on the

10   Internet outside the U.S., *but not specifically directed at the U.S.,* does not support specific

11   jurisdiction over Defendants. *See Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 68 (9th

12   Cir. 2021). Lead Plaintiff's allegations about tweets or media statements that Mr. Kwon made

13   about TFL which may have been viewable in the U.S. (SAC ⁋ 35) are also insufficient to

14   establish specific jurisdiction. *See Nobelbiz, Inc. v. Veracity Networks, LLC*, No. 13-CV-2518

15   YGR, 2013 WL 5425101, at *3 (N.D. Cal. Sept. 27, 2013). Nor does the mere fact that TFL's

16   web applications were usable in the U.S. or that UST, LUNA, and Anchor were discussed in U.S.

17   media (SAC ⁋⁋ 25-26, 42) support specific jurisdiction. Mere operation of a website is not

18   sufficient to demonstrate express aiming at a forum; the Ninth Circuit requires more than simply

19   allowing the website to be accessible in the forum. *AMA Multimedia, LLC v. Wanat*, 970 F.3d

20   1201, 1210 (9th Cir. 2020). Lead Plaintiff has failed to allege any facts supporting an inference

21   that Defendants targeted potential cryptocurrency purchasers in the U.S.

22        Although Lead Plaintiff alleges that TFL received funding from some entities located

23   within this District (SAC ⁋⁋ 36-37), that does not support specific jurisdiction. *See 19 Tao Vega*

24   *LLC,* 2019 WL 9607733, at *5. The few contacts alleged between TFL and U.S. resident

25   employees (SAC ⁋ 41) also fail to support specific jurisdiction because those alleged contacts are

26   unrelated to this matter. With the exception of one former employee (Nicholas Platias), none are

27   _____

28   [13] SAC ⁋ 83; *Cosmos Around the World – Catch the Highlights, Messari Mainnet 2021, New York* (Nov. 23, 2021), https://blog.cosmos.network/cosmos-around-the-world-catch-the-highlights-2c1825599190.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

identified as having participated in any alleged scheme within the U.S. Lead Plaintiff alleges that Platias, as TFL's Head of Research, made false and/or misleading statements regarding UST, LUNA, and the Anchor Protocol; concealed information regarding Mr. Kwon's alleged prior stablecoin project; and created LFG. SAC ¶ 26. But nowhere in those allegations is there any claim that Mr. Platias engaged in such activities within the U.S., the bare minimum necessary to try to assert specific jurisdiction. *Compare* SAC ¶¶ 26 & 35 *with Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *10 (N.D. Cal. Jan. 19, 2022).

For the foregoing reasons, the SAC should be dismissed because this Court lacks personal jurisdiction over Defendants.

### III.    THE SAC MUST BE DISMISSED PURSUANT TO THE FAA AND THE DOCTRINE OF *FORUM NON CONVENIENS*

Through the Anchor TOS, which binds all users who connected digital wallets to the Anchor Protocol, Lead Plaintiff waived the right to pursue class claims, selected Singapore law as the governing law,[14] and agreed to arbitrate claims against TFL and Mr. Kwon in Singapore. *See* Amani Decl. Ex. A ¶¶ 14, 15, 17-20.

A strong federal policy favors arbitration, and that federal policy "applies with equal force to international contracts." *Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.*, 819 F.2d 247, 249 (9th Cir. 1987). An arbitration provision containing an international arbitration clause is governed by the Convention, which must be enforced according to its terms pursuant to 9 U.S.C. §§ 201-208. *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000). Federal courts also recognize that foreign arbitration clauses are a subset of foreign forum selection clauses in general. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-32 (1985); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1339 (9th Cir. 1997). A modified *forum non conveniens* analysis is thus the appropriate way to enforce a forum-selection

---

[14] This also disposes of the allegation that California law applies (SAC ¶¶ 238-242). The Anchor TOS, which apply to all UST deposited in Anchor, mandate that Singapore law apply to all claims. Amani Decl. Ex. A ¶ 18.

clause pointing to a state or foreign arbitral forum.[15]

Lead Plaintiff agreed to the Anchor TOS by connecting to and using the Anchor Protocol. Amani Decl. ¶¶ 2-5. Accordingly, because the *forum non conveniens* doctrine analysis calls for dismissal of all claims in favor of arbitration in Singapore, the action should be dismissed. Alternatively, the Court should compel arbitration pursuant to the Convention and the FAA. 9 U.S.C. § 206.

**A.    There Is an Enforceable Agreement to Arbitrate**

**1.    Lead Plaintiff assented to the forum selection clause**

Courts conclude that a valid arbitration agreement exists when provided with proof that users were required to affirmatively agree to terms as part of a standard online process during the relevant time period.[16] Lead Plaintiff affirmatively asserts that he purchased UST and staked it on the Anchor Protocol (ECF 19 at 6), and he is thus bound by the Anchor TOS.

To use the Interface to deposit UST into Anchor, a prospective user must connect a digital wallet to the Interface. Amani Decl. ¶ 2. Each prospective Anchor user is presented with a link to the Anchor TOS that they must accept in order to connect their digital wallet to the Interface. *Id.* ¶ 2. No such user may use the Anchor Protocol without agreeing to the Anchor TOS. *Id.* ¶ 3.

---

[15] *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens."); *Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap., LLC*, 769 F. App'x 429, 431 (9th Cir. 2019) (affirming district court's application of forum non conveniens where "the parties had agreed ... to arbitration in Mexico City as the proper forum for claims arising from the guaranty agreement"); *Adema Techs., Inc. v. Wacker Chem. Corp*., 657 F. App'x 661, 662 (9th Cir. 2016) (explaining modified forum non conveniens analysis for "[a] forum-selection clause designating a foreign forum"); *Oat Sols., LLC v. Rihko*, No. 216CV01046CASEX, 2016 WL 6602557, at *3–4 (C.D. Cal. Nov. 7, 2016) (analyzing motion to dismiss based on foreign arbitration provision under modified forum non conveniens analysis); *see also Azod v. Robinson*, No. CV 16-440-JFW (EX), 2016 WL 6603950, at *2 (C.D. Cal. May 10, 2016) ("Defendants' Motion to Compel Arbitration is GRANTED… [T]he Court concludes that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atlantic Marine Construction Co., Inc. v. United States District Court*, 134 S. Ct. 568, 580 (2013). Because there are no extraordinary or unusual circumstances in this case, the forum selection clause controls and this case is DISMISSED on forum non conveniens grounds.").

[16] *See Crypto Asset Fund, LLC v. MedCredits, Inc.*, No. 19cv1869-LAB (MDD), 2020 WL 1506220, at *4 (S.D. Cal. Mar. 30, 2020); *Houtchens v. Google, LLC*, No. 22-cv-02638-BLF, 2023 WL 122393, *3 (N.D. Cal. Jan. 6, 2023); *Roberts v. Obelisk, Inc.*, 18CV2898-LAB (BGS), 2019 WL 1902605, at *6 (S.D. Cal. Apr. 29, 2019).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   When Lead Plaintiff connected to Anchor,[17] TFL required potential users, including Lead

2   Plaintiff, to accept the Anchor TOS by clicking a button immediately above an acknowledgement

3   stating that "By connecting, I accept Anchor's Terms of Service" on the wallet connection form

4   presented online. *Id.* ¶ 3. Before accepting the Anchor TOS, he had the opportunity to review the

5   Anchor TOS via a hyperlink contained within the acceptance prompt. *Id.* ¶ 4. The link to the

6   Anchor TOS and fact of agreement by connecting to and using Anchor is made clear through the

7   font and icons used. The connection process explains that the user is going to "Connect Wallet"

8   through clear text at the top. *Id.* It then informs the user that "By connecting, I accept Anchor's

9   Terms of Service" underneath the button that a user would click to connect the account. *Id.* The

10   phrase "Terms of Service" is set apart from the other gray text by bright green font, indicating a

11   hyperlink that when clicked directs users to the complete Anchor TOS. *Id.*

12   The Anchor TOS contain a mandatory agreement to arbitrate all disputes with TFL. The

13   third paragraph of the Anchor TOS advises users in underlined text to "Please read this

14   Agreement carefully," and explains in that same paragraph that "[t]his Agreement contains a

15   mandatory individual arbitration and class action jury trial waiver provision…" Amani Decl.

16   Ex. A at 1. That portion of the Anchor TOS goes on to require parties (including Lead Plaintiff)

17   to negotiate in good faith to try to resolve all claims before resorting to arbitration in Singapore.

18   *See id.*

19   The Anchor TOS also includes a clear Class Action and Jury Trial Waiver, pursuant to

20   which users waive their right to participate in a class action lawsuit against TFL and waive the

21   right to trial by jury. *See id.* ¶ 19. That waiver is initially referenced on the first page of the

22   Anchor TOS and introduced by the boldface heading "Class Action and Jury Trial Waiver." Lead

23   Plaintiff thus agreed to arbitration in Singapore and waived class claims and a jury trial.

24   ### 2.        The Forum Selection Clause is Valid and Enforceable

25   A forum selection clause is "prima facie valid and should be enforced unless enforcement

26   is shown by the resisting party to be 'unreasonable' under the circumstances." *Fireman's Fund*,

27   _____

28   [17] Lead Plaintiff claims to have purchased UST and staked it in Anchor on or after April 6, 2022. *See* ECF 19 at 6; ECF 19-3 at 2.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

131 F.3d at 1338; *see also Finsa Portafolios*, 769 F. App'x at 430–31. A plaintiff must meet a "heavy burden" to establish that such a clause is invalid. *See Krystal, Inc. v. China United Transp., Inc.*, No. CV 16-02406-RSWL-SPX, 2017 WL 6940544, at *6 (C.D. Cal. Apr. 12, 2017). Likewise, arbitration agreements governed by the FAA are presumed valid and enforceable. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987); *McIntosh v. Adventist Health*, No. C 12–05589, 2013 WL 968293, *2 (N.D. Cal. Mar. 12, 2013).

Courts thus refuse to enforce forum-selection clauses only under extraordinary circumstances, and convenience of the parties is not such a circumstance. *See Adema Techs.*, 657 F. App'x at 662. A party resisting a forum-selection clause must "clearly show that enforcement would be unreasonable and unjust." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972). "Enforcement is unreasonable and unjust if the clause results from fraud or overreaching; if enforcing the clause would effectively deprive [plaintiff] of its day in court; or if 'enforcement would contravene a strong public policy' of California." *Adema Techs.*, 657 F. App'x at 663.

Lead Plaintiff cannot meet this burden. *First*, the SAC does not plead fraud or overreaching in connection with the Anchor TOS. It was Lead Plaintiff's choice to use Anchor and accept or reject the Anchor TOS before connecting his wallet to the Interface. The Anchor TOS highlighted the forum-selection clause in its introductory paragraphs, so there is no plausible argument that it was a surprise. And as demonstrated below, enforcement would not be unreasonable or unjust.

### a.  <u>Application of the Public Interest Factors</u>

Although a traditional *forum non conveniens* analysis involves a consideration of "a nonexhaustive and nonexclusive list of" the parties' private interests alongside public interests, the review is modified when an arbitration provision or other forum selection clause is at issue. *Atl. Marine*, 571 U.S. at 53, 64. Because parties to forum-selection clauses waive the right to challenge the preselected forum as inconvenient for themselves or their witnesses, or for their pursuit of the litigation, courts must deem the private-interest factors to weigh entirely in favor of the preselected forum. *See Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL 4259126, at *3 (N.D. Cal. Aug. 12, 2016). The *forum non conveniens*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

public interest factors considered when analyzing a forum selection clause, such as an arbitration agreement, calling for a foreign forum are: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009).

As to the first and fifth considerations, TFL is a Singaporean company and Lead Plaintiff is allegedly a citizen and resident of New York (SAC ¶¶ 15, 17); this District has no localized interest in the dispute. The second consideration weighs in favor of respecting the forum selection clause because the chosen law (Singaporean law) is likely unfamiliar to the Court. The FAA "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions, including the law governing enforceability of a class-arbitration waiver." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53-54 (2015). Consistent with this principle, the Anchor TOS contain a Singapore choice-of-law provision. Amani Decl. Ex. A ¶ 18. The Court's lack of familiarity with the governing law thus weighs in favor of enforcing the forum-selection clause.

The third and fourth factors—court congestion and burden on local courts and juries—support proceeding in the arbitral forum. The Singapore International Arbitration Centre is a respected international arbitration center that handles 400-500 cases annually, with its most recent annual report tallying 469 cases for 2021. By comparison, for the 12-month period ending June 30, 2022, this District had 12,453 pending cases.[18]

The fifth factor, the costs of resolving a dispute unrelated to a particular forum, also favors arbitration, because a New Yorker's dispute with non-U.S. defendants has nothing to do with this District. Accordingly, the public *forum non conveniens* factors all support dismissal in lieu of the foreign arbitration forum. This Court should thus compel arbitration pursuant to the Anchor TOS.[19]

---

[18] *Compare* https://siac.org.sg/wp-content/uploads/2022/06/SIAC-AR2021-FinalFA.pdf *with* https://www.uscourts.gov/file/45196/download.

[19] *See Donovan v. Coinbase Global, Inc.*, 2023 WL 2124776, at *2-5 (N.D. Cal. Jan. 6, 2023)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

### b. Lead Plaintiff's Claims Fall within the Scope of the Agreement to Arbitrate[20]

A party resisting arbitration bears the burden of showing that the arbitration agreement does not encompass its claims. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). The Anchor TOS requires "[a]ny claim or controversy arising out of or relating to the Interface, this Agreement, including any question regarding this Agreement's existence, validity, or termination, or any other acts or omissions for which you may contend that we [TFL] are liable, including (but not limited to) any claim or controversy as to arbitrability" to be arbitrated. Amani Decl. Ex. A ¶ 18. Because all of Lead Plaintiff's claims relate to and arise out of his use of UST with Anchor, Lead Plaintiff must arbitrate all claims asserted in the SAC.

### c. The Agreement to Arbitrate Applies to Mr. Kwon

Lead Plaintiff's agreement to arbitrate also applies to the claims asserted against Mr. Kwon. Although Mr. Kwon is not an express signatory of the Anchor TOS, equitable estoppel and the principles of agency require arbitration of Lead Plaintiff's claims against Mr. Kwon.

A non-signatory can enforce a forum selection clause under theories of equitable estoppel and agency. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Equitable estoppel supports compelling arbitration between a signatory and a non-signatory in two situations. *First*,

---

(Thompson, J.); *see also Nguyen v. OKCoin USA, Inc.*, 2023 WL 2095926, at *2-3 (N.D. Cal. Feb. 17, 2023) (compelling arbitration of claims relating to UST as against OKCoin); *Pearl v. Coinbase Global. Inc.*, 2023 WL 1769190, at *2-8 (N.D. Cal. Feb. 3, 2023) (compelling arbitration of claims relating to UST as against Coinbase).

[20] To the extent there is any dispute regarding the scope of the arbitration clause, that dispute is for the arbitral forum to resolve. *See Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 954 (N.D. Cal. 2015), *abrogated on other grounds, Henry Schein Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019). The SIAC rules require the same result: SIAC Rule 28.1 states that the SIAC Court of Arbitration has the power to resolve questions regarding, or challenges to, the "existence or validity of the arbitration agreement or to the competence of SIAC" and Rule 28.2 states that the "Tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement." *See* SIAC Rules 2016, SINGAPORE INTERNATIONAL ARBITRATION CENTRE (last visited Apr. 4, 2023), https://siac.org.sg/siac-rules-2016. The incorporation of these arbitral rules is a clear and unmistakable delegation of authority to the arbitrator to resolve such disputes. *Accord Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

"when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory," then "the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Amisil Holdings Ltd. v. Clarium Cap. Mgmt*., 622 F. Supp. 2d 825, 840 (N.D. Cal. 2007). *Second*, "where a lawsuit against non-signatories is inherently bound up with claims against a signatory, the court should compel arbitration in order to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration." *Id.* Otherwise, "unless the non-signatory is compelled to arbitrate, arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.*

The agency theory to compel arbitration also allows a non-signatory to compel arbitration as an agent of a signatory. "[A]gents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Id.*

In this case, Mr. Kwon is being sued precisely because of his duties as an officer of TFL, a party to the Anchor TOS. Mr. Kwon is TFL's co-founder and was its CEO at all relevant times, and is alleged to have "exercised control over TFL and directed and/or authorized, directly or indirectly, the sale and/or solicitations of the Terra Tokens to the public." SAC ¶ 23. The SAC does not allege that Mr. Kwon took any actions independently or in his personal capacity, and in the majority of the causes of action, TFL and Mr. Kwon are lumped together as a single actor. Accordingly, the first element of the agency theory is satisfied.

The considerations for the second element of the agency theory, along with those for equitable estoppel, are also present. Many of the claims asserted against Mr. Kwon directly arise out of or relate to the Anchor TOS and each claim falls within the arbitration clause, which covers all claims asserted in the SAC. The Anchor TOS also contain a release of TFL and its "officers, directors, [and] employees" relating to the Interface and a limitation of liability for TFL and its "officers, directors, [and] employees." Amani Decl. Ex. A ¶¶ 16-17. As such, both TFL and

Mr. Kwon will rely on multiple contractual defenses present in the Anchor TOS to defend against the same claims. Compelling arbitration as to TFL but not Mr. Kwon would result in parallel litigations concerning the same contractual provisions and operative facts, which would thwart the FAA's policy favoring arbitration. Accordingly, the principles of equitable estoppel and agency require Lead Plaintiff to arbitrate all claims against both TFL and Mr. Kwon.

### d.  **The Class Waiver Is Enforceable**

The Anchor TOS contain an express waiver of the right to pursue class claims, Amani Decl. Ex. A ¶ 19, which the FAA permits. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); Fed. R. Civ. P. 23(d)(1)(D). That waiver is referenced on the first page of the Anchor TOS and then introduced by the boldface heading "Class Action and Jury Trial Waiver." The class claims in the SAC must therefore be dismissed as against TFL and Mr. Kwon.

### <u>CONCLUSION</u>

For all the foregoing reasons, TFL and Mr. Kwon respectfully request that the Court (i) dismiss the SAC as against TFL and Mr. Kwon for lack of personal jurisdiction, (ii) strike the class claims and refer Lead Plaintiff's claims to arbitration pursuant to the Anchor TOS, or (iii) alternatively dismiss any remaining claims pursuant to Fed. R. Civ. P. 12(b)(6) and Defendants' separate motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    Dated: May 2, 2023                                      Respectfully submitted,

2                                                            DENTONS US LLP

3                                                            By: _/s/ Joel D. Siegel_____
                                                                     Joel D. Siegel
4

5                                                            JOEL D. SIEGEL (SBN 155581)
                                                             joel.siegel@dentons.com
6                                                            ANDREW M. PENDEXTER (SBN 310752)
                                                             andrew.pendexter@dentons.com
7                                                            DENTONS US LLP
                                                             601 South Figueroa Street, Suite 2500
8                                                            Los Angeles, CA 90017-5704
                                                             Telephone: 213.623.9300
9                                                            Facsimile: 213.623.9924

10                                                           DOUGLAS HENKIN (Admitted *Pro Hac
                                                             Vice*)
11                                                           douglas.henkin@dentons.com
                                                             DENTONS US LLP
12                                                           1221 Avenue of the Americas
                                                             New York, NY 10020-1089
13                                                           Telephone: 212.768.6700
                                                             Facsimile: 212.768.6800

14                                                           STEPHEN J. SENDEROWITZ (Admitted
                                                             *Pro Hac Vice*)
15                                                           stephen.senderowitz@dentons.com
                                                             DENTONS US LLP
16                                                           233 South Wacker Drive, Suite 5900
                                                             Chicago, IL 60606-6361
17                                                           Telephone: 312.876.8141

18                                                           Attorneys for Defendants
                                                             TERRAFORM LABS, PTE. LTD. and
19                                                           DO KWON

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300