JOEL D. SIEGEL (SBN 155581)
joel.siegel@dentons.com
ANDREW M. PENDEXTER (SBN 310752)
andrew.pendexter@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: 213.623.9300 / Fax: 213.623.9924

DOUGLAS HENKIN (Admitted *Pro Hac Vice*)
douglas.henkin@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: 212.768.6700 / Fax: 212.768.6800

STEPHEN J. SENDEROWITZ (Admitted *Pro Hac Vice*)
stephen.senderowitz@dentons.com
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606-6361
Telephone: 312.876.8141

Attorneys for Defendants
TERRAFORM LABS, PTE. LTD. and DO KWON

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/ DEFINANCE TECHNOLOGIES OY, GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS, AND DO KWON,<br><br>Defendants. | Case No. 3:22-cv-03600<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Date:        September 19, 2023<br>Time:        2:00 p.m.<br>Dept.:       Courtroom 9, 19th Floor<br>Judge:      Hon. Trina L. Thompson<br><br>Action Filed:  July 17, 2022<br>Trial Date:     None Set |

**NOTICE OF MOTION AND MOTION**

TO THE ABOVE-ENTITLED COURT AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 19, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, Courtroom of the Honorable Trina L. Thompson, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 9, 19th Floor, Defendants Terraform Labs PTE Ltd. and Do Kwon hereby move this Court to dismiss the Second Amended Complaint ("SAC") in its entirety.

Defendants are contemporaneously filing a motion to dismiss the SAC for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and, if the Court finds jurisdiction, to compel arbitration and dismiss the case. If the Court finds that it has jurisdiction over Defendants, and that arbitration is not appropriate, the Court should dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) because none of its counts state claims upon which relief can be granted.[1]

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Notice of Motion and Motion To Dismiss; Memorandum of Points and Authorities to Compel Arbitration Pursuant to the Federal Arbitration Act and Strike the Class Allegations (which is incorporated herein by reference in full) (the "Jurisdiction and Arbitration Motion"), the declarations of Arrash Chris Amani and Douglas W. Henkin (attached to the contemporaneously filed Jurisdiction and Arbitration Motion), and Defendants' Request for Judicial Notice.

Accordingly, Defendants respectfully request this Court to dismiss the SAC with prejudice.

---

[1] Defendants apologize to the Court for combining their Rule 12(b)(2) motion and motion to compel arbitration in a single motion, and their Rule 12(b)(6) motion in a separate motion. Defendants originally had planned to file all three requests in a single omnibus motion (ECF 112 at 2); however, the Court reduced the parties' stipulated pages for such an omnibus motion from 60 to 30. ECF No. 113. Given the time constraints and page limitations, Defendants have instead opted to file two separate motions, each under the 25-page limit set forth in Local Rule 7-2(b). Defendants do not intend to waive any arguments asserted in their separate motions and have made all arguments contemporaneously.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**TABLE OF CONTENTS**

ARGUMENT ...................................................................................................10

I.     LEAD PLAINTIFF'S CLAIMS ARE IMPERMISSIBLY
       EXTRATERRITORIAL ...................................................................10

II.    THE SAC DOES NOT PLEAD FEDERAL SECURITIES CLAIMS .......11

       1.     The SAC Does Not Plead that "Terra Tokens" Are Securities.......11

       2.     The Section 12(a)(1) Claim Fails ...................................................11

       3.     The Section 10(b) Claim Fails ........................................................13

III.   THE SAC DOES NOT STATE A RICO CLAIM....................................20

       A.     The RICO Claim Is Barred by PSLRA Section 107.....................21

       B.     The SAC Fails to Allege RICO Standing .....................................21

       C.     The SAC Does Not Allege RICO Predicate Acts..........................22

       1.     The SAC Does Not Adequately Plead Mail or Wire Fraud ...........22

       D.     The SAC Does Not Properly Allege a RICO Enterprise ...............24

       E.     The SAC Does Not Properly Allege Operation or Management ....26

       F.     Lead Plaintiff Fails to Allege Pattern or Continuity ......................26

IV.    THE SAC'S STATE LAW CLAIMS MUST BE DISMISSED.................27

       A.     The Aiding and Abetting and Conspiracy Claims Fail ..................27

       B.     The Unjust Enrichment Claim Fails...............................................27

CONCLUSION..............................................................................................28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABF Capital Mgmt. v. Askin Capital Mgmt.*,
   957 F. Supp. 1308 (S.D.N.Y. 1997) ................................................................................. 21

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) .............................................................................................. 16

*Albright v. Terraform Labs, Pte. Ltd.*,
   No. 22-CV-07281 (JSR), 2022 WL 16985806 (S.D.N.Y. Nov. 15, 2022) ........................... 21

*In re Alstom SA Sec. Litig.*,
   406 F.Supp.2d 433 (S.D.N.Y.2005) ................................................................................. 20

*Barry v. Cboe Glob. Markets, Inc.*,
   42 F.4th 619 (7th Cir. 2022) ..................................................................................... 23, 24

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ...................................................................................................... 17

*Bermingham v. Plumbing & Pipefitting Indus. Loc. 38*,
   53 F.3d 337 (9th Cir. 1995) ............................................................................................ 21

*BMA LLC v. HDR Glob. Trading Ltd.*,
   No. 20-CV-03345-WHO, 2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ............. 20, 23, 25, 27

*Bokaie v. Green Earth Coffee LLC*,
   No. 18-CV-05244-JST, 2018 WL 6813212 (N.D. Cal. Dec. 27, 2018) ............................. 21

*Bonadio v. PHH Mortg. Corp.*,
   No. 12 CV 3421 VB, 2014 WL 522784 (S.D.N.Y. Jan. 31, 2014) ...................................... 25

*Boyle v. United States*,
   556 U.S. 938 (2009) ................................................................................................. 24, 25

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ...................................................................................................... 22

*In re Calpine Corp. Sec. Litig.*,
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) ........................................................................... 20

*Capri v. Murphy*,
   856 F.2d 473 (2d Cir. 1988) ........................................................................................... 12

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................................................................. 22

*City of Almaty v. Khrapunov*,
   No. CV 14-3650 FMO (CWX), 2018 WL 6074544 (C.D. Cal. Sept. 27, 2018),
   *aff'd*, 956 F.3d 1129 (9th Cir. 2020) .......................................................................... 10, 11

*City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*,
   963 F. Supp. 2d 1092 (E.D. Wash. 2013) ......................................................................... 13

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Curry v. Yelp Inc.*,
    875 F.3d 1219 (9th Cir. 2017) ............................................................................. 17

*Davies v. GetFugu, Inc.*,
    No. CV 09-8724-GHK (RCX), 2010 WL 11597458 (C.D. Cal. Aug. 26, 2010) .................. 21

*DeMarco v. DepoTech Corp.*,
    149 F. Supp. 2d 1212 (S.D. Cal. 2001) .................................................................. 13

*Dornberger v. Metro. Life Ins. Co.*,
    961 F. Supp. 506 (S.D.N.Y. 1997) ....................................................................... 22

*In re ECOtality, Inc. Sec. Litig.*,
    No. 13-03791-SC, 2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ................................ 23

*In re Facebook, Inc. Sec. Litig.*,
    477 F. Supp. 3d 980 (N.D. Cal. 2020) ............................................................ 18, 19

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995), *cert. denied*, 571 U.S. 1136 (1996) .............................. 17

*Ferrari v. Mercedes-Benz USA, LLC*,
    No. 15-CV-04379-YGR, 2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) ........................... 26

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) .......................................................................... 23, 27

*Fund Liquidation Holdings LLC v. UBS AG*,
    15 Civ. 5844 (GBD), 2021 WL 4482826 (S.D.N.Y. Sept. 30, 2021) ................................ 10

*Gaffin v. Teledyne, Inc.*,
    611 A.2d 467 (Del. 1992) ................................................................................... 27

*Gaines v. Home Loan Ctr., Inc.*,
    No. SACV08667AHSRNBX, 2010 WL 11506442 (C.D. Cal. May 24, 2010) ..................... 25

*Ghirardo v. Antonioli*,
    14 Cal. 4th 39 (1996) ........................................................................................ 27

*In re GlenFed, Inc. Sec. Litig.*,
    60 F.3d 591 (9th Cir. 1995) ................................................................................ 27

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ............................................................................................ 22

*Hokama v. E.F. Hutton & Co.*,
    566 F. Supp. 636 (C.D. Cal. 1983) ....................................................................... 27

*Howard v. American Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) .............................................................................. 21

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011) ................................................................... 18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Interallianz Bank AG v. Nycal Corp.*,
    No. 93 CIV. 5024 (RPP), 1994 WL 177745 (S.D.N.Y. May 6, 1994) ................................... 26

*Izenberg v. ETS Servs., LLC*,
    589 F. Supp. 2d 1193 (C.D. Cal. 2008)................................................................................... 21

*Kaczmarek v. Int'l Bus. Machines Corp.*,
    30 F. Supp. 2d 626 (S.D.N.Y. 1998)...................................................................................... 26

*Kan-Di-Ki, LLC v. Sorenson*,
    723 F. App'x 432 (9th Cir. 2018) ........................................................................................... 26

*Kui Zhu v. Taronis Techs. Inc.*,
    No. CV-19-04529-PHX-GMS, 2020 WL 1703680 (D. Ariz. Apr. 8, 2020) ......................... 19

*Laydon v. Coöperatieve Rabobank U.A.*,
    55 F.4th 86 (2d Cir. 2022).......................................................................................................22

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
    527 F. Supp. 2d 1033 (N.D. Cal. 2007) ................................................................................. 14

*In re Lehman Bros. Sec. & ERISA Litig.*,
    No. 09 MD 2017 ..................................................................................................................... 18

*Levitt v. J.P. Morgan Sec. Inc.*,
    9 F. Supp. 3d 259 (E.D.N.Y. 2014) ....................................................................................... 12

*LifeVoxel Virginia SPV, LLC v. LifeVoxel.AI, Inc.*,
    No. 22-CV-566-GPC-JLB, 2022 WL 3648452 (S.D. Cal. Aug. 23, 2022) ........................... 23

*Lucero v. IRA Servs., Inc.*,
    No. 18-CV-05395-LB, 2019 WL 5812175 (N.D. Cal. Nov. 7, 2019) .................................... 21

*Markette v. XOMA Corp.*,
    No. 15-CV-03425-HSG, 2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ............................... 24

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)................................................................................................ 18

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013).................................................................................... 20

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2001)................................................................................................... 21

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ................................................................................................. 24

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)............................................................................................................... 10

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003).................................................................................................. 20

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Pac. Recovery Sols. v. United Behav. Health*,
    481 F. Supp. 3d 1011 (N.D. Cal. 2020) ................................................................. 26

*Paracor Finance, Inc. v. General Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ................................................................................. 20

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014) .................................................................................. 10

*Petroleos Mexicanos v. SK Eng'g & Const. Co.*,
    572 F. App'x 60 (2d Cir. 2014) ............................................................................. 10

*Pillsbury, Madison & Sutro v. Lerner*,
    31 F.3d 924 (9th Cir. 1994) ................................................................................... 22

*Pinter v. Dahl*,
    486 U.S. 622 (1988) .............................................................................................. 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ......................................................................... 14, 17

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .............................................................................................. 26

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016) .............................................................................................. 10

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................... 11

*Schiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................... 17

*Schmidt v. Fleet Bank*,
    No. 96 CIV. 5030 (AGS), 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) ................... 25

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ........................................................... 17, 18

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................................................... 20

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) .............................................................................................. 11

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015) .................................................................................... 22

*Shaw v. Nissan N. Am., Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016) ................................................................. 25

*Simpson v. AOL Time Warner, Inc.*,
    452 F.3d 1040 (9th Cir. 2006), *overruled on other grounds, Stoneridge
    Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148 (2008) .... 19, 20

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
    366 F. Supp. 3d 516 (S.D.N.Y. 2018) ................................................................. 10

*Stationary Engineers Loc. 39 Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
    No. C-97-01519 DLJ, 1998 WL 476265 (N.D. Cal. Apr. 30, 1998) ..................................... 28

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
    No. 00 CIV. 8058 (NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ........................... 12

*Sullivan v. Barclays PLC*,
    13-cv-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ........................................ 10

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .................................................................................... 21, 24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................. 16

*In re Twitter, Inc. Sec. Litig.*,
    506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship*
    *LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) .................................................. 23

*Underwood v. Coinbase Glob., Inc.*,
    No. 21 CIV. 8353 (PAE), 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) ............................. 12

*United States v. Turkette*,
    452 U.S. 576 (1981) ............................................................................................. 25

*Welgus v. TriNet Grp., Inc.*,
    No. 15-CV-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*,
    765 F. App'x 239 (9th Cir. 2019) ........................................................................... 24

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) .................................................................... 11

*Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Rsrv.*,
    No. 317CV01436GPCMDD, 2019 WL 4277431 (S.D. Cal. Sept. 10, 2019) ..................... 23

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) .......................................................................... 13, 14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................................ 17

**Statutes**

15 U.S.C. § 77 ........................................................................................................ 12

15 U.S.C. § 78 .................................................................................................... 13, 14

18 U.S.C. § 1961 .................................................................................................... 20

18 U.S.C. § 1962 ............................................................................................... 20, 26

18 U.S.C. § 1964 .................................................................................................... 21

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**Other Authorities**

17 C.F.R. § 230.506 ................................................................................................ 12

17 C.F.R. § 240.10 ................................................................................................ 13

Rule 9(b) ......................................................................................................... 13, 18

Rule 10b-5(a) & (c) ............................................................................................... 19

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    Defendants[2] respectfully submit this memorandum of law in support of their motion, in

2  the alternative to the Jurisdiction and Arbitration Motion, to dismiss the SAC pursuant to Federal

3  Rule of Civil Procedure 12(b)(6). Defendants incorporate herein the Statement of Facts and all

4  arguments set forth in the Jurisdiction and Arbitration Motion as if fully set forth herein.

5                                    **ARGUMENT**

6  **I.      LEAD PLAINTIFF'S CLAIMS ARE IMPERMISSIBLY EXTRATERRITORIAL**

7    Federal securities law, the mail and wire fraud statutes, and RICO apply domestically, not

8  extraterritorially.[3] Lead Plaintiff's securities claims based on his acquisition of UST challenge

9  conduct that is not domestic: The federal securities laws do not apply because the SAC does not

10  allege that any of the protocols at issue were developed domestically, that any challenged

11  statements by Defendants were made in the U.S., or even that Lead Plaintiff's UST purchase was

12  made in the U.S. *See Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198,

13  216 (2d Cir. 2014).[4]

14    Lead Plaintiff's mail and wire fraud allegations (SAC ¶¶ 332, 336-341) are not

15  sufficiently domestic to support a RICO claim. It is not enough that the SAC alleges in

16  conclusory fashion that Defendants used mail and wires to communicate with and/or through

17  U.S.-based counterparties, sent and received funds via U.S. wires, and employed some U.S.

18  employees; allegations that racketeering conduct was directed from or to the United States are

19  necessary.[5] Lead Plaintiff also has not alleged "domestic injury." Courts determine whether an

20  alleged injury is "domestic injury" by looking at the location of the property at the time of the

21  _____

22  [2] Capitalized terms not defined herein have the meanings identified in the Glossary of Terms found in the Jurisdiction and Arbitration Motion.

23  [3] *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 268-69, 273 (2010); *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 354 (2016); *City of Almaty v. Khrapunov*, No. CV 14-

24  3650 FMO (CWX), 2018 WL 6074544, at *4-8 (C.D. Cal. Sept. 27, 2018), *aff'd*, 956 F.3d 1129 (9th Cir. 2020); *Petroleos Mexicanos v. SK Eng'g & Const. Co.*, 572 F. App'x 60, 61 (2d Cir.

25  2014); *Fire & Police Pension Ass'n of Colorado*, 368 F. Supp. 3d 681, 709-10 (S.D.N.Y. 2019); *Sullivan v. Barclays PLC*, 13-cv-2811 (PKC), 2017 WL 685570, at *33 (S.D.N.Y. Feb. 21, 2017).

26  [4] The claim that challenged statements were *accessible to* U.S.-based persons (SAC ¶ 82) changes nothing with respect to the application of *Morrison*. *See Parkcentral*, 63 F.3d at 201.

27  [5] *See Fund Liquidation Holdings LLC v. UBS AG*, 15 Civ. 5844 (GBD), 2021 WL 4482826, at

28  *11 (S.D.N.Y. Sept. 30, 2021); *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 556 (S.D.N.Y. 2018).

alleged injury. *City of Almaty*, 2018 WL 6074544, at *4-8. "Terra Tokens" are financial assets held in specific wallets. Lead Plaintiff's own allegations regarding the transfer of "Terra Tokens" and other forms of financial property evince his knowledge about such wallets. *E.g.*, SAC ¶¶ 3, n.3, 8, 61, 93, 179, 205. Because Lead Plaintiff fails to identify the location of any wallet containing the UST he claims he purchased, his allegations are not sufficient to survive a motion to dismiss. The SAC's federal claims should therefore be dismissed as impermissibly extraterritorial.

## II.   THE SAC DOES NOT PLEAD FEDERAL SECURITIES CLAIMS

### 1.   The SAC Does Not Plead that "Terra Tokens" Are Securities

The federal securities law claims (the First, Second, Third, Fourth, and Fifth Causes of Action) each fail because Lead Plaintiff has not adequately pled that any "Terra Token" is a security. Lead Plaintiff's attempt to rely on the SEC's allegations regarding the "Terra Tokens" being securities (SAC ¶ 78) is fatal because (a) Lead Plaintiff cannot rely on the SEC's allegations (Jurisdiction and Arbitration Motion Point I), (b) the SEC is wrong and *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) does not apply to digital assets (Henkin Decl. Ex. V Point II), and (c) the SAC does not adequately plead that any specific "Terra Token" satisfies the *Howey* test. In any event, the Court must dismiss all claims relating to LUNA, MIR, and ANC because Lead Plaintiff only purchased UST. A named plaintiff may not assert claims relating to assets he or she did not personally buy, even if they are securities.[6]

### 2.   The Section 12(a)(1) Claim Fails

A Section 12(a)(1) plaintiff must allege facts establishing that (a) the defendant was

---

[6] *See In re Wells Fargo Mortg.-Backed Certificates Litig.,* 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006). Indeed, Patterson affirmatively argued to this Court that the interests of UST and LUNA purchasers are different from those of purchasers of other "Terra Tokens." *See* ECF No. 42 at 2. That Patterson claims to have purchased tokens other than UST is irrelevant because (a) he consented to the appointment of Tobias as Lead Plaintiff (ECF No. 72) and (b) Scott+Scott never intended for Patterson to become lead plaintiff, despite its filings urging the Court to appoint Patterson (*e.g.*, ECF Nos. 25, 42, 46, 61), as it expressly told another putative class member. *See* Henkin Decl. Ex. R. That disposes of all claims in the SAC not relating to UST. Indeed, this lawsuit was only intended to cover claims about UST: When FatManTerra was soliciting plaintiffs for Scott+Scott, he only asked for candidates who purchased UST (Henkin Decl. Ex. S).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

required to, but did not, register securities with the SEC, in violation of Section 5 (15 U.S.C. §§ 77l(a), 77e(a))[7] and (b) he purchased securities directly from the defendant (15 U.S.C. § 77l(a)) because Section 12(a)(1) "imposes liability on only the buyer's immediate seller." *Pinter v. Dahl*, 486 U.S. 622, 644 (1988).

First, as demonstrated above, the SAC does not plead that any "Terra Tokens" were securities. Nor does it plead that TFL or Mr. Kwon were "issuers" subject to Section 5. The Terra, Mirror, and Anchor Protocols mint and distribute tokens programmatically, without any involvement from TFL or Mr. Kwon. Lead Plaintiff also fails to explain how globally accessible protocols can be viewed as having conducted a general solicitation of sales to U.S.-based persons such that any transactions were required to be registered. The only token sales discussed in the SAC were exempt private sales which are not subject to Section 5's registration requirements. *Compare* SAC ¶ 28 *with* 15 U.S.C. § 77d(a)(2) *and* 17 C.F.R. § 230.506(b).

Second, the SAC does not plead that Defendants were statutory sellers. Lead Plaintiff alleges only that he "purchased Terra Tokens" (SAC ¶ 15) but not how or from whom. The institutional firms that allegedly purchased LUNA in private agreements (SAC ¶ 28) are not relevant, because Lead Plaintiff claims to have purchased UST, not LUNA. Lead Plaintiff purchased UST from a third party, which forecloses a Section 12(a)(1) claim against Defendants.

Nor does the SAC allege that Lead Plaintiff relied on any solicitation by TFL or Mr. Kwon in acquiring UST. *Capri v. Murphy*, 856 F.2d 473, 478–79 (2d Cir. 1988) (cited at SAC ¶ 289) held that even if a defendant "played a major role in setting up the [ ] venture," that is not sufficient to show it "actually solicited investment."[8] Finally, the SAC does not allege that Defendants earned a fee or commission from Lead Plaintiff's acquisition of UST, meaning that even if there had been a solicitation, it was not "for financial gain." *See Pinter*, 486 U.S. at 648.

---

[7] To the extent Lead Plaintiff purports to assert a freestanding claim under Section 5 of the Securities Act, that claim fails because there is no private right of action under Section 5. *See Levitt v. J.P. Morgan Sec. Inc.*, 9 F. Supp. 3d 259, 273 (E.D.N.Y. 2014).

[8] *See also Underwood v. Coinbase Glob., Inc.*, No. 21 CIV. 8353 (PAE), 2023 WL 1431965, at *9 (S.D.N.Y. Feb. 1, 2023) (allegations insufficient to plead that Coinbase "sold" tokens); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 CIV. 8058 (NRB), 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) (also cited at SAC ¶ 289).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

### 3.     The Section 10(b) Claim Fails

A Section 10(b) plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021); 17 C.F.R. § 240.10b-5(b). The SAC does not contain *any* fraud allegations with respect to tokens other than UST and LUNA, and even the SAC's UST and LUNA allegations fail to state a claim.

#### 1.     No material misrepresentation or omission

Under the PSLRA and Rule 9(b), Lead Plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); Fed. R. Civ. P. 9(b). Lead Plaintiff has not done so.

The SAC contains no non-conclusory allegations that the challenged statements regarding UST (SAC ¶ 250) were false or misleading. A statement may be false when made if there are "(1) inconsistent contemporaneous statements or (2) inconsistent contemporaneous information (such as an internal report) that was made by or was available to the defendants." *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1223 (S.D. Cal. 2001). The SAC identifies no such inconsistencies in the Terra Whitepaper, which was supported by established economic principles. The SAC merely asserts that statements in the Terra Whitepaper must have been false when made because, ***more than two years later***, UST failed under extreme market conditions. But this is classic impermissible "fraud by hindsight." *City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1109 (E.D. Wash. 2013). And the SAC does not properly allege misstatements regarding the operation of Chai.

The SAC's challenges regarding the Anchor Protocol (SAC ¶ 250(a)–(b)) also fail. Lead Plaintiff's challenge to statements about Anchor's "interest" rate fails because the SAC does not allege that any Anchor user (a) failed to receive the disclosed rate on staked tokens or (b) lost any staked tokens due to the operation of Anchor. Lead Plaintiff's challenge to tweets like "Anchor is not your ordinary money market," was "the gold standard for savings," and "a high-yield safe haven in uncertain market conditions" fails because "vague statements of optimism like 'good,'

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   'well-regarded,' or other feel good monikers are not actionable" because they are immaterial.

2   *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *In re*

3   *LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1049 (N.D. Cal. 2007).

4         Unable to identify any misstatement about the Anchor Protocol, Lead Plaintiff tries to

5   plead two material omissions. *First*, the SAC alleges that any statements about Anchor's yield

6   rate were misleading for not disclosing that it was "not sustainable." SAC ¶¶ 150, 163. But there

7   is no dispute that the challenged statements reflected the then-current rate and said nothing about

8   how long any rate would remain in effect. Indeed, the Anchor TOS stated that "[t]he Rate is not a

9   promise [or] guarantee," only a "projection," and was subject to change based on a variety of

10   disclosed factors. Amani Decl. Ex. A at 5. *Second*, the SAC alleges that statements about

11   Anchor's yield were misleading because they should have disclosed that UST was "not as 'stable'

12   as promoted." SAC ¶ 250(a). But the challenged statements say nothing about UST, making any

13   omission claim untenable. In any event, the Anchor TOS expressly warned that "[e]ven if the

14   Rate is achieved as projected, you may still suffer a financial loss in fiat-denominated terms if the

15   fiat-denominated value of the relevant tokens (your deposit and any tokens allocated or

16   distributed to you pursuant to the Rate) declines during the deposit period." Amani Decl. Ex. A at

17   5. There was no omission because the risk of loss due to declines in the market (*i.e.*, "fiat-

18   denominated") values of UST and LUNA was specifically disclosed.

19         The challenged statements are also immunized by the safe harbor for forward-looking

20   statements, 15 U.S.C. § 78u-5(c). "[D]esigned to protect companies and their officials when they

21   merely fall short of their optimistic projections," the safe harbor inoculates a defendant from

22   liability for a statement "if it is forward-looking and either is accompanied by cautionary

23   language or is made without actual knowledge that it is false or misleading." *Wochos*, 985 F.3d at

24   1189. The challenged statements describe an objective for UST going forward: maintaining its

25   peg. *See* 15 USC § 78u-5(i)(1). And not only did the Terra Whitepaper disclose the risks of a

26   depeg, the SAC itself describes *public* discussions of that possibility before Lead Plaintiff claims

27   he purchased UST. *See*, *e.g.*, SAC ¶¶ 45, 46, 49-51, 131, 133, 134, 147. Nowhere does Lead

28   Plaintiff even attempt to explain how there could have been so much public discussion of

something he claims was hidden. Indeed, the possibility of a depeg was so well-known that a recipe for causing it was published on Twitter. Henkin Decl. Ex. T. The safe harbor also protects the challenged statements about the Anchor Protocol. The Anchor TOS expressly state that "***The Rate is a forward-looking projection***" and cautioned that it was "subject to numerous assumptions, risks and uncertainties (including smart contract security risks and third-party actions) which could result in a materially different (lower or higher) token-denominated Rate." Amani Decl. Ex. A at 5.

The SAC challenges one tweet by Mr. Kwon and misrepresents it entirely. The SAC alleges that "on March 28, 2022, in an exchange on Twitter and in response to a direct criticism about the sustainability of TFL's algorithmic stablecoin, Kwon flatly denied that UST was unstainable [sic], saying such claims were neither true nor well-informed." SAC ¶ 250(h). But as the SAC itself shows, that is not what happened; Mr. Kwon was responding to a comment that LFG's *reserve fund* might not have been sustainable because it relied on LUNA as its funding source. *See* SAC ¶ 152. Separately, the SAC accuses Mr. Kwon of "ad hominem attacks" (SAC ¶ 148) and "mockery and bravado" (SAC ¶ 149) in other tweets. Although the tone of some tweets may have been "cringe," as Mr. Kwon later acknowledged,[9] that is not a securities law violation.

The challenged statements by LFG do not support a Section 10(b) claim against Defendants. *First*, LFG is not a defendant. *Second*, the SAC pleads no basis for deeming the challenged statements inaccurate. The SAC alleges that LFG made a misleading statement when it tweeted that the UST Reserve could be used to defend the peg. SAC ¶ 250(d). But the SAC does not allege that the reserve was meant for something other than peg defense or deny that it was used to defend the peg several months later. Lead Plaintiff also asserts that LFG's statement should have disclosed that UST was not as stable as promoted and that the peg would be unable to be maintained during periods of high market volatility. But the challenged statement says precisely that—that UST *could* lose its peg under extreme market conditions and that open

---

[9] https://www.coinage.media/s1/inside-cryptos-largest-collapse-with-terras-do-kwon.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

market purchases might be needed to restore it. To the extent Plaintiffs are trying to fault LFG for not predicting that UST "would" permanently lose its peg, "lack of clairvoyance simply does not constitute securities fraud." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995). Lead Plaintiff's further contention that LFG's statement about the UST Reserve should have disclosed "that Anchor's staking rewards program was unsustainable and could not be maintained with the either the Forex Reserve Fund or the Anchor Yield Reserve Fund" (SAC ¶ 250(d)) is baffling. LFG's statement has nothing to do with Anchor and the SAC identifies no basis for an omission.

### 2.   The SAC Does Not Allege Scienter

To plead scienter, the SAC must state with particularity facts giving rise to a "strong inference" that a defendant made a misstatement with an intent to defraud, such that an intent to defraud is at least as likely as any nonculpable explanation for the misstatement. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). The SAC fails to do so.

*First*, Lead Plaintiff tries to argue for a party admission by pointing to a blog post which read in part, "we knew it wasn't sustainable." SAC ¶¶ 163, 256. However, that remark was made not by Defendants but by a third party—Remi Tetot. Mr. Tetot never worked for TFL. His comment does not indicate that Defendants knew any statements attributed to them were false when made. Henkin Decl. Ex. L. The SAC's allegation that Mr. Tetot "admitted [that] all of the Defendants knew before the May 2022 collapse that the algorithmic stablecoin pair UST and LUNA, along with the Anchor Protocol, was entirely unstable and unsustainable" (SAC ¶¶ 163, 256) misrepresents his statement. The comment that "we knew it wasn't sustainable" plainly refers to the Anchor yield rate, not UST. With respect to UST, Mr. Tetot actually said "***Looking back at it***" (emphasis added) he saw certain vulnerabilities he failed to anticipate which is, again, pleading fraud by hindsight. Even as to the Anchor yield rate, the comment is irrelevant because the SAC does not allege that the rate was not sustained throughout the relevant period. If *any* Anchor depositor had failed to receive the promised yield at *any* time, there would be a prominent allegation to that effect in the SAC. Instead, there is deafening silence: No plaintiff, in any litigation, has alleged any failure to receive the promised Anchor yield at any time.

Lead Plaintiff's "insider trading" theory of scienter (SAC ¶¶ 257-59) fares no better.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    Pleading scienter on this basis requires alleging a "meaningful trading history" for each defendant

2    and identifying sales "dramatically out of line" with that history "at times calculated to maximize

3    the personal benefit from undisclosed inside information." *Curry v. Yelp Inc.*, 875 F.3d 1219,

4    1226 (9th Cir. 2017); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005–06 (9th Cir.

5    2009). Lead Plaintiff's allegations that TFL and Mr. Kwon sold "substantial amounts of

6    UST/LUNA Tokens at significant profits while the price was artificially inflated on and during

7    the weeks and months that followed their respective launches" (SAC ¶ 257) are too conclusory to

8    suffice. *See Intuitive Surgical, Inc.*, 759 F.3d at 1063–64. Also insufficient are allegations that

9    Defendants transferred "10,000 Bitcoin" from one wallet to another and "since May 2022"

10   converted it to cash. *See* SAC ¶ 205. The SAC provides no factual detail connecting these alleged

11   transfers, all of which occurred after UST and LUNA lost their value, to sales of UST or LUNA

12   in any way. Moreover, pleading scienter based on alleged insider trading requires allegations of

13   trading *before* the supposed manifestation of the alleged fraud, not *after*. *See Fecht v. Price Co.*,

14   70 F.3d 1078, 1084 (9th Cir. 1995), *cert. denied*, 571 U.S. 1136 (1996).[10]

### 3.  The SAC Does Not Plead Reliance

16       "Reliance provides the requisite causal connection between a defendant's

17   misrepresentation and a plaintiff's injury." *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988). To

18   adequately plead reliance, a plaintiff must allege facts supporting actual reliance on the alleged

19   misrepresentation or omission, or facts supporting a presumption of reliance. *ScripsAmerica, Inc.*

20   *v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1258 (C.D. Cal. 2015). The SAC pleads neither.

21       Lead Plaintiff fails to plead actual reliance on any specific statement alleged in the SAC.

22   The SAC contains nothing more than the conclusory allegation that Lead Plaintiff "rel[ied]

23   directly or indirectly on the false, misleading, and materially incomplete statements that

24   Defendants made and approved." SAC ¶ 261. That fails to satisfy the *Iqbal/Twombly* standard

---

[10] Nor can Lead Plaintiff rely on a Twitter rumor that Mr. Kwon "sold $2.7 billion worth of UST over the span of mere months." SAC ¶ 9. The SAC contains no factual allegations about the Tweet's author—FatManTerra—"to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019). Indeed, FatManTerra is hardly unbiased, being one of the prime instigators of this litigation. *See* Henkin Decl. Exs. B, O-Q, S.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

because it lacks supporting factual matter indicating how Lead Plaintiff supposedly relied on the alleged misrepresentations. *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011). Indeed, the SAC does not even allege that Lead Plaintiff read any of the statements at issue, let alone which ones or when, nor does it allege that he purchased UST in direct reliance on such statements. *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 LAK, 2013 WL 5730020, at *4 (S.D.N.Y. Oct. 22, 2013).

Nor can Lead Plaintiff invoke the fraud-on-the-market presumption of reliance under *Basic* by alleging that Lead Plaintiff relied "upon the integrity of the market in which the UST/LUNA Tokens were sold." *See* SAC ¶¶ 260-61. That presumption is only available when a plaintiff pleads that the asset was actively traded in an efficient market, and "[e]fficiency must be plead with particularity under Rule 9(b)." *ScripsAmerica*, 119 F. Supp. 3d at 1252. But the SAC contains no factual allegations at all to support the notion that any "Terra Token" traded in an efficient market, which is fatal to the attempt to invoke the presumption. *See id.*

### 4.  The SAC Does Not Plead Loss Causation

Loss causation requires that a defendant's alleged misrepresentation, not an intervening event, caused a claimed economic loss. *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1034 (N.D. Cal. 2020). It requires more than alleging that a "stock was purchased at an inflated price" due to the alleged misrepresentation; a plaintiff must also allege that "the market learned of and reacted to this fraud," as opposed to reacting to something else. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063-64 (9th Cir. 2008). Lead Plaintiff has not satisfied this burden. Despite the SAC's bluster, it does not allege that the "truth was revealed" regarding any alleged misrepresentation or omission prior to UST and LUNA losing their value.

Nor has Lead Plaintiff pled that any alleged corrective disclosures regarding the stability of UST (SAC ¶ 263) caused the alleged losses. UST and LUNA lost their values due to a market event in May 2022. The SAC identifies no corrective disclosure precipitating that event. Lead Plaintiff cannot and does not argue that the decline was caused by *disclosure* that the peg might fail during periods of high market volatility (SAC ¶ 263), because that was well-known long before May 2022. The SAC pleads numerous *public* discussions of precisely that risk, *e.g.,* SAC

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

¶¶ 45, 46, 49-51, 131, 133, 134, 147, and four months prior to UST losing its peg, LFG and Mr. Kwon cautioned users that the arbitrage incentives designed to support UST's peg could break down under extreme market conditions. Henkin Decl. Ex. H. That UST did not lose its peg after any of those disclosures forecloses any allegation of loss causation. *See In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1034 (N.D. Cal. 2020).

Finally, Lead Plaintiff has not pled that any "disclosure" about Anchor's yield rate (SAC ¶ 263) caused any alleged losses. *First*, TFL disclosed from inception that Anchor's yield was not guaranteed but only a future projection. *Second*, Lead Plaintiff does not plead any facts to indicate that yield rate was *not* sustained prior to the May 2022 depeg.

### 5. The Rule 10b-5(a) & (c) Claim Fails

To state a scheme liability claim under Rule 10b-5(a) & (c), a plaintiff must allege facts showing that the defendant engaged in a deceptive act in furtherance of an alleged scheme to defraud, plus scienter, reliance, economic loss, and loss causation. *Kui Zhu v. Taronis Techs. Inc.*, No. CV-19-04529-PHX-GMS, 2020 WL 1703680, at *6 (D. Ariz. Apr. 8, 2020). This claim fails because the SAC does not plead a deceptive act by Defendants.[11] The SAC alleges that Jump purchased large quantities of UST to restore the peg in May 2021 (SAC ¶ 270). But an act is not deceptive unless it is performed with "the principal purpose and effect of creating a false appearance of fact," and "[c]onduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation." *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048, 1050 (9th Cir. 2006), *overruled on other grounds, Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 156-57 (2008). The SAC does not plead that whatever Jump did in May 2021 was inconsistent with its prior or subsequent UST transactions: Because the SAC does not plead that Jump did anything in May 2021 that it did not do at any other time, it does not plead that anything Jump did in May 2021 was a deceptive act. To the extent Lead Plaintiff claims the conduct was deceptive because of purported non-disclosure, that simply rehashes the First Cause

---

[11] Lead Plaintiff also fails to plead scienter, reliance, and loss causation for a scheme liability claim regarding the May 2021 depeg for the same reasons discussed above.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   of Action, not an independent claim for scheme liability, *see SEC v. Kelly*, 817 F. Supp. 2d 340,

2   344 (S.D.N.Y. 2011), and it fails for exactly the same reasons.

3       Even if acts attributed to Jump could be viewed as deceptive, they cannot support a

4   scheme liability claim against Defendants. A plaintiff must plead that each defendant performed

5   an act that was, *itself*, in purpose and effect deceptive, not that it helped another defendant do so.

6   *Simpson*, 452 F.3d at 1048. The SAC does not even allege that Defendants "helped" Jump.

### 6.    The Control Person Claims Fail

8       To establish liability under Section 15 of the '33 Act or Section 20(a) of the '34 Act, a

9   plaintiff must show that a primary violation was committed, that the defendant had the power to

10  influence of control the primary violator, and that the defendant was a "culpable participant" in

11  the primary violation.[12] These claims fail at the outset because the SAC does not plead primary

12  violations of the '33 or '34 Act by TFL.[13] Section 20(a) requires "actual control over the

13  transaction in question."[14] But the SAC's allegations do not establish that Mr. Kwon had actual

14  control over any challenged statement by TFL, as he is not alleged to have reviewed or approved

15  any tweet published by TFL's twitter feed or to have had actual control over challenged actions

16  by TFL employees. Similarly, Section 15 requires that Mr. Kwon have been involved in the

17  alleged unregistered sales, *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal.

18  2003), but there are no such allegations in the SAC. Both control person claims thus fail.

19  ## III.   THE SAC DOES NOT STATE A RICO CLAIM

20      To establish a civil RICO claim for violation of § 1962(c), a plaintiff "must plausibly

21  allege that each defendant acted, directly or indirectly, in (1) the conduct, (2) of an enterprise that

22  affects interstate commerce, (3) through a pattern, (4) of racketeering activity." *BMA LLC v. HDR*

23  *Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *11 (N.D. Cal. Mar. 12,

---

[12] *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003); *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

[13] The Section 15 claims asserted against Defendants as "control persons" of LFG (SAC ¶¶ 293-96) are mysterious, because LFG is not a defendant and no claims are asserted against it.

[14] *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 307 (S.D.N.Y. 2013); *In re Alstom SA Sec. Litig.*, 406 F.Supp.2d 433, 487 (S.D.N.Y.2005).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    2021). The SAC does not do so.

2        A.    **The RICO Claim Is Barred by PSLRA Section 107**

3        PSLRA Section 107 provides that "no person may rely upon any conduct that would have

4    been actionable as fraud in the purchase or sale of securities to establish a violation of section

5    1962." 18 U.S.C. § 1964(c). "The PSLRA bar does not turn on whether a given defendant would

6    be liable under the securities law. Rather, Section 1964(c) proscribed using as a predicate any

7    conduct that would have been actionable as securities fraud." *Lucero v. IRA Servs., Inc.*, No. 18-

8    CV-05395-LB, 2019 WL 5812175, at *4 (N.D. Cal. Nov. 7, 2019). Even asserting a securities

9    claim with no possible legal viability makes Section 107 applicable and bars civil RICO claims.[15]

10       The applicability of Section 107 is not even a close call here because Lead Plaintiff

11   affirmatively asserts that the "Terra Tokens" are securities and asserts federal securities claims.

12   *See* SAC ⁋⁋ 76-109, 243-274, 282-291. This is precisely the sort of pleading behavior Congress

13   intended to preclude when it enacted the PSLRA.[16]

14       B.    **The SAC Fails to Allege RICO Standing**

15       The SAC alleges that Defendants "directly and proximately caused Plaintiffs and Class

16   members to be financially injured" and "lost opportunities" (SAC ⁋ 343) without explaining how

17   Lead Plaintiff was specifically injured by the alleged racketeering activity. That is insufficient.[17]

18       Lead Plaintiff only purchased UST. He thus cannot assert injury relating to any other

19   "Terra Token," including LUNA. The most favorable reading of the SAC is that Lead Plaintiff's

20   alleged injury was based on the notion that UST was riskier to purchase than he originally

21

22   ───────────────
[15] *See Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007); *MLSMK Inv. Co. v. JP Morgan Chase & Co*., 651 F.3d 268, 274 (2d Cir. 2001); *Howard v. American Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000).

23

24   [16] *See Albright v. Terraform Labs, Pte. Ltd.*, No. 22-CV-07281 (JSR), 2022 WL 16985806, at *2 (S.D.N.Y. Nov. 15, 2022) ("RICO and securities fraud claims are mutually exclusive"); *Davies v. GetFugu, Inc.*, No. CV 09-8724-GHK (RCX), 2010 WL 11597458, at *2 (C.D. Cal. Aug. 26, 2010); *ABF Capital Mgmt. v. Askin Capital Mgmt.*, 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997).

25

26   [17] *See Bokaie v. Green Earth Coffee LLC*, No. 18-CV-05244-JST, 2018 WL 6813212, at *5 (N.D. Cal. Dec. 27, 2018); *Bermingham v. Plumbing & Pipefitting Indus. Loc. 38*, 53 F.3d 337 (9th Cir.

27   1995). Lead Plaintiff's attempt to use attorney's fees and costs in litigating this action as a way to plead sufficient RICO injury (SAC ⁋ 348) fails because pursuing a RICO action does not create

28   proximate causation. *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

believed. But that cannot support a RICO claim. *See Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 522 (S.D.N.Y. 1997).

Lead Plaintiff must sufficiently allege both "but for" and proximate causation, *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994), but has not alleged either. To establish "but for" causation, Lead Plaintiff must plead that absent Defendants' alleged predicate acts, he would not have purchased UST. Although a RICO plaintiff need not show that it directly relied on the defendant's misrepresentations (first-party reliance), "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."[18] Given that the design specifications for UST and Anchor and their respective code bases were publicly available and the risks about which Lead Plaintiff complains were widely discussed in public prior to the depeg event, Lead Plaintiff has not pleaded even but-for causation.

Nor has Lead Plaintiff sufficiently alleged proximate cause. The central inquiry to evaluate whether there is proximate causation is "whether the alleged violation led directly to the plaintiff's injuries." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 653-54 (N.D. Cal. 2020). A plaintiff may not recover damages unless their injury occurs at the "first step" in the proximate cause inquiry.[19] Because Lead Plaintiff does not allege that he ever interacted directly—or at all—with Defendants, Lead Plaintiff has not alleged harm from the decline in value of UST stemming directly from Defendants' alleged RICO violations.

## C.  The SAC Does Not Allege RICO Predicate Acts

### 1.  The SAC Does Not Adequately Plead Mail or Wire Fraud

To allege mail or wire fraud, Lead Plaintiff must plead with particularity that Defendants made material misrepresentations with fraudulent intent in a scheme to get money or property

---

[18] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) ("[I]f the person who was allegedly deceived… (plaintiff or not) **would have acted in the same way regardless of the misrepresentation**, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury." (emphasis added)).

[19] *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010); *see also Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 101 (2d Cir. 2022) ("Not only does Plaintiff fail to allege any direct dealings with Defendants, but his asserted injury… is several steps removed from Defendants' alleged conduct…").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    furthered by use of interstate mail or wires. *See BMA LLC*, 2021 WL 949371, at *11; *Williams &*

2    *Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Rsrv.*, No. 317CV01436GPCMDD, 2019

3    WL 4277431, at *9 (S.D. Cal. Sept. 10, 2019). Lead Plaintiff must go beyond "conclusory

4    allegations" of fraud and (i) describe the specific statements that are alleged to be false or

5    fraudulent, identify the speaker, state when and where the statements were allegedly made, and

6    explain why the statements were fraudulent, and (ii) "allege facts that give rise to a strong

7    inference of fraudulent intent." *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159,

8    179 (2d Cir. 2004); *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018); *BMA LLC*,

9    2021 WL 949371, at *11. Lead Plaintiff's allegations do not meet these requirements.[20]

10       The allegations that TFL repeatedly touted the stability of UST and sustainability of

11   Anchor (*e.g.*, SAC ⁋ 6, 119-56) do not withstand scrutiny for the same reasons they fail to plead

12   securities fraud. *See supra* Point II. Although UST's design failed under the market conditions

13   that occurred in May 2022, statements are not fraudulent simply because it later turned out they

14   might have been too optimistic or an intervening cause resulted in changed circumstances. A

15   design failure is not fraud, especially when the design risks were known.[21]

16       Lead Plaintiff cannot convert what happened into a fraud claim by pointing to a selection

17   of optimistic tweets. *See*, *e.g.*, SAC ⁋⁋ 100, 106, 125-27, 141. Mr. Kwon's tweets merely

18   expressed confidence and excitement in UST, LUNA, and the creation of a reserve to support the

19   peg and mitigate the *disclosed* risk of a UST collapse. "Corporate optimism," "puffery" or

20   "mildly optimistic, subjective assessment" are not actionable as misrepresentations. *In re*

21   *ECOtality, Inc. Sec. Litig.*, No. 13-03791-SC, 2014 WL 4634280, at *8-9 (N.D. Cal. Sept. 16,

---

[20] Lead Plaintiff cannot rely on allegations that Mr. Kwon failed to disclose that he tweeted about "Basis Cash" (AC ¶ 47) or that TFL failed to disclose interactions with Jump (SAC ¶¶ 223-224), because he alleges no reason why disclosure of either was required. *See LifeVoxel Virginia SPV, LLC v. LifeVoxel.AI, Inc.*, No. 22-CV-566-GPC-JLB, 2022 WL 3648452, at *5 (S.D. Cal. Aug. 23, 2022); *see also In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 884 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022).

[21] *See generally Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619, 623 (7th Cir. 2022); Henkin Decl. Ex. M at 2 ("The 'death spiral'/bank run risk of failure was known by everyone and repeated consistently over time. $LUNA was referred to as an experiment by Do Kwon in interviews again and again."); Henkin Decl. Ex. N at 2 ("TFL donated what was then >$3B to establish @LFG_org to diversify UST's collateral backing, and focused our investments to grow Terra's ecosystem. We wouldn't have done this if we thought UST were to fail.").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

2014). Moreover, the tweets were not statements of fact but expressions of opinion and thus not actionable. As the SAC itself demonstrates, whether the "Terra Ecosystem" would function as designed was the subject of significant public debate, and Mr. Kwon was conveying his opinion on that topic, not factual statements that could be read as false or misleading. *See Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017). It is thus not surprising that Lead Plaintiff does not allege that any of the statements cited were false; at best, Lead Plaintiff's complaints are about mismanagement or poor design, puffery, and fraud by hindsight, none of which is actionable.[22] Lead Plaintiff's allegations of false statements regarding Anchor fare no better, again for the same reasons they fail to allege securities fraud claims.

Lead Plaintiff fails to allege scienter for the same reasons he does not allege securities fraud scienter. Indeed, Lead Plaintiff simply lumps all "Defendants" together in alleging they somehow "knew" that the Terra Ecosystem and Anchor were "unstable" and "unsustainable," SAC ⁋⁋ 7, 8, 9, 49, 150, 256, which is insufficient to plead scienter. *See Swartz*, 476 F.3d at 764-65; *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).[23] Accordingly, Lead Plaintiff has not sufficiently pleaded mail or wire fraud. *See Swartz*, 476 F.3d at 764-65.

### D.      The SAC Does Not Properly Allege a RICO Enterprise

The SAC alleges that there was an association-in-fact comprised of all Defendants and operated by all Defendants through a pattern of racketeering activity. SAC ⁋ 319-331. An association-in-fact "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 945 (2009). Association-in-fact enterprises must have a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the

---

[22] *See Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 6466264, at *11 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *Cboe Glob. Markets*, 42 F.4th at 623.

[23] Lead Plaintiff's reliance (SAC ¶¶ 163-64) on a Medium article by Mr. Tetot does not support scienter. Mr. Tetot stated that what he wrote was his "personal opinion," not an analysis of actions by TFL or LFG, that the risks of a depeg and death spiral "were clear" when he did his own research *in 2021*, and that people "were constantly pointing out Luna/ust weaknesses," as the SAC itself confirms. *See* Henkin Decl. Ex. L.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

enterprise's alleged purpose. *See id.* at 946. And the enterprise is not the pattern of racketeering activity, it must be separate and apart from the pattern of activity alleged. *See United States v. Turkette*, 452 U.S. 576, 583 (1981).

Lead Plaintiff's enterprise allegations fail for three reasons. *First*, Lead Plaintiff's association-in-fact allegations (SAC ¶¶ 319-331) are conclusory and merely parrot the statutory language.[24] Alleging that all defendants participated in the cryptocurrency industry does nothing to plead a relationship beyond the alleged predicate acts or otherwise suggest unity amongst the alleged members of the enterprise. *See Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016); *First Nationwide Bank*, 820 F. Supp. at 98.

*Second*, the SAC contains no well-pled allegations regarding the structure and organization of the alleged enterprise—it just names a group of entities connected through arms-length commercial transactions and asserts that those entities were organized as a group, which is not enough for RICO claims.[25] Lead Plaintiff defines his "enterprise" as the group needed to encompass the predicate acts he tries to allege (SAC ¶¶ 206, 262, 320-22, 325, 342), which is not sufficient. *See Turkette*, 452 U.S. at 583.

*Third*, an enterprise must have longevity sufficient to permit its associates to pursue the enterprise's purpose. *See Boyle*, 556 U.S. at 946. But all the SAC alleges is that "[t]he Terra Token Enterprise is an ongoing and continuing business organization consisting of 'persons' within the meaning of 18 U.S.C. § 1961(3) that created and maintained systematic links for a common purpose: to ensure that the RICO Defendants could sell off their Terra Token holdings to retail investors at artificially inflated prices without their fraud being detected," SAC ¶ 320, which just parrots the statutory definition. That allegation is also nonsensical given, for example, that LFG was not formed until late January 2022 (SAC ¶ 81), more than two years after the

---

[24] *See Gaines v. Home Loan Ctr., Inc.*, No. SACV08667AHSRNBX, 2010 WL 11506442, at *6 (C.D. Cal. May 24, 2010); *Schmidt v. Fleet Bank*, No. 96 CIV. 5030 (AGS), 1998 WL 47827, at *8 (S.D.N.Y. Feb. 4, 1998).

[25] *See BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *11 (N.D. Cal. Mar. 12, 2021); *Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421 VB, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014).

1   "enterprise" was supposedly formed. And there is nothing in the SAC to support the assertion that

2   the alleged enterprise is "ongoing and continuing."

3       **E.**    **The SAC Does Not Properly Allege Operation or Management**

4       A RICO defendant must have "conduct[ed] or participat[ed], directly or indirectly, in the

5   conduct of [the] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C.

6   § 1962(c). To "conduct" the affairs of an enterprise, a defendant must have had "some part in

7   directing [the enterprise's] affairs.'" *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The

8   operation and management test is extremely rigorous, and it is not enough to take directions,

9   perform tasks that are necessary and helpful to the enterprise, or provide goods or perform

10  services that ultimately benefit the enterprise. *Pac. Recovery Sols. v. United Behav. Health*, 481

11  F. Supp. 3d 1011, 1027 (N.D. Cal. 2020). And a complaint must allege that a defendant

12  conducted the affairs of *the enterprise,* not its own affairs.[26] With respect to TFL, the SAC only

13  alleges that it hosted the Terra blockchain and posted tweets regarding TFL's business (SAC ¶¶ 3,

14  34-35, 42, 119, 120, 121, 127, 140 1). Those are at most allegations that TFL conducted its own

15  business, and thus fail as bases for RICO claims. *Interallianz Bank AG v. Nycal Corp.*, No. 93

16  CIV. 5024 (RPP), 1994 WL 177745, at *7 (S.D.N.Y. May 6, 1994).[27]

17      **F.**    **Lead Plaintiff Fails to Allege Pattern or Continuity**

18      Lead Plaintiff can only allege closed-ended continuity, which requires predicate acts "over

19  a substantial period of time" by a particular defendant. *Kan-Di-Ki, LLC v. Sorenson*, 723 F.

20  App'x 432, 434 (9th Cir. 2018). As to Defendants specifically, however, Lead Plaintiff fails to

21  allege closed-ended continuity because he includes conduct unrelated to any alleged injury

22  sustained by Lead Plaintiff or the proposed class in an effort show that TFL or Mr. Kwon's

23  conduct was not isolated or sporadic. Lead Plaintiff's allegations relate to the purchase of UST

24

25  [26] *See Ferrari v. Mercedes-Benz USA, LLC*, No. 15-CV-04379-YGR, 2016 WL 7188030, at *2
    (N.D. Cal. Dec. 12, 2016)*; Kaczmarek v. Int'l Bus. Machines Corp.*, 30 F. Supp. 2d 626, 630
26  (S.D.N.Y. 1998).

27  [27] Lead Plaintiff cannot fix this problem by amending. Mr. Kwon and TFL cannot form an
    enterprise because courts have long rejected the idea that a RICO enterprise may consist merely
    of a corporate defendant associated with its own employees or agents carrying on the regular
28  affairs of the defendant. *See Ferrari v. Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *2.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   and damages allegedly sustained as a result of its price decline. SAC ¶¶ 157, 261-265, 344. And

2   yet Lead Plaintiff tries to rely on Anchor to support continuity (SAC ¶¶ 26, 71, 120-22, 167, 183,

3   203), even though the SAC does not contain a single allegation that (a) Lead Plaintiff *or anyone*

4   *else* lost money as a result of Anchor or (b) Anchor ever failed to pay the expected return on

5   staked tokens. Accordingly, nothing relating to Anchor can be considered in evaluating

6   continuity. And without those allegations, Lead Plaintiff's continuity theory unravels because the

7   alleged predicate acts relating to UST are too sporadic to support closed-ended continuity. *See*

8   *First Capital Asset Mgmt.*, 385 F.3d at 181.

9   **IV.    THE SAC'S STATE LAW CLAIMS MUST BE DISMISSED**

10          The SAC's state law claims (Sixth, Eighth and Ninth Causes of Action) all fail because, as

11   demonstrated above, the SAC does not allege fraudulent conduct or misrepresentations. *BMA*

12   *LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *17 (N.D. Cal.

13   Mar. 12, 2021).

14          **A.    The Aiding and Abetting and Conspiracy Claims Fail**

15          Lead Plaintiff's aiding and abetting and conspiracy claims are secondary liability claims.

16   If these claims are based on the federal securities law claims, they are barred as a matter of law

17   because federal securities law does not permit private secondary liability claims. *See In re*

18   *GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 592 (9th Cir. 1995); *Hokama v. E.F. Hutton & Co.*, 566 F.

19   Supp. 636, 642 (C.D. Cal. 1983). If they are not based on the federal securities law claims, then

20   there is no primary state law claim pled at all, and they fail for that reason. Whatever these claims

21   are, they also fail because there can be no presumption of reliance for state law fraud claims, and

22   the SAC does not plead individual reliance. *See generally Gaffin v. Teledyne, Inc.*, 611 A.2d 467,

23   474-75 (Del. 1992) (*Basic* presumption does not apply to state law fraud claims).

24          **B.    The Unjust Enrichment Claim Fails**

25          The unjust enrichment claim fails because the SAC does not allege that TFL or Mr. Kwon

26   received funds directly from Lead Plaintiff or any other putative class member. An unjust

27   enrichment plaintiff must allege (a) receipt of a benefit by the defendant and (b) unjust retention

28   of it at the expense of another. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). A "benefit" must

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

come at the expense or loss of a plaintiff and be conferred on defendant by the plaintiff itself. *Id*. Lead Plaintiff alleges that he and the purported class "conferred a monetary benefit on Defendants by raising the price and trading volume of the Terra Tokens, which *allowed* Defendants to sell their Terra Tokens" at higher prices. SAC ¶ 350 (emphasis added). But that is at best an allegation of indirect and speculative benefits to TFL and Mr. Kwon from the secondary market, not from Lead Plaintiff or class members directly. The unjust enrichment claim also fails because there is an adequate remedy at law. Because this claim is based on the same alleged facts as the statutory claims (SAC ¶ 349), Lead Plaintiff has an adequate remedy at law and cannot bring a claim for unjust enrichment. *See Stationary Engineers Loc. 39 Health & Welfare Tr. Fund v. Philip Morris, Inc.*, No. C-97-01519 DLJ, 1998 WL 476265, at *18 (N.D. Cal. Apr. 30, 1998).

## **CONCLUSION**

For all the foregoing reasons, TFL and Mr. Kwon respectfully request that the Court dismiss the SAC with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: May 2, 2023

Respectfully submitted,
DENTONS US LLP

By: _/s/ Joel D. Siegel_
Joel D. Siegel

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

JOEL D. SIEGEL (SBN 155581)
joel.siegel@dentons.com
ANDREW M. PENDEXTER (SBN 310752)
andrew.pendexter@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Tel: 213.623.9300 / Fax: 213.623.9924

DOUGLAS HENKIN (Admitted *Pro Hac Vice*)
douglas.henkin@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: 212.768.6700 / Fax: 212.768.6800

STEPHEN J. SENDEROWITZ (*Pro Hac Vice*)
stephen.senderowitz@dentons.com
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606-6361
Telephone: 312.876.8141

Attorneys for Defendants TERRAFORM
LABS, PTE. LTD. and DO KWON

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300