# EXHIBIT A

1 | JOEL D. SIEGEL (SBN 155581)
joel.siegel@dentons.com
2 | ANDREW M. PENDEXTER (SBN 310752)
andrew.pendexter@dentons.com
3 | DENTONS US LLP
601 South Figueroa Street, Suite 2500
4 | Los Angeles, CA 90017-5704
Telephone: 213.623.9300
5 | Facsimile: 213.623.9924

6 | DOUGLAS HENKIN (Admitted *Pro Hac Vice*)
douglas.henkin@dentons.com
7 | DENTONS US LLP
1221 Avenue of the Americas
8 | New York, NY 10020-1089
Telephone: 212.768.6700
9 | Facsimile: 212.768.6800

10 | STEPHEN J. SENDEROWITZ (Admitted *Pro Hac Vice*)
stephen.senderowitz@dentons.com
11 | DENTONS US LLP
233 South Wacker Drive, Suite 5900
12 | Chicago, IL 60606-6361
Telephone: 312.876.8141

13 |

14 | Attorneys for Defendants
TERRAFORM LABS, PTE. LTD. and
DO KWON

*Left margin (vertical text):* DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP CRYPTO, JUMP TRADING LLC, REPUBLIC CAPITAL, REPUBLIC MAXIMAL LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/DEFINANCE TECHNOLOGIES OY, GSR/GSR MARKETS LIMITED, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS, AND DO KWON,<br><br>Defendants. | Case No. 3:22-cv-03600<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES TO (I) DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2), (II) COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT AND STRIKE THE CLASS ALLEGATIONS, AND (III) DISMISS ANY REMAINING CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Date:       September 19, 2023<br>Time:       2:00 p.m.<br>Dept.:      Courtroom 9, 19th Floor<br>Judge:     Hon. Trina L. Thompson<br><br>Action Filed:  July 17, 2022<br><br>Trial Date:  None Set |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**NOTICE OF MOTION AND MOTION**

TO THE ABOVE-ENTITLED COURT AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 19, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, Courtroom of the Honorable Trina L. Thompson, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 9, 19th Floor, Defendants Terraform Labs PTE Ltd. and Do Kwon hereby move this Court to dismiss the Second Amended Complaint ("SAC") in its entirety.

First, the Court should dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(2) because it does not have personal jurisdiction over Defendants.

If the Court decides that it does have personal jurisdiction over Defendants, then it should strike the SAC's class claims pursuant to Federal Rule of Civil Procedure 23 and compel arbitration of Lead Plaintiff's claims pursuant to the FAA and the Court's inherent power dismiss.

Finally, and in the alternative, the Court should dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) because none of its counts state claims upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declaration of Arrash Chris Amani, the declaration of Douglas W. Henkin, and Defendants' Request for Judicial Notice.

Accordingly, Defendants respectfully request this Court to dismiss the SAC with prejudice.

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................... 17

STATEMENT OF FACTS ........................................................................................ 18

STANDARDS OF REVIEW ..................................................................................... 24

ARGUMENT ............................................................................................................. 24

I.     LEAD PLAINTIFF CANNOT RELY ON THE SEC'S ALLEGATIONS ............................................................................... 24

II.    THE SAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ................................................................. 25

    A.    Defendants Are Not Subject to General Jurisdiction .............................. 26

    B.    Defendants Are Not Subject to Specific Jurisdiction ............................. 26

III.   THE SAC MUST BE DISMISSED PURSUANT TO THE FAA AND THE DOCTRINE OF FORUM NON CONVENIENS ....................................... 29

    A.    There Is An Enforceable Agreement To Arbitrate ................................. 30

        1.    Lead Plaintiff Assented to the Forum Selection Clause .............. 30

        2.    The Forum Selection Clause is Valid and Enforceable ................ 31

            a)    Application of the Public Interest Factors ........................ 32

            b)    Lead Plaintiff's Claims Fall Within the Scope of the Agreement to Arbitrate ........................................... 33

            c)    The Agreement to Arbitrate Applies to Mr. Kwon .................................................................................... 34

            d)    The Class Waiver is Enforceable ..................................... 35

IV.   THE SAC'S FEDERAL CLAIMS ARE IMPERMISSIBLY EXTRATERRITORIAL ............................................................................ 36

V.    THE SAC DOES NOT PLEAD FEDERAL SECURITIES CLAIMS ................ 37

    A.    The "Terra Tokens" Are Not Securities .................................................. 37

        1.    The Proper Understanding of *Howey* ........................................... 37

        2.    Lead Plaintiff Has Not Pled That Any "Terra Tokens" Are Securities ............................................................................... 39

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

B.     The Section 12(a)(1) Claim Fails .................................................................. 42

C.     The Section 10(b) Claim Fails .................................................................... 43

    **1.**     No material misrepresentation or omission.................................. 44

    2.     The SAC Does Not Allege Scienter............................................. 47

    3.     The SAC Does Not Plead Reliance.............................................. 48

    4.     The SAC Does Not Plead Loss Causation ................................... 49

D.     The Rule 10b-5(a) & (c) Claim Fails ......................................................... 50

E.     The Control Person Claims Fail ................................................................. 51

VI.     THE SAC DOES NOT STATE A RICO CLAIM ................................................. 51

A.     The RICO Claim Is Barred By PSLRA Section 107 ................................. 52

B.     The SAC Fails To Allege RICO Standing ................................................. 52

C.     The SAC Does Not Allege RICO Predicate Acts ..................................... 53

    1.     The SAC Does Not Adequately Plead Mail or Wire
    Fraud ........................................................................................... 53

D.     The SAC Does Not Properly Allege a RICO Enterprise ......................... 56

E.     The SAC Does Not Properly Allege Operation or Management............. 57

F.     The SAC Fails To Allege Pattern Or Continuity ..................................... 58

VII.     THE SAC'S STATE LAW CLAIMS MUST BE DISMISSED ......................... 58

A.     The Aiding and Abetting and Conspiracy Claims Fail ............................ 59

B.     The Unjust Enrichment Claim Fails........................................................... 59

CONCLUSION ................................................................................................................ 59

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*19 Tao Vega LLC v. Holo Ltd.*,
No. C 19-5640 ........................................................................................................ 27, 28

*Aaron v. Durrani*,
Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471 (S.D. Ohio Mar. 13, 2014) ..................... 25

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) .......................................................................................... 46

*Adema Techs., Inc. v. Wacker Chem. Corp.*,
657 F. App'x 661 (9th Cir. 2016) ....................................................................... 29, 31, 32

*Aguilera v. Ducart*,
No. 18-CV-03389-HSG, 2019 WL 4168892 (N.D. Cal. Sept. 3, 2019) .............................. 18

*Albright v. Terraform Labs, Pte. Ltd, et al.*,
Case No. 1:22-cv-07281-JSR (S.D.N.Y.), ECF No. 1 ............................................. 22

*Albright v. Terraform Labs, Pte. Ltd.*,
No. 22-CV-07281 (JSR), 2022 WL 16985806 (S.D.N.Y. Nov. 15, 2022) ...................... 52

*In re Alstom SA Sec. Litig.*,
406 F.Supp.2d 433 (S.D.N.Y.2005) ....................................................................... 51

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .................................................................................. 28

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
622 F. Supp. 2d 825 (N.D. Cal. 2007) ..................................................................... 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 24, 25

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................................ 35

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ........................................................................................... 29, 32

*Azod v. Robinson*,
No. CV 16-440-JFW (EX), 2016 WL 6603950 (C.D. Cal. May 10, 2016) .......................... 30

*Barry v. Cboe Glob. Markets, Inc.*,
42 F.4th 619 (7th Cir. 2022) ............................................................................... 54, 55

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................. 48, 49, 59

*Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.*,
    819 F.2d 247 (9th Cir. 1987) .............................................................................. 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 24

*Bermingham v. Plumbing & Pipefitting Indus. Loc. 38*,
    53 F.3d 337 (9th Cir. 1995) ................................................................................ 52

*BMA LLC v. HDR Glob. Trading Ltd.*,
    No. 20-CV-03345-WHO, 2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ............. 51, 54, 57, 58

*Bokaie v. Green Earth Coffee LLC*,
    No. 18-CV-05244-JST, 2018 WL 6813212 (N.D. Cal. Dec. 27, 2018) ................. 52

*Bonadio v. PHH Mortg. Corp.*,
    No. 12 CV 3421 VB, 2014 WL 522784 (S.D.N.Y. Jan. 31, 2014) ....................... 57

*Bos. Telecomms. Grp., Inc. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ............................................................................ 32

*Boyle v. United States*,
    556 U.S. 938 (2009) ...................................................................................... 56, 57

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ............................................................................................ 53

*Brown v. 140 NM LLC*,
    No. 17-CV-05782-JSW, 2019 WL 118425 (N.D. Cal. Jan. 7, 2019) ................... 28

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................................................ 28

*In re Calpine Corp. Sec. Litig.*,
    288 F. Supp. 2d 1054 (N.D. Cal. 2003) ............................................................. 51

*Capital. Mgmt. v. Askin Capital Mgmt.*,
    957 F. Supp. 1308 (S.D.N.Y. 1997) ................................................................... 52

*Capri v. Murphy*,
    856 F.2d 473 (2d Cir. 1988) ............................................................................... 43

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
    109 F. Supp. 2d 1236 (S.D. Cal. 2000) ............................................................. 29

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................................................... 53

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*City of Almaty v. Khrapunov*,
   No. CV 14-3650 FMO (CWX), 2018 WL 6074544 (C.D. Cal. Sept. 27, 2018),
   *aff'd*, 956 F.3d 1129 (9th Cir. 2020) .................................................................................... 36

*City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*,
   963 F. Supp. 2d 1092 (E.D. Wash. 2013) ............................................................................. 44

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) .............................................................................................. 34

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) .................................................................................. 25

*Crypto Asset Fund, LLC v. MedCredits, Inc.*,
   No. 19cv1869-LAB (MDD), 2020 WL 1506220 (S.D. Cal. Mar. 30, 2020) ........................ 30

*Curry v. Yelp Inc.*,
   875 F.3d 1219 (9th Cir. 2017) .............................................................................................. 47

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................................. 26

*Davies v. GetFugu, Inc.*,
   No. CV 09-8724-GHK (RCX), 2010 WL 11597458 (C.D. Cal. Aug. 26, 2010) ................. 52

*Davis v. Metro Prods., Inc.*,
   885 F.2d 515 (9th Cir. 1989) ................................................................................................ 27

*DeMarco v. DepoTech Corp.*,
   149 F. Supp. 2d 1212 (S.D. Cal. 2001) ................................................................................ 44

*DIRECTV, Inc. v. Imburgia*,
   577 U.S. 47 (2015) ............................................................................................................... 33

*Donovan v. Coinbase Global, Inc.*,
   2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) (Thompson, J.) ............................................... 33

*Dornberger v. Metro. Life Ins. Co.*,
   961 F. Supp. 506 (S.D.N.Y. 1997) ....................................................................................... 53

*In re ECOtality, Inc. Sec. Litig.*,
   No. 13-03791-SC, 2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ...................................... 54

*In re Facebook, Inc. Sec. Litig.*,
   477 F. Supp. 3d 980 (N.D. Cal. 2020) ............................................................................ 49, 50

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995), *cert. denied*, 571 U.S. 1136 (1996) ...................................... 48

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Ferrari v. Mercedes-Benz USA, LLC*,
No. 15-CV-04379-YGR, 2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) ........................ 57, 58

*Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap., LLC*,
769 F. App'x 429 (9th Cir. 2019) ................................................................. 29, 31

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
131 F.3d 1336 (9th Cir. 1997)..................................................................... 29, 31

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)........................................................................ 54, 58

*Fund Liquidation Holdings LLC v. UBS AG*,
15 Civ. 5844 (GBD), 2021 WL 4482826 (S.D.N.Y. Sept. 30, 2021) .................................... 36

*Gaffin v. Teledyne, Inc.*,
611 A.2d 467 (Del. 1992) ............................................................................... 59

*Gaines v. Home Loan Ctr., Inc.*,
No. SACV08667AHSRNBX, 2010 WL 11506442 (C.D. Cal. May 24, 2010).................... 56

*George v. McDonough*,
142 S. Ct. 1953 (2022) ................................................................................. 38

*Ghirardo v. Antonioli*,
14 Cal. 4th 39 (1996) ................................................................................... 59

*In re GlenFed, Inc. Sec. Litig.*,
60 F.3d 591 (9th Cir. 1995)............................................................................. 59

*Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*,
No. 16-CV-00920-LB, 2016 WL 4259126 (N.D. Cal. Aug. 12, 2016) ............................. 32

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..................................................................................... 26

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)...................................................................................... 33

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010)........................................................................................ 53

*Hokama v. E.F. Hutton & Co.*,
566 F. Supp. 636 (C.D. Cal. 1983) ................................................................... 59

*Houtchens v. Google, LLC*,
No. 22-cv-02638-BLF, 2023 WL 122393 (N.D. Cal. Jan. 6, 2023) ............................. 30

*Howard v. American Online, Inc.*,
208 F.3d 741 (9th Cir. 2000)........................................................................... 52

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011) ..................................................................... 48

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................... 27

*Interallianz Bank AG v. Nycal Corp.*,
    No. 93 CIV. 5024 (RPP), 1994 WL 177745 (S.D.N.Y. May 6, 1994) ................... 58

*Ivy Bridge Univ., LLC v. Higher Learning Comm'n*,
    No. 15-CV-02187-SC, 2015 WL 6555428 (N.D. Cal. Oct. 28, 2015) ................... 26

*Izenberg v. ETS Servs., LLC*,
    589 F. Supp. 2d 1193 (C.D. Cal. 2008) .................................................................. 52

*In re J.P. Jeanneret Assocs., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011) ..................................................................... 40

*Jeong v. Nexo Fin. LLC*,
    No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................... 29

*Kaczmarek v. Int'l Bus. Machines Corp.*,
    30 F. Supp. 2d 626 (S.D.N.Y. 1998) ...................................................................... 57

*Kan-Di-Ki, LLC v. Sorenson*,
    723 F. App'x 432 (9th Cir. 2018) ........................................................................... 58

*Krystal, Inc. v. China United Transp., Inc.*,
    No. CV 16-02406-RSWL-SPX, 2017 WL 6940544 (C.D. Cal. Apr. 12, 2017) .................... 31

*Kui Zhu v. Taronis Techs. Inc.*,
    No. CV-19-04529-PHX-GMS, 2020 WL 1703680 (D. Ariz. Apr. 8, 2020) ......................... 50

*Laydon v. Coöperatieve Rabobank U.A.*,
    55 F.4th 86 (2d Cir. 2022) ...................................................................................... 53

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
    527 F. Supp. 2d 1033 (N.D. Cal. 2007) .................................................................. 44

*In re Lehman Bros. Sec. & ERISA Litig.*,
    No. 09 MD 2017 ..................................................................................................... 49

*Levitt v. J.P. Morgan Sec. Inc.*,
    9 F. Supp. 3d 259 (E.D.N.Y. 2014) ........................................................................ 42

*LifeVoxel Virginia SPV, LLC v. LifeVoxel.AI, Inc.*,
    No. 22-CV-566-GPC-JLB, 2022 WL 3648452 (S.D. Cal. Aug. 23, 2022) ......................... 54

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Loewen v. Lyft, Inc.*,
    129 F. Supp. 3d 945 (N.D. Cal. 2015), *abrogated on other grounds, Henry Schein Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) .......................................... 33

*Lucero v. IRA Servs., Inc.*,
    No. 18-CV-05395-LB, 2019 WL 5812175 (N.D. Cal. Nov. 7, 2019) .................................... 52

*M/S Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972) ........................................................................................................... 32

*Marini v. Adamo*,
    812 F. Supp. 2d 243 (E.D.N.Y. 2011) ............................................................................. 40

*Markette v. XOMA Corp.*,
    No. 15-CV-03425-HSG, 2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ............................. 55

*Martensen v. Koch*,
    942 F. Supp. 2d 983 (N.D. Cal. 2013) ............................................................................. 26

*McIntosh v. Adventist Health*,
    No. C 12–05589, 2013 WL 968293 (N.D. Cal. Mar. 12, 2013) ......................................... 31

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)......................................................................................... 49

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013) ............................................................................. 51

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ......................................................................................................... 29

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2001) ........................................................................................... 52

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ......................................................................................... 33

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ........................................................................................... 56

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ......................................................................................................... 36

*Nguyen v. OKCoin USA, Inc.*,
    2023 WL 2095926 (N.D. Cal. Feb. 17, 2023)................................................................... 33

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)........................................................................................... 51

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Noa v. Key Futures, Inc.*,
   638 F.2d 77 (9th Cir. 1980) ................................................................................ 41

*Nobelbiz, Inc. v. Veracity Networks, LLC*,
   No. 13-CV-2518 YGR, 2013 WL 5425101 (N.D. Cal. Sept. 27, 2013) ................................ 28

*Oat Sols., LLC v. Rihko*,
   No. 216CV01046CASEX, 2016 WL 6602557 (C.D. Cal. Nov. 7, 2016) ............................ 29

*Pac. Recovery Sols. v. United Behav. Health*,
   481 F. Supp. 3d 1011 (N.D. Cal. 2020) ................................................................ 57

*Paracor Finance, Inc. v. General Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ............................................................................ 51

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
   763 F.3d 198 (2d Cir. 2014) ............................................................................ 36

*Pearl v. Coinbase Global. Inc.*,
   2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ........................................................ 33

*Petroleos Mexicanos v. SK Eng'g & Const. Co.*,
   572 F. App'x 60 (2d Cir. 2014) ........................................................................ 36

*Pillsbury, Madison & Sutro v. Lerner*,
   31 F.3d 924 (9th Cir. 1994) ............................................................................ 53

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ................................................................................ 42, 43

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................ 44, 48

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
   862 F.3d 981 (9th Cir. 2017) ............................................................................ 33

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ............................................................................ 24

*Republic of Kazakhstan v. Ketebaev*,
   No. 17-CV-00246-LHK, 2018 WL 2763308 (N.D. Cal. June 8, 2018) ............................ 26

*Revak v. SEC Realty Corp.*,
   18 F.3d 81 (2d Cir. 1994) ................................................................................ 40

*Reves v. Ernst & Young*,
   494 U.S. 56 (1990) ........................................................................................ 37

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ...................................................................................... 57

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................................ 26

*Rice v. Branigar Org., Inc.*,
    922 F.2d 788 (11th Cir. 1991)............................................................................. 40

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016) ............................................................................................ 36

*Roberts v. Obelisk, Inc.*,
    18CV2898-LAB, 2019 WL 1902605 (S.D. Cal. Apr. 29, 2019) ......................... 30

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................ 42

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ............................................................................................ 29

*Schiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................ 48

*Schmidt v. Fleet Bank*,
    No. 96 CIV. 5030 (AGS), 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) ................. 56

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)......................................................................... 24, 27

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015)........................................................ 48, 49

*SEC v. Belmont Reid & Co.*,
    794 F.2d 1388 (9th Cir. 1986) ............................................................................ 41

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................................................ 50

*SEC v. Telegram Grp. Inc.*,
    2020 WL 1547383 (S.D.N.Y. Apr. 1, 2020) ...................................................... 38

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ................................................................................... *passim*

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015)................................................................................. 53

*Shaw v. Nissan N. Am., Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016)............................................................. 56

*Shearson/Am. Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987)............................................................................................ 31

*Simpson v. AOL Time Warner, Inc.*,
   452 F.3d 1040 (9th Cir. 2006), *overruled on other grounds, Stoneridge*
   *Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148 (2008) ..................... 50, 51

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
   366 F. Supp. 3d 516 (S.D.N.Y. 2018) ........................................................................................ 36

*Spy Optic, Inc. v. AreaTrend, LLC*,
   843 F. App'x 66 (9th Cir. 2021) ................................................................................................ 28

*State v. Heath*,
   153 S.E. 855 (N.C. 1930) ........................................................................................................... 38

*Stationary Engineers Loc. 39 Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
   No. C-97-01519 DLJ, 1998 WL 476265 (N.D. Cal. Apr. 30, 1998) ......................................... 59

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
   No. 00 CIV. 8058 (NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ............................... 43

*Sullivan v. Barclays PLC*,
   13-cv-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) .......................................... 36

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007).................................................................................... 24, 52, 56

*Swiger v. Rosette*,
   989 F.3d 501 (6th Cir. 2021) ..................................................................................................... 33

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ................................................................................................................... 47

*In re Twitter, Inc. Sec. Litig.*,
   506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship*
   *LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) ................................................................ 54

*Underwood v. Coinbase Glob., Inc.*,
   No. 21 CIV 8353 (PAE), 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) .................................. 43

*United States v. Turkette*,
   452 U.S. 576 (1981) .............................................................................................................. 56, 57

*Vallarta v. United Airlines, Inc.*,
   497 F. Supp. 3d 790 (N.D. Cal. 2020) ..................................................................................... 26

*Welgus v. TriNet Grp., Inc.*,
   No. 15-CV-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*,
   765 F. App'x 239 (9th Cir. 2019) ............................................................................................. 55

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010) ..................................................................................... 42

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

*Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Rsrv.*,
  No. 317CV01436GPCMDD, 2019 WL 4277431 (S.D. Cal. Sept. 10, 2019) ........................ 54

*Williams v. Affinion Grp., LLC*,
  889 F.3d 116 (2d Cir. 2018) .............................................................................................. 54

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ..................................................................................... 43, 45

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ............................................................................................ 47

**Statutes**

9 U.S.C.
  §§ 201-208 .................................................................................................................... 29
  § 206 ............................................................................................................................. 30

15 U.S.C.
  §§ 77b(a)(1) and 78c(a)(10) ............................................................................................ 38
  § 77b *et seq.* ................................................................................................................. 37
  § 77d(a)(2) ..................................................................................................................... 43
  § 77l(a) ........................................................................................................................... 42
  §§ 77l(a), 77e(a) ............................................................................................................. 42
  §§ 78c(a)(10), 77b(a)(1) .................................................................................................. 39
  § 78u-4(a)(3)(B)(v) ......................................................................................................... 23
  § 78u-4(b)(1) .................................................................................................................. 44
  § 78u-4(b)(3)(B) ............................................................................................................. 25
  § 78u-5(c) ....................................................................................................................... 45
  § 78u-5(i)(1) ................................................................................................................... 45

18 U.S.C.
  §1961(3) ......................................................................................................................... 57
  § 1962(c) .................................................................................................................... 51, 57
  § 1964(c) ........................................................................................................................ 52

Securities Act Section 5 ................................................................................................. 42, 43

**Other Authorities**

17 C.F.R.
  § 230.506(b) ................................................................................................................... 43
  § 240.10b-5(b) ................................................................................................................ 43

Fed. R. Civ. P.
  12(b)(2) ..................................................................................................................... 17, 24
  12(b)(6) ................................................................................................................. 17, 18, 24
  23 ................................................................................................................................... 17

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................................ 35

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Rule

8(a) ................................................................................................................ 25, 39

8(a), Rule 11 ..................................................................................................... 25

9(b) ............................................................................................................ 44, 49

10b-5(a) & (c) ................................................................................................... 50

11 .................................................................................................................... 25

28.1 ................................................................................................................. 33

28.2 ................................................................................................................. 33

2016 ............................................................................................................... 33

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

# GLOSSARY

| | |
|---|---|
| '33 Act | Securities Act of 1933 |
| '34 Act | Securities Exchange Act of 1934 |
| Amani Decl. | Declaration of Arrash Chris Amani dated May 1, 2023 |
| Anchor TOS | Anchor Protocol Terms of Service |
| Convention | United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Section 201 |
| Defendants | Terraform Labs PTE Ltd. and Do Kwon |
| DeFi | Decentralized finance |
| FAA | Federal Arbitration Act |
| Henkin Decl. | Declaration of Douglas W. Henkin dated May 1, 2023 |
| Interface | Anchor Protocol Interface |
| Lead Plaintiff | Michael Tobias |
| LFG | Luna Foundation Guard |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| SAC | Second Amended Class Action Complaint for Violations of the Federal Securities Laws, Violations of the Racketeer Influenced and Corrupt Organizations Act, and Violations of California Law |
| SEC | Securities and Exchange Commission |
| TFL | Terraform Labs PTE Ltd. |
| UST | TerraUSD |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants respectfully submit this memorandum of law in support of their motion to (i) dismiss the SAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), (ii) strike the SAC's class claims pursuant to Federal Rule of Civil Procedure 23 and compel arbitration of Lead Plaintiff's claims pursuant to the FAA and the Court's inherent power, and (iii) in the alternative, dismiss any remaining claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

The SAC is remarkable for the sheer number of flaws packed into it, not least that it violates nearly every standard set by Congress in the PSLRA, even the PSLRA's provisions relating to the appointment of lead plaintiffs and lead counsel.

TFL developed UST and the companion cryptocurrency LUNA. Lead Plaintiff claims to have purchased UST and staked it on the Anchor Protocol, and seeks to recover alleged losses. The claims in the SAC fail for multiple reasons:

- This Court lacks personal jurisdiction over Defendants.

- The Anchor TOS require dismissal of the class claims and that this case be dismissed in favor of arbitration.

- All of the SAC claims are impermissibly extraterritorial.

- The federal securities claims fail because the "Terra Tokens" were not securities, TFL was not the "issuer" of any of them, no "Terra Tokens" were required to be registered with the SEC, and the SAC fails to plead the other elements of federal securities claims.

- The aiding and abetting and conspiracy claims fail because private secondary liability claims based on federal securities claims do not exist, and there are no other claims pleaded that could be the bases for these claims. The unjust enrichment claim fails because the SAC does not allege that Defendants obtained funds from Lead Plaintiff (or any other purported class member) at all, let alone in any unjust manner.

- The RICO claim is barred by the PSLRA, and in any event the SAC fails to properly allege RICO injury, a RICO enterprise, RICO predicate acts, that Defendants participated in the operation or management of the alleged enterprise, or RICO continuity.

## STATEMENT OF FACTS[1]

TFL: TFL is an open-source software development firm incorporated and headquartered in Singapore. SAC ¶¶ 17, 41.[2] At all relevant times, Mr. Kwon was TFL's CEO and lived outside the United States. SAC ¶¶ 23, 41. Beginning in 2018, TFL created the Terra protocol, a decentralized and open-source public blockchain protocol for algorithmic stablecoins. Terra stablecoins would not require a centralized issuer to hold reserves or users to pledge collateral in order to maintain their pegs, but would maintain their pegs programmatically through smart contracts operating directly on the blockchain, with the open-source code for those contracts adjusting money supply in response to changes in demand. SAC ¶¶ 50, 120.

UST: In September 2020, TFL announced the launch of UST. SAC ¶¶ 62, 72. TFL had previously published the Terra Money Whitepaper. SAC ¶ 120; Henkin Decl. Ex. A. Released in April 2019, the Terra Money Whitepaper fully disclosed the structure and functionality of Terra stablecoins such as UST to prospective users of these stablecoins. The Terra Money Whitepaper described how the Terra protocol works to stabilize Terra stablecoin prices through an "elastic money supply." Henkin Decl. Ex. A. Given that market prices are determined by supply and demand, when the market price of UST falls below $1, "*all conditions held equal*," decreasing the supply of UST should gradually move its price back up towards $1, and when the market price of UST rises above $1, "*all conditions held equal*," increasing the supply of UST should gradually move its price back down towards $1. *Id*. at 4 (emphasis added).[3] Thus the protocol

---

[1] Defendants accept the SAC's *well-pleaded* allegations as true only for the purposes of the portions of this motion brought under Fed. R. Civ. P. 12(b)(6). Documents relied on in the SAC may be considered on this motion. *See Aguilera v. Ducart*, No. 18-CV-03389-HSG, 2019 WL 4168892, at *2 (N.D. Cal. Sept. 3, 2019).

[2] Lead Plaintiff incorrectly alleges that TFL is based in Seoul, Korea and headquartered in Singapore. This error by Lead Plaintiff does not matter because TFL is not domiciled in the U.S.

[3] Unless otherwise stated in citations, footnotes, quotations, and citations are omitted and emphases are as in the original.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   adjusts the supply of UST in response to changes in demand to keep its price stable. *Id*. at 13.

2   This depends on LUNA, the token used by the protocol as the stabilizer for UST. SAC ¶¶ 61, 72.

3       The Terra Money Whitepaper further described how the supplies of UST and LUNA are

4   adjusted through transactions between users and Terra protocol smart contracts using a mint-burn

5   mechanism. Henkin Decl. Ex. A at 4. When UST falls below \$1, UST holders can burn their UST

6   tokens and receive (from the protocol itself, not TFL), \$1 of newly minted LUNA. *Id*. at 5-6.

7   When UST is valued above \$1, LUNA holders can mint new UST using the Terra protocol by

8   burning \$1 worth of LUNA. *Id*. Because the protocol was designed so that users can profit by

9   burning UST when priced below \$1 and minting UST when priced above \$1, users are

10   incentivized to interact with the protocol (not TFL) to decrease and increase the supply of UST

11   and LUNA as needed to normalize the price of UST relative to \$1. *Id*.

12       The source code for the Terra Protocol is and was publicly available: The code and its

13   history of changes reside in a GitHub repository and can and could be examined by anyone

14   interested in reviewing it or analyzing its function or potential vulnerabilities. *See*

15   https://github.com/terra-money/core (last visited May 1, 2023). Lead Plaintiff does not

16   allege that the code running the protocol at any time was other than what was publicly disclosed.

17       <u>Anchor</u>: In March 2021, TFL announced the launch of the Anchor Protocol. SAC ¶ 69. In

18   June 2020, prior to launching Anchor, TFL published the "Anchor Whitepaper," SAC ¶¶ 71, 121;

19   Henkin Decl. Ex. C, which fully disclosed Anchor's structure and functionality to prospective

20   users. The Anchor Whitepaper explained how the protocol accepts UST deposits from staking

21   users and lends out UST deposits to users who wish to borrow UST, and those borrowers pledge

22   digital assets to the protocol as collateral for the loans. Henkin Decl. Ex. C at 1. The yield earned

23   by the protocol from its programmatic use of that collateral is paid to the staking users as

24   "interest." *Id*. at 1, 4. Staking users can make instant withdrawals and their staked tokens are

25   protected in two ways: (1) The protocol requires all loans to be over-collateralized and (2) loans

26   at risk of violating collateral requirements are immediately called via a liquidation mechanism—

27   third parties are incentivized to pay off the at-risk loans in exchange for the collateral plus a fee.

28

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    *Id.* at 6-7. Since the Anchor Whitepaper was published the protocol was updated and changed,

2    which changes and updates were announced on the Anchor website and other online platforms.

3    The Anchor Protocol offered staking users 20% annual "interest" on their staked tokens

4    subject to certain terms and conditions. SAC ¶¶ 6, 70, 122. The Anchor TOS, published on the

5    Anchor website, warned that the "Rate" was a "forward-looking projection" and not a guarantee.

6    Amani Decl. Ex. A at 5. And the Anchor TOS expressly warned that "[e]ven if the Rate is

7    achieved as projected, you may still suffer a financial loss in fiat-denominated terms if the fiat-

8    denominated value of the relevant tokens (your deposit and any tokens allocated or distributed to

9    you pursuant to the Rate) declines during the deposit period." *Id.* Lead Plaintiff does not allege

10   that any Anchor user (a) failed to receive the disclosed "interest rate" on staked tokens or (b) lost

11   any staked tokens due to the operation of the Anchor Protocol; rather, Lead Plaintiff alleges

12   losses due to declines in the market (*i.e.*, "fiat-denominated") values of UST and LUNA.

13   The source code for the Anchor Protocol is and was publicly available; as explained in the

14   Anchor TOS, the Anchor Protocol "is comprised entirely of open-source software running on the

15   public Terra blockchain and is not [TFL's] proprietary property." *Id.* ¶ 7. The code and its history

16   of changes reside in a GitHub repository and can and could be examined by anyone interested in

17   reviewing it or analyzing its function or potential vulnerabilities. *See* https://github.com/Anchor-

18   Protocol (last visited May 3, 2023). Lead Plaintiff does not allege that the code running the

19   Anchor Protocol at any time was other than what had been publicly disclosed.

20   Mirror: In December 2020, TFL announced the launch of the Mirror Protocol. SAC ¶ 69.

21   Mirror allowed users to choose any real-world asset with a live price feed and create a digital

22   asset that mirrored its price movements. SAC ¶¶ 63-64; Henkin Decl. Ex. D at C.3.1. Users

23   created mirrored assets, or "mAssets," referencing a range of financial assets, including U.S.

24   equities, indices, and other cryptocurrencies. mAssets could be traded in peer-to-peer transactions

25   on trading platforms developed by third parties. The community of Mirror users decided

26   collectively which mAssets to create. Governance proposals were made to whitelist new mAssets,

27   with proposals that gained the necessary community support passing. Users who staked MIR

28   tokens (Mirror's governance token) could vote on proposals. The protocol granted MIR tokens to

users for undertaking activity beneficial to the protocol, such as providing liquidity for mAsset

trading and voting on governance proposals.

The Risk of a UST Depeg is Debated Publicly: In May 2021, the market price of UST

declined from its peg but recovered. SAC ¶¶ 191, 199. As Lead Plaintiff concedes, a robust public

debate followed as to whether UST could lose its peg and not recover:

- In July 2021, a British economist publicly argued that algorithmic stablecoin models such as UST's could not defend against a bank run. SAC ¶ 45; *see also* Ryan Clements, *Built to Fail: The Inherent Fragility of Algorithmic Stablecoins*, 11 Wake Forest L. Rev. Online 131 (2021) http://www.wakeforestlawreview.com/2021/10/built-to-fail-the-inherent-fragility-of-algorithmic-stablecoins/.

- In December 2021, an engineer at MakerDAO, creator of the DAI stablecoin, publicly argued that "UST will collapse in a death spiral with LUNA hyper-inflating to try to cover the peg." SAC ¶ 46.

- Numerous articles appeared in journals and news media regarding the risks associated with UST and algorithmic stablecoins generally. *See, e.g.*, Alexander Osipovich, *Cutting-Edge Crypto Coins Tout Stability. Critics Call Them Dangerous*, Wall Street Journal (April 18, 2022), https://www.wsj.com/articles/cutting-edge-crypto-coins-tout-stability-critics-call-them-dangerous-11650226597?mod=itp_wsj&ru=yahoo; David Z. Morris, *"Built to Fail": Why TerraUSD's Growth is Giving Finance Experts Nightmares*, Coindesk (April 22, 2022), https://www.coindesk.com/layer2/2022/04/22/built-to-fail-why-terrausds-growth-is-giving-finance-experts-nightmares/.

LFG Is Formed: In January 2022, the Luna Foundation Guard ("LFG") was formed to

help address the risk that UST might materially lose its peg and require additional support to

prevent a more significant collapse. SAC ¶¶ 48-52. LFG is a non-profit organization incorporated

and headquartered in Singapore. SAC ¶¶ 48, 50. On January 19, 2022, LFG announced its "first

prerogative is to focus on building reserves to better safeguard the UST peg during adverse

market conditions." SAC ¶ 48-52; Henkin Decl. Ex. E at 1. Mr. Kwon emphasized the importance

of LFG's "mandate to continuously support the peg stability of Terra's stablecoins" and LFG

confirmed that it would "prioritize the peg stability and sustainability of" UST. *Id.*[4]

---

[4] Although UST was structured to incentivize users to engage in arbitrage trades with the Terra protocol to support the peg, LFG acknowledged that "[o]ne of the common criticisms of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

May 2022 Depeg: In May 2022, the disclosed risk that had been publicly debated for months or more materialized. UST experienced a market event, lost its peg, and failed to recover. On May 7, 2022, a massive selloff of both UST and LUNA occurred and by May 25, 2022, both coins had lost nearly all their value. SAC ¶¶ 158-62. While this was happening, and as it had promised to do, LFG expended roughly $2.8 billion to defend the UST peg. Henkin Decl. Ex. F. TFL also spent hundreds of millions of dollars of its own trying to defend the peg. *See id.* Ex. G.

U.S. Litigations: On June 17, 2022, this action was filed. Five competing motions, each to appoint a single person as lead plaintiff and a single firm as lead counsel, were filed on August 19, 2022. *See* ECF Nos. 19, 24, 25, 28, and 32. Throughout the briefing of those motions, no movant sought appointment of more than one lead plaintiff or more than one lead counsel. On December 13, 2022, this Court entered an order appointing Michael Tobias as sole lead plaintiff and the Rosen Law Firm as sole lead counsel. *See* ECF No. 73. No one sought court approval to include additional plaintiffs or law firms to represent the proposed class in this case.[5]

Despite this Court's order appointing one lead plaintiff and one lead counsel (ECF No. 73), the SAC purports to be brought by "Lead Plaintiff Michael Tobias and named plaintiff Nick Patterson" (SAC at p. 1) by the Rosen Law Firm as "*Lead Counsel for Lead Plaintiffs and the*

---

algorithmic stablecoins is their reflexive nature during extreme volatility, where the arbitrage incentives to bring the peg back to parity can potentially deteriorate." Henkin Decl. Ex. H at 1. LFG explained that the reserve fund would "provide[] an additional avenue to maintain the stability of the peg," as "[t]he Reserve assets can be utilized in instances where protracted market sell-offs deter buyers from restoring the UST peg's parity and deteriorate the Terra protocol's open market arbitrage incentives." *Id.; see also* Henkin Decl. Ex. I at 1 ("The premise of the UST Reserve is to provide a backstop against UST peg deviations in instances of sharp contractions of UST demand exogenous to Terra's algorithmic model.").

[5] On August 25, 2022, Matthew Albright, a member of the proposed class in this case, filed a mostly identical complaint in the United States District Court for the Southern District of New York. *See Albright v. Terraform Labs, Pte. Ltd, et al.*, Case No. 1:22-cv-07281-JSR (S.D.N.Y.), ECF No. 1. On November 11, 2022, Albright filed an amended complaint. *Albright*, ECF No. 42. The parties fully briefed motions to dismiss Albright's amended complaint, and oral argument on those motions was scheduled for January 11, 2023. However, the week before argument it came to light that Albright had not lost money at all on UST and LUNA—*he made $35,000* on a total of $20,067 purchases of UST and LUNA, all after the depeg had happened (a nearly 75% profit in just a few days), and he thus lacked Article III standing to sue. *See Albright*, ECF No. 78. On January 9, 2023, Albright voluntarily dismissed that case. *See id.* ECF No. 79.

*Putative Class"* and Scott+Scott (Patterson's original counsel) as "*Additional Counsel*" (SAC at p. 89). But neither Patterson (who was not appointed lead plaintiff by this Court) nor Scott+Scott (which was not approved by this Court for any role in the case) have any authority to act in this case. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Mr. Tobias selected the Rosen Law Firm, not Scott+Scott, and no one asked the Court to approve Scott+Scott remaining involved in this case.[6]

The SAC's definition of "Terra Tokens" is wrong. UST and LUNA are companion tokens, "ANC" tokens are the native governance tokens of the Anchor Protocol, and "MIR" tokens are the native governance tokens of the Mirror Protocol; Anchor and Mirror were developed by TFL but are governed by their communities of governance token holders. SAC ⁋ 61. "aUST" tokens are created by the Anchor Protocol when UST is deposited into the Anchor Protocol—they are used to reclaim deposited UST from the Anchor Protocol. *Id.*[7] But the SAC also claims that "vUST," "$WHALE," "ASTRO," "APOLLO," and "XDEFI" are "Terra Tokens." They are not: "$WHALE" is the governance token of the White Whale DeFi system, which was neither created nor run by Defendants. *See* https://whitewhale.money/LitepaperV2.pdf at 12. "vUST" was a token issued by White Whale for using UST in *that* protocol. *See* https://twitter.com/whitewhaledefi/status/1491493034021855238?lang=en. "ASTRO" is the native token of the Astroport system, which was neither created nor run by Defendants. *See* https://astroport.fi/en. "APOLLO" was the token of the Apollo DAO, a series of projects also not built by Defendants. *See* https://articles.apollo.farm/. And "XDEFI" is the native token for the

---

[6] Contemporaneous documents from Twitter and a Discord group called the "UST Restitution Group," a public Discord group set up by "FatManTerra" for UST and LUNA purchasers to talk to each other about filing lawsuits show developments relating to this lawsuit that are not reflected in the lead plaintiff motions. FatManTerra appears to be the driving force behind this litigation, having begun preparations for it in late May 2022. *See* Henkin Decl. Ex. B. He apparently selected Scott+Scott to bring this case. *See* Henkin Decl. Ex. O. And when he thought that Roche Freedman had "won" lead plaintiff and lead counsel, he told the Discord group that "Scott+Scott will be working under them," *see* Henkin Decl. Ex. P, suggesting that an agreement in violation of the PSLRA had been reached in September 2022. Roche Freedman, of course, is the firm that was involved with the Kyle Roche scandal (ECF No. 43) and whose lead plaintiff candidate later withdrew entirely (ECF No. 70), and it appears that the Scott+Scott arrangement followed that withdrawal to the Rosen Firm, *see* Henkin Decl. Ex. Q.

[7] "$MINE" is the native governance token for the Pylon Protocol, a separate protocol developed by TFL. *See* https://docs.pylon.money/.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

XDEFI wallet system designed by Delphi Digital, not Defendants. *See*
https://www.xdefi.io/article/tokenomics-xdefi-token-economics/.

## STANDARDS OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the Court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). Courts may consider documents beyond the four corners of the complaint in determining whether personal jurisdiction exists, and a plaintiff may not "simply rest on the bare allegations of its complaint." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Schwarzenegger,* 374 F.3d at 800. Bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations are not sufficient. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

Only a complaint that states a plausible claim for relief can survive a Rule 12(b)(6) motion to dismiss, and determining the plausibility of a complaint "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint must contain enough well-pleaded facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The rules demand more than "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

If the Court agrees that it lacks personal jurisdiction over TFL and Mr. Kwon, it need not reach any other arguments. If it disagrees with respect to personal jurisdiction, it should next determine whether to compel arbitration and strike the class claims pursuant to the Anchor TOS. Only if any claims remain against TFL or Mr. Kwon would the Court need to address whether those claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## I.    LEAD PLAINTIFF CANNOT RELY ON THE SEC'S ALLEGATIONS

Lead Plaintiff purports to "incorporate[] by reference in its entirety herein" a complaint filed by the SEC in the United States District Court for the Southern District of New York

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

without any independent investigation of the allegations therein. *See* SAC ¶ 2. This violates Rule 8(a), Rule 11, and *Iqbal*. Rule 11 requires an attorney, prior to filing a complaint, "to conduct a reasonable factual investigation." *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004 (N.D. Cal. 2008). Downloading the SEC complaint, attaching it to the SAC as an exhibit, and pasting the SEC's allegations into the SAC verbatim (or otherwise citing them) approximately *69 times* (*e.g.,* SAC ¶¶ 27-34) is not an investigation at all, let alone a "reasonable factual investigation." The SEC complaint was filed 7 days before Lead Plaintiff filed the SAC, and Lead Plaintiff does not have the pre-filing investigative powers the SEC does; in fact, the PSLRA precludes pre-filing discovery. *See* 15 U.S.C. § 78u-4(b)(3)(B). Relying on assertions made by the SEC in a separate proceeding also violates Rule 8(a) and *Iqbal*.[8] The SEC allegations and complaint should thus be stricken from the SAC. *See Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d at 1006 (striking allegations based on SEC complaint without independent investigation).[9]

## II.     THE SAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Lead Plaintiff's jurisdictional allegations are based primarily on arguments made by the SEC in connection with the SEC's investigation of the Mirror Protocol and MIR tokens. *See*, *e.g.*, SAC ¶ 41. Lead Plaintiff cannot rely on assertions made by a non-party in an entirely separate proceeding. *See supra* Point I. Moreover, the SEC's jurisdictional assertions were made in the context of a proceeding to enforce investigative subpoenas, not a plenary action. But even putting these issues aside, the SAC does not plead personal jurisdiction over TFL or Mr. Kwon.

---

[8] *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d at 1005-06; *see also Aaron v. Durrani*, Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471, at *2 (S.D. Ohio Mar. 13, 2014); *FIA Card Servs., N.A. v. Karagianis (In re Karagianis)*, Adversary No. 09-1056-JMD, 2009 WL 4738188, at *4 (Bankr. D.N.H. Dec. 4, 2009).

[9] The claims in the SEC complaint fail for the reasons set forth in Defendants' motion to dismiss that complaint with prejudice. *See* Henkin Decl. Ex. V. Under the sauce-for-the-goose rule, if the Court permits Lead Plaintiff to rely on the SEC complaint, it must also examine Defendants' motion to dismiss that complaint.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

### A.     Defendants Are Not Subject to General Jurisdiction

The Court may assert general jurisdiction over a foreign corporation only when the corporation's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in exceptional cases may general jurisdiction extend over a corporation beyond where it is domiciled. *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1003 (N.D. Cal. 2020). Just conducting business or having employees in the forum is not enough. *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020). Because TFL is incorporated and headquartered in Singapore (SAC ⁋ 17) and there are no other allegations suggesting bases for general jurisdiction over TFL, the Court lacks general jurisdiction over TFL.

Because "the paradigm forum for the exercise of general jurisdiction is the individual's domicile," *Goodyear*, 564 U.S. at 924, general jurisdiction does not apply to individuals who are not U.S. residents.[10] Lead Plaintiff's concession that Mr. Kwon is not a U.S. resident (SAC ⁋ 23) and failure to allege that he transacted business in the U.S. in his individual capacity thus preclude the assertion of general jurisdiction over Mr. Kwon.[11]

### B.     Defendants Are Not Subject to Specific Jurisdiction

Specific jurisdiction is predicated on an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919. Due process requirements prevent a court from exercising personal jurisdiction over a defendant unless the defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not

---

[10] See *Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308, at *9, *13-14 (N.D. Cal. June 8, 2018); *Ivy Bridge Univ., LLC v. Higher Learning Comm'n*, No. 15-CV-02187-SC, 2015 WL 6555428, at *3 (N.D. Cal. Oct. 28, 2015).

[11] *See Martensen v. Koch*, 942 F. Supp. 2d 983, 992 (N.D. Cal. 2013), *on reconsideration in part*, No. C-12-05257 JSC, 2013 WL 4734000 (N.D. Cal. Sep. 3, 2013).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A non-resident defendant must purposefully *direct* his activities or consummate some transaction with the forum or resident thereof or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, the claim must be one which arises out of or relates to those forum-related activities, and the exercise of jurisdiction must be reasonable. *See Schwarzenegger*, 374 F.3d at 802. Because all claims in the SAC sound in tort, the specific jurisdiction analysis focuses on "purposeful direction." *See 19 Tao Vega LLC v. Holo Ltd.*, No. C 19-5640 SBA, 2019 WL 9607733, at *4 (N.D. Cal. Dec. 17, 2019). In order to show purposeful direction, a plaintiff must show that each defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. The SAC does not satisfy those requirements.

Lead Plaintiff makes boilerplate allegations that Defendants "have continuous and systematic contacts with this District, do substantial business in this State and within this District, and engage in unlawful practices in this District as described in this Complaint and the SEC Compl., subjecting themselves to personal jurisdiction in this District[.]" SAC ⁋ 25.[12] He further asserts that TFL "actively conducted business in the United States and within this District" because it had employees in the U.S., distributed white papers regarding the Anchor Protocol, allegedly made misleading statements to the public, offered and sold products to U.S.-based investors, and received funding from this District. SAC ⁋⁋ 26-34, 41. That is not sufficient.[13]

In an attempt to find a jurisdictional "hook," Lead Plaintiff cites one trip by Mr. Kwon to New York where Mr. Kwon spoke on a panel entitled "The Multi-Chain Future is Here" and

---

[12] Much of the SAC is pure speculation, such as Lead Plaintiff's allegation that "TFL's origins are firmly rooted in California and began, *upon information and belief*, during Defendant Kwon's time at Stanford." SAC ⁋ 36 (emphasis added). The SAC pleads nothing to support that assertion.

[13] To the extent Lead Plaintiff attempts to impute TFL's purported contacts with the U.S. to Mr. Kwon, (a) as demonstrated above those alleged contacts do not support jurisdiction and (b) even if they did, imputing them to Mr. Kwon for jurisdictional purposes is improper. *See Davis v. Metro Prods., Inc.,* 885 F.2d 515, 520 (9th Cir. 1989).

1   makes vague allegations about meetings in San Francisco.[14] But Lead Plaintiff fails to connect

2   Mr. Kwon's comments during that panel with the allegations in the SAC, which precludes relying

3   on it for specific jurisdiction. *See 19 Tao Vega LLC*, 2019 WL 9607733, at *5; *Brown v. 140 NM*

4   *LLC*, No. 17-CV-05782-JSW, 2019 WL 118425, at *9 (N.D. Cal. Jan. 7, 2019). And the SAC

5   alleges nothing specific about the alleged San Francisco meetings. These allegations do not

6   support specific jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 790 (1984).

7          Lead Plaintiff also alleges that whitepapers, prepared and posted outside of the United

8   States, were available to and impacted residents in this District. SAC ⁋ 26. But the mere

9   possibility that someone in this District may have had access to whitepapers published on the

10  Internet outside the U.S., *but not specifically directed at the U.S.,* does not support specific

11  jurisdiction over Defendants. *See Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 68 (9th

12  Cir. 2021). Lead Plaintiff's allegations about tweets or media statements that Mr. Kwon made

13  about TFL which may have been viewable in the U.S. (SAC ⁋ 35) are also insufficient to

14  establish specific jurisdiction. *See Nobelbiz, Inc. v. Veracity Networks, LLC*, No. 13-CV-2518

15  YGR, 2013 WL 5425101, at *3 (N.D. Cal. Sept. 27, 2013). Nor does the mere fact that TFL's

16  web applications were usable in the U.S. or that UST, LUNA, and Anchor were discussed in U.S.

17  media (SAC ⁋⁋ 25-26, 42) support specific jurisdiction. Mere operation of a website is not

18  sufficient to demonstrate express aiming at a forum; the Ninth Circuit requires more than simply

19  allowing a website to be accessible in the forum. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201,

20  1210 (9th Cir. 2020). These allegations do not support specific jurisdiction.

21         Although Lead Plaintiff alleges that TFL received funding from some entities located

22  within this District (SAC ⁋⁋ 36-37), that also does not support specific jurisdiction. *See 19 Tao*

23  *Vega LLC,* 2019 WL 9607733, at *5. Nor do the few contacts alleged between TFL and U.S.

24  resident employees (SAC ⁋ 41) support specific jurisdiction, because those alleged contacts are

25  unrelated to this matter. With the exception of one former employee (Nicholas Platias), none are

26

27  ───────────────
    [14] SAC ⁋ 83; *Cosmos Around the World – Catch the Highlights, Messari Mainnet 2021, New York*

28  (Nov. 23, 2021), https://blog.cosmos.network/cosmos-around-the-world-catch-the-highlights-
    2c1825599190 (last visited May 2, 2023).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  identified as having participated in any alleged scheme within the U.S., and allegations relating to

2  Platias are insufficient.[15]

3      For the foregoing reasons, this Court lacks personal jurisdiction over Defendants.

4  **III.**    <u>**THE SAC MUST BE DISMISSED PURSUANT TO THE FAA AND THE**</u>

5      <u>**DOCTRINE OF FORUM NON CONVENIENS**</u>

6      Through the Anchor TOS, which binds all users who connected digital wallets to the

7  Anchor Protocol, Lead Plaintiff waived the right to pursue class claims, selected Singapore law as

8  the governing law,[16] and agreed to arbitrate claims against TFL and Mr. Kwon in Singapore. *See*

9  Amani Decl. Ex. A ¶¶ 14, 15, 17-20.

10      A strong federal policy favors arbitration, and that federal policy "applies with equal force

11  to international contracts." *Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp*., 819

12  F.2d 247, 249 (9th Cir. 1987). An arbitration provision containing an international arbitration

13  clause is governed by the Convention, which must be enforced according to its terms pursuant to

14  9 U.S.C. §§ 201-208; *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd*., 109 F. Supp. 2d 1236,

15  1241 (S.D. Cal. 2000). Federal courts also recognize that foreign arbitration clauses are a subset

16  of foreign forum selection clauses in general. *Mitsubishi Motors Corp. v. Soler Chrysler-*

17  *Plymouth, Inc*., 473 U.S. 614, 630-32 (1985); *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519

18  (1974); *Fireman's Fund Ins. Co. v. M.V. DSR Atl*., 131 F.3d 1336, 1339 (9th Cir. 1997). A

19  modified *forum non conveniens* analysis is thus the appropriate way to enforce a forum-selection

20  clause pointing to a state or foreign arbitral forum.[17]

21

22  [15] Lead Plaintiff alleges that Platias, as TFL's Head of Research, made false and/or misleading

23  statements regarding UST, LUNA, and the Anchor Protocol; concealed information regarding
Mr. Kwon's alleged prior stablecoin project; and created LFG. SAC ⁋ 26. But nowhere in those

24  allegations is there any claim that Mr. Platias engaged in such activities within the U.S., the bare
minimum necessary to try to assert specific jurisdiction. *Compare* SAC ⁋⁋ 26 & 35 *with Jeong v.*

25  *Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *10 (N.D. Cal. Jan. 19, 2022).

    [16] This disposes of the SAC's allegation that California law applies (SAC ¶¶ 238-242).

26  [17] *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013); *Finsa*

27  *Portafolios, S.A. DE C.V. v. OpenGate Cap., LLC*, 769 F. App'x 429, 431 (9th Cir. 2019); *Adema*
*Techs., Inc. v. Wacker Chem. Corp*., 657 F. App'x 661, 662 (9th Cir. 2016); *Oat Sols., LLC v.*

28  *Rihko*, No. 216CV01046CASEX, 2016 WL 6602557, at *3–4 (C.D. Cal. Nov. 7, 2016); *see also*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Lead Plaintiff agreed to the Anchor TOS by connecting to and using the Anchor Protocol. Amani Decl. ¶¶ 2-5. Accordingly, because a *forum non conveniens* analysis calls for dismissal of all claims in favor of arbitration in Singapore, the action should be dismissed. Alternatively, the Court should compel arbitration pursuant to the Convention and the FAA. 9 U.S.C. § 206.

A.    **There Is An Enforceable Agreement To Arbitrate.**

1.    **Lead Plaintiff Assented to the Forum Selection Clause.**

Courts conclude that a valid arbitration agreement exists when provided with proof that users were required to affirmatively agree to terms as part of a standard online process during the relevant time period.[18] Lead Plaintiff affirmatively asserts that he purchased UST and staked it on the Anchor Protocol (ECF 19 at 6), and he is thus bound by the Anchor TOS.

To use the Interface to deposit UST into Anchor, a prospective user must connect a digital wallet to the Interface. Amani Decl. ¶ 2. Each prospective Anchor user is presented with a link to the Anchor TOS that they must accept in order to connect their digital wallet to the Interface. *Id.* ¶ 2. No such user may use the Anchor Protocol without agreeing to the Anchor TOS. *Id.* ¶ 3.

When Lead Plaintiff connected to Anchor,[19] TFL required potential users, including Lead Plaintiff, to accept the Anchor TOS by clicking a button immediately above an acknowledgement stating that: "By connecting, I accept Anchor's Terms of Service" on the wallet connection form presented online. *Id.* ¶ 3. Before accepting the Anchor TOS, he had the opportunity to review the Anchor TOS via a hyperlink contained within the acceptance prompt. *Id.* ¶ 4. The link to the

*Azod v. Robinson*, No. CV 16-440-JFW (EX), 2016 WL 6603950, at *2 (C.D. Cal. May 10, 2016) ("Defendants' Motion to Compel Arbitration is GRANTED ... . [T]he Court concludes that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atlantic Marine Construction Co., Inc. v. United States District Court*, 134 S. Ct. 568, 580 (2013). Because there are no extraordinary or unusual circumstances in this case, the forum selection clause controls and this case is DISMISSED on forum non conveniens grounds.").

[18] *See Crypto Asset Fund, LLC v. MedCredits, Inc.*, No. 19cv1869-LAB (MDD), 2020 WL 1506220, at *4 (S.D. Cal. Mar. 30, 2020); *Houtchens v. Google, LLC*, No. 22-cv-02638-BLF, 2023 WL 122393, *3 (N.D. Cal. Jan. 6, 2023); *Roberts v. Obelisk, Inc.*, 18CV2898-LAB (BGS), 2019 WL 1902605, at *6 (S.D. Cal. Apr. 29, 2019).

[19] Lead Plaintiff claims to have purchased UST and staked it in Anchor on or after April 6, 2022. *See* ECF 19 at 6; ECF 19-3 at 2.

Anchor TOS and fact of agreement by connecting to and using Anchor is made clear through the font and icons used. The connection process explains that the user is going to "Connect Wallet" through clear text at the top. *Id.* It then informs the user that "By connecting, I accept Anchor's Terms of Service" underneath the button that a user would click to connect the account. *Id.* The phrase "Terms of Service" is set apart from the other gray text by a bright green font, indicating a hyperlink that when clicked directs users to the complete Anchor TOS. *Id.*

The Anchor TOS mandates arbitration of all disputes with TFL. The third paragraph of the Anchor TOS advises users in underlined text to "Please read this Agreement carefully," and explains in that same paragraph that "[t]his Agreement contains a mandatory individual arbitration and class action jury trial waiver provision … ." Amani Decl. Ex. A at 1. That portion of the Anchor TOS goes on to require parties (including Lead Plaintiff) to negotiate in good faith to try to resolve all claims before resorting to arbitration in Singapore. *See id.*

The Anchor TOS also includes a clear Class Action and Jury Trial Waiver, pursuant to which users waive their right to participate in a class action lawsuit against TFL and waive the right to trial by jury. *See id.* ¶ 19. That waiver is initially referenced on the first page of the Anchor TOS and introduced by the boldface heading "Class Action and Jury Trial Waiver." Lead Plaintiff thus agreed to arbitration in Singapore and waived class claims and a jury trial.

## 2. The Forum Selection Clause is Valid and Enforceable.

A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Fireman's Fund*, 131 F.3d at 1338; *see also Finsa Portafolios*, 769 F. App'x at 430–31. A plaintiff must meet a "heavy burden" to establish that such a clause is invalid. *See Krystal, Inc. v. China United Transp., Inc.*, No. CV 16-02406-RSWL-SPX, 2017 WL 6940544, at *6 (C.D. Cal. Apr. 12, 2017). Likewise, arbitration agreements governed by the FAA are presumed valid and enforceable. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987); *McIntosh v. Adventist Health*, No. C 12–05589, 2013 WL 968293, *2 (N.D. Cal. Mar. 12, 2013).

Courts thus refuse to enforce forum-selection clauses only under extraordinary circumstances, and convenience of the parties is not such a circumstance. *See Adema Techs.*, 657

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    F. App'x at 662. A party resisting a forum-selection clause must "clearly show that enforcement

2    would be unreasonable and unjust." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972).

3    "Enforcement is unreasonable and unjust if the clause results from fraud or overreaching; if

4    enforcing the clause would effectively deprive [plaintiff] of its day in court; or if 'enforcement

5    would contravene a strong public policy' of California." *Adema Techs.*, 657 F. App'x at 663.

6         Lead Plaintiff cannot meet this burden. The SAC does not plead fraud or overreaching in

7    connection with the Anchor TOS; it was Lead Plaintiff's choice to use Anchor and accept or

8    reject the Anchor TOS before connecting his wallet to the Interface. The Anchor TOS highlighted

9    the forum-selection clause in its introductory paragraphs, so there is no plausible argument that it

10   was a surprise. And as demonstrated below, enforcement would not be unreasonable or unjust.

11        **a)**     **Application of the Public Interest Factors**

12        Although a traditional *forum non conveniens* analysis involves a consideration of "a

13   nonexhaustive and nonexclusive list of" the parties' private interests alongside public interests,

14   the review is modified when an arbitration provision or other forum selection clause is at issue.

15   *Atl. Marine*, 571 U.S. at 53, 64. Because parties to forum-selection clauses waive the right to

16   challenge the preselected forum as inconvenient for themselves or their witnesses, or for their

17   pursuit of the litigation, courts must deem the private-interest factors to weigh entirely in favor of

18   the preselected forum. *See Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-

19   CV-00920-LB, 2016 WL 4259126, at *3 (N.D. Cal. Aug. 12, 2016). The public interest factors

20   considered when analyzing an arbitration agreement calling for a foreign forum are: "(1) the local

21   interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local

22   courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to

23   a particular forum." *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009).

24        As to the first and fifth considerations, TFL is a Singaporean company and Lead Plaintiff

25   claims to be a citizen and resident of New York (SAC ¶¶ 15, 17); this District has no localized

26   interest in the dispute. The second consideration weighs in favor of arbitration because the chosen

27   law (Singaporean law) is likely unfamiliar to the Court. The FAA "allows parties to an arbitration

28   contract considerable latitude to choose what law governs some or all of its provisions, including

the law governing enforceability of a class-arbitration waiver." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53-54 (2015). Consistent with this principle, the Anchor TOS contain a Singapore choice-of-law provision. Amani Decl. Ex. A ¶ 18. This factor thus weighs in favor of arbitration.

The third and fourth factors—court congestion and burden on local courts and juries— support arbitration. The Singapore International Arbitration Centre is a respected international arbitration center that handles 400-500 cases annually, with its most recent annual report tallying 469 cases for 2021. By comparison, for the 12-month period ending June 30, 2022, this District had 12,453 pending cases.[20] The fifth factor, the costs of resolving a dispute unrelated to a particular forum, also favors arbitration, because a New Yorker's dispute with non-U.S. defendants has nothing to do with this District. Accordingly, the public *forum non conveniens* factors all support compelling arbitration pursuant to the Anchor TOS.[21]

**b)**     **Lead Plaintiff's Claims Fall Within the Scope of the Agreement to Arbitrate**[22]

A party resisting arbitration bears the burden of showing that the arbitration agreement does not encompass its claims. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92

---

[20] *Compare* https://siac.org.sg/wp-content/uploads/2022/06/SIAC-AR2021-FinalFA.pdf *with* https://www.uscourts.gov/file/45196/download.

[21] *See Donovan v. Coinbase Global, Inc.*, 2023 WL 2124776, at *2-5 (N.D. Cal. Jan. 6, 2023) (Thompson, J.); *see also Nguyen v. OKCoin USA, Inc.*, 2023 WL 2095926, at *2-3 (N.D. Cal. Feb. 17, 2023) (compelling arbitration of claims relating to UST as against OKCoin); *Pearl v. Coinbase Global. Inc.*, 2023 WL 1769190, at *2-8 (N.D. Cal. Feb. 3, 2023) (compelling arbitration of claims relating to UST as against Coinbase).

[22] To the extent there is any dispute regarding the scope of the arbitration clause, that dispute is for the arbitral forum to resolve. *See Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 954 (N.D. Cal. 2015), *abrogated on other grounds, Henry Schein Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019). The SIAC rules require the same result: SIAC Rule 28.1 states that the SIAC Court of Arbitration has the power to resolve questions regarding, or challenges to, the "existence or validity of the arbitration agreement or to the competence of SIAC" and Rule 28.2 states that the "Tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement." *See* SIAC Rules 2016, SINGAPORE INTERNATIONAL ARBITRATION CENTRE (last visited Apr. 4, 2023), https://siac.org.sg/siac-rules-2016. The incorporation of these arbitral rules is a clear and unmistakable delegation of authority to the arbitrator to resolve such disputes. *Accord Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

(2000). The Anchor TOS requires "[a]ny claim or controversy arising out of or relating to the Interface, this Agreement, including any question regarding this Agreement's existence, validity, or termination, or any other acts or omissions for which you may contend that we [TFL] are liable, including (but not limited to) any claim or controversy as to arbitrability" to be arbitrated. Amani Decl. Ex. A ¶ 18. Because all of Lead Plaintiff's claims relate to and arise out of his use of UST with Anchor, Lead Plaintiff must arbitrate all claims asserted in the SAC.

### c)   The Agreement to Arbitrate Applies to Mr. Kwon

Lead Plaintiff's agreement to arbitrate also applies to the claims asserted against Mr. Kwon. Although Mr. Kwon is not an express signatory of the Anchor TOS, equitable estoppel and the principles of agency require arbitration of Lead Plaintiff's claims against Mr. Kwon.

A non-signatory can enforce a forum selection clause under theories of equitable estoppel and agency. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Equitable estoppel supports compelling arbitration between a signatory and a non-signatory in two situations. *First*, when the signatory to a contract with an arbitration clause must rely on the terms of the contract in asserting its claims against the nonsignatory, "the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 840 (N.D. Cal. 2007). *Second*, where a lawsuit against non-signatories is inherently bound up with claims against a signatory, courts compel arbitration to avoid denying the signatory the benefit of the arbitration clause and avoid duplicative litigation which undermines the efficiency of arbitration. *Id.* Otherwise, "unless the non-signatory is compelled to arbitrate, arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.*

The agency theory to compel arbitration also allows a non-signatory to compel arbitration as an agent of a signatory. "[A]gents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Id.*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Mr. Kwon is being sued because of his duties as an officer of TFL, a party to the Anchor TOS. Mr. Kwon is TFL's co-founder and was its CEO at all relevant times, and is alleged to have "exercised control over TFL and directed and/or authorized, directly or indirectly, the sale and/or solicitations of the Terra Tokens to the public." SAC ¶ 23. The SAC does not allege that Mr. Kwon took any actions independently or in his personal capacity, and in the majority of the causes of action, TFL and Mr. Kwon are lumped together as a single actor. Accordingly, the first element of the agency theory is satisfied.

The considerations for the second element of the agency theory, along with those for equitable estoppel, are also present. Many of the claims asserted against Mr. Kwon directly arise out of or relate to the Anchor TOS and each claim falls within the arbitration clause, which covers all claims asserted in the SAC. The Anchor TOS also contain a release of TFL and its "officers, directors, [and] employees" relating to the Interface and a limitation of liability for TFL and its "officers, directors, [and] employees." Amani Decl. Ex. A ¶¶ 16-17. As such, both TFL and Mr. Kwon will rely on multiple contractual defenses present in the Anchor TOS to defend against the same claims. Compelling arbitration as to TFL but not Mr. Kwon would result in parallel litigations concerning the same contractual provisions and operative facts, which would thwart the FAA's policy favoring arbitration. Accordingly, the principles of equitable estoppel and agency require Lead Plaintiff to arbitrate all claims against both TFL and Mr. Kwon.

### d) **The Class Waiver is Enforceable**

The Anchor TOS contain an express waiver of the right to pursue class claims, Amani Decl. Ex. A ¶ 19, which the FAA permits, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); Fed. R. Civ. P. 23(d)(1)(D). That waiver is referenced on the first page of the Anchor TOS and then introduced by the boldface heading "Class Action and Jury Trial Waiver." The class claims in the SAC must therefore be dismissed as against TFL and Mr. Kwon.

IV.     **THE SAC'S FEDERAL CLAIMS ARE IMPERMISSIBLY EXTRATERRITORIAL**

Federal securities law, the mail and wire fraud statutes, and RICO only apply domestically.[23] Lead Plaintiff's securities claims based on his acquisition of UST fail because the SAC does not allege that any of the protocols at issue were developed domestically, that any challenged statements by Defendants were made in the U.S., or that Lead Plaintiff's UST purchase was made in the U.S., which is fatal. *See Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).[24]

Lead Plaintiff's mail and wire fraud allegations (SAC ¶¶ 332, 336-341) are not sufficiently domestic. It is not enough that the SAC alleges in conclusory fashion that Defendants used mail and wires to communicate with and/or through U.S.-based counterparties, sent and received funds via U.S. wires, and employed some U.S. employees; allegations that racketeering conduct was directed from or to the United States are necessary.[25] Lead Plaintiff also has not alleged "domestic injury." Courts determine whether an alleged injury is "domestic injury" by looking at the location of the property at the time of the alleged injury. *City of Almaty*, 2018 WL 6074544, at *4-8. "Terra Tokens" are financial assets held in specific wallets. Lead Plaintiff's own allegations regarding the transfer of "Terra Tokens" and other forms of financial property evince his knowledge about such wallets. *E.g.*, SAC ¶¶ 3, n.3, 8, 61, 93, 179, 205. Because Lead Plaintiff fails to identify the location of any wallet containing the UST he claims he purchased, his allegations are not sufficient to survive a motion to dismiss. The SAC's federal claims should therefore be dismissed as impermissibly extraterritorial.

---

[23] *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 268-69, 273 (2010); *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 354 (2016); *City of Almaty v. Khrapunov*, No. CV 14-3650 FMO (CWX), 2018 WL 6074544, at *4-8 (C.D. Cal. Sept. 27, 2018), *aff'd*, 956 F.3d 1129 (9th Cir. 2020); *Petroleos Mexicanos v. SK Eng'g & Const. Co.*, 572 F. App'x 60, 61 (2d Cir. 2014); *Fire & Police Pension Ass'n of Colorado*, 368 F. Supp. 3d 681, 709-10 (S.D.N.Y. 2019); *Sullivan v. Barclays PLC*, 13-cv-2811 (PKC), 2017 WL 685570, at *33 (S.D.N.Y. Feb. 21, 2017).

[24] The claim that challenged statements were *accessible to* U.S.-based persons (SAC ¶ 82) changes nothing with respect to the application of *Morrison*. *See Parkcentral*, 63 F.3d at 201.

[25] *See Fund Liquidation Holdings LLC v. UBS AG*, 15 Civ. 5844 (GBD), 2021 WL 4482826, at *11 (S.D.N.Y. Sept. 30, 2021); *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 556 (S.D.N.Y. 2018).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    **V.      THE SAC DOES NOT PLEAD FEDERAL SECURITIES CLAIMS**

2          **A.      The "Terra Tokens" Are Not Securities**

3          The First through Fifth Causes of Action fail because Lead Plaintiff has not adequately

4    pled that any "Terra Token" is a security. As an initial matter, Lead Plaintiff's attempt to rely on

5    the SEC's allegations regarding the "Terra Tokens" being securities (SAC ¶ 78) fails because, as

6    demonstrated in Point I, Lead Plaintiff cannot rely on the SEC's allegations (which are wrong as

7    demonstrated in Henkin Decl. Ex. V). The effect of the SEC being wrong is that *SEC v. W.J.*

8    *Howey Co.*, 328 U.S. 293 (1946) does not apply to digital assets, which means that Lead Plaintiff

9    has no basis to allege that any "Terra Tokens" were securities.

10         Whether something is a security is determined by the text of the '33 and '34 Acts. Both

11   define "security" through functionally equivalent enumerated lists of instruments such as "stocks"

12   and "bonds." *See* 15 U.S.C. § 77b *et seq.*; *Reves v. Ernst & Young*, 494 U.S. 56, 61 n.1 (1990).

13   But neither contains any phrase that could be read to cover digital assets. Lead Plaintiff thus relies

14   on the catch-all term "investment contract," which appears in both statutes but is defined in

15   neither, and takes the position that whether a digital asset is a "security" should be decided using

16   the interpretation of "investment contract" set forth in *Howey* in 1946, decades before general

17   purpose computers and the mathematical concepts behind cryptocurrencies were available.

18                      **1.      The Proper Understanding of *Howey***

19         Before addressing why none of the "Terra Tokens" would satisfy the *Howey* test even if it

20   applied to them, it is important to examine what *Howey* was about, what the Supreme Court

21   actually decided, and how the SEC has previously explained that in connection with digital assets.

22         *Howey* involved a transaction that included (a) the sale of a land in an orange grove *plus*

23   (b) the seller's contractual promise to cultivate that land and give a share of profits *created by the*

24   *seller's cultivation* to the purchaser; the Supreme Court held that that *transaction* was an

25   "investment contract" and thus a security. *See* 328 U.S. at 295-96, 299. But the fact that an asset

26   is part of a transaction that is an investment contract does not make *the asset* a security. Indeed,

27   the Supreme Court explained that had the orange groves in *Howey* been resold on their own,

28   without the associated cultivation and profit rights, they would *not* have been securities. *See id.*;

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    *SEC v. Telegram Grp. Inc.*, 2020 WL 1547383, at *1 (S.D.N.Y. Apr. 1, 2020) (neither token

2    purchase agreement nor token was a security).

3         *Howey* requires a "contract." That is plain from the text of 15 U.S.C. §§ 77b(a)(1) and

4    78c(a)(10). And it is compelled by the meaning of "investment contract" that Congress imported

5    into the '33 and '34 Acts. Congress did not invent the term "investment contract;" it incorporated

6    a well-understood term from state blue sky laws whose meaning had been "crystallized" by prior

7    judicial interpretation of those laws and was "uniformly applied by state courts." *Howey*, 328

8    U.S. at 298; *see generally State v. Heath*, 153 S.E. 855, 857 (N.C. 1930) ("The term ['investment

9    contract'] implies the apprehension of an investment as well as of a contract."). By choosing that

10   term, Congress also imported the term's settled meaning. *See George v. McDonough*, 142 S. Ct.

11   1953, 1959 (2022). *Howey* explained that the "contract" requirement in that case was satisfied by

12   multiple agreements between the promoter and his purchasers, "land sales contracts, warranty

13   deeds and service contracts." 328 U.S. at 300.

14        This is the SEC's publicly-stated view of *Howey*. In 2018, the SEC's Director of the

15   Division of Corporate Finance stated that "the token … all by itself is not a security, *just as the

16   orange groves in Howey were not*," because "the digital asset itself is simply code" and whether it

17   is a security depends on how it is sold. *See* Henkin Decl. Ex. J (emphasis added). In 2019, then-

18   Chairman Clayton stated that "whether a digital asset is offered or sold as a security is not static

19   and does not strictly inhere to the instrument" and "[a] digital asset may be offered and sold

20   initially as a security ... but that designation may change over time … ." Henkin Decl. Ex. K.

21        One thing thus ties together all enumerated categories of "security": The presence of a

22   legal relationship voluntarily established by an identifiable legal entity acting as the "issuer" of

23   the security and various other parties who, from time to time, own that security. *See* Henkin Decl.

24   Ex. U at 62. IBM common stock is thus always a security because it was issued by IBM and

25   includes whatever obligations run from IBM to owners of IBM stock. But including digital assets

26   would require the federal securities laws to include the concept of a "security" that is not

27   dependent on an issuer, *see id*. at 12, which they do not do.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**2.**     <u>Lead Plaintiff Has Not Pled That Any "Terra Tokens" Are Securities</u>

Lead Plaintiff's first problem is that the SAC does not try to analyze any specific token under the *Howey* test—it just lumps them together and asserts that they are securities. *See* SAC ¶¶ 76-109.[26] This violates Rule 8(a) because the SAC does not contain a short and plain explanation of why any "Terra Token" is a security. Worse still, the SAC asserts that open market purchasers would not "reasonably" have understood that "Terra Tokens" were securities. SAC ¶¶ 110-118. The SAC's affirmative pleading that open market purchasers would *reasonably* have believed that "Terra Tokens" are *not* securities means the SAC does not plead that they are.

*Howey* also does not apply to secondary market transactions: Whatever a digital asset was when it came into being, a secondary market purchase or sale of that digital asset is not an investment contract. *See* Henkin Decl. Ex. U at 68-69. But all the SAC alleges is that "[e]very purchase of Terra Tokens by a member of the public is an investment contract," SAC ¶ 89, which is not what *Howey* held, not how the SEC views *Howey*, and is not enough to plead that any "purchase of Terra Tokens by a member of the public" (*id.*) was a security.

In any event, the relevant "Terra Tokens" were not securities. Although Lead Plaintiff makes no effort to address the relevant "Terra Tokens," Defendants will explain why the SAC does not satisfy the *Howey* test for any of them.

<u>UST and aUST</u>: UST are not investment contracts or any other type of security because stablecoins are currencies and currencies are specifically exempt from the federal securities laws. *See* 15 U.S.C §§ 78c(a)(10), 77b(a)(1). Like other currencies, UST served as a unit of account, a store of value, and a medium of exchange. Indeed, the expectation that UST would remain stable and not fluctuate significantly in value precludes alleging any expectation of "profit" from UST (as opposed to from an individual, extrinsic use of UST), which *Howey* made clear is essential to something being an "investment contract."

---

[26] The SAC also inappropriately seeks to rely on allegations about UST and LUNA made by the New York Attorney General in a state court complaint against the KuCoin exchange, in which Defendants are not even parties. SAC ¶ 103. This, too, is impermissible.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    An individual's decision to use Anchor could not have been the relevant transaction to be

2    examined under *Howey* because Anchor launched seven months *after* UST launched. UST was

3    never required to be deposited in Anchor, and vast quantities of UST were used for other

4    purposes. The only relationship an Anchor depositor had was with the protocol (and perhaps the

5    governance community), not Defendants. That means that UST purchasers who elected to deposit

6    their UST in Anchor were not invested in a common enterprise. A common enterprise can be

7    demonstrated through "horizontal commonality," the pooling of investor assets into an investment

8    such that investors share in profits and losses pro rata, or through "strict vertical commonality,"

9    the tying of the defendant's financial compensation to the fortunes of the investors. *Revak v. SEC*

10   *Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994); *Marini v. Adamo*, 812 F. Supp. 2d 243, 256

11   (E.D.N.Y. 2011). The SAC fails to explain how any UST depositor's interest was dependent on

12   the deposits of any other depositor. Vertical commonality typically requires that a defendant earn

13   a performance fee equal to a percentage of the profits of an investor's account. *See In re J.P.*

14   *Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 360 (S.D.N.Y. 2011). The SAC does not allege that

15   Defendants earned fees or commissions from Anchor user activity.

16   Nor does the SAC plead that Anchor depositors had a reasonable expectation of profits

17   derived primarily from TFL's managerial efforts. *First*, the SAC does not plausibly allege that

18   users acquired UST primarily with an investment intent specific to Anchor rather than for its

19   other consumptive uses, which is fatal because when someone purchases "something with the

20   primary desire to use or consume it, the securities laws do not apply." *Rice v. Branigar Org., Inc.*,

21   922 F.2d 788, 790 (11th Cir. 1991). UST could be used as a means of payment, in other protocols

22   developed by other developers, or simply as a store of value for later uses. And because aUST is

23   just the token used to get back UST deposited in Anchor, it is no more a security than UST.

24   <u>LUNA</u>: The SAC's notion of LUNA being "fungible" and purchasers sharing equally in

25   its price increases and decreases (*e.g.*, SAC ¶ 92) cannot satisfy vertical commonality. Although

26   LUNA purchasers' separate holdings may have "paralleled" one another in valuation, they were

27   not "intertwined such that [their] fortunes *had* to rise and fall together," because the parties were

28   free to use, hold, or sell LUNA at their discretion. *Marini*, 812 F. Supp. 2d at 257–58. Similar

1    reasoning precludes horizontal commonality among LUNA purchasers. Were this sort of

2    argument sufficient to satisfy *Howey*, purchasers of gold could be said to be holding assets in a

3    common enterprise with other gold purchasers where there is plainly no enterprise. Some buy

4    gold to use it in manufacturing (a consumptive use), some buy it as an investment, and some buy

5    it as a unit of exchange or storage. That precludes horizontal commonality.

6        Nor does horizontal commonality exist if some early LUNA sale proceeds were "pooled"

7    by TFL and used to "fund operations" and develop new projects. *See* SAC ¶¶ 92-93. Horizontal

8    commonality requires more than the aggregation or "commingling" of sale proceeds or the use of

9    proceeds to fund operations. *See Life Partners, Inc.*, 87 F.3d at 544; *SEC v. Belmont Reid & Co.*,

10   794 F.2d 1388, 1389 (9th Cir. 1986). There must be an "interdependency among investors" such

11   that profits depend upon "completion of the larger deal" between other investors and the

12   promoter. *Life Partners*, 87 F.3d at 544. Lead Plaintiff identifies no such interdependency.

13       The SAC also fails to plead that LUNA purchasers acquired their tokens with the requisite

14   investment expectations. In *Forman*, for example, the Supreme Court held that an instrument

15   labeled "stock" was not a security. 421 U.S. at 851-52. LUNA was created to stabilize UST,

16   validate transactions on the Terra blockchain, and enable voting for governance proposals. *See*

17   *supra* at 2–3. Lead Plaintiff must do more to plead around those features. But even if some

18   LUNA purchasers acquired it because they considered it an investment, that would not matter.

19   Where purchasers acquire an asset to speculate on global market prices or markets generally,

20   courts hold that profits are not driven primarily by the managerial efforts of others. *See Belmont*

21   *Reid & Co.*, 794 F.2d at 1389-91; *Noa v. Key Futures, Inc.*, 638 F.2d 77, 79-80 (9th Cir. 1980).

22       <u>MIR and ANC</u>: MIR and ANC were the native governance tokens of Mirror and Anchor,

23   respectively, and were distributed by the protocols and then available on secondary markets (the

24   SAC alleges no ICOs for either token). The SAC pleads nothing to attempt to establish horizontal

25   commonality for either MIR or ANC holders. The SAC also fails to plead that users acquired

26   MIR or ANC tokens with the expectation of profits, let alone from TFL's efforts. Nowhere does

27   the SAC allege that users acquired MIR or ANC tokens primarily as an investment rather than for

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

use as governance tokens or as a result of their uses of the protocols. And as demonstrated above, secondary market purchases of MIR or ANC cannot turn either into securities.

Because Lead Plaintiff has not pled that any "Terra Token" is a security, the federal securities law claims asserted in the SAC should be dismissed with prejudice. But even if the Court were to disagree, the Court would have to dismiss all claims relating to LUNA, MIR, and ANC because Lead Plaintiff only purchased UST and used Anchor (which means he received aUST programmatically). A named plaintiff may not assert claims relating to assets he or she did not personally buy, even if they are securities: Because Lead Plaintiff did not buy or sell LUNA, MIR, or ANC, he could not have been injured by anything relating to LUNA, MIR, or ANC and thus lacks standing to pursue claims relating to LUNA, MIR, or ANC.[27] That Patterson claimed to have purchased tokens other than UST is irrelevant, because (a) Patterson consented to the appointment of Tobias as Lead Plaintiff (ECF No. 72) and (b) Scott+Scott never intended for Patterson to become lead plaintiff, despite its filings urging the Court to appoint Patterson (*e.g.*, ECF Nos. 25, 42, 46, 61) before withdrawing his candidacy (ECF No. 72), as it expressly told another cryptocurrency purchaser in an email posted to Discord. *See* Henkin Decl. Ex. R. That disposes of all claims in the SAC not relating to UST.[28]

### B. The Section 12(a)(1) Claim Fails

A Section 12(a)(1) plaintiff must allege facts establishing that (a) the defendant failed to register securities with the SEC in violation of Section 5 (15 U.S.C. §§ 77l(a), 77e(a))[29] and (b) he purchased securities directly from the defendant (15 U.S.C. § 77l(a)) because Section 12(a)(1) only imposes liability on the buyer's immediate seller. *Pinter v. Dahl*, 486 U.S. 622, 644 (1988).

---

[27] *See In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006). Indeed, Patterson affirmatively argued to this Court that the interests of UST and LUNA purchasers are different from those of purchasers of other "Terra Tokens." *See* ECF No. 42 at 2.

[28] The same Discord channel provides further evidence that this lawsuit was intended to cover claims about UST. When FatManTerra was soliciting plaintiffs for Scott+Scott, he specifically asked for candidates who purchased UST (Henkin Decl. Ex. S).

[29] To the extent Lead Plaintiff purports to assert a freestanding claim under Section 5 of the Securities Act, that claim must also be dismissed because there is no private right of action under Section 5. *See Levitt v. J.P. Morgan Sec. Inc.*, 9 F. Supp. 3d 259, 273 (E.D.N.Y. 2014).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    *First*, as demonstrated above, the SAC does not plead that any "Terra Tokens" were

2  securities. Nor does it plead that TFL or Mr. Kwon were "issuers" subject to Section 5. The Terra,

3  Mirror, and Anchor Protocols mint and distribute tokens programmatically, without any

4  involvement from TFL or Mr. Kwon. Lead Plaintiff also fails to explain how globally accessible

5  protocols can be viewed as having conducted a general solicitation of sales to U.S.-based persons

6  such that any transactions were required to be registered. The only token sales discussed in the

7  SAC were exempt private sales which are not subject to Section 5's registration requirements.

8  *Compare* SAC ¶ 28 *with* 15 U.S.C. § 77d(a)(2) *and* 17 C.F.R. § 230.506(b).

9    *Second*, the SAC does not plead that TFL or Mr. Kwon were statutory sellers. Lead

10  Plaintiff alleges only that he "purchased Terra Tokens" (SAC ¶ 15) but not how or from whom.

11  The institutional firms that allegedly purchased LUNA in private agreements with TFL (SAC ¶

12  28) are not relevant, because Lead Plaintiff purchased UST, not LUNA. Lead Plaintiff purchased

13  UST from a third party, which forecloses a Section 12(a)(1) claim against Defendants.

14    Nor does the SAC allege that Lead Plaintiff relied on any solicitation by TFL or Mr.

15  Kwon in acquiring UST. *Capri v. Murphy*, 856 F.2d 473, 478–79 (2d Cir. 1988) (cited at SAC ¶

16  289) held that even if a defendant "played a major role in setting up the [] venture," that is not

17  sufficient to show it "actually solicited investment."[30] Finally, the SAC does not allege that

18  Defendants earned a fee or commission from Lead Plaintiff's acquisition of UST, meaning that

19  even if there had been a solicitation, it was not "for financial gain." *See Pinter*, 486 U.S. at 648.

20    **C.    The Section 10(b) Claim Fails**

21    A Section 10(b) plaintiff must plead "(1) a material misrepresentation or omission by the

22  defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the

23  purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic

24  loss; and (6) loss causation." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021); 17

25

26  _____

27  [30] *See also Underwood v. Coinbase Glob., Inc.*, No. 21 CIV. 8353 (PAE), 2023 WL 1431965, at
    *9 (S.D.N.Y. Feb. 1, 2023) (allegations insufficient to plead that Coinbase "sold" tokens); *Steed*

28  *Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 CIV. 8058 (NRB), 2001 WL 1111508, at *7
    (S.D.N.Y. Sept. 20, 2001) (also cited at SAC ¶ 289).

C.F.R. § 240.10b-5(b). The SAC does not contain *any* fraud allegations with respect to tokens other than UST and LUNA, and even the SAC's UST and LUNA allegations fail to state a claim.

### 1.    No material misrepresentation or omission

Under the PSLRA and Rule 9(b), Lead Plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); Fed. R. Civ. P. 9(b). Lead Plaintiff has not done so.

The SAC contains no non-conclusory allegations that the challenged statements regarding UST (SAC ¶ 250) were false or misleading. A statement may be false when made if there are "(1) inconsistent contemporaneous statements or (2) inconsistent contemporaneous information (such as an internal report) that was made by or was available to the defendants." *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1223 (S.D. Cal. 2001). The SAC identifies no such inconsistencies in the Terra Whitepaper, which was supported by established economic principles. The SAC merely asserts that statements in the Terra Whitepaper must have been false when made because, ***more than two years later***, UST failed under extreme market conditions. But this is classic impermissible "fraud by hindsight." *City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1109 (E.D. Wash. 2013). And the SAC does not properly allege misstatements regarding the operation of Chai.

The SAC's challenges regarding the Anchor Protocol (SAC ¶ 250(a)–(b)) also fail. Lead Plaintiff's challenge to statements about Anchor's "interest" rate fails because the SAC does not allege that any Anchor user (a) failed to receive the disclosed rate on staked tokens or (b) lost any staked tokens due to the operation of Anchor. Lead Plaintiff's challenge to tweets like "Anchor is not your ordinary money market," was "the gold standard for savings," and "a high-yield safe haven in uncertain market conditions" fails because "vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers are not actionable" because they are immaterial. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1049 (N.D. Cal. 2007).

Unable to identify any misstatement about the Anchor Protocol, Lead Plaintiff tries to plead two material omissions. *First*, the SAC alleges that any statements about Anchor's yield

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

rate were misleading for not disclosing that it was "not sustainable." SAC ¶¶ 150, 163. But there is no dispute that the challenged statements reflected the then-current rate and said nothing about how long any rate would remain in effect. Indeed, the Anchor TOS stated that "[t]he Rate is not a promise [or] guarantee," only a "projection," and was subject to change based on a variety of disclosed factors. Amani Decl. Ex. A at 5. *Second*, the SAC alleges that statements about Anchor's yield were misleading because they should have disclosed that UST was "not as 'stable' as promoted." SAC ¶ 250(a). But the challenged statements say nothing about UST, making any omission claim untenable. In any event, the Anchor TOS expressly warned that "[e]ven if the Rate is achieved as projected, you may still suffer a financial loss in fiat-denominated terms if the fiat-denominated value of the relevant tokens (your deposit and any tokens allocated or distributed to you pursuant to the Rate) declines during the deposit period." Amani Decl. Ex. A at 5. There was no omission because the risk of loss due to declines in the market (*i.e.*, "fiat-denominated") values of UST and LUNA was specifically disclosed.

The challenged statements are also immunized by the safe harbor for forward-looking statements, 15 U.S.C. § 78u-5(c). "[D]esigned to protect companies and their officials when they merely fall short of their optimistic projections," the safe harbor inoculates a defendant from liability for a statement "if it is forward-looking and either is accompanied by cautionary language or is made without actual knowledge that it is false or misleading." *Wochos*, 985 F.3d at 1189. The challenged statements describe an objective for UST going forward: maintaining its peg. *See* 15 USC § 78u-5(i)(1). And not only did the Terra Whitepaper disclose the risks of a depeg, the SAC itself describes *public* discussions of that possibility before Lead Plaintiff claims he purchased UST. *See*, *e.g.*, SAC ¶¶ 45, 46, 49-51, 131, 133, 134, 147. Nowhere does Lead Plaintiff even attempt to explain how there could have been so much public discussion of something he claims was hidden. Indeed, the possibility of a depeg was so well-known that a recipe for causing it was published on Twitter. Henkin Decl. Ex. T. The safe harbor also protects the challenged statements about the Anchor Protocol. The Anchor TOS expressly state that "***The Rate is a forward-looking projection***" and cautioned that it was "subject to numerous assumptions, risks and uncertainties (including smart contract security risks and third-party

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

actions) which could result in a materially different (lower or higher) token-denominated Rate." Amani Decl. Ex. A at 5.

The SAC challenges one tweet by Mr. Kwon and misrepresents it entirely. The SAC alleges that "on March 28, 2022, in an exchange on Twitter and in response to a direct criticism about the sustainability of TFL's algorithmic stablecoin, Kwon flatly denied that UST was unstainable [sic], saying such claims were neither true nor well-informed." SAC ¶ 250(h). But as the SAC itself shows, that is not what happened; Mr. Kwon was responding to a comment that LFG's *reserve fund* might not have been sustainable because it relied on LUNA as its funding source. *See* SAC ¶ 152. Separately, the SAC accuses Mr. Kwon of "ad hominem attacks" (SAC ¶ 148) and "mockery and bravado" (SAC ¶ 149) in other tweets. Although the tone of some tweets may have been "cringe," as Mr. Kwon later acknowledged,[31] that is not a securities law violation.

The challenged statements by LFG do not support a Section 10(b) claim against Defendants. *First*, LFG is not a defendant. *Second*, the SAC pleads no basis for deeming the challenged statements inaccurate. The SAC alleges that LFG made a misleading statement when it tweeted that the UST Reserve could be used to defend the peg. SAC ¶ 250(d). But the SAC does not allege that the reserve was meant for something other than peg defense or deny that it was used to defend the peg several months later. Lead Plaintiff also asserts that LFG's statement should have disclosed that UST was not as stable as promoted and that the peg would be unable to be maintained during periods of high market volatility. But the challenged statement says precisely that—that UST *could* lose its peg under extreme market conditions and that open market purchases might be needed to restore it. To the extent Plaintiffs are trying to fault LFG for not predicting that UST "would" permanently lose its peg, "lack of clairvoyance simply does not constitute securities fraud." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995). Lead Plaintiff's further contention that LFG's statement about the UST Reserve should have disclosed "that Anchor's staking rewards program was unsustainable and could not be maintained with the

---

[31] https://www.coinage.media/s1/inside-cryptos-largest-collapse-with-terras-do-kwon.

1    either the Forex Reserve Fund or the Anchor Yield Reserve Fund" (SAC ¶ 250(d)) is baffling.

2    LFG's statement has nothing to do with Anchor and the SAC identifies no basis for an omission.

3                        **2.    The SAC Does Not Allege Scienter**

4         To plead scienter, the SAC must state with particularity facts giving rise to a "strong

5    inference" that a defendant made a misstatement with an intent to defraud, such that an intent to

6    defraud is at least as likely as any nonculpable explanation for the misstatement. *Tellabs, Inc. v.*

7    *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). The SAC fails to do so.

8         *First*, Lead Plaintiff tries to argue for a party admission by pointing to a blog post which

9    read in part, "we knew it wasn't sustainable." SAC ¶¶ 163, 256. However, that remark was made

10   not by Defendants but by a third party—Remi Tetot. Mr. Tetot never worked for TFL. His

11   comment does not indicate that Defendants knew any statements attributed to them were false

12   when made. Henkin Decl. Ex. L. The SAC's allegation that Mr. Tetot "admitted [that] all of the

13   Defendants knew before the May 2022 collapse that the algorithmic stablecoin pair UST and

14   LUNA, along with the Anchor Protocol, was entirely unstable and unsustainable" (SAC ¶¶ 163,

15   256) misrepresents his statement. The comment that "we knew it wasn't sustainable" plainly

16   refers to the Anchor yield rate, not UST. With respect to UST, Mr. Tetot actually said "***Looking***

17   ***back at it***" (emphasis added) he saw certain vulnerabilities he failed to anticipate which is, again,

18   pleading fraud by hindsight. Even as to the Anchor yield rate, the comment is irrelevant because

19   the SAC does not allege that the rate was not sustained throughout the relevant period. If *any*

20   Anchor depositor had failed to receive the promised yield at *any* time, there would be a prominent

21   allegation to that effect in the SAC. Instead there is deafening silence: No plaintiff, in any

22   litigation, has alleged any failure to receive the promised Anchor yield at any time.

23        Lead Plaintiff's "insider trading" theory of scienter (SAC ¶¶ 257-59) fares no better.

24   Pleading scienter on this basis requires alleging a "meaningful trading history" for each defendant

25   and identifying sales "dramatically out of line" with that history "at times calculated to maximize

26   the personal benefit from undisclosed inside information." *Curry v. Yelp Inc.*, 875 F.3d 1219,

27   1226 (9th Cir. 2017); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005–06 (9th Cir.

28   2009). Lead Plaintiff's allegations that TFL and Mr. Kwon sold "substantial amounts of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

UST/LUNA Tokens at significant profits while the price was artificially inflated on and during the weeks and months that followed their respective launches" (SAC ¶ 257) are too conclusory to suffice. *See Intuitive Surgical, Inc.*, 759 F.3d at 1063–64. Also insufficient are allegations that Defendants transferred "10,000 Bitcoin" from one wallet to another and "since May 2022" converted it to cash. *See* SAC ¶ 205. The SAC provides no factual detail connecting these alleged transfers, all of which occurred after UST and LUNA lost their value, to sales of UST or LUNA in any way. Moreover, pleading scienter based on alleged insider trading requires allegations of trading *before* the supposed manifestation of the alleged fraud, not *after*. *See Fecht v. Price Co.*, 70 F.3d 1078, 1084 (9th Cir. 1995), *cert. denied*, 571 U.S. 1136 (1996).[32]

### 3.      The SAC Does Not Plead Reliance

"Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988). To adequately plead reliance, a plaintiff must allege facts supporting actual reliance on the alleged misrepresentation or omission, or facts supporting a presumption of reliance. *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1258 (C.D. Cal. 2015). The SAC pleads neither.

Lead Plaintiff fails to plead actual reliance on any specific statement alleged in the SAC. The SAC contains nothing more than the conclusory allegation that Lead Plaintiff "rel[ied] directly or indirectly on the false, misleading, and materially incomplete statements that Defendants made and approved." SAC ¶ 261. That fails to satisfy the *Iqbal/Twombly* standard because it lacks supporting factual matter indicating how Lead Plaintiff supposedly relied on the alleged misrepresentations. *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011). Indeed, the SAC does not even allege that Lead Plaintiff read any of the statements at issue, let alone which ones or when, nor does it allege that he purchased UST in

---

[32] Nor can Lead Plaintiff rely on a Twitter rumor that Mr. Kwon "sold $2.7 billion worth of UST over the span of mere months." SAC ¶ 9. The SAC contains no factual allegations about the Tweet's author—FatManTerra—"to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019). Indeed, FatManTerra is hardly unbiased, being one of the prime instigators of this litigation. *See* Henkin Decl. Exs. B, O-Q, S.

direct reliance on such statements. *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 LAK, 2013 WL 5730020, at *4 (S.D.N.Y. Oct. 22, 2013).

Lead Plaintiff cannot invoke the fraud-on-the-market presumption of reliance under *Basic* by alleging that Lead Plaintiff relied "upon the integrity of the market in which the UST/LUNA Tokens were sold." *See* SAC ¶¶ 260-61. That presumption is only available when a plaintiff pleads that an asset was actively traded in an efficient market, and "[e]fficiency must be plead with particularity under Rule 9(b)." *ScripsAmerica*, 119 F. Supp. 3d at 1252. But the SAC contains no factual allegations at all to support the notion that any "Terra Token" traded in an efficient market, which is fatal to the attempt to invoke the presumption. *See id.*

### 4.    The SAC Does Not Plead Loss Causation

Loss causation requires that a defendant's alleged misrepresentation, not an intervening event, caused a claimed economic loss. *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1034 (N.D. Cal. 2020). It requires more than alleging that a "stock was purchased at an inflated price" due to the alleged misrepresentation; a plaintiff must also allege that "the market learned of and reacted to this fraud," as opposed to reacting to something else. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063-64 (9th Cir. 2008). Lead Plaintiff has not satisfied this burden. Despite the SAC's bluster, it does not allege that the "truth was revealed" regarding any alleged misrepresentation or omission prior to UST and LUNA losing their value.

Nor has Lead Plaintiff pled that any alleged corrective disclosures regarding the stability of UST (SAC ¶ 263) caused the alleged losses. UST and LUNA lost their values due to a market event in May 2022. The SAC identifies no corrective disclosure precipitating that event. Lead Plaintiff cannot and does not argue that the decline was caused by *disclosure* that the peg might fail during periods of high market volatility (SAC ¶ 263), because that was well-known long before May 2022. The SAC pleads numerous *public* discussions of precisely that risk, *e.g.* SAC ¶¶ 45, 46, 49-51, 131, 133, 134, 147, and four months prior to UST losing its peg, LFG and Mr. Kwon cautioned users that the arbitrage incentives designed to support UST's peg could break down under extreme market conditions. Henkin Decl. Ex. H. That UST did not lose its peg after

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

any of those disclosures forecloses any allegation of loss causation. *See In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1034 (N.D. Cal. 2020).

Finally, Lead Plaintiff has not pled that any "disclosure" about Anchor's yield rate (SAC ¶ 263) caused any alleged losses. *First*, TFL disclosed from inception that Anchor's yield was not guaranteed but only a future projection. *Second*, Lead Plaintiff does not plead any facts to indicate that yield rate was *not* sustained prior to the May 2022 depeg.

## D. The Rule 10b-5(a) & (c) Claim Fails

To state a scheme liability claim under Rule 10b-5(a) & (c), a plaintiff must allege facts showing that the defendant engaged in a deceptive act in furtherance of an alleged scheme to defraud, plus scienter, reliance, economic loss, and loss causation. *Kui Zhu v. Taronis Techs. Inc.*, No. CV-19-04529-PHX-GMS, 2020 WL 1703680, at *6 (D. Ariz. Apr. 8, 2020). This claim fails because the SAC does not plead a deceptive act by Defendants.[33] The SAC alleges that Jump purchased large quantities of UST to restore the peg in May 2021 (SAC ¶ 270). But an act is not deceptive unless it is performed with "the principal purpose and effect of creating a false appearance of fact," and "[c]onduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation." *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048, 1050 (9th Cir. 2006), *overruled on other grounds, Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 156-57 (2008). The SAC does not plead that whatever Jump did in May 2021 was inconsistent with its prior or subsequent UST transactions.  Because the SAC does not plead that Jump did anything in May 2021 that it did not do at any other time, it does not plead that anything Jump did in May 2021 was a deceptive act. To the extent Lead Plaintiff claims the conduct was deceptive because of purported non-disclosure, that simply rehashes the First Cause of Action, not an independent claim for scheme liability, *see SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011), and it fails for exactly the same reasons.

---

[33] Lead Plaintiff also fails to plead scienter, reliance, and loss causation for a scheme liability claim regarding the May 2021 depeg for the same reasons discussed above.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    Even if acts attributed to Jump could be viewed as deceptive, they cannot support a

2    scheme liability claim against Defendants. A plaintiff must plead that each defendant performed

3    an act that was, *itself*, in purpose and effect deceptive, not that it helped another defendant do so.

4    *Simpson*, 452 F.3d at 1048. The SAC does not even allege that Defendants "helped" Jump.

5         **E.      The Control Person Claims Fail**

6         To establish liability under Section 15 of the '33 Act or Section 20(a) of the '34 Act, a

7    plaintiff must show that a primary violation was committed, that the defendant had the power to

8    influence of control the primary violator, and that the defendant was a "culpable participant" in

9    the primary violation.[34] These claims fail at the outset because the SAC does not plead primary

10   violations of the '33 or '34 Act by TFL.[35] Section 20(a) requires "actual control over the

11   transaction in question."[36] But the SAC's allegations do not establish that Mr. Kwon had actual

12   control over any challenged statement by TFL, as he is not alleged to have reviewed or approved

13   any tweet published by TFL's twitter feed or to have had actual control over challenged actions

14   by TFL employees. Similarly, Section 15 requires that Mr. Kwon have been involved in the

15   alleged unregistered sales, *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal.

16   2003), but there are no such allegations in the SAC. Both control person claims thus fail.

17   **VI.    THE SAC DOES NOT STATE A RICO CLAIM**

18        To establish a civil RICO claim for violation of § 1962(c), a plaintiff "must plausibly

19   allege that each defendant acted, directly or indirectly, in (1) the conduct, (2) of an enterprise that

20   affects interstate commerce, (3) through a pattern, (4) of racketeering activity." *BMA LLC v. HDR*

21   *Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *11 (N.D. Cal. Mar. 12,

22   2021). The SAC does not do so.

23

24   [34] *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d

25   920, 945 (9th Cir. 2003); *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151,
     1161 (9th Cir. 1996).

26   [35] The Section 15 claims asserted against Defendants as "control persons" of LFG (SAC ¶¶ 293-

27   96) are mysterious, because LFG is not a defendant and no claims are asserted against it.

28   [36] *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 307 (S.D.N.Y. 2013); *In re Alstom SA Sec. Litig.*, 406 F.Supp.2d 433, 487 (S.D.N.Y.2005).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

A.   **The RICO Claim Is Barred By PSLRA Section 107**

PSLRA Section 107 provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). "The PSLRA bar does not turn on whether a given defendant would be liable under the securities law. Rather, Section 1964(c) proscribed using as a predicate any conduct that would have been actionable as securities fraud." *Lucero v. IRA Servs., Inc.*, No. 18-CV-05395-LB, 2019 WL 5812175, at *4 (N.D. Cal. Nov. 7, 2019). Even asserting a securities claim with no possible legal viability makes Section 107 applicable and bars civil RICO claims.[37]

The applicability of Section 107 is not even a close call here because Lead Plaintiff affirmatively asserts that the "Terra Tokens" are securities and asserts federal securities claims. *See* SAC ¶¶ 76-109, 243-274, 282-291. This is precisely the sort of pleading behavior Congress intended to preclude when it enacted the PSLRA.[38]

B.   **The SAC Fails To Allege RICO Standing**

The SAC alleges that Defendants "directly and proximately caused Plaintiffs and Class members to be financially injured" and "lost opportunities" (SAC ¶ 343) without explaining how Lead Plaintiff was specifically injured by the alleged racketeering activity. That is insufficient.[39]

Lead Plaintiff only purchased UST. He thus cannot assert injury relating to any other "Terra Token," including LUNA. The most favorable reading of the SAC is that Lead Plaintiff's alleged injury was based on the notion that UST was riskier to purchase than he originally

---

[37] *See Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2001); *Howard v. American Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000).

[38] *See Albright v. Terraform Labs, Pte. Ltd.*, No. 22-CV-07281 (JSR), 2022 WL 16985806, at *2 (S.D.N.Y. Nov. 15, 2022) ("RICO and securities fraud claims are mutually exclusive"); *Davies v. GetFugu, Inc.*, No. CV 09-8724-GHK (RCX), 2010 WL 11597458, at *2 (C.D. Cal. Aug. 26, 2010); *Capital. Mgmt. v. Askin Capital Mgmt.*, 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997).

[39] *See Bokaie v. Green Earth Coffee LLC*, No. 18-CV-05244-JST, 2018 WL 6813212, at *5 (N.D. Cal. Dec. 27, 2018); *Bermingham v. Plumbing & Pipefitting Indus. Loc. 38*, 53 F.3d 337 (9th Cir. 1995). Lead Plaintiff's attempt to use attorneys' fees and costs in litigating this action as a way to plead sufficient RICO injury (SAC ¶ 348) fails because pursuing a RICO action does not create proximate causation. *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   believed. But that cannot support a RICO claim. *See Dornberger v. Metro. Life Ins. Co.*, 961 F.

2   Supp. 506, 522 (S.D.N.Y. 1997).

3          Lead Plaintiff must sufficiently allege both "but for" and proximate causation, *Pillsbury,*

4   *Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994), but has not alleged either. To

5   establish "but for" causation, Lead Plaintiff must plead that absent Defendants' alleged predicate

6   acts, he would not have purchased UST. Although a RICO plaintiff need not show that it directly

7   relied on the defendant's misrepresentations (first-party reliance), "[i]n most cases, the plaintiff

8   will not be able to establish even but-for causation if no one relied on the misrepresentation."[40]

9   Given that the design specifications for UST and Anchor and their respective code bases were

10  publicly available and the risks about which Lead Plaintiff complains were widely discussed in

11  public prior to the depeg event, Lead Plaintiff has not pleaded even but-for causation.

12         Nor has Lead Plaintiff sufficiently alleged proximate cause. The central inquiry to

13  evaluate whether there is proximate causation is "whether the alleged violation led directly to the

14  plaintiff's injuries." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610,

15  653-54 (N.D. Cal. 2020). A plaintiff may not recover damages unless their injury occurs at the

16  "first step" in the proximate cause inquiry.[41] Because Lead Plaintiff does not allege that he ever

17  interacted directly—or at all—with Defendants, Lead Plaintiff has not alleged harm from the

18  decline in value of UST stemming directly from Defendants' alleged RICO violations.

19  **C.**   **The SAC Does Not Allege RICO Predicate Acts**

20         **1)**   **The SAC Does Not Adequately Plead Mail or Wire Fraud.**

21         To allege mail or wire fraud, Lead Plaintiff must plead with particularity that Defendants

22  made material misrepresentations with fraudulent intent in a scheme to get money or property

---

23  [40] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008); *see also Sergeants*

24  *Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) ("[I]f the person who was allegedly deceived … (plaintiff or not) ***would have acted in the***

25  ***same way regardless of the misrepresentation***, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury." (emphasis added)).

26

27  [41] *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010); *see also Laydon v. Coöperatieve Rabobank U.A.*, 51 F.4th 86, 101 (2d Cir. 2022) ("Not only does Plaintiff fail to

28  allege any direct dealings with Defendants, but his asserted injury … is several steps removed from Defendants' alleged conduct … .").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  furthered by use of interstate mail or wires. *See BMA LLC*, 2021 WL 949371, at *11; *Williams &*

2  *Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Rsrv.*, No. 317CV01436GPCMDD, 2019

3  WL 4277431, at *9 (S.D. Cal. Sept. 10, 2019). Lead Plaintiff must go beyond "conclusory

4  allegations" of fraud and (i) describe the specific statements that are alleged to be false or

5  fraudulent, identify the speaker, state when and where the statements were allegedly made, and

6  explain why the statements were fraudulent, and (ii) "allege facts that give rise to a strong

7  inference of fraudulent intent." *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159,

8  179 (2d Cir. 2004); *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018); *BMA LLC*,

9  2021 WL 949371, at *11. Lead Plaintiff's allegations do not meet these requirements.[42]

10      The allegations that TFL repeatedly touted the stability of UST and sustainability of

11  Anchor (*e.g.*, SAC ⁋ 6, 119-56) do not withstand scrutiny for the same reasons they fail to plead

12  securities fraud. *See supra* Point II. Although UST's design failed under the market conditions

13  that occurred in May 2022, statements are not fraudulent simply because it later turned out they

14  might have been too optimistic or an intervening cause resulted in changed circumstances. A

15  design failure is not fraud, especially when the design risks were known.[43]

16      Lead Plaintiff cannot convert what happened into a fraud claim by pointing to a selection

17  of optimistic tweets. *See*, *e.g.*, SAC ⁋⁋ 100, 106, 125-27, 141. Mr. Kwon's tweets merely

18  expressed confidence and excitement in UST, LUNA, and the creation of a reserve to support the

19  peg and mitigate the *disclosed* risk of a UST collapse. "Corporate optimism," "puffery" or

20  "mildly optimistic, subjective assessment" are not actionable as misrepresentations. *In re*

---

21

22  [42] Lead Plaintiff cannot rely on allegations that Mr. Kwon failed to disclose that he tweeted about

23  "Basis Cash" (AC ¶ 47) or that TFL failed to disclose interactions with Jump (SAC ¶¶ 223-224), because he alleges no reason why disclosure of either was required. *See LifeVoxel Virginia SPV,*

24  *LLC v. LifeVoxel.AI, Inc.*, No. 22-CV-566-GPC-JLB, 2022 WL 3648452, at *5 (S.D. Cal. Aug. 23, 2022); *see also In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 884 (N.D. Cal. 2020), *aff'd*

25  *sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022).

26  [43] *See generally Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619, 623 (7th Cir. 2022); Henkin Decl. Ex. M at 2 ("The 'death spiral'/bank run risk of failure was known by everyone and

27  repeated consistently over time. $LUNA was referred to as an experiment by Do Kwon in interviews again and again."); Henkin Decl. Ex. N at 2 ("TFL donated what was then >$3B to

28  establish @LFG_org to diversify UST's collateral backing, and focused our investments to grow Terra's ecosystem. We wouldn't have done this if we thought UST were to fail.").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*ECOtality, Inc. Sec. Litig.*, No. 13-03791-SC, 2014 WL 4634280, at *8-9 (N.D. Cal. Sept. 16, 2014). Moreover, the tweets were not statements of fact but expressions of opinion and thus not actionable. As the SAC demonstrates, whether the "Terra Ecosystem" would function as designed was the subject of significant public debate, and Mr. Kwon was conveying his opinion on that topic, not factual statements that could be read as false or misleading. *See Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017). It is thus not surprising that Lead Plaintiff does not allege that any of the statements cited were false; at best, Lead Plaintiff's complaints are about mismanagement or poor design, puffery, and fraud by hindsight, none of which is actionable.[44] Lead Plaintiff's allegations of false statements regarding Anchor fare no better, again for the same reasons they fail to allege securities fraud claims.

The SAC's allegations of false statements regarding Anchor fare no better. Lead Plaintiff points to the Anchor Whitepaper (SAC ¶¶ 61, 71, 99, 121-22), but like the Terra Whitepaper that document simply describes the product design and capabilities of the Anchor Protocol. Although Lead Plaintiff repeatedly asserts that the 20% annual percentage yield offered to depositors on their staked tokens was "unsustainable" (SAC ¶¶ 150, 169, 173, 250), Lead Plaintiff does not allege that it was not sustained—Anchor paid *all* depositors the offered rate. In any event, the Anchor website expressly cautioned that the rate was "a forward-looking projection … subject to numerous assumptions, risks and uncertainties," and "not a promise [or] guarantee." Amani Decl. Ex. A at 5. To the extent Lead Plaintiff is focused on the decline in value of UST deposited in Anchor, that risk was expressly disclosed: "[e]ven if the Rate is achieved as projected, you may still suffer a financial loss in fiat-denominated terms if the fiat-denominated value of the relevant tokens (your deposit and any tokens allocated or distributed to you pursuant to the Rate) declines during the deposit period." *Id.* The Anchor Whitepaper, read in its full context, specifically warned of the precise danger that came to pass (losses "in fiat-denominated terms").

Lead Plaintiff fails to allege scienter for the same reasons he does not allege securities fraud scienter. Indeed, Lead Plaintiff simply lumps all "Defendants" together in alleging they

---

[44] *See Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 6466264, at *11 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *Cboe Glob. Markets*, 42 F.4th at 623.

1  somehow "knew" that the Terra Ecosystem and Anchor were "unstable" and "unsustainable,"

2  SAC ⁋⁋ 7, 8, 9, 49, 150, 256, which is insufficient to plead scienter. *See Swartz*, 476 F.3d at 764-

3  65; *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).[45] Accordingly, Lead

4  Plaintiff has not sufficiently pleaded mail or wire fraud. *See Swartz*, 476 F.3d at 764-65.

5  **D.    The SAC Does Not Properly Allege a RICO Enterprise**

6         The SAC alleges that there was an association-in-fact comprised of all Defendants and

7  operated by all Defendants through a pattern of racketeering activity. SAC ⁋ 319-331. An

8  association-in-fact "is proved by evidence of an ongoing organization, formal or informal, and by

9  evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556

10  U.S. 938, 945 (2009). Association-in-fact enterprises must have a purpose, relationships among

11  those associated with the enterprise, and longevity sufficient to permit the associates to pursue the

12  enterprise's alleged purpose. *See id.* at 946. And the enterprise is not the pattern of racketeering

13  activity, it must be separate and apart from the pattern of activity alleged. *See United States v.

14  Turkette*, 452 U.S. 576, 583 (1981).

15         Lead Plaintiff's enterprise allegations fail for three reasons. *First*, Lead Plaintiff's

16  association-in-fact allegations (SAC ⁋⁋ 319-331) are conclusory and merely parrot the statutory

17  language.[46] Alleging that all defendants participated in the cryptocurrency industry does nothing

18  to plead a relationship beyond the alleged predicate acts or otherwise suggest unity amongst the

19  alleged members of the enterprise. *See Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057

20  (C.D. Cal. 2016); *First Nationwide Bank*, 820 F. Supp. at 98.

21         *Second*, the SAC contains no well-pled allegations regarding the structure and

22  organization of the alleged enterprise—it just names a group of entities connected through arms-

23  ─────────────────

24  [45] Lead Plaintiff's reliance (SAC ⁋⁋ 163-64) on a Medium article by Mr. Tetot does not support
    scienter. Mr. Tetot stated that what he wrote was his "personal opinion," not an analysis of
25  actions by TFL or LFG, that the risks of a depeg and death spiral "were clear" when he did his
    own research *in 2021*, and that people "were constantly pointing out Luna/ust weaknesses," as the
26  SAC itself confirms. *See* Henkin Decl. Ex. L.

27  [46] *See Gaines v. Home Loan Ctr., Inc.*, No. SACV08667AHSRNBX, 2010 WL 11506442, at *6
    (C.D. Cal. May 24, 2010)*; Schmidt v. Fleet Bank*, No. 96 CIV. 5030 (AGS), 1998 WL 47827, at
28  *8 (S.D.N.Y. Feb. 4, 1998).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

length commercial transactions and asserts that those entities were organized as a group, which is not enough for RICO claims.[47] Lead Plaintiff defines his "enterprise" as the group needed to encompass the predicate acts he tries to allege (SAC ¶¶ 206, 262, 320-22, 325, 342), which is not sufficient. *See Turkette*, 452 U.S. at 583.

*Third*, an enterprise must have longevity sufficient to permit its associates to pursue the enterprise's purpose. *See Boyle*, 556 U.S. at 946. But all the SAC alleges is that "[t]he Terra Token Enterprise is an ongoing and continuing business organization consisting of 'persons' within the meaning of 18 U.S.C. §1961(3) that created and maintained systematic links for a common purpose: to ensure that the RICO Defendants could sell off their Terra Token holdings to retail investors at artificially inflated prices without their fraud being detected," SAC ¶ 320, which just parrots the statutory definition. That allegation is also nonsensical given, for example, that LFG was not formed until late January 2022 (SAC ¶ 81), more than two years after the "enterprise" was supposedly formed. And there is nothing in the SAC to support the assertion that the alleged enterprise is "ongoing and continuing."

### E.   The SAC Does Not Properly Allege Operation or Management

A RICO defendant must have "conduct[ed] or participat[ed], directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To "conduct" the affairs of an enterprise, a defendant must have had "some part in directing [the enterprise's] affairs.'" *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The operation and management test is extremely rigorous, and it is not enough to take directions, perform tasks that are necessary and helpful to the enterprise, or provide goods or perform services that ultimately benefit the enterprise. *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1027 (N.D. Cal. 2020). And a complaint must allege that a defendant conducted the affairs of *the enterprise,* not its own affairs.[48] With respect to TFL, the SAC only

---

[47] *See BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *11 (N.D. Cal. Mar. 12, 2021); *Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421 VB, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014).

[48] *See Ferrari v. Mercedes-Benz USA, LLC*, No. 15-CV-04379-YGR, 2016 WL 7188030, at *2 (N.D. Cal. Dec. 12, 2016)*; Kaczmarek v. Int'l Bus. Machines Corp.*, 30 F. Supp. 2d 626, 630

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  alleges that it hosted the Terra blockchain and posted tweets regarding TFL's business (SAC ¶¶ 3,

2  34-35, 42, 119, 120, 121, 127, 140 1). Those are at most allegations that TFL conducted its own

3  business, and thus fail as bases for RICO claims. *Interallianz Bank AG v. Nycal Corp.*, No. 93

4  CIV. 5024 (RPP), 1994 WL 177745, at *7 (S.D.N.Y. May 6, 1994).[49]

5  **F.     The SAC Fails To Allege Pattern Or Continuity**

6  Lead Plaintiff can only allege closed-ended continuity, which requires predicate acts "over

7  a substantial period of time" by a particular defendant. *Kan-Di-Ki, LLC v. Sorenson*, 723 F.

8  App'x 432, 434 (9th Cir. 2018). As to Defendants specifically, however, Lead Plaintiff fails to

9  allege closed-ended continuity because he includes conduct unrelated to any alleged injury

10  sustained by Lead Plaintiff or the proposed class in an effort show that TFL or Mr. Kwon's

11  conduct was not isolated or sporadic. Lead Plaintiff's allegations relate to the purchase of UST

12  and damages allegedly sustained as a result of its price decline. SAC ¶¶ 157, 261-265, 344. And

13  yet, Lead Plaintiff tries to rely on Anchor to support continuity (SAC ¶¶ 26, 71, 120-22, 167, 183,

14  203), even though the SAC does not contain a single allegation that (a) Lead Plaintiff *or anyone*

15  *else* lost money as a result of Anchor or (b) Anchor ever failed to pay the expected return on

16  staked tokens. Accordingly, nothing relating to Anchor can be considered in evaluating

17  continuity. And without those allegations, Lead Plaintiff's continuity theory unravels because the

18  alleged predicate acts relating to UST are too sporadic to support closed-ended continuity. *See*

19  *First Cap. Asset Mgmt.*, 385 F.3d at 181.

20  **VII.   THE SAC'S STATE LAW CLAIMS MUST BE DISMISSED**

21  The SAC's state law claims (Sixth, Eighth and Ninth Causes of Action) all fail because, as

22  demonstrated above, the SAC does not allege fraudulent conduct or misrepresentations. *BMA LLC*

23  *v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *17 (N.D. Cal. Mar.

24  12, 2021).

25  _____

26  (S.D.N.Y. 1998).

27  [49] Lead Plaintiff cannot fix this problem by amending. Mr. Kwon and TFL cannot form an
enterprise because courts have long rejected the idea that a RICO enterprise may consist merely

28  of a corporate defendant associated with its own employees or agents carrying on the regular
affairs of the defendant. *See Ferrari v. Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *2.

**A.**    **The Aiding and Abetting and Conspiracy Claims Fail**

Lead Plaintiff's aiding and abetting and conspiracy claims are secondary liability claims. If these claims are based on the federal securities law claims, they are barred as a matter of law because federal securities law does not permit private secondary liability claims. *See In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 592 (9th Cir. 1995); *Hokama v. E.F. Hutton & Co.*, 566 F. Supp. 636, 642 (C.D. Cal. 1983). If they are not based on the federal securities law claims, then there is no primary state law claim pled at all, and they fail for that reason. Whatever these claims are, they also fail because there can be no presumption of reliance for state law fraud claims, and the SAC does not plead individual reliance. *See generally Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 474-75 (Del. 1992) (*Basic* presumption does not apply to state law fraud claims).

**B.**    **The Unjust Enrichment Claim Fails**

The unjust enrichment claim fails because the SAC does not allege that TFL or Mr. Kwon received funds directly from Lead Plaintiff or any other putative class member. An unjust enrichment plaintiff must allege (a) receipt of a benefit by the defendant and (b) unjust retention of it at the expense of another. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). A "benefit" must come at the expense or loss of a plaintiff and be conferred on defendant by the plaintiff itself. *Id*. Lead Plaintiff alleges that he and the purported class "conferred a monetary benefit on Defendants by raising the price and trading volume of the Terra Tokens, which *allowed* Defendants to sell their Terra Tokens" at higher prices. SAC ¶ 350 (emphasis added). But that is, at best, an allegation of indirect and speculative benefits to TFL and Mr. Kwon from the secondary market, not from Lead Plaintiff or class members directly. The unjust enrichment claim also fails because there is an adequate remedy at law. Because this claim is based on the same alleged facts as the statutory claims (SAC ¶ 349), Lead Plaintiff has an adequate remedy at law and cannot bring a claim for unjust enrichment. *See Stationary Engineers Loc. 39 Health & Welfare Tr. Fund v. Philip Morris, Inc.*, No. C-97-01519 DLJ, 1998 WL 476265, at *18 (N.D. Cal. Apr. 30, 1998).

**CONCLUSION**

For all the foregoing reasons, TFL and Mr. Kwon respectfully request that the Court (i) dismiss the SAC as against TFL and Mr. Kwon for lack of personal jurisdiction, or (ii) strike the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    class claims and refer Lead Plaintiff's claims to arbitration pursuant to the Anchor TOS, or (iii)

2    dismiss any remaining claims pursuant to Fed. R. Civ. P. 12(b)(6).

3

4    Dated: May 4, 2023                    Respectfully submitted,

5

6                                          DENTONS US LLP

7

8                                          By:  /s/ Joel D. Siegel
                                                Joel D. Siegel

9                                          JOEL D. SIEGEL (SBN 155581)
                                           joel.siegel@dentons.com
10                                         ANDREW M. PENDEXTER (SBN 310752)
                                           andrew.pendexter@dentons.com
11                                         DENTONS US LLP
                                           601 South Figueroa Street, Suite 2500
12                                         Los Angeles, CA 90017-5704
                                           Telephone: 213.623.9300
13                                         Facsimile: 213.623.9924

14                                         DOUGLAS HENKIN (Admitted *Pro Hac Vice*)
                                           douglas.henkin@dentons.com
15                                         DENTONS US LLP
                                           1221 Avenue of the Americas
16                                         New York, NY 10020-1089
                                           Telephone: 212.768.6700
17                                         Facsimile: 212.768.6800

18                                         STEPHEN J. SENDEROWITZ (Admitted *Pro Hac Vice*)
                                           stephen.senderowitz@dentons.com
19                                         DENTONS US LLP
                                           233 South Wacker Drive, Suite 5900
20                                         Chicago, IL 60606-6361
                                           Telephone: 312.876.8141
21
                                           Attorneys for Defendants
22                                         TERRAFORM LABS, PTE. LTD. and
                                           DO KWON
23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213.623.9300