# EXHIBIT 10

# EXHIBIT TT

## Consulting Services Agreement

This Consulting Services Agreement (this "**Agreement**") is made and entered into as of the last signature date below (the "**Effective Date**") by and between OpenToken, Inc. ("**OpenToken**"), and Terraform Labs Pte. Ltd., ("**Company**") (each herein referred to individually as a "**Party**", or collectively as the "**Parties**").

Company desires to retain OpenToken as an independent contractor to perform consulting services for the Company, and OpenToken is willing to perform such services, on the terms described below. In consideration of the mutual promises contained herein, the Parties agree as follows:

1. **Services and Compensation**

   OpenToken shall perform the services described in **Exhibit A** (the "**Services**") for the Company (or its designee), and the Company agrees to pay OpenToken the compensation described in Exhibit A for OpenToken's performance of the Services.

2. **Company Information**

   Company acknowledges and agrees that it is the sole obligation of Company, not OpenToken, to determine whether any information provided to OpenToken is reportable under reporting laws and regulations, and how and when to submit such information to comply with any reporting obligations. Company shall be solely responsible for the timely submission of reportable information required by any regulatory agency.

3. **Fees**

   In consideration of the Services to be performed by OpenToken, Company shall pay OpenToken according to the fee schedule in Exhibit A. In addition, Company shall pay OpenToken for all ordinary and necessary out-of-pocket expenses incurred by OpenToken in performance of the Service under this Agreement, as mutually agreed upon by OpenToken and the Company. Company agrees to pay OpenToken in advance and fees must be received by OpenToken prior to the beginning of Services being performed. Company shall pay in full, in U.S. dollars drawn on a U.S. bank, by check or electronic wire transfer, all sums due to OpenToken upon receipt of a billing invoice, unless OpenToken has agreed in writing to other payment terms. Company shall be responsible for all fees and charges assessed to OpenToken due to any payment made by electronic wire transfer including, without limitation, Automated Clearing House (ACH) or other wire transfers. Any unpaid fees and charges will appear on the next billing invoice. OpenToken reserves the right to suspend the Services if payment is not received within ninety (90) days of the date of invoice.

DocuSign Envelope ID: E3605B1A-A8E1-4805-9457-06119D9858BD
FOIA CONFIDENTIAL TREATMENT REQUESTED

4. **Confidentiality**

After acceptance of this Agreement, OpenToken shall exercise reasonable care to prevent unauthorized disclosure of "Confidential Information" (as defined below) supplied by Company. OpenToken shall safeguard the Confidential Information, and shall cause any of its representatives which have a need to know such Confidential Information in connection with the performance of the Services hereunder to safeguard the Confidential Information, to the same extent that it safeguards its own proprietary information and will not disclose the Confidential Information to others (except to the extent such disclosure may be required by governmental authorities or pursuant to court orders). As used in this Agreement, the term "Confidential Information" shall mean all technical, commercial and business information, data, technical developments and ideas, and cost projections belonging to Company that OpenToken obtains pursuant to this Agreement and which OpenToken knows or reasonably should know to be proprietary to Company except any portion of such information that: (i) is known to OpenToken before its disclosure to OpenToken by Company; (ii) is disclosed to OpenToken by a third party who OpenToken reasonably believes has a right to make such disclosure; (iii) is or becomes known to the; or (iv) is independently developed by OpenToken. If OpenToken is legally compelled to disclose any part of the Confidential Information, OpenToken shall notify Company prior to actual disclosure, and shall cooperate fully with Company in the event that Company elects to contest or restrict such disclosure. OpenToken's obligations in this section shall survive any termination of OpenToken's right to use the Confidential Information for the purposes specified in this Agreement and shall continue for a period of five (5) years from the date of the disclosure of the Confidential Information. All original documents, exhibits, samples or other materials provided by Company to OpenToken in connection with the Services to be performed by OpenToken under this Agreement shall remain the property of Company.

5. **Term and Termination**

Either party may terminate this Agreement upon thirty (30) days prior written notice. Company shall pay OpenToken for all fees and expenses incurred (or irrevocably committed to) by OpenToken on or before the effective date of such termination.

6. **Limitation of Liability**

OPENTOKEN WILL NOT HAVE ANY LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT FOR: (1) CUSTOMER'S LOST REVENUES; (2) INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL LOSSES (WHETHER OR NOT FORESEEABLE OR CONTEMPLATED BY THE PARTIES AT THE EFFECTIVE DATE); OR (3) EXEMPLARY OR PUNITIVE DAMAGES. OPENTOKEN'S AGGREGATE LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT WILL NOT

D.CHEN FOIA REQUEST BATES NO. 001-000002

SEC-ChenD-E-0000003

EXCEED THE AMOUNT PAID TO OPENTOKEN UNDER THIS AGREEMENT FOR THE 12 MONTHS PRECEDING THE SUBJECT CLAIM.

7. **Indemnification**

Company shall defend, indemnify, and hold OpenToken harmless from and against any and all claims, suits, actions, debts, costs, charges, causes of action, damages, losses and expenses (including attorneys' fees) directly or indirectly arising out of or resulting from any and all acts or omissions of Company, its employees or affiliates.

8. **Intellectual Property Rights**

As between OpenToken and Company, OpenToken owns and retains all right, title and interest in and to any and all intellectual property provided or developed by OpenToken under this Agreement, including, but not limited to, hosted services, software, APIs, documentation and other systems, and any modifications, upgrades or enhancements thereto.

9. **Disclaimer**

SERVICES AND DELIVERABLES ARE PROVIDED "AS-IS". THERE ARE NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

10. **General**

    10.1. <u>Notices</u>. All notices of termination or breach must be in English, in writing, and addressed to the other Party's legal department. All other notices must be in English, in writing, and addressed to the other Party's primary contact. Notice can be by email and will be treated as given on receipt, as verified by written or automated receipt or by electronic log (as applicable).

    10.2. <u>Force Majeure</u>. Neither Party will be liable for failure or delay in performance to the extent caused by circumstances beyond its reasonable control.

    10.3. <u>No Waiver</u>. Neither Party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Agreement.

    10.4. <u>No Agency</u>. This Agreement does not create any agency, partnership, or joint venture between the Parties.

DocuSign Envelope ID: E3605B1A-A8E1-4805-9457-06119D9858BD
FOIA CONFIDENTIAL TREATMENT REQUESTED

10.5.     <u>No Third-Party Beneficiaries</u>. This Agreement does not confer any benefits on any third party unless it expressly states that it does.

10.6.     <u>Execution</u>. The Parties may execute this Agreement using electronic signatures, electronic copies, and counterparts.

10.7.     <u>Entire Agreement</u>. This Agreement sets out all the terms agreed between the Parties and supersedes all other agreements between the Parties as of the Effective Date relating to its subject matter. In entering into this Agreement, neither Party has relied on, and neither party will have any right or remedy based on, any statement, representation, or warranty (whether made negligently or innocently), except those expressly set out in this Agreement.

10.8.     <u>Amendments</u>. Any amendment must be in writing, signed by both Parties, and expressly state that it is amending this Agreement.

10.9.     <u>Severability</u>. If any term (or part of a term) of this Agreement is invalid, illegal or unenforceable, the rest of this Agreement will remain in effect.

10.10.    <u>Governing Law</u>. ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

**Signed by the parties' authorized representatives on the dates below.**

| **OpenToken, Inc.** | **Company:** Terraform Labs Pte. Ltd. |
|---|---|
| By: *Andrew Wang* (DocuSigned) 33C624E1C60A415... | By: *Don Kim* (DocuSigned) 6E22948E53664F8... |
| Name: Andrew Wang | Name: Don Kim |
| Title: COO | Title: Head of Business Development |
| Date: 11/12/2018 2:00:26 AM PST | Date: 11/12/2018 1:59:32 AM PST |

DocuSign Envelope ID: E3605B1A-A8E1-4805-9457-06119D9858BD
FOIA CONFIDENTIAL TREATMENT REQUESTED

# Exhibit A
## Services and Compensation

| | | |
|---|---|---|
| **1. "Term"** | "**Start Date**": 11/12/2018<br><br>"**End Date**": 12/31/2018<br><br>*Unless terminated earlier in accordance with the Agreement, the Term will begin on the Effective Date and end on the End Date.* | |
| **2. Services** | **Service Type** | **Service Description** |
| | • Listing the Purchase Agreement<br>• KYC / AML checks of interested buyers | Company may request OpenToken to list Company's Purchase Agreement with OpenToken. Company agrees:<br>• to promptly notify OpenToken in writing of any corporate action or other event which will cause the Company to cease to be in compliance with OpenToken's listing requirements and/or applicable law.<br>• to furnish to OpenToken on demand such information concerning the Company as OpenToken may request.<br>• that OpenToken is authorized to use Company's logos, web site address, trade names, and trade/service marks in order to convey information related to the Company's listing.<br>• that OpenToken will not be obligated to raise a minimum amount of capital for the Company. |

DocuSign Envelope ID: E3605B1A-A8E1-4805-9457-06119D9858BD

FOIA CONFIDENTIAL TREATMENT REQUESTED

| 3. Fees<br><br>*All fees are subject to Section 3 of the Agreement.* | Company will pay OpenToken the fees set forth below: | |
|---|---|---|
| | **Service Type** | **Service Fee** |
| | • Listing the Purchase Agreement | • $50,000 to be paid upon the signing of this agreement. |
| | • KYC / AML checks of interested buyers | • $5 for each additional KYC / AML check beyond the first 1,000 interested buyers. |