# EXHIBIT 11

# EXHIBIT RR

Case 1:23-cv-01346-JSR Document 123-31 Filed 05/07/23 Page 2 of 9
Case 1:22-cv-03600-BCM Document 123-31 Filed 05/07/23 Page 3 of 10
DocuSign Envelope ID: A3BE549C-0014-4631-8F22-7F29E6798C57

# MASTER DIGITAL CURRENCY LOAN AGREEMENT

This Master Digital Currency Loan Agreement ("Agreement") is made by and between Tai Mo Shan Limited, a Cayman Islands exempted company ("Borrower"), and Terraform Labs PTE LTD ("Lender"), a Singapore private exempt company (each a "Party" and collectively the "Parties").

## RECITALS

**WHEREAS**, Borrower may, from time to time, seek to initiate a transaction pursuant to which Lender will lend Digital Currency to Borrower and Borrower will return such Digital Currency to Lender upon the termination of the Loan;

Now, therefore, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Borrower and Lender hereby agree as follows:

**I.  Definitions**

"**Business Day**" means any day on which the banks used by Borrower are open for business.

"**Digital Currency**" means Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Litecoin (LTC), or any other so-called digital or crypto currency that the Borrower and Lender agree upon.

"**Digital Currency Address**" means an identifier of 26-34 alphanumeric characters that represents a possible destination for a transfer of Digital Currency.

"**Loan**" means a loan of Digital Currency made pursuant to and subject to this Agreement.

"**Loan Initiation Date**" means the date upon which a Loan begins.

"**Maturity Date**" means the date upon which a Loan is terminated.

**II.  General Operation**

(a) Loan Initiation

Subject to the terms and conditions hereof, Borrower may, in its sole and absolute discretion, request that Lender Loan to Borrower a specified amount of Digital Currency, and Lender may, in its sole and absolute discretion, agree to extend such Loan or decline to extend such Loan.

If Borrower and Lender agree to a Loan, Lender shall deliver to Borrower's Digital Currency Address the specified amount of Digital Currency (the "Borrowed Amount").

Specific terms of a Loan may be memorialized using the form of Loan Term Sheet attached as **Exhibit A**.

(b) <u>Recall or Return</u>

If the Loan in has an open term, then Lender may at any time and on any day (the "<u>Recall Request Day</u>") recall all or any portion of loaned Digital Currency (the "<u>Recall Amount</u>") by providing written notice to Borrower. Borrower will then have until 5:00 pm Central Time on the second Business Day after the Recall Request Day (the "<u>Recall Delivery Day</u>") to deliver the Recall Amount back to Lender.

If the Loan has a fixed term, then Borrower, must return the loaned Digital Currency by the Maturity Date.

Borrower may at any time (the "<u>Redelivery Day</u>") return to Lender all or any portion of the loaned Digital Currency.

(c) <u>Termination of a Loan</u>

A Loan will terminate upon redelivery by Borrower of all of the loaned Digital Currency back to Lender.

(d) <u>Time Zone</u>

All dates and times specified in this agreement shall be determined based on the time and date in Chicago, Illinois.

III. **<u>Interest and Fees</u>**

Borrower must pay Lender any interest or fees specified in the relevant Loan Term Sheet. Unless otherwise agreed by the Borrower and Lender, all such payments shall be due in the applicable Digital Currency on the Recall Delivery Day or Redelivery Day.

IV. **<u>Representations, Warranties, and Acknowledgements</u>**

(a) The Borrower represents to the Lender on the date hereof and on the date of each Loan Request made to the Borrower hereunder that each of this Agreement has been duly and validly authorized, executed and delivered on behalf of the Borrower and constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms (except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally and subject to the availability of equitable remedies).

(b) Each party hereto represents and warrants that it has not relied on the other for any tax or accounting advice concerning this Agreement and that it has made its own determination as to the tax and accounting treatment of any Loan or any Digital Currency or funds received hereunder.

(c) Lender represents and warrants that it has, or will have at the time of transfer of any Digital Currency, the right to transfer such Digital Currency subject to the terms and conditions hereof, and that it owns the Digital Currency, free and clear of all liens.

(d) Borrower represents and warrants that it has, or will have at the time of return of any Digital Currency, the right to transfer such Digital Currency subject to the terms and conditions hereof, and, free and clear of all liens and encumbrances other than those arising under this Agreement.

V. **Default**

It is further understood that the following defaults shall constitute events of default hereunder and are hereinafter referred to as an "Event of Default" or "Events of Default":

(a) the failure of the Borrower to return any Borrowed Amount or pay any Borrowing Fees when due hereunder;

(b) a material default in the performance of any of the other agreements, conditions, covenants, provisions or stipulations contained in any of the Loan Documents;

(c) any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings shall be instituted by or against a Party and shall not be dismissed within thirty (30) days of their initiation; or

(d) any representation or warranty made in any of the Loan Documents proves to be untrue in any material respect as of the date of making or deemed making thereof.

VI. **Remedies**

Upon the occurrence and during the continuation of any Event of Default, the non-defaulting Party may, at its option, (a) declare the entire Borrowed Amount outstanding hereunder immediately due and payable, (b) terminate this Agreement upon notice to the defaulting Party, and (c) exercise all other rights and remedies available to the non-defaulting Party hereunder, under applicable law, or in equity; provided, that upon any Event of Default pursuant to Section V, the Borrowed Amount and the amount of any Borrowing Fee then outstanding hereunder shall automatically become and be immediately due and payable.

VII. **Rights and Remedies Cumulative.**

No delay or omission by either Party in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder. All rights stated herein are cumulative and in addition to all other rights provided by law, in equity.

Case 1:23-cv-01346-JSR Document 123-31 Filed 05/10/23 Page 5 of 9
Case 1:23-cv-01346-JSR Document 123-31 Filed 05/10/23 Page 6 of 10
DocuSign Envelope ID: A3BE549C-0014-4631-8F22-7F29E6798C57

### VIII. Collection Costs.

In the event either Party fails to pay any amounts due or to return any Digital Currency hereunder, the defaulting Party shall pay to the non-defaulting Party upon demand all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs incurred by the non-defaulting Party in connection with the enforcement of its rights hereunder.

### IX. Governing Law; Dispute Resolution.

This Agreement is governed by, and shall be construed and enforced under, the laws of the Cayman Islands applicable to contracts made and to be performed wholly within such State, without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, the Parties shall first meet and attempt in good faith to negotiate a resolution. If a resolution cannot be reached by negotiation, the matter shall be submitted to a reputable mediator and the Parties shall attempt in good faith to resolve the matter with the assistance of the mediator. If said dispute cannot be settled through negotiation it shall be finally resolved by arbitration in the Cayman Islands. Each Party shall bear its own costs related to the dispute, and the costs of mediation and arbitration shall be borne equally by the Parties.

### X. Notices.

Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by Express or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or to the respective address set forth below. Any notice to Borrower must be sent by electronic mail, and additional copies of any notice to Borrower may also be sent to the physical mailing address below.

Lender:

    Terraform Labs PTE LTD
    80 RAFFLES PLACE #32-01 UOB PLAZA SINGAPORE (048624)
    Email: finance@terra.money

Borrower:

    Tai Mo Shan Limited
    600 W Chicago Ave #825
    Chicago IL 60654
    Email: legal@jumptrading.com

Either party may change its notice information by giving the other party written notice of its new information as provided above.

DocuSign Envelope ID: A3BE549C-0014-4631-8F22-7F29E6798C57

XI. **Modifications.**

All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

XII. **Entire Agreement.**

This Agreement and each exhibit referenced herein constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

XIII. **Successors and Assigns.**

This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of such party.

XIV. **Severability of Provisions.**

Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

XV. **Counterpart Execution.**

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

XVI. **Relationship of Parties.**

Nothing contained in this Agreement shall be deemed or construed by the parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being

understood and agreed that no provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Borrower and Lender.

### XVII. Term and Termination.

The Term of this Agreement shall commence on the date hereof, shall continue for a period of one year, and may be renewed for successive one-year terms annually provided the Parties so agree in writing no less than ten (10) days prior to the end of such one-year period. The foregoing notwithstanding, this Agreement may be terminated as otherwise specified in this Agreement.

### XVIII. Miscellaneous.

This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement. The Parties acknowledge that the Agreement and any Loan are the result of negotiation between the Parties which are represented by sophisticated counsel and therefore none of the Agreement's provisions will be construed against the drafter.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first above written.

LENDER:
Terraform Labs PTE LTD

By: *Do Kwon*
Name: Do Kwon
Title: Founder
Date: 14 November 2019

BORROWER:
Tai Mo Shan Limited

By: *Matthew Hinerfeld*
Name: Matthew Hinerfeld
Title: Authorized Signatory
Date: 19 November 2019

# EXHIBIT A

# LOAN TERM SHEET

The following loan agreement incorporates all of the terms of the Master Digital Currency Loan Agreement entered into by Tai Mo Shan Limited ("Tai Mo Shan") and  Terraform Labs PTE LTD  ("Lender") on  19 November 2019 , and the following specific terms:

| | |
|---|---|
| Borrower: | Tai Mo Shan Limited |
| Lender: | Terraform Labs PTE LTD |
| Loaned Digital Currency: | 30 million LUNA |
| Borrow Fee (Interest) | 2% annualized payable in LUNA |
| Loan Term: | 3 years following Borrower's receipt of the Loaned Luna from Lender (the "Reference Date") |
| Loan Initiation Date: | Lender must deliver the 30 million LUNA to Borrower no later than November 30, 2019. |
| CKB Call Options: | The price per LUNA of Borrower's first purchase or sale of LUNA on any exchange shall be the "Reference Price." |

Lender hereby grants to Borrower the following three American Style call options:

Option 1: Option to buy 10 million LUNA for a price per LUNA equal to the lower of (a) $.36 or (b) the Reference Price
Option 2: Option to buy 10 million LUNA for a price per LUNA equal to the lower of (a) $.46 or (b) the Reference Price plus $.10
Option 3: Option to buy 10 million LUNA for a price per LUNA equal to the lower of (a) $.56 or (b) the Reference Price plus $.20

Each of these options will expire on the date that is 3 years following the date of Borrower's receipt of the Loaned Luna (the "Expiration Date").

Borrower may exercise any of these call options, in whole or in part, by notifying Lender by electronic mail, at any time

|  | before 7 p.m. Central Time on the Expiration Date. To the extent that Borrower exercises a call option while any portion of the LUNA Loan remains outstanding: |
|---|---|

1. a corresponding amount of the LUNA Loan shall be deemed to have been simultaneously terminated,
2. Borrower's obligation to return the Loaned LUNA to Lender shall be deemed to have been net settled with Lender's obligation to deliver LUNA to Borrower as a result of the exercised call option, and
3. Borrower shall owe Lender the specified strike price multiplied by the number of LUNA purchased by Borrower as a result of Borrower's exercise of the call option, and shall pay this amount to Lender by no later than the end of the second Business Day following the date of the option exercise.

To the extent that Borrower exercises a call option beyond the amount of any LUNA Loan remaining outstanding, Lender shall have until the end of the second Business Day following the date of the option exercise to deliver to Borrower the number of LUNA specified in the exercise notice. After Borrower receives this LUNA, Borrower shall have until the end of the following Business Day to pay the purchase price specified above.

| Borrower Termination Right: | If Lender has not delivered the Loaned LUNA to Borrower by January 1, 2020, then Borrower shall have the right to void this loan and call option agreement by notifying Lender via electronic mail. |
|---|---|

Tai Mo Shan Limited

By: *Matthew Hinerfeld*
Name: Matthew Hinerfeld
Title: Authorized Signatory
Date: 19 November 2019

Terraform Labs PTE LTD

By: *Do Kwon*
Name: Do Kwon
Title: Founder
Date: 14 November 2019

SEC-JUMPTRADE-E-0000066