# EXHIBIT 13

# EXHIBIT VV



O'Melveny & Myers LLP　　T: +1 213 430 6000　　　　　　　File Number:
400 South Hope Street　　　F: +1 213 430 6407
18th Floor　　　　　　　　　omm.com
Los Angeles, CA 90071-2899

William K. Pao
D: +1 213 430 7272
wpao@omm.com

December 23, 2022

**VIA EMAIL**

**FOIA CONFIDENTIAL TREATMENT REQUESTED
BY COINBASE, INC.**

Kathleen M. Hitchins, Esq.
U.S. Securities and Exchange Commission
New York Regional Office
100 Pearl Street
New York, NY 10004

Re:　*In the Matter of Mirror Protocol (HO-14164)*

Dear Ms. Hitchins:

　　　　As you know, we represent Coinbase, Inc. ("Coinbase") in responding to the Commission's May 16, 2022, June 9, 2022, and December 5, 2022 subpoenas. Per our discussions, we will continue to produce documents and data responsive to your subpoena requests on a rolling basis.

　　　　As we discussed during our December 20, 2022 call, we are sending this letter to ENF-CPU and will upload via a secure file transfer protocol an encrypted zipfile that contains non-privileged documents responsive to the December 5, 2022 subpoena marked with Bates numbers COIN-HO-14164_0001594 to COIN-HO-14164_0001729.

- Requests 12-13: Coinbase is producing email communications and attachments to or from the email domain "@coinbase.com" and either (i) the email domain "terra.money," or (ii) certain key individuals employed by or affiliated with Terraform Labs Pte Ltd. ("TFL") not using email addresses with the domain "terra.money," where Coinbase was able to connect those email addresses to those individuals. [COIN-HO-14164_0001594 to COIN-HO-14164_0001691] These email communications cover the period of January 1, 2020 to July 31, 2020. Coinbase previously applied these search parameters to produce email communications and attachments for the period of August 1, 2020 to May 25, 2022. [COIN-HO-14164_0000035 to COIN-HO-14164_0001488]

- Request 2: Coinbase is producing the standard form listing agreement that TFL executed with Coinbase as part of the listing process for WLUNA and UST. [COIN-HO-14164_0001692 to COIN-HO-14164_0001707] As discussed during our December 20, 2022 call, TFL executed these agreements through an online process. Chang Joon Han executed the WLUNA listing agreement on behalf of TFL on March 28, 2021. Matthew

> Cantieri executed the UST listing agreement on behalf of TFL on May 5, 2021. Coinbase previously produced the executed listing agreement for MIR. [CB_MIRROR_00000017 to CB_MIRROR_00000031]

- Requests 10-11: Coinbase is producing scorecards and assessments concerning UST, WLUNA and MIR that were part of Coinbase's listing process. [COIN-HO-14164_0001708 to COIN-HO-14164_0001729]

The password to access the production will be emailed to you separately.

\* \* \* \* \* \*

This letter is not intended to, and does not, waive any applicable privilege. If material subject to any applicable privilege is included with this letter, the inclusion of such material is inadvertent.

On behalf of Coinbase, we request, pursuant to 17 C.F.R. § 200.83, that you accord confidential treatment to this letter and not disclose it and the information contained therein, to any person who is not an employee of the Commission, unless otherwise required to do so by law. Confidential treatment is requested to preserve the personal privacy of the individuals involved as well as the private business nature of matters reflected in the enclosed documents.

A photocopy of this letter is being sent to the Freedom of Information Officer, U.S. Securities and Exchange Commission, 100 F Street, N.E., Mail Stop 5100, Washington, D.C. 20549, together with a self-addressed stamped envelope. Should a request be made under FOIA for this letter or any of the above-referenced information, please notify me immediately. In the event that any person who is not an employee of the Commission (including any other private or governmental employee or agency not authorized by law) requests an opportunity to inspect the confidential information, we further request that we be furnished with a copy of all written materials pertaining to such request (including the request itself and any Commission determination with respect hereto) and be given sufficient advance notice of any intended release of the confidential information by the Commission so that Coinbase may, if deemed necessary or appropriate, pursue any available remedies.

If you have any questions, please contact me at 213-430-7272.

Sincerely,

William K. Pao
of O'MELVENY & MYERS LLP

# Coinbase Listing Services Agreement

This Listing Services Agreement ("**Agreement**") is between you and Coinbase Inc., a Delaware corporation ("**Coinbase**"). This Agreement governs your use of the Listing Services provided by Coinbase described below. Any references to "you" or "your" shall mean the company or other legal entity purchasing, accessing or using the Listing Services hereunder.

By accessing or using the Listing Services, you confirm that you have read, understand, and accept all of the terms and conditions contained in this Agreement, as well as our Privacy Policy, Cookie Policy, and E-Sign Consent Policy, and that you will only use the Listing Services for business and professional purposes.

This Agreement may be updated from time to time in accordance with Section 13.14 below. You are responsible for regularly reviewing the most current version of this Agreement, which is published at: assethub.coinbase.com.

For the avoidance of doubt, this Agreement applies only to Coinbase's Listing Services. The terms that apply to the use of Coinbase's websites or other services are available at https://www.coinbase.com/legal/user_agreement.

1. **DEFINITIONS.** The following words and terms shall have the following meanings:

    1.1. "**Applicable Law**" means any applicable law or legal requirement including without limitation, any federal, state, local, municipal, provincial, or other law, statute, ordinance, code, edict, decree, rule, regulation, ruling or requirement issued, enacted, adopted, promulgated, implemented or otherwise put into effect by or under the authority of any governmental body, including but not limited to applicable anti-money laundering, money service business, money transmission, data privacy and securities laws.

    1.2. "**Asset**" means any digital asset, digital currency, or other digital token.

    1.3. "**Claim**" means any third-party action, suit, litigation, arbitration, proceeding (including any civil, criminal, administrative, investigative or appellate proceeding), hearing, inquiry, audit, examination or investigation commenced, brought, conducted or heard by or before, or otherwise involving, any court or other governmental body or any arbitrator or arbitration panel.

    1.4. "**Coinbase Confidential Information**" means information, data or materials that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure by Coinbase to Company. Coinbase Confidential Information shall include all information that is not public with respect to the Site, Markets, and Custody including without limitation all Coinbase Technology and Proprietary Rights. Coinbase Confidential Information will not include any information that (a) is or becomes generally known to the public without breach of any obligation owed to the disclosing party, (b) was known to the receiving party prior to its disclosure by the disclosing party without breach of any obligation owed to the disclosing party, (c) is

FOIA Confidential Treatment Requested by Coinbase, Inc                    COIN-HO-14164_0001692

received from a third party without breach of any obligation owed to the disclosing party, or (d) was independently developed by the receiving party.

1.5.  "**Coinbase IP**" has the meaning set forth in Section 5.1 below.

1.6.  "**Coinbase Marks**" has the meaning set forth in Section 5.2 below.

1.7.  "**Coinbase Trading Policies**" means the Trading Rules posted at https://www.coinbase.com/legal/trading_rules, as amended from time to time, or otherwise attached to this Agreement and any other rules required to list the Asset.

1.8.  "**Coinbase User Agreement**" means any publicly facing user agreement provided by Coinbase to similarly situated institutional entities which governs use of the Company's Distribution Account.

1.9.  "**Company Affiliated Parties**" means (a) Company's directors, officers and employees; (b) consultants to Company or other persons associated with Company and/or its subsidiaries, including distributors, sales agents or other partners that may, in the course of their work with Company, receive access to confidential, Material Non-Public Information; and (c) household and immediate family members of those listed in (a) and (b) above.

1.10.  "**Company Confidential Information**" means information, data or materials that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure by Company to Coinbase. Company Confidential Information shall include all information that is not public with respect to the listing of the Listed Asset, including but not limited to, this Agreement, Diligence Materials and any communications, oral or written, between the Parties related to listing a Listed Asset. Confidential Information will not include any information that (a) is or becomes generally known to the public without breach of any obligation owed to the disclosing party, (b) was known to the receiving party prior to its disclosure by the disclosing party without breach of any obligation owed to the disclosing party, (c) is received from a third party without breach of any obligation owed to the disclosing party, or (d) was independently developed by the receiving party.

1.11.  "**Company Licensed Marks**" has the meaning set forth in Section 5.4 below.

1.12.  "**Confidential Information**" means Coinbase Confidential Information and Company Confidential Information.

1.13.  "**Custody**" means the Coinbase Custody platform and related storage services provided by Coinbase through the Site and related APIs.

1.14.  "**Damages**" means any liabilities, damages, diminution in value, payments, obligations, losses, costs and expenses, fines, security or other remediation costs, penalties (including any regulatory investigation or third-party subpoena costs, reasonable attorneys' fees, court costs, expert witness fees, and other expenses of litigation), and judgments (at law or in equity) of any nature.

**1.15.** "**Diligence Materials**" means all application information, financial information, technical specifications, and legal analysis, and other information about the Company and the Listed Asset furnished by Company in connection with Coinbase providing Listing Services or in connection with the Listed Asset.

**1.16.** "**Harmful Code**" means any "adware," "back door," "drop dead device," "malware," "time bomb," "Trojan horse," "virus," "worm" (as such terms are commonly understood in the software industry) or any other code designed or intended to have, or capable of performing, any of the following functions: disrupting, disabling, harming, or otherwise impeding in any manner the operation of, or providing unauthorized access to the Site, Markets, and/or Custody.

**1.17.** "**Listed Asset**" means the Company-affiliated Asset that is made available for public trading to Coinbase customers via Markets and/or storage via Custody, which shall include but is not limited to the Distributed Asset.

**1.18.** "**Listing Services**" has the meaning set forth in Section 2.1 below.

**1.19.** "**Market Manipulation**" means actions taken by any market participant or a Person acting in concert with a market participant which are intended to: (a) deceive or mislead other traders, (b) artificially control or manipulate the price or trading volume of an Asset, or (c) aid, abet, enable, finance, support, or endorse either of the above. Market Manipulation specifically includes, without limitation: front-running, wash trading, spoofing, layering, churning, and quote stuffing.

**1.20.** "**Markets**" means the Coinbase trading platform and related trading and wallet services provided by Coinbase through the Site and related APIs.

**1.21.** "**Material Change**" shall mean, with respect to a Party, any action, omission, or event which would have an material adverse effect in connection with (a) the ability of a Party to perform its obligations under this Agreement, and (b) any technical change which would impact the Listed Asset including without limitation, the characteristics, operation or function of the Listed Asset, Site, Markets, Custody or the Company's ability to comply with the terms of this Agreement.

**1.22.** "**Material Non-Public Information**" means information relevant to a purchasing decision related to the Listed Asset that has not yet been made available to the general public.

**1.23.** "**Person**" means any individual, corporation, partnership, trust, association, organization, governmental authority, or other entity.

**1.24.** "**Personal Data**" shall mean all data relating to one or more individual(s) who can be identified from such data or from such data together with other information which is in the possession of, or is likely to come into the possession of, a Party to the extent such data is protected by applicable data protection laws.

**1.25.** "**Prohibited Person**" means any individual that is a citizen of, or any entity that is formed in or has its principal place of business in, a country is subject to any embargo, prohibition or similar sanction under Applicable Laws or any individual who is

identified on the Specially Identified Nationals or Blocked Persons list provided by the U.S. Treasury Department.

1.26. "**Proprietary Rights**" means and shall include all rights of the following types, which may exist or be created under the Applicable Laws of any jurisdiction in the world: (a) rights associated with works of authorship, including exclusive exploitation rights, copyrights, moral rights, and mask works, (b) trademark and trade name rights and similar rights, including domain name rights, (c) trade secret rights, (d) patents and industrial property rights, (e) other intellectual property rights (whether or not appropriate steps have been taken to protect such rights under Applicable Law), and (f) all registrations, renewals, extensions, continuations, divisions, or reissues of, and applications for and rights to apply for, any of the rights referred to in clauses (a) through (e) above.

1.27. "**Rosetta**" means the specification and tooling used to standardize and structure the deployment, communication, and data formats of blockchain technology.

1.28. "**Rosetta Data API**" (found at https://www.rosetta-api.org/docs/data_api_introduction.html) means an interface which provides the ability to access blocks, transactions, and balances of any blockchain in standard format.

1.29. "**Rosetta Construction API**" (found at https://www.rosetta-api.org/docs/construction_api_introduction.html) means an interface which enables developers to write to a blockchain (i.e. construct transactions) in a standard format.

1.30. "**rosetta-cli**" means a command line interface that will validate the "correctness" of a Rosetta Data API and Rosetta Construction API implementation.

1.31. "**Site**" means www.coinbase.com and related domains.

1.32. "**Technology**" means (a) any or all inventions (whether patentable or not), invention disclosures, improvements, proprietary information, know how, technology, technical data and customer lists, rights of privacy and publicity, and all documentation relating to any of the foregoing, (b) all computer software and other technology, including all source code, object code, firmware, development tools, files, records and data, all media on which any of the foregoing is recorded and all documentation related to any of the foregoing, (c) all software and other technology that is used, in combination with other open source or generally commercially available third party technology, to enable, administer, or control the creation, destruction, or transfer of the applicable Asset, and (d) composition, work of authorship, computer program, product, prototype, sample, model, idea, invention, design, discovery, development, improvement, method, technique, process, algorithm, formula, treatment, composition of matter, device, know-how, trade secret, or other technology and the like, whether or not patentable or copyrightable, and whether or not reduced to practice.

1.33. "**Term**" has the meaning set forth in Section 12.1 below.

1.34. "**Territory**" means the list of territories designated by Coinbase in its sole discretion and which Coinbase may add, remove, or otherwise amend from time to time.

1.35. "**Token Transactions**" means Company trading or storage of Listed Assets on the Markets or Custody by Company or Company Affiliated Parties.

2. **LISTING SERVICES**

2.1. **Scope and Purpose of Asset Listing.** Subject to the terms and conditions of this Agreement and satisfactory completion of Coinbase's diligence process, and without limiting Coinbase's rights to terminate, remove or suspend Company or any asset from Markets and/or Custody, Coinbase will make the Listed Asset available for public trading on the Markets and/or storage on Custody in all or parts of the Territory (the "**Listing Services**").

2.2. **Trading; Lockup Period; Restrictions..** Subject to any and all restrictions and other obligations of the Company in this Agreement and its internal trading policies, Company agrees to fully comply with the Trading Rules in effect at the time it engages or attempts to engage in any transaction or trading in the Listed Asset on the Markets. Unless otherwise agreed by the Parties in writing, the Company agrees that for seven (7) days from the date the Listed Asset is made available for public trading on Markets that the Company shall not (nor permit any Company Affiliated Party to) trade the Listed Asset in any capacity, on any exchange, including Markets. The Company shall not (nor permit any Company Affiliated Party to) engage in Market Manipulation nor trade on the basis of Material Non-Public Information. Coinbase reserves the right to limit the Company's or the Company Affiliated Parties' use of Markets and the Site or take any other action to preserve market integrity and prevent abusive use of the Markets, at Coinbase's sole discretion.

2.3. **De-Listing.** Coinbase may suspend or remove any Listed Asset on the Markets or Custody in its sole discretion. This includes by way of example and without limitation, the following circumstances: (a) ) there is a "Hard Fork", "Smart Contract Upgrade" or other technological development that Coinbase determines, in its sole discretion, may jeopardize continuous, ordinary operations, (b) Coinbase or any regulator has commenced any investigation or inquiry with respect to the Company or any Listed Asset, (c) Company does not disclose a Material Change to Coinbase, (d) the Company is otherwise in material breach of its obligations under this Agreement, (e) Coinbase system upgrade or maintenance, or (f) suspected malicious or fraudulent conduct by the Company that would hurt Coinbase community users' interests and trading volume, price or user counts remain low for a period of time.

2.4. **Hard Fork or Smart Contract Upgrade.** To the extent applicable, Company shall notify Coinbase in the event of any "Hard Fork" or "Smart Contract Upgrade" sixty (60) days (or if sixty (60) days cannot be met no less than as soon as reasonably possible) prior to such event occurring. The Company acknowledges and agrees that Coinbase will not have any obligation to provide any support for or in

connection with any type of event and may suspend all transactions until Coinbase in its sole discretion determines blockchain stability.

    **2.5.** **Significant Technological Change.** The Company shall notify Coinbase of any Company-proposed technological change that could materially and adversely impact the value, security, operation, or safety of the Listed Asset (the "**Significant Technological Change**") thirty (30) days (or if thirty (30) days cannot be met, no less than as soon as reasonably possible) prior to Company's public proposal of the Significant Technological Change. The Company shall also notify Coinbase as soon as reasonably possible if it learns of a Significant Technological Change that has occurred, or is almost certain to occur, outside of Company's control. Further, the Company shall notify Coinbase as soon as reasonably possible if there is an upgrade or migration to its network that causes the Company's Rosetta Data API and Rosetta Construction API to no longer pass the rosetta-cli automated testing suite. The Company acknowledges and agrees that Coinbase will not have any obligation to provide any support for or in connection with any type of event and may suspend all transactions until Coinbase in its sole discretion determines blockchain stability.

3. **COMPANY OBLIGATIONS.**

    **3.1.** **Due Diligence.** Company will complete, in a timely manner, all Diligence Materials. Company acknowledges and agrees that completion of all Diligence Materials to Coinbase's satisfaction shall be a condition precedent to Coinbase's performance under this Agreement. Coinbase may, in addition to and without waiving its rights or remedies under this Agreement, request Company to provide material updates to Diligence Materials and Company shall undertake reasonable efforts to promptly comply.

    **3.2.** **Notices to Coinbase.** For all notices and communications required to be provided by Company under this Agreement, Company will notify Coinbase through the normal communications channels used by Company and will also send a copy of such communication by email to legal@coinbase.com.

    **3.3.** **Rosetta Services.** Subject to the terms and conditions of this Agreement, Company agrees to utilize the **Rosetta Data API** and the **Rosetta Construction API.** Company further agrees to validate the accuracy of its Rosetta implementation by running the **rosetta-cli.** Company acknowledges and agrees that Coinbase does not have any obligation to list the Company's Asset after its Rosetta implementation is complete. Further information can be found at: https://www.rosetta-api.org/ and https://github.com/coinbase/rosetta-specifications. This section shall not apply if the Listed Asset is a token on the Ethereum blockchain, such as an ERC20 or ERC721 token.

    **3.4.** **Material Change.** Company will immediately notify Coinbase of any Material Change. Such Material Change may, at Coinbase's determination, constitute a default by Company for purposes of Section 12. Further, subject to Section 3.3, if Coinbase plans to update the Rosetta specification, SDK, or testing suit, Coinbase will notify the Company 3 (three) weeks in advance, which will then hold the Company

FOIA Confidential Treatment Requested by Coinbase, Inc    COIN-HO-14164_0001697

responsible for updating its Rosetta implementation. Company will notify Coinbase of any Material Change by email to crypto@coinbase.com.

**3.5. Prohibited Conduct.** Company shall not (nor permit any third party to) directly or indirectly: (a) use the Site, Markets, Custody, or Coinbase IP in violation of Applicable Law, rule or regulation including without limitation, in a manner that violates privacy rights; (b) take any action that would cause technical disruption to, interference with, or damage to the Listed Asset, Site Markets or Custody; or (c) cause errors or bugs in the code of the underlying the Listed Asset (and shall be responsible for any and all losses and/or Damages arising from the same to Coinbase or any third party and reimburse Coinbase for such losses and/or Damages).

**3.6 Company Trading Policies.** If the Company intends to engage in Token Transactions on Coinbase Markets, Company shall implement and maintain at all times policies and procedures reasonably designed to:

3.6.1. Provide advanced public disclosure in a permanent format, such as a blog post, that Company expects to engage in Token Transactions. The disclosure shall describe in general terms the purpose and methodology of such transactions and shall be updated as relevant;

3.6.2. Limit Token Transaction daily volume (as measured from 12:00 AM UTC to 11:59 PM UTC) to 25% of average daily US dollar volume of the trailing 30 days, as measured by Nomics, (1) on the Markets, and (2) aggregated across all markets globally, promptly providing Coinbase information requested on a periodic basis regarding global trading to permit monitoring of compliance with the volume limits; and

3.6.3. (1) Prevent the purchase by Company of Listed Assets at a price greater than the higher of (i) the last transacted price or (ii) the current bid; and (2) prevent the sale by Company of Listed Assets at a price lower than (i) the lower of the last transacted price or (ii) the current offer, and (3) require that all orders for Token Transactions by Company on any trading platform must be entered and executed as limit orders.

**3.7 Market Manipulation.** Company agrees that it will not (nor permit any Company Affiliated Party to) engage in any Market Manipulation, including Token Transactions as a part of a plan or scheme to evade the federal securities laws. In connection with a Token Transaction, Company shall not, directly or indirectly, manipulate or attempt to manipulate the price of its Listed Asset and shall remain at all times in compliance with governing rules and regulations, including anti-manipulation requirements.

**4. COINBASE OBLIGATIONS.**

**4.1. Notices to Company.** For all notices and communications required to be provided by Coinbase under this Agreement, Coinbase will notify Company through the normal communications channels used by Coinbase and will also send a copy of such communication to the email associated with Company's Coinbase Asset Hub Account.

FOIA Confidential Treatment Requested by Coinbase, Inc          COIN-HO-14164_0001698

**4.2. Material Change**. Coinbase will immediately notify Company of any Material Change that has occurred with respect to Coinbase.

**4.3. Prohibited Conduct.** Coinbase will strictly avoid engaging in Market Manipulation and will not disclose any Company Confidential Information except as permitted in Section 10.2 below.

## 5. INTELLECTUAL PROPERTY RIGHTS.

**5.1. Coinbase Proprietary Rights**. As between the Parties, Coinbase owns any and all right, title, and interest in and to all Coinbase Technology and Proprietary Rights related to the Site, Markets, or Custody, including without limitation any Coinbase Technology and Proprietary Rights related to user accounts and transactions involving the Listed Asset on the Markets or Custody ("**Coinbase IP**"). Company acquires no right, title, or interest in or to any Coinbase IP under this Agreement. Without limiting the foregoing, to the extent Company provides any feedback or other data specific to the Site, r Markets, and/or Custody, Coinbase shall have a perpetual, royalty-free, and unrestricted right to use such feedback in any manner without attribution to Company. If Company should have access to any Coinbase IP, Coinbase hereby grants to Company a limited, revocable right and license during the Term solely to use such Coinbase IP in connection with the Markets and/or Custody solely as necessary to perform its obligations under this Agreement.

**5.2. Coinbase Marks**. Coinbase shall retain all right, title, and interest in and to any of its company names, logos, services marks, trademarks or other branding (the "**Coinbase Marks**") and is also the owner of the goodwill attached or that shall become attached. All uses of the Coinbase Marks hereunder shall inure to the benefit of Coinbase and Company shall not do or cause to be done any act or thing that may in any way adversely affect any rights of Coinbase in and to the Coinbase Marks or otherwise challenges the validity of the Coinbase Marks or any application for registration thereof, or any trademark registration thereof, or any rights therein.

**5.3. Company Technology**. As between the Parties, Company owns any and all right, title and interest in and to all Company Technology and Proprietary Rights therein, including without limitation any Technology and Proprietary Rights related to the Listed Asset. Company hereby grants Coinbase and its affiliates and subsidiaries a royalty-free limited, irrevocable right and license during the Term, to use Company Technology solely as necessary to fulfill its obligations hereunder including, without limitation, to include the Listed Asset on the Markets and/or Custody.

**5.4. Company Licensed Marks**. Company hereby authorizes and licenses to Coinbase on a limited, non-transferable and royalty free basis during the Term and thereafter the right for Coinbase to use (a) any name, abbreviation or symbol for the Listed Asset and (b) Company' name, logos, web site address, trademarks, service marks, tradenames and other branding (collectively "**Company Licensed Marks**") (i) to publicize the Listed Asset on the Site, Markets, and/or Custody, (ii) in connection with Site, Markets, and/or Custody activities (including, without limitation, providing

information related to deposits, withdrawals, account balances, quotes, trades, and other transaction related information), (iii) for preparing and maintaining transaction records and information, (iv) for other uses and purposes associated with listing the Listed Asset on the Site,Markets, and/or Custody, and any compliance or other requirements of Coinbase, and (v) any marketing or promotional activities related to the Site,Markets, and/or Custody by Coinbase. Any goodwill associated with use of the Company Licensed Marks by Coinbase will inure to the benefit of Company and Coinbase will not challenge or otherwise contest the validity of the Company Licensed Marks.

6. **REPRESENTATIONS & WARRANTIES.**

    **6.1. General Representations and Warranties.** Each Party represents and warrants to the other Party that:

        **6.1.1.** It is duly organized, validly existing and in good standing under the laws of its jurisdiction of formation and has all necessary power and authority: (a) to conduct its business in the manner in which its business is currently being conducted, (b) to own and use its Technology and Proprietary Rights in the manner in which such assets are currently owned and used, and (c) is qualified, authorized, registered or licensed to do business in all jurisdictions in which it does business except where the failure to be so qualified would not reasonably be expected to result in a Material Change with respect to the Party or the validity of this Agreement;

        **6.1.2.** It has the corporate power and authority to enter into and to perform its obligations under this Agreement; the execution, delivery, and performance by each Party to this Agreement has been duly authorized by all necessary action on the part of such Party and its board of directors; and this Agreement constitutes the legal, valid, and binding obligation of each Party, enforceable against it in accordance with its terms;

        **6.1.3.** Neither the execution, delivery or performance of this Agreement will contravene, conflict with or result in a violation of (a) any of the provisions of a Party's certificate of incorporation, bylaws or other similar governing documents, (b) any Applicable Law, or (c) the terms of any other agreements to which it is a party or its obligations thereunder;

        **6.1.4.** Neither it nor any of its shareholders, directors, officers or other principals is a Prohibited Person;

        **6.1.5.** It has all necessary rights to its Technology as applicable;

        **6.1.6.** It has all necessary consents, permissions, and licenses to collect and process Personal Data under the terms of this Agreement, as applicable, and shall have a privacy policy that complies with all Applicable Laws and any applicable self-regulatory principles;

**6.1.7.** Within fifteen (15) days of the Effective Date, it has an effective program to prevent insider trading and Market Manipulation; and

**6.1.8.** It and its personnel shall not disclose any Material Non-Public Information related to or arising out of this Agreement and shall not engage in any Market Manipulation; and

**6.1.9.** It understands and acknowledges that the Listed Asset is based on distributed, open-source technology, and as such, that the Listed Asset is subject to a variety of technical risks beyond the control or responsibility of Coinbase or Company.

**6.2.** **Company Representations and Warranties.** Company represents and warrants to Coinbase that:

**6.2.1.** The Diligence Materials are true, accurate, and complete in all respects and the Listing Asset does not violate any Applicable Law;

**6.2.2.** As of the Effective Date and throughout the Term of this Agreement, Company will disclose to Coinbase as soon as practicable, that a Listed Asset is deemed a "security" or "derivative" under Applicable LAws and the generation, creation, issuance, offering, sale or other transactions in connection with the Listed Asset is considered an offering of a "security" or "derivative" under Applicable Laws; the Listed Asset is subject to a registration statement or subject to an applicable exemption under Applicable Laws and are not subject to any restrictions on resale;

**6.2.3.** It has no knowledge of any past, present, or pending proceeding, investigation, or legal action against Company in connection with any aspect of its business by any government agency, self-regulatory organization, department, regulatory, legal or supervisory body in any jurisdiction; and

**6.2.4.** Company has engaged and been advised by appropriately experienced and qualified legal counsel and other professional advisors with respect to the representations and warranties provided herein.

7. **DISCLAIMER.**

EXCEPT AS OTHERWISE SET FORTH HEREIN, COINBASE TECHNOLOGY AND THE SITE, MARKETS, CUSTODY, AND ANY TECHNOLOGY, SERVICES, OR PRODUCTS THAT ARE PROVIDED TO COMPANY BY COINBASE OR ANY OF ITS AFFILIATES OR SUBSIDIARIES ARE PROVIDED ON AN "AS IS" BASIS. EXCEPT AS OTHERWISE SET FORTH HEREIN, COINBASE EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, SERVICE LEVELS, AND INDEMNITIES, EXPRESS OR IMPLIED RELATED TO THE MARKETS, CUSTODY, SITE, OR ANY SERVICES PROVIDED IN CONNECTION WITH THE LISTED ASSET (INCLUDING ANY

LISTING, REMOVAL, AND TRADING OR INABILITY TO TRADE ANY LISTED ASSET), THE SITE, MARKETS, AND/OR CUSTODY (INCLUDING ANY INABILITY TO USE THE SITE MARKETS, AND/OR CUSTODY, AND ANY LOSS OF VALUE RELATED TO THE LISTED ASSET OR ANY TECHNOLOGICAL DISRUPTION), OR ANY OTHER GOODS, SERVICES OR OTHER ITEMS PROVIDED UNDER OR IN CONNECTION WITH ANY OF THE FOREGOING OR OTHERWISE UNDER THIS AGREEMENT, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, OR NON-INFRINGEMENT AND ANY WARRANTIES ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE.

8. **INDEMNIFICATION.** Each Party will defend, indemnify, and hold harmless the other Party, and its respective pas, present, and future employees, officers, directors, contractors, consultants, equity holders, parent companies, subsidiaries, affiliates, attorneys, agents, representatives, precessors, and assigns (individually and collectively, the "**Indemnified Parties**") as set forth below.

   8.1. Company agrees to defend and indemnify and hold harmless Coinbase and its affiliates from and against any and all Claims and Damages resulting from, in connection with, or arising out of (1) Company's use of the Listing Services or breach (or alleged breach) of this Agreement, including without limitation any noncompliance with, inaccuracy of or misrepresentation in any representation, warranty, or covenant (2) Company's violation of the rights of any third party or violation of Applicable Law, (3) any Harmful Code in any Listed Asset or Company Technology, or (4) any negligence, intentional misconduct or act or omission of Company or its employees, agents, contractors or representatives.

   8.2. Coinbase agrees to defend and indemnify and hold harmless Company and its affiliates from and against any and all Claims and Damages resulting from in connection with, or arising out of the violation misappropriation, infringement of any patent, copyright, trademark, trade secret or other intellectual property right of any other third party relating to Company's use of the Listing Services, unless such claims arise out of Company's gross negligence, willful misconduct or breach of this Agreement.

   8.3. In the case of a Claim relating to the violation, misappropriation, or infringement of any patent, copyright, trademark, trade secret or other intellectual property right of any other third party based solely on Company's use of the Listing Services, Coinbase's indemnification obligation shall only apply if Company (1) notified coinbase promptly in writing no later than 30 days after Company receives notice of the Claim (or sooner if required by applicable law), (2) gives Coinbase sole control of the defense and any settlement negotiations, and (3) gives Coinbase the information, authority, and assistance Coinbase needs to defend against or settle the Claim. For the avoidance of doubt, Coinbase will not indemnify Company, (i) to the extent that such a Claim is based upon any information, specification, instruction, software, service, data, or material not furnished by Coinbase, (ii) for any portion of such a Claim that is based upon the combination of the Listing Services with any information, specification, instruction, software, service, data, or material not provided by Coinbase, or (iii) for any such Claims know to Company at the time the Listing Services are used or accessed.

FOIA Confidential Treatment Requested by Coinbase, Inc                    COIN-HO-14164_0001702

**8.4.** The indemnifying Party will not settle any Claim without the Indemnified Parties' prior written consent, provided that (i) the Indemnified Parties may approve the choice of counsel (which approval shall not be unreasonably withheld), and (ii) if there is any delay in the defense of the Claim by an Indemnifying Party or any other reason where any of the Indemnified Parties would be materially prejudiced by the Indemnifying Party's control of the defense (including without limitation, in the case of Coinbase as the Indemnified Party, a Claim related to Coinbase Technology (including the Site, Markets, and/or Custody) or Coinbase's Proprietary Rights in the same, or any potential regulatory action or alleged violation of by Coinbase of Applicable Law), then the Indemnified Party may elect to assume the control of the defense thereof at its sole cost.

## 9. LIMITATION OF LIABILITY.

**(A)** IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR BUSINESS OR LOSS OF VALUE OF ANY LISTED ASSET) ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF COINBASE OR COMPANY), EVEN IF COINBASE OR COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND **(B)** THE AGGREGATE LIABILITY OF EITHER PARTY SHALL NOT EXCEED ONE HUNDRED AND TWENTY FIVE THOUSAND DOLLARS ($125,000 USD). NOTWITHSTANDING THE FOREGOING, COMPANY'S INDEMNIFICATION OBLIGATIONS SHALL NOT EXCEED FIVE MILLION AND NO/100 DOLLARS ($5,000,000 USD).

THE FOREGOING LIMITATIONS IN SUBSECTIONS 9(A) AND 9(B) ABOVE SHALL NOT APPLY TO: (A) A BREACH OF SECTION 10 (CONFIDENTIALITY), OR (B) A PARTY'S GROSS NEGLIGENCE, FRAUD, OR WILLFUL MISCONDUCT.

## 10. CONFIDENTIALITY.

**10.1. Coinbase Confidential Information**. The Company may use the Coinbase Confidential Information only in connection with its performance of the rights and obligations under this Agreement. The Company acknowledges that it shall keep strictly confidential the existence of this Agreement, or any terms or conditions hereof, whether or when any Listed Asset may be traded on the Markets (prior to being listed on the Markets), or any other support or services may be provided by Coinbase related to any Listed Asset, and any disputes between the Parties (other than such disputes that become a matter of public record). Company will maintain in confidence and will not disclose Coinbase Confidential Information to any third party (except as provided herein), using the same degree of care, but no less than reasonable care, as it uses to protect its own confidential information of a similar nature. Company may disclose the Coinbase Confidential Information only to the receiving employees and outside consultants (including its legal counsel, its insurance carriers and agents, and its financial and accounting advisers) who (a) have a need to know such Coinbase Confidential

Information, (b) are made aware of the confidential and/or proprietary nature of the Confidential Information , (c) are under an obligation to protect such confidential and/or proprietary information, and (d) for whose breach Company shall be liable. At any time upon the written request of Coinbase, Company shall promptly return all Coinbase Confidential Information to Coinbase, except as necessary for governmental compliance, the Coinbase Confidential Information, including all copies thereof; provided, however, that Company may keep one copy of all Coinbase Confidential Information solely for the purpose of complying with Applicable Laws or of ensuring compliance with this Agreement. At Coinbase's request, the Coinbase Confidential Information that is required to be returned shall be destroyed and such destruction shall be certified in writing by an authorized representative of Company. The return and/or destruction of such Coinbase Confidential Information as provided above shall not relieve Company of its other obligations under this Agreement.

**10.2. Company Confidential Information.** Coinbase may use Company Confidential Information only in connection with its performance of the rights and obligations under this Agreement. Coinbase acknowledges that it shall keep strictly confidential the existence of this Agreement, or any terms or conditions hereof, whether or when any Listed Asset may be traded on the Markets (prior to being listed on the Markets), or any other support or services may be provided by Coinbase related to any Listed Asset, and any disputes between the Parties (other than such disputes that become a matter of public record). Coinbase will maintain in confidence and will not disclose Company Confidential Information to any third party (except as provided herein), using the same degree of care, but no less than reasonable care, as it uses to protect its own confidential information of a similar nature. Coinbase may disclose Company Confidential Information only to the receiving employees and outside consultants (including its legal counsel, its insurance carriers and agents, and its financial and accounting advisers) who (a) have a need to know such Company Confidential Information, (b) are made aware of the confidential and/or proprietary nature of Company Confidential Information, (c) are under an obligation to protect such confidential and/or proprietary information, and (d) for whose breach Coinbase shall be liable. At any time upon the written request of Company, Coinbase shall promptly return all Company Confidential Information to Company, except as necessary for governmental compliance, Company Confidential Information, including all copies thereof; provided, however, that Coinbase may keep one copy of all Company Confidential Information solely for the purpose of complying with Applicable Laws or of ensuring compliance with this Agreement. At Company's request, Company Confidential Information that is required to be returned shall be destroyed and such destruction shall be certified in writing by an authorized representative of Coinbase. The return and/or destruction of such Company Confidential Information as provided above shall not relieve Coinbase of its other obligations under this Agreement. It is further understood and acknowledged that such obligation to return or destroy Company Confidential Information shall not relate to copies of Confidential Information retained pursuant to a bona fide and consistently applied document retention policy.

**11. PUBLICITY.**

FOIA Confidential Treatment Requested by Coinbase, Inc                COIN-HO-14164_0001704

Company will not (a) use any Coinbase Marks without prior written consent of Coinbase in each instance, which may be withheld in the sole discretion of Coinbase, (b) issue any press release or make any other announcement or public statement, or conduct any marketing activities referencing the Site,Markets, Custody or Coinbase Marks without the prior written permission of Coinbase, or (c) disclose the listing arrangement before the Listed Asset is available on the Markets and/or Custody.

12. **TERM; TERMINATION.**

    **12.1.** The term of this Agreement ("**Term**") shall commence on the Effective Date and continue in full force and effect until terminated by either Party: (a) if the other Party has materially defaulted in the performance of any of its obligations under this Agreement and has not cured such default within thirty (30) business days of receipt of written notice from the non-defaulting Party of such default or (b) upon (i) the filing of a petition for relief under the Bankruptcy Code or the institution of any other insolvency proceedings by, against, or on behalf of the other Party, (ii) the appointment of a receiver for the other Party, (iii) the dissolution or liquidation of the other Party, or (iv) any act of insolvency by the other Party. Coinbase may also terminate this Agreement for convenience upon thirty (30) days written notice to Company.

    **12.2.** In the event of termination of this Agreement for any reason, the Parties will work together in good faith to ensure an orderly wind-down of the Agreement that minimizes disruption to users of the Listed Asset including distribution to Eligible Recipients of any Listed Assets remaining in Company's Coinbase Account.

    **12.3.** The following sections survive termination of this Agreement for any reason: Section 5 (Intellectual Property Rights); Section 8 (Indemnification); Section 9 (Limitation of Liability); Section 10 (Confidentiality); and Section 11 (Publicity).

13. **MISCELLANEOUS.**

    **13.1. Assignment**. Company may not assign, transfer, or delegate any of its rights or obligations under this Agreement without the prior, written consent of Coinbase. Coinbase may assign its rights and obligations under this Agreement without restriction, including without limitation to any affiliates or subsidiaries, or to any successor in interest of any business associated with the Listing Services. Any attempted transfer or assignment in violation hereof shall be null and void. Subject to the foregoing, this Agreement will bind and inure to the benefit of the parties, their successors and permitted assigns.

    **13.2. Governing Law; Jurisdiction**. This Agreement shall be governed by, and construed in all respects in accordance with, California law and the laws of the state of California and shall be subject to the exclusive jurisdictions of the state and federal courts located in San Francisco, California.

    **13.3. Arbitration**. Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall

FOIA Confidential Treatment Requested by Coinbase, Inc      COIN-HO-14164_0001705

be referred to and finally resolved by arbitration under the JAMS Rules. The number of arbitrators shall be one (1). The seat, or legal place, of arbitration shall be San Francisco, California. The language to be used in the arbitral proceedings shall be English.

**13.4.** **Attorneys' Fees**. In any action or proceeding to enforce this Agreement, the prevailing party will be entitled to recover costs and reasonable attorneys' fees.

**13.5.** **Taxes**. Each party shall be responsible for reporting and discharging its own tax compliance obligations arising under this Agreement. Each party shall protect, defend, and indemnify each other party from and against any and all Damages arising from the indemnifying party's failure or refusal to report and discharge such taxes or satisfy such obligations. Notwithstanding the foregoing, Coinbase is responsible for ensuring compliance with applicable tax reporting and/or tax withholding obligations that arise in connection with the Listing Services.

**13.6.** **Severability**. If any provision of this Agreement is held by an arbitrator or court of competent jurisdiction to be illegal or unenforceable, the provision will be modified so as to be enforceable to the maximum extent possible under Applicable Law in accordance with the original intent of the provision and the remainder of this Agreement will remain in full force and effect.

**13.7.** **Entire Agreement; Waiver**. This Agreement constitutes the entire agreement between the Parties regarding the subject hereof and supersedes all prior or contemporaneous agreements, understandings, and communication, whether written or oral with respect to the subject matter hereof. Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of any other provision or of such provision on any other occasion.

**13.8.** **Counterparts**. This Agreement may be executed in counterparts (including via fax or .pdf), each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.

**13.9.** **Waiver of Jury Trial**. Each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

**13.10.** **Force Majeure**. Neither party shall be deemed in default of this Agreement to the extent that performance of its obligations (other than Company's payment obligations) or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, accident, riots, acts of government, acts of war or terrorism, shortage of materials or supplies, failure of transportation or communications or of suppliers of goods or services, malicious acts of third parties against either party's information technology systems or infrastructure or any other cause beyond the reasonable control of such party.

**13.11.** **No Third-party Beneficiaries**. This Agreement is for the sole benefit of the Parties hereto and their respective permitted successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person

any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**13.12. Relationship of the Parties**. The relationship between the Parties is that of independent contractors. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment or fiduciary relationship between the Parties, and neither party shall have authority to contract for or bind the other party in any manner whatsoever.

**13.13. Amendments**. Coinbase may change any part of this Agreement at any time by posting the revised terms on the Coinbase website at assethub.coinbase.com or emailing to you the revised Agreement. The updated Agreement will be effective as of the time of posting, or on such later date as may be specified in the updated Agreement, and your continued use of the Listing Services after any such changes are effective will constitute your consent to such changes. It is important for you to review this Agreement before using the Listing Services and from time to time, though we will notify you of any changes that, in our sole discretion, materially impact this Agreement. If the revised Agreement includes such a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change becomes effective. Except for changes made by us as described here, no other amendment or modification of this Agreement will be effective unless otherwise agreed in writing by both you and Coinbase. If you do not agree with any modifications to the Agreement made hereunder, your sole and exclusive remedy is to terminate your use of the Listing Services. You agree that we shall not be liable to you or any third party for any modification or termination of the Listing Services hereunder.

FOIA Confidential Treatment Requested by Coinbase, Inc        COIN-HO-14164_0001707