1  JOEL D. SIEGEL (SBN 155581)
   joel.siegel@dentons.com
2  ANDREW M. PENDEXTER (SBN 310752)
   andrew.pendexter@dentons.com
3  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
4  Los Angeles, CA 90017-5704
   Telephone: 213.623.9300
5  Facsimile: 213.623.9924

6  DOUGLAS W. HENKIN (Admitted *Pro Hac Vice*)
   douglas.henkin@dentons.com
7  DENTONS US LLP
   1221 Avenue of the Americas
8  New York, NY 10020-1089
   Telephone: 212.768.6700
9  Facsimile: 212.768.6800

10 STEPHEN J. SENDEROWITZ (Admitted *Pro Hac Vice*)
   stephen.senderowitz@dentons.com
11 DENTONS US LLP
   233 South Wacker Drive, Suite 5900
12 Chicago, IL 60606-6361
   Telephone: 312.876.8141

13
14 Attorneys for Defendants
   TERRAFORM LABS, PTE. LTD. and
   DO KWON

15                    UNITED STATES DISTRICT COURT

16         NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

17 NICK PATTERSON, Individually and on Behalf          Case No. 3:22-cv-03600
   of All Others Similarly Situated,
18                                                     **REPLY IN SUPPORT OF MOTION TO
                        Plaintiffs,                    DISMISS/COMPEL ARBITRATION
19                                                     (ECF NO. 122)**
                   v.
20                                                     Date:      September 19, 2023
   TERRAFORM LABS, PTE. LTD., JUMP              Time:      2:00 p.m.
21 CRYPTO, JUMP TRADING LLC, REPUBLIC           Dept.:     Courtroom 9, 19th Floor
   CAPITAL, REPUBLIC MAXIMAL LLC,               Judge:     Hon. Trina L. Thompson
22 TRIBE CAPITAL, DEFINANCE
   CAPITAL/DEFINANCE TECHNOLOGIES OY,           Action Filed: July 17, 2022
23 GSR/GSR MARKETS LIMITED, THREE
   ARROWS CAPITAL PTE. LTD., NICHOLAS           Trial Date: None Set
24 PLATIAS, AND DO KWON,

25                      Defendants.

26
27
28

# TABLE OF CONTENTS

**Page**

I.      LEAD PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION ................ 8

II.     THE SAC MUST BE DISMISSED IN FAVOR OF ARBITRATION ........................... 11

III.    LEAD PLAINTIFF'S FEDERAL SECURITIES CLAIMS FAIL ................................ 13

IV.     LEAD PLAINTIFF'S RICO CLAIMS FAIL ............................................................. 19

V.      LEAD PLAINTIFF'S STATE LAW CLAIMS FAIL .................................................. 21

VI.     LEAD PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND ........................... 22

CONCLUSION ............................................................................................................. 22

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. 3F Therapeutics, Inc.*,
2009 WL 4333819 (S.D.N.Y. Dec. 2, 2009) ................................................. 15

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015) ....................................................... 9

*Advideo, Inc. v. Kimel Broad. Grp., Inc.*,
727 F. Supp. 1337 (N.D. Cal. 1989) ........................................................ 10

*Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*,
2019 WL 4221590 (N.D. Cal. Sept. 5, 2019) ............................................. 12

*Alexis v. Rogers*,
2016 WL 11707630 (S.D. Cal. Feb. 26, 2016) ........................................... 12

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ................................................................. 11

*Balestra v. ATBCOIN LLC*,
380 F. Supp. 3d 340 (S.D.N.Y. 2019) ............................................. 10, 15, 16

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ................................................................... 10

*Barclay v. ICON Health & Fitness, Inc.*,
2020 WL 6083704 (D. Minn. Oct. 15, 2020) .............................................. 14

*In re Bare Escentuals, Inc. Secs. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ..................................................... 17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ............................................................................... 20

*Bertolini-Mier v. Upper Valley Neurology, P.C.*,
2017 WL 4081901 (D. Vt. Sept. 13, 2017) ................................................ 12

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ............................................................................... 15

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................... 9

*In re Canandaigua Sec. Litig.*,
944 F. Supp. 1202 (S.D.N.Y.1996) ........................................................... 18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Clarke v. Tango Networks, Inc.*,
  2021 WL 6095328 (S.D. W. Va. Dec. 23, 2021) .................................................................. 12

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .............................................................................................. 19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ......................................................................................... 15, 19

*Desai v. Deutsche Bank Sec. Ltd.*,
  573 F.3d 931 (9th Cir. 2009) ................................................................................................ 20

*Erickson v. Snap, Inc.*,
  2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) ................................................................... 20

*Fields v. Sickle Cell Disease Assoc. of Am., Inc.*,
  376 F. Supp. 3d 647 (E.D.N.C. 2018) .................................................................................. 12

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015) ..................................................................................... 20

*Groves v. Kaiser Found. Health Plan Inc.*,
  32 F. Supp. 3d 1074 (N.D. Cal. 2014) .................................................................................... 9

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) .............................................................................................. 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ............................................................................................................ 14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
  398 F. Supp. 3d 549 (N.D. Cal. 2019), *aff'd*, 998 F.3d 397 (9th Cir. 2021) ....................... 17

*Jackson v. Amazon.com, Inc.*,
  65 F.4th 1093 (9th Cir. 2023) ............................................................................................... 13

*Jones v. Deutsche Bank AG*,
  2005 WL 1683614 (N.D. Cal. Jul. 19, 2005) ....................................................................... 20

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) ............................................................................................... 21

*Kirkhill Aircraft Parts Co. v. Aircraft Sys. Div. of Com-Jet Corp.*,
  2016 WL 10842585 (C.D. Cal. Aug. 3, 2016) ..................................................................... 11

*Koch v. S.E.C.*,
  177 F.3d 784 (9th Cir. 1999) ................................................................................................ 18

*Kui Zhu v. Taronis Techs. Inc.*,
  2020 WL 1703680 (D. Ariz. Apr. 8, 2020) .......................................................................... 20

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Lance Camper* Mfg. *Corp. v. Republic Indem. Co.*,
    44 Cal. App. 4th 194 (1996)................................................................................. 23

*Lang v. Morris*,
    823 F. Supp. 2d 966 (N.D. Cal. 2011) ................................................................. 9

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008)................................................................................ 23

*Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*,
    179 F. Supp. 2d 159 (S.D.N.Y. 2001) ................................................................. 16

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2011 WL 4389689 (C.D. Cal. May 5, 2011) .................................................. 15, 17

*Maplebrook Townhomes LLC v. Greenbank*,
    2010 WL 4704472 (N.D. Cal. Nov. 12, 2010) .................................................... 11

*Marini v. Adamo*,
    812 F. Supp. 2d 243 (E.D.N.Y. 2011) ................................................................ 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ............................................................................. 10

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007).............................................................................. 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008).............................................................................. 23

*Miller v. Mercuria Energy Trading, Inc.*,
    291 F. Supp. 3d 509 (S.D.N.Y. 2018) ................................................................ 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................................ 14

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022)................................................................................ 14

*Nissan Motor Co. v. Nissan Computer Corp.*,
    89 F. Supp. 2d 1154 (C.D. Cal. 2000)................................................................. 10

*Noa v. Key Futures, Inc.*,
    638 F.2d 77 (9th Cir. 1980) ................................................................................ 16

*Owen v. Elastos Foundation*,
    2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) ...................................................... 10

*Park v. GoPro, Inc.*,
    2019 WL 1231175 (N.D. Cal. Mar. 15, 2019) .................................................... 19

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Perry v. Nat'l Ass'n of Home Builders of the U.S.*,
  2020 WL 5759766 (D. Md. Sept. 28, 2020) ............................................................ 12

*Pers. Elec. Transports, Inc. v. Off. of U.S. Tr.*,
  313 F. App'x 51 (9th Cir. 2009) ............................................................................... 9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ................................................................................ 19

*Primo v. Pac. Biosciences of Cal., Inc.*,
  940 F. Supp. 2d 1105 (N.D. Cal. 2013) .................................................................. 16

*Ramirez v. Ghilotti Bros. Inc.*,
  941 F. Supp. 2d 1197 (N.D. Cal. 2013) .................................................................... 9

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .................................................................................. 17

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ................................................................................ 18

*S.E.C. v. PlexCorps*,
  2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018) .......................................................... 10

*Sanchez v. Nurture, Inc.*,
  626 F. Supp. 3d 1107 (N.D. Cal. 2022) .................................................................... 9

*SEC v. Bardman*,
  216 F. Supp. 3d 1041 (N.D. Cal. 2016) .................................................................. 20

*SEC v. Ripple Labs, Inc.*,
  2023 WL 4507900 (S.D.N.Y. July 13, 2023) .......................................................... 14

*SEC v. Terraform Labs PTE LTD.*,
  23-cv-01346 (S.D.N.Y.) (SAC ¶ 2) ........................................................................ 13

*SEC v. Terraform Labs Pte. Ltd. and Do Kwon*,
  No. 1:23-cv-01346-JSR (S.D.N.Y.) ......................................................................... 9

*SEC v. Terraform Labs Pte Ltd.*,
  No. 22-368, 2022 WL 2066414 (2d Cir. June 8, 2022) ........................................... 9

*SEC v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ................................................................................. 20

*Senne v. Kansas City Royals Baseball Corp.*,
  105 F. Supp. 3d 981 (N.D. Cal. 2015) .................................................................... 12

*Silverman v. Move Inc.*,
   2019 WL 2579343 (N.D. Cal. June 24, 2019) .................................................................. 11

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ......................................................................................... 10

*Skytruck Co., LLC v. Sikorsky Aircraft Corp.*,
   2011 WL 13137382 (M.D. Fla. Mar. 16, 2011) ............................................................... 14

*Svets v. Osborne Precious Metals Co.*,
   1992 WL 281413 (N.D. Cal. June 8, 1992) ...................................................................... 16

*Tacori Enterprises v. Trice Jewelers, Inc.*,
   2014 WL 12588478 (C.D. Cal. Apr. 29, 2014) ................................................................ 11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................... 19

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
   241 F.3d 135 (2d Cir. 2001) ............................................................................................ 10

*U.S. v. Cagnina*,
   697 F.2d 915 (11th Cir. 1983) ......................................................................................... 22

*U.S. v. Feldman*,
   853 F.2d 648 (9th Cir. 1988) ........................................................................................... 22

*Underwood v. Coinbase Glob., Inc.*,
   2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) .................................................................... 17

*Vance's Foods, Inc. v. Special Diets Eur. Ltd.*,
   2012 WL 1353898 (E.D. Cal. Apr. 16, 2012) .................................................................. 10

*In re Washington Mut. Mortg.-Backed Sec. Litig.*,
   276 F.R.D. 658 (W.D. Wash. 2011) ................................................................................. 15

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018)............................................................................ 18

*Westley v. Oclaro, Inc.*,
   897 F. Supp. 2d 902 (N.D. Cal. 2012) (Opp. 31) ............................................................ 20

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022)............................................................................................. 14

*Yolo Med., Inc. v. Lila Enter., LLC*,
   2014 WL 12558314 (C.D. Cal. Nov. 21, 2014)................................................................ 11

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ........................................................................................... 18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Zakinov v. Ripple Labs, Inc.*,
    2020 WL 922815 (N.D. Cal. Feb. 26, 2020)........................................................................ 16

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ............................................................................. 12

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022)............................................................................. 22

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)........................................................................................... 19

**Statutes**

15 U.S.C.
    § 78t(e) ............................................................................................................................. 22

California Corporations Code
    § 25503 ............................................................................................................................. 16

**Other Authorities**

17 C.F.R.
    § 240.3a51-1 ..................................................................................................................... 18
    § 240.15g-9 ....................................................................................................................... 18

Fed. R. Civ. P.
    8(a) ................................................................................................................................... 18
    9(b) .............................................................................................................................. 14, 18
    11 ...................................................................................................................................... 18
    12(b)(6) ............................................................................................................................. 23

Fed. R. Evid.
    407 .................................................................................................................................... 19

SEC Rule
    15g-9 ................................................................................................................................. 18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  Defendants[1] respectfully submit this Reply in support of the Motion. Lead Plaintiff

2  concedes most of Defendants' arguments, which is sufficient to require the Motion be granted.[2]

3  Whether outright conceded by Lead Plaintiff or not adequately addressed in his Opposition, all of

4  the arguments in the Motion are each an actionable basis for the relief Defendants requested.

5  **I.    LEAD PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION.**

6  In a plenary action, a plaintiff bears the burden to show, based on more than bare assertions,

7  that the *claims alleged* "arise out of or relate to" activities a defendant purposefully directed at the

8  U.S.[3] That requires a plaintiff to show that it would not have suffered an injury "but for" the

9  defendant's forum-related conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Thus,

10  *SEC v. Terraform Labs Pte Ltd.*, No. 22-368, 2022 WL 2066414 (2d Cir. June 8, 2022), has no

11  bearing on whether Lead Plaintiff has shown that his alleged injury resulted from intentional acts

12  by Defendants that were directed at the U.S.[4] Although Lead Plaintiff asserts that he purchased

13  "Terra Tokens" during the Relevant Period and suffered losses (SAC ¶ 15), he is silent about how

14  his "Terra Tokens" were obtained, what injuries he allegedly suffered, or any connection with

15  Defendants' alleged U.S. contacts.

16  The contracts Lead Plaintiff focuses on do not involve Defendants or are otherwise

17  unrelated to Lead Plaintiff's claims.[5] The July 2018 contract (Rosen Decl. Ex. 8) involved a BVI

18  entity, not TFL. The borrower in the contract by which Lead Plaintiff alleges TFL loaned Jump

19

---

20  [1] Capitalized terms not defined herein have the meanings set forth in Defendants' opening
   Memorandum of Law ("OB," ECF No. 122). References to the SEC's Memorandum of Law in

21  Opposition of Defendants' Motion to Dismiss (ECF No. 127) are in the form "Opp. xx." Unless
   otherwise stated, all emphasis is in original citations and internal quotes and citations are omitted.

22  [2] *See Pers. Elec. Transports, Inc. v. Off. of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009); *Sanchez

23  v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1117 (N.D. Cal. 2022); *Ramirez v. Ghilotti Bros. Inc.*, 941
   F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013). Lead Plaintiff thus conceded Points III.A.1,
   III.A.2.a, III.A.2.c, III.A.2.d, VI.B, and VI.F of the Motion.

24  [3] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Adobe Sys. Inc. v. Blue Source

25  Grp., Inc.*, 125 F. Supp. 3d 945, 958 (N.D. Cal. 2015); *Lang v. Morris*, 823 F. Supp. 2d 966, 969–
   70 (N.D. Cal. 2011).

26  [4] Lead Plaintiff claims that Defendants did not raise the difference between subpoena
   enforcement and a plenary action in the SEC case (Opp. 7). That is wrong. *See* ECF No. 38 at 1–

27  2, *SEC v. Terraform Labs Pte. Ltd. and Do Kwon*, No. 1:23-cv-01346-JSR (S.D.N.Y.).

28  [5] When a complaint's allegations contradict documents attached to the complaint or incorporated
   by reference, a court need not accept the allegations as true. *Groves v. Kaiser Found. Health Plan
   Inc.*, 32 F. Supp. 3d 1074, 1079 (N.D. Cal. 2014).

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   Trading 30 million LUNA was a Cayman Islands entity called Tai Mo Shan Limited, not Jump

2   Trading. Rosen Decl. Ex. 11. The allegation that Jump (not Tai Mo Shan) had a U.S. bank account

3   is neither supported by factual allegations (Opp. 12; SAC ¶¶ 191–94) nor relevant given that it

4   alleges nothing about the actual counter-party. The contract that Lead Plaintiff asserts was with a

5   "California-based company to distribute LUNA tokens to investors" (Opp. 8) was a six-week-long

6   consulting contract from 2018 with no possible relationship to Lead Plaintiff's 2022 purchase-based

7   claims. Rosen Decl. Ex. 10 at Ex. A. The remaining contract did not sell or offer tokens, but was

8   an agreement to allow tokens to be listed under which TFL received zero compensation.[6] Rosen

9   Decl. Ex. 13. And Lead Plaintiff's citations all involved a direct relationship between the claims

10   and the defendant's forum-related contacts[7] or other obvious bases (including concessions) for

11   personal jurisdiction.[8]

12         Lead Plaintiff's reliance on forum-selection clauses in certain contracts also fails. These

13   clauses "do[] not ordinarily apply to nonparties," *Mitsui Sumitomo Ins. USA, Inc. v. Tokio Marine*

14

15   [6] Even actively listing equity securities is insufficient to establish jurisdiction. *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 n.5 (S.D.N.Y. 2018).

16   [7] *See Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1159 (C.D. Cal. 2000)

17   (contracts with California companies to advertise the Nissan name in a trademark dispute over *that name*); *Advideo, Inc. v. Kimel Broad. Grp., Inc.*, 727 F. Supp. 1337, 1340–41 (N.D. Cal.

18   1989) (breach of contract claims brought by California companies against counterparties); *Vance's Foods, Inc. v. Special Diets Eur. Ltd.*, 2012 WL 1353898, at *6 (E.D. Cal. Apr. 16, 2012)

19   (same); *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152–53 (2d Cir. 2001) (claim for breach of a charter agreement against counterparty to agreement); *Ballard v.*

20   *Savage*, 65 F.3d 1495, 1498–1500 (9th Cir. 1995) (foreign bank had "more than 60 percent of its customers" in the United States," regularly mailed account statements to them, had U.S. residents who were beneficiaries of U.S. loans, and had correspondent accounts at major U.S. institutions).

21   [8] *Owen v. Elastos Foundation*, 2021 WL 5868171, at *8 (S.D.N.Y. Dec. 9, 2021), involved (a)

22   two defendants that conceded jurisdiction and (b) one that both lived in the U.S. and "repeatedly and continuously" promoted the specific token at issue at conferences in the U.S. In *Balestra v.*

23   *ATBCOIN LLC*, 380 F. Supp. 3d 340, 350–51 (S.D.N.Y. 2019), the Court relied on the company conducting the ICO having a New York principal place of business and "ample evidence" that the

24   defendants "targeted the U.S. market in an effort to promote the sale of [the token]," including multiple press releases explicitly detailing the launch of the token and solicitation of token

25   investors in the U.S. *S.E.C. v. PlexCorps*, 2018 WL 4299903, at *10, 13 (E.D.N.Y. Aug. 9, 2018), involved the "repeated use of United States–based payment servicers," "doing business while

26   traveling in the" U.S., and extensive marketing through *interactive* websites. In *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1196 (9th Cir. 1988), the Court relied on the company's

27   "significant advertising efforts in California." (Lead Plaintiff's claim that *Sinatra* involved an advertisement at a baseball stadium (Opp. 9) is wrong.) And *Mavrix Photo, Inc. v. Brand Techs.,*

28   *Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011), involved an Ohio-based celebrity gossip website that "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries." (Lead Plaintiff's claim that *Mavrix Photo* involved the operation of an internet sports betting operation (Opp. 13) is wrong.)

& *Nichido Fire Ins. Co.*, Ltd., 2013 WL 12136602, at \*4 (C.D. Cal. Aug. 8, 2013), and cannot establish personal jurisdiction because Lead Plaintiff fails to allege any kind of connection or relationship between *these contracts* and Lead Plaintiff's claims. *Silverman v. Move Inc.*, 2019 WL 2579343, at \*6 (N.D. Cal. June 24, 2019); *Tacori Enterprises v. Trice Jewelers, Inc.*, 2014 WL 12588478, at \*2 (C.D. Cal. Apr. 29, 2014).

Lead Plaintiff's allegations regarding U.S. investors fail for similar reasons. Lead Plaintiff claims that misrepresentations were included in presentations to "investors in the U.S. and abroad" (SAC ¶ 175), but does not connect those allegations to *his* claims. And Lead Plaintiff's allegation that Defendants "received" funds from particular California companies at an earlier time (SAC ¶ 36) fails because Lead Plaintiff does not allege any connection between these purchases and his supposed injuries, and receiving payment from a U.S. entity is not purposeful availment. *See Maplebrook Townhomes LLC v. Greenbank*, 2010 WL 4704472, at \*5 (N.D. Cal. Nov. 12, 2010); *Kirkhill Aircraft Parts Co. v. Aircraft Sys. Div. of Com-Jet Corp.*, 2016 WL 10842585, at \*5 (C.D. Cal. Aug. 3, 2016).[9]

Allegations regarding Mr. Kwon's travel to the U.S. (SAC ¶¶ 23, 83), Defendants' posts on Twitter, blogs, YouTube, and Telegram, and a CNBC Africa television broadcast (SAC ¶¶ 173–76) are insufficient to establish specific jurisdiction. In the speech referenced by Lead Plaintiff, Rosen Decl. Ex. 14 at 46:05–52:15, Mr. Kwon made passing references to UST and Anchor during general discussions of the Terraform blockchain's capabilities, which is not "promoting" UST or Anchor. Lead Plaintiff further fails to identify features of the "passive" platforms on which Mr. Kwon allegedly posted tweets or media statements that could provide a basis for jurisdiction,[10] or even any relationship between these posts and his claims. Lead Plaintiff's allegation regarding a

---

[9] The conclusory allegations of incidental contacts unconnected to Lead Plaintiff's claims distinguish this case from *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003), where the court found that a company that "sought out a business relationship with a California corporation, had ongoing contacts with the state over a five-year period, and drafted an agreement which called for performance, and was consummated in, California" availed itself of a California forum.

[10] *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020); *Yolo Med., Inc. v. Lila Enter., LLC*, 2014 WL 12558314, at \*4 (C.D. Cal. Nov. 21, 2014).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

sponsorship agreement with the Washington Nationals likewise fails to identify any relationship between placing "Terra" on seats at a baseball stadium (SAC ¶ 83) and Lead Plaintiff's claims.

Lead Plaintiff also fails to establish that the presence of some U.S.-based remote employees is related to his claims. Although the SAC alleges that "[s]everal employees of [TFL] appear to reside in the United States" (SAC ¶ 41), it fails to allege that a U.S.-based employee participated in suit-related conduct, which is fatal to specific jurisdiction. *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018). Although Lead Plaintiff asserts that it was these employees' job "to grow TFL's business and promote Terra Tokens," the specified allegations make no reference to this proposition (SAC ¶¶ 41–43) and Lead Plaintiff does not identify how the presence of these employees in the U.S. is connected to his alleged injuries.

This renders Lead Plaintiff's citations inapposite. *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1031 (N.D. Cal. 2015), relied on the presence of California-based baseball scouts for a team that specifically scouted and recruited the California-based plaintiff. *Alexis v. Rogers*, 2016 WL 11707630, at *10 (S.D. Cal. Feb. 26, 2016), found jurisdiction over a New York company based on the remote employment of the California-based plaintiff where the lawsuit arose specifically out of a dispute in ***that*** employment relationship.[11] Lead Plaintiff has thus failed to meet his burden to establish personal jurisdiction as to Mr. Kwon[12] or TFL.

## II.   THE SAC MUST BE DISMISSED IN FAVOR OF ARBITRATION

Lead Plaintiff does not dispute that he executed the Anchor TOS, argue that the Anchor TOS is somehow not a binding and enforceable contract, or make any argument regarding the *Atlantic Marine* public-interest factors (*see* OB 32–33). Instead, Lead Plaintiff claims that his allegations "do not arise out of or relate to the [Anchor] Protocol in any way whatsoever" (Opp.

---

[11] Even if any such suit-related conduct was alleged, courts have generally found that employing a remote worker within the forum does not amount to purposeful availment. *See Clarke v. Tango Networks, Inc.*, 2021 WL 6095328, at *8 (S.D. W. Va. Dec. 23, 2021); *Perry v. Nat'l Ass'n of Home Builders of the U.S.*, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020); *Fields v. Sickle Cell Disease Assoc. of Am., Inc.*, 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018); *Bertolini-Mier v. Upper Valley Neurology, P.C.*, 2017 WL 4081901, at *5 (D. Vt. Sept. 13, 2017).

[12] Lead Plaintiff's argument as to personal jurisdiction over Mr. Kwon fails for the same reason it fails as to TFL. The contracts that Mr. Kwon signed and purportedly negotiated cannot serve as the basis for jurisdiction when they are unrelated to the forum or Lead Plaintiff's claims. And one trip to the United States cannot support jurisdiction. *Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*, 2019 WL 4221590, at *13 (N.D. Cal. Sept. 5, 2019).

18). But on its face the SAC forecloses this argument. *Compare* Opp. 18 ("Plaintiffs' allegations here do not ... relate to the [Anchor] Protocol in any way whatsoever") *with* SAC ¶ 26 ("the source of the alleged misconduct related to the Anchor Protocol"). That ends the matter because, as the Ninth Circuit held in *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023), whether a dispute is covered by an arbitration clause is determined by "the factual allegations raised in the complaint," and the SAC alleges "misconduct related to the Anchor Protocol" (SAC ¶ 26).

Lead Plaintiff then tries to avoid his own allegations through a series of ever more tenuous arguments. For example, he asserts that "all of Plaintiffs' allegations and claims would be exactly the same, whether they decided to lend their Terra Tokens to the Anchor Protocol or not" (Opp. 18) and tries to draw a distinction between the purchase of UST and the Anchor Protocol by claiming that the '34 Act claims "have nothing whatsoever to do with Plaintiffs' subsequent decision to deposit the UST they purchased into the Protocol" (Opp. 19). Even if that were true (it is not, *see* SAC ¶ 26), a complaint's factual allegations need only "touch matters covered by the contract containing the arbitration clause" to be subject to arbitration. *Jackson*, 65 F.4th at 1101. Not only does the SAC attempt to tie the Anchor Protocol to purchases of UST by putative class members, it tries to allege misleading statements and deceptive acts about the Anchor Protocol (*e.g.*, SAC ¶ 252). Because the SAC's allegations "touch matters covered by the contract containing the arbitration clause," they are subject to arbitration. *Jackson*, 65 F.4th at 1101.[13] Unlike the cases Lead Plaintiff relies on, "the allegations underlying" Lead Plaintiff's claims do not involve misconduct "wholly unrelated to the parties' agreement." *Compare Jackson*, 65 F.4th at 1102 *with* SAC ¶ 26 ("the source of the alleged misconduct related to the Anchor Protocol").[14]

Even if the Court were to conclude, contrary to the plain language of the SAC, that Lead Plaintiff's claims neither arise out of nor relate to the Anchor Protocol, Defendants' Motion to Compel Arbitration should still be granted because Lead Plaintiff also agreed to arbitrate "*any other*

---

[13] Lead Plaintiff's improper attempt to rely on *SEC v. Terraform Labs PTE LTD.*, 23-cv-01346 (S.D.N.Y.) (SAC ¶ 2) makes his problem worse: Even if the Court looked beyond the allegations in the SAC (in contravention of *Jackson*), the basis of the SEC's allegation that UST were sold as unregistered securities *rests on the Anchor Protocol*. *See* Rosen Decl. Ex. 1 36:1–6; 36:19–37:4.

[14] Not only has Lead Plaintiff alleged that the Anchor Protocol was explicitly used to "support and facilitate" the sale of UST (SAC ¶ 3), Lead Plaintiff alleges that people purchased UST for the express purpose of depositing the tokens into the Anchor Protocol. SAC ¶ 7.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  *acts or omissions for which you may contend that we are liable … .*" *See* Amani Decl. Ex. A ¶ 18

2  (emphasis added). Lead Plaintiff does not dispute that he agreed to the Anchor TOS and does not

3  argue that the Anchor TOS are invalid or unconscionable.[15] As such, Lead Plaintiff is required to

4  arbitrate his claims against Defendants regardless of whether they arise out of or relate to the

5  Anchor Protocol. And Lead Plaintiff offers no coherent response to the fact that the Anchor TOS

6  require that the arbitrators resolve any disputes as to whether specific claims are arbitrable by

7  referring "*any* claim or controversy as to arbitrability" to the arbitrators. Amani Decl. Ex. A ¶ 18

8  (emphasis added). That provision means that any disagreement about the scope of the Anchor TOS

9  arbitration clause must be resolved by the arbitrators, not this Court.[16] Accordingly, the SAC should

10  be dismissed and each and every one of Lead Plaintiff's claims should be decided in arbitration.

11  **III.  LEAD PLAINTIFF'S FEDERAL SECURITIES CLAIMS FAIL**[17]

12      Securities fraud claims are subject to the more demanding pleading requirements set out in

13  Rule 9(b) and the PSLRA. *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617–18

14  (9th Cir. 2022); *see also In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022).

15  Although Lead Plaintiff argues that the Court must accept all his factual allegations as true, the

16  Court is not required to accept as true (a) allegations that contradict exhibits attached to or relied

17

18  [15] Parties may agree to arbitrate any dispute between them, *Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, 2011 WL 13137382, at *3 (M.D. Fla. Mar. 16, 2011), which is precisely what happened

19  here, and any doubts concerning the scope of arbitration must be resolved in favor of arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

20  [16] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28 (2019); *Barclay v.*

21  *ICON Health & Fitness, Inc.*, 2020 WL 6083704, at *14 (D. Minn. Oct. 15, 2020) ("Saying that no agreement to arbitrate exists because claims lack some relationship to, [or] some connection

22  with, the agreement or contract, would impermissibly recast the 'wholly groundless' exception rejected in *Henry Schein* as a question of contract formation." (citation and quotation omitted)).

23  Lead Plaintiff also does not dispute that the arbitration agreement applies to Mr. Kwon (OB 34-35) or that the class waiver is enforceable (*id.* 35). He has therefore conceded these points.

24  [17] *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900 (S.D.N.Y. July 13, 2023), also dooms Lead Plaintiff's claims that "Terra Tokens" were securities. The *Ripple* court held that purchases of

25  XRP on exchanges and "programmatic sales" by the *Ripple* defendants were not "investment contracts" and that *Howey* would not be satisfied even if secondary market purchasers had

26  speculative intent. 2023 WL 4507900, at *11–13. The same reasoning applies here: The SAC does not allege that Defendants sold any "Terra Tokens" to any putative class members (directly

27  or on a secondary market), but concedes that all UST was created by operation of the Terra blockchain and that all putative class members either purchased "Terra Tokens" on exchanges or received them by operation of a protocol. SAC ¶¶ 34 & 42. *Ripple* requires that none of those

28  transactions were "investment contracts" under *Howey*. 2023 WL 4507900, at *13, which requires the dismissal of all of Lead Plaintiff's securities claims.

on in the SAC or properly subject to judicial notice or (b) allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

  <u>Statutory Standing</u>. To bring a securities fraud claim under Section 10(b), a plaintiff must have purchased or sold the specific asset in question. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31 (1975); *Abbey v. 3F Therapeutics, Inc.*, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009). Lead Plaintiff does not dispute that he only purchased UST, and he thus lacks standing to pursue claims relating to anything other than UST. Lead Plaintiff tries to avoid this by including Patterson as an "additional plaintiff." This fails for two reasons. *First*, Lead Plaintiff has no authority under the PSLRA to add "additional plaintiffs;" Patterson withdrew from consideration for the Lead Plaintiff role, and Lead Plaintiff does not respond to Defendants' arguments on this point (OB 22-23, 42), thus conceding them. *Second*, each "Terra Token" is a "distinct" asset and Lead Plaintiff's "standing is thus limited only to those [assets] in which [he] actually purchased." *See In re Washington Mut. Mortg.-Backed Sec. Litig.*, 276 F.R.D. 658, 664 (W.D. Wash. 2011); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *5 (C.D. Cal. May 5, 2011). All claims concerning "Terra Tokens" other than UST must thus be dismissed.

  <u>UST and aUST Are Not Securities</u>: Lead Plaintiff concedes that horizontal commonality requires that there be two or more investors who pool their investments together and split the net profits and losses in accordance with their pro rata investments. Opp. 24–25. But that a UST holder could *choose* to deposit UST in protocols such as Anchor is irrelevant because Lead Plaintiff does not plead that the existence of the Anchor Protocol made UST a security and the choice to deposit UST in the Anchor Protocol is no different than depositing dollars into any other depository (such as bank accounts). With regard to vertical commonality, Lead Plaintiff neither disputes that it "typically requires that a defendant earn a performance fee equal to a percentage of the profits of an investor's account" (OB 40) nor alleges that Defendants earned fees or commissions from Anchor Protocol user activity. And Lead Plaintiff's contention that acquirers of UST had an expectation of profit (Opp. 25-26) is nonsensical. Unlike *Balestra*, Lead Plaintiff does not allege that Defendants promoted UST as inherently generating profit. Lead Plaintiff's request that the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Court infer an expectation of profit because people other than Lead Plaintiff acquired UST prior to the Terra ecosystem being fully developed is irrelevant because UST was a stablecoin.

<u>LUNA Was Not a Security</u>: Contrary to Lead Plaintiff's allegations that "LUNA investors shared equally in LUNA price increases, or suffered LUNA price decreases equally, so that if one investor profited, all investors did as well" (SAC ¶ 92), owners of LUNA were free to use, hold, or sell it at their discretion. *See Marini v. Adamo*, 812 F. Supp. 2d 243, 258 (E.D.N.Y. 2011). With respect to horizontal commonality, Lead Plaintiff's reliance on *Balestra*, 380 F. Supp. 3d at 354, is unavailing because "the value of ATB Coins was dictated by the success of the ATB enterprise as a whole," whereas Lead Plaintiff does not allege facts supporting the notion that Defendants offered LUNA purchasers "the opportunity to contribute funds and share in the profits of [the protocol] that would be managed by Defendants." *Marini*, 812 F. Supp. 2d at 258. Lead Plaintiff's argument that the mint/burn mechanism of UST/LUNA offered purchasers "the expectation of realizing profit from price appreciation or arbitrage" (Opp. 26) fails because where expectations of profit from a product stem from the decision of the owner to buy or sell and "fluctuations" of a market, profit cannot be expected to be derived from "efforts of others." *Noa v. Key Futures, Inc.*, 638 F.2d 77, 80 (9th Cir. 1980); *Svets v. Osborne Precious Metals Co.*, 1992 WL 281413, at *2 (N.D. Cal. June 8, 1992); *Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 159, 164 (S.D.N.Y. 2001). The cases cited by Lead Plaintiff (Opp. 27-28) are inapposite for this reason and because governance rested with the community of users that voted on proposals.

<u>The Section 12 Claims Fail Because TFL Was Not a Statutory Seller</u>. Lead Plaintiff relies on *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020), to argue that the SAC sufficiently alleges that Terra Tokens were purchased from Defendants. Opp. 28–29. On the one hand, that does not address Lead Plaintiff's fatal concession that he purchased UST in the secondary market, not from Defendants. *See Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1123–25 (N.D. Cal. 2013). Moreover, *Zakinov* concerned claims under the California Corporations Code § 25503, not Section 12, and the plaintiff in *Zakinov* specifically pled that he "purchased XRP securities ***from defendants***." 2020 WL 922815, at *16 (emphasis added).

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

1    Further, Lead Plaintiff has not satisfied *Pinter's* solicitation prong, which requires a plaintiff

2    to "plead active participation in the solicitation of the immediate sale, a direct relationship between

3    the purchaser and the defendant." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL

4    4389689, at *9 (C.D. Cal. May 5, 2011). A plaintiff "must include very specific allegations of

5    solicitation, including direct communication" from Defendants. *Id.* But Lead Plaintiff alleges only

6    that "marketing materials" were "distributed to potential investors in January 2019" (SAC ¶ 104),

7    whereas Lead Plaintiff purchased UST in April 2022 (ECF No. 19-3). Even if the referenced

8    "marketing materials" were specific to Lead Plaintiff (which is not a reasonable inference), this

9    would be exactly the kind of "marketing efforts, 'materials,' and 'services' that courts, applying

10   *Pinter's* second prong, have held insufficient to establish active solicitation by a defendant."

11   *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *9 (S.D.N.Y. Feb. 1, 2023). And even

12   if the SAC had pled direct solicitation by Defendants, it does not plead that Lead Plaintiff purchased

13   or sold UST as a result of such solicitation, as also required. *Id.*[18]

14       <u>Section 10(b)-No Misstatements or Omissions</u>. The alleged misstatements Lead Plaintiff

15   argues are classic non-actionable fraud-by-hindsight. *Reese v. BP Exploration (Alaska) Inc.*, 643

16   F.3d 681, 693 (9th Cir. 2011). For *every* alleged misstatement, Lead Plaintiff argues falsity by

17   omission. But "[o]missions are actionable only where they make the actual statements misleading;

18   it is not sufficient that an investor merely would consider the omitted information significant."

19   *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 398 F. Supp. 3d 549, 556 (N.D. Cal. 2019),

20   *aff'd*, 998 F.3d 397 (9th Cir. 2021). As further described in the Motion, Lead Plaintiff fails to meet

21   these requirements. *See* OB 45–46.

22       Instead of disputing that he misrepresented Mr. Kwon's tweet (SAC ¶ 250(h)), Lead

23   Plaintiff re-quotes the same incorrect allegation. Opp. 32 (quoting SAC ¶ 250(h), which is

24   contradicted by SAC ¶ 152). And Lead Plaintiff's characterization of Mr. Kwon's actions as

25   mockery and bravado simply confirm that the challenged statements were puffery and thus not

26

27

28   _____

[18] Lead Plaintiff's other arguments are bare legal conclusions requiring dismissal. *In re Bare Escentuals, Inc. Secs. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

actionable. *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).

As to the Anchor Protocol Lead Plaintiff does not even allege fraud by hindsight. Lead Plaintiff concedes that no Anchor Protocol user (a) failed to receive the disclosed rate on staked tokens or (b) lost any staked tokens due to the operation of the Anchor Protocol. *See* OB 44; *supra* note 2. Even if Anchor-related statements turned out to be untrue, it is not enough for a plaintiff to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999). And the statements addressed in SAC ¶ 250(e) could not be deemed misleading even if Defendants omitted information concerning the stability of UST. *See In re Canandaigua Sec. Litig.,* 944 F. Supp. 1202, 1209 (S.D.N.Y.1996).[19]

Lead Plaintiff's argument against the PSLRA safe harbor fails. Lead Plaintiff's only attempt to justify his argument that the "Terra Tokens" should be treated as penny stocks and thus outside the protections of the safe harbor is citing a case involving an ICO (Opp. 34), but there was no ICO here. In any event, stablecoins are the digital assets *least like* penny stocks. "Penny stocks are low-priced, highly speculative stocks generally sold in the over-the-counter (OTC) market." *Koch v. S.E.C.*, 177 F.3d 784, 785 (9th Cir. 1999). Although some cryptocurrencies have been called "speculative," stablecoins (like UST) are designed to avoid speculation and fluctuate as infrequently as possible.[20] And SEC Rule 15g-9 (Opp. 34) has nothing to do with this case or the safe harbor; it governs sales of certain stocks by brokers and dealers to customers, 17 C.F.R. § 240.15g-9, and "penny stocks" are defined as equity securities, 17 C.F.R. § 240.3a51-1.

Lead Plaintiff also tries to escape the safe harbor by citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017), and calling his allegations omissions of present or historical fact. If that was the law, no statement could ever qualify for the safe harbor because every statement is inherently based on some sort of historical fact—but that is not what *Quality Systems* holds. *See Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.,* 321 F. Supp. 3d 1133, 1148-51 (C.D. Cal.

---

[19] Lead Plaintiff does not dispute that the statements concerning Chai (¶205(j)) are inadequately pled: Lead Plaintiff's sole effort to fix this is to refer to the SEC complaint. This is insufficient under Rules 8(a), 9(b), and 11. *See* OB 24-25.

[20] See James Royal, *What are stablecoins and how do they affect the cryptocurrency market?*, BANKRATE (May 12, 2022), https://www.bankrate.com/investing/stablecoin-cryptocurrency/.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

2018); *Park v. GoPro, Inc.*, 2019 WL 1231175, at \*18-19 (N.D. Cal. Mar. 15, 2019). That UST *would* maintain its peg is a quintessentially forward-looking statement, and the Anchor TOS expressly stated that "[t]he Rate is a forward-looking projection." (ECF No. 122-1 at 9.) Plaintiff does not, and cannot, dispute this.[21]

Section 10(b)-No Scienter. Lead Plaintiff *entirely* fails to address Defendants' scienter arguments, and instead copies and pastes the SAC allegations without more. On these bald allegations, Lead Plaintiff fails to meet his heightened burden of pleading a "strong inference" of scienter, which must be "more than merely plausible or reasonable--it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Lead Plaintiff fails to address Defendants' argument that the blog post by Remi Tetot is not relevant to scienter because he (i) is a non-party, (ii) never worked at TFL, (iii) lacked personal knowledge to support his statements, and (iv) was referring to Anchor rather UST, meaning that his blog post offers no support that *Defendants* knew before the May 2022 collapse that UST/LUNA was unstable and unsustainable. *See* OB 47; *supra* note 2. Any inference would be "unreasonable," *Daniels-Hall*, 629 F.3d at 998, and any reliance on Mr. Tetot's statement is exactly the kind of "unreliable hearsay" and "conclusory assertions" that is insufficient to establish a strong inference of scienter. *Zucco*, 552 F.3d at 996.[22] Lead Plaintiff's last ditch effort to plead scienter is that LFG added a layer of protection against the peg. But the fact that Defendants attempted to prevent the 2022 Depeg has nothing to do with scienter, and to hold otherwise would discourage positive business practices.[23] The SAC alleges no facts establishing or even suggesting that Defendants knew that any alleged misstatements were false when made.

---

[21] The fraud allegations also fail because none of the alleged misstatements are material. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). For example, the majority of the alleged misstatements, including those concerning Anchor, were no more than "'feel good' speak that characterizes 'non-actionable puffing.'" *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014). Lead Plaintiff makes no attempt to dispute this. Instead, he relies on the 2022 Depeg to argue materiality (Opp. 34), even though the 2022 Depeg was not a price drop that was the result of a disclosure correcting a previous false statement (and Lead Plaintiff does not argue otherwise). *See supra* note 2.

[22] In addition, Lead Plaintiff ignores that Mr. Tetot's statement is *stated by him* to be hindsight. *See* SAC ¶ 163 ("Looking back at it ... ."); OB 47.

[23] *Cf.* Fed. R. Evid. 407 (subsequent remedial measure inadmissible to prove liability).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1       Section 10(b)-No Reliance. Lead Plaintiff does not dispute that the fraud-on-the-market

2   presumption of reliance is inapplicable. Without that presumption, Lead Plaintiff must plead

3   individualized reliance, which, as demonstrated in the OB, is fatal. *See Erickson v. Snap, Inc.*, 2017

4   WL 11592635, at \*3 (C.D. Cal. Sept. 18, 2017); *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988).[24]

5   Lead Plaintiff has not even pled his own reliance on any alleged misstatements.

6       No "Scheme Liability". Lead Plaintiff argues that Defendants engaged in a "scheme to

7   maintain the apparent stability of the UST/LUNA peg" that deceived investors (Opp. 31). In

8   addition to failing to adequately plead misstatements, there are no deceptive act allegations. *See*

9   *SEC v. Bardman*, 216 F. Supp. 3d 1041, 1057 (N.D. Cal. 2016). Indeed, Lead Plaintiff does not

10  properly allege that actions by Defendants deceived investors or were inconsistent with any prior

11  conduct.[25] In any event, Lead Plaintiff fails to adequately allege scienter, reliance, economic loss,

12  and loss causation, all of which are required for this claim as well. *Kui Zhu v. Taronis Techs. Inc.*,

13  2020 WL 1703680, at \*6 (D. Ariz. Apr. 8, 2020).[26]

14  **IV.  <u>LEAD PLAINTIFF'S RICO CLAIMS FAIL</u>**[27]

15      Lead Plaintiff's attempted defense of the RICO claims makes clear that he does not

16  understand RICO. *See, e.g.,* Opp. 42 (conflating continuity and enterprise elements of RICO).

17      <u>PSLRA Section 107</u>. Lead Plaintiff's sole response to Defendants' demonstration that

18  PSLRA Section 107 bars his RICO claim is to cite *Jones v. Deutsche Bank AG*, 2005 WL 1683614

19  (N.D. Cal. Jul. 19, 2005), but that case does not help Lead Plaintiff. *First*, it has been superseded

20  by later circuit court authority (OB 52). *Second*, it applied the *Conley* framework, which has been

---

22  [24] Lead Plaintiff's sole citation on this issue, *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009), actually supports the Motion. In that case, the Ninth Circuit affirmed denial of class certification because of the plaintiffs' "fatal concession" that the market was not efficient.

24  [25] Lead Plaintiff cites *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 914 (N.D. Cal. 2012) (Opp. 31). But Lead Plaintiff's parenthetical is actually from *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1193 (D. Or. 2015), which involved clearly alleged price manipulation.

25  [26] Lead Plaintiff's sole attempt to defend the control person claims against Mr. Kwon is Mr. Kwon's "position as CEO of TFL" (Opp. 36). But the "fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a 'controlling person.'" *SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).

27  [27] Lead Plaintiff concedes lack of RICO standing by relying on his '34 Act standing arguments despite the fact that RICO standing and '34 Act standing are completely distinct concepts. *See* OB 52-53; *supra* note 2.

---

replaced by *Iqbal* and *Twombly*. *Third*, the plaintiff in that case affirmatively asserted that the instruments at issue were not securities, and tried to plead the '34 Act claims in the alternative—the opposite of this case. Lead Plaintiff's position is especially bizarre given his attempt to rely on the SEC's position that "Terra Tokens" *are* securities; he cannot have it both ways. The case law is clear that a plaintiff cannot (a) assert that something is a security to plead securities claims about it and (b) assert RICO claims as well (OB 52), which requires dismissal of the RICO claims.

RICO Predicate Acts. Lead Plaintiff's "predicate acts" section is about "open ended" continuity, not whether Lead Plaintiff has adequately alleged RICO predicate acts (Opp. 38-40).[28] Lead Plaintiff has thus conceded his failure to plead RICO predicate acts. *See supra* note 2. But even Lead Plaintiff's open-ended continuity arguments fail. *First*, Lead Plaintiff's argument that "the Terra Token Enterprise was an ongoing scheme to periodically pump up the trading volume and price of the Terra Tokens in order to provide exit liquidity for Defendants" (Opp. 39) has no connection to the SAC and ignores the problems with Lead Plaintiff's enterprise definition discussed below. The allegation that Terra 2.0 was "launched" after the May 2022 depeg (SAC ¶ 14) is not an allegation that anyone "solicit[ed] investments in another crypto project" (Opp. 39), because the new tokens were *given* to prior LUNA holders, not sold. *Second*, Lead Plaintiff's argument that "the conduct alleged" "could have gone on indefinitely with new 'pumps' to allow" Defendants to "dump their prelaunch tokens at inflated prices" (Opp. 39) is both speculation and untethered to the SAC. The SAC does not adequately plead any "pumps" or sales of "prelaunch tokens at inflated prices" (indeed, it does not plead sales of "Terra Tokens" by Mr. Kwon at all).

RICO Enterprise. Lead Plaintiff's enterprise arguments (Opp. 40-41) make clear that he does not understand what a RICO "enterprise" is.[29] For example, although Lead Plaintiff argues that "the SAC contains allegations sufficient to infer that the Terra Token Enterprise's conduct

---

[28] Lead Plaintiff does not address closed-ended continuity at all, thus conceding that he had not pled it. *See supra* note 2.

[29] This is further confirmed by Lead Plaintiff's arguments about the alleged enterprise in the "continuity" section of his brief (Opp. 42). That section simply repeats allegations in the SAC and asserts (without case citations) that they are sufficient to plead an enterprise. The one case Lead Plaintiff cites, *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581-82 (1995), was about a state law civil conspiracy claim, not a RICO claim. It has nothing to do with whether Lead Plaintiff has adequately pleaded any element of a RICO claim.

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

1    was outside of the normal business of TFL" (Opp. 40), in the very next sentence he argues that

2    the "enterprise's" conduct was the goal of TFL (*id*.). As Lead Plaintiff's immediately preceding

3    citation makes clear, that is not a proper RICO enterprise allegation. These arguments also suffer

4    from the flaw that an enterprise must exist separate from the alleged predicate acts (OB 56). And

5    the allegation that the "enterprise" acted to increase the price of UST makes no sense.[30]

6    **V.    LEAD PLAINTIFF'S STATE LAW CLAIMS FAIL**

7         Lead Plaintiff's attempt to justify its conspiracy and aiding and abetting claims (Opp. 42–

8    44) is an abstract discussion of state law secondary liability concepts that ignores Lead Plaintiff's

9    concession that the underlying primary liability claims are federal securities law claims (Opp. 43,

10   citing SAC ¶¶ 187–205). The issue raised by the Motion is whether state law can be used to assert

11   secondary liability for alleged federal securities law violations when the Supreme Court has

12   expressly held that such claims do not exist under federal law (OB 59), which Lead Plaintiff

13   concedes. State law cannot be used to create a claim based on federal law that the Supreme Court

14   has held does not exist, especially when Congress resurrected secondary liability claims for the

15   SEC but not for private plaintiffs. *See* 15 U.S.C. § 78t(e).

16        Lead Plaintiff's unjust enrichment claim fares no better. Lead Plaintiff cannot assert that he

17   purchased UST at "inflated prices" (Opp. 45) because he purchased it at $1.00 (ECF No. 19-3), its

18   intended price. And despite Lead Plaintiff's other meandering arguments (Opp. 45), the SAC does

19   not allege that Lead Plaintiff purchased UST from or gave money to either Defendant, which Lead

20   Plaintiff's own citations say are required (Opp. 44-45). Finally, Lead Plaintiff's argument that he

21   needs the unjust enrichment claim in case the other claims are dismissed (Opp. 45) is nonsensical.

22   A plaintiff does not lack an adequate remedy at law merely because other claims fail as a matter of

---

23   [30] Lead Plaintiff's citations focus only on the "common purpose element" of the enterprise
24   requirement (Opp. 41), which concedes the failure to plead the other required elements (an
     ongoing organization which functions as a continuing unit). *See supra* note 2. And those citations
25   are inapposite: In *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625,
     739-40 (C.D. Cal. 2022), there were allegations of actual sales in furtherance of the alleged
     common purposes of the six alleged enterprises. In *U.S. v. Cagnina*, 697 F.2d 915, 917-21 (11th
26   Cir. 1983), the prosecution proved that the enterprise committed murder, attempted murder,
     extortion, arson, truck hijacking, drug trafficking, and securities fraud. The *Cagnina* "enterprise"
27   was exactly the sort of criminal enterprise ordinarily asserted in RICO claims, but it has no
     resemblance to the SAC's enterprise allegations. And *U.S. v. Feldman*, 853 F.2d 648, 655-59 &
28   666 (9th Cir. 1988) involved an alleged enterprise consisting of two individuals and seven
     corporations that were alleged and proven to have engaged in multiple crimes over ten years.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  law and/or pleading. Lead Plaintiff cites no authority for unjust enrichment being the *de facto*

2  "fallback claim" for any alleged loss, especially because unjust enrichment cannot be pleaded when

3  there is a contract,[31] and Lead Plaintiff concedes the existence of a valid contract (the Anchor TOS).

4  **VI.    LEAD PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND**

5       Lead Plaintiff's request to amend is just another request for permission to copy allegations

6  by someone else or add state law claims (Opp. 45). The only case he cites, *Leadsinger, Inc. v. BMG*

7  *Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008), affirmed the denial of leave to amend when

8  amendment would have been futile, precisely what the Motion and this reply brief demonstrate.

9  Further amendment would also be futile because any new claim would still have to be arbitrated.

10  Courts routinely deny such bare requests for leave to amend. *Metzler Inv. GMBH v. Corinthian*

11  *Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008). And Defendants *do* assert that Lead Plaintiff acted

12  in bad faith, pursuing claims Congress eliminated 28 years ago and knowingly putting forward a

13  Lead Plaintiff with no standing to bring claims about the majority of the "Terra Tokens."

14                              **CONCLUSION**

15       For all the foregoing reasons, TFL and Mr. Kwon respectfully request that the Court (i)

16  dismiss the SAC for lack of personal jurisdiction, or (ii) strike the class claims and refer Lead

17  Plaintiff's claims to arbitration pursuant to the Anchor TOS, or (iii) dismiss any remaining claims

18  pursuant to Fed. R. Civ. P. 12(b)(6).

---

[31] *See Lance Camper* Mfg. *Corp. v. Republic Indem. Co*., 44 Cal. App. 4th 194, 203 (1996).

1

Dated: August 2, 2023                                    Respectfully submitted,

2

3                                                        DENTONS US LLP

4

5                                                        By: _/s/ *Douglas W. Henkin*
                                                            Douglas W. Henkin

6                                                        JOEL D. SIEGEL (SBN 155581)
                                                        joel.siegel@dentons.com
7                                                        ANDREW M. PENDEXTER (SBN 310752)
                                                        andrew.pendexter@dentons.com
8                                                        DENTONS US LLP
                                                        601 South Figueroa Street, Suite 2500
9                                                        Los Angeles, CA  90017-5704
                                                        Telephone: 213.623.9300
10                                                       Facsimile:  213.623.9924

11                                                       DOUGLAS W. HENKIN (Admitted *Pro Hac
                                                        Vice*)
12                                                       douglas.henkin@dentons.com
                                                        DENTONS US LLP
13                                                       1221 Avenue of the Americas
                                                        New York, NY 10020-1089
14                                                       Telephone: 212.768.6700
                                                        Facsimile:  212.768.6800
15

16                                                       STEPHEN J. SENDEROWITZ (Admitted
                                                        *Pro Hac Vice*)
17                                                       stephen.senderowitz@dentons.com
                                                        DENTONS US LLP
18                                                       233 South Wacker Drive, Suite 5900
                                                        Chicago, IL 60606-6361
19                                                       Telephone: 312.876.8141

20                                                       Attorneys for Defendants
                                                        TERRAFORM LABS, PTE. LTD. and
21                                                       DO KWON

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300