KOBRE & KIM LLP
Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Leif T. Simonson (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: +1 212 488 1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
leif.simonson@kobrekim.com

Daniel A. Zaheer (SBN 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: +1 415 582 4751
daniel.zaheer@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: +1 202 664 1965
erika.berman@kobrekim.com

*Attorneys for Defendant Jump Trading, LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NICK PATTERSON, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>TERRAFORM LABS, PTE. LTD., JUMP TRADING LLC, TRIBE CAPITAL, DEFINANCE CAPITAL/DEFINANCE TECHNOLOGIES OY, THREE ARROWS CAPITAL PTE. LTD., NICHOLAS PLATIAS and DO KWON,<br><br>Defendants. | Case No. 3:22-cv-03600-TLT<br><br>**DEFENDANT JUMP TRADING, LLC'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br>Honorable Trina L. Thompson<br>Hearing Date: September 19, 2023, 2:00pm |

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 1

    **I.**    **Plaintiffs Fail to Allege That Jump Trading Committed Securities Fraud.** .......... 1

        A.    Plaintiffs Fail to Allege That Jump Trading Made Material
               Misrepresentations. ....................................................................................... 1

        B.    Plaintiffs Have Not Alleged Scheme Liability Based on
               Manipulative Acts. ....................................................................................... 4

        C.    Plaintiffs Have Failed to Allege That Jump Trading Acted With
               Scienter. ......................................................................................................... 6

        D.    Plaintiffs Fail to Allege Reliance on Jump Trading's Statements. ....................... 9

        E.    Plaintiffs Have Not Alleged That Jump Trading's Actions Caused Their
               Losses. ........................................................................................................... 11

        F.    Plaintiffs Fail to Allege Fraud in Connection With a Security. ......................... 11

    **II.**    **Plaintiffs Fail to Plead Control Person Liability for TFL's or the LFG's
        Actions.** .......................................................................................................... 11

    **III.**    **Plaintiffs Have Not Alleged That Jump Trading Committed a Pattern
        of Racketeering Activity Causing Their Injuries.** .................................................. 12

    **IV.**    **Plaintiffs' State Law Claims Must Be Dismissed.** .................................................. 13

        A.    Plaintiffs Have Not Alleged Viable Conspiracy or Aiding and Abetting
               Claims. ......................................................................................................... 13

        B.    Plaintiffs' Unjust Enrichment Claim Fails as They Have Not
               Alleged Fraud. .............................................................................................. 14

    **V.**    **Leave To Amend Should Be Denied.** ...................................................................... 14

**CONCLUSION** ............................................................................................................. 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4
*Affiliated Ute Citizens of Utah v. United States*,

5
   406 U.S. 128 (1972) ................................................................................ 9, 10, 11

6
*Allwaste, Inc. v. Hecht*,

7
   65 F.3d 1523 (9th Cir. 1995) ................................................................................ 12

8
*Apple Inc. v. Allan & Associates Ltd.*,

9
   445 F. Supp. 3d 42 (N.D. Cal. 2020) ................................................................ 2

10
*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,

11
   493 F.3d 87 (2d Cir. 2007) ................................................................................ 5, 7

12
*Binder v. Gillespie*,

13
   184 F.3d 1059 (9th Cir. 1999) ................................................................................ 10

14
*Bristol SL Holdings, Inc. v. CIGNA Health Life Insurance Co.*,

15
   2020 WL 4873528 (C.D. Cal. June 30, 2020) ................................................ 15

16
*Broam v. Bogan*,

17
   320 F.3d 1023 (9th Cir. 2003) ........................................................................ 2, 10

18
*Brody v. Transitional Hospitals Corp.*,

19
   280 F.3d 997 (9th Cir. 2002) ........................................................................... 3, 4

20
*Burnett v. Rowzee*,

21
   2007 WL 4754539 (C.D. Cal. Oct. 18, 2007) ................................................ 4

22
*Casey v. U.S. Bank National Ass'n*,

23
   26 Cal. Rptr. 3d 401 (Ct. App. 2005) ............................................................. 13

24
*CFTC v. Wilson*,

25
   2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ................................................ 5, 7

26
*Chance World Trading E.C. v. Heritage Bank of Commerce*,

27
   438 F. Supp. 2d 1081 (N.D. Cal. 2005) .......................................................... 13

28

ii

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
856 F.3d 605 (9th Cir. 2017).........................................................................................1

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005).........................................................................................8

*City of Providence v. Bats Global Markets, Inc.*,
878 F.3d 36 (2d Cir. 2017)...........................................................................................6

*City of Royal Oak Retirement System v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................................2

*County of Marin v. Deloitte Consulting LLP*,
836 F. Supp. 2d 1030 (N.D. Cal. 2011) ..............................................................12, 13

*Crane Co. v. Westinghouse Air Brake Co.*,
419 F.2d 787 (2d Cir. 1969).........................................................................................5

*De Ford v. Koutoulas*,
2023 WL 2709816 (M.D. Fla. Mar. 30, 2023)...........................................................14

*Desai v. Deutsche Bank Securities Ltd.*,
573 F.2d 931 (9th Cir. 2009)...............................................................................5, 9, 10

*Emergent Capital Investment Management, LLC v. Stonepath Group*,
343 F.3d 189 (2d Cir. 2003).......................................................................................11

*Erica P. John Fund, Inc. v. Haliburton Co.*,
563 U.S. 804 (2011).....................................................................................................11

*Fezzani v. Bear, Stearns & Co.*,
716 F.3d 18 (2d Cir. 2013)............................................................................................9

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
235 F. Supp. 2d 549 (S.D. Tex. 2002)..........................................................................8

*In re Facebook, Inc. Securities Litigation*,
477 F. Supp. 3d 980 (N.D. Cal. 2020) ..........................................................................1

*In re Galena Biopharma, Inc. Securities Litigation*,
117 F. Supp. 3d 1145 (D. Or. 2015).............................................................................3

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*,
  2 F.4th 1199 (9th Cir. 2021) ............................................................... 10, 11

*Janus Capital Group v. First Derivative Traders*,
  564 U.S. 135 (2011) .......................................................................... 2

*Kittel v. Advantage Physical Therapy*,
  843 F. App'x 53 (9th Cir. 2021) .......................................................... 15

*Lenhoff Enterprises, Inc. v. United Talent Agency, Inc.*,
  729 F. App'x 528 (9th Cir. 2018) ......................................................... 15

*Lloyd v. CVB Financial Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ............................................................. 3

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ............................................................ 14

*Lustiger v. United States*,
  386 F.2d 132 (9th Cir. 1967) ............................................................... 3

*Lutge v. Harrington*,
  2022 WL 18401350 (N.D. Cal. Dec. 20, 2022) ....................................... 14

*Middlesex Retirement System v. Quest Software Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) .................................................. 8

*Nacarino v. Chobani, LLC*,
  2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) .......................................... 14

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
  904 F.3d 821 (9th Cir. 2018) ............................................................. 13

*Nuveen Municipal High Income Opportunity Fund v. City of Alameda*,
  730 F.3d 1111 (9th Cir. 2013) ............................................................ 11

*Okun v. Superior Court*,
  629 P.2d 1369 (1981) ...................................................................... 13

*Personal Electric Transports, Inc. v. Office of United States Trustee*,
  313 F. App'x 51 (9th Cir. 2009) .......................................................... 12

iv

*Provencio v. Vazquez*,

    258 F.R.D. 626 (E.D. Cal. 2009) ............................................................................ 4

*Resolute Forest Products, Inc. v. Greenpeace International*,

    2019 WL 281370 (N.D. Cal. Jan. 22, 2019) ........................................................ 13

*ScripsAmerica, Inc. v. Ironridge Global LLC*,

    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ................................................................. 5

*SEC v. Drucker*,

    1983 WL 1369 (S.D.N.Y. Sept. 26, 1983) ............................................................. 6

*SEC v. Rose*,

    2007 WL 9826042 (S.D. Tex. Sept. 5, 2007) ........................................................ 6

*SEC v. Sierra Brokerage Services*,

    608 F. Supp. 2d 923 (S.D. Ohio 2009) .................................................................. 6

*Tyler v. Travelers Commercial Insurance Co.*,

    499 F. Supp. 3d 693 (N.D. Cal. 2020) ...................................................... 4, 12, 14

*United States v. Harder*,

    116 F. Supp. 3d 1197 (D. Or. 2015) ...................................................................... 3

*Webb v. Solarcity Corp.*,

    884 F.3d 844 (9th Cir. 2018) ............................................................................ 7, 8


**Rules**

Fed. R. Civ. P. 1 ....................................................................................................... 15

1

**INTRODUCTION**

Plaintiffs improperly seek to avoid dismissal by alleging new facts and legal theories not found anywhere within their Second Amended Complaint, ECF No. 102 ("SAC").  These unpled allegations are insufficient in any event to avoid dismissal of their claims.

**I.     Plaintiffs Fail to Allege That Jump Trading Committed Securities Fraud.**

**A.     Plaintiffs Fail to Allege That Jump Trading Made Material Misrepresentations.**

As set forth in Jump Trading, LLC's ("Jump Trading") Motion to Dismiss, ECF No. 115, ("Motion" or "Mot."), Plaintiffs fail to allege a single statement of fact by Jump Trading that is alleged in the SAC to be materially false or misleading.  To make up for this deficiency, Plaintiffs pivot to arguing that Jump Trading committed fraud by failing to disclose its UST purchases during the May 2021 depeg, but in doing so they mischaracterize the SAC's allegations, wrongly attribute to Jump Trading the statements of others, and seek to impose on Jump Trading nonexistent duties.

**Plaintiffs' Failure to Allege Actionable Misstatements.**  Plaintiffs identify no materially misleading statement attributable to Jump Trading.  They do not dispute that the SAC alleges only three arguable statements of fact attributable to Jump Trading: two discussing trading demand on a particular day (SAC ¶¶ 138, 144) and the third noting the existence of the Terra Station app that could be used to stake LUNA (*id.* ¶ 145).[1]  Mot. at 8.  In fact, the only statement Plaintiffs make any argument about is Mr. Kariya's January 28, 2022, opinion that "[i]t's difficult to imagine a sustained mass exodus to UST given the circumstances," and if one occurred it "should be manageable over a couple days."  Pl.'s Opp. to Jump Mot. to Dismiss 11, ECF No. 130 ("Opp.").  But the SAC does not allege that this statement was false or misleading.  Nor do Plaintiffs contest that this statement was an opinion Mr. Kariya genuinely held.  *See* Mot. at 8–9; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. V. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (liability for an opinion requires that "the statement is not actually believed").

---

[1] Plaintiffs do not dispute that, in addition to not being misleading, none of these alleged statements are material as their nature would not have "induce[d] the reliance of a reasonable investor."  *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1012 (N.D. Cal. 2020); *see* Mot. at 8–9.

**Plaintiffs' Attempts to Remedy the SAC's Deficiencies Fail.**  Apparently recognizing the dearth of actionable misstatements alleged in their SAC, Plaintiffs' Opposition mischaracterizes documents and statements and makes unsupported assertions that are not actually alleged in the SAC.  First, the SAC does not allege that Jump Trading "never disclosed [its] loan agreements with TFL" or "the secret bailout of the UST peg in May 2021."  Opp. at 11.  Indeed, Jump Trading flagged the lack of such allegations in its opening brief.  Mot. at 11–12 & n.7 (noting the only allegation regarding omissions in connection with the May 2021 trading was the group pleading that "Defendants never disclosed . . ." (quoting SAC ¶ 202)).  Plaintiffs' arguments in the Opposition based on these assertions therefore must be disregarded.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (on a motion to dismiss "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss"); *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (internal quotation marks omitted)).  Second, contrary to Plaintiffs' characterization, *see* Opp. at 2, the SEC has not alleged in *SEC v. Terraform Labs Pte. Ltd.*, No. 23-cv-1346 (S.D.N.Y. filed Feb. 16, 2023), that any statements by Jump Trading were false or misleading; indeed, the SEC's complaint references no statements by Jump Trading at all.  Third, Plaintiffs' claim that in the October 11, 2021, blog post "Jump attributed UST's ability to keep its dollar peg to a 'most elegant solution,'" *id*. at 5, is contradicted by the actual statement quoted in the SAC, which does not reference the ability to hold the peg, *see* SAC ¶ 129 (post states UST "is the most elegant solution for creating a highly scalable and more decentralized stablecoin").

Plaintiffs next try to attribute TFL's and the LFG's statements to Jump Trading.  Opp. at 2 (statements actually made by TFL and Do Kwon); *id.* at 13 (LFG's statements).  But only the "maker" of a statement, i.e., "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it," can be held liable for it.  *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1070 (N.D. Cal. 2012) (quoting *Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)).  Beyond alleging merely that Jump Trading was a "member" of LFG and that Mr. Kariya "s[at] on" the LFG

2

Governing council (SAC ¶ 57), without any information about their decision-making authority in those roles, Plaintiffs allege no facts to support their conclusory assertion that Jump Trading had "ultimately [sic] authority" over the statements.  Opp. at 13; *see In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1187 (D. Or. 2015) (individuals were makers because they "decided what content to include in the final article and whether any article would be published").

Further, Plaintiffs cannot salvage their insufficient allegations by alleging that all of Jump Trading's statements were "half truths" that did not disclose the May 2021 purchases.  Jump Trading had no independent duty to disclose that alleged trading, *see* Mot. at 11–12, nor in any event was disclosure necessary to make any alleged statement not misleading, *see Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (rejecting the contention that "there is a duty to make [statements] complete and accurate").  "Often, a statement will not mislead even if it is incomplete or does not include all relevant facts" because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."  *Id*.  To be actionable, the omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *Id.*

Plaintiffs' own case citations illustrate that courts impose a duty to disclose arising from affirmative statements only where the omission directly relates to such affirmative statements.[2] But Jump Trading's May 2021 purchases were not even remotely relevant to the three arguable statements of fact attributable to Jump Trading alleged in the SAC.  *See supra* at 1.  As such, the statements were not misleading in the absence of that information.  And even if Mr. Kariya's January 28, 2022, opinion that a large exodus from UST "should be manageable over a couple days" were considered a statement of fact, it did not create any misimpression concerning the need for manual defense of the peg because nine days earlier, the well-publicized formation of the LFG

---

[2] *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (March 2010 statement that there was no basis for serious doubts on ability to pay loans as of December 31, 2009, did not disclose that there was a basis for serious doubts as of January 2010); *Lustiger v. United States*, 386 F.2d 132, 136 (9th Cir. 1967) (representations included that Lake Mead was five miles away without disclosing that it was 15–40 miles by road); *United States v. Harder*, 116 F. Supp. 3d 1197, 1225 (D. Or. 2015) (statements included that defendant had never missed a payment without disclosing that it had to borrow money several times to make payments).

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NUMBER: 3:22-CV-03600-TLT

and its reserve had already informed the public that the peg might require manual support.  *See* SAC ¶ 48.  And the SAC even alleges that Jump Trading publicly affirmed that such manual support could be necessary.  *Id.* ¶¶ 138–39.  Not repeating that here did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody*, 280 F.3d at 1006.  As Plaintiffs have failed to identify a single material misrepresentation made by Jump Trading upon which to base their securities claim, the claim must be dismissed.

**B.   Plaintiffs Have Not Alleged Scheme Liability Based on Manipulative Acts.**

Plaintiffs do not contest, and therefore concede, that they have not adequately alleged a deceptive act.  *See* Mot. at 10-11; *see also Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing to address them in her opposition").  To try to salvage their scheme liability claim, Plaintiffs now change course to assert a new manipulation theory: that Jump Trading's UST purchases during the May 2021 depeg supposedly constituted manipulation.  But Plaintiffs have not actually made this allegation in the SAC, and, even if they had, Plaintiffs nowhere allege that Jump Trading did not genuinely value UST at $1 at the time of those purchases.

*First*, Plaintiffs cannot assert now for the first time in their Opposition that their scheme liability claim alleges manipulation.[3]  While a scheme to defraud can encompass either "a manipulative or deceptive act," *Burnett v. Rowzee*, 2007 WL 4754539, at *5 (C.D. Cal. Oct. 18, 2007), Plaintiffs do not allege manipulation in the SAC, even formulaically, SAC ¶¶ 187–203, 266–274.  Plaintiffs make only one passing reference to manipulation in the SAC.  *See id.* ¶ 203. Plaintiffs may not raise a "completely new theory of liability" in their Opposition, as it "does not grant Defendant fair notice of [the] claim or the grounds upon which it rests."  *Provencio v. Vazquez*, 258 F.R.D. 626, 639 (E.D. Cal. 2009).  Plaintiffs' attempt to reframe their scheme liability claim as a manipulation claim should be rejected.

---

[3] Plaintiffs also claim for the first time that Jump Trading's LUNA loan agreements were "secret transactions" and imply they were improper.  Opp. at 9.  They were not improper and, as discussed in detail below, disclosure of the loan agreements was not required.

*Second,* even were the claim asserted in the SAC, Plaintiffs have not adequately alleged manipulation because they have not pleaded that Jump Trading did not genuinely value UST at $1 at the time of the alleged trading.  Plaintiffs' new theory is that because Jump Trading allegedly intended to restore the peg to $1 with its May 2021 UST purchases, it committed manipulation.  But it is not sufficient to allege merely that a defendant intended through its market activity to impact price; rather, manipulation requires (among other things) an intent to create an artificial price (i.e., a price that is not consistent with forces of supply and demand).  *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.2d 931, 940–41 (9th Cir. 2009) (manipulation "includes activities designed to affect the price of a security *artificially*" (emphasis added)); *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969) ("The section does not condemn extensive buying or buying which raises the price of a security in itself"); *CFTC v. Wilson*, 2018 WL 6322024, at *14–15 (S.D.N.Y. Nov. 30, 2018) (artificiality is a central element for manipulation).  A plaintiff must allege conduct "intended to mislead investors by *artificially* affecting market activity." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1236 (C.D. Cal. 2015) (emphasis added).

Plaintiffs fail to do so.  Plaintiffs do not claim in either the SAC or the Opposition that in May 2021 Jump Trading did not genuinely believe that UST was worth $1 or believed that UST would inevitably collapse (and thus was not worth $1).  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) (requiring "a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security").  That shortcoming is fatal to their theory—if Jump Trading believed UST was worth $1, buying UST *below* $1 would be entirely consistent with "the natural interplay of supply and demand." *Id.*; *see Wilson*, 2018 WL 6322024, at *14–15.  Plaintiffs thus fail to allege that Jump Trading's alleged purchases were "willfully combined with something more to create a false impression of how market participants value a security," as required for a manipulation claim. *ATSI*, 493 F.3d at 101.

In stark contrast, Plaintiffs' cited cases each involve substantial misconduct demonstrating that the defendants conveyed a false impression of their valuation of the security.  *See City of*

*Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 41 (2d Cir. 2017) (allegations included improper front running); *Crane*, 419 F.2d at 792–94 (defendant "painted the tape" with simultaneous private sales and public purchases at disparate prices, demonstrating it did not believe the public purchase price was the fair price); *SEC v. Sierra Brokerage Servs. Co.*, 608 F. Supp. 2d 923, 960–68 (S.D. Ohio 2009) (defendant paid others to not sell their stock and instructed friends to buy stock in advance of reverse merger to inflate demand); *SEC v. Rose*, 2007 WL 9826042, at *13 (S.D. Tex. Sept. 5, 2007) (secret sales helped finance repeated large purchases); *SEC v. Drucker*, 1983 WL 1369, at *22 (S.D.N.Y. Sept. 26, 1983) (defendant intended to get available stock into the possession of someone he could control).  Nor do Plaintiffs allege any of the indicators identified by the court in *Sierra Brokerage*: "(1) control of the float . . . (2) dominance and control of the market for the security; (3) price leadership; and (4) collapse of the market after the manipulator's activities cease."  608 F. Supp. 2d at 962.  In fact, Plaintiffs' claim flatly contradicts the fourth factor—the Ecosystem continued for a full year *after* the purported manipulation ended.  SAC ¶ 10.  Plaintiffs' scheme liability claim must therefore be dismissed.

### C. Plaintiffs Have Failed to Allege That Jump Trading Acted With Scienter.

Plaintiffs also have not identified a single non-conclusory allegation from which a "strong inference" of Jump Trading's scienter can be drawn.  Plaintiffs' introduction of new theories unsupported by the SAC and a series of irrelevant facts does not remedy this failure, necessitating dismissal of Plaintiffs' securities fraud claims.

The SAC includes only group-pleaded allegations of "Defendants'" scienter, which is insufficient to establish Jump Trading's scienter.  *See* Mot. at 13.  In addition, the facts alleged in the SAC actually demonstrate Jump Trading's candor with the market about the risk of volatility. *Id*. at 13–14; *see, e.g.*, SAC ¶ 138 (the reserve could "help protect the peg . . . in stressful conditions").  This candor precludes Plaintiffs' new attempt to derive scienter from a putative omission that Jump Trading knew the Terra ecosystem was unstable.  Even assuming that Jump Trading knew the Terra ecosystem was unstable, these disclosures that UST could lose its peg in volatile conditions are inconsistent with an intent to defraud.  *See* Mot. at 13–14.

Plaintiffs' attempt to use the statements of others as well as purported motive and opportunity to demonstrate scienter remains unavailing.  Plaintiffs may not use Remi Tetot's statements, which they again misquote,[4] to establish *Jump Trading's* intent.  Mot. at 14–15.  Further, motive and opportunity evidence is insufficient to demonstrate scienter.  *Id.* at 15.  Nor does the "core operations doctrine" (to which Plaintiffs make passing reference in a parenthetical) apply, as Plaintiffs have not alleged the relevant significance of Jump Trading's supposed LUNA profits to the company's overall business.  *See Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (rejecting theory absent allegations of a dramatic impact on the company's financials).

Similarly, Plaintiffs have not established scienter for their new purported manipulation claim, as they offer no allegations (even in their Opposition) that Jump Trading intended to cause an *artificial* price, as opposed to merely intending to affect price.  Manipulation requires allegations with particularity of "facts giving rise to a strong inference that the defendant intended to deceive investors by artificially affecting the market price of securities."  *ATSI*, 493 F.3d at 102.  Plaintiffs' allegations at most indicate that Jump Trading intended to trade to restore the peg in May 2021.  But mere intent to affect price is not manipulation, particularly where, as here, there is no basis to infer that Jump Trading did not genuinely believe it was buying below fair value (i.e., it was buying UST for under $1 when it thought it was worth $1).  *See id.* at 101; *Wilson*, 2018 WL 6322024, at *14–15 (rejecting argument that intent to affect price renders trading "inherently manipulative, regardless of whether [that trading is] reflective of fair market value").  As discussed above, Plaintiffs do not (and cannot) allege that Jump Trading believed the $1 peg was an artificial price.  Pleading scienter for manipulation claims "is particularly important . . . because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation."  *ATSI*, 493 F.3d at 102.  Plaintiffs' failure to allege that Jump Trading intended to create an artificial price thus precludes a manipulation claim.

---

[4] Plaintiffs claim Mr. Tetot "confessed" that "the Anchor Protocol's 20% yield was simply a 'marketing ploy.'"  Opp. at 17.  "Marketing ploy" is Plaintiffs' phrase; Mr. Tetot referred to it as "the marketing budget."  SAC ¶ 163.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NUMBER: 3:22-CV-03600-TLT

Plaintiffs' remaining arguments are mere scattershot attempts to bolster their insufficient scienter allegations. Contrary to Plaintiffs' arguments, Opp. at 15, purported insider trading cannot establish scienter here because the SAC does not allege insider trading. Nor is Jump Trading's alleged deletion of a single blog post that only tangentially mentioned UST remotely comparable to the conduct alleged in other cases that found scienter could be inferred from subterfuge. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 696–97 (S.D. Tex. 2002) (inferring JP Morgan's knowledge of Enron's fraud from its disguise of loans to Enron). Likewise, the mere existence of *SEC v. TFL*, in which Jump Trading is not a party and which lacks any allegations of Jump Trading's intent, does not demonstrate Jump Trading's intent. Further, Plaintiffs' argument that scienter can be pled based on two technical and unrelated regulatory infractions and Twitter conspiracy theories finds no support in the law.[5] Finally, the unwinding of the LFG, which no longer had a function post-collapse, and the fleeing of Do Kwon, who is not and has never been a Jump Trading employee, does not demonstrate *Jump Trading*'s scienter.[6]

Plaintiffs' allegations of Jump Trading's intent are simply not as "cogent and at least as compelling as any opposing inference" of nonfraudulent intent. *See Webb*, 884 F.3d at 855. Notably, Plaintiffs allege that after the May 2021 depeg Jump Trading (1) took delivery of additional LUNA from TFL under their preexisting loan agreement, SAC ¶¶ 193–94, and (2) funded the LFG's reserve, *id.* ¶¶ 74–75. If, as Plaintiffs assert, Jump Trading believed its manual trading in May 2021 was the only reason the Ecosystem survived, it would be unlikely to immediately take delivery of millions of LUNA that, per Plaintiffs' theory, it could lose at any moment in another collapse. Nor would it be likely to pour additional capital into supporting a supposedly doomed Ecosystem. Jump Trading's continued interaction with and investment in the Ecosystem after the May 2021 depeg is more consistent with a belief in the Ecosystem's viability

---

[5] The lack of connection between those claims and the allegations here are far from those in *City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005), where settlements in other cases regarding safety issues were considered to have put the defendant on notice in a case alleging the defendant hid its true accident rate, *id.* at 685.

[6] In *Middlesex Retirement System v. Quest Software Inc.*, 527 F. Supp. 2d 1164 (C.D. Cal. 2007), it was a CFO's refusal to cooperate that implied a corporate defendant's intent, *id.* at 1187–88.

1   and longevity than fraud.  As Plaintiffs have put forth no specific allegations raising a strong

2   inference of Jump Trading's intent, their securities claims against Jump Trading must be dismissed.

3       **D.   Plaintiffs Fail to Allege Reliance on Jump Trading's Statements.**

4           Plaintiffs establish neither direct reliance nor entitlement to the fraud-on-the-market

5   presumption of reliance, Mot. at 15–17, nor can they skirt the reliance requirement by rewriting

6   this as an omissions case, rather than misrepresentations case, to invoke the *Affiliated Ute*

7   presumption of reliance.

8           Plaintiffs' assertion of direct reliance cites allegations of reliance on the managerial and

9   entrepreneurial efforts of other Defendants and boilerplate group pleading of reliance, Opp. at 17–

10  18 (quoting SAC ¶¶ 99, 261), not direct reliance on any statement by Jump Trading, which

11  Plaintiffs do not allege they even saw.  And their unsupported claim that the mere existence of their

12  purchases establishes reliance would eliminate the reliance requirement altogether.  *Id.*

13          As to the fraud-on-the-market presumption, Plaintiffs have not alleged an efficient market,

14  as required to invoke the presumption.  Mot. at 16–17.  Plaintiffs' claim that the efficient market

15  standard is lowered in manipulation cases to merely alleging a market free of manipulation

16  contravenes the law in this circuit.  Opp. at 18 (citing *Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18,

17  23 (2d Cir. 2013)).  The Ninth Circuit has expressly declined to adopt a presumption of reliance

18  based on the "'integrity of the market,' that is, that no one has destroyed its efficiency by

19  manipulation."  *Desai*, 573 F.3d at 942 (noting that the Supreme Court has recognized only

20  *Affiliated Ute* and the fraud-on-the-market presumptions).[7]

21          Faced with their inability to otherwise allege reliance, Plaintiffs try to recast their case as

22  one based on omissions to invoke the *Affiliated Ute* presumption of reliance for omissions.  But

23  their own allegations demonstrate that this is primarily, if not exclusively, a misrepresentation case,

24

25

26  _____

[7] It is unclear if even the Second Circuit recognizes this presumption, as it also noted "[t]here may
27  . . . be some merit to a modified presumption of reliance in market manipulation cases [but] . . .
    [w]e leave this issue for consideration by future panels," and the plaintiff there alleged direct
    reliance on a misrepresentation.  *Fezzani*, 716 F.3d at 21 n.2.  In any event, this presumption would
28  only apply to a manipulation claim, which Plaintiffs have not adequately alleged.

9

precluding use of *Affiliated Ute*.[8]  *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (*Affiliated Ute* presumption only appropriate if the case involved "primarily alleges omissions"). The number of alleged misstatements in the SAC far outweighs the number of purported omissions.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2 F.4th 1199, 1206 (9th Cir. 2021) (weighing pages of misstatements against a single omission).  The alleged statements by Defendants, including statements by Jump Trading and Mr. Kariya, are set out across several pages in the SAC under the heading "*TFL and the Luna Foundation Guard Misled U.S. Investors Concerning the Stability of UST and LUNA, as Well as the Sustainability of Anchor.*"  SAC ¶¶ 119–57 (emphasis added).  This section asserts no omissions by Jump Trading.  The *only* allegation of an omission in the SAC is in the First Cause of Action, which claims that Mr. Kariya's statement that the LFG reserve "can be used to help protect the peg of the UST stablecoin in stressful conditions" did not disclose that "the peg of UST/LUNA would be unable to be maintained during periods of high volatility in the market; and that Anchor's staking rewards program was unstainable [sic] and causing the 'stressful conditions' that would (and did) precipitate the de-pegging of UST and LUNA." *Id.* ¶ 250(f).[9]  But this alleged omission is "simply the inverse of the affirmative misrepresentations" and, therefore, does not justify applying *Affiliated Ute*.  *In re Volkswagen*, 2 F.4th at 1208.  Because "[a]ffirmative misrepresentations are almost always rendered misleading by an omission," courts "cannot allow such concealment to transform affirmative misstatements into implied omissions."  *Id.* at 1208–09.

*Affiliated Ute's* narrow presumption is warranted only for omissions cases due to the difficulty of proving reliance on a negative, unlike in manipulation and misrepresentation cases. *See Desai*, 573 F.3d at 941 ("it would fail to serve the *Affiliated Ute* presumption's purpose since this is not a case where reliance would be difficult to prove because it was based on a negative");

---

[8] Nor can it be used in manipulation cases.  *Desai*, 573 F.3d at 941 (courts must "maintain[] the well-established distinction, for purposes of the *Affiliated Ute* presumption, between omission claims, on the one hand, and misrepresentation and manipulation claims, on the other").

[9] Though Plaintiffs now claim that Jump Trading should have disclosed its purchases of UST during the May 2021 depeg and its loan agreements with TFL, these allegations are not asserted in the SAC.  Plaintiffs cannot assert these allegations on opposition.  *Broam*, 320 F.3d at 1026 n.2.

*In re Volkswagen*, 2 F.4th at 1206, 1208.  Here, Plaintiffs' inability to allege reliance on any misstatements by Jump Trading is not due to the difficulty of proving reliance on a negative. Rather, it is due to the lack of reliance altogether.  Applying *Affiliated Ute* to this case "would swallow the reliance requirement almost completely."  *In re Volkswagen*, 2 F.4th at 1208.  Plaintiffs have therefore failed to allege reliance on Jump Trading's alleged statements or actions.

### E.    Plaintiffs Have Not Alleged That Jump Trading's Actions Caused Their Losses.

Plaintiffs' framing of the May 2022 price drop itself as a disclosure continues to highlight the lack of any allegation of a revelation leading to a drop in price, as required to plead causation in a fraud-on-the-market case.  *See* Mot. at 17–18.  Plaintiffs argue they need only allege that Jump Trading's actions caused them to invest in an allegedly overvalued token.  Opp. at 19–20.  This argument fails under Supreme Court and Ninth Circuit precedent.  *See Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804, 812–13 (2011) (an inflated purchase price "does not necessarily mean that the misstatement is the cause of a later decline in value," as "the drop could instead be the result of other intervening causes"); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1121 (9th Cir. 2013) ("We have consistently rejected loss causation arguments . . . that a defendant's fraud caused plaintiffs a loss because it 'induced them to buy the shares'" as it would "render[] the concept of loss causation meaningless"); *see also Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp.*, 343 F.3d 189, 198 (2d Cir. 2003) (rejecting this view as "misperceiv[ing] that holding").  Plaintiffs' failure to identify a revelation that caused a drop in price compels dismissal of their securities claims against Jump Trading.

### F.    Plaintiffs Fail to Allege Fraud in Connection With a Security.

Jump Trading incorporates by reference the arguments in the TFL Reply that Plaintiffs have not adequately alleged that the relevant tokens are securities.  *See* TFL Reply, ECF No. 135.

## II.    Plaintiffs Fail to Plead Control Person Liability for TFL's or the LFG's Actions.

Plaintiffs have not adequately alleged that Jump Trading is subject to control person liability for TFL's or the LFG's actions.  Not having addressed the issue, Plaintiffs have abandoned their claim that Jump Trading was a control person of TFL under either Section 15 of the Securities Act or Section 20(a) of the Exchange Act or a control person of the LFG under Section 15 of the

11

Securities Act. *Pers. Elec. Transps., Inc. v. Off. of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009) (holding that plaintiffs waived argument not raised in their opposition to the motion to dismiss).

Plaintiffs' claim that Jump Trading was a control person of the LFG under Section 20(a) of the Exchange Act fares no better, as Plaintiffs' Opposition is limited to the mere heading "Jump was a Control Person of the LFG." Opp. at 20. Regardless, Plaintiffs' Opposition otherwise restates the standard with no analysis, failing to remedy the deficiencies in their allegations.

## III. Plaintiffs Have Not Alleged That Jump Trading Committed a Pattern of Racketeering Activity Causing Their Injuries.

Plaintiffs' RICO claims cannot survive their failure to allege predicate acts, proximate cause, or continuity. Plaintiffs concede by not opposing Jump Trading's arguments that they have failed to plead RICO proximate cause. *See* Mot. at 22–23; *see also Tyler*, 499 F. Supp. 3d at 701. Plaintiffs do not adequately allege predicate acts by Jump Trading as they fail to identify material misrepresentations or omissions and scienter, requiring dismissal.[10] Mot. at 6–15; *supra* at 1–9.

In addition, Plaintiffs have established neither open- nor closed-ended continuity, as they have specified an end date to the pattern of alleged activity a mere month after the arguable alleged predicate acts by Jump Trading. To allege open-ended continuity requires allegations that the conduct "projects into the future with a threat of repetition." *Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1044 (N.D. Cal. 2011). Despite Plaintiffs' argument otherwise, Opp. at 21, there are no allegations in the SAC that the acts alleged therein threatened to continue into the future or that these acts were a way of doing business for Jump Trading. SAC ¶¶ 332–42. What Plaintiffs do allege is that "[t]he pattern of racketeering activity alleged herein was continuing until June 27, 2021"—which amounts to one month of alleged activity. *Id.* ¶ 335. And as this single month of purported racketeering activity ended nearly a full year *before* the collapse of the Terra Ecosystem this is not a case in which the predicate acts could have continued indefinitely "if they had not been fortuitously interrupted." *See Allwaste, Inc. v. Hecht*, 65 F.3d

---

[10] As explained in detail in TFL's Omnibus Motion, ECF No. 122, and Reply, Plaintiffs' RICO claim is barred even in the alternative. *See* TFL Reply.

1523, 1530 (9th Cir. 1995). Plaintiffs therefore have alleged closed-ended continuity of only one month, which is insufficient to support their RICO claim.

## IV. Plaintiffs' State Law Claims Must Be Dismissed.

Plaintiffs cannot overcome their failure to allege non-securities fraud aiding and abetting and conspiracy claims or a viable unjust enrichment claim, necessitating dismissal of these claims.

### A. Plaintiffs Have Not Alleged Viable Conspiracy or Aiding and Abetting Claims.

Plaintiffs concede that they cannot bring a conspiracy or aiding and abetting claim for securities fraud but again fail to identify what underlying tort they "alternatively" assert. Opp. at 23–24. That failure requires dismissal. As Plaintiffs acknowledge, both civil conspiracy and aiding and abetting in California require a primary wrong. *See Okun v. Super. Ct.*, 629 P.2d 1369, 1376 (1981) (California recognizes civil conspiracy "only when it alleges *the commission of a civil wrong* that causes damage" (emphasis added)); *Casey v. U.S. Bank Nat. Ass'n*, 26 Cal. Rptr. 3d 401, 406 (Ct. App. 2005) (aiding and abetting requires "actual knowledge of the *specific primary wrong*" (emphasis added)). In this PSLRA class action, that primary wrong cannot be fraud-based. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 828 (9th Cir. 2018) (state law fraud claims in connection with a security are precluded). Plaintiffs identify no such primary wrong. *See* Opp. at 23 (claiming aiding and abetting to "defraud investors"); SAC ¶¶ 300–12.

Even were Plaintiffs able to maintain conspiracy and aiding and abetting claims for some unnamed wrongdoing, they have not adequately alleged those claims. Plaintiffs fail both to identify an underlying tort and to allege Jump Trading's actual knowledge of that underlying tort, as required for both claims. *See Chance World Trading E.C. v. Heritage Bank of Com.*, 438 F. Supp. 2d 1081, 1084 (N.D. Cal. 2005) (aiding and abetting requires "actual knowledge of the specific primary wrong"); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2019 WL 281370, at *14 (N.D. Cal. Jan. 22, 2019) (conspiracy claim requires allegations of "actual knowledge that a tort is planned"). Nor have Plaintiffs adequately alleged that Jump Trading agreed with any other entity or individual to do anything improper, as is required to plead conspiracy. *See Cnty. of Marin*, 836 F. Supp. 2d at 1045. Plaintiffs' conspiracy and aiding and abetting claims against Jump Trading thus fail.

13

B.    **Plaintiffs' Unjust Enrichment Claim Fails as They Have Not Alleged Fraud.**

Plaintiffs' attempt to manufacture an unjust enrichment claim on opposition cannot remedy the deficiencies in the SAC.  First, Plaintiffs have not opposed Jump Trading's argument that they have failed to allege an inadequate remedy at law, as is required for equitable claims even in the alternative, thus conceding it.  *See Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021); *Tyler*, 499 F. Supp. 3d at 701.  Second, even were that not sufficient grounds for dismissal, Plaintiffs have not alleged that they conferred a benefit on *Jump Trading*.  Plaintiffs mischaracterize their own allegations in the Opposition—they allege in the SAC only that Jump Trading profited from the sale of LUNA, SAC ¶ 195, not that Jump Trading profited *at the expense of Plaintiff*,[11] Opp. at 24.  Third, as detailed above and in Jump Trading's opening brief, Plaintiffs have failed to adequately allege that any benefit was conferred due to fraud.  Mot. at 24–25. Plaintiffs' unjust enrichment claim against Jump Trading therefore fails.

**V.    Leave To Amend Should Be Denied.**

Plaintiffs should not be granted leave to file a Third Amended Complaint as they identify no new relevant information or theories they could not have set forth in the SAC, and the SAC's deficiencies cannot be cured.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Amendment is not warranted where it "would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith."  *Lutge v. Harrington,* 2022 WL 18401350, at *3 (N.D. Cal. Dec. 20, 2022) (Thompson, J.) (dismissing with prejudice where Plaintiff could not cure the deficiencies in his complaint).  The failure to allege a claim against Jump Trading at this stage stems not from lack of available facts but from the lack of actionable conduct.

The SAC is the third in this case, filed with the benefit of *SEC v. TFL*, which it extensively quotes, and *Albright v. Terraform Labs*, *Pte. Ltd.*, No. 22-cv-7281 (S.D.N.Y. filed Aug. 25, 2022).

---

[11] *De Ford v. Koutoulas*, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023), involved a much more direct link between the plaintiff and the defendant, who (unlike Jump Trading) was the initial minter of the coins at issue and therefore plausibly received a direct benefit from plaintiff's purchases, *id.* at *13.  Rather, Plaintiffs' allegations against Jump Trading are akin to those the court dismissed against the other defendant in *De Ford*—boilerplate allegations that were "entirely conclusory without any more to accompany it."  *Id.*; *see* SAC ¶ 350.

Plaintiffs filed an original 72-page complaint in June 2022 (ECF No. 1), an amended 71-page complaint in January 2023 (ECF No. 88), and now their 90-page SAC (ECF No. 102).  That Plaintiffs have been unable, after multiple attempts, a full year of litigation, and 200-plus pages of factual allegations to adequately allege actionable conduct by *Jump Trading* amply demonstrates the futility of any fourth attempt to plead, which would only needlessly delay the "just, speedy, and inexpensive determination of every action and proceeding."  *See* Fed. R. Civ. P. 1; *see also Bristol SL Holdings, Inc. v. CIGNA Health Life Ins. Co.*, 2020 WL 4873528, at *2 (C.D. Cal. June 30, 2020) (denying plaintiff "yet another bite at the apple" after two amended complaints).

Plaintiffs' purported "newly available facts" are irrelevant—the indictment against Do Kwon contains no new facts about Jump Trading, and rumors of a pending investigation and a business decision regarding U.S.-based cryptocurrency trading are not evidence of securities fraud. *See* Opp. at 25.  Nor would these facts remedy Plaintiffs' failure to allege multiple elements of their claims, particularly loss causation and reliance, the facts of which are within Plaintiffs' own grasp.  *See Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 532 (9th Cir. 2018) (dismissing third amended complaint where Plaintiff "provides no reason to suppose further amendment would be anything but futile").

Plaintiffs' plea for leave to add state law claims "if the Court determines that the claims in the SAC are not the correct causes of action," Opp. at 25, must be denied.  Plaintiffs may not assert a new claim they could have asserted in prior pleadings with no justification.  *See  Kittel v. Advantage Physical Therapy*, 843 F. App'x 53, 56 (9th Cir. 2021) (affirming denial of third opportunity to amend "given the additional allegations were not premised on newly discovered facts but rather new theories that could have been asserted earlier"); *Bristol*, 2020 WL 4873528, at *2 (denying amendment to add new cause of action "based on facts [plaintiff] knew before it filed its case").  Plaintiffs' SAC should thus be dismissed with prejudice.

## CONCLUSION

Given the incurable deficiencies in the Second Amended Complaint, Jump Trading respectfully requests that the Court dismiss the complaint in its entirety, with prejudice.

Dated: August 2, 2023

Respectfully submitted,

KOBRE & KIM LLP

/s/ Jonathan D. Cogan

Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Leif T. Simonson (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Tel.: +1 212 488 1206
Fax: +1 212 488 1231
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
leif.simonson@kobrekim.com

Daniel Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, California 94111
Tel.: +1 415 582 4751
Fax: +1 415 582 4811
daniel.zaheer@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: +1 202 664 1965
Fax: +1 202 664 1920
erika.berman@kobrekim.com

*Attorneys for Defendant Jump Trading, LLC*

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NUMBER: 3:22-CV-03600-TLT