**KKL LLP**
Paul M. Krieger (admitted *pro hac vice*)
Jonathan F. Bolz (admitted *pro hac vice*)
Benjamin W. Perotin (admitted *pro hac vice*)
350 5th Avenue, Suite 7710
New York, NY 10018
(212) 390-9550
Paul.Krieger@KKLllp.com
Jonathan.Bolz@KKLllp.com
Ben.Perotin@KKLllp.com

**KOBRE & KIM LLP**
Daniel A. Zaheer (SBN 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
(415) 582-4751
daniel.zaheer@kobrekim.com

*Counsel for William DiSomma*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JUMP TRADING LLC, JUMP CRYPTO HOLDINGS LLC, TAI MO SHAN LTD., KANAV KARIYA, AND WILLIAM DISOMMA,<br><br>Defendants. | Case No. 5:22-cv-03600-PCP<br><br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV P. 12(b)(6)** |

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ....................................................................................................................... 1

RELEVANT ALLEGATIONS.................................................................................................... 3

ARGUMENT ............................................................................................................................... 4

I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR SECURITIES FRAUD....................... 5

    A.    Plaintiffs Fail to Allege DiSomma Made Any Misleading Statements .......................... 5

    B.    Plaintiffs Fail to Allege DiSomma Committed a Manipulative or Deceptive Act ......... 7

    C.    Plaintiffs Fail To Raise a Strong Inference of Scienter with Respect to DiSomma ....... 9

II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 9(a)(2) OR (6)............ 13

III.  COUNTS V–VIII ARE BARRED BY THE STATUTE OF LIMITATIONS AND

    STATUTE OF REPOSE WITH RESPECT TO DISOMMA .................................................. 15

IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTIONS 5 AND 12(A)(1) .. 17

V.    PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM................................. 18

CONCLUSION.......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abdo v. Fitzsimmons,*
    2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ........................................................................ 7

*Aramic LLC v. Reverence Therapeutics, Inc.,*
    2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) ...................................................................... 5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................................ 4

*Bao v. SolarCity Corp.,*
    2015 WL 1906105 (N.D. Cal. Apr. 27, 2015) .................................................................. 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................ 4

*Billing v. Credit Suisse First Boston Ltd.,*
    426 F.3d 130 (2d Cir. 2005) ............................................................................................. 15

*Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1,*
    748 F. Supp. 2d 1246 (W.D. Wash. 2010) ....................................................................... 19

*Chan v. ArcSoft, Inc.,*
    2020 WL 13891272 (N.D. Cal. Sept. 16, 2020) ............................................................... 20

*Cohen v. Stevanovich,*
    722 F. Supp. 2d 416 (S.D.N.Y. 2010) .............................................................................. 14

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) .............................................................................................. 7

*Credit Suisse Sec. (USA) LLC v. Billing,*
    551 U.S. 264 (2007) .......................................................................................................... 15

*Davidoff v. Farina,*
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) .................................................................. 13

*Davy v. Paragon Coin, Inc.,*
    2021 WL 2940201 (N.D. Cal. June 23, 2021) .................................................................. 17

*Desai v. Deutsche Bank Secs. Ltd.,*
    573 F.3d 931 (9th Cir. 2009) .......................................................................................... 7, 8

*Fayer v. Vaughn,*
    649 F.3d 1061 (9th Cir. 2011) ............................................................................................ 4

*Friedman v. Salomon/Smith Barney,*
    2001 WL 64774 (S.D.N.Y. Jan. 23, 2001) ...................................................................... 14

*Hefler v. Wells Fargo & Co.,*
    2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ................................................................... 7

*Hoang v. Bank of Am., N.A.*,
    910 F.3d 1096 (9th Cir. 2018) ........................................................................... 16

*In re Daou Sys. Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ........................................................................... 17

*In re Genius Brands Int'l, Sec. Litig.*,
    97 F. 4th 1171 (9th Cir. 2024) ........................................................................... 17

*In re Gilead Sci. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................. 4

*In re Med. Cap. Sec. Litig.*,
    2010 WL 11508331 (C.D. Cal. Aug. 11, 2010) ................................................. 15

*In re Network Assocs., Inc. II Sec. Litig.*,
    2003 WL 24051280 (N.D. Cal. Mar. 25, 2003) ................................................. 16

*In re PG&E Corp. Sec. Litig.*,
    2025 WL 2781745 (N.D. Cal. Sept. 30, 2025) ..................................................... 5

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ............................................................................. 12

*In re Ripple Labs Inc. Litig.*,
    2024 WL 3074379 (N.D. Cal. June 20, 2024) ................................................... 16

*In re Tezos Sec. Litig.*,
    2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ............................................... 17, 18

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
    564 U.S. 135 (2011) ............................................................................................. 5

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ............................................................................... 8

*Krupski v. Costa Crociere S.p.A.*,
    560 U.S. 538 (2010) ........................................................................................... 16

*Kyung Cho v. UCBH Holdings, Inc.*,
    890 F. Supp. 2d 1190 (N.D. Cal. 2012) ............................................................ 10

*M&M Hart Living Tr. v. Glob. Eagle Entm'nt, Inc.*,
    2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) ..................................................... 6

*Mandalevy v. Bofi Holding, Inc.*,
    2021 WL 794275 (S.D. Cal. Mar. 2, 2021) .......................................................... 7

*Manzarek v. St. Paul Fire & Marine Ins Co.*,
    519 F.3d 1025 (9th Cir. 2008) ............................................................................. 4

*Mulligan v. Impax Lab'ys, Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ................................................................ 18

*Mungin v. Sec'y, Fla. Dep't of Corrs.*,
   89 F.4th 1308 (11th Cir. 2024)..................................................................16

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)...............................................................5, 9

*Patterson v. Jump Trading LLC*,
   710 F. Supp. 3d 692 (N.D. Cal. 2024) ........................................................8

*Powers v. Graff*,
   148 F.3d 1223 (11th Cir. 1998).................................................................16

*Purple Mountain Tr. v. Wells Fargo & Co.*,
   432 F. Supp. 3d 1095 (N.D. Cal. 2020) ....................................................19

*S.E.C. v. Page*,
   2024 WL 4468040 (E.D.N.Y. Sept. 13, 2024)............................................13

*S.E.C. v. Terraform Labs. Pte. Ltd.*,
   23-cv-1346 (S.D.N.Y.)........................................................................3, 8, 10

*S.E.C. v. Uberuaga*,
   2009 WL 10725921 (S.D. Cal. Apr. 2, 2009) ............................................10

*S.E.C. v. Wallace*,
   2017 WL 8230026 (C.D. Cal. May 8, 2017)...............................................13

*Samuels v. Lido Dao*,
   757 F. Supp. 3d 951 (N.D. Cal. 2024) ......................................................17

*SEC v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) ..................................................................19

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) .......................................................12

*Sharette v. Credit Suisse Int'l*,
   127 F. Supp. 3d 60 (S.D.N.Y. 2015) .........................................................14

*Simpson v. AOL Time Warner, Inc.*,
   452 F.3d 1040 (9th Cir. 2006),...................................................................7

*Simpson v. Homestore.com*,
   519 F.3d 1041 (9th Cir. 2008) ....................................................................8

*Stoltz Family Partnership L.P. v. Daum*,
   355 F.3d 92 (2nd Cir. 2004)......................................................................16

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007).................................................................4, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ....................................................................................9

*UPPI LLC v. Cardinal Health, Inc.*,
    2022 WL 3594081 (9th Cir. Aug. 23, 2022) ......................................................... 4

*Wang v. Zymergen Inc.*,
    744 F. Supp. 3d 995 (N.D. Cal. Aug. 14, 2024) ...................................................... 15, 18

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ...................................................................................... 9

*York Cnty. ex rel Cnty. of York Ret. Fund v. HP Inc.*,
    738 F. Supp. 3d 1182 (N.D. Cal. 2024) ...................................................................... 16

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...................................................................................... 18

**Statutes**

15 U.S.C. § 77e ................................................................................................ 2, 16, 17, 18

15 U.S.C. § 77l(a) ...................................................................................................... *passim*

15 U.S.C. § 77m ................................................................................................................ 15, 16

15 U.S.C. § 78i(a) ...................................................................................................... *passim*

15 U.S.C. § 78i(f) ................................................................................................................ 13

15 U.S.C. § 78j(b) ...................................................................................................... *passim*

15 U.S.C. § 78u-4(b) ......................................................................................................... 4, 9

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................... 4, 12

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 4

Fed. R. Civ. P. 15(c)(1)(C) .............................................................................................. 15

**Regulations**

17 C.F.R. § 230.405 ........................................................................................................... 19

17 C.F.R. § 240.10b-5 ....................................................................................................... 2, 14, 18

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 7, 2026, at 10:00 a.m, or at such other date as may be agreed upon or ordered in the United States District Court for the Northern District of California, Courtroom of the Honorable P. Casey Pitts, 280 South 1st Street, San Jose, CA 95113, Defendant William DiSomma will and hereby does move this court to dismiss the Fourth Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF ISSUES TO BE DECIDED

1.    Should the Court dismiss Counts I–II against DiSomma for failure to state a claim where Plaintiffs fail to adequately allege any actionable misstatements, omissions, or manipulative acts or scienter on the part of DiSomma?

2.    Should the Court dismiss Count III against DiSomma for failure to state a claim where Plaintiffs have failed to adequately allege the requisite mens rea or a violation of an applicable SEC rule?

3.    Should the Court dismiss Counts V–VIII against DiSomma as time barred?

4.    Should the Court dismiss Count IV against DiSomma for failure to state a claim because Plaintiffs have failed to adequately allege that DiSomma was a statutory seller?

5.    Should the Court dismiss Counts V–VIII against DiSomma for failure to state a claim because Plaintiffs have failed to adequately allege either a primary violation of the securities laws or that DiSomma was a control person of the relevant entities?

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Over the course of over three and a half years of litigation and five complaints totaling three hundred and fourteen pages, Plaintiffs have cycled through multiple sets of defendants, claims, and factual allegations in a futile search for a viable theory regarding their purported losses resulting from their purchase of TerraUSD ("UST"). Plaintiffs' now fifth bite at this apple does not remedy any of the core failings of their allegations.

The FAC is particularly anemic with respect to specific allegations relating to Defendant William DiSomma.  Instead, Plaintiffs largely choose to lump DiSomma into broad allegations about actions taken by "Jump" or "Defendants."  But such unspecific, conclusory group pleading is insufficient to state a claim.  And what few specific allegations Plaintiffs do make regarding DiSomma paint a consistent picture of lawful conduct: an executive who believed in UST and its surrounding ecosystem, believed that he could make money based on the trading opportunities the UST-depeg presented, and then acted based on that belief.  Plaintiffs' post-hoc attempt to recast DiSomma's reasonable, good faith, and benign business strategies and decisions should be rejected and the claims against him dismissed with prejudice.

DiSomma incorporates by reference the Statement of Facts and all arguments set forth in Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and Tai Mo Shan Ltd.'s Motion to Dismiss ("Jump Brief" or "Jump Br.") as well as the relevant arguments set forth in Kanav Kariya' Motion to Dismiss ("Kariya Brief" or "Kariya Br.") as if fully set forth herein, and writes separately to address several failings of the FAC that further justify dismissal of claims against DiSomma specifically.

*First*, Plaintiffs fail to state a claim against DiSomma for securities fraud under Section 10(b) and Rule 10b-5 on either a misleading statements or market manipulation theory.  The former theory fails because the FAC fails to allege DiSomma made any alleged material misstatement or omission.  The latter theory fails because DiSomma is not alleged to have taken any manipulative act.  And both fail because the FAC's allegations fall far short of the Private Securities Litigation Reform Act's ("PSLRA") requirement that Plaintiffs demonstrate a strong inference of scienter as to DiSomma.

*Second*, Plaintiffs' market manipulation claims under Section 9(a)(2) and (6) fail for much the same reasons that their securities fraud claims fail.  Moreover, the FAC does not allege that DiSomma had the requisite intent, nor does the FAC identify any illicit pegging by DiSomma of a security in contravention of an SEC rule.

*Third*, Plaintiffs' Section 5 and 12(a)(1) claims must be dismissed because DiSomma was not a statutory seller of the securities. Plaintiffs do not allege that DiSomma himself sold them securities, nor do they allege that DiSomma solicited their purchase. Indeed, Plaintiffs do not even allege that they were aware DiSomma had any involvement with UST prior to their purchase.

*Finally*, Plaintiffs fail to state a claim for control person liability against DiSomma with respect to any of the relevant entities because Plaintiffs both fail to state a primary violation and because their allegations regarding DiSomma's supposed control are insufficient.

In sum, Plaintiffs fail to state any claim with respect to DiSomma individually, and the FAC should be dismissed with prejudice.

## **RELEVANT ALLEGATIONS**[1]

Over the course of the one hundred and one-page FAC, DiSomma is mentioned in substance only a handful of times and his alleged actions can be counted on one hand. DiSomma is a founder and co-owner of Jump Trading. *See* FAC ¶ 36. He is alleged to have "ran the Jump Crypto team," which included "set[ting] strategic initiatives, and approv[ing] any sort of deal strategy or trading strategy." FAC ¶ 122. Beginning on May 19, 2021, UST began to deviate from its peg value of $1. FAC ¶¶ 125–26. During this period, DiSomma wrote to colleagues at Jump that LUNA was "under massive selling pressure," that there was a "fear of a bank run," and that Jump "needed to support UST directly on Kucoin." FAC ¶ 106. In the same discussion, DiSomma remarked that he was "bracing for another sell storm." FAC ¶ 107.

The majority of the FAC's factual allegations regarding DiSomma are drawn from the testimony of a former Jump employee, James Hunsaker, at the trial of *S.E.C. v. Terraform Labs. Pte. Ltd.*, 23-cv-1346 (S.D.N.Y.) (the "TFL Trial"). Hunsaker testified that on May 21, 2021, while UST was trading below $1, DiSomma directed Jump Crypto's traders to "adjust the parameters of the trading models so that Jump was not acting like a market maker, as it usually

---

[1] DiSomma incorporates by reference the Statement of Facts in the Jump Brief, and for the purposes of brevity will not repeat them here. As noted in the Jump Brief, many of Plaintiffs' allegations are demonstrably false. Jump Br. at 3 n.1. DiSomma accepts the allegations in the FAC as true only for purposes of this motion.

3

1    did, but aggressively buying and accumulating UST." FAC ¶ 128. DiSomma allegedly said that

2    he was "willing to risk up to a couple hundred million dollars to do this" because "saving the TFL

3    ecosystem would financially benefit Jump and the Individual Defendants." FAC ¶ 130. Once the

4    price of UST stabilized at $1, DiSomma allegedly instructed Jump Crypto traders to sell some of

5    its UST holdings "very carefully not to cause like another depeg event." FAC ¶ 129. When

6    deposed by the SEC prior to the TFL Trial, DiSomma invoked his Fifth Amendment rights in

7    response to questions concerning UST. FAC ¶ 353.

8                                    **ARGUMENT**

9            To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff

10   must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

11   *Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where the plaintiff "pleads factual

12   content that allows the court to draw the reasonable inference that the defendant is liable for the

13   misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss,

14   the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in

15   the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

16   519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court need not "assume the truth of legal

17   conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*,

18   649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). Likewise, the Court is not required to

19   "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

20   unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

21           Furthermore, Plaintiffs' claims are premised on allegations of fraud and are thus subject to

22   the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.

23   Accordingly, Plaintiffs are required to identify the "who, what, when, where, and how of the

24   misconduct charged, as well as what is false or misleading about [the purportedly fraudulent]

25   statement, and why it is false." *UPPI LLC v. Cardinal Health, Inc.*, 2022 WL 3594081, at *1 (9th

26   Cir. Aug. 23, 2022) (citation omitted); *see also* 15 U.S.C. § 78u-4(b)(2)(A). Plaintiff cannot

27   "merely lump multiple defendants together" but rather must "identify the role of each defendant

28

in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation modified); *see also* Kariya Br. at 13–14.  Plaintiffs' allegations regarding DiSomma fall far short of this high bar.

## I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR SECURITIES FRAUD

In order to state a claim for securities fraud, Plaintiffs must adequately allege "(1) a material misrepresentation or omission" or manipulative act; "(2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014).  For the reasons described in the Jump and Kariya Briefs, Plaintiffs fail to adequately allege that there were any material misstatements or omissions, manipulative acts, reliance by the Plaintiffs, or that any of the Defendants' actions caused their losses.  *See* Jump Br. at 13–33; Kariya Br. at 13–23.  Moreover, Plaintiffs' securities fraud theories (like all their claims) are premised on the allegation that Jump was engaged in securities transactions when it bought and sold UST.  *See* FAC ¶¶ 333–413.  For the reasons explained in the Kariya Brief, Jump's transactions fail the *Howey* test, dooming the FAC in its entirety.  *See* Kariya Br. at 6–9.  Each of these failings are equally applicable to the claims against DiSomma individually and justify dismissal.  But beyond this, Plaintiffs' claims have unique failings with respect to DiSomma that further necessitate dismissal.

### A.    Plaintiffs Fail to Allege DiSomma Made Any Misleading Statements

A person can only be held liable under Section 10(b) for statements that they themselves make.  *Aramic LLC v. Reverence Therapeutics, Inc.*, 2024 WL 1354503, at *12 (N.D. Cal. Apr. 2, 2024) (citing *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 141 (2011)).  "[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc.*, 564 U.S. at 142.  In other words, to survive a motion to dismiss, the Plaintiffs "must plausibly allege that [DiSomma] was intricately involved or [] substantially participated in deciding what the statements would say

and how they would be delivered." *In re PG&E Corp. Sec. Litig.*, 2025 WL 2781745, at *12 (N.D. Cal. Sept. 30, 2025) (citation omitted). They fail to do so.

Plaintiffs identify thirteen allegedly materially false or misleading statements or omissions. *See* Dkt. 176-4 (chart of alleged misstatements). For the reasons described in both the Jump Brief and the Kariya Brief, none of these purported misstatements or omissions are actionable. But even if they were, there are no plausible allegations that DiSomma made them, and therefore he cannot be held liable.

Plaintiffs do not allege that DiSomma was the speaker or writer of a single one of the allegedly materially false statements. DiSomma is not alleged to have personally made any social media or website posts. DiSomma is not alleged to have personally spoken on a podcast. DiSomma is not alleged to have made *any* public statement regarding the relevant tokens, let alone a materially false or misleading one. Six of the purported misstatements were plainly made by TFL, Do Kwon, or LFG. FAC ¶¶ 340(b); (c); (f); (g); (i); (k).[2] And Plaintiffs identify "Jump" or "Kariya" or "Defendants" generally as the speaker of the remaining purported misstatements and omissions. FAC ¶¶ 340(a); (d); (e); (h); (j); (l); (m). The FAC does not allege DiSomma had any role in preparing, reviewing, or approving *any* of the purported misstatements or omissions. Plaintiffs do not allege that DiSomma reviewed, approved, or was even aware of the information published on Jump's blog on September 14, 2021 or October 11, 2021. *See* FAC ¶¶ 340(d)–(e). Plaintiffs do not allege that DiSomma reviewed, approved, or was even aware of social media posts made by Kariya. *See* FAC ¶ 340(h). Moreover, several of the purported misstatements were oral statements made by Kariya on a podcast. *See* FAC ¶¶ 340(k)–(m). As oral statements "can be attributed to the speaker only," these cannot form the basis of a claim against DiSomma. *M&M Hart Living Tr. v. Glob. Eagle Entm'nt, Inc.*, 2017 WL 5635424, at *12 (C.D. Cal. Aug. 20, 2017).[3]

---

[2] As set forth in Jump's Brief, Plaintiffs misattribute several of their alleged misstatements. The above attributions correctly identify the maker or speaker of the alleged misstatements. And, in any event, even if Plaintiffs' misattributions of the alleged misstatements were correct, they do not allege that *DiSomma* was the speaker of any of these misstatements or omissions

[3] For the reasons explained in the Jump Brief, Plaintiffs also fail to allege that DiSomma had a duty to disclose any of the purportedly omitted information. *See* Jump Br. at 19–21.

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) – 5: 22-CV-03600-PCP

At best, the FAC might be read to imply that DiSomma "made" certain statements published on Jump's blog or Kariya's social media account because he was the co-founder of Jump Trading and played a prominent role at the company.  But it is well established law that "a corporate officer's position alone, without additional allegations as to the officer's ability to control the contents of the statement at issue, does not suffice to render the officer a 'maker' of the statement."  *Mandalevy v. Bofi Holding, Inc.*, 2021 WL 794275, at *6 (S.D. Cal. Mar. 2, 2021) (collecting cases); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018) (same).

Plaintiffs' claim that DiSomma is legally responsible for statements published by Do Kwon, TFL, or the LFG is even more implausible.  DiSomma is not alleged to have had any contact with Kwon, TFL, or LFG.  DiSomma is not alleged to have had any ownership or stake in TFL or LFG.  DiSomma is not alleged to have had any role, formal or otherwise, with respect to TFL or LFG.  And DiSomma is not alleged to have reviewed, approved, or even been aware of the alleged false statements by Do Kwon, TFL, or the LFG.  *See infra* Section V.  Given this, the FAC fails to "specifically allege how [DiSomma] was connected to the making of [these] particular statement[s]."  *Abdo v. Fitzsimmons*, 2017 WL 6994539, at *9 (N.D. Cal. Nov. 3, 2017).

At bottom, Plaintiffs attempt to sue DiSomma for statements made entirely by others.  And the FAC fails to include any allegations, let alone plausible ones, regarding his role in those statements.  Accordingly, and for the reasons set forth in the Jump Brief and Kariya Brief, Plaintiffs fail to state a claim for fraud against DiSomma based on misstatements or omissions.

### B.  Plaintiffs Fail to Allege DiSomma Committed a Manipulative or Deceptive Act

Plaintiffs' manipulative or deceptive act theory as to DiSomma fares no better.  Plaintiffs must show "each defendant committed a manipulative or deceptive act in furtherance of [a scheme to defraud]."  *Cooper v. Pickett,* 137 F.3d 616, 624 (9th Cir. 1997).  Specifically, Plaintiffs must show that the act was "intended to mislead investors by artificially affecting market activity." *Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) (citation omitted).  And "[i]t is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and

1   effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have

2   had a deceptive purpose and effect." *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048

3   (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com*, 519 F.3d 1041, 1041–

4   42 (9th Cir. 2008) (emphasis in the original).

5       Plaintiffs' allegations of manipulative or deceptive conduct are nearly identical to

6   allegations that the Court rejected as insufficient when it dismissed the Second Amended

7   Complaint. *See Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 716–17 (N.D. Cal. 2024)

8   (dismissing manipulative or deceptive conduct claim). As the Jump Brief explains, the FAC does

9   not remedy the crucial failings identified by the Court and should be dismissed. *See* Jump Br. 29–

10  33. These arguments apply to DiSomma as well.

11      But Plaintiffs' allegations regarding DiSomma's participation are particularly inadequate.

12  The only participation DiSomma is alleged to have had in the purported manipulative scheme is

13  directing Jump's trading in UST on May 23, 2021. *See* FAC ¶¶ 112, 128.[4]  But there are no

14  allegations regarding DiSomma's knowledge or behavior that indicate he acted with an intent to

15  "artificially affect[] market activity." *Desai*, 573 F.3d at 939. There is no allegation that DiSomma

16  believed that a $1 price for UST was artificial. Rather, as the Court observed with respect to Jump,

17  DiSomma's alleged decision "could reflect a benign business decision," wherein he saw an

18  opportunity to acquire "tokens below their real value" and then sell for profit. *Patterson*, 710 F.

19  Supp. 3d at 717. Indeed, that is precisely what the FAC alleges DiSomma did. *See* FAC ¶ 129

20  (alleging that after the depeg, DiSomma "instructed Jump to sell the UST").

21      In fact, Plaintiffs' allegations drawn from James Hunsaker's testimony during the TFL

22  Trial, support the Court's prior conclusion.[5]  Hunsaker testified that the May 2021 depeg event

23

24  [4] Plaintiffs' account is entirely based on the declaration and testimony of Hunsaker in the TFL
    Trial. For the reasons described *infra*, there is significant reason to doubt Hunsaker's account.

25  [5] The FAC extensively cites to Hunsaker's testimony. *See* FAC ¶¶ 120–31 & n.106–20. And his

26  testimony on this point is the sole information in the FAC even attempting to tie DiSomma to the
    purportedly manipulative trading at issue. *Id.*  Accordingly, it is incorporated by reference into

27  the FAC, and the Court can and should rely on it when adjudicating this motion. *See Khoja v.
    Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

28

represented an "arbitrage opportunity," and the further the depeg, the "more money you can make to restore it." Krieger Decl. Ex. A at 856:24-25. According to Hunsaker, DiSomma, an experienced trader, saw this opportunity, and directed his team to "aggressively buy[] and accumulat[e] UST." FAC ¶ 128. And then once the price stabilized, DiSomma "instructed Jump to sell the UST." FAC ¶ 129. In other words, like the Court theorized earlier, Jump bought "tokens below their real value," and then sold them at a profit, a completely "benign business decision." *Patterson*, 710 F. Supp. 3d at 717. Indeed, DiSomma's purported instruction to Jump to sell UST "carefully not to cause like another depeg event" evinces an intent to *not* artificially disrupt the market. *Id.*

For these reasons and the reasons set out in the Jump and Kariya Briefs, Plaintiffs' market manipulation theory against DiSomma should be dismissed with prejudice.

### C. *Plaintiffs Fail To Raise a Strong Inference of Scienter with Respect to DiSomma*

Plaintiffs' failure to adequately allege scienter is an independent basis for dismissal. To state a claim for securities fraud, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind," in this case, scienter. 15 U.S.C. § 78u-4(b)(2). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Seaman v. Cal. Bus. Bank*, 2013 WL 5890726, at *6 (N.D. Cal. Oct. 30, 2013). Plaintiffs' scienter allegations must be "more than merely plausible or reasonable." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Rather, they "must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Webb v. Solarcity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018) (citation omitted). And Plaintiffs must "allege scienter with respect to each of the individual defendants." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014). This burden is "not easy to satisfy." *Webb*, 884 F.3d at 855. And Plaintiffs fail to do so with respect to DiSomma.

Plaintiffs' allegations with respect to DiSomma do not come close to demonstrating an intent to deceive, manipulate, or defraud. DiSomma is not alleged to have engaged in any conversations with Kwon or anyone at TFL, let alone entered into an agreement to manipulate

securities with Kwon or TFL.  DiSomma is not alleged to have believed that UST was worth less than $1 or that the "self-healing" algorithm was a sham.  Indeed, Plaintiffs only reference DiSomma twice in their scienter allegations.  *See* FAC ¶¶ 348, 353.  Neither allegation is sufficient to make out the requisite strong inference of scienter.

*First*, Plaintiffs allege that scienter is supported by the fact that DiSomma invoked his "Fifth Amendment right against self-incrimination when questioned by the SEC concerning the May 2021 peg bailout." FAC ¶ 353.  But that invocation was years ago and years after the events at issue, under different circumstances, and in a different proceeding.  Because of this, Plaintiffs "may not rely at this stage of the proceedings on a defendant's Fifth Amendment invocation in other proceedings to draw an adverse inference." *S.E.C. v. Uberuaga*, 2009 WL 10725921, at *4 (S.D. Cal. Apr. 2, 2009).  Indeed, Courts have rejected attempts by Plaintiffs, including the SEC itself, to "rely on the alleged assertion of the Fifth Amendment privilege against self-incrimination during the SEC's investigation" to plead scienter.  *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203–04 (N.D. Cal. 2012); *see also Uberuaga*, 2009 WL 10725921, at *4.

*Second*, Plaintiffs allege that DiSomma "personally led Jump's UST trading efforts." FAC ¶ 348.  But whether or not DiSomma led Jump's trading efforts is besides the point.  The question is whether DiSomma directed that trading with an "intent to deceive, manipulate, defraud." *Seaman*, 2013 WL 5890726, at *6.  Here, there is no allegation, let alone a plausible one, that DiSomma believed that UST was worth less than $1 or that Jump's purchases would send a false signal about the value of UST to the market.  Indeed, as described *supra*, the allegations in the FAC are entirely consistent with DiSomma making a benign business decision to capitalize on an arbitrage opportunity.  *See supra* at Section I.B.  Nor is there any allegation that DiSomma knew at the relevant time that TFL or Kwon would later make alleged misrepresentations about the event.

Plaintiffs' attempts to cherry pick through the TFL Trial record to support their claims fall well short of establishing scienter.  Plaintiffs claim that Hunsaker testified that DiSomma told him "in the spring of 2021 that Jump wants to incentivize UST adoption because Jump had a deal with

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) – 5: 22-CV-03600-PCP

1    TFL to increase the amount of TFL being traded," FAC ¶ 123, but Plaintiffs mischaracterize

2    Hunsaker's testimony.  As the trial transcript Plaintiffs cite for this allegation makes clear,

3    Hunsaker was relaying DiSomma's explanation for and motivation behind an entirely different

4    project Jump was working on with Terra regarding an "ETF sort of functionality on blockchain,"

5    rather than any sort of agreement to engage in manipulative or artificial trading.  FAC ¶ 123;

6    Krieger Decl. Ex. A at 854:4-18.  And even if DiSomma was involved in a deal to promote UST,

7    there is no allegation that that DiSomma was aware or believed that such a deal was manipulative

8    or inappropriate in any way.

9        Plaintiffs also point to Hunsaker's assertion that he had overheard DiSomma say that "he

10    [was] willing for Jump to risk about $200 million to help restore the peg."  FAC ¶¶ 112; 130.  As

11    a factual matter, Hunsaker's understanding of the events of May 2021 depeg is incomplete at best

12    and in many respects inaccurate.  A fulsome review of the trial transcript cited in the FAC reveals

13    that Hunsaker had no direct involvement in Jump Crypto's trading of UST, he had no direct

14    knowledge of any purported communications between Kariya and Kwon, and, critically, there is

15    no evidence that he was present during the morning of May 23 when Jump Crypto purchased more

16    than half of its 20 million UST position.  Ex. A at 884:17–885:6, 891:12–14, 890:4–6.  Indeed,

17    Plaintiffs' reliance on Hunsaker's testimony to establish that Jump and DiSomma were engaged

18    in manipulation in May 2021 is undercut by, among other things, two allegations in the complaint:

19    (1) Hunsaker never reported concerns about Jump's supposed restoration of the peg while at the

20    company; and (2) Hunsaker himself subsequently purchased $200,000 of UST and held it for

21    months.  *Id*. at 871:4-10; 865:2–866:10.

22        But even taking Hunsaker's statements at face value, the mere fact that DiSomma was

23    willing to risk $200 million to help restore the peg is not probative of the operative question, which

24    is whether DiSomma believed that UST was not worth $1.  And a decision to buy at prices less

25    than $1, supporting the peg, is consistent with the belief that UST was actually worth $1.  Likewise,

26    a single internal chat where DiSomma expresses a desire to "support UST" is also not indicative

27    of scienter, because there is no allegation that DiSomma's desire to support UST was motivated

28

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) – 5: 22-CV-03600-PCP

by anything but a genuine belief in the ecosystem and a reasonable and good-faith belief that such trades were in the Jump Entities' economic interest because UST was actually worth more than what they were paying for the digital currency. *See* FAC ¶¶ 106–07.

*Finally,* Plaintiffs' other scattershot allegations regarding DiSomma throughout the FAC also do not evince scienter. Plaintiffs repeatedly alleged that DiSomma was the "cofounder" of Jump, "ran the [Crypto] team," or "set strategic initiatives. FAC ¶ 122; *see also* FAC ¶¶ 112, 228, 348. But "allegations that a defendant holds a high executive position, without more, do not support a strong inference of scienter." *In re Affymetrix Deriv. Litig.*, 2008 WL 11456130, at *5 (N.D. Cal. Oct. 24, 2008). And as discussed *supra*, the FAC does not include any "allegation[s] of specific information conveyed to management and related to the fraud." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008). Plaintiffs' remaining scienter allegations are ascribed broadly to "Defendants" or "Jump." *See, e.g.*, FAC ¶¶ 345–49. But "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz*, 476 F.3d at 764. Instead, Plaintiffs must "differentiate their allegations when suing more than one defendant." *Id.* Their failure to do so is fatal to their claim. *See* Jump Br. at 22.

Indeed, many of Plaintiffs' other allegations actually weigh against a finding of scienter as to DiSomma. Plaintiffs' supposed smoking gun is that Kariya allegedly negotiated a deal with Kwon for TFL to "vest" Jump with additional LUNA tokens prior to Jump trading in May 2021. *See* FAC ¶¶ 107–08. In other words, Jump agreed to take possession of tens of millions of LUNA tokens at a time the price of UST was falling. *See* FAC ¶ 101. If DiSomma and Jump were aware that UST was a sham, this would make no sense. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005) (finding no scienter when "plaintiffs [] fail to allege facts explaining why, if it was aware of Enron's problems, [defendant] would have continued to lend Enron billions of dollars"). Furthermore, the FAC alleges that Jump continued to acquire millions of additional LUNA tokens after May 2021 until days before the ultimate collapse. *See* FAC ¶¶ 165, 172, 182, 188, 205, 217, 245, 254. As the FAC states, "Defendants owned hundreds of millions of LUNA tokens throughout the class period," which tied "their fortunes with LUNA

12

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) – 5: 22-CV-03600-PCP

investors' fortunes." FAC ¶ 307.  Again, the fact that Jump continued to hold and even acquired an additional stake in the LUNA ecosystem weighs against a finding of scienter.  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884–85 (9th Cir. 2012) (stating that holding security "between the allegedly fraudulent statements and the subsequent public disclosure" weighs against an inference of scienter).  It would make no sense for DiSomma to direct the company he supposedly controls to continue investing in and acquiring tokens in an ecosystem that he knew to be propped up by fraud.  *See, e.g., Davidoff v. Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) (finding that there could be no inference of scienter because "it would have made no economic sense for defendants to invest literally billions of dollars in a venture that they knew would fail").

In sum, Plaintiffs' allegations fall far short of demonstrating a strong inference of scienter with respect to DiSomma, and their securities fraud claims should be dismissed with prejudice.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 9(a)(2) OR (6)

Plaintiffs' claims under Section 9(a)(2) and (6) fail for many of the same reasons their Section 10(b) claims fail.  As the Jump Brief explains, Plaintiffs' "shortcomings for manipulation under Section 10(b) also preclude Plaintiffs' manipulation claim under Section 9(a)."  Jump Br. at 33.  And with respect to Section 9(a) specifically, Plaintiffs fail to adequately allege willful participation or a violation of an applicable SEC rule.  *See* Jump Br. at 33–35.  These failings are equally applicable to Plaintiffs' allegations regarding DiSomma specifically.  But the claims against DiSomma are uniquely weak.

*First*, Plaintiffs fail to adequately allege DiSomma had the requisite mens rea.  Plaintiffs must adequately allege that DiSomma "willfully participate[d]" in the specific violation of Section 9(a).  15 U.S.C. § 78i(f).  With respect to their Section 9(a)(2) claim, Plaintiffs must demonstrate that DiSomma acted with the "specific intent or purpose to induce others to trade in a security." *S.E.C. v. Wallace*, 2017 WL 8230026, at *4 (C.D. Cal. May 8, 2017).

The FAC is utterly bereft of any allegation that DiSomma directed the May 2021 transactions in order to "artificially raise the price" or "artificially inflate the trading volume," as

13

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) – 5: 22-CV-03600-PCP

is required to state a claim under Section 9(a)(2).  *Wallace*, 2017 WL 8230026, at *4; *cf. S.E.C. v. Page*, 2024 WL 4468040, at *9 (E.D.N.Y. Sept. 13, 2024) (finding Section 9(a)(2) adequately pled when there was allegation that defendant made many transactions to keep a stock's price "artificially high" despite it losing him money).  It is not sufficient that DiSomma allegedly directed trading knowing it would increase the price of UST, because "[t]he central purpose of [S]ection 9(a) is not to prohibit market transactions which may raise or lower the price of securities, but to keep an open and free market where the natural forces of supply and demand determine a security's price." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 77 (S.D.N.Y. 2015) (citation ommitted).  The crux of a Section 9(a)(2) claim is the intent to "*artificially* raise[] the price" or "*artificially* inflate[] trading volume in furtherance of a scheme to induce buyers to purchase the securities." *Wallace*, 2017 WL 8230026, at *4 (emphasis added).  As explained above, the allegations regarding DiSomma's state of mind and actions are entirely consistent with a trader seeing an arbitrage opportunity in the open market where he could acquire an asset for less than its true value, and then sell at a profit once the price recovered to its true value. *See supra* Section I.C.  That is insufficient to adequately allege willful intent to manipulate a security. *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 428–29 (S.D.N.Y. 2010) ("[A] generalized motive to earn 'profits' is insufficient to allege scienter.").

*Second*, Plaintiffs fail to show that DiSomma directed any transactions for the "purpose of pegging, fixing, or stabilizing the price of such security in contravention of such rules and regulations as the [SEC] may prescribe[.]"  15 U.S.C. § 78i(a)(6).  Crucially, Section 9(a)(6) does not prohibit trading for the purpose of pegging generally, but only where that pegging is in specific contravention of an SEC rule. *See Friedman v. Salomon/Smith Barney*, 2001 WL 64774, at *1 (S.D.N.Y. Jan. 23, 2001) (explaining that Congress intended Section 9(a)(6) to "allow[] those practices not prohibited by the SEC").  Plaintiffs do not identify in their Section 9(a)(6) count any SEC rule that DiSomma violated by the relevant trading, only gesturing towards the "SEC enforcement actions targeting this elicit [sic] re-peg." *See* FAC ¶ 377.  But none of the enforcement actions referenced in the FAC claimed that the alleged repeg violated Section 9(a)(6)

or any SEC rule.[6]  This makes sense because, "from its earliest statements on stabilization, the SEC has recognized," "that *permissible* forms of stabilization are limited to those attempts to maintain price levels of a security or to retard a decline in a security's price."  *Billing v. Credit Suisse First Boston Ltd.*, 426 F.3d 130, 140–41 (2d Cir. 2005), *rev'd on other grounds by Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264 (2007) (emphasis added).

In sum, Plaintiffs' theories under both Section 9(a)(2) and (6) with respect to DiSomma are facially flawed and must be dismissed.

### III.    COUNTS V–VIII ARE BARRED BY THE STATUTE OF LIMITATIONS AND STATUTE OF REPOSE WITH RESPECT TO DISOMMA

The Court must dismiss Counts V–VIII against DiSomma as untimely.  Claims under Section 12(a)(1) (Count V) are subject to a one-year statute of limitations, which begins on the date the buyer purchases the allegedly unregistered security. 15 U.S.C. § 77m; *see In re Med. Cap. Sec. Litig.*, 2010 WL 11508331, at *3–4 (C.D. Cal. Aug. 11, 2010) (explaining that "[c]laims under Section 12(a)(1) are subject to a one-year statute of limitations," which begins to run at the time of purchase).  Claims under Section 15 (Counts VI–VIII) are subject to the same limitations period.  *See Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1006–07 (N.D. Cal. Aug. 14, 2024) (holding that because Section 15 merely "extends" who is liable for a violation, control person claims have the same statute of limitations as the underlying claim).  Plaintiffs' final purchase of the purportedly unregistered securities was on May 20, 2022.  *See* Dkt. No. 19-3 (PSLRA certification for Plaintiff Tobias indicating final purchase was on Apil 6, 2022); 25-3 (PSLRA certification for Plaintiff Patterson indicating final purchase was on May 20, 2022).  Accordingly, the statute of limitations for Courts V–VIII expired on May 20, 2023, meaning these claims against DiSomma are untimely.

Plaintiffs' untimely claims cannot be saved by the relation back doctrine.  *See* Fed. R. Civ. P. 15(c)(1)(C).  Though this action was initially filed within the statute of limitations, on June 17, 2022, the initial complaint did not name DiSomma as a defendant.  *See* Dkt. 1.  Rather, Plaintiffs

---

[6] To the extent that Plaintiffs' Section 9(a)(6) is premised on a violation of Rule 10b-5, it is duplicative of its Section 10(b) claims and must be dismissed for the same reasons.

first asserted a different set of claims against DiSomma in the Third Amended Complaint ("TAC"), filed January 25, 2024, which was also outside of the applicable statute of limitations. *See* Dkt. 156. Regardless, when "an amended pleading adds a new defendant to the action, the amended pleading does not relate back to the filing of the original complaint unless the defendant should have known that, but for a mistake concerning identity, the action would have been brought against [him]." *York Cnty. ex rel Cnty. of York Ret. Fund v. HP Inc.*, 738 F. Supp. 3d 1182, 1204 (N.D. Cal. 2024) (citation omitted). Plaintiffs do not allege in either the FAC or the TAC that there was any mistake of identity that would have prevented them from bringing an action against DiSomma. Nor could there be, given that DiSomma's role as the founder of Jump Trading has been well known for decades. And Plaintiffs cannot claim that they only recently realized that they could bring also claims against DiSomma individually because "[r]elation back is only allowed for a mistake in identity, not liability." *In re Network Assocs., Inc. II Sec. Litig.*, 2003 WL 24051280, at *8 (N.D. Cal. Mar. 25, 2003); *see also Powers v. Graff*, 148 F.3d 1223, 1227–28 (11th Cir. 1998), *abrogated on other grounds by Mungin v. Sec'y, Fla. Dep't of Corrs.*, 89 F.4th 1308, 1321 (11th Cir. 2024) (rejecting plaintiff's attempt to add officers and directors of defendant company as defendants in securities fraud action after the statute of limitations had run when plaintiff knew those individuals' identities at the time of the original complaint). Instead, this appears to be a situation where Plaintiffs "[made] a deliberate choice to sue one party instead of another . . . [which is] the antithesis of making a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010).

Even if the relation back doctrine were applicable, Section 5 and 12(a)(1) claims are governed by a three-year statute of repose. *See* 15 U.S.C. § 77m. As the Jump Brief explains, this statute of repose begins when the alleged security is "first bona fide offered" to the public. *In re Ripple Labs, Inc. Litig.*, 2024 WL 3074379, at *2 (N.D. Cal. June 20, 2024) (emphasis added) (citing *Stoltz Family Partnership L.P. v. Daum*, 355 F.3d 92 (2nd Cir. 2004)); *see also* Jump Brief at 35–36. The SEC alleged that TMSL began offering LUNA to the public in January 2021. *See* FAC ¶¶ 276, 391–92. This means the statute of repose elapsed in January 2024, barring any claims

under Section 5 and 12(a)(1).  As the Jump Brief explains, the relation back doctrine does not save claims that have passed the statute of response.  *See* Jump Br. at 36.

Accordingly, and as set forth in the Jump Brief, Counts V–VIII must be dismissed with prejudice before the Court even turns to the substance of their allegations.

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTIONS 5 AND 12(A)(1)

But should the Court examine these claims in substance, they also fail to state a claim.  Section 5 states that it is unlawful for any person to sell a security in interstate commerce "unless a registration statement is in effect as to that security."  15 U.S.C. § 77e(a).  Section 12(a)(1) provides that a person who "offers or sells a security in violation of" Section 5 "shall be liable" to "the person purchasing such security *from him*."  15 U.S.C. § 77l(a) (emphasis added).

Plaintiffs must adequately allege that DiSomma "either pass[ed] title or other interest in the security directly to the [plaintiff], or [he] successfully solicit[ed] someone else to buy a security motivated in part by a desire to serve [his] own or the security owner's financial interests." *Samuels v. Lido Dao*, 757 F. Supp. 3d 951, 968 (N.D. Cal. 2024) (citation omitted).  Plaintiffs fail to do so.

Plaintiffs do not allege that DiSomma actually sold any of the relevant crypto tokens to them.  *Cf. Davy v. Paragon Coin, Inc.*, 2021 WL 2940201, at *1 (N.D. Cal. June 23, 2021) ("An individual may be held liable under Sections 12(a)(1) and (a)(2) if they are an owner who passes title to an unregistered security.").  Nor do they allege solicitation.  A defendant "solicits" a purchase "where she petitions, entices, lures, or urges another to purchase a security." *In re Genius Brands Int'l, Sec. Litig.*, 97 F. 4th 1171, 1182 (9th Cir. 2024) (citation modified).  To state a claim for solicitation, Plaintiffs must adequately allege that DiSomma was "directly involved in the actual solicitation of a securities purchase." *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (*quoting In re Daou Sys. Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005)).  They do not.

The FAC lacks *any* allegations regarding *any* role DiSomma had in soliciting Plaintiffs' purchases.  The FAC does not allege that the Plaintiffs had any direct contact with DiSomma—

17

nor did they.  The FAC does not allege that DiSomma made any public statements regarding the relevant crypto tokens, let alone statements that Plaintiffs read or relied on—nor did he.[7]  Indeed, Plaintiffs do not even allege that they were aware that DiSomma had any involvement with the relevant tokens prior to their purchases.  Given the lack of allegations regarding DiSomma, Plaintiffs' claim appears to be that they were somehow solicited by a "man of whom [they were] utterly unaware."  *In re Tezos Sec. Litig.*, 2018 WL 4293341, at \*9.  Such a theory is facially illogical and fails to state a claim under Section 5 and Section 12(a)(1).  *See id.* at \*9 (dismissing Section 12(a)(1) claim because "[w]ithout averments that [plaintiff] was cognizant of, or influenced by, [defendant's] involvement in the Tezos project, [plaintiff's] statutory seller claim against [defendant] is not plausible").

## V.    **PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM**

Finally, Plaintiffs bring claims against DiSomma as a control person of "Jump" under Section 20(a) of the Securities Exchange Act (Count IV), of Tai Mo Shan Ltd. ("TMSL") under Section 15 of the Securities Act (Counts VI and VII), and TFL under Section 15 of the Securities Act (Count VIII) (together the "Control Person Claims").  Each of these counts should be dismissed.  To make out a control person claim under either statute, Plaintiff needs to demonstrate "a primary violation of federal securities law" and that "the defendant exercised actual power or control over the primary violator."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (applying Section 20(a) of the Exchange Act); *see also Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1010 (N.D. Cal. 2024) (reciting same elements for Section 15 claim).

*First*, as set forth in the Jump Brief, the Kariya Brief, and above, each of the Control Person Claims should be dismissed because Plaintiffs have failed to plead a primary violation of the securities laws.  *See, e.g.*, *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 956 (N.D. Cal. 2014) ("If [p]laintiffs fail to plead a claim for securities fraud under [Section] 10(b) and Rule 10b-5, the [Section] 20(a) claim fails as well.").

---

[7] Even if the Plaintiffs had alleged DiSomma had a role in the purported actions taken or statements made by Kariya or Jump, those allegations are insufficient to state a claim because they do not rise to the level of actionable solicitation.  *See* Jump Br. at 37–39.

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) – 5: 22-CV-03600-PCP

1    *Second*, the FAC fails to adequately allege that DiSomma was a control person of Jump or

2    TMSL.  SEC regulations define "control" as "the possession, direct or indirect, of the power to

3    direct or cause the direction of the management and policies of a person, whether through the

4    ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405.  The FAC alleges

5    that DiSomma was a "founder and co-owner of Jump Trading."  FAC ¶ 36.  The FAC includes no

6    specific allegations regarding the extent or nature of his alleged ownership of Jump Trading or

7    contractual rights that would render him a control person.  And as the FAC recognizes, "Jump has

8    many subsidiaries/affiliates," including Jump Crypto and Jump Trading.  FAC ¶ 32.  But the FAC

9    includes no specific allegations regarding Jump Trading's corporate structure, including what

10   ownership or control which entities or persons have over which affiliates.  Instead, the FAC merely

11   pleads that "on information and belief . . . Jump Crypto is the alter ego of Jump . . . [and] Tai Mo

12   Shan is the alter ego of Jump Crypto."  FAC ¶¶ 33–34.  As the Jump Brief makes clear, this is

13   insufficient to allege control.  *See* Jump Br. at 41.  And the FAC does not allege that DiSomma

14   had any specific ownership or contractual control of either TMSL or Jump Crypto, either directly

15   or through his also undefined ownership or control of Jump Trading.

16       Plaintiffs' claims ultimately turn on the conclusory allegation that DiSomma "ran the Jump

17   Crypto team, and personally directed the trading of UST."  FAC ¶ 36.  But "[t]he fact that a person

18   is a CEO or other high-ranking officer within a company does not create a presumption that he or

19   she is a 'controlling person.'"  *SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) (citation omitted);

20   *see also Bao v. SolarCity Corp.*, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015) (holding that

21   an allegation that defendant was a member of "senior leadership team" was insufficient to state

22   control).  Likewise, Plaintiffs allege that DiSomma "possessed the power to control the specific

23   activities which comprise the primary violations" by virtue of his "positions of control and

24   authority."   FAC ¶ 384.   But courts have rejected similar allegations as "entirely circular."

25   *Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748

26   F. Supp. 2d 1246, 1257 (W.D. Wash. 2010); *see also Purple Mountain Tr. v. Wells Fargo & Co.*,

27   432 F. Supp. 3d 1095, 1106–07 (N.D. Cal. 2020) (dismissing control person claim premised on

28

19

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) – 5: 22-CV-03600-PCP

1  allegation that "by virtue of their positions and their power to control public statements about
2  [primary violator], the Individual Defendants had the power and ability to control the actions of
3  [primary violator]").  And as the Jump Brief explains, conclusory allegations of alter ego status
4  are insufficient to allege that Jump Trading, let alone DiSomma personally, controlled either Jump
5  Crypto or TMSL.  *See* Jump Br. at 41.

6      *Third*, the FAC fails to adequately allege that DiSomma was a control person of TFL.  As
7  the FAC makes clear, TFL was an entirely separate entity from Jump Trading, Jump Crypto, or
8  TMSL, which signed contracts with Jump in an arm's length relationship.  *See, e.g.*, FAC ¶¶ 15,
9  41. The FAC's only allegation of DiSomma's control over TFL is the conclusory recitation that
10  he "by virtue of [his] offices, ownership, agency, agreements or understandings, and specific acts"
11  was a control person.  *See* FAC ¶ 405.  This boilerplate language crumbles under the barest
12  scrutiny.  The FAC does not allege that DiSomma had any ownership stake in TFL—he did not.
13  The FAC does not allege that DiSomma had any contractual control over TFL's actions or
14  statements—he did not.  The FAC does not allege that DiSomma had any other power to direct the
15  business activities of TFL—he did not.  The FAC does not even allege a single instance wherein
16  DiSomma had *contact* with TFL or an employee of TFL.  Plaintiffs' conclusory statements
17  otherwise are insufficient to state a claim that DiSomma controlled TFL.  *See, e.g.*, *Chan v.*
18  *ArcSoft, Inc.*, 2020 WL 13891272, at *10–11 (N.D. Cal. Sept. 16, 2020) (dismissing control person
19  claim based on a "handful of conclusory allegations").

20      Accordingly, the Control Person Claims must be dismissed with prejudice with respect to
21  DiSomma.

22                          **<u>CONCLUSION</u>**

23      For each of the foregoing reasons, DiSomma respectfully requests that the Court dismiss
24  the FAC's claims against him with prejudice.

25

26

27

28

1

Dated: December 23, 2025

Respectfully submitted,

2

**KKL LLP**

3

/s/ *Paul M. Krieger*
Paul M. Krieger (admitted *pro hac vice*)

4

Jonathan F. Bolz (admitted *pro hac vice*)
Benjamin W. Perotin (admitted *pro hac vice*)

5

350 5th Avenue, Suite 7710
New York, NY 10018

6

(212) 390-9550

7

Paul.Krieger@KKLllp.com
Jonathan.Bolz@KKLllp.com

8

Ben.Perotin@KKLllp.com

9

Daniel A. Zaheer (SBN 237118)
Kobre & Kim LLP

10

150 California Street, 19th Floor
San Francisco, CA 94111

11

(415) 582-4751
daniel.zaheer@kobrekim.com

12

13

*Counsel for Defendant DiSomma*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21