1   KOBRE & KIM LLP
    Jonathan D. Cogan (admitted *pro hac vice*)
2   Steven W. Perlstein (admitted *pro hac vice*)
    800 Third Avenue
3   New York, NY 10022
    Tel.: +1 212 488 1200
4   jonathan.cogan@kobrekim.com
    steven.perlstein@kobrekim.com
5
    Daniel A. Zaheer (SBN 237118)
6   150 California Street, 19th Floor
    San Francisco, CA 94111
7   Tel.: +1 415 582 4751
    daniel.zaheer@kobrekim.com
8
    [Additional Counsel on Signature Page]
9
    *Attorneys for Defendants Jump Trading,*
10  *LLC, Jump Crypto Holdings LLC, and Tai*
    *Mo Shan Limited*
11

12                  **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
13                     **SAN FRANCISCO DIVISION**

14

15  NICK PATTERSON, Individually and On Behalf of
    All Others Similarly Situated                    Case No. 5:22-cv-03600-PCP
16
                   Plaintiff,                        **DEFENDANTS JUMP TRADING, LLC,**
17                                                   **JUMP CRYPTO HOLDINGS LLC,**
              vs.                                    **AND TAI MO SHAN LIMITED's**
18                                                   **MOTION TO DISMISS PURSUANT TO**
    JUMP    TRADING    LLC,    JUMP    CRYPTO         **FED. R. CIV. P. 12(b)(6)**
19  HOLDINGS LLC, TAI MO SHAN LTD., KANAV
    KARIYA, AND WILLIAM DISOMMA,                     Honorable P. Casey Pitts
20                                                   Hearing Date: May 7, 2026, 10:00am
                   Defendants.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.    INTRODUCTION & SUMMARY OF ARGUMENT ..................................................... 1

II.   STATEMENT OF RELEVANT ALLEGATIONS ......................................................... 3

   A. The Terra Ecosystem. ............................................................................................... 3

   B. Plaintiffs' Allegations. .............................................................................................. 4

   C. This Court's Prior Decision. ...................................................................................... 6

III. ARGUMENT ................................................................................................................... 7

   A. All Claims Against TMSL and Jump Crypto Holdings LLC Are Untimely. ................... 8

      1.  The Statute of Limitations Has Run for Each Claim Against TMSL and Jump
          Crypto Holdings LLC. .......................................................................................... 9

      2.  Plaintiffs' Untimely Claims Against TMSL Do Not Relate Back. ......................... 10

      3.  Plaintiffs' Untimely Claims Against Jump Crypto Holdings LLC Do Not Relate
          Back. ................................................................................................................... 11

   B. Plaintiffs Fail to Allege That the Jump Entities Committed Securities Fraud Through
      Misstatements or Omissions. .................................................................................... 13

      1.  Plaintiffs Fail to Allege That the Jump Entities Made Material Misrepresentations or
          Omissions. ........................................................................................................... 13

         a.    The Jump Entities Are Not Liable for Statements Made By Others. .............. 14

         b.    Liability Cannot Be Premised on the Jump Entities' Statements of Opinion. 16

         c.    Plaintiffs Do Not Allege False Statements Attributable to Any Jump Entity. 17

         d.    Plaintiffs Have Not Alleged That the Jump Entities Had a Duty to Disclose
               Any Alleged Omissions. ............................................................................. 19

      2.  Plaintiffs Have Failed to Allege That the Jump Entities Acted With Scienter. ....... 22

      3.  Plaintiffs Fail to Allege Reliance on the Jump Entities' Statements. ..................... 25

      4.  Plaintiffs Have Not Alleged That the Purported Fraud Caused Their Losses. ......... 27

ii

C.  Plaintiffs Fail to Adequately Allege Market Manipulation. ........................................... 29

    1.  Plaintiffs Cannot Establish Scheme Liability Under Section 10(b) Because They Do Not Allege That the Jump Entities Committed Market Manipulation. .................... 30

    2.  Plaintiffs Do Not Adequately Allege Manipulation Under Section 9(a). ................ 34

D.  The Court Should Dismiss Plaintiffs' Section 5 and 12(a)(1) Claims in Count V ......... 36

    1.  Count V Is Barred by the Applicable Three-Year Statute of Repose. ...................... 36

    2.  Plaintiffs Fail to Plead the Statutory Seller Element in Count V. ............................ 37

E.  Plaintiffs' Control Person Liability Claims in Counts VII and VIII Fail. ..................... 40

    1.  Plaintiffs Fail to Allege Primary Violation. ............................................................ 40

    2.  Plaintiffs Do Not Adequately Allege Control Over TMSL. ..................................... 41

    3.  Plaintiffs Do Not Adequately Allege Control Over TFL. ......................................... 42

**IV. CONCLUSION** ........................................................................................................ **44**

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NUMBER: 5:22-CV-03600-PCP

# TABLE OF AUTHORITIES

**Cases**

*Abdo v. Fitzsimmons*,
 2021 WL 616324 (N.D. Cal. Feb. 17, 2021) ............................................................. 16

*Affiliated Ute Citizens of Utah v. United States*,
 406 U.S. 128 (1972) .................................................................................................. 25

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................... 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007) ................................................................................... 31, 33

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988) ....................................................................................... 19, 26, 28

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................. 42

*Binder v. Gillespie*,
 184 F.3d 1059 (9th Cir. 1999) .............................................................................. 25, 27

*Borteanu v. Nikola Corp.*,
 2023 WL 1472852 (D. Ariz. Feb. 2, 2023) ............................................................. 15

*Brody v. Homestore, Inc.*,
 2003 WL 22127108 (C.D. Cal. Aug. 8, 2003) ........................................................ 40

*Brody v. Transitional Hosps. Corp.*,
 280 F.3d 997 (9th Cir. 2002) ................................................................................ 20, 21

*Burnett v. Rowzee*,
 2007 WL 4754539 (C.D. Cal. Oct. 18, 2007) ......................................................... 29

*Carol Gamble Tr. 86 v. E-Rex, Inc.*,
 84 F. App'x 975 (9th Cir. 2004) ............................................................................... 9

*CFTC v. Wilson*,
 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ............................................... 30, 31, 33

*Chemetron Corp. v. Bus. Funds, Inc.*,
 682 F.2d 1149 (5th Cir. 1982) ............................................................... 33, 34, 35

*Chiarella v. United States*,
 445 U.S. 222 (1980) .................................................................................................. 20

*City of Dearborn Heights Act 345 Pol. & Fire Ret. Sys. v. Align Tech., Inc.*, 8,
    56 F.3d 605 (9th Cir. 2017) ............................................................ 17

*City of Providence v. Bats Glob. Mkts., Inc.*,
    878 F.3d 36 (2d Cir. 2017) ..................................................... 32, 40

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................ 13, 14, 17, 23

*Cobos v. Robinhood Fin. LLC*,
    2021 WL 1035123 (C.D. Cal. Feb. 10, 2021) ............................... 34

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010) ......................................... 34

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ...................................................... 29

*Crane Co. v. American Standard, Inc.*,
    603 F.2d 244 (2d Cir. 1979) ....................................................... 34

*Crane Co. v. Westinghouse Air Brake Co.*,
    419 F.2d 787 (2d Cir. 1969) ................................................. 30, 32

*DeMarco v. DepoTech Corp.*,
    32 F. App'x 260 (9th Cir. 2002) .................................................. 13

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) ......................................... 25, 26, 30, 33

*Doe J.D. v. Broglio*,
    2025 WL 2988639 (N.D. Cal. Oct. 23, 2025) ............................. 41

*Dura Pharms., Inc. v. Broudo*,
    544 U.S 336 (2005) ............................................................. 28, 29

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) .................................................................. 26

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...................................................... 7

*Fabian v. LeMahieu*,
    2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) .............................. 3, 9

*Fezzani v. Bear, Stearns & Co.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004) ......................................... 33

*Gauvin v. Trombatore*,
    682 F. Supp. 1067 (N.D. Cal. 1988) ............................................. 8

v

*Griffin v. PaineWebber, Inc.*,
   2001 WL 740764 (S.D.N.Y. June 29, 2001) .................................................................. 38

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*,
   935 F. Supp. 2d 968 (E.D. Cal. 2013) ....................................................................... 11

*Harper v. O'Neal*,
   746 F. Supp. 3d 1360 (S.D. Fla. 2024) ...................................................................... 39

*Harrison v. E. I. Dupont De Nemours & Co.*,
   2016 WL 3231535 (N.D. Cal. June 13, 2016) ........................................................... 28

*Hoang v. Bank of Am., N.A.*,
   910 F.3d 1096 (9th Cir. 2018) .................................................................................. 36

*Hollifiel v. Resolute Cap. Partners Ltd.*, LLC,
   2023 WL 4291524 (C.D. Cal. May 12, 2023) ........................................................... 38

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) .................................................................................. 40

*In re ATM Fee Antitrust Litig.*,
   768 F. Supp. 2d 984 (N.D. Cal. 2009) ...................................................................... 10

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) .............................................................................. 27, 29

*In re Downey Sec. Litig.*,
   2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ............................................................. 41

*In re Facebook, Inc. Sec. Litig.*,
   477 F. Supp. 3d 980 (N.D. Cal. 2020) ................................................................. 16, 19

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   793 F. Supp. 2d 637 (S.D.N.Y. 2011) ...................................................................... 39

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ...................................................................... 23

*In re Ripple Labs, Inc. Litig.*,
   2024 WL 3074379 (N.D. Cal. June 20, 2024) ........................................................... 35

*In re Stratosphere Corp. Securities Litig.*,
   1 F. Supp. 2d 1096 (D. Nev. 1998) .......................................................................... 43

*In re Tezos Sec. Litig.*,
   2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ............................................................. 37

*In Re Violin Memory Sec. Litig.*,
   2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ............................................................ 37

vi

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2 F.4th 1199 (9th Cir. 2021) ............................................................................................ 26

*In re Yahoo! Inc. Securities Litigation*,
  611 F. App'x 387 (9th Cir. 2015) ...................................................................................... 15

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011). .......................................................................................... 14, 15, 16

*Jones v. Mathews*,
  2018 WL 9878317 (C.D. Ill. Dec. 11, 2018) ................................................................ 10, 12

*Kilkenny v. Arco Marine Inc.*,
  800 F.2d 853 (9th Cir. 1986) ............................................................................................ 10

*Kyung Cho v. UCBH Holdings, Inc.*,
  890 F. Supp. 2d 1190 (N.D. Cal. 2012) ................................................................ 24, 25, 35

*Meadows v. SEC*,
  119 F.3d 1219 (5th Cir. 1997) .......................................................................................... 38

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................................................. 6, 7, 13

*Miguel v. Country Funding Corp.*,
  309 F.3d 1161 (9th Cir. 2002) .......................................................................................... 36

*New York City Empls.' Ret. Sys. v. Berry*,
  616 F. Supp. 2d 987 (N.D. Cal. 2009) .............................................................................. 29

*Nghiem v. Santa Clara Univ.*,
  2023 WL 3012494 (N.D. Cal. Mar. 20, 2023) .................................................................. 12

*Nite & Day Power Techs. v. Corp. Cap. Res., Inc.*,
  1995 WL 7942 (N.D. Cal. Jan. 5, 1995) ........................................................................... 12

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ............................................................................................ 40

*Oregon Pub. Emps.' Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ...................................................................................... 7, 13

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ...................................................................................... 16, 40

*Paralyzed Veterans of Am. v. McPherson*,
  No. C064670SBA, 2008 WL 4183981 (N.D. Cal. Sept. 9, 2008) ...................................... 12

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015) ...................................................................................... 27

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NUMBER: 5:22-CV-03600-PCP

*Phunware, Inc. v. UBS Sec. LLC,*
   2025 WL 2636568 (S.D.N.Y. Sept. 12, 2025) ..................................................... 33

*Pino v. Cardone Cap., LLC,*
   55 F.4th 1253 (9th Cir. 2022)......................................................................... 36, 38, 39

*Pinter v. Dahl,*
   486 U.S. 622 (1988) ........................................................................................... 37

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,*
   759 F.3d 1051 (9th Cir. 2014)............................................................................ 23

*Pratt v. Gamboa,*
   2020 WL 2512407 (N.D. Cal. May 15, 2020) ................................................... 8, 12

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.,*
   714 F. Supp. 2d 475 (S.D.N.Y. 2010).............................................................. 42, 43

*Purple Mountain Tr. v. Wells Fargo & Co.,*
   432 F. Supp. 3d 1095 (N.D. Cal. 2020) ............................................................. 42

*Reiger v. Price Waterhouse Coopers LLP,*
   117 F. Supp. 2d 1003 (S.D. Cal. 2000) .............................................................. 25

*Resol. Tr. Corp. v. Olson,*
   768 F. Supp. 283 (D. Ariz. 1991)...................................................................... 36

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.,*
   845 F.3d 1268 (9th Cir. 2017)........................................................................... 19

*Risley v. Universal Navigation Inc.,*
   2025 WL 615185 (2d Cir. Feb. 26, 2025)........................................................... 37

*S. Ferry LP, No. 2 v. Killinger,*
   542 F.3d 776 (9th Cir. 2008)............................................................................. 25

*ScripsAmerica, Inc. v. Ironridge Glob. LLC,*
   119 F. Supp. 3d 1213 (C.D. Cal. 2015)....................................................... 20, 26, 27, 30

*Seaman v. Cal. Bus. Bank,*
   2013 WL 5890726 (N.D. Cal. Oct. 30, 2013) .................................................... 21

*SEC v. Drucker,*
   1983 WL 1369 (S.D.N.Y. Sept. 26, 1983) ......................................................... 32

*SEC v. Rose,*
   2007 WL 9826042 (S.D. Tex. Sept. 5, 2007)...................................................... 32

*SEC v. Sierra Brokerage Servs, Inc.,*
   608 F. Supp. 2d 923 (S.D. Ohio 2009)............................................................... 32

viii

*SEC v. Terraform Labs Pte. Ltd.*,
   708 F. Supp. 3d 450 (S.D.N.Y. 2023) ............................................................... 12

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
   248 F. Supp. 3d 428 (S.D.N.Y. 2017) ............................................................... 36

*Simpson v. AOL Time Warner, Inc.*,
   452 F.3d 1040 (9th Cir. 2006) ............................................................................ 30

*Sneed v. AcelRx Pharms., Inc.*,
   2022 WL 4544721 (N.D. Cal. Sept. 28, 2022) ................................................. 17

*Sonesta Int'l Hotels Corp. v. Wellington Assocs.*,
   483 F.2d 247 (2d Cir. 1973) ............................................................................... 15

*Special Situations Fund III QP, L.P. v. Brar*,
   2015 WL 1393539 (N.D. Cal. Mar. 26, 2015) ................................................. 41

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................... 7, 20, 32

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................................ 40

*Stoltz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2nd Cir. 2004) ............................................................................... 35

*Strong v. City of Eugene*,
   2015 WL 2401395 (D. Or. May 19, 2015) ...................................................... 11

*Strong v. City of Eugene*,
   735 F. App'x 312 (9th Cir. 2018) ...................................................................... 11

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................. 8, 13, 22, 30

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) .............................................................................................. 7

*Trane Co. v. O'Connor Sec.*,
   561 F. Supp. 301 (S.D.N.Y. 1983) .................................................................... 34

*Underwood v. Coinbase Glob., Inc.*,
   654 F. Supp. 3d 224 (S.D.N.Y. 2023) ............................................................... 38

*UPPI LLC v. Cardinal Health, Inc.*,
   2022 WL 3594081 (9th Cir. Aug. 23, 2022) ...................................................... 7

*Ward v. Crow Vote LLC*,
   634 F. Supp. 3d 800 (C.D. Cal. 2022) .............................................................. 10

ix

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ........................................................... 21, 22, 30, 31

*Welgus v. TriNet Grp. Inc*,
   2017 WL 167708 (N.D. Cal Jan. 17, 2017) ........................................... 38, 41

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ............................................ 37

*Welgus v. TriNet Grp., Inc.*,
   765 F. App'x 239 (9th Cir. 2019) ............................................................... 37

*Wildes v. BitConnect Int'l PLC*,
   25 F.4th 1341 (11th Cir. 2022) .................................................................. 39

*Wilkins-Jones v. Cnty. of Alameda*,
   2012 WL 3116025 (N.D. Cal. July 31, 2012) ........................................... 10

*York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc.*,
   65 F.4th 459 (9th Cir. 2023) .................................................................... 8, 9

*Youngers v. Virtus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016) ....................................................... 38

**Statutes**

15 U.S.C. § 77m ............................................................................................ 9, 35

15 U.S.C. § 78i ................................................................................................. 34

15 U.S.C. § 78u–4(b)(1)(B) .............................................................................. 7

15 U.S.C. § 78u-4(b)(2) ................................................................................... 21

15 U.S.C. § 78u–4(b)(2)(A) ............................................................................... 7

15 U.S.C. § 78u-4(e)(1) ................................................................................... 28

28 U.S.C. § 1658(b) ........................................................................................... 8

28 U.S.C. § 1658(b)(1) ....................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 8(a) ................................................................. 8

Federal Rule of Civil Procedure 9(b) ........................ 7, 8, 13, 15, 26, 30, 32

Federal Rule of Civil Procedure 15(c)(1)(C) .......................... 8,9 10, 11, 12

x

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 7, 2026, at 10:00 a.m., or at such other date as may be agreed upon or ordered in the United States District Court for the Northern District of California, Courtroom of the Honorable P. Casey Pitts, Courtroom 8, 4th Floor, 280 South First Street, San José, CA, 95113, Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and Tai Mo Shan Limited ("TMSL") (together the "Jump Entities"), will and hereby do move this Court to dismiss Counts I, II, III, V, VII, and VIII of the Fourth Amended Complaint ("4AC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

# STATEMENT OF ISSUES TO BE DECIDED

1.      Should the Court dismiss all claims against Jump Crypto Holdings LLC and TMSL as barred by the applicable statutes of limitations?

2.      Should the Court dismiss all Counts in the 4AC because they assert securities-law claims against the Jump Entities based on non-securities transactions, including secondary-market UST purchases by other persons, as set forth in the brief of Defendant Kanav Kariya?

3.      Should the Court dismiss Counts I and II for failure to state a claim under Rule 12(b)(6) where Plaintiffs have not sufficiently pled that the Jump Entities made actionable misstatements or omissions, pled the Jump Entities' scienter, alleged reliance on the Jump Entities' statements, or pled that those statements caused Plaintiffs' losses?

4.      Should the Court dismiss Count II for failure to state a claim under Rule 12(b)(6) where Plaintiffs have not sufficiently pled that the Jump Entities participated in a scheme to defraud, pled the Jump Entities' scienter, alleged reliance, or pled that the alleged manipulation caused Plaintiffs' losses?

5.      Should the Court dismiss Count III for failure to state a claim under Rule 12(b)(6) where Plaintiffs have not sufficiently pled that the Jump Entities committed manipulation, pled the Jump Entities' scienter, alleged reliance, or pled that the alleged manipulation caused Plaintiffs' losses?

1    6.    Should the Court dismiss Counts V, VII, and VIII as barred by the applicable statute

2 of repose?

3    7.    Should the Court dismiss Count V for failure to state a claim under Rule 12(b)(6)

4 where Plaintiffs have not sufficiently pled that any of the Jump Entities is a "statutory seller"?

5    8.    Should the Court dismiss Count VII for failure to state a claim under Rule 12(b)(6)

6 where Plaintiffs have not sufficiently pled that either Jump Trading, LLC or Jump Crypto Holdings

7 LLC had control over TMSL?

8    9.    Should the Court dismiss Count VIII for failure to state a claim under Rule 12(b)(6)

9 where Plaintiffs have not sufficiently pled that the Jump Entities had control over Terraform Labs

10 PTE Ltd. ("TFL")?

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                             **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION & SUMMARY OF ARGUMENT**

3        Buried in the 194th paragraph of Plaintiffs' complaint comes a critical admission:  months

4 before UST collapsed, the world was explicitly told that (1) UST could lose its "peg" to US $1 and

5 (2) in such a scenario, substantial external support would likely be necessary to restore it.  As the

6 4AC acknowledges, in January 2022, an entity called the Luna Foundation Guard ("LFG") was

7 formed specifically to support the peg with an initial reserve of over a billion dollars that could be

8 deployed to stabilize UST during periods of volatility.  Then, in March 2022, Jump Crypto's then-

9 President, Kanav Kariya, explained on a podcast (a) that the peg would not always maintain on its

10 own, (b) that there would likely be periods of "extreme price movements" in the future, and (c) that

11 the LFG's billion-dollar reserve could be deployed in such scenarios to help stabilize UST and

12 LUNA.  In other words, while Plaintiffs' central accusation is that the Jump Entities participated in

13 a scheme in 2021 to deceive the world into thinking that Terra's algorithm would always work to

14 maintain the peg "without human intervention," Plaintiffs also concede (as they must) that, in early

15 2022, the LFG and Jump Crypto Holdings LLC told the public that such human intervention would

16 sometimes be needed.

17        Plaintiffs' admission is fatal to their case. The LFG's and Mr. Kariya's statements in early

18 2022 break any conceivable causal connection between the alleged fraud and manipulation in May

19 2021 and any losses ultimately sustained a year later, during the collapse in May 2022.  Thus, even

20 if it were true that the public had somehow been deceived by the Jump Entities into believing

21 initially that UST would always stabilize on its own and "without human intervention," the public

22 certainly knew well before the collapse that there would be times when it would not because, by

23 Plaintiffs' own allegations, the LFG and Mr. Kariya announced as much.  For this reason alone,

24 Plaintiffs' *fifth* iteration of their complaint remains hopelessly defective and must be dismissed.

25        But causation is far from Plaintiffs' only problem.  After nearly three and a half years—and

26 even with the benefit of allegations and evidence in multiple other proceedings arising from the

27 collapse of the Terra Ecosystem and this Court's order granting Jump Trading, LLC's prior motion

28

to dismiss—Plaintiffs still fail to adequately allege any wrongdoing by the Jump Entities. Each count of the 4AC contains multiple glaring deficiencies independently requiring dismissal.

*First*, all of Plaintiffs' claims against TMSL and Jump Crypto Holdings LLC, as newly named defendants, must be rejected as untimely. The statutes of limitations for those claims have run, and the claims do not relate back to Plaintiffs' earlier complaints because Plaintiffs were aware of TMSL's and Jump Crypto Holdings LLC's identities and relation to the case within the statutory period.

*Second*, Plaintiffs' securities fraud claims against the Jump Entities fall well short of meeting the applicable stringent pleading requirements. Stripped of labels and conclusions, Plaintiffs allege nothing more than instances of lawful trading, statements made by persons other than the Defendants (e.g., Do Kwon and TFL), and few benign statements by the Jump Entities that reflected their belief that UST was a worthwhile project. As such, Plaintiffs neither identify any actionable misstatements by the Jump Entities nor adequately allege their involvement in a scheme to defraud. Merely expressing enthusiasm or support for a new project, even if one has a vested interest in the success of that project, is not fraudulent. And while Plaintiffs conclusorily assert fraud by omission, they fail to identify any duty the Jump Entities had to disclose any of the information they claim was withheld from the public. Further, Plaintiffs plead neither facts giving rise to a "strong inference" that the Jump Entities acted with scienter nor facts demonstrating Plaintiffs' reasonable reliance.

*Third*, absent any plausible allegation that the Jump Entities did not genuinely believe UST was worth $1, even trading to support UST's peg is not manipulation as a matter of law. Purchasing UST at a price below $1 if one believes it is worth $1 is a lawful business decision, not manipulation and deception as Plaintiffs baselessly allege.

*Fourth*, Plaintiffs' registration claims are without merit. Their attempt to hold the Jump Entities liable as statutory sellers of unregistered securities is time-barred and, in any event, fails to allege that any of the Jump Entities were actually statutory sellers. Those deficiencies also foreclose Plaintiffs' control person claim for TMSL's alleged failure to register. And Plaintiffs' assertion that the Jump Entities were control persons of TFL—a wholly separate and unrelated entity—not only

2

1  lacks any factual support but also is contrary to the factual allegations in the 4AC.

2      For these reasons, as detailed below, and the reasons set forth in Mr. DiSomma's and Mr.

3  Kariya's briefs, which the Jump Entities adopt and incorporate by reference as if set forth in full

4  herein (including, without limitation, that the transactions at issue in this case do not involve

5  securities), the 4AC must be dismissed in its entirety as against the Jump Entities. Plaintiffs' failure

6  to state a claim for relief in their fifth complaint now justifies dismissing the 4AC **with prejudice**.

7  *See, e.g.*, *Fabian v. LeMahieu*, No. 19-cv-00054, 2019 WL 4918431, at *9 (N.D. Cal. Oct. 4, 2019)

8  (dismissing claims with prejudice due to failure to cure deficiencies by previously allowed

9  amendments).

10  **II.    STATEMENT OF RELEVANT ALLEGATIONS[1]**

11      Following the Court's dismissal of their claims against Jump Trading, LLC for failure to

12  state a claim, Order Denying MTC and Granting MTD ("Op."), Dkt. No. 155, Plaintiffs now reassert

13  their securities fraud and control person claims against Jump Trading, LLC and bring new

14  manipulation, registration, and control person claims against Jump Trading, LLC, Jump Crypto

15  Holdings LLC, and TMSL, based on Plaintiffs' purchases of UST, LUNA, and other tokens in the

16  Terra Ecosystem between January 31, 2022, and May 20, 2022.[2] Dkt. Nos. 15-3, 25-3.

17  **A.    The Terra Ecosystem.**

18      Plaintiffs' claims arise out of the Terra Ecosystem and its cryptocurrency LUNA and

19  "stablecoin" UST, which were developed by TFL, a Singaporean open-source software

20  development firm headed by Do Kwon. Plaintiffs allege the Jump Entities were early partners of

21

22

23

---

24  [1] Many of Plaintiffs' allegations are demonstrably false. The Jump Entities accept them as true only
for purposes of this motion to dismiss. Additionally, although for the purposes of this motion the
25  Jump Entities address the allegations brought by Mr. Patterson in addition to Lead Plaintiff Mr.
Tobias, the Jump Entities do not concede that Mr. Patterson's continued involvement in this case is
26  proper beyond as a putative member of the proposed class is proper.

27  [2] Though the putative class period is broader, according to Mr. Tobias's and Mr. Patterson's sworn
28  PSLRA certificates, their purchases only occurred in this time frame.

TFL and were their liquidity providers.[3]  *See, e.g.*, 4AC ¶¶ 67–70.  UST was designed to maintain a $1 value through a smart contract, using trading incentives—an arbitrage opportunity—to maintain UST's $1 peg:  market participants would buy UST when its price dropped below $1, as they could then exchange that UST for $1 worth of LUNA.  *Id.* ¶¶ 90, 194.  In May 2021, the value of UST briefly "depegged" from $1 before regaining its value.  *Id.* ¶ 9.  In January 2022, TFL publicly announced the formation of the LFG, which it said was to serve as an "asset reserve" for UST's $1 peg to help address the risk that UST might potentially lose its peg and require additional support.  *Id.* ¶¶ 191, 194–95.  Plaintiffs do not allege that UST depegged when that announcement was made.  However, in May 2022, the value of UST depegged from $1 again and did not recover.  *Id.* ¶ 12.

### B.    Plaintiffs' Allegations.

Alleged Securities Fraud: Plaintiffs first allege that Jump Trading, LLC, Jump Crypto Holdings LLC, and TMSL committed securities fraud by making materially misleading statements and omissions, but in many cases Plaintiffs identify supposedly false statements made by ***others***, not by any Jump Entity or employee, including:

- On June 9, 2021, TFL stated that the UST peg "normalized" as "a function of the on-chain liquidity absorbing the volatility off-chain gradually" and "quoted Jump multiple times" in the same document.  *Id.* ¶ 340(b).

- On August 9, 2021, TFL "referred to UST as a 'censorship-resistant, infinitely scalable, algo-pegged USD stablecoin.'"  *Id.* ¶ 340(c).[4]

- On January 19, 2022, the LFG issued a press release that claimed "UST weathered a massive, reflexive drawdown in the LUNA price in May."  *Id.* ¶ 340(f).

- The LFG's website stated that Terra's "'protocol design . . . delivers permissionless arbitrage incentives and counter-cyclical monetary policy levers to maintain the peg.'"  *Id.* ¶ 340(g).

---

[3] The Jump Entities incorporate by reference the background of the Terra Ecosystem and tokens at issue in the case, including LUNA and UST, in Jump Trading, LLC's prior Motion to Dismiss and the Motion to Dismiss filed by TFL.  Dkt. Nos. 115, 122.

[4] The same allegation conclusorily asserts that the statement was made "at the behest" of "Jump."  *Id.*

- On February 22, 2022, the LFG issued a press release regarding the LFG Reserve, stating that it could be "utilized in instances where protracted market sell-offs deter buyers from restoring the UST peg's parity.'" *Id.* ¶ 340(i).

- On March 1, 2022, "Jump" published a podcast called the "Ship Show" on which Mr. Kariya and Kwon appeared and "promoted the stability and security of the UST and LUNA peg as Terra's two most 'attractive' features.'" *Id.* ¶ 340(k). On the podcast, Kwon stated that after the May 2021 depeg "[i]t took a few days for the slippage cost to naturally heal back to spot . . . . the protocol automatically self-heals the exchange rate back to whatever the spot price is being quoted by the oracle." *Id.*

Plaintiffs identify only a handful of alleged statements that they attribute to any of the Jump Entities or Mr. Kariya:

- On September 14, 2021, "Defendants Jump and/or Kariya" referred to "'Terra's stability mechanism' as effective to 'balance safety'" in a blog post. *Id.* ¶ 340(d).

- On October 11, 2021, "Jump" published a blog post in which it "touted Terra as one of the future 'winners'" and a "'prominent example' of algorithmic stablecoins," "insisting: 'We believe there will be several winners in the stablecoin space . . . We are particularly excited about Terra and their dollar stablecoin UST, which we believe is the most elegant solution for creating a highly scalable and more decentralized stablecoin.'" *Id.* ¶ 340(e).

- On January 28, 2022, Mr. Kariya tweeted his opinion in response to some "confusion and panic" concerning UST, stating that "[i]t's difficult to imagine a sustained mass exodus to UST given the circumstances." *Id.* ¶ 340(h).

- On February 22, 2022, the LFG issued a press release quoting Mr. Kariya stating that the LFG reserve would "further strengthen[] confidence in the peg . . . [because] [i]t can be used to help protect" it. *Id.* ¶ 340(j). In the statement, Mr. Kariya compared this reserve to "how many central banks hold reserves of foreign currencies to back monetary liabilities and protect against dynamic market conditions." *Id.*

- On May 3, 2022, Mr. Kariya appeared on a podcast and in response to a question about the potential for bad actors in the space said "there is almost no possibility for one collusion across these landscapes." *Id.* ¶ 340(l).

- On May 3, 2022, on the same podcast, Mr. Kariya "described Jump's compliance, stating that 'all these phones are heavily, heavily regulated, you know, don't support about 20 years of its reputation and the giant business behind making a lot of this happen and we're definitely incentive aligned.'" *Id.* ¶ 340(m).[5]

Plaintiffs claim these statements were misleading because (1) they "failed to disclose Jump's May 2021 intervention to re-peg UST to the U.S. dollar," (2) Terra's ecosystem was not stable, (3) the statements "omitted any description of the loans Jump received from TFL," and (4) as to the

---

[5] As discussed below, Plaintiffs materially misquote the statements set forth in paragraphs 340(d), 340(l), and 340(m), which is apparent from the sources Plaintiffs themselves cite for those statements.

"heavily regulated" "phones", "Jump used the auto-deleting communications application Signal for its communications with TFL and Kwon." *Id.* ¶ 340.  Plaintiffs also allege that Jump Trading, LLC, Jump Crypto Holdings LLC, and TMSL made a material omission by failing to disclose "the existence of the scheme to re-peg UST and their participation therein." *Id.* ¶ 340(a).

Alleged Market Manipulation: Plaintiffs allege that the Jump Entities committed market manipulation under both Section 10(b) and 9(a) of the Securities Exchange Act.  Plaintiffs admit that the peg was designed to be maintained by trading activity, through the smart contract that allowed trading one UST for $1 worth of LUNA, *id.* ¶ 90, but nevertheless claim that during the May 2021 depeg, "Defendants secretly colluded with TFL and Do Kwon to restore the peg through human intervention," by buying "'massive amounts'" of UST.  *Id.* ¶ 365.  Plaintiffs do not allege that the Jump Entities did not genuinely believe UST was worth $1 when they allegedly restored the peg in May 2021.

Alleged Registration Violation: Plaintiffs also bring several claims related to registration violations.  They allege that Jump Trading, LLC, Jump Crypto Holdings LLC, and TMSL are liable for distributing "Terra Tokens" as unregistered securities.  They also allege that Jump Trading, LLC and Jump Crypto Holdings LLC were control persons liable for TMSL's alleged distribution of the Terra Tokens as unregistered securities, and that Jump Trading, LLC, Jump Crypto Holdings LLC, and TMSL were control persons of TFL and, as such, should be held liable for TFL's alleged failure to register the "Terra Tokens" as securities.

**C.    This Court's Prior Decision.**

Jump Trading, LLC previously moved to dismiss Plaintiffs' claims.  This Court granted that motion, holding that Plaintiffs failed to identify any actionable misstatement, omission, or manipulation.  Op. at 28.  Observing that the then-operative Second Amended Complaint ("SAC") was plagued by group pleading, this Court held that Plaintiffs did not identify a single statement attributable to Jump Trading, LLC that contained a materially false statement of fact.  *Id.* at 20–25.  This Court further found that the SAC neither alleged that Jump Trading, LLC had any duty to disclose its alleged trading in May 2021 nor that Jump Trading, LLC's alleged purchases of UST in

May 2021 had a deceptive purpose. *Id.* at 27. As explained below, the 4AC fails to cure these and other deficiencies identified in Jump Trading, LLC's prior motion to dismiss—and injects further deficiencies also requiring dismissal.

## III.    ARGUMENT

Plaintiffs have failed to meet the "formidable" pleading standards under the PSLRA for the securities fraud and market manipulation claims in Counts I to III. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). As Federal Rule of Civil Procedure 9(b) applies to allegations of fraud and manipulation here, Plaintiffs were required to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *UPPI LLC v. Cardinal Health, Inc.*, No. 21-35905, 2022 WL 3594081, at *1 (9th Cir. Aug. 23, 2022) (internal citations omitted); 15 U.S.C. § 78u–4(b)(1)(B) (pleadings must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed"). In addition, "[t]he PSLRA requires that 'the complaint shall, with respect to each act or omission . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Oregon Pub. Emps.' Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014) (quoting 15 U.S.C. § 78u–4(b)(2)(A)). "Exacting pleading requirements are among the control measures Congress included in the PSLRA. The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (internal quotation marks omitted). Despite having five opportunities, Plaintiffs' fraud and manipulation claims still fall far short of this exacting standard.

Plaintiffs' other claims are also woefully deficient even under the more lenient Rule 8 pleading standards. While courts "must accept as true the facts alleged in a well-pleaded complaint, [] mere legal conclusions are not entitled to an assumption of truth," *ESG Cap. Partners, LP v.*

*Stratos*, 828 F.3d 1023, 1031 (9th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)), and courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor are courts "required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler*, 540 F.3d at 1064–65.

Plaintiffs also may not group plead their claims under either standard. Both Rule 8(a) and Rule 9(b) do not permit Plaintiffs to "merely lump multiple defendants together but 'require[] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal citations omitted); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (rejecting allegations that "lumped together" all defendants because "[p]laintiff must allege the basis of his claim against each defendant"). Plaintiffs' repeated group pleading cannot state a claim for relief against Jump Trading, LLC, Jump Crypto Holdings LLC, and TMSL. Therefore, all of Plaintiffs' claims against the Jump Entities must therefore all be dismissed.

## A.    All Claims Against TMSL and Jump Crypto Holdings LLC Are Untimely.

The claims against TMSL and Jump Crypto Holdings LLC should be dismissed because each of those parties is a newly named defendant against whom Plaintiffs assert time-barred claims. The 4AC is the first pleading in which Plaintiffs named TMSL as a defendant. Jump Crypto Holdings LLC should be treated as a new defendant because, despite apparently naming it in their first two complaints, Plaintiffs did not name Jump Crypto Holdings LLC as a defendant in their SAC or their Third Amended Complaint ("TAC"). *See, e.g.*, *Pratt v. Gamboa*, No. 17-cv-04375, 2020 WL 2512407, at *8 (N.D. Cal. May 15, 2020) (reintroducing previously dropped defendant in amended pleading constitutes adding new defendant). In such circumstances, Plaintiffs' claims against TMSL and Jump Crypto Holdings LLC can proceed only if Plaintiffs can show that those claims relate back to their earlier pleadings under Federal Rule of Civil Procedure 15(c)(1)(C). As explained below, Plaintiffs cannot make such a showing here.

1.    **The Statute of Limitations Has Run for Each Claim Against TMSL and Jump Crypto Holdings LLC.**

Plaintiffs' securities fraud and market manipulation claims in Counts I, II, and III are subject to a two-year statute of limitations. *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 461 (9th Cir. 2023) ("Plaintiffs alleging securities fraud must bring their claims within '2 years after the discovery of the facts' that give rise to their complaint.") (citing 28 U.S.C. § 1658(b)). Count I rests on the same operative facts and conduct that Plaintiff Patterson had alleged in his initial complaint, filed in June 2022, while Counts II and III arise from the same operative facts regarding the May 2021 UST depeg that Plaintiffs first alleged in the SAC, filed in February 2023. Accordingly, at the latest, the two-year limitations period expired in June 2024 for Count I and in February 2025 for Counts II and III—long before Plaintiffs filed the 4AC in October 2025. *York Cnty.*, 65 F.4th at 466 ("A complaint that pleads a securities fraud claim based only on conduct discovered more than two years prior to the filing of the complaint necessarily establishes a § 1658(b)(1) statute of limitations defense.").

Plaintiffs' Section 12(a)(1) failure-to-register claim in Count V is governed by a one-year statute of limitations, which runs from the purchase date of the allegedly unregistered security. *Fabian*, 2019 WL 4918431, at *8 (citing 15 U.S.C. § 77m). So too are Plaintiffs' Section 15 control person claims in Counts VII and VIII, which rest on Section 12 claims as the primary violation. *Id.* at *7 (noting that Section 15 "provides liability for persons who control any person or entity liable under other sections of the 1933 Act, including Section 12"). Moreover, Counts V, VII, and VIII are not subject to the discovery rule. *Id.* (noting the Securities Act "plainly fails to include a discovery rule for § 12(a)(1) [claims]" and that "plaintiff's Section 15 claim rises and falls with his Section 12 claim" (internal citation omitted)).[6] Thus, the one-year period for those claims ran from May 20, 2022, the date of Plaintiffs' last purchase of the allegedly unregistered security. Dkt. No.

---

[6] Count VIII alleges TFL's violations of Sections 5 and 12(a)(2) as the primary violation for the Section 15 claim. 4AC ¶ 410. To the extent Plaintiffs actually meant what they wrote in this cause of action, the claim fails because "[a] private right of action for violations of section 5 is authorized by section 12(a)(1)," and not 12(a)(2). *Carol Gamble Tr. 86 v. E-Rex, Inc.*, 84 F. App'x 975, 978 (9th Cir. 2004). To the extent Plaintiffs intended to refer to 12(a)(1) rather than 12(a)(2), the claim is time-barred for the reasons explained herein.

19-3 (Tobias' PSLRA certification showing final purchase on April 6, 2022); 25-3 (Patterson's PSLRA certification showing final purchase on May 20, 2022).  Accordingly, the statute of limitations for Counts V, VII, and VIII expired on May 20, 2023.

### 2.    Plaintiffs' Untimely Claims Against TMSL Do Not Relate Back.

Because TMSL is a new defendant in this case, the relation-back doctrine under Rule 15(c)(1)(C) is "the only procedural avenue" through which Plaintiffs can assert untimely claims against it.  *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 856 (9th Cir. 1986).  "Rule 15(c) was intended to protect a plaintiff who *mistakenly* names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party." *Id.* at 857 (emphasis added); *Wilkins-Jones v. Cnty. of Alameda*, No. C-08-1485, 2012 WL 3116025, at *16 (N.D. Cal. July 31, 2012) ("Establishing the existence of a mistake is a threshold requirement in a 15(c)(1) inquiry . . . ." (internal quotation marks omitted)).  Rule 15(c)'s relation-back principles, however, do not apply where plaintiffs were "fully aware of [the new defendant's] identity and [its] role in the case" within the statutory period.  *Jones v. Mathews*, No. 16-2364, 2018 WL 9878317, at *8 (C.D. Ill. Dec. 11, 2018).  In such a case, a plaintiffs' failure to sue the defendant within the limitations period is "a conscious omission rather than a mistake about [its] identity." *Id.*

Here, Plaintiffs cannot satisfy Rule 15(c)(1)(C) because they were fully aware of TMSL and its alleged involvement in this case by July 7, 2023, at the latest, and likely earlier, on May 12, 2023.  On July 7, 2023, in opposing motions to dismiss their Second Amended Complaint, Plaintiffs filed a copy of a LUNA loan contract that was entered into by TFL and **TMSL**.  Dkt. No. 128-11.[7]  Plaintiffs were thus aware at least by July 2023 that TMSL—and not Jump Trading, LLC or Jump Crypto Holdings LLC—was the counterparty to the "loan agreements" based on which Plaintiffs had alleged in prior pleadings that "Jump was rewarded for its role in restoring the peg."  SAC ¶ 201; *see also* TAC ¶ 186 (alleging "Jump profited significantly from its fraud . . . by selling the

---

[7] *See, e.g.*, *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 807 (C.D. Cal. 2022) ("[A] court may take judicial notice of the filings on the docket in a case before that court" (internal citations omitted)).

1    LUNA acquired from TFL under the terms of the 2019 and 2020 loan agreements . . . .").[8]

2         Plaintiffs' demonstrated awareness of TMSL and its relation to this case within the

3    limitations period means that their prior failure to sue TMSL was not a mistake but a choice.  In

4    such circumstances, Plaintiffs' untimely claims against TMSL cannot relate back under Rule 15(c).

5    *See, e.g.*, *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1000 (N.D. Cal. 2009) ("[I]f a plaintiff

6    is aware of the potential defendant's identity at the time the original complaint is filed, but is

7    uncertain whether the potential defendant may be found liable, amendment is not allowed to defeat

8    the statute of limitations.  Similarly, if the plaintiff learns of the defendant within the limitations

9    period, but seeks to add the defendant only after the period has expired, amendment is not allowed."

10   (citation omitted)); *Strong v. City of Eugene*, No. 6:14-cv-01709, 2015 WL 2401395, at *4 (D. Or.

11   May 19, 2015) (holding that "because plaintiffs could have named the additional defendants in the

12   original complaint, but chose not to, no mistake transpired within the meaning of Fed. R. Civ. P.

13   15(c)(1)"), *aff'd*, 735 F. App'x 312 (9th Cir. 2018); *Hardesty v. Sacramento Metro. Air Quality*

14   *Mgmt. Dist.*, 935 F. Supp. 2d 968, 981 (E.D. Cal. 2013) ("plaintiff's deliberate choice not to sue a

15   party involved in the events at issue in the complaint is not a mistake" under Rule 15(c)).

16        **3.    Plaintiffs' Untimely Claims Against Jump Crypto Holdings LLC Do Not
17               Relate Back.**

18        The 4AC's untimely claims against Jump Crypto Holdings LLC also cannot relate back to

19   Plaintiffs' earlier pleadings.  As shown below, Plaintiffs originally named "Jump Crypto" as a

20   defendant, then removed it from multiple iterations of their complaint, only to add it back in now:

21   • **Initial Complaint:** Plaintiffs name "Jump Crypto" as a defendant, alleging that it is a
22     Delaware limited liability company and that Mr. Kariya is its president.  Dkt. No. 1
       ¶¶ 10, 42;

23   • **Amended Complaint:** Plaintiffs keep "Jump Crypto" as a named defendant, alleging
24     that it is a Delaware limited liability company and that Mr. Kariya is its president.  Dkt.
       No. 88 ¶¶ 17, 46;

25

26   ---
     [8] In his supporting declaration in this case, Plaintiffs' counsel stated that the TMSL contract was
27   attached as an exhibit to another declaration that the SEC's trial counsel had filed on ***May 12, 2023***,
     on the public docket in *SEC v. Do Kwon and Terraform Labs Pte. Ltd.*, 23-cv-01346 (JSR)
28   (S.D.N.Y.) (the "SDNY Action").  Dkt. No. 128 ¶¶ 3, 12.

11

- **Second Amended Complaint:** Plaintiffs drop "Jump Crypto" as a defendant. Dkt. No. 102.

- **Third Amended Complaint:** Plaintiffs do not name Jump Crypto Holdings LLC as a defendant. Dkt. No. 156.

- **Fourth Amended Complaint:** Plaintiff reintroduce Jump Crypto Holdings LLC as a named defendant and continue to allege it is a Delaware limited liability company and a "crypto-related unit and/or division" and that Mr. Kariya was its president. Dkt. No. 176 ¶¶ 33, 35.

Plaintiffs' flip-flop plainly shows they knew about Jump Crypto Holdings LLC's existence and its alleged role in the events giving rise to their claims. Accordingly, Plaintiffs cannot rely on Rule 15(c) to relate their untimely claims against Jump Crypto Holdings LLC back to their original pleading. Courts "routinely reject the application of Rule 15(c)(1)(C)" as to defendants that plaintiffs drop from suit and subsequently rename in a later amended pleading. *Pratt*, 2020 WL 2512407 at *10; *Nghiem v. Santa Clara Univ.*, No. 21-cv-06872, 2023 WL 3012494, at *5 (N.D. Cal. Mar. 20, 2023) ("Federal courts have rejected relation back under Rule 15 where, as here, a plaintiff seeks to reintroduce a defendant who was named in an earlier pleading but dismissed from the case.").

Any argument by Plaintiffs that Rule 15(c) applies here because they previously were unaware of Jump Crypto Holdings LLC's formal legal name is meritless and contradicted by the record. By December 2023 at the latest, Plaintiffs knew that Jump Crypto Holdings LLC's correct legal name was Jump Crypto Holdings LLC because, at that time, Plaintiffs filed in this case a copy of a decision from the SDNY Action specifically identifying "Jump Crypto" as "Jump Crypto Holdings LLC."[9] Dkt. No. 154; *see also SEC v. Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 458

---

[9] In addition, as mentioned above, Plaintiffs had alleged in their first complaint that "Jump Crypto" was a *Delaware* limited liability company. Notably, the correct legal entity, Jump Crypto Holdings LLC, has been publicly identified as such since the date of its formation in 2018 on the Delaware Department of State website, of which this Court can take judicial notice. *See* Del. Dep't of State, Div. of Corp., https://icis.corp.delaware.gov/\_ecorp/entitysearch/namesearch.aspx; *Paralyzed Veterans of Am. v. McPherson*, No. C064670SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) ("[I]nformation on government agency websites [has] often been treated as proper subjects

12

(S.D.N.Y. 2023).   Thereafter, on January 25, 2024, Plaintiffs filed their TAC but failed to name Jump Crypto Holdings LLC as a defendant.  Dkt. No. 156.  At that point, Plaintiffs' failure to name Jump Crypto Holdings LLC in the TAC was a strategic choice and not a result of any mistake concerning the party's proper name or identity.  Thus, Plaintiffs' reintroduction of Jump Crypto Holdings LLC as a defendant in the 4AC is untimely and cannot relate back to their earlier pleadings under Rule 15(c).  *See, e.g.*, *Jones*, 2018 WL 9878317, at *8 ("Rule 15 does not extend an open invitation to re-file against dismissed parties at any time . . . ."); *Nite & Day Power Techs. v. Corp. Cap. Res., Inc.*, No. CV-89-20298, 1995 WL 7942, at *5 (N.D. Cal. Jan. 5, 1995) (no relation back when defendants were dismissed from action and later renamed in amended complaint).

### B.    Plaintiffs Fail to Allege That the Jump Entities Committed Securities Fraud Through Misstatements or Omissions.

Plaintiffs' securities fraud claim in Count I must be dismissed because they fail to allege with particularity that: (i) any Jump Entity made a material misrepresentation or omission, (ii) any Jump Entity acted with the requisite scienter, (iii) Plaintiffs relied on any Jump Entity's purported misstatements, and (iv) any Jump Entity's alleged misstatements caused Plaintiffs' losses.  *See Oregon Pub. Emps.'*, 774 F.3d at 603.  The allegations in a securities fraud action must satisfy, as to each element and each Defendant, the "exacting" and "formidable" pleading standards of Rule 9(b) and the PSLRA.  *Id.* at 604; *Metzler*, 540 F.3d at 1055; *Swartz*, 476 F.3d at 764–65.  Plaintiffs' allegations come nowhere close.

#### 1.    Plaintiffs Fail to Allege That the Jump Entities Made Material Misrepresentations or Omissions.

Even with this Court's guidance, Plaintiffs have failed to identify a single actionable material misrepresentation or omission attributable to Jump Trading, LLC, Jump Crypto Holdings LLC, or TMSL.  Despite having dropped TFL from this suit, Plaintiffs continue to assert statements made by TFL, its founder Do Kwon, and the LFG. But as a matter of law, the Jump Entities cannot be found liable for those statements.   The remaining purported misstatements are all either

---

for judicial notice . . .").  Indeed, Jump Crypto Holdings LLC is the only result when searching "Jump Crypto" on that website.

13

nonactionable statements of opinion or simply Plaintiffs' mischaracterization or misquoting of otherwise benign statements.  Nor have Plaintiffs adequately alleged an actionable omission by Jump Trading, LLC, Jump Crypto Holdings LLC, or TMSL, because—as this Court previously ruled regarding the SAC—Plaintiffs have not identified a duty to disclose the information they claim was omitted.  Without a material misrepresentation or omission made by any Jump Entity, Count I must be dismissed.

### a. The Jump Entities Are Not Liable for Statements Made By Others.

The Jump Entities are not liable for allegedly false or misleading statements not "made" by them.  *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1070 (N.D. Cal. 2012); *see DeMarco v. DepoTech Corp.*, 32 F. App'x 260, 263 (9th Cir. 2002).  The "maker" of a statement is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *City of Royal Oak*, 880 F. Supp. 2d at 1070 (quoting *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011)).  Yet, half of the statements Plaintiffs allege to be fraudulent were made by persons other than the Defendants.[10]  4AC ¶¶ 340(b) (TFL), 340(c) (TFL), 340(f) (TFL), 340(g) (LFG), 340(i) (LFG), 340(k) (Do Kwon).

Plaintiffs do not explain how the Jump Entities could be held liable for the three alleged statements made by TFL.  *See id.* ¶¶ 340(b), 340(c), 340(f).  The first of these statements is a blog post by TFL that includes a purportedly false and misleading statement that Plaintiffs allege is by "Jump."  *Id.* ¶ 340(b).  But the allegation identifies no specific statement by "Jump" (nor, for that matter, which Jump Entity made it), merely claiming that the blog post "quoted Jump multiple times" and "linked to Jump's posts"—which in any event occurred in an entirely separate section of the blog post.  *Id.*  The Jump Entities plainly were not the "maker" of this unidentified statement and thus are not liable for it.  *See City of Royal Oak*, 880 F. Supp. 2d at 1070.  Plaintiffs' next allegation that "TFL and Jump (through its Wormhole project) made statements that referred to UST as 'censorship-resistant, infinitely scalable, algo-pegged USD stablecoin'" fares no better.  4AC ¶

---

[10] The Jump Entities do not agree that these statements would be actionable even against their makers.

14

340(c).  While Plaintiffs haphazardly allege that "TFL and Jump" made this statement, it was plainly made by TFL alone on TFL's Medium site.  *See* Terra Goes Live on Wormhole V2, Aug. 9, 2021, https://medium.com/terra-money/terra-goes-live-on-wormhole-v2-12df49d446d2 (cited at 4AC ¶ 158).  And the conclusion that this statement was made "at the behest of Jump because it was made in connection with Jump's Wormhole project" lacks any factual support—the mere fact that the statement related to Wormhole does not give rise to a reasonable inference that TFL made the statement at the behest of any (unspecified) Jump Entity.  Plaintiffs' third TFL statement is a press release they claim was issued by the LFG but was in fact authored by TFL (again, on TFL's Medium site).  4AC ¶ 340(f); *see* Formation of the Luna Foundation Guard (LFG) (Jan. 19, 2022) https://medium.com/terra-money/formation-of-the-luna-foundation-guard-lfg-6b8dcb5e127b (posted by "The Intern," TFL's Medium editor).  This allegation likewise fails because there is no basis to attribute it to any Jump Entity.

Nor does merely publishing the "Ship Show" podcast episode containing alleged misstatements by Do Kwon subject the Jump Entities to liability.  4AC ¶ 340(k).  "One who prepares or publishes a statement on behalf of another is not its maker."  *Janus Cap.*, 564 U.S. at 142.  As this Court has noted, the SAC did not "identify any *specific* statement made by Mr. Kariya [on the Ship Show], nor facts indicating what statements or omissions can be attributed to him specifically" and therefore "fail[ed] to plead any actionable statement by Mr. Kariya."  Op. at 24.  The 4AC, which includes no additional facts regarding the Ship Show, fails to identify an actionable statement attributable to Jump Entities for the same reason.  As to Plaintiffs' claim that "Defendants . . . failed to correct Kwon's misstatements" on the podcast, they have identified no duty any Jump Entity had to do so.  4AC ¶ 340(k).  Such a duty does not exist, as the duty to disclose material information necessary to correct misstatements "cannot be shifted to the shoulders of others;" it is borne by those making the statements.  *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 255 (2d Cir. 1973); *see Borteanu v. Nikola Corp.*, No. CV-20-01797, 2023 WL 1472852, at *24 (D. Ariz. Feb. 2, 2023) (rejecting scheme to defraud alleging that "certain defendants failed to correct or otherwise

15

take action against the false or misleading statements of another," as "such a duty to correct does not exist" (citing *In re Yahoo! Inc. Securities Litigation*, 611 F. App'x 387, 389 (9th Cir. 2015))).

Plaintiffs' attempt to pin the LFG's statements on the Jump Entities also fails. As this Court observed in dismissing the SAC, "[P]laintiffs do not state with particularity how or why [the LFG's] statements can be imputed to Jump in the first instance. Without more, the plaintiffs fail to meet the pleading requirements of Rule 9(b) and the PSLRA." Op. at 25. The 4AC fares no better. Plaintiffs' conclusory assertion that the LFG's statements were made "at the behest of Defendants," in addition to being impermissible group pleading (and unsupported by any factual allegation), does not explain how any Jump Entity controlled the content of the statements or even their issuance. *Id.* ¶¶ 340(f), 340(g).[11] Only the person or entity who has "'entirely within [their] control' the content of what is ultimately said" can be held liable for the statement. *Abdo v. Fitzsimmons*, 2021 WL 616324, at *9 (N.D. Cal. Feb. 17, 2021) (quoting *Janus Cap.*, 564 U.S. at 143). In any event, Plaintiffs' own allegations squarely undermine their conclusion that the Jump Entities controlled the LFG's statements. They admit that the "'governing' counsel [sic]" on which Mr. Kariya allegedly served was "limited to 'advising and giving recommendations'" and that the "LFG was legally governed by . . . Kwon and a Singaporean business consultant." *See* 4AC ¶ 202.

Thus, all of Plaintiffs' attempts to attribute statements made by TFL, Kwon, and the LFG to the Jump Entities fall flat.

### b. Liability Cannot Be Premised on the Jump Entities' Statements of Opinion.

The majority of the statements arguably attributable to the Jump Entities do not contain a statement of fact at all, let alone a misleading one. Instead, Plaintiffs assert that statements by Jump Crypto Holdings LLC and Mr. Kariya that merely express enthusiasm for the Terra Ecosystem's development or describe goals for the future of the DeFi space are actionable. *See, e.g.*, *id.* ¶¶ 340(e), 340(h), 340(j). They are wrong. Indeed, this Court has already observed that statements of this type "appear[] to concern expressions of opinion, as opposed to knowingly false statements

---

[11] Plaintiffs fail to make even this insufficient allegation with regards to the LFG statement alleged in ¶ 340(i).

of fact," which are "not actionable as securities violations."  Op. at 21 (internal quotation marks omitted) (analyzing statements currently alleged in 4AC ¶¶ 340(e), 340(j)).

Jump Crypto Holdings LLC's and Mr. Kariya's statements supporting the Terra Ecosystem or DeFi in general are nothing more than the predictable enthusiasm of participants in the space—reflected by their repeated use of classic opinionated language like "we believe" and "we're excited."  *See, e.g.*, 4AC ¶ 340(e); *see also Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1158 (9th Cir. 1996) (holding statement that defendant "had tremendous enthusiasm for the deal" was nonactionable opinion); *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1023 (N.D. Cal. 2020) (noting that statement "we are very pleased" was "inactionable puffery").  Absent allegations of fact that would give rise to an inference that the enthusiasm was not genuine, neither predictions about the future nor expressions of optimism such as these are actionable statements of fact.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017); *City of Royal Oak*, 880 F. Supp. 2d at 1063 ("In the Ninth Circuit, 'vague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws' because no reasonable investor would rely on such statements." (citation omitted)).

### c.     Plaintiffs Do Not Allege False Statements Attributable to Any Jump Entity.

After setting aside the statements made by others and nonactionable opinions, Plaintiffs are left with only three statements attributable to a Jump Entity that arguably contain facts:  two statements by Mr. Kariya on a May 3, 2022 podcast and "a blog referring to 'Terra's stability mechanism' as effective to 'balance safety.'"  4AC ¶¶ 340(d), 340(l), 340(m).  But, in each case, Plaintiffs grossly distort the content of the statements.  When applied to the actual statements, Plaintiffs' allegations of falsity all fail.

First, Plaintiffs erroneously imply that Mr. Kariya was referring to Terra when he said that "there is almost no possibility for one collusion across these landscapes, given the composition of the people in the network and the incentive structure, again, is obviously explicitly set up to discourage that."  4AC ¶ 340(l).  When this statement is read in context, it is apparent that Mr.

17

Kariya's statement was not about TFL, the Terra Ecosystem, UST, LUNA, or the May 2021 depeg at all. Instead, he was responding to a question posed by the interviewer regarding an entirely different subject, namely a decentralized market data distribution network called Pyth, and a popular criticism regarding the potential for collusion amongst the trading firms that provided the data inputs to Pyth's pricing mechanism. *Validated*, Solana Foundation, at 21:49–25:39 (May 3, 2022) https://solana.com/podcasts/validated-with-austin-federa/episodes/0dccf711-4b65-4047-894c-c027bcab6e28.[12]

Plaintiffs' second quote from this podcast materially misquotes Mr. Kariya using a statement that was also about Pyth, not Terra. Plaintiffs allege that Mr. Kariya represented that "all these **phones** are heavily, heavily regulated, you know, don't support about 20 years of its reputation and the giant business behind making a lot of this happen and we're definitely incentive aligned," claiming that this statement was "false, misleading, and/or incomplete because Jump used the auto-deleting communications application Signal for its communications with TFL and Kwon and did not otherwise have its incentives aligned with investors." 4AC ¶ 340(m) (emphasis added). But as is apparent from the recording (and the context of the discussion), Mr. Kariya did not actually say anything about "phones." Rather, he said "all these ***firms*** are heavily, heavily regulated," as part of his response to the same question about the potential for collusion amongst trading firms providing data to Pyth's pricing mechanism. *Validated*, Solana Foundation, at 21:49–25:39 (emphasis added). As the statement had nothing to do with phones, and, independently, because it concerns Pyth, not Terra, Plaintiffs' claim that Jump's use of Signal's auto-deleting messaging application somehow rendered the statement misleading makes no sense and is irrelevant in any event.

Finally, Plaintiffs allege that "Defendants Jump and/or Kariya" published a blog post "referring to 'Terra's stability mechanism' as effective to 'balance safety,'" claiming this was false

---

[12] The Court may consider the entirety of the statement because Plaintiffs rely heavily on it and its authenticity is not questioned. *See Sneed v. AcelRx Pharms., Inc.*, No. 21-cv-04353, 2022 WL 4544721, at *3 (N.D. Cal. Sept. 28, 2022) ("The incorporation by reference doctrine permits the Court to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiffs'] pleading." (internal quotation marks omitted)).

"because the stability mechanism did not balance safety."  4AC ¶ 340(d).  Plaintiffs yet again

blatantly mischaracterize the statement, which in full reads:

> Terra governance proposals - There is a lot of cool, complex economic machinery
> behind some of the most exciting and successful projects in the DeFi landscape.
> Terra's stability mechanism is a great example of this.  It requires solving for a
> number of crucial market parameters in a highly dimensional space to balance the
> safety and elasticity of the platform.  Our data engineering pipelines and battle
> experience in the markets have uniquely enabled us to analyze these complex
> systems and meaningfully contribute to the discussion.

https://jumpcrypto.com/writing/introducing-jump-crypto/.  Notably, the blog post did not state that

the mechanism was *effective* to balance safety (let alone that it was always effective and never

faltered) but rather observed that the "Terra stability mechanism . . . required solving for a number

of crucial market parameters . . . to balance the safety and elasticity of the platform."  *Id.*  Further,

the statement itself announces Jump Crypto's involvement in proposing Terra governance proposals,

which demonstrates the belief that the mechanism should be improved.  *Id.* (listing Jump Crypto's

"Community work" including "Terra governance proposals").  Thus, Plaintiffs have failed to

accurately allege a single false statement of fact attributable to any of the Jump Entities.

### d.    Plaintiffs Have Not Alleged That the Jump Entities Had a Duty to Disclose Any Alleged Omissions.

Plaintiffs' allegations of omissions fare no better, as they fail to allege either (i) any duty the

Jump Entities had to disclose or (ii) any half-truths (i.e., technically accurate statements made

misleading in the absence of omitted information) made by any Jump Entity requiring clarification.

Plaintiffs allege that the various statements attributable to the Jump Entities (i) did not disclose that

"UST was not nearly as 'stable' as promoted" because TMSL "had already . . . bail[ed] out the peg,"

4AC ¶ 340(j); (ii) that the Jump Entities "failed to disclose Jump's May 2021 intervention to repeg

UST to the U.S. dollar accomplished the re-peg when the algorithm had failed,"[13] *id.* ¶ 340(b); *see*

*id.* ¶¶ 340(a), 340(f), 340(k), 340(e); and (iii) that the Jump Entities "omitted any description of the

loans Jump received from TFL such that it was highly incentivized to promote investment in Terra

---

[13] Plaintiffs acknowledge that market participants purchasing UST when the price dropped under $1
was precisely how the mechanism was designed to work.  *See, e.g.*, *id.* ¶¶ 90, 194.

1  Tokens," *id.* ¶ 340(d); *see id.* ¶¶ 340(e), 340(h), 340(j).

2  But the 4AC does not resolve the glaring problem this Court identified with Plaintiffs'

3  omission theory:  they fail to allege that any Jump Entity "had any duty to disclose" any of the

4  above.  Op. at 27; *see id.* at 26 ("Plaintiffs' second amended complaint fails to plead with sufficient

5  particularity that . . . Jump itself had any duty to disclose its role in the re-peg.").  "Rule 10b-5 is

6  violated by nondisclosure only when there is a duty to disclose."  Op. at 27.[14]  That duty does not

7  "arise from the mere possession of non-public information."  *ScripsAmerica, Inc. v. Ironridge Glob.*

8  *LLC*, 119 F. Supp. 3d 1213, 1245 (C.D. Cal. 2015) (quoting *Chiarella v. United States*, 445 U.S.

9  222, 235 (1980)).  Like the Ninth Circuit held in *Paracor*, even if the Jump Entities were parties to

10 a financial transaction "from which [they] stood to benefit," Plaintiffs have not alleged that the Jump

11 Entities "assumed a relationship of trust and confidence with the Plaintiffs.  96 F.3d at 1157–58

12 ("[T]he parties to an impersonal market transaction owe no duty of disclosure to one another absent

13 a fiduciary or agency relationship . . . or circumstances such that one party has placed trust and

14 confidence in the other.").  Plaintiffs' purely conclusory assertion that "Defendants were duty bound

15 to disclose," *see* 4AC ¶ 340(j)*,* carries zero weight on a motion to dismiss.  *Sprewell*, 266 F.3d at

16 988.  The 4AC thus fails to allege that the Jump Entities had a duty to disclose the alleged UST

17 purchases in May 2021 or the loans TMSL received from TFL.  Those purported omissions are thus

18 nonactionable on that ground alone.

19 Further, the non-disclosure of TMSL's loans from TFL did not render any of the Jump

20 Entities' alleged statements misleading.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997,

21 1006 (9th Cir. 2002).  "Often, a statement will not mislead even if it is incomplete or does not

22 include all relevant facts" because "[n]o matter how detailed and accurate disclosure statements are,

23 there are likely to be additional details that could have been disclosed but were not."  *Id.*  To be

24

25 _____

26 [14] *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d
   1268, 1278 (9th Cir. 2017) ("Absent a duty to disclose, an omission does not give rise to a cause of

27 action under § 10(b) and Rule 10b–5."); *In re Facebook*, 477 F. Supp. 3d at 1012 ("[s]ilence, absent
   a duty to disclose, 'is not misleading under Rule 10b-5'" (quoting *Basic Inc. v. Levinson*, 485 U.S.

28 224, 239 n.17 (1988))).

actionable, the omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* Plaintiffs' claim that the failure to disclose the loans hid that the Jump Entities were allegedly "highly incentivized to promote investment in Terra Tokens." *See, e.g.*, 4AC ¶ 340(e). But even if that were true, it is irrelevant to the analysis because nothing the Jump Entities allegedly said implied otherwise. In fact, the only statements arguably attributable to the Jump Entities that Plaintiffs allege were misleading by omission were a blog post describing the intended functioning of the algorithm, statements expressing enthusiasm for the development of the Terra Ecosystem, and statements describing goals for the future of the DeFi space. *Id.* ¶¶ 340(d), 340(e), 340(h), 340(j). It was not necessary to disclose the loans to make these statements accurate and not misleading.

What is more, given that at the time of many of these statements the public was aware of the Jump Entities' interest in the Terra Ecosystem, not disclosing the loans could not have created a materially different impression of the state of affairs from the one that actually existed. *See Brody*, 280 F.3d at 1006. Two of the alleged statements (4AC ¶¶ 340(h), 340(j)) supposedly rendered misleading by the omission of the loan information occurred after it was publicly announced that Mr. Kariya would serve on the LFG's Governing Council and that the LFG reserve was funded by Jump and others with over $1 billion to defend against a potential future depeg. *See* 4AC ¶¶ 209, 210. There could be little doubt about Jump's interest in the Terra Ecosystem when those statements were made. Similarly, another of the alleged statements itself explicitly expressed that Jump Crypto was "particularly excited" about Terra, again leaving little doubt about Jump's interest. *Id.* ¶ 340(e). Finally, the blog post Plaintiffs claim was misleading for failing to disclose the loans merely explained the technical requirements of the stability mechanism; as previously discussed, that statement does not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *See id.* ¶ 340(d); *Brody*, 280 F.3d at 1006. Thus, Plaintiffs have not adequately alleged a single omission or actionable misstatement of fact attributable to the Jump Entities, which requires dismissal of their securities fraud claim.

21

### 2.    Plaintiffs Have Failed to Allege That the Jump Entities Acted With Scienter.

Plaintiffs offer no facts from which this Court could draw a "strong inference" of scienter. Instead, they cobble together an impermissible group pleading, conclusory allegations, and a litany of irrelevant facts in an attempt to obfuscate their lack of a cogent argument.  But, under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), here, the "intent to deceive, manipulate, or defraud," *Seaman v. Cal. Bus. Bank*, No. 13-cv-02031, 2013 WL 5890726, at *6 (N.D. Cal. Oct. 30, 2013).  A "strong" inference must be "more than merely plausible or reasonable."  *Tellabs*, 551 U.S. at 314.  It must be "cogent and at least as compelling as any opposing inference" of nonfraudulent intent.  *Webb v. Solarcity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018).  "The bar set by *Tellabs*" for pleading scienter under the PSLRA "is not easy to satisfy."  *Id.*  Plaintiffs do not meet that bar, for at least three reasons.

*First*, Plaintiffs continue to rely on a group pleading regarding "Defendants'" and "Jump's" intent.  *See, e.g.*, 4AC ¶ 62 ("Defendants had actual knowledge"), ¶ 345 ("Defendants acted with scienter"), ¶ 346 ("Jump intended"), ¶ 347 ("Jump was motivated"), ¶ 348 ("Jump had actual knowledge"), ¶ 349 ("Jump's scienter"), ¶ 352 (same), ¶ 353 (same).  These allegations impermissibly "lump multiple defendants together" and do not inform "each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *Swartz*, 476 F.3d at 764–65 (internal citations omitted).

*Second*, even if Plaintiffs did not impermissibly lump all Defendants together, their allegations of the Jump Entities' intent are simply not as "cogent and at least as compelling as any opposing inference" of nonfraudulent intent.  *See Webb*, 884 F.3d at 855.

Plaintiffs' apparent theory is that the Jump Entities intended to deceive the market into believing that UST's peg would never require "human intervention."  But Plaintiffs' own allegations and sections of their cited sources that they meticulously avoided quoting seriously undermine that inference.  For example, on the Ship Show, Mr. Kariya publicly acknowledged that UST could lose its peg in volatile conditions (i.e., could become unstable).  *See* 4AC ¶ 222 ("[I]t's extremely useful

1   to have a reserve that can step in until the market is able to kind of reconsolidate liquidity around

2   those positions . . . And it's basically meant to take out these extreme spikes and inject liquidity into

3   the book and allow markets to consolidate again around the new prices, **when there are extreme**

4   **price movements, which do happen** every sometime." (emphasis added)).  This demonstrates that

5   the Jump Entities were being candid with the market and does not support any inference (and

6   certainly not a "strong inference") that they sought to deceive the market into believing that human

7   intervention would never be required to support UST's peg.

8          Plaintiffs' assertion that before the May 2021 de-peg "Defendants had actual knowledge that

9   the algorithm might fail and that TFL would call upon Jump to assist with stabilization" because

10  Mr. Kariya and Kwon agreed that Jump would "help maintain the peg" is another unwarranted

11  inference.  4AC ¶ 62.  Maintaining the peg by deploying liquidity is not equivalent to knowledge

12  that the algorithm would fail but rather that it might need support—a belief that Mr. Kariya publicly

13  expressed well before the eventual collapse in May 2022.  And indeed, Plaintiffs acknowledge that

14  market participants purchasing UST when the price was below $1 was precisely how the "algorithm"

15  was designed to work.  *See id.* ¶¶ 90, 194.  Further, Plaintiffs allege that after the May 2021 depeg,

16  "Jump" (1) took delivery of additional LUNA from TFL under their preexisting loan agreement, *id.*

17  ¶ 101, and (2) funded the LFG's reserve, *id.* ¶ 210.  If, as Plaintiffs assert, the Jump Entities believed

18  their alleged trading in May 2021 was the only reason the Terra Ecosystem survived, it would be

19  unlikely to immediately take delivery of millions of LUNA that, per Plaintiffs' theory, it could lose

20  at any moment in another collapse.  Nor would it be likely to pour additional capital (via funding

21  the LFG reserve) into supporting a supposedly doomed ecosystem.  *See In re JP Morgan Chase Sec.*

22  *Litig.*, 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005) (finding plaintiffs' conclusion that defendant was

23  motivated to hide "Enron's vulnerability to induce others to invest, thereby forestalling Enron's

24  inevitable collapse" was undermined by their lack of explanation of why defendant "would have

25  continued to lend Enron billions of dollars").  Continued interaction with and investment in the Terra

26  Ecosystem after the May 2021 depeg is more consistent with a belief in its viability and longevity

27

28

1    than acts of fraud in support of a failing ecosystem.[15]

2         *Third,* left without facts evidencing the requisite intent, Plaintiffs raise a series of irrelevant,

3    scattershot allegations, none of which are sufficient to establish scienter.  Plaintiffs' general

4    allegations of the Jump Entities' motive and opportunity are "insufficient to establish scienter at the

5    pleadings stage."  *City of Royal Oak*, 880 F. Supp. 2d at 1069; *see Police Ret. Sys. of St. Louis v.*

6    *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061–62 (9th Cir. 2014) (rejecting motive and opportunity

7    arguments as "not independently sufficient"); s*ee* 4AC ¶ 347.  Plaintiffs next claim that "Jump's

8    scienter is additionally supported by its efforts to distance its business from the crypto sector

9    following the fall of Terra."  4AC ¶ 352.  But shifting business priorities, particularly in an area of

10   unclear and complicated regulations like the U.S. crypto market, a full year after the fall of the Terra

11   Ecosystem, does not speak at all to the Jump Entities' state of mind in 2021 and 2022, let alone give

12   rise to a compelling inference of scienter.

13        Plaintiffs rely heavily on the cases brought against TFL and Kwon but ignore that those cases

14   alleged violations by TFL and Do Kwon, not Jump Trading, LLC, Jump Crypto Holdings LLC, or

15   TMSL (or indeed any Jump entity).[16]  Plaintiffs' claim that "the SEC proved that Jump knowingly

16   manipulated trading of UST" is demonstrably false—there were no claims against any Jump entity

17   in that case and no claim that required a determination of any Jump entity's intent or knowledge.

18   *See id.* ¶ 19.  Any findings in those cases therefore cannot demonstrate whether any Jump Entity

19   intended to mislead the public.[17]  And the mere allegations in the cases against TFL and Kwon

20

21

[15] Just as knowledge that the peg may require support does not support an interference of scienter,
22   neither does mere knowledge of TMSL's alleged UST purchases during the May 2021 depeg.  As
23   discussed above, the Jump Entities did not have a duty to disclose that trading, and thus the
     knowledge alone does nothing to advance Plaintiffs' case for scienter.

24   [16] Because the Jump Entities were not parties to the SDNY Action, they are not bound by any rulings
25   made therein. *See, e.g., R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 1735994,
     at *3 (N.D. Cal. June 23, 2025) (rejecting, as unsupported, assertion that litigant may be "somehow
26   bound by the summary judgment record in a case to which it was not a party").

27   [17] Likewise, the fact that former Jump employees "worked with" the SEC in the case against TFL
     and Kwon, years after the events in question, *id.* ¶ 349, cannot establish Defendants'
28   contemporaneous intent to deceive years prior.

cannot satisfy Plaintiffs' obligation to plead scienter here. *See Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) ("[A]llegations from other complaints or documents, which are unproved and are contested, may not be used to establish facts to demonstrate scienter.").

Plaintiffs next seek to demonstrate the Jump Entities' scienter based on Mr. DiSomma's and Mr. Kariya's invocation of their Fifth Amendment rights in the SDNY Action. But that too is insufficient to plead scienter. Invoking the Fifth Amendment in a separate case does not meet Plaintiffs' obligation to plead scienter with particularity. *See id.* at 1203–04 (finding plaintiffs' attempt to "rely on the alleged assertion of the Fifth Amendment privilege against self-incrimination during the SEC's investigation" in a separate case was insufficient to plead scienter).

Plaintiffs' attempt to use the SEC's Cease-and-Desist Order with TMSL (the "SEC Order" or "Order") to establish scienter also fails; indeed, it undermines the very inference Plaintiffs seek to have this Court draw. As Plaintiffs acknowledge, the relevant mental state for the SEC's claims in the Order was negligence, which is a far lower bar than the "intent or deliberate recklessness" Plaintiffs must plead here. *See* 4AC ¶ 280; *S. Ferry LP, No. 2 v. Killinger,* 542 F.3d 776 at 782 (9th Cir. 2008); *see also Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1014 (S.D. Cal. 2000) ("[N]o degree of negligence can satisfy the substantive element of scienter, or raise a strong inference of scienter under the [PSLRA]."). Furthermore, the SEC's findings were limited to TMSL, not Jump Trading, LLC or Jump Crypto Holdings LLC. And even if the SEC's findings helped Plaintiffs instead of hurt their case, Plaintiffs' reliance on them here would be misplaced because TMSL neither admitted nor denied the allegations. *See Kyung Cho*, 890 F. Supp. 2d at 1203 (rejecting plaintiffs' attempt to rely at motion to dismiss stage on defendants' consent to judgment in SEC actions where defendants neither admitted nor denied the allegations).

Plaintiffs' smattering of irrelevant and insufficient allegations cannot remedy their lack of facts supporting a strong inference of scienter, requiring dismissal of their securities claims.

### 3.      Plaintiffs Fail to Allege Reliance on the Jump Entities' Statements.

Plaintiffs' Section 10(b) claims further fail because Plaintiffs (i) do not plead that they personally relied on the Jump Entities' alleged misstatements, (ii) cannot invoke a presumption of

reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and (iii) cannot invoke the fraud-on-the-market presumption of reliance.

*First*, Plaintiffs have not alleged any facts that would support an inference that they themselves relied on the Jump Entities' alleged statements in making their decisions to buy UST, LUNA or other Terra Tokens.  In fact, they do not even claim that they saw or heard a single statement made by the Jump Entities prior to purchasing any of those tokens.

*Second*, because Plaintiffs allege primarily a misstatements case, they cannot rely on *Affiliated Ute's* presumption.  *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999).  Under *Affiliated Ute*, a plaintiff whose case "primarily alleges omissions" is entitled to a presumption of reliance.  *Id.*  But Plaintiffs' allegations demonstrate that this is primarily a misrepresentation case— they allege far more purported misstatements than omissions, precluding the application of *Affiliated Ute*.  *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009) (courts must "maintain[] the well-established distinction, for purposes of the *Affiliated Ute* presumption, between omission claims, on the one hand, and misrepresentation and manipulation claims, on the other."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1206 (9th Cir. 2021) (weighing pages of misstatements against a single omission).

The bulk of Plaintiffs' allegations attributable to the Jump Entities are alleged misstatements. *Compare id.* ¶¶ 340(a) (omission), *with id.* ¶¶ 340(l), 340(m) (misstatements) and *id.* ¶¶ 340(d), 340(e), 340(h), 340(j) (mixed misstatements and omissions).  *Affiliated Ute*'s narrow presumption is warranted only for omissions cases due to the difficulty of proving reliance on a negative, unlike in misrepresentation and manipulation cases.  *See Desai*, 573 F.3d at 941 ("[I]t would fail to serve the *Affiliated Ute* presumption's purpose since this is not a case where reliance would be difficult to prove because it was based on a negative."); *In re Volkswagen*, 2 F.4th at 1206, 1208.  Here, Plaintiffs' inability to allege reliance on any misstatements by the Jump Entities is not due to the difficulty of proving reliance on a negative.  Rather, it is due to the lack of reliance altogether. Applying *Affiliated Ute* to this case "would swallow the reliance requirement almost completely." *In re Volkswagen*, 2 F.4th at 1208.

*Third*, to the extent Plaintiffs alternatively seek to apply the fraud-on-the-market presumption of reliance, that too fails. "The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business." *Basic*, 485 U.S. at 241–42 (internal citation omitted). To establish a presumption of reliance through fraud-on-the-market, Plaintiffs must plead that (1) "the alleged misrepresentations were publicly known," (2) the security "traded in an efficient market," and (3) "the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011) (internal citations omitted). "Efficiency must be pled with particularity under Rule 9(b)." *ScripsAmerica*, 119 F. Supp. 3d at 1252.

The 4AC is devoid of any—let alone particularized—allegations that the market for any Terra Tokens was efficient. Nor do Plaintiffs allege any of the indicia of an efficient market, including a high volume of trading or that there are "numerous market makers and arbitrageurs."[18] *See Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015) (quoting *Binder*, 184 F.3d at 1065). Plaintiffs' allegations pale in comparison even to those that other courts have found lacking. In *ScripsAmerica*, for example, the plaintiff referenced the volume of trading, identified eight market makers and arbitrageurs, and alleged "a cause and effect relationship between financial releases and an immediate response in [its] stock price," but the court found those allegations to be conclusory, not plausible, and insufficient to invoke fraud-on-the-market reliance. 119 F. Supp. 3d at 1253–58 (alteration in original). Here, without any allegations of an efficient market, Plaintiffs are not entitled to the presumption of reliance based on the fraud-on-the-market theory, and therefore they have not pled reliance on the Jump Entities' purported misstatements.

### 4. Plaintiffs Have Not Alleged That the Purported Fraud Caused Their Losses.

Far from alleging that the Jump Entities' purported fraud caused their losses, Plaintiffs' own allegations preclude that conclusion. The loss causation requirement is akin "to the showing of

---

[18] In fact, Plaintiffs allege that in September 2020 TFL loaned LUNA to Jump to "improve liquidity," implying that there were few market makers for Terra Tokens at that time. 4AC ¶ 69.

proximate causation required in ordinary tort actions." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020).  The thrust of Plaintiffs' claims is that the Jump Entities assisted in misleading the public in 2021 into believing "human intervention" was not needed to maintain UST's peg, *see, e.g.*, 4AC ¶¶ 2, 10–11, 111, 147, but the chronology of events alleged in the 4AC makes plain that the supposed fraud by the Jump Defendants could not have been the proximate cause of Plaintiffs' purported losses in May 2022.

Plaintiffs have pled facts demonstrating that the world knew that the UST peg could (and likely would) require human intervention to be maintained on occasion ***before*** Plaintiffs themselves ever bought UST or LUNA.  Specifically, Plaintiffs allege that in January 2022 the LFG was formed with the publicly stated purpose of "buttress[ing] the stability of the peg" with a reserve funded with $1 billion that could be deployed in periods of instability.  *Id.* ¶¶ 195, 209.  Yet, all of Plaintiffs' purchases of UST and LUNA occurred ***after*** this public acknowledgment that the peg could require intervention.[19]  Dkt. Nos. 19-3, 25-3.  Plaintiffs further admit that in March 2022, Mr. Kariya publicly reiterated the significance of the LFG, explaining that the LFG's $1 billion reserve was "extremely useful to have" to address "extreme price movements, which do happen."  4AC ¶ 222.  Notably, Plaintiffs continued to buy UST and LUNA after this public disclosure.[20]  Dkt. Nos. 19-3, 25-3.  Indeed, Mr. Tobias's sole UST purchase occurred the month *after* Mr. Kariya's statement.  Dkt. No. 19-3.

Because these early 2022 disclosures by the LFG and Mr. Kariya occurred before Plaintiffs bought their UST and LUNA, any losses they ultimately suffered could not have been proximately caused by the Jump Entities' supposed role in 2021 in misleading the public into believing the peg

---

[19] That the putative class includes those who purchased UST in 2021 before the LFG's statements is of no moment.  "In ruling on a motion to dismiss a class action complaint prior to class certification, courts generally consider only the claims of the named plaintiff."  *Harrison v. E. I. Dupont De Nemours & Co.*, 2016 WL 3231535, at *6 (N.D. Cal. June 13, 2016).

[20] Because the early 2022 disclosures by the LFG and Mr. Kariya clearly correct any alleged prior statements suggesting that UST would never require human intervention to maintain the peg, Plaintiffs could not reasonably rely on those misstatements in making their purchases, further precluding their claim.  *See Basic*, 485 U.S. at 248.

1  would never need support.  "To establish loss causation in a fraud-on-the-market case, the plaintiff

2  must show that **after** purchasing her shares and before selling, the following occurred: (1) 'the truth

3  became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be

4  reduced or eliminated." *In re BofI*, 977 F.3d at 789 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S

5  336, 347 (2005)) (emphasis added).  A "truth becom[ing] known" occurs most commonly when

6  "information correcting the misstatement or omission that is the basis for the action is disseminated

7  to the market." *Id.* at 790; *see* 15 U.S.C. § 78u-4(e)(1).

8  Here, however, based on Plaintiffs' own allegations, the supposed "truth became known"

9  (i.e., that "human intervention" sometimes was required to maintain the peg, which was why the

10  LFG's reserve was formed) at least by January 2022, **before** Plaintiffs' purchases, not after.

11  Moreover, neither the LFG's nor Mr. Kariya's announcements in early 2022 caused a price drop, as

12  required for causation in a fraud-on-the-market case (and Plaintiffs certainly do not allege one).  *See*

13  *In re BofI*, 977 F.3d at 789 (citing *Dura Pharms.*, 544 U.S. at 347).  Instead, according to Plaintiffs,

14  UST maintained its peg after these disclosures in January and March 2022, until it collapsed months

15  later in May 2022.  The fact that UST did not collapse until months after these disclosures—

16  particularly in admittedly "notoriously volatile" cryptocurrency markets, 4AC ¶ 89—further

17  undermines any inference that the collapse had anything to do with the supposed fraud on which

18  Plaintiffs' case is focused and suggests instead that the collapse was caused by other events.  *See*

19  *Dura Pharms.*, 544 U.S. at 343 (referring to "changed economic circumstances, changed investor

20  expectations, new industry-specific or firm-specific facts, conditions, or other events").

21  As it was public knowledge before they purchased their UST and LUNA that UST's peg

22  could experience volatility and require human intervention, Plaintiffs have failed to adequately plead

23  that the Jump Entities' putative misstatements caused their losses, and their securities fraud claim

24  therefore must be dismissed.

25  **C.    Plaintiffs Fail to Adequately Allege Market Manipulation.**

26  Plaintiffs assert two separate manipulation claims, both based on alleged trading during the

27  May 2021 depeg—the first seeks to establish liability for the Jump Entities for a scheme to defraud

28

under Section 10(b) and the second alleges for the first time market manipulation under Sections 9(a)(2) and 9(a)(6).  Both claims must be dismissed because Plaintiffs still do not and cannot allege that Jump Trading, LLC, Jump Crypto Holdings LLC, or TMSL committed any manipulative act.

### 1. Plaintiffs Cannot Establish Scheme Liability Under Section 10(b) Because They Do Not Allege That the Jump Entities Committed Market Manipulation.

Scheme liability under Rule 10b-5(a) and (c) differs from liability for a misstatement or omission only in that it requires "a device, scheme or artifice to defraud, or an act, practice or course of business which would operate as a fraud" in place of a material misrepresentation or omission. *See New York City Emps.' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 996 (N.D. Cal. 2009).  "[T]o be liable for using a 'scheme to defraud' a defendant must have committed a manipulative or deceptive act 'in furtherance of the scheme.'"  *Burnett v. Rowzee*, 2007 WL 4754539, at *5 (C.D. Cal. Oct. 18, 2007) (quoting *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997)).  As this Court noted previously, Plaintiffs must allege that each Jump Entity's own acts, not merely the overarching alleged scheme, were manipulative or deceptive.  *See* Op. at 26–27; *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, 519 F.3d 1041 (9th Cir. 2008) ("It is not enough that a transaction in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect" (emphasis in original)).  Plaintiffs fail to do so because they do not sufficiently allege that each Jump Entity had manipulative intent, plead reliance, or adequately tie their losses to the Jump Entities' alleged trading.  Indeed, Plaintiffs' allegations in the 4AC are not materially different from the allegations in the SAC that this Court previously dismissed.

As an initial matter, Plaintiffs have failed to identify each Jump Entities' involvement in the May 2021 depeg, impermissibly relying on group-pled allegations of "Defendants'" and "Jump's" trading.  *See, e.g.*, 4AC ¶¶ 93, 97, 101; *Swartz*, 476 F.3d at 764–65.  That alone defeats Plaintiffs' market manipulation claims.

Even if Plaintiffs did not impermissibly lump all Defendants together, their failure to plead that each of the Jump Entities did not genuinely value UST at $1 at the time of the alleged trading

30

1    is fatal to their claim.  Manipulation requires (among other things) an ***intent to create an artificial***

2    ***price*** (i.e., a price that is not consistent with forces of supply and demand).  *See Desai*, 573 F.3d at

3    940–41 (manipulation "includes activities designed to affect the price of a security *artificially*"

4    (emphasis added)); *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969)

5    ("The section does not condemn extensive buying or buying which raises the price of a security in

6    itself."); *CFTC v. Wilson*, 2018 WL 6322024, at *14–*15 (S.D.N.Y. Nov. 30, 2018) (rejecting the

7    argument that intent to affect price renders trading "inherently manipulative, regardless of whether

8    [that trading is] reflective of fair market value").   A plaintiff must allege conduct "intended to

9    mislead investors by *artificially* affecting market activity."  *ScripsAmerica*, 119 F. Supp. 3d at 1236

10   (emphasis added).  And under Rule 9(b), Plaintiffs' allegations must give rise to a "strong inference"

11   of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent

12   intent."   *Webb*, 884 F.3d at 855.   Pleading scienter for manipulation claims "is particularly

13   important . . . because in some cases scienter is the only factor that distinguishes legitimate trading

14   from improper manipulation."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir.

15   2007).

16        Plaintiffs fail to plead scienter here.   Their theory is that because the Jump Entities

17   purportedly intended to restore the peg to $1 with the alleged May 2021 UST purchases (motivated

18   by the below-market LUNA options that they allegedly received), they had manipulative intent.  *See*

19   4AC ¶¶ 365, 367.  But this is not sufficient to allege manipulative intent.  *Wilson*, 2018 WL 6322024,

20   at *14–*15 (holding "mere intent to affect prices" is not sufficient to demonstrate an intent to create

21   an *artificial* price).  As this Court already observed, this "conduct could reflect a benign business

22   decision as opposed to manipulative or deceptive conduct ***if Jump truthfully believed it was***

23   ***purchasing the tokens below their real value***."  Op. at 27 (emphasis added).  Plaintiffs do not allege

24   any of the Jump Entities did not genuinely believe in May 2021 that UST was worth $1 or believed

25   that UST would inevitably collapse (and thus was not worth $1).  *See ATSI Commc'ns*, 493 F.3d at

26   100 (requiring "a showing that an alleged manipulator engaged in market activity aimed at deceiving

27   investors as to how other market participants have valued a security").  At most, Plaintiffs offer the

28

31

group pleading that "Defendants" knew that in the absence of intervention, "UST could not have re-pegged on its own" and "the entire Terraform ecosystem was in danger of collapse."  4AC ¶¶ 200, 366.  But even knowing intervention was necessary does not compel the conclusion that the Jump Entities knew the Ecosystem would necessarily fail or that buying UST below its expected value was improper or manipulative.  That Mr. Kariya proposed new governance proposals, *see id.* ¶ 204, and (as discussed above) TMSL took additional delivery of LUNA and funded the LFG Reserve, *id.* ¶¶ 101, 210, 293, squarely undermines any such inference and strongly implies that the Jump Entities believed after the depeg that the Ecosystem would continue and would be improved, not that it would necessarily fail.  Thus, the factual allegations do not support the inference—and certainly not the requisite strong inference—that the Jump Entities were trying to create an artificial price.  Just the opposite.  Plaintiffs' allegations are simply not "as compelling" as the notion that the Jump Entities believed that UST was temporarily trading below its true value.  *See Webb*, 884 F.3d at 855; Op. at 26, 27.

Plaintiffs' remaining boilerplate, conclusory allegations that "Defendants" had "actual intent to manipulate" or "Jump" "knowingly manipulated trading of UST," *see, e.g.*, 4AC ¶¶ 10, 19, would not satisfy Rule 9(b)'s heightened requirements to plead scienter even if not group pleaded.  *Sprewell*, 266 F.3d at 988 (court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Plaintiffs' allegations are in stark contrast with cases that have found manipulation, where the allegations set forth that the defendants conveyed a false impression of their valuation of the security.  *See, e.g.*, *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 41 (2d Cir. 2017) (allegations included improper front running); *Crane*, 419 F.2d at 792–94 (defendant "painted the tape" with simultaneous private sales and public purchases at disparate prices, demonstrating it did not believe the public purchase price was the fair price); *SEC v. Sierra Brokerage Servs, Inc.*, 608 F. Supp. 2d 923, 960–68 (S.D. Ohio 2009) (defendant paid others to not sell their stock and instructed friends to buy stock in advance of reverse merger to inflate demand); *SEC v. Rose*, No. H-04-2799, 2007 WL 9826042, at *13 (S.D. Tex. Sept. 5, 2007) (secret sales helped finance

repeated large purchases); *SEC v. Drucker*, No. 75 Civ. 2643, 1983 WL 1369, at *22 (S.D.N.Y. Sept. 26, 1983) (defendant intended to get available stock into the possession of someone he could control).

Similarly, Plaintiffs' reliance on Judge Rakoff's summary judgment determination in the SDNY Action cannot save their claim. Judge Rakoff held that certain statements by Mr. DiSomma were admissible under a hearsay exception because they qualified as statements against interest and "tend[ed] to show . . . intent, motive, and plan to conspire with Terraform *to restore UST's peg*." Rakoff Op. at 57–58 (emphasis added). But the relevant question here is whether Plaintiffs have pled facts with particularity that give rise to a strong inference of scienter. That another court made an evidentiary determination that certain hearsay statements were admissible in a case in which Defendants were not parties has no bearing on whether the facts alleged in the 4AC meet the PSLRA's exacting pleading requirements. In any event, as discussed above, *supra* at 30–31, the mere intent to restore the peg does not equate to an intent to create an *artificial* price or otherwise defraud, which are the relevant questions here when assessing whether Plaintiffs have pled scienter adequately.

For the same reasons that Plaintiffs have failed to allege reliance and causation for their misrepresentation claim, Plaintiffs likewise have failed to allege those elements for their manipulation claim. Plaintiffs have not pled their own reliance or facts supporting the fraud-on-the-market presumption of reliance, and the *Affiliated Ute* presumption of reliance is not applicable in manipulation cases. *See supra* at 26; *see also Desai*, 573 F.3d at 941.

Plaintiffs' inability to allege that each Jump Entity did not genuinely believe that UST was worth $1 precludes their manipulation claim—if the Jump Entities believed UST was worth $1, buying UST *below* $1 would be entirely consistent with "the natural interplay of supply and demand." *ATSI Commc'ns*, 493 F.3d at 100; *see Wilson*, 2018 WL 6322024, at *14–*15. The SAC "fail[ed] to allege facts sufficient to attribute a deceptive purpose to those purchases," Op. at 27, and Plaintiffs do not proffer any additional facts in the 4AC rectifying that failure.

### 2.    Plaintiffs Do Not Adequately Allege Manipulation Under Section 9(a).

The 4AC's shortcomings for manipulation under Section 10(b) also preclude Plaintiffs' manipulation claim under Section 9(a). "The analysis of claims under [§] 9(a) closely parallels the analysis of claims under [§] 10(b)." *Phunware, Inc. v. UBS Sec. LLC*, No. 23 Civ. 6426, 2025 WL 2636568, at *2 (S.D.N.Y. Sept. 12, 2025) (internal quotation marks and citations omitted); *see Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1165 (5th Cir. 1982), *rev'd on other grounds* 460 U.S. 1007 (1983). To plead a claim under Section 9(a)(2), Plaintiffs must allege "(1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter, (3) for the purpose of inducing the security's sale or purchase by others, (4) was relied on by the plaintiff, (5) and affected plaintiff's purchase or selling price." *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 637 (S.D.N.Y. 2004). A claim under Section 9(a)(6) requires (1) a series of transactions in a security; (2) made for the purpose of pegging, fixing, or stabilizing the price of that security in violation of SEC rules; (3) done with scienter; (4) on which the plaintiff relied; (5) that affected the plaintiff's purchase or selling price. *Chemetron*, 682 F.2d at 1164. A Section 9(a) claim is generally regarded as *a higher standard* than a Section 10(b) claim. *See id.* at 1165.

Plaintiffs must plead *willful* participation in the violation, 15 U.S.C. § 78i, and specific intent to induce others to trade in a security, *Cobos v. Robinhood Fin. LLC*, 2021 WL 1035123, at *3 (C.D. Cal. Feb. 10, 2021)—not recklessness as under Section 10(b). The causation requirement that the transaction "affected plaintiff's purchase or selling price" requires that "the manipulated price influenced or was responsible for the purchaser's or seller's price." *Chemetron*, 682 F.2d at 1186; *see Crane Co. v. American Standard, Inc.*, 603 F.2d 244, 251–53 (2d Cir. 1979) (holding that plaintiff's transaction before manipulation was not actionable and transaction after manipulation was not actionable absent allegation and proof of effect on sale price).

Plaintiffs' Section 9(a) manipulation claim fails for several, independent reasons. Plaintiffs have failed to plead that the Jump Entities willfully manipulated the market for UST and LUNA. As discussed above, they have not satisfied even the lower standard under Section 10(b) because

34

1    they rely on group-pled scienter and have not alleged that the Jump Entities did not value UST at

2    $1 at the time of the alleged UST purchases during the May 2021 depeg. *See supra* at 26. "The

3    central purpose of section 9(a) is not to prohibit market transactions which may raise or lower the

4    price of securities, but to keep an open and free market where the natural forces of supply and

5    demand determine a security's price." *Trane Co. v. O'Connor Sec.*, 561 F. Supp. 301, 304 (S.D.N.Y.

6    1983). A profit motive is just as inadequate for scienter under Section 9(a) as it is under Section

7    10(b). *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 428–29 (S.D.N.Y. 2010) (generalized motive

8    to earn profits is insufficient to allege scienter). Nor have Plaintiffs adequately alleged specific

9    intent to induce others to trade. *See Cobos*, 2021 WL 1035123, at *3. Similarly, Plaintiffs have not

10   sufficiently pled causation under Section 10(b), much less alleged facts satisfying the requirement

11   that the May 2021 transactions affected their purchase price. *See id.* at *2. Plaintiffs' purchases all

12   took place in 2022, long after the purported May 2021 transactions, and Plaintiffs offer no

13   allegations that May 2021 transactions continued to affect the price over six months later. *See* Dkt.

14   Nos. 19-3, 25-3. Plaintiffs also have not sufficiently pled reliance, for the same reasons they fail to

15   do so for their Section 10(b) claims. *See supra* at 34.

16        Additionally, Plaintiffs fail to state a claim under Section 9(a)(6) because they do not identify

17   the SEC rule that Jump Trading, LLC, Jump Crypto Holdings LLC, and TMSL each supposedly

18   violated with their purported manipulation. *See Chemetron*, 682 F.2d at 1164 (transaction must be

19   made for the purpose of pegging, fixing, or stabilizing the price of that security *in violation of SEC*

20   *rules*). The only rule identified in the 4AC is 10b-5—which, as discussed extensively above,

21   Plaintiffs have not sufficiently pled the Jump Entities violated. Plaintiffs merely assert that the

22   alleged trading was "in contravention of SEC rules and regulations, as evidenced by the numerous

23   SEC enforcement actions targeting this elicit re-peg as described at length herein." 4AC ¶ 377. But,

24   as discussed above, the SEC's findings of facts in a no-admit, no-deny negligence resolution with

25   regard to TMSL are not adequate allegations of an SEC rule violation by TMSL, *see Kyung Cho*,

26   890 F. Supp. 2d at 1203 (rejecting use of unproven allegations from other complaints or documents),

27   much less by Jump Trading, LLC or Jump Crypto Holdings LLC, which are not subjects of the

28

1    Order.[21]  And again, the SEC's action against TFL and Kwon does not establish any facts with

2    regards to any of the Jump Entities.  Plaintiffs have thus failed to state a claim under either Section

3    9(a)(2) or 9(a)(6).

4        **D.    The Court Should Dismiss Plaintiffs' Section 5 and 12(a)(1) Claims in Count V.**

5            **1.    Count V Is Barred by the Applicable Three-Year Statute of Repose.**

6            Plaintiffs' Section 5 and 12(a)(1) claims for failure to register are governed by a three-year

7    statute of repose.  *See* 15 U.S.C. § 77m.  That "three-year period begins when the alleged security

8    is ***first*** bona fide offered" to the public.  *In re Ripple Labs, Inc. Litig.*, No. 18-cv-06753, 2024 WL

9    3074379, at *2 (N.D. Cal. June 20, 2024) (emphasis added); *Stoltz Family P'ship L.P. v. Daum*, 355

10   F.3d 92, 100 (2nd Cir. 2004) (noting that "the *vast* majority of courts . . . have impliedly or expressly

11   found that the three-year period begins when the security is *first* bona fide offered") (emphasis in

12   original).  Plaintiffs' Count V rests entirely on the SEC's claim that TMSL sold LUNA to the public

13   beginning in January 2021.  4AC ¶¶ 276, 391–92.  Thus, by Plaintiffs' own allegations, the allegedly

14   unregistered securities at issue were first bona fide offered to the public in January 2021, at the latest.

15   That means the statute of repose for Count V expired in January 2024, if not sooner.  As such, it

16   fully forecloses Plaintiffs' Count V, which Plaintiffs first raised when they filed the 4AC in October

17   2025.

18          Plaintiffs cannot rely on Rule 15(c)'s relation-back doctrine to avoid this result.  In *Miguel*

19   *v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002), the Ninth Circuit expressly found that

20   statutes of repose are jurisdictional and, as such, may not be extended by federal procedural rules,

21   including Rule 15(c).  *Id.* at 1164–65, *abrogated on other grounds by Hoang v. Bank of Am., N.A.*,

22   910 F.3d 1096, 1100 (9th Cir. 2018) (holding that, if applied to circumvent statute of repose,

23   relation back under Rule 15 would impermissibly "extend federal jurisdiction" and violate the Rules

24   Enabling Act); *see also Resol. Tr. Corp. v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991) ("Relation

25

26

27   ---
     [21] Even if the SEC Order were sufficient to allege violation of an SEC rule by TMSL, as discussed
     above, the relevant mental state at issue in the SEC Order was negligence, which is far from the
28   willfulness required by Section 9(a).

back under Rule 15 does not apply when the statute at issue defines substantive rights" and "a statute of repose is substantive in that it defines a right rather than merely limits its enforcement"); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 451 (S.D.N.Y. 2017) (collecting cases holding that "statute of repose cannot be circumvented by the relation-back doctrine").

### 2.    Plaintiffs Fail to Plead the Statutory Seller Element in Count V.

Even if Count V were not barred by the statute of repose, it should still be dismissed because Plaintiffs fail to allege that any of the Jump Entities is a "seller" within the meaning of Section 12(a). To adequately plead the "seller" element, Plaintiffs had to allege that *each* Jump Entity either: "(1) passe[d] title to the securities to the plaintiff"; or (2) "solicit[ed] the purchase [of the securities], motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1257–58 (9th Cir. 2022).  Plaintiffs do neither.

The 4AC does not allege that any of the Jump Entities transacted directly with Plaintiffs, much less passed *to Plaintiffs* title to any of the "Terra Tokens."  Instead, the 4AC alleges that only TMSL acted as a "statutory underwriter" for LUNA (and not for any other token).  4AC ¶¶ 386–95. That is insufficient.  *See, e.g.*, *Welgus v. TriNet Grp., Inc*., No. 15-cv-03625, 2017 WL 6466264, at *31 (N.D. Cal. Dec. 18, 2017) ("[A]llegations that the Underwriter Defendants merely did their job and rendered professional services . . . in connection with a transaction for securities do not amount to allegations that the underwriters are 'sellers' under [Section 12(a)]."), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).  Indeed, "issuers and underwriters are not sellers within the meaning of Section 12 unless *they actively participate in the negotiations with the plaintiff/purchaser*."  *In Re Violin Memory Sec. Litig.*, No. 13-CV-5486, 2014 WL 5525946, at *18 (N.D. Cal. Oct. 31, 2014) (emphasis added) (citation omitted).  The 4AC is devoid of any allegations that any of the Jump Entities actively negotiated with Plaintiffs any of their purchases of LUNA, UST, or any other "Terra Tokens."

Nor have Plaintiffs alleged that any of the Jump Entities is a "seller" under Section 12(a)(1)'s solicitation theory.  In fact, the 4AC does not allege a single solicitation statement by either Jump Trading, LLC or TMSL.  Count V therefore fails as to those Defendants for that reason alone.  As

for Jump Crypto Holdings LLC, Plaintiffs fail to plead that Jump Crypto Holdings LLC solicited their purchases, as required to state a Section 12(a)(1) claim, for two reasons.

*First*, in *Pinter v. Dahl*, 486 U.S. 622 (1988), the U.S. Supreme Court made clear that Section 12(a)(1) liability "extends only to the person who ***successfully*** solicits the purchase" by Plaintiffs of the alleged security.  *Id.* at 647 (emphasis added); *see In re Tezos Sec. Litig.*, No. 17-cv-06779, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (recognizing that "*Pinter's* 'successfully solicits' standard was an express rejection of older, less exacting 'substantial factor' tests for § 12(a)(1) statutory seller liability").  Here, the 4AC does not allege anywhere that Plaintiffs bought any "Terra Token" because of alleged solicitation by Jump Crypto Holdings LLC.  The complete absence of allegations identifying which specific statements by Jump Crypto Holdings LLC successfully solicited Plaintiffs to buy any of the "Terra Token" requires dismissal of Count V.  *See, e.g.*, *Risley v. Universal Navigation Inc.,* No. 23-1340-cv, 2025 WL 615185, at *3 (2d Cir. Feb. 26, 2025) (affirming district court's dismissal of Section 12(a)(1) claim where there was no allegation that alleged solicitation was successful); *Griffin v. PaineWebber, Inc*., No. 99 CIV. 2292, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (dismissing Section 12(a) claim where complaint failed to allege plaintiff bought securities "as a result of [defendant's] solicitation" and merely "describe[d] solicitation activities by [defendant] as they affected other putative plaintiffs").

*Second*, the 4AC does not plead any actionable solicitation to state a Section 12(a)(1) claim.  "[T]o qualify as solicitation under § 12, a person must 'urge or persuade' another to buy a particular security" even if "those efforts at persuasion [are not] personal or individualized."  *Pino*, 55 F.4th at 1258 (citation omitted).  None of the alleged statements that the 4AC attributes to Jump Crypto Holdings LLC directly (or indirectly via alleged statements by Mr. Kariya) rises to the level of ***urging*** or ***persuading*** one to buy any Terra Token.  Indeed, most of the allegations regarding the Jump Entities' supposed solicitation are either wholly conclusory, *e.g.*, 4AC ¶¶ 11, 53, 147–48, or simply allege Mr. Kariya's posting or reposting on his Twitter account alleged statements about Terra, primarily made by third parties, which Plaintiffs label as "promotions."  *E.g.*, *id.* ¶¶ 152–53,

38

162, 168–69, 170–71, 173–89.[22]

The only alleged statement by Jump Crypto Holdings LLC the 4AC actually identifies as "solicitation for Terra securities" is from an alleged article on Jump Crypto's website that merely mentions "Terra" in a single sentence and describes it as *one of several* digital currencies that allows holders to earn interest through so-called "staking" process. *Id.* ¶ 236. Again, that is not sufficient. A person solicits another's purchase "by urging or persuading another ***to act***." *Meadows v. SEC*, 119 F.3d 1219, 1225 (5th Cir. 1997) (emphasis added). None of the alleged promotional statements the 4AC attributes to Jump Crypto Holdings LLC urged or persuaded anyone to take any action. As such, those allegations do not plead actionable solicitation within the meaning of Section 12(a), especially where, as here, none of the statements are alleged to have been directed to any of the Plaintiffs. *Compare* 4AC ¶¶ 166, 213, 224, 236 *with Pino*, 55 F.4th at 1256 (solicitation sufficiently pled by alleging defendant created (i) YouTube videos stating "you're gonna walk away with a 15% annualized return" and (ii) Instagram posts stating investors "could receive $480,000 in cash flow after investing $1,000,000, achieve 'north of 15% returns after fees,' and obtain a '118% return amounting to 19.6% per year'"); *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1344 (11th Cir. 2022) (solicitation sufficiently pled where defendants allegedly created "extensive U.S. marketing scheme," which included "websites [encouraging] viewers to buy BitConnect coins[, telling] potential investors that passive income was merely 'a click away'—all they needed to do was take

---

[22] *See, e.g.*, *Hollifiel v. Resolute Cap. Partners Ltd.*, No. 22-cv-07885, LLC, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (conclusory allegations that defendants "'engaged in general solicitation' by hosting 'investor seminars, dinners, and radio shows'" insufficiently pled Section 12(a) claim); *Welgus*, 2017 WL 167708, at *19 n.9 ("allegations regarding solicitation [that are] conclusory and not specific to any of the defendants" insufficient to plead solicitation under Section 12(a)); *Underwood v. Coinbase Glob., Inc.*, 654 F. Supp. 3d 224, 239 (S.D.N.Y. 2023), *rev'd in part on other grounds sub nom. Oberlander v. Coinbase Global Inc.*, No. 23-184, 2024 WL 1478773 (2d Cir. Apr. 5, 2024) (allegations that defendant "promote[d] the sale of Tokens by providing users with descriptions of each Token and its purported value proposition, participated in direct promotions, including . . . to increase trading volume, . . . wr[ote] news updates on price movements of the Tokens . . . and link[ed] to stories about the Tokens published across the internet" were collectively insufficient to state actionable solicitation); *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (alleging that defendants marketed securities "through their website and other channels" held insufficient to plead solicitation under Section 12(a)).

'a few minutes' to join BitConnect"); *Harper v. O'Neal*, 746 F. Supp. 3d 1360, 1369 (S.D. Fla. 2024) (solicitation sufficiently pled by alleging defendant "urg[ed] investors to '[h]op on the wave before it's [sic] too late'").

### E.    Plaintiffs' Control Person Liability Claims in Counts VII and VIII Fail.

As a threshold matter, because Plaintiffs' Section 12 claims are time-barred under the statute of repose, so too are their control-person liability claims.[23]  *See, e.g.*, *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642 (S.D.N.Y. 2011), *aff'd in part sub nom. Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ("Section 15 imposes vicarious liability for persons controlling violators of Sections 11 and 12.  Claims under [Section 15] therefore are subject to the statute of repose governing the primary violation."); *see also Brody v. Homestore, Inc.*, No. CV02-08068, 2003 WL 22127108, at *6 (C.D. Cal. Aug. 8, 2003) ("[I]n the absence of § 11 or § 12 liability, there can be no § 15 liability.").  But even if those claims were timely, they still fail because Plaintiffs do not adequately allege that Jump Trading, LLC and Jump Crypto Holdings LLC are control persons with regards to TMSL's alleged failure to register the Terra Tokens.  And Plaintiffs' unsupported claim that Jump Trading, LLC, Jump Crypto Holdings LLC, and TMSL are control persons of TFL, an entirely separate entity, is belied by the 4AC's own allegations, as explained below.

### 1.    Plaintiffs Fail to Allege Primary Violation.

To state a Section 15 claim for control person liability, Plaintiffs must allege that (1) "a primary violation was committed" and (2) "the defendant 'directly or indirectly' controlled the

---

[23] Plaintiffs say they rely on TFL's alleged violation of Section 12(a)(2) as the primary violation for their control person claim in Count VIII.  4AC ¶ 410.  But, as noted above, this appears to be a typographical error, and Plaintiffs presumably intended to allege a Section 12(a)(1) violation.  *Supra* at 9 n.6.  On that basis and for reasons set out above, the Court should apply the first-offered rule to find that Count VIII is barred by the three-year repose period.  According to the SEC's complaint in the SDNY Action, which the 4AC incorporates fully by reference, TFL allegedly engaged in "large-scale unregistered public distribution of LUNA" beginning in April 2018.  4AC, Ex. 1 ¶ 106.  Thus, the repose period for Count VIII expired in April 2021.

violator."[24]  *Paracor*, 96 F.3d at 1161; *accord No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).  For reasons discussed above, Plaintiffs fail to state their claims in Count V.  *See supra* at 38–41.  That failure dooms Plaintiffs' Count VII, which rests on Count V as the alleged primary violation.  4AC ¶¶ 401–07.  Count VIII, which rests on TFL's alleged violation of Section 5 and, as the primary violation, Section 12, *id.* ¶ 410, likewise fails because the 4AC merely and erroneously alleges that Judge Rakoff's decision in the SEC's civil action against TFL "establish[ed] that TFL violated §§ 5 and 12(a)(2) of the Securities Act," *id.* ¶ 404, even though that decision did not address whether TFL violated Section 12 at all.  *See id.* Ex. 2.  Indeed, the SEC's complaint in that case does not include any Section 12 claims.  *See id.* Ex. 1.  Accordingly, the 4AC fails to plead a primary violation for Count VIII.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

### 2.    Plaintiffs Do Not Adequately Allege Control Over TMSL.

Count VII insufficiently alleges that Jump Trading, LLC and Jump Crypto Holdings LLC are liable under Section 15 because they supposedly controlled TMSL.  4AC ¶¶ 401–07.  To state a Section 15 claim against those Defendants, Plaintiffs were required to plead specific facts regarding Jump Trading, LLC's and Jump Crypto Holdings LLC's "authority to exercise decision-making power" over TMSL or their "day-to-day involvement in the operation" of TMSL.  *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *13 (N.D. Cal Jan. 17, 2017).  The 4AC makes no such allegations anywhere.  Instead, it merely alleges that Jump Crypto Holdings LLC wholly owns TMSL, which is not enough.  4AC ¶ 34; *see*, *e.g.*, *Welgus*, 2017 WL 167708, at *13 (alleging defendant was "controlling stockholder" of primary violator insufficient to state control person claim).

The 4AC's conclusory allegation that TMSL "is the alter ego of Jump Crypto and Jump

---

[24] Though *Paracor* addressed claims under Section 20(a) of the Exchange Act, the Ninth Circuit has confirmed that factual analysis of control person liability under Section 15 of the Securities Act is identical to that of Section 20(a) of the Exchange Act.  *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568 n.4 (9th Cir. 1990).

Trading" does not move the needle because courts routinely hold that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." *Doe J.D. v. Broglio*, No. 25-cv-06289, 2025 WL 2988639, at *4 (N.D. Cal. Oct. 23, 2025) (citations omitted). Aside from that, the 4AC merely recites boilerplate allegations of Jump Trading, LLC's and Jump Crypto Holdings LLC's controlling status, 4AC ¶¶ 405–06, which "courts have typically rejected" as insufficient to state a control person claim. *Special Situations Fund III QP, L.P. v. Brar*, No. 14-cv-04717, 2015 WL 1393539, at *10 (N.D. Cal. Mar. 26, 2015); *In re Downey Sec. Litig.,* No. CV 08-3261, 2009 WL 736802, at *15 (C.D. Cal. Mar. 18, 2009) ("merely alleg[ing] that . . . Defendants, by reason of their position . . . had the power to cause . . . the alleged conduct" rejected as "boilerplate [and] insufficient to state a claim for control person liability").

### 3.    Plaintiffs Do Not Adequately Allege Control Over TFL.

Apparently recognizing the fatal deficiencies of their primary violation allegations against the Jump Entities, Plaintiffs attempt to pin liability on them for the alleged securities violations of others. That tactic fares no better. Count VIII asserts a control person claim against all Defendants for TFL's putative failure to register the Terra Tokens as securities. *See* 4AC ¶¶ 408–13. But Plaintiffs cannot bring a control person claim where they fail to allege any facts supporting their conclusory assertions that any of the Jump Entities had actual power or control over TFL.

Plaintiffs' boilerplate allegations that "Jump" "participated in and/or controlled TFL," "had the power and influence and exercised the same to cause the unlawful offer and sale of Terra Tokens securities," and "had the power to direct or cause direction of the management and policies of TFL," *see, e.g., id.* ¶¶ 72, 411–13, are merely a "formulaic recitation of the elements," *see Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (dismissing control person claims where complaint lacked anything "more than 'a formulaic recitation of the elements' of control person liability" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (rejecting as conclusory the allegation that "[b]y virtue of their positions and their power to control public statements about Wells Fargo, the Individual Defendants had the power and ability to control

the actions of Wells Fargo").  And Plaintiffs impermissibly lump all Defendants together, without specifying what power or control each supposedly had over TFL.  The 4AC does not allege with any specificity that, for example, Jump Trading, LLC, Jump Crypto Holdings LLC, or TMSL owned TFL, held any positions of any kind (much less authority) at TFL, or entered into any contracts, agreements, or understandings with TFL conferring power or control.

In addition to being impermissible group pleading, Plaintiffs' conclusory claims of control are undermined by their allegations that the Jump Entities and TFL were separate and that Jump was a business partner of TFL.  *See, e.g.*, 4AC ¶ 14 ("Jump operated as the 'liquidity provider and general business partner' of TFL and Do Kwon."); ¶ 16 ("the partnership between the Defendants, TFL, and Kwon"); ¶ 53 (alleging "Jump . . . partner[ed] with Terraform and Do Kwon"); ¶ 69 (Kwon announced that TFL "agreed to enter a partnership with Jump Trading"); ¶ 157 ("Kariya connected communications employees at [Jump and TFL] to "coordinate efforts between teams," which a Jump employee characterized as "mutually beneficial synergy").  Contrary to Plaintiffs' claims, Kwon's announcement that "Jump will deploy *its own* resources to improve liquidity of Terra and Luna" only shows that the relationship between TFL and the Jump Entities was an arms-length business relationship, not one of control.  *Id.*  ¶¶ 66–69 (emphasis added).

Plaintiffs' remaining allegations draw unsupported conclusions.  Nothing about being a statutory underwriter, which Plaintiffs allege involves "acting as a conduit for the transfer of the securities to the public market," *id.* ¶ 273, illustrates that TMSL (or any other Jump Entity) controlled TFL.  *See In re Stratosphere Corp. Securities Litig.*, 1 F. Supp. 2d 1096, 1122 (D. Nev. 1998) (allegations that statutory underwriter's participation was necessary for sale of securities was "not a sufficient basis for 'control person' liability, which requires the exercise of actual power or influence over a company").  Likewise, alleging "expertise . . . in secondary markets and its ability to provide the required support, liquidity and market making" is not a fact from which one could reasonably infer that any of the Jump Entities "controlled TFL."  4AC ¶ 72.  And that Kwon emailed investors regarding a "liquidity partnership" with Jump simply does not "evidenc[e] Jump's participating in, and control of, Terraform's sales of crypto assets to investors."  *Id.* ¶ 66.

1    At bottom, the 4AC's allegations that the Jump Entities controlled TFL are wholly

2    conclusory; as such, they warrant dismissal of Count VIII. *Pub. Emps.' Ret. Sys.*, 714 F. Supp. 2d

3    at 484 (dismissing control person claim where, aside from boilerplate allegations, complaint merely

4    "indicate[d] that [Defendant] is a wholly separate corporate entity from [the primary violator]").

5    **IV.    CONCLUSION**

6    Plaintiffs are on their Fourth Amended Complaint yet still have not remedied the myriad

7    deficiencies in their allegations, even with the aid of this Court's Opinion on Jump Trading, LLC's

8    Motion to Dismiss the Second Amended Complaint, the SDNY Action trial, the SEC Order, and

9    Kwon's guilty plea. Accordingly, Defendants respectfully request that the Court dismiss the Fourth

10   Amended Complaint in its entirety, with prejudice.

11   Dated: December 23, 2025                    Respectfully submitted,

12                                               KOBRE & KIM LLP

13
                                                 /s/ *Jonathan D. Cogan*
14                                               _____

15                                               Jonathan D. Cogan (admitted *pro hac vice*)
                                                 Steven W. Perlstein (admitted *pro hac vice*)
16                                               Igor Margulyan (admitted *pro hac vice*)
                                                 800 Third Avenue
17                                               New York, New York 10022
                                                 Tel.: +1 212 488 1206
18                                               Fax: +1 212 488 1231
                                                 jonathan.cogan@kobrekim.com
19                                               steven.perlstein@kobrekim.com
                                                 igor.margulyan@kobrekim.com
20

21                                               Daniel Zaheer (Bar ID 237118)
                                                 150 California Street, 19th Floor
22                                               San Francisco, California 94111
                                                 Tel.: +1 415 582 4751
23                                               Fax: +1 415 582 4811
                                                 daniel.zaheer@kobrekim.com
24

25

26

27

28

44

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: +1 202 664 1965
Fax: +1 202 664 1920
erika.berman@kobrekim.com

*Attorneys for Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and Tai Mo Shan Limited*

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NUMBER: 5:22-CV-03600-PCP