**KKL LLP**
Paul M. Krieger (admitted *pro hac vice*)
Rebecca S. Tinio (*pro hac vice* pending)
Jonathan F. Bolz (admitted *pro hac vice*)
Benjamin W. Perotin (admitted *pro hac vice*)
350 5th Avenue, Suite 7710
New York, NY 10018
(212) 390-9550
Paul.Krieger@KKLllp.com
Rebecca.Tinio@KKLllp.com
Jonathan.Bolz@KKLllp.com
Ben.Perotin@KKLllp.com

**KOBRE & KIM LLP**
Daniel A. Zaheer (SBN 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
(415) 582-4751
daniel.zaheer@kobrekim.com

*Counsel for William DiSomma*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK PATTERSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> JUMP TRADING LLC, JUMP CRYPTO HOLDINGS LLC, TAI MO SHAN LTD., KANAV KARIYA, AND WILLIAM DISOMMA, <br><br> Defendants. | Case No. 5:22-cv-03600-PCP <br><br><br> **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

1

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.     Counts V–VIII Are Time Barred ........................................................................ 1

II.    The Complaint Fails to State a Claim for Securities Fraud ................................. 2

   A.    The Complaint Fails to Allege DiSomma Had the Requisite Mental State................... 2

   B.    The Complaint Fails to Allege DiSomma Made Any Misleading Statements or
   Omissions........................................................................................................... 6

III.   The Complaint Fails to State Claims Under Sections 9(a)(2) and (6) ........................... 9

IV.    The Complaint Fails to Allege DiSomma Solicited Plaintiffs' Purchase .................... 10

V.     The Complaint Fails to Adequately Allege That DiSomma Was a Control Person......... 11

CONCLUSION................................................................................................................... 12

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Cesario v. Biocept Inc.*,
  2025 WL 525120 (S.D. Cal. Feb. 18, 2025) ........................................................ 9

*Chiarella v. United States*,
  445 U.S. 222 (1980) .............................................................................................. 5

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................... 8

*Cork v. CC-Palo Alto, Inc.*,
   534 F. Supp. 3d 1156 (N.D. Cal. 2021) ............................................................... 6

*Desai v. Deutsche Bank Secs. Ltd.*,
  573 F.3d 931 (9th Cir. 2009) ................................................................................ 3

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ................................................................................ 5

*Harrington Glob. Opp. Fund, Ltd. v. CIBC World Mkts. Corp.*,
  2023 WL 6316252 (S.D.N.Y. Sept. 28, 2023) ..................................................... 7

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ............................................................................ 7, 11

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2004) ................................................................. 12

*In re Bernard L. Madoff Invs. Sec. LLC*,
  818 F. App'x 48 (2d Cir. 2020) ........................................................................... 12

*In re Charles Schwab Corp. Sec. Litig.*,
  257 F.R.D. 534 (N.D. Cal. 2009) ........................................................................ 11

*In re Daou Sys. Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ............................................................................. 11

*In re Impinj, Inc. Sec. Litig.*,
  414 F. Supp. 3d 1327 (W.D. Wash. 2019) ............................................................ 8

*In re Tezos Sec. Litig.*,
  2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ...................................................... 11

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ................................................................... 8

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
  712 F. Supp. 2d 958 (N.D. Cal. 2010) ................................................................ 12

*In re Am. Realty Cap. Props., Inc. Litig.*,
   2015 WL 6869337 (S.D.N.Y. Nov. 6, 2015) ...................................................... 11

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

*Jackson v. Fischer*,
     931 F. Supp. 2d 1049 (N.D. Cal. 2013) ................................................................................ 9

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
     564 U.S. 135 (2011) ......................................................................................... 7, 8, 9

*Kyung Cho v. UCBH Holdings, Inc.*,
     890 F. Supp. 2d 1190 (N.D. Cal. 2012) ............................................................................... 6

*Mohebbi v. Khazen*,
     50 F. Supp. 3d 1234  (N.D. Cal. 2014) ................................................................................ 5

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
     2017 WL 3187688 (C.D. Cal. Jan. 17, 2017)...................................................................... 8

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
     96 F.3d 1151 (9th Cir. 1996)...................................................................................... 5, 12

*Patterson v. Jump Trading LLC*,
     710 F. Supp. 3d 692 (N.D. Cal. 2024) ................................................................................ 3

*Roy v. Contra Costa County*,
     2015 WL 5698743 (N.D. Cal. Sep. 29, 2015)...................................................................... 2

*Ryan v. FIGS, Inc.*,
     2024 WL 187001 (C.D. Cal. Jan. 17, 2024)........................................................................ 4

*S.E.C. v. Premier Holding Corp.*,
      2022 WL 541194 (9th Cir. Feb. 23, 2022)........................................................................ 6

*S.E.C. v. Terraform Labs Pte. Ltd.*,
     684 F. Supp. 3d. 170 (S.D.N.Y. 2023 .................................................................................. 3

*S.E.C. v. Terraform Labs Pte. Ltd.*,
     708 F. Supp. 3d 450 (S.D.N.Y. 2023) ......................................................................... 3, 4, 6

*S.E.C. v. Uberuaga*,
      2009 WL 10725921 (S.D. Cal. Apr. 2, 2009) .................................................................... 6

*S.E.C. v. Wallace*,
     2017 WL 8230026 (C.D. Cal. May 8, 2017)...................................................................... 10

*Samuels v. Lido Dao*,
     757 F. Supp. 3d 951 (N.D. Cal. 2024) .............................................................................. 10

*Seaman v. Cal. Bus. Bank*,
     2013 WL 5890726 (N.D. Cal. Oct. 30, 2013)..................................................................... 3

*Sharette v. Credit Suisse Int'l*,
     127 F. Supp. 3d 60 (S.D.N.Y. 2015).................................................................................... 9

*United Assoc. Nat'l Pension Fund v. Carvana Co.*,
     759 F. Supp. 3d 926 (D. Ariz. 2024).................................................................................... 8

iv

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

*United States v. Chanu,*
    40 F.4th 528 (7th Cir. 2022)......................................................................................... 7

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.,*
    738 F. Supp. 3d 1182 (N.D. Cal. 2024) ...................................................................... 2

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009)...................................................................................... 12

**Statutes**

15 U.S.C. § 77e............................................................................................................ 10, 11

15 U.S.C. § 78i.............................................................................................................. 9, 10

15 U.S.C. § 78j................................................................................................................... 3

15 U.S.C. § 78l............................................................................................................. 10, 11

15 U.S.C. § 78t.............................................................................................................. 7, 8

18 U.S.C. § 1343............................................................................................................... 7

**Rules and Regulations**

17 C.F.R. § 240.10b-5....................................................................................................... 8

**INTRODUCTION**[1]

Plaintiffs' Opposition fails to meaningfully address the deficiencies in Plaintiffs' claims against DiSomma. Instead of engaging with many of DiSomma's arguments, Plaintiffs spend the bulk of their Opposition reiterating the deficient allegations of the FAC. But repeating these insufficient allegations only serves to highlight Plaintiffs' threshold pleading failures. Where Plaintiffs do attempt a response, they cite plainly inapposite law and misstate the allegations of the FAC. Plaintiffs also devote a significant portion of their Opposition to discussing the SEC's litigation against Terraform and Do Kwon. This is a distraction. Jump is not Terraform and DiSomma is not Kwon. That TFL or Kwon took certain actions or had certain intent is irrelevant to whether the FAC states a claim with respect to *DiSomma*. In fact, the FAC never alleges that DiSomma even communicated with Kwon or anyone at Terraform.

In sum, Plaintiffs fail to state any claim with respect to DiSomma, and the FAC's claims against him should be dismissed with prejudice.

**ARGUMENT**

**I.    Counts V–VIII Are Time Barred**

Plaintiffs fail to respond to DiSomma's argument that Counts V through VIII are untimely. As explained in the Memorandum in Support of DiSomma's Motion to Dismiss ("MTD"), DiSomma was not named as a defendant in this suit until the TAC, filed on January 25, 2024. But by then, the one-year statute of limitations governing Counts V through VIII had already run. *See* MTD at 15; Jump Reply Br. at 3–4. Thus, even in the TAC, Plaintiffs could not have timely asserted Counts V though VIII against DiSomma—and indeed, they have never done so. Nor can Plaintiffs use the relation back doctrine to save these claims against DiSomma. *See* MTD at 15– 16. The only situation in which an amended complaint adding a new defendant relates back to a prior complaint where he was not named is when there was a "mistake concerning identity" that

---

[1] DiSomma incorporates by reference all arguments set forth in Jump's and Kariya's respective Reply Briefs in further support of their motions to dismiss as if fully set forth herein. DiSomma writes separately to highlight Plaintiffs' specific failings with respect to him. Unless otherwise noted, all capitalized terms have the same meaning as in DiSomma's Motion to Dismiss.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

prevented the plaintiff from bringing the action against the correct defendant. *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*, 738 F. Supp. 3d 1182, 1204 (N.D. Cal. 2024) (quotation omitted). Plaintiffs have never alleged in any complaint that a mistake of identity prevented them from adding DiSomma as a defendant, nor do they attempt to make that argument in their Opposition. Plaintiffs merely state that "for the reasons set forth in the Jump Opposition, the relation back doctrine applies." Opp. at 13. But the Jump Opposition makes no mention of Plaintiffs' specific failure to bring timely claims against *DiSomma*.[2] By failing to address this argument in the Opposition, they have waived it. *See, e.g.*, *Roy v. Contra Costa County*, 2015 WL 5698743, at *3 n.7 (N.D. Cal. Sep. 29, 2015) ("When a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail.").

## II.    The Complaint Fails to State a Claim for Securities Fraud

Plaintiffs fail to state a claim in Counts I and II for securities fraud, and both counts should be dismissed with prejudice. As explained in the Jump Reply Brief, Plaintiffs have not identified any actionable misstatements, omissions, or manipulations, and have failed to adequately plead the elements of reliance and loss causation. *See* Jump Reply Br. at 6–12. And as the Kariya Reply Brief explains, Jump's transactions in UST were not securities purchases or sales. Kariya Reply Br. at 4–5. But beyond this, the Opposition's reliance on inapplicable law and mischaracterizations of the FAC only serves to highlight the FAC's deficiencies with respect to DiSomma individually.

### A.    *The Complaint Fails to Allege DiSomma Had the Requisite Mental State*

Crucially, Plaintiffs fail to adequately allege that DiSomma engaged in deceptive or manipulative conduct or acted with scienter. These failures doom both their manipulative acts theory (Count II) and their misstatements or omissions theory (Count I). As explained in the MTD,

---

[2] Jump's Motion to Dismiss and Reply explain why the relation back doctrine also does not save these claims against certain Jump entities. *See* Jump Br. at 10–11; Jump Reply Br. at 4–5. In the Opposition, Plaintiffs do not reference their statute of limitations arguments raised in their Opposition to Kariya's Motion to Dismiss. But even if the Court were to consider these arguments as applied to DiSomma, they still fail for the reasons described in the Kariya Reply Brief at 1–4.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

DiSomma's purported trading decisions would only be manipulative in violation of Section 10(a) or (c) if they were "intended to mislead investors by artificially affecting market activity." *Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) (quotation omitted). As the Court has correctly observed, unless Defendants believed that a $1 price for UST was artificial, Jump's alleged trading could "reflect a benign business decision." *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 717 (N.D. Cal. 2024). Similarly, to make out any of Plaintiffs' securities fraud theories, Plaintiffs must specifically allege scienter—*i.e.*, the factual basis underlying the contention that DiSomma intended to "deceive, manipulate, or defraud." *Seaman v. Cal. Bus. Bank*, 2013 WL 5890726, at *6 (N.D. Cal. Oct. 30, 2013) (quotation omitted). The Opposition's arguments only demonstrate that the FAC fails to make either showing.

Plaintiffs' primary argument regarding DiSomma's state of mind is that he was involved in the May 2021 trading, which they contend was manipulative. Opp. at 3–4. But this contention ignores a key element. Whether DiSomma directed the trading or not, Plaintiffs must sufficiently allege that he did so with the requisite intent to manipulate, which they fail to do. *See* MTD at 10.

Plaintiffs' other arguments regarding DiSomma's mental state are similarly unavailing. Contrary to Plaintiffs' contention, the court in *S.E.C. v. Terraform Labs Pte. Ltd.*, No. 23-cv-1346 (S.D.N.Y.), never concluded that DiSomma or Jump engaged in deceptive conduct. Plaintiffs claim that in that case—in which Jump's, let alone DiSomma's, intent was never at issue—the court "found that TFL's secret deal [with Jump] to buy up UST and rescue the peg was quintessential 'deceptive conduct.'" Opp. at 3. Not so. In support of this proposition, Plaintiffs cite the portion of Judge Rakoff's decision on the motion to dismiss where he recites the SEC's allegations, rather than any findings. *See id.* (citing *S.E.C. v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 183 (S.D.N.Y. 2023)). Nowhere in that decision did the court find Jump's conduct to be "quintessential 'deceptive conduct'" as Plaintiffs claim. They also cite Judge Rakoff's summary judgment opinion. *See* Opp. at 3 (citing *S.E.C. v. Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 478 (S.D.N.Y. 2023)). Again, the portion of that decision Plaintiffs cite is Judge Rakoff's recitation of the SEC's theories, not his findings. *Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d at

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

478. And they cannot cite his findings because Judge Rakoff merely concluded that there were disputed questions of fact. *Id.* at 479–82. But even if Judge Rakoff had concluded that Kwon and TFL had acted with scienter based on a different set of facts, different allegations, and a different record, that would not bear on whether DiSomma, whom the SEC chose not to sue, shared that scienter. Ultimately, neither Judge Rakoff nor the jury in the *Terraform* trial passed any judgment on Jump's or DiSomma's scienter or manipulative intent, so those decisions cannot prop up scienter or manipulative intent here. *See Ryan v. FIGS, Inc.*, 2024 WL 187001, at *9 (C.D. Cal. Jan. 17, 2024) (finding that evidence of scienter of two defendants could not be imputed to remaining defendants under the heightened particularity requirements of the PSLRA and group pleading doctrine).

Plaintiffs also point to the FAC's allegation that DiSomma did not direct trading until Jump negotiated more favorable vesting terms with Kwon. Opp. at 3–5, 13 (contending that this allegation demonstrates DiSomma was not pursuing an arbitrage opportunity, but instead had manipulative intent). This argument fails on two grounds.

*First*, that Jump is alleged to have negotiated more favorable terms for a contract does not mean DiSomma believed that UST was worth less than $1 or that trading in UST would send a false statement to the market. As set forth in the MTD, all of the allegations regarding this supposed quid pro quo were drawn from the testimony of James Hunsaker in the TFL Trial. While there are various reasons to doubt Hunsaker's account, *see* MTD at 10–11, Hunsaker himself testified that DiSomma was pursuing an "arbitrage opportunity" in his trading. *Id.* at 8–9. Plaintiffs ignore all of this in the Opposition. Moreover, Plaintiffs do not explain how the alleged modification of the vesting terms establishes manipulation. Jump may have taken the opportunity to renegotiate their contract *and* pursue an arbitrage opportunity. Plaintiffs offer no reason why both things cannot be true. In sum, Plaintiffs cannot transform their conclusory allegations about these otherwise ordinary business activities merely by labelling them "deceptive" or "fraudulent." *See Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1251–52 (N.D. Cal. 2014) (dismissing claim based

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

on "little more than a series of cursorily pleaded statements" where plaintiff merely "repeatedly uses the words 'fraud' and 'defrauded' to describe the [defendant's alleged] conduct").

*Second*, as described in the MTD, the fact that Jump and DiSomma allegedly sought to acquire LUNA at a time when UST's price was declining weighs *against* scienter. *See* MTD at 12–13. Plaintiffs offer no explanation for why Jump would choose to invest millions of dollars in an ecosystem DiSomma supposedly knew was fraudulent or artificially inflated. *See id.* at 12–13.

Plaintiffs' other scattershot allegations regarding DiSomma's mental state are also insufficient. They allege that DiSomma's scienter was "motivated by his ability to profit handsomely rather than allowing the Terra ecosystem to collapse." Opp. at 5; *see also id*. at 6–7. But "evidence of a personal profit motive on the part of officers and directors . . . is insufficient to raise a strong inference of scienter." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008). Plaintiffs also claim that DiSomma's scienter is demonstrated by his failure to disclose Jump's role in the May 2021 trading. *See* Opp. at 6–7. But as explained in the Jump Brief and Reply Brief, DiSomma was not under a duty to disclose anything. *See* Jump Br. at 19–21; Jump Reply Br. at 6–7. Plaintiffs' argument to the contrary is that because "DiSomma knew the algorithm failed" and "[t]he market did not[,]" he was under a duty to disclose this information. Opp. at 6. But even assuming those allegations are true—and they are not—a "duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information." *Chiarella v. United States*, 445 U.S. 222, 235 (1980) (quotation omitted). "[T]he parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship . . . or circumstances such that one party has placed trust and confidence in the other." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1157–58 (9th Cir. 1996). Plaintiffs do not allege in the FAC or attempt to argue in their Opposition that DiSomma was in a special position of trust that might create such a duty. *See id*. Therefore, DiSomma's failure to disclose Jump's trading does not support an inference of scienter or manipulative intent.[3]

---

[3] Moreover, if scienter could be found merely by a failure to disclose information, the element of scienter would collapse in an omissions case. Plaintiffs cite no law for this radical proposition.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

Plaintiffs also claim that DiSomma's scienter is demonstrated by his invocation of the Fifth Amendment in the *Terraform* trial. They are wrong. They point to Judge Rakoff's discussion of DiSomma's invocation during the *Terraform* trial and *S.E.C. v. Premier Holding Corp.*, 2022 WL 541194 (9th Cir. Feb. 23, 2022). *See* Opp. at 12. Both these decisions stand for the uncontroversial proposition that an adverse inference can be drawn from a party's invocation of the Fifth Amendment during discovery in that action, or that it may render a witness unavailable. *See Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d at 480; *Premier Holding Corp.*, 2022 WL 541194, at *1. That is a separate question from whether an invocation in a separate proceeding can be used to demonstrate scienter in an action filed years later. As the MTD explains, courts have found that a plaintiff cannot plead scienter "merely because the defendants invoked the Fifth Amendment during [an SEC investigation]." *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203–04 (N.D. Cal. 2012); MTD at 9–10.

All of Plaintiffs' allegations regarding DiSomma's mental state fall far short of the high bar imposed by Rule 9 and the PSLRA. This alone requires dismissal of Counts I and II.

## B. *The Complaint Fails to Allege DiSomma Made Any Misleading Statements or Omissions*

In an attempt to rehabilitate their argument that DiSomma made misleading statements or omissions, Plaintiffs' Opposition misstates the FAC and the law. Plaintiffs do not seriously argue that DiSomma personally made a misleading statement. Instead, the Opposition advances three theories: (i) Jump's trading itself was a misstatement, (ii) DiSomma is primarily liable for statements made by Kariya and others, and (iii) DiSomma was under a duty to disclose information. All three theories fail.

*First*, the Opposition attempts to recast Jump's trading as a misstatement to the market. Opp. at 7. But Plaintiffs do not make that allegation in the FAC. *See* Dkt. 176-4. It cannot be added now. *See Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 n.8 (N.D. Cal. 2021). Moreover, this theory is belied by Plaintiffs' repeated allegation that Jump's trading was "obscur[ed]" and not visible to the market. Opp. at 4; *see also id.* at 6. And even if Plaintiffs *had*

alleged this theory, it would fail because Plaintiffs do not explain how Jump's trades could be a misstatement.  At most, the trades broadcast that Jump was willing to buy UST at a certain price, which was true.[4]  *See also* Jump Br. at 31.

*Second*, having failed to allege DiSomma himself made a misstatement, Plaintiffs attempt to argue that "he had authority over the content of the statements at issue and how those statements were communicated."  Opp. at 8–9 (citing *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 141 (2011)).[5]  Tellingly, Plaintiffs do not cite any allegation that DiSomma had any role in reviewing, preparing, or otherwise making any of the alleged misstatements at issue, as they must to state a claim.  *See* MTD at 6–7.  This is unsurprising, given the FAC is devoid of such allegations.  Instead, Plaintiffs cite FAC ¶¶ 95, 152–55, and 225–27 to claim they have sufficiently alleged that "DiSomma played an active role" in making misstatements.  Opp. at 8.  But these paragraphs do not even mention DiSomma.  Plaintiffs also cite their conclusory allegations that DiSomma was a control person under Section 20(a) to support their claim that DiSomma was the "maker" of statements that were made by others.  *See* Opp. at 8 (citing FAC ¶¶ 380–84).[6]  As described below, those allegations fail to state a claim under Section 20(a).  *See infra* Section V.

---

[4]  Moreover, the argument that purchases or sales of securities themselves can be *misrepresentations* under Section 10(b) is unproven at best.  Generally, such allegations are brought in factually distinct circumstances and under different legal theories.  *See, e.g.*, *Harrington Glob. Opp. Fund, Ltd. v. CIBC World Mkts. Corp.*, 2023 WL 6316252, at *5 (S.D.N.Y. Sept. 28, 2023) (alleging defendant's "spoofing" trades were "manipulative acts" that violated Section 10(b)); *United States v. Chanu*, 40 F.4th 528, 540 (7th Cir. 2022) (finding that "spoofing" was a "scheme to defraud" under 18 U.S.C. § 1343).

[5] For the reasons discussed in the Jump Brief and Jump Reply Brief, none of these purported misstatements are misleading or otherwise actionable.  *See* Jump Br. at 13–21; Jump Reply Br. at 6–8.

[6] Plaintiffs also cite *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021), in support of their argument that "each statement from Jump was made only with DiSomma's approval."  Opp. at 9.  *Alphabet* cannot provide any factual support for that statement.  And it is also legally inapposite.  The portion of *Alphabet* Plaintiffs quote relates to what is required for a defendant to be a control person under Section 20(a), not whether a defendant is the "maker" of a statement under *Janus*.  Plaintiffs also point to language from *Alphabet* regarding the liability for persons who "disseminate false or misleading statements to potential investors."  Opp. at 8 (quoting *Alphabet*, 1 F.4th at 699).  This is irrelevant, as DiSomma is not alleged to have disseminated any false or misleading statements.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

But even if these allegations established that DiSomma was a control person under Section 20(a), they do not make DiSomma liable as a primary violator. That is a different test.

Plaintiffs' argument is squarely at odds with the Supreme Court's decision in *Janus*, in which the Court found that an investment advisor that was "significantly involved in preparing" misstatements by an affiliate was not a "maker" of those misstatements because the advisor lacked the "ultimate authority" over them. *Id.* at 141, 148. Courts have explicitly distinguished the Section 20(a) control person inquiry from "the 'maker' inquiry under *Janus* and Rule 10b-5." *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, at *7 (C.D. Cal. Jan. 17, 2017). Indeed, courts have repeatedly held that the mere fact a defendant is a senior executive, member of the board, or owner of a company does not in and of itself mean they are a "maker" of any statement promulgated by the company or its executives absent allegations they were personally involved. *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1071 (N.D. Cal. 2012) (dismissing misstatement claim based on allegation that the defendant Board Chairman was one of the persons with "ultimate authority" over statements made by the company by virtue of his position because that allegation was "too attenuated" to make him a "maker" of the statement); *In re Impinj, Inc. Sec. Litig.*, 414 F. Supp. 3d 1327, 1335 (W.D. Wash. 2019) (finding allegations based on COO's "position in the company and his power to control and/or opportunity to prevent/correct corporate misstatements" insufficient to make him a "maker" of statements made by other executives); *United Assoc. Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 951 (D. Ariz. 2024) (finding controlling shareholder was not a "maker" of misstatements by company and its executives); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 206–07 (S.D.N.Y. 2022) (similar).

Plaintiffs also allege that DiSomma "authorized Kariya to serve as frontman for Jump's cryptocurrency trading division" and Kariya made statements "pursuant to DiSomma's explicit grant of authority." Opp. at 9. This misstates the FAC, which never alleges that DiSomma "authorized" or granted Kariya authority to make any particular statements. Even if the FAC made those allegations, the argument that one executive can be held liable for statements made by

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

another has been repeatedly rejected by *Janus* and its progeny. *See, e.g.*, *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1060 (N.D. Cal. 2013) (finding director and officer defendants did not "make" the misstatement published by others even if they were the sources of the information in that misstatement); *Cesario v. Biocept, Inc.*, 2025 WL 525120, at *14 (S.D. Cal. Feb. 18, 2025) (finding officer defendants were not makers of statements made in press releases or other documents given the lack of particularized allegations of their involvement in those statements).

Finally, Plaintiffs argue that DiSomma was under "a duty to disclose, but chose to keep investors in the dark." Opp. at 8. As the Jump Brief and Reply Brief explain, and as set forth above, Plaintiffs are wrong. *See* Jump Br. at 19–21; Jump Reply Br. at 6–7; *supra* at 5. In support of their position, Plaintiffs point to cases where a defendant's public statements triggered a duty to disclose. *See* Opp. at 8. But these cases are irrelevant, given that DiSomma did not make any public statements.

In sum, Plaintiffs' securities fraud claims (Counts I and II) have multiple threshold failings with respect to DiSomma that necessitate dismissal.

## III. The Complaint Fails to State Claims Under Sections 9(a)(2) and (6)

Plaintiffs' defense of their Section 9(a)(2) and (6) claims fares no better.

*First*, as described in the MTD, the FAC does not allege that DiSomma traded with the intent to raise the price of UST to an artificial level, as is required to state a claim under Section 9(a). *See* MTD at 13–14. In response, Plaintiffs merely repeat their allegation from the FAC that "DiSomma personally approved Jump's participation in the manipulation of UST and directed Jump traders to trade UST surreptitiously to restore the peg, including by offering to purchase UST at prices higher than the market price." Opp. at 13. But as the MTD explains, that assertion is insufficient to state a claim under Section 9(a). MTD at 13–14. Section 9(a) does not "prohibit market transactions that raise or lower the price of securities." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 77 (S.D.N.Y. 2015). It only prohibits trading with the purpose to "*artificially* raise[] the price" or "*artificially* inflate[] trading volume in furtherance of a scheme to induce buyers to purchase the securities." *S.E.C. v. Wallace*, 2017 WL 8230026, at *4 (C.D. Cal. May 8,

9

2017) (emphasis added). Plaintiffs simply do not allege that DiSomma believed $1 was an artificial price for UST. *See* MTD at 13–14; *supra* Section I.A. Accordingly, even crediting their allegation that Jump's trading increased the price of UST, Plaintiffs have not alleged that it was done with the purpose of increasing the price to what DiSomma believed was an artificial level, which is necessary to state a claim under Section 9(a). *See* MTD at 13–14; *Wallace*, 2017 WL 8230026, at *4.

*Second*, Plaintiffs state that "DiSomma is also alleged to have authorized Jump's solicitations and promotional efforts to distribute Terra Tokens to retail investors like Plaintiffs and the putative class." Opp. at 13. This argument is a non-sequitur. Even if Plaintiffs' assertion were true and non-conclusory (and it is not, as described below), Sections 9(a)(2) and (6) only prohibit certain *transactions* in securities. *See* 15 U.S.C. § 78i(a)(2), (6). These sections do not prohibit or limit solicitation or promotional efforts. *See id.*

Plaintiffs also fail to address the MTD's argument that the FAC does not identify any SEC rule that DiSomma allegedly violated by the relevant trading, which is required to make out a Section 9(a)(6) claim. 15 U.S.C. § 78i(a)(6); *see also* MTD at 14. Plaintiffs have thus waived responding to this argument, requiring dismissal of their Section 9(a)(6) claim.

Therefore, Plaintiffs' Section 9(a)(2) and (6) claims against DiSomma should be dismissed.

## IV.    The Complaint Fails to Allege DiSomma Solicited Plaintiffs' Purchase

Plaintiffs' defense of their Section 5 and 12 claims contradicts well-established law. As discussed in the MTD, a defendant can only be liable under those sections if they passed title of the security to the plaintiff or they successfully solicited plaintiff. *See* MTD at 17; *Samuels v. Lido Dao*, 757 F. Supp. 3d 951, 968 (N.D. Cal. 2024). Plaintiffs do not allege in either the FAC or their Opposition that DiSomma passed title to them. Instead, Plaintiffs argue that the FAC sufficiently alleged that DiSomma solicited their purchase. *See* Opp. at 13–14.

Plaintiffs are incorrect. As described in the Jump Reply Brief, none of the alleged communications were solicitations. *See* Jump Reply Br. at 17–19. But even if they were, Plaintiffs must still adequately allege that *DiSomma* was "directly involved in the actual solicitation of a

10

securities purchase." *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (quoting *In re Daou Sys. Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005)).  Plaintiffs claim that "[a]ny of the many promotions or marketing materials disseminated by Jump containing solicitations are attributable to DiSomma."  Opp. at 14.  Plaintiffs tellingly do not include any citation for this sweeping assertion.  That is because it is not the law.  To establish liability based on solicitation, Plaintiffs must show that DiSomma was "directly involved in the actual solicitation of a securities purchase." *In re Tezos Sec. Litig.*, at *9 (*quoting In re Daou Sys. Inc.*, 411 F.3d at 1029); *see also In re Am. Realty Cap. Props., Inc. Litig.*, 2015 WL 6869337, at *3 (S.D.N.Y. Nov. 6, 2015) (finding complaint did not establish board of directors defendants were statutory sellers because it was "largely silent as to the role played by [defendants] in the solicitation" of the securities at issue).[7]  But Plaintiffs do not make this allegation.  *See* MTD at 17–18.  As a factual matter, Plaintiffs do not point to a single allegation in the FAC that DiSomma had *any* involvement or even knowledge of the alleged solicitations.  That is not surprising, because the FAC does not make such an allegation.  The Court should dismiss the Section 5 and 12 claims against DiSomma.

## V.   The Complaint Fails to Adequately Allege That DiSomma Was a Control Person

Plaintiffs' control person claims also fail.  Plaintiffs argue that DiSomma was a control person of TFL because "he was able to negotiate highly favorable terms for Jump and himself" with TFL.  Opp. at 16.  This theory is unmoored from both the allegations of the FAC and the law.  The FAC does not allege that DiSomma negotiated any terms of any deal with TFL.  On the contrary, it alleges that *Kariya* negotiated with TFL.  FAC ¶ 112.  And even if Kariya's actions could be imputed to DiSomma, Plaintiffs do not cite any law for their assertion that the mere fact a party enters into a favorable contract renders them a control person of their counterparty.  Plaintiffs must show "the defendant exercised actual power or control over the primary violator,"

---

[7] The two cases cited by Plaintiffs later in their Opposition are inapposite.  Both deal with whether a party could be held liable as a control person. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 702; *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009).  *Alphabet* did not even involve Section 5 or 12.  And neither case remotely stands for the proposition for which Plaintiffs cite them.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP

not that they simply did business together. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (quotation omitted); *see also In re Bernard L. Madoff Invs. Sec. LLC*, 818 F. App'x 48, 56 (2d Cir. 2020) (finding that allegations that purported control person and primary violator were "close, both personally and as business associates" was a "far cry" from adequately alleging control). The Court should reject Plaintiffs' factually and legally unfounded theory.

Plaintiffs also fail to state a control person claim against DiSomma with respect to any of the Jump entities. Plaintiffs' allegations of control are principally based on: (1) DiSomma's senior position at Jump; and (2) his alleged role with respect to the May 2021 trading. *See* Opp. at 16–18. But as both the MTD and the Jump Brief explain, these allegations are insufficient to state a control person claim. *See* MTD at 19; Jump Br. at 41; *see also In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 970 (N.D. Cal. 2010) (finding allegation that defendant influenced certain transactions of primary violator insufficient to plead defendant was a control person generally); *Paracor Fin., Inc.*, 96 F.3d at 1162 (stating that the control inquiry "must revolve around the 'management and policies' of the corporation, not around discrete transactions"); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 495 (S.D.N.Y. 2004) ("[A] parent corporation and its subsidiary generally are regarded as legally distinct entities absent a veil-piercing analysis, and so it is not entirely clear that [alleged control person's] position as CEO of the parent company suffices to establish his control person status over the subsidiary").

Plaintiffs' citations to the SEC's cease-and-desist order against TMSL and the *Terraform* case are red herrings. Opp. at 18. The SEC has never instituted proceedings against DiSomma and neither the SEC nor any court has found him to be a control person of TMSL (or any other entity). Plaintiffs' arguments are smoke screens that do nothing to rehabilitate Plaintiffs' deficient FAC. Accordingly, the Court should dismiss the control person claims (Counts IV, VII, and VII) against DiSomma.

## CONCLUSION

For each of the foregoing reasons, DiSomma respectfully requests that the Court dismiss the FAC's claims against him with prejudice.

Dated: March 25, 2026          Respectfully submitted,

**KKL LLP**

/s/ *Paul M. Krieger*
Paul M. Krieger (admitted *pro hac vice*)
Rebecca S. Tinio (*pro hac vice* pending)
Jonathan F. Bolz (admitted *pro hac vice*)
Benjamin W. Perotin (admitted *pro hac vice*)
350 5th Avenue, Suite 7710
New York, NY 10018
(212) 390-9550
Paul.Krieger@KKLllp.com
Rebecca.Tinio@KKLllp.com
Jonathan.Bolz@KKLllp.com
Ben.Perotin@KKLllp.com

Daniel A. Zaheer (SBN 237118)
Kobre & Kim LLP
150 California Street, 19th Floor
San Francisco, CA 94111
(415) 582-4751
daniel.zaheer@kobrekim.com

*Counsel for Defendant William DiSomma*

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) – 5:22-CV-03600-PCP