KOBRE & KIM LLP
Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: +1 212 488 1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com

Daniel A. Zaheer (SBN 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: +1 415 582 4751
daniel.zaheer@kobrekim.com

[Additional Counsel on Signature Page]

*Attorneys for Defendants Jump Trading,
LLC, Jump Crypto Holdings LLC, and Tai
Mo Shan Limited*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| NICK PATTERSON, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>JUMP TRADING LLC, JUMP CRYPTO HOLDINGS LLC, TAI MO SHAN LTD., KANAV KARIYA, AND WILLIAM DISOMMA,<br><br>Defendants. | Case No. 5:22-cv-03600-PCP<br><br>**DEFENDANTS JUMP TRADING, LLC, JUMP CRYPTO HOLDINGS LLC, AND TAI MO SHAN LIMITED'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Honorable P. Casey Pitts<br>Hearing Date: May 7, 2026, 10:00am |

**TABLE OF CONTENTS**

I.    Plaintiffs' Reliance on Group Pleading and Failure to Make Specific Allegations Against Each Jump Entity Requires Dismissal.................................................................................. 2

II.   Plaintiffs Cannot Avoid Dismissal of Their Untimely Claims Against Jump Crypto Holdings LLC and TMSL ................................................................................................. 3

      A.   Plaintiffs Fail to Show Any of Their Claims Were Timely When They Filed Their Fourth Amended Complaint.............................................................................................. 3

      B.   Relation-Back Doctrine Does Not Save Plaintiffs' Untimely Claims............................. 4

III.  Plaintiffs Do Not Adequately Allege Fraud Through Misstatements or Omissions....... 5

      A.   Plaintiffs Have Not Identified a Single Actionable Misstatement or Omission............... 6

      B.   The Allegations Do Not Lead to a Compelling Inference of Scienter ............................. 8

      C.   Plaintiffs Have Not Pleaded That They Relied On The Alleged Misstatements.............. 9

      D.   Plaintiffs Do Not Allege That The Purported Misstatements Caused Their Losses ...... 10

IV.   Plaintiffs Have Not Remedied the Flaws in Their Section 10(b) Manipulation Claim  11

V.    Plaintiffs' Section 9 Claims Are Deficient ........................................................................ 14

VI.   Plaintiffs' Section 12 and Section 15 Claims Fail............................................................. 15

      A.   Plaintiffs Cannot Circumvent the Statute of Repose for Section 12 and 15 Claims ...... 16

      B.   Plaintiffs Fail to Show They Adequately Pled the Statutory Seller Element ................. 17

VII.  Plaintiffs Do Not Adequately Allege Control Over Any Violation by TMSL or TFL.. 19

VIII. Conclusion ........................................................................................................................... 20

**TABLE OF AUTHORITIES**

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
  785 F. Supp. 2d 799 (N.D. Cal. 2011) ................................................................................. 13, 14

*Baker v. Seaworld Ent., Inc.*,
  2016 WL 2993481 (S.D. Cal. Mar. 31, 2016)............................................................................ 17

*CFTC v. Wilson*,
  2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ........................................................................... 13

*Chemetron Corp. v. Bus. Funds, Inc.*,
  682 F.2d 1149 (5th Cir. 1982).................................................................................................... 14

*Crane Co. v. Westinghouse Air Brake Co.*,
  419 F.2d 787 (2d Cir. 1969) ................................................................................................. 12, 13

*Desai v. Deutsche Bank Sec. Ltd.*
  573 F.3d 931 (9th Cir. 2009)................................................................................................ 10, 14

*Fezzani v. Bear, Stearns & Co. Inc.*,
  716 F.3d 18 (2d Cir. 2013).......................................................................................................... 14

*Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*,
  675 F.3d 1047 (7th Cir. 2012)....................................................................................................... 7

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023)..................................................................................................... 8, 9

*Glob. Gaming Phil., LLC v. Razon*,
  2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ............................................................................ 2–3

*Goldstein v. Regal Crest, Inc.*,
  62 F.R.D. 571 (E.D. Pa. 1974) ................................................................................................... 15

*Hamilton v. City of Berkeley*,
  2014 WL 547067 (N.D. Cal. Feb. 7, 2014)................................................................................... 4

*Hildes v. Arthur Andersen LLP*,
  2015 WL 11199825 (S.D. Cal. May 15, 2015) ........................................................................... 16

*Houghton v. Leshner*,
  2023 WL 6826814 (N.D. Cal. Sept. 20, 2023)............................................................................ 19

*In re Bank of Am. Corp.*,
  2011 WL 740902 (N.D. Cal. Feb. 24, 2011)......................................................................... 10, 13

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020)....................................................................................................... 11

iii

*In re Citigroup Auction Rate Sec. Litig.*,
  700 F. Supp. 2d 294 (S.D.N.Y. 2009)........................................................................ 14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  490 F. Supp. 2d 784 (S.D. Tex. 2007) ....................................................................... 13

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015)............................................................................. 7

*In re Rexplore, Inc. Sec. Litig.*,
  685 F. Supp. 1132 (N.D. Cal. 1988) ............................................................................ 5

*In re Syntex Corp. Sec. Litig.*,
  855 F. Supp. 1086 (N.D. Cal. 1994) ............................................................................ 5

*In re Tezos Sec. Litig.*,
  2018 WL 4293341 (N.D. Cal. Aug. 7, 2018)............................................................. 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2 F.4th 1199 (9th Cir. 2021)....................................................................................... 10

*Jones v. Mathews*,
  2018 WL 9878317 (C.D. Ill. Dec. 11, 2018) ............................................................... 5

*Junge v. Geron Corp.*,
  2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) ......................................................... 10–11

*Kwai Fun Wong v. Beebe*,
  732 F.3d 1030 (9th Cir. 2013)..................................................................................... 16

*Kyung Cho v. UCBH Holdings, Inc.*,
  890 F. Supp. 2d 1190 (N.D. Cal. 2012) ...................................................................... 13

*Lorenzo v. SEC*,
  587 U.S. 71 (2019) ...................................................................................................... 10

*Louisiana-Pac. Corp. v. ASARCO, Inc.*,
  5 F.3d 431 (9th Cir. 1993)............................................................................................. 5

*Miguel v. Country Funding Corp.*,
  309 F.3d 1161 (9th Cir. 2002) ..................................................................................... 16

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989) ................................................................................... 2

*Nite & Day Power Techs. v. Corp. Cap. Res., Inc.*,
  1995 WL 7942 (N.D. Cal. Jan. 5, 1995) ....................................................................... 5

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
  *730* F.3d 1111 (9th Cir 2013)..................................................................................... 14

iv

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
2023 WL 9102400 (S.D.N.Y. Dec. 29, 2023)..................................................................14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ..........................................................................................................8

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
96 F.3d 1151 (9th Cir. 1996)............................................................................................6

*Perry v. Eastman Kodak Co.*,
962 F.2d 10 (7th Cir. 1992)............................................................................................15

*Pino v. Cardone Cap.*,
55 F.4th 1253 (9th Cir. 2022)............................................................................. 17, 18, 19

*Pinter v. Dahl*,
486 U.S. 622 (1988) ........................................................................................... 17, 18, 19

*Ploss v. Kraft Foods Grp., Inc.*,
197 F. Supp. 3d 1037 (N.D. Ill. 2016) ...........................................................................13

*Pratt v. Gamboa*,
2020 WL 2512407 (N.D. Cal. May 15, 2020) .................................................................5

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*,
342 A.3d 402 (Del. Ch. 2025).........................................................................................2

*Rothschild v. Pac. Companies*,
2025 WL 3043356 (N.D. Cal. Oct. 31, 2025)..................................................................5

*Samuels v. Lido Dao*,
757 F. Supp. 3d 951 (N.D. Cal. 2024) ......................................................................18, 19

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015)..........................................................................10

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*,
12 F.4th 337 (3d Cir. 2021)............................................................................................16

*Shaffer v. Heitner*,
433 U.S. 186 (1977) ..........................................................................................................2

*Smolen v. Deloitte, Haskins & Sells*,
921 F.2d 959 (9th Cir. 1990)..........................................................................................18

*Tivoli LLC v. Sankey*,
2015 WL 12683801 (C.D. Cal. Feb. 3, 2015)..................................................................2

*Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*,
288 F.3d 405 (9th Cir. 2002)..........................................................................................16

v

*United States ex rel. Osinek v. Permanente Med. Grp., Inc.*,
  2022 WL 16943886 (N.D. Cal. Nov. 14, 2022)................................................................ 16

*Volvo Const. Equip. Rents, Inc. v. NRL Rentals, LLC*,
  614 F. App'x 876 (9th Cir. 2015)...................................................................................... 2

*Wang v. Zymergen Inc.*,
  744 F. Supp. 3d 995 (N.D. Cal. 2024) ............................................................................ 20

*Webster v. Omnitrition Int'l, Inc.*,
  79 F.3d 776 (9th Cir. 1996)................................................................................................ 4

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 167708 (N.D. Cal. Jan. 17, 2017) .................................................................. 20

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ................................................................ 17

*Winkelman v. Blyth & Co.*,
  518 F.2d 530 (9th Cir. 1975)......................................................................................... 3–4

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*,
  65 F.4th 459 (9th Cir. 2023).............................................................................................. 3

*Zagami v. Cellceutix Corp.*,
  2016 WL 3199531 (S.D.N.Y. June 8, 2016)................................................................. 6–7

Plaintiffs' Opposition confirms what their Fourth Amended Complaint ("4AC") makes plain:  After five complaints, this Court's detailed guidance on the deficiencies of the Second Amended Complaint ("SAC"), a fully litigated SEC enforcement action against TFL, and the criminal conviction of Do Kwon, Plaintiffs still cannot identify a single actionable misstatement by Jump Trading, LLC, Jump Crypto Holdings LLC, or Tai Mo Shan Limited ("TMSL") (together "Jump Entities").  Nor can they put forward a single fact from which it could reasonably be inferred that any Jump Entity did not genuinely believe UST was worth $1 when it supposedly manipulated the UST market in May 2021 to help restore the peg—the very inference this Court found wanting when it dismissed the SAC.  To compound matters, their claims against TMSL and Jump Crypto Holdings LLC are time-barred as Plaintiffs were fully aware of both entities and the relevant alleged conduct well within the applicable limitations periods, foreclosing any resort to the relation-back doctrine.  Rather than address these deficiencies, the Opposition largely ignores them, recycling the same group-pled and conclusory allegations this Court has already rejected, relying on non-actionable opinions and statements made by others, injecting allegations found nowhere in the 4AC, and asking the Court to draw inferences the pleaded facts do not support.

Plaintiffs' failure is most glaring on loss causation.  Even if one accepts that the market was initially deceived into believing UST's algorithm would always work to maintain the $1 peg without intervention, Plaintiffs' own allegations establish that the market knew by early 2022, through the public announcement of the Luna Foundation Guard ("LFG") and statements made by Mr. Kariya, that external support would sometimes be needed.  Plaintiffs purchased only *after* that announcement.  They cannot claim the risk of intervention was concealed from them when the public record told them precisely the opposite, which forecloses their materialization of risk theory of causation.  Nor do they allege any disclosure that revealed the Jump Entities' supposed May 2021 intervention and caused a contemporaneous price drop, dooming their corrective disclosure theory of causation.  Plaintiffs' wholesale failure to plead a viable loss causation theory is fatal.

After five attempts and the benefit of more litigation ammunition than most plaintiffs ever receive, Plaintiffs' claims remain hopelessly defective at every turn.  They do not deserve a sixth

1

bite at the apple.  The 4AC should be dismissed with prejudice.

**I.     Plaintiffs' Reliance on Group Pleading and Failure to Make Specific Allegations Against Each Jump Entity Requires Dismissal**

As detailed in the Jump Entities' Motion to Dismiss, the 4AC is riddled with impermissible group pleading.  *E.g.*, Mot. at 16, 22, 30, 32, 35, 43.  Plaintiffs acknowledge their group pleading in their Opposition but insist it is justified because "collective allegations" may be used to describe the actions of multiple defendants who "are alleged to have engaged in precisely the same conduct."  Opp'n at 13–14.  But their collective allegations extend well beyond those in which each defendant is accused of engaging in the exact same conduct.  Rather, they include allegations regarding specific intent, the making of specific statements, and the execution of specific trades.  *See, e.g.*, 4AC ¶¶ 10, 19, 62, 93, 97, 101, 340(g), 345, 346–349, 352, 353.  Plaintiffs cannot seriously contend that each defendant collectively made the exact same statements or trades.  Thus, these are not allegations where "it is entirely possible that the allegations of wrongdoing are intended to include each and every" defendant.  *See Tivoli LLC v. Sankey*, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015).

Further, Plaintiffs' insufficient alter ego claims cannot excuse their improper group pleading.  As Jump Trading, LLC and Jump Crypto Holdings LLC are Delaware entities and TMSL is a Cayman entity, Delaware and Cayman law applies to this analysis under the internal affairs doctrine.  *Shaffer v. Heitner*, 433 U.S. 186, 215 n.44 (1977); *Volvo Const. Equip. Rents, Inc. v. NRL Rentals, LLC*, 614 F. App'x 876, 879 (9th Cir. 2015).  Under Delaware law, veil piercing is appropriate only when the entity "exist[s] for no other purpose than as a vehicle for fraud" and plaintiff further pleads "an overall element of injustice or unfairness"—a "difficult task."  *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416–17 & n.86 (Del. Ch. 2025) ("[v]eil piercing is a tough thing to plead and a tougher thing to get").  Plaintiffs offer only insufficient allegations of related companies.  *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267–69 (D. Del. 1989); Opp'n at 15.  Cayman law is "equally—if not more—stringent than . . . Delaware," permitting veil piercing only in exceptional circumstances where a company has been used as a dishonest façade or sham to conceal the true facts or as a device for an illegal or improper purpose.  *See Glob. Gaming*

*Phil., LLC v. Razon*, 2022 WL 836716, at \*7 (S.D.N.Y. Mar. 21, 2022).  Plaintiffs thus have failed to allege that the Jump Entities are alter egos.

II.    **Plaintiffs Cannot Avoid Dismissal of Their Untimely Claims Against Jump Crypto Holdings LLC and TMSL**

A.    **Plaintiffs Fail to Show Any of Their Claims Were Timely When They Filed Their Fourth Amended Complaint**

As set out in the Motion, at the time Plaintiffs filed the 4AC, the statute of limitations for each of their claims against Jump Crypto Holdings LLC and TMSL had expired.  Mot. at 8–9. Plaintiffs' Opposition does not demonstrate otherwise.  Plaintiffs concede that a one-year statute of limitations governs their Sections 12 and 15 claims in Counts V, VII and VIII.  Opp'n at 10.  As such, these claims accrued no later than May 2022 and expired one year later, and thus the assertion of them in 2025 is plainly untimely.  Mot. at 10.

As to Counts I–III, by the time the Plaintiffs filed the 4AC in October 2025, the statute of limitations for those claims also expired as to TMSL and Jump Crypto.  As to TMSL, Plaintiffs undeniably discovered the conduct giving rise to Count I and Counts II and III when they filed the initial complaint in June 2022 and SAC in February 2023, respectively.  Thus, those claims were barred by the two-year statute of limitations by October 2025.  As to Jump Crypto Holdings LLC, Plaintiffs argue that, under the discovery rule, the two-year statute of limitations for their securities fraud claims did not accrue until December 28, 2023, when they purportedly first "knew" the identity of the "U.S. Trading Firm" in the SEC's case against TFL, i.e. that it was Jump Crypto Holdings LLC.  Opp'n at 9.  That argument finds no support in law or fact.  A "complaint necessarily establishes a § 1658(b)(1) statute of limitations defense" where, as here, it "pleads a securities fraud claim based only on ***conduct*** discovered more than two years prior to the filing of the complaint." *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 466 (9th Cir. 2023) (emphasis added).  As noted above, Plaintiffs undeniably discovered that conduct by June 2022  and February 2023.  Their pleadings demonstrate that Plaintiffs believed they had "sufficient notice that they had been defrauded or deceived to commence the running of the statute as to the actions in their entirety."

*Winkelman v. Blyth & Co.*, 518 F.2d 530, 531 (9th Cir. 1975).  Plaintiffs cite no support for the proposition that a defendant's ***identity*** must be known to start the limitations clock.  Rather, "plaintiffs' discovery of the statement's falsity is sufficient to start the limitation period running." *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 788 (9th Cir. 1996).

Plaintiffs do not and cannot show that their purported December 2023 discovery that "U.S. Trading Firm" referred to Jump Crypto Holdings LLC was an essential fact for pleading Counts I–III.  In any event, Plaintiffs indisputably knew about Jump Crypto Holdings LLC at least as of June 2022 when they named it as a defendant in their initial complaint.  Compl. at 4.  In fact, when they filed the SAC in February 2023, Plaintiffs specifically alleged that "[a]ccording to numerous media reports, the 'U.S. Trading Firm' is Defendant Jump," which Plaintiffs defined to include "Jump Crypto."  SAC ¶¶ 1, 30.  Plainly, their purported December 2023 "discovery" did not provide any necessary and previously unknown fact needed to plead Counts I–III.

**B.  Relation-Back Doctrine Does Not Save Plaintiffs' Untimely Claims**

Because all claims against Jump Crypto Holdings LLC and TMSL in the 4AC are untimely, they cannot proceed unless Plaintiffs show they satisfied Rule 15(c)'s requirements for relating a new pleading back to a prior one.  Plaintiffs have not made that showing here because they cannot satisfy the "mistake" prong of Rule 15(c).

Starting with Jump Crypto Holdings LLC, Plaintiffs concede that they named "Jump Crypto" as a defendant in their original and first amended complaints but subsequently dropped it from the SAC and the Third Amended Complaint ("TAC").  Opp'n at 7–8.  Thus, there is no dispute that Plaintiffs were aware of that entity's existence and identity from the outset of this case.  That awareness dooms Plaintiffs' reliance on Rule 15(c) to assert untimely claims against Jump Crypto Holdings LLC.  The rule is inapplicable where a plaintiff knew of the defendant's identity within the limitations period but was merely "uncertain whether the potential defendant may be found liable." *Hamilton v. City of Berkeley*, 2014 WL 547067, at *3 (N.D. Cal. Feb. 7, 2014).

Plaintiffs argue that they were entitled to reintroduce Jump Crypto Holdings LLC into this case because of unspecified "further investigation" and their alleged "learning" in December 2023

4

that "the U.S. Trading Firm referred to Jump Crypto." Opp'n at 8. But that ignores the standard for satisfying Rule 15(c)'s "mistake" prong, which depends "on when the plaintiff first had notice of the defendant's correct identity, ***not on when the plaintiff first had notice of the defendant's culpability***." *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1099 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996) (emphasis added). Courts in this Circuit routinely decline to find any mistake within the meaning of Rule 15(c) where, as here, Plaintiffs seek to assert untimely claims against a previously dropped defendant whose identity Plaintiffs knew from the outset.[1]

Plaintiffs' arguments with respect to TMSL fare no better. Plaintiffs concede they knew about TMSL's existence and role in the case by July 2023 at the latest. Opp'n at 9. Nonetheless, they argue that Rule 15(c) saves their untimely claims against TMSL because, until the SEC's Cease-and-Desist Order concerning TMSL (the "SEC Order"), Plaintiffs supposedly did not know "of TMSL's significance in the case." *Id.* at 10–11. That argument fails. As an initial matter, by July 2023, Plaintiffs plainly had copies of the LUNA loan contract with TFL—which has been a key subject of their factual allegations in multiple prior pleadings—and that contract expressly identified TMSL (and not any other Jump Entity) as a counterparty. Mot. at 10. But in any event, Plaintiffs misunderstand Rule 15(c) and incorrectly equate a mistake in assessing the liability of a potential defendant with a mistake in identifying that defendant. Allowing Plaintiffs to relate back untimely claims against a new defendant until they obtain a full understanding of that defendant's violations would be "an unprecedented and unwarranted extension of Rule 15(c)." *In re Rexplore, Inc. Sec. Litig.*, 685 F. Supp. 1132, 1145 (N.D. Cal. 1988). Indeed, the Ninth Circuit has rejected precisely this argument. *Louisiana-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993).

## III.    Plaintiffs Do Not Adequately Allege Fraud Through Misstatements or Omissions

Lacking the necessary allegations to state a claim against the Jump Entities based on misleading statements or omissions, Plaintiffs instead impermissibly inject new allegations, alter

---

[1] *See, e.g.*, *Rothschild v. Pac. Companies*, 2025 WL 3043356, at *11 (N.D. Cal. Oct. 31, 2025); *Pratt v. Gamboa*, 2020 WL 2512407, at *11 (N.D. Cal. May 15, 2020); *Jones v. Mathews*, 2018 WL 9878317, at *8 (C.D. Ill. Dec. 11, 2018); *Nite & Day Power Techs. v. Corp. Cap. Res., Inc.*, 1995 WL 7942, at *5 (N.D. Cal. Jan. 5, 1995).

existing allegations, and advocate for lower pleading standards.  None of these attempts can overcome the pervasive flaws identified in the Motion, requiring dismissal of Count I.

## A.  Plaintiffs Have Not Identified a Single Actionable Misstatement or Omission

Plaintiffs' Opposition reinforces their inability to identify any actionable misstatements or omissions attributable to any Jump Entity, continuing to rely on statements made by others, inactionable opinions, misquoted or distorted statements, and nonexistent duties.

*First*, Plaintiffs' allegations that the Jump Entities failed to disclose their alleged trading to restore UST's peg in May 2021 do not remedy this Court's prior finding that the SAC "fail[ed] to plead with sufficient particularity that . . . Jump itself had any duty to disclose its role in the re-peg." Order Den. MTC and Granting MTD ("Op."), Dkt. No. 155 at 26.  The only alleged fact in the 4AC supporting a duty is possession of nonpublic information.  *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) (listing factors).  But that is not sufficient.[2]  Mot. at 20. And any duty Mr. Kwon may have had is irrelevant to whether any Jump Entity had a duty.  *See* Opp'n at 28.  Plaintiffs' new claim that every alleged statement was misleading for failing to disclose the May 2021 trading is not in the 4AC and cannot be injected in opposition.  Nor does it have merit: the omission of that information from each cited statement did not create a materially different impression of the state of affairs than the one that actually existed.[3]  *Id.* at 25, 27; Mot. at 21.

*Second*, Plaintiffs continue to try to pin statements made by TFL and LFG on the Jump Entities.  No Jump Entity was the maker of any of the three statements by TFL and Kwon alleged in the 4AC, and Plaintiffs' arguments to the contrary are without merit.  Mot. at 14–16.  For example, notwithstanding Plaintiffs' claims, the fact that a TFL article quoted "Jump" in a different section of the article does not imply that any Jump Entity co-authored the article.  *See Zagami v. Cellceutix*

---

[2] Plaintiffs' support for their argument that it is sufficient is entirely based on cases conducting different analyses.  *See* Opp'n at 34 (citing insider trading cases and cases analyzing scienter).

[3] Plaintiffs' assertion that the Jump Entities' statements speak to "the stability of [the Terra ecosystem's] algorithmic underpinning" and "the algorithm's 'self-healing' mechanisms" is misleading and contradicted by their own citations, which reveal that neither statement was made by a Jump Entity.  Opp'n at 4 (referring to but not citing the statement in 4AC ¶ 340(k)), 275 (citing 4AC ¶ 340(f)).

6

*Corp.*, 2016 WL 3199531, at *6 (S.D.N.Y. June 8, 2016) (rejecting argument that inclusion of direct quotes in another portion of the article rendered defendant liable for entire piece). The quote Plaintiffs highlight in another TFL article on TFL's own Medium page is even more irrelevant, because it is attributed to the "Wormhole team," not a Jump Entity. Opp'n at 32. And alleged public relations coordination on Wormhole (even if true) does not give rise to an inference that any Jump Entity made, or was otherwise responsible for, this statement. Finally, Plaintiffs' attempt to impute liability for Mr. Kwon's alleged misstatements on the Ship Show fails because there is no duty to correct another's misstatements.[4] *Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051–52 (7th Cir. 2012) ("no statute or rule creates such a duty").

Plaintiffs' failure to explain why the LFG's statements should be attributed to any Jump Entity is even more glaring. While Mr. Kariya may have been a member of the LFG Governing Council, Plaintiffs concede that the Governing Council's powers were limited to "advis[ing] and giv[ing] recommendations" and performing acts "deemed necessary or advisable" by Mr. Kwon and a Singaporean business consultant (who alone "legally governed" the LFG); they do not allege that the Governing Council approved or issued any of the alleged statements. 4AC ¶ 202; *see In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1187 (D. Or. 2015) (officers "made" statements when their approval was necessary). Nor do they provide any factual support for their conclusion that Jump "exercised control and directed and/or authorized, directly or indirectly, the statements that the Luna Foundation Guard made to the public." 4AC ¶ 192. These allegations are insufficient to plead that any Jump Entity was the maker of the alleged LFG statements.[5]

*Third*, Plaintiffs fail to make a case that any of the opinions arguably attributable to a Jump Entity are actionable. The only opinion they challenge is a blog post expressing enthusiasm about

---

[4] The cases Plaintiffs cite for such a duty do not in fact create one. Opp'n at 31. Those cases analyzed scienter, not the entity liable for a statement.

[5] Whether the statement in paragraph 340(f) was made by TFL or the LFG is irrelevant—it was not made by any Jump Entity. Opp'n at 31.

7

the Terra ecosystem.[6]  But, as this Court previously observed, this statement is an unactionable opinion.  Op. at 21.  Notably, Plaintiffs do not explain how the expressed excitement in this statement does not "fairly align" with the alleged trading during the May 2021 depeg.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188–89 (2015); *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 778–79 (9th Cir. 2023) (opinion that deal would close was actionable only when defendant had been told it may not close but not when defendant was only aware of counterparty's concerns).  Plaintiffs therefore have not adequately alleged that the Jump Entities' opinions are actionable.

*Fourth*, Plaintiffs' attempt to defend their repeated misquotation and distortion of the three statements of fact arguably attributable to a Jump Entity falls short.  Plaintiffs appear now to concede that—contrary to the allegations in the 4AC—when Mr. Kariya stated there is "almost no possibility for one collusion across these landscapes," he was referring to Pyth instead of UST.  Opp'n at 25–26.  Confusingly, Plaintiffs continue to insist this statement was false because Mr. Kariya knew that "Jump" had colluded to manipulate *UST*.  *Id.*  Of course, a statement regarding the impossibility of collusion with regards to *Pyth* says nothing about *UST*.  Apparently recognizing this, Plaintiffs now assert that Pyth is in the Terra Ecosystem.  *Id.*  But that allegation is not in the 4AC (and is false).  Nor do Plaintiffs offer any explanation for their non-sequitur that a statement concerning heavy regulation of *firms* involved in *Pyth* was rendered false because Mr. Kariya allegedly used Signal on his *phone* to discuss *UST*.  *Id.*  Finally, Plaintiffs claim their mischaracterization of the blog post observing what UST's algorithm required to function was "irrelevant" because the post "implied" the effectiveness of the algorithm.  *Id.* at 26–27.  But not only is that not what the 4AC alleges, Plaintiffs also entirely fail to explain how this statement implied efficacy.  Mot. at 19.

**B. The Allegations Do Not Lead to a Compelling Inference of Scienter**

Plaintiffs urge a holistic analysis of their scienter allegations.  Opp'n at 36.  But a holistic

---

[6] Though they claim the other two opinions (4AC ¶¶ 340(h) and 340(j)) are actionable, Plaintiffs do not explain why.  The statements in paragraphs 340(c) and 340(f) were not made by any Jump Entity, as detailed in the Jump Entities' Motion and above.

REPLY ISO MOTION TO DISMISS
CASE NUMBER: 5:22-CV-03600-PCP

view undermines, rather than bolsters, the inference of scienter Plaintiffs need this Court to draw because the allegations here are more consistent with a genuine belief in the Ecosystem than fraud. Mot. at 23. And their claim that Mr. Kariya knew "the algorithm had failed," Opp'n at 37, is contradicted by their own allegations that the algorithm depended on human trading, Mot. at 22–23.

Plaintiffs compound the problems with their theory by conflating the requisite intent for fraud, the intent required for manipulation, and the duty to disclose, arguing that fraudulent intent to mislead with the alleged statements is established because the Jump Entities allegedly committed manipulation (and did not disclose that). But Plaintiffs cannot use their inadequately pleaded manipulation claim as a shortcut to meet the exacting standard for pleading scienter in Count I. *Id.* at 22. Even if Plaintiffs did adequately allege manipulation (and they did not), they fail to explain how one episode of manipulation in May 2021 creates a compelling inference of fraudulent intent with respect to unrelated statements made months later. Nor is the allegation that the Jump Entities profited from their trading adequate, as Plaintiffs admit. Opp'n at 36; Mot. at 24.

Plaintiffs' fallback—a supposed "trove" of evidence from *SEC v. Do Kwon and Terraform Labs Pte. Ltd.*, 23-cv-01346 (JSR) (S.D.N.Y.) (the "SDNY Action"), and Do Kwon's criminal case—likewise falls short. Opp'n at 37. Neither case involved any Jump Entity as a party, and neither says anything about the Jump Entities' scienter. The facts Plaintiffs draw from those cases establish only that a Jump Entity allegedly assisted in re-pegging UST in May 2021, which, as discussed above, does not support a strong inference of fraudulent intent with respect to statements made months later. *Id*. Plaintiffs' reliance on the TMSL SEC Order is equally unavailing: it did not address TMSL's intent with respect to any of the alleged statements, and it found only negligence in connection with the May 2021 trading. That an agency found TMSL was negligent does not give rise to a strong inference of fraud; if anything, it undermines any such inference.

**C. Plaintiffs Have Not Pleaded That They Relied On The Alleged Misstatements**

Recognizing their failure to plead their personal reliance on alleged misstatements, Plaintiffs try to avail themselves of two presumptions of reliance. Neither is applicable.

Plaintiffs are not entitled to the *Affiliated Ute* presumption of reliance because Count I is

based on misstatements.  Whether a claim is based primarily on misstatements depends on the *conduct* upon which the claim is based, Mot. at 36, and not on the specific provision of Section 10(b), as Plaintiffs appear to claim the Motion argues, Opp'n at 40.  Count 1 is not based on omissions but rather on enumerated misstatements.[7]  4AC ¶ 340; *see In re Volkswagen*, 2 F.4th at 1206 (despite a single omission "loom[ing] large" claims were based on affirmative misstatements).  As discussed above, Plaintiffs' attempt on opposition to recast every statement as an omission fails.

Plaintiffs' argument that they are entitled to the fraud-on-the-market presumption of reliance likewise fails because they have not alleged that this was an efficient market.  Plaintiffs argue that they have alleged efficiency because they allege trading "by a wide variety of retail investors." Opp'n at 43.  But the 4AC contains no such allegation, which in any event is boilerplate and thus insufficient.  *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1252 (C.D. Cal. 2015) ("Efficiency must be pled with particularity under Rule 9(b).").  They further argue that they have alleged efficiency because "the market responded to information, as evidenced by the fact that the market for all of the Terra Tokens crashed together in response to the failure of the algorithm to re-peg UST in May of 2022." Opp'n at 43.  But if a mere crash in the price of a security was itself sufficient to establish efficiency, then presumably all plaintiffs in all stock drop cases could always allege efficiency.  That, of course, is not the law.  Absent allegations of the factors typically supporting a finding of efficient market, Plaintiffs have not alleged reliance.  *In re Bank of Am. Corp.*, 2011 WL 740902, at *13 (N.D. Cal. Feb. 24, 2011); Mot. at 27.

**D. Plaintiffs Do Not Allege That The Purported Misstatements Caused Their Losses**

Plaintiffs claim the Jump Entities have confused loss causation with materiality.  Opp'n at 44. They have not.  To recover, Plaintiffs must sufficiently allege that they suffered economic losses when the truth became known, whether through the materialization of a concealed risk, *Junge v.*

---

[7] Plaintiffs argue that *Affiliated Ute* applies because Count I is based on manipulation.  But there is no support for their claim that the Supreme Court overruled the holding in *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009), that the *Affiliated Ute* presumption does not apply to manipulation. Opp'n 39–40.  Reliance was not at issue in *Lorenzo v. SEC*, 587 U.S. 71 (2019).  The Ninth Circuit continues to apply *Desai*.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1205–06 (9th Cir. 2021).

*Geron Corp.*, 2022 WL 1002446, at \*7 (N.D. Cal. Apr. 2, 2022), or through an express, corrective disclosure, *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). The timeline of events alleged in the 4AC, however, renders both theories unavailing.

Plaintiffs claim the market was unaware that UST would require external support. 4AC ¶¶ 2, 10–11, 111, 147. Yet by January 2022—before Plaintiffs purchased—it was publicly announced that the LFG's reserve had been formed to "help protect the peg of the UST stablecoin in stressful conditions." *Id.* ¶ 211. Plaintiffs then continued to buy even after Mr. Kariya's March 2022 statement that the reserve was intended to address "extreme price movements, which do happen." Mot. at 28–29. Thus, the very information Plaintiffs claim was withheld—that the Ecosystem would require external support during volatile periods—was publicly disclosed before they bought.

This disposes of Plaintiffs' materialization of risk theory. Opp'n at 43–44. That theory requires a plaintiff to allege that the loss "proximately flowed from the alleged hazard, which the false or misleading statements obscured." *Junge*, 2022 WL 1002446, at \*7. The hazard Plaintiffs invoke—that UST would need external support in periods of volatility—was not obscured; it was publicly disclosed before they purchased.

Plaintiffs are then left arguing that the January 2022 disclosures are nonetheless insufficient because they do not reveal the alleged specific May 2021 intervention. Opp'n at 45. But that reframing does not solve Plaintiffs' problem: such a loss causation theory would require an allegation that the May 2022 collapse was caused by the *revelation* of that May 2021 intervention. Crucially, Plaintiffs allege no such corrective disclosure. As a result, any earlier purported deception about the algorithm could not have caused their losses. That is fatal under *BofI Holding*. 977 F.3d at 789.

## IV.    Plaintiffs Have Not Remedied the Flaws in Their Section 10(b) Manipulation Claim

Plaintiffs cannot save the 4AC's inadequate allegations of manipulation by drawing unreasonable and unlikely inferences of intent, failing to mend the hole in their causation argument, and eliminating required elements of the claim in their Opposition.

*First*, Plaintiffs' attempt to twist legitimate trading decisions into evidence of manipulative

intent is unavailing. According to Plaintiffs, it "makes no sense" to say that the Jump Entities genuinely believed in the viability of UST because they knew that UST required temporary support to regain its peg in May 2021. Opp'n at 37. But it simply does not follow that awareness that UST required temporary support precludes a genuine belief in the value of UST. In fact, if Plaintiffs were correct, then no one would have purchased UST after the announcement in early 2022 of the LFG's reserve because that announcement made clear that the reserve was intended to be deployed in periods of volatility (i.e., to provide temporary support for future depegs). But market participants—*including Plaintiffs*—did continue to buy UST after that announcement.

Plaintiffs' suggestion that purchases were manipulative because their primary alleged purpose was to restore the peg reflects a fundamental misunderstanding of manipulation law. As explained in the Motion, mere "intent to affect price" is not sufficient to demonstrate manipulative intent where, as here, the purchases occurred at prices *under* the price at which the Jump Entities valued UST ($1).[8] Mot. at 31. Plaintiffs' argument that the Jump Entities' on-exchange trading was not consistent with the algorithm likewise fails, Opp'n at 37—as Plaintiffs plead, the algorithm functioned through arbitrage opportunities, 4AC ¶¶ 90, 194, which by definition contemplates trading across multiple markets. And unlike the trading in *Crane*, where the defendant was simultaneously buying and selling shares at a loss, Plaintiffs allege that the Jump Entities' purchases were economically profitable. *See Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 792–93 (2d Cir. 1969); 4AC ¶¶ 97, 112, 129.

Nor do the Jump Entities' alleged decisions not to broadcast the trading and to slowly sell

---

[8] Plaintiffs' claim that the Jump Entities "sacrificed profit" because they bought at "prices that were higher than the prevailing market price on that exchange," Opp'n at 17, is unavailing for two reasons. First, the relevant inquiry is not whether the trading at issue maximized profit in the short term. Rather, as this Court already observed, the question is whether "Jump truthfully believed it was purchasing the tokens below their real value." Op. at 27. Because Plaintiffs allege no facts demonstrating that any Jump Entity did not genuinely value UST at $1, purchases at any price below $1 are fully consistent with a genuine belief in that value. Second, the allegation that the Jump Entities bought at prices above market price is contradicted by the mechanics of exchange trading: purchases executed on a cryptocurrency exchange are by definition filled at the best available ask price, which *is* the prevailing market price.

UST after the peg stabilized imply manipulative intent.  Opp'n at 17, 36.  Plaintiffs cannot recycle their unsuccessful arguments on duty to disclose for scienter, and the rate of UST sales is evidence only of the market reality that selling a large quantity of any asset at once can impact that asset's price.  All Plaintiffs allege is economically rational trading if the Jump Entities believed in UST, and they proffer no reason to question that belief.  *See CFTC v. Wilson*, 2018 WL 6322024, at \*14–\*15 (S.D.N.Y. Nov. 30, 2018); *Crane*, 419 F.2d at 794.

Having failed to plausibly allege any other facts supporting scienter, Plaintiffs fall back on Mr. DiSomma's and Mr. Kariya's invocation of the Fifth Amendment in the SDNY Action.  Opp'n at 18 n.7.  But the invocation of the Fifth Amendment in another case in which neither the Jump Entities, Mr. DiSomma, nor Mr. Kariya were defendants or accused of wrongdoing is not relevant. *See Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012); DiSomma Reply at 6.[9]  Plaintiffs' failure to particularly allege that each Jump Entity did not genuinely value UST at $1 in May 2021 thus requires dismissal of their manipulation claim.  *Wilson*, 2018 WL 6322024, at \*14–\*15; *see* Op. at 27.

*Second*, Plaintiffs' failure to remedy the deficiencies in their reliance allegations for Count I also preclude their manipulation claim.  Their assertion that reliance for manipulation claims is a relaxed standard requiring only "an assumption of an efficient market free of manipulation" where "efficient" means "a bona fide market free of manipulation" lacks any support from the Ninth Circuit, and the cases from this court that they do cite do not apply that assumption.[10]  Opp'n at 22. Indeed, the Ninth Circuit has questioned a reliance presumption whereby investors "typically rely on the 'integrity of the market,' that is that no one has destroyed its efficiency by manipulation."

---

[9] The scienter to which the Fifth Amendment invocation in an SEC investigation was relevant *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 822 (S.D. Tex. 2007), was general awareness of the defendant's role in a scheme, far less than the scienter required here.

[10] *See In re Bank of Am. Corp.*, 2011 WL 740902, at \*13 (conducting direct reliance and fraud-on-the-market analyses); *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 815–16 (N.D. Cal. 2011) (appearing to use fraud-on-the-market definition of efficiency).  Plaintiffs' citation to *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037 (N.D. Ill. 2016), is inapposite as the language they quote was not related to reliance.

13

*Desai*, 573 F.3d at 942; *see Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1121 n.4 (9th Cir 2013) (noting the wariness expressed in *Desai*). And Plaintiffs' proffered definition of "efficient" is Second Circuit dicta that even courts in that Circuit do not apply. *See Fezzani v. Bear, Stearns & Co. Inc.*, 716 F.3d 18, 23 n.3 (2d Cir. 2013); *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2023 WL 9102400, at *34 (S.D.N.Y. Dec. 29, 2023). Thus, Plaintiffs' boilerplate allegation that they "rel[ied] on the absence of Defendants' scheme or artifice to defraud," 4AC ¶ 368, does not save their failure to allege either an efficient market or direct reliance. *See In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 306 (S.D.N.Y. 2009) (rejecting boilerplate allegations in direct reliance argument where plaintiff failed to allege efficient market).

*Third*, Plaintiffs' Opposition fails to rebut the flaw in their causation allegations. Opp'n at 19. Even if it were true that the alleged trading in May 2021 alone saved UST's peg, that a single episode of alleged manipulation then propped up the Ecosystem for an entire year without any further alleged manipulation is entirely implausible. *See Anschutz*, 785 F. Supp. 2d at 815–16 (after alleged manipulation ended, the market collapsed). Instead, the continued existence of the Ecosystem strongly suggests that the May 2021 trading was legitimate and not manipulation. In any event, Plaintiffs' purchases occurring approximately eight months after a single alleged episode of manipulation were not plausibly at a price affected by the May 2021 trading, and thus that alleged manipulation did not cause their losses.

## V.    Plaintiffs' Section 9 Claims Are Deficient

As with their Section 10(b) manipulation claim, Plaintiffs' failure to adequately allege scienter, reliance, and causation and their attempt to erase required elements of their claim mandate dismissal of their Section 9 claim. *See Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1165 (5th Cir. 1982), *vacated on other grounds* 460 U.S. 1007 (1983).

As set out above, Plaintiffs fail to plead even recklessness, much less the *willfulness* required by Section 9, and nothing in the Opposition alters that. Mot. at 34. And aside from a conclusory assertion regarding their allegations that conspicuously does not cite to the 4AC, Plaintiffs do not

14

contest that the 4AC does not plead that the Jump Entities intended to induce others to trade, as required for a Section 9(a) claim. Opp'n at 18. Further, Plaintiffs' failure to adequately allege causation for Section 10(b) manipulation likewise applies to their Section 9(a) claim.

Moreover, Plaintiffs' claim that reliance is not a required element of a Section 9(a)(2) or 9(a)(6) claim cannot be credited. Opp'n at 18. They notably offer no case support for this assertion, because it is wrong. *Perry v. Eastman Kodak Co.*, 962 F.2d 10, at *7 (7th Cir. 1992) (dismissing Section 9(a) claim that did "not allege[] any actual reliance on a manipulated market price"). Plaintiffs have therefore failed to allege reliance for their Section 9(a) claims for the same reason as their Section 10(b) manipulation claim.

Finally, Plaintiffs cite no cases supporting their assertion that only pegging, fixing, or stabilizing transactions that are *explicitly permitted* by the SEC rules are allowed under Section 9(a)(6). Opp'n at 20. Nor could they. SEC rules and regulations are regularly framed not as delineating permissible trading but rather as identifying prohibited trading. *See Goldstein v. Regal Crest, Inc.*, 62 F.R.D. 571, 574 (E.D. Pa. 1974) (assessing 9(a)(6) claim for activities prohibited by Rules 10b-6, 10b-7, and 10b-8). Courts evaluating Section 9(a)(6) claims agree that plaintiffs must identify the rule allegedly being violated. *See Chemetron*, 682 F.2d at 1164 & n.38 (requiring reference to SEC "rules and any conditions they impose if a plaintiff is pursuing a s 9(a)(6) claim"). Without pleading a violation of an SEC rule or regulation other than Rule 10b-5, which Plaintiffs have not adequately alleged, Plaintiffs' Section 9(a)(6) claim necessarily fails.[11]

## VI.   Plaintiffs' Section 12 and Section 15 Claims Fail

Plaintiffs do not dispute that their Section 12 and 15 Claims (Counts V and VII) fell outside the three-year repose period when Plaintiffs first asserted them in the 4AC. Instead, Plaintiffs argue that those claims can relate back despite being outside the repose period. Opp'n at 11. As explained below, that is wrong. Nor is there any merit to Plaintiffs' claims that they adequately pled the

---

[11] The SEC Order cannot save this claim. Plaintiffs' argument that they rely not on the conclusions from the SEC Order but rather on the factual findings both is facially inaccurate and does not further their claims. Opp'n at 19–20. They fail to argue how the alleged *facts* in the SEC Order support anything other than the SEC's negligence finding.

"statutory seller" element in order for Counts V and VII to survive a motion to dismiss.

### A. Plaintiffs Cannot Circumvent the Statute of Repose for Section 12 and 15 Claims

A statute of repose operates "like a jurisdictional prerequisite" and "terminates a right of action after a specific time" against the defendants "even if the injury has not yet occurred." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1048 (9th Cir. 2013), *aff'd and remanded sub nom. United States v. Wong*, 575 U.S. 402 (2015). As such, a statute of repose has "substantive effect." *Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 408 (9th Cir. 2002); *see Hildes v. Arthur Andersen LLP*, 2015 WL 11199825, at *6 (S.D. Cal. May 15, 2015). With those principles in mind, the Ninth Circuit in *Miguel* specifically held that the relation-back doctrine under Rule 15(c) cannot be used to extend a statute of repose because doing so would modify substantive rights in violation of the Rules Enabling Act. *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002).[12]

Plaintiffs' attempt to avoid this binding precedent with the Third Circuit's decision in *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337 (3d Cir. 2021), fails. Opp'n at 11. *Orrstown* narrowly held that "relation back does not offend the Rules Enabling Act when a plaintiff merely seeks to amend a timely filed complaint ***without adding entirely new claims or parties***." 12 F.4th at 352 (emphasis added). Here, Plaintiffs have both added new claims (i.e., Counts V and VII) and named new parties (i.e., TMSL and Jump Crypto Holdings LLC) in those claims, rendering *Orrstown* easily distinguishable. *See United States ex rel. Osinek v. Permanente Med. Grp., Inc.*, 2022 WL 16943886, at *10 (N.D. Cal. Nov. 14, 2022) (finding *Orrstown* did not apply where plaintiff "wants the claims against the new defendant to relate back to the filing of the original complaint").

---

[12] Attempting to distinguish *Miguel*, Plaintiffs seize on a supposed distinction between a statute of repose that describes an expiration of the underlying right versus one describing whether a plaintiff could bring an action, but they fail to explain why that distinction matters. Opp'n at 11. However phrased, every statute of repose has the same nature and effect: providing "a substantive right, extinguishing claims after a [certain] period." *Hildes*, 2015 WL 11199825, at *6 (internal quotation marks and citations omitted). As such, it cannot be circumvented through the relation-back doctrine.

16

**B.  Plaintiffs Fail to Show They Adequately Pled the Statutory Seller Element**

In their Opposition, Plaintiffs do not dispute that the 4AC does not allege any passing of title of the "Terra Tokens" from any of the Jump Entities to Plaintiffs.[13]  Plaintiffs thus concede they must rely on the "solicitation" theory to adequately plead the "statutory seller" element.  But, as the Jump Entities showed in their Motion, the 4AC does not plead any actionable solicitation by any of the Jump Entities.  Nothing Plaintiffs say in the Opposition demonstrates otherwise.

As a threshold matter, the 4AC is devoid of any factual allegations that Jump Trading, LLC or TMSL engaged in or made any statements constituting solicitation.  Plaintiffs' bare bones assertion that TMSL "acted as a statutory underwriter" is not enough.  *See* Opp'n at 46.  The Supreme Court made clear in *Pinter v. Dahl* that Section 12 liability does not extend "to participants only remotely related to the relevant aspects of the sales transaction."  486 U.S. 622, 651 (1988).  As discussed in the Motion, courts since *Pinter* have routinely found that "underwriters are not sellers within the meaning of Section 12 unless *they actively participate in the negotiations with the plaintiff/purchaser*."  Mot. at 37.[14]  Plaintiffs do not allege any form of "active negotiation" by TMSL with Plaintiffs, and the 4AC and Opposition are otherwise silent as to Jump Trading, LLC or TMSL's supposed solicitation.[15]  Therefore, Count V must be dismissed as against them.

---

[13] To the extent the 4AC could be construed to allege the Jump Entities are "statutory sellers" on this basis, such a claim must fail.  *See* Mot. at 37; *Pino v. Cardone Cap.*, 55 F.4th 1253, 1258 (9th Cir. 2022) (finding defendants did not qualify as "sellers" where complaint did not allege they passed title to the securities in question).

[14] *See also Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *31 (N.D. Cal. Dec. 18, 2017) (finding "allegations that the Underwriter Defendants merely did their job and rendered professional services . . . do not amount to allegations that the underwriters are 'sellers' under § 12(a)(2)"), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *Baker v. Seaworld Ent., Inc.*, 2016 WL 2993481, at *18 (S.D. Cal. Mar. 31, 2016) (dismissing claim against underwriters where "there are no allegations that Plaintiffs purchased their stock directly from the Underwriter Defendants" and "Plaintiffs' allegations of solicitation are conclusory, and do not include any allegations of direct communication").

[15] Notably, none of the various so-called "promotional" social media posts repeatedly referenced by Plaintiffs are specifically attributed to Jump Trading, LLC or TMSL.  *See, e.g.*, Opp'n at 46–47. Even if these statements amounted to solicitation, which they do not, Plaintiffs cannot rely on them to plead a claim against Jump Trading, LLC or TMSL.

17

Plaintiffs' claims against Jump Crypto Holdings LLC likewise come up short. To the extent a limited number of "promotional" statements are alleged to have been made by Jump Crypto Holdings LLC (or attributed to it via Mr. Kariya),[16] Plaintiffs have not alleged that those statements were "successful" in soliciting Plaintiffs' purchases as required. *Pinter*, 486 U.S. at 647 (holding that Section 12 liability "extends only to the person who **successfully** solicits the purchase" (emphasis added)). To give effect to *Pinter*'s reading of Section 12, successful solicitation must mean solicitation that *resulted* in a sale to a plaintiff. *See, e.g.*, *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (finding statutory seller claim "not plausible" "without averments that [plaintiff] was cognizant of, or influenced by, [defendant's] involvement");[17] *see also* Mot. at 38. While the Ninth Circuit in *Pino* held that solicitation need not be directed to a particular plaintiff, it said nothing to alter the requirement that the solicitation must be successful. 55 F.4th at 1259. Further, Plaintiffs' assertion that they need not plead reliance in the context of a Section 12(a)**(1)** claim is inapposite. *Pino* has held that "[t]o state a claim under § 12(a)**(2),** [a plaintiff] need not have alleged that he specifically relied on any of the alleged misstatements. *Id.* at 1260 (emphasis added); *see Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 965 (9th Cir. 1990). That is irrelevant to the separate requirement that the alleged solicitation be successful to state a 12(a)(1) claim. Because Plaintiffs have not alleged that the purported solicitations were successful in soliciting their purchases of Terra Tokens, the Section 12(a)(1) claim fails as a matter of law.[18]

---

[16] The Opposition repeatedly points to alleged "promotional" statements that are in fact Plaintiffs' own conclusory assertions (*e.g.*, 4AC ¶¶ 147–49) or statements made by third parties incorrectly attributed to "Jump" (*e.g.*, *id.* ¶¶ 150–51, 158, 173–75, 177). As discussed in the Motion, these statements cannot form the basis for a claim against Jump Crypto Holdings LLC. Mot. at 38.

[17] While the court in *Tezos* found the plaintiff adequately alleged solicitation against one defendant despite not being aware of the "defendant specific promotion," *see* Opp'n at 48, that finding was based on the plaintiff's specific allegations of that defendant's "creation of the Tezos technology" and "minute-to-minute oversight of the monetization" of the technology, *Tezos*, 2018 WL 4293341, at *9. As discussed below, no such allegations exist here for any of the Jump Entities. The *Tezos* court dismissed Section 12 claims against the other co-defendants with respect to which plaintiff in that case—just like Plaintiffs here—failed to allege any awareness of those co-defendants' alleged promotional activity. *Id.* at 3, 9–10 (citing *Pinter*, 486 U.S. at 646).

[18] Plaintiffs cite to *Samuels v. Lido Dao*, in which the court relied on the Supreme Court's *Pinter* decision to conclude "that a solicitation must be 'successful' is better understood as requiring that

18

Plaintiffs also claim they sufficiently pled solicitation by alleging that Defendants were "'comprehensive[ly] involve[d] with the design, operation and monetization of a cryptocurrency enterprise.'" Opp'n at 46 (citing *Lido Dao*, 757 F. Supp. 3d at 968; *Houghton v. Leshner*, 2023 WL 6826814, at *3 (N.D. Cal. Sept. 20, 2023)). But Plaintiffs fail to plead sufficient facts in support of this theory of liability, pointing only to their conclusory assertion that the Jump Entities had a role as "liquidity partner, statutory underwriter and market maker for myriad offerings of unregistered securities." *Id*. When compared to the conduct in the cases Plaintiffs cite, that is clearly not enough.

A statutory underwriter allegation alone is not sufficient, and allegations of liquidity provision or market making are a far cry from the conduct in *Lido Dao* and *Houghton*, where defendants were alleged to have created and controlled the cryptocurrencies at issue. *Houghton*, 2023 WL 6826814, at *1, *3, *4 (alleging defendants created the COMP cryptocurrency at issue and collectively owned a majority of COMP); *Lido Dao*, 757 F. Supp. 3d at 968 (alleging defendants were "comprehensively involved in the creation and issuance of LDO"). Plaintiffs have not alleged any similar conduct here. Because the facts alleged in the 4AC do not rise to the same (or any) level of involvement by the Jump Entities in the creation and governance of Terra, they do not sufficiently plead "solicitation."

## VII. Plaintiffs Do Not Adequately Allege Control Over Any Violation by TMSL or TFL

Plaintiffs' Opposition cannot overcome their failure to allege control person claims. Their allegations of a primary violation under Section 12 are insufficient and time barred. *See* Mot. at 41. But even if they had alleged a primary violation, their allegations of control fall woefully short.

As to control over TMSL, Plaintiffs repeat their inadequate alter ego arguments (*see supra* I)—but no amount of bold and italicized company names establishes control. Plaintiffs have pleaded

---

'a sale has taken place'" even where plaintiff never saw the solicitation. 757 F. Supp. 3d 951, 969 (N.D. Cal. 2024). *Pinter* does not support that understanding. *Pinter* explained that a person successfully solicits when he or she "urge[s] the buyer to purchase" such as "a securities vendor's agent who solicited the purchase" and who therefore "would be thought by the buyer, to be among those 'from' whom the buyer 'purchased'" the security. 486 U.S. at 644. Thus, *Pinter* clearly requires plaintiffs' awareness of a defendant's solicitation to state a Section 12(a)(1) claim based on a solicitation theory.

neither Jump Trading, LLC's nor Jump Crypto Holdings LLC's "authority to exercise decision-making power" over or their "day-to-day involvement in the operation" of TMSL. *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *13 (N.D. Cal. Jan. 17, 2017). Ownership and other facts common among companies in the same corporate group are not sufficient to establish that requisite authority or involvement. Mot. at 41. And Plaintiffs do not explain how Mr. DiSomma's alleged running of *Jump Crypto Holdings LLC* would establish Jump Trading, LLC's control over Jump Crypto Holdings LLC itself, much less *TMSL*. Opp'n at 50. Their remaining allegations mischaracterize the SEC Order and Judge Rakoff's ruling, and thus must be disregarded: the SEC Order does not identify any actions taken by Mr. Kariya or Jump Crypto Holdings LLC and therefore does not find "that TMSL violated the Securities Act for what Defendant Kariya and Jump Crypto did." *Id.* at 49. And, because the identity of specific Jump entities was not at issue in the SDNY Action, Judge Rakoff had no occasion to determine whether any Jump entity controlled another. Thus, contrary to Plaintiffs' suggestion, Judge Rakoff's references to various Jump entities are irrelevant to the control Plaintiffs must allege here. *Id.*

Plaintiffs' shortcomings in their argument of control of TFL are even more glaring. Their boilerplate allegations of control are all "legal conclusions which must be ignored at this stage." *Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1012–13 (N.D. Cal. 2024). That Judge Rakoff found that TFL "relied on the indispensable role played by Jump," Opp'n at 50, says nothing about any Jump Entity's control over TFL, and that Mr. Kariya and Mr. Kwon entered into a supposed "gentleman's agreement," *id*. at 51, actually contradicts Plaintiffs' argument, as control would make such an agreement unnecessary. This Court's opinion in *Wang* is instructive—there the Court held that a director who was employed by a defendant and had to receive that defendant's approval to make decisions was controlled by the defendant, but a director who did not was not under the defendant's control. 744 F. Supp. 3d at 1012–13. Plaintiffs' allegations fall far short of those found sufficient in *Wang*. *See* Mot. at 42–43.

## VIII.    Conclusion

The 4AC fails to state a single viable claim. It should be dismissed with prejudice.

Dated: March 25, 2026

Respectfully submitted,

KOBRE & KIM LLP

/s/ *Jonathan D. Cogan*

Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Igor Margulyan (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Tel.: +1 212 488 1206
Fax: +1 212 488 1231
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
igor.margulyan@kobrekim.com

Daniel Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, California 94111
Tel.: +1 415 582 4751
Fax: +1 415 582 4811
daniel.zaheer@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: +1 202 664 1965
Fax: +1 202 664 1920
erika.berman@kobrekim.com

*Attorneys for Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and Tai Mo Shan Limited*

21