KOBRE & KIM LLP
Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: +1 212 488 1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com

Daniel A. Zaheer (SBN 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: +1 415 582 4751
daniel.zaheer@kobrekim.com

[Additional Counsel on Signature Page]

*Attorneys for Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and Tai Mo Shan Limited*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| NICK PATTERSON, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>JUMP TRADING, LLC, JUMP CRYPTO HOLDINGS LLC, TAI MO SHAN LTD., KANAV KARIYA, AND WILLIAM DISOMMA,<br><br>Defendants. | Case No. 5:22-cv-03600-PCP<br><br>**DEFENDANTS JUMP TRADING, LLC, JUMP CRYPTO HOLDINGS LLC, AND TAI MO SHAN LIMITED'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SEEK PARTIAL RECONSIDERATION OF MOTION TO DISMISS ORDER**<br><br>Dept: Courtroom 8<br>Judge: P. Casey Pitts |

## TABLE OF CONTENTS

I. INTRODUCTION ..... 2

II. THE COURT SHOULD RECONSIDER CERTAIN PARTS OF ITS ORDER DENYING DEFENDANTS' MOTION TO DISMISS ..... 3

A. The Court's Order Did Not Consider Defendants' Legal Arguments for Dismissal of Plaintiffs' Control Person Claim in Count VIII ..... 4

B. The Court Mistakenly Found That Plaintiffs Had Brought Section 12 Claims Against Defendants In Their Prior Pleadings When, In Fact, They Had Not ..... 6

C. The Court Did Not Address Dispositive Legal Arguments and Overlooked Material Facts Regarding Plaintiffs' Alter Ego Claims ..... 8

1. The Court Applied Incorrect Governing Law for Alter Ego Claims ..... 9

2. Plaintiffs Failed To Sufficiently Plead Alter Ego Under Delaware Law or Cayman Law ..... 13

3. The Court Overlooked That, Even Under California Law, Plaintiffs Failed To Plead a Key Element ..... 13

D. Defendants Were Reasonably Diligent in Bringing this Motion ..... 16

III. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Cases**

*Boeing Co. v. KB Yuzhnoye*,
2014 WL 12601330 (C.D. Cal. Feb. 20, 2014) .... 9, 12

*Charles v. Portfolio Recovery Assocs., LLC*,
2024 WL 1672350 (9th Cir. Apr. 18, 2024) .... 12

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) .... 16

*Dennis v. JPMorgan Chase & Co.*,
342 F. Supp. 3d 404 (S.D.N.Y. 2018) .... 10

*Fredenburg v. Cnty. of Santa Clara*, No. C,
2010 WL 11639785 (N.D. Cal. Sept. 24, 2010) .... 5

*Garcia v. City of Napa*,
2014 WL 342085 (N.D. Cal. Jan. 28, 2014) .... 4

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .... 15

*Glob. Gaming Phil., LLC v. Razon*,
2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) .... 11

*Greenlight Sys., LLC v. Breckenfelder*,
2021 WL 2651377 (N.D. Cal. June 28, 2021) .... 10, 12

*Howse v. Chiquita Canyon, LLC*,
757 F. Supp. 3d 1049 (C.D. Cal. 2024) .... 14, 15

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) .... 9

*In re PG&E Corp. Sec. Litig.*,
806 F. Supp. 3d 962 (N.D. Cal. 2025) .... 8

*In re Schwarzkopf*,
626 F.3d 1032 (9th Cir. 2010) .... 9, 12

*In re Stratosphere Corp. Securities Litig.*,
1 F. Supp. 2d 1096 (D. Nev. 1998) .... 5

*Khoros, LLC v. Lenovo (United States), Inc.*,
2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) .... 13, 14, 15

*Leitner v. Sadhana Temple of N.Y., Inc.*, 2014 WL 12588643 (C.D. Cal. Oct. 17, 2014) .......... 11

*Leventhal v. Chegg, Inc.*, No. 21-CV-09953-PCP .......... 4, 16

*MacRae v. HCR Manor Care Servs.*, LLC, 2017 WL 11480091 (C.D. Cal. Sept. 14, 2017) .......... 9, 10, 12

*Matter of Yagman*, 796 F.2d 1165 (9th Cir. 1986) .......... 11

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 2015 WL 1548833 (N.D. Cal. Apr. 7, 2015) .......... 16

*Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900 (N.D. Cal. 2023) .......... 15

*Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911 (N.D. Cal. July 30, 2015) .......... 15

*Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469 (E.D. Cal. 2022) .......... 10

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402 (Del. Ch. 2025) .......... 13

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) .......... 15

*Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255 (9th Cir. 1993) .......... 4

*Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777 (9th Cir. 1991) .......... 9, 12

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 12 F.4th 337 (3d Cir. 2021) .......... 7, 8

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .......... 16

*Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2023 WL 6385609 (N.D. Cal. Sept. 14, 2023) .......... 16

*Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387 (9th Cir. 1993) .......... 12

*United States v. Martin*, 226 F.3d 1042 (9th Cir. 2000) .......... 3

*Wang v. Zymergen Inc.*,
744 F. Supp. 3d 995 (N.D. Cal. 2024) ........................................ 6, 7

*Wehlage v. EmpRes Healthcare Inc.*,
821 F. Supp. 2d 1122 (N.D. Cal. 2011) ........................................ 9, 10, 11

**Statutes**

28 U.S.C. § 1331 ........................................ 9

California Corporations Code § 17708.01 ........................................ 10, 12

**Rules**

Civ. L.R. 7-9(b)(3) ........................................ 4, 5

Civ. L.R. 7-9(d) ........................................ 1

Federal Rule of Civil Procedure 54(b) ........................................ 1, 3

Restatement (Second) of Conflict of Laws, §§ 307, 313 ........................................ 9, 10, 12

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT**, Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and Tai Mo Shan Limited ("TMSL," and together with Jump Trading, LLC and Jump Crypto Holdings LLC, the "Jump Entities" or "Defendants") will move this Court, pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-9, for leave to seek partial reconsideration of this Court's September 2, 2026 Order Granting in Part and Denying in Part Motions to Dismiss (the "Order"). Dkt. No. 222. Pursuant to Civil L.R. 7-9(d), the Jump Entities have not requested or noticed a hearing date for this Motion.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other matters as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Jump Entities should be granted leave to move for partial reconsideration of the Court's Order denying Defendants' motions to dismiss Plaintiffs' Fourth Amended Complaint (the "4AC") because the Court:

1) did not consider the Defendants' dispositive legal argument that Count VIII of the 4AC should be dismissed under Rule 12(b)(6) where Plaintiffs have not sufficiently pled Jump Entities' control over Terraform Labs PTE Ltd. ("TFL");
2) overlooked the material fact that Plaintiffs' earlier pleadings never asserted a Section 12 claim against any of the Jump Entities and, as a result, mistakenly determined that Plaintiffs' Section 12 claim in Count V of the 4AC related back to earlier complaints and thus avoided the statute of repose;
3) applied incorrect choice-of-law analysis to Plaintiffs' claim of alter ego liability and overlooked the material fact that Plaintiffs failed to plead any facts to support a requisite element of that claim.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Jump Entities respectfully request leave to move for partial reconsideration with respect to three discrete aspects of the Court's Order denying in part Defendants' motions to dismiss the 4AC. Dkt. No. 222.

*First*, the Court's Order did not consider the merits of Defendants' arguments that Count VIII of the 4AC—which asserts that the Jump Entities were control persons of TFL under Section 15 of the Securities Act—failed to state a claim. Although the Court addressed the claim's timeliness, it overlooked the Jump Entities' principal argument for its dismissal: that Plaintiffs insufficiently pled Defendants' alleged control over TFL. Notably, in partly dismissing Plaintiffs' claims under Section 10(b) of the Securities Exchange Act, the Court itself observed that "Jump did not have any governing control over [TFL]," as Plaintiffs indeed pled no such control. Order at 8. Accordingly, the Court should reconsider its ruling with respect to Count VIII.

*Second*, the Court should reconsider its decision to uphold Plaintiffs' claim under Section 12 of the Securities Act (Count V) despite agreeing that the 4AC asserted that claim outside the applicable repose period. That ruling warrants reconsideration because the Court already concluded that an "amendment outside the repose period cannot add new legal claims . . . because permitting such a change would abridge the defendant's substantive rights." Order at 35. However, the Court allowed Count V to proceed against the Jump Entities based on the mistaken belief that Plaintiffs previously sued those Defendants under Section 12 before the repose period expired such that the claim could relate back to Plaintiffs' earlier pleadings. But the 4AC is ***the first time*** that Plaintiffs brought a Section 12 claim against any of the Jump Entities. Thus, Count V is brand new as to the Jump Entities and was brought only after the repose period for it had expired. Count V therefore should have been dismissed as untimely based on the Court's reasoning. And if the Court agrees that Count V should be dismissed, it should also dismiss Plaintiffs' Section 15 claim in Count VII because it is a control person claim that is wholly derivative of Plaintiffs' claims in Count V.

*Third*, the Court should revisit its conclusion that Plaintiffs sufficiently pled Defendants' alter ego status under Rule 9(b)'s heightened pleading standard. In its Order, the Court held that California law, as the law of the forum state, supplied the alter ego standard and that Plaintiffs allegations in the 4AC met that standard. But the applicable choice-of-law rules should have led this Court to find that the Jump Entities' state-of-formation law, and not California law, supplies the rule for determining whether Plaintiffs sufficiently pled alter ego liability. And, as the Jump Entities explained in their prior briefing, had the Court applied state-of-formation law, it would have found that Plaintiffs did not sufficiently plead alter ego. *See* Dkt. No. 215 at 2-3. Further, even if California law applied, it was, respectfully, clear error for the Court to conclude that Plaintiffs sufficiently pled alter ego because the Court overlooked the material fact that Plaintiffs pled no facts to support the "fraud or inequity" prong of California's alter ego standard. Indeed, the Court's Order identified no such facts that Plaintiffs pled to satisfy that element. Order at 6. Thus, even applying substantive California alter ego law, that failure should have led the Court to conclude, as the Jump Entities argued, that Plaintiffs engaged in impermissible group pleading in violation of applicable pleading standards, including those required by the PSLRA, and that Plaintiffs' attempt to rely on alter ego did not cure that fatal defect in the 4AC.

## II. THE COURT SHOULD RECONSIDER CERTAIN PARTS OF ITS ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This Court may reconsider its own interlocutory orders before the entry of judgment. Fed. R. Civ. P. 54(b) (providing that an order that resolves fewer than all claims among parties "may be revised at any time before the entry of a judgment"); *see also United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) (recognizing that where parties seek reconsideration of non-final orders, a court has "inherent jurisdiction to modify, alter, or revoke [its order]"). Under Local Rule 7-9, leave to move for reconsideration should be granted where the movant identifies one or more of the grounds for reconsideration listed in Local Rule 7-9(b) and shows "reasonable diligence in bringing the motion." Civ. L.R. 7-9(b).

Granting the Jump Entities leave to seek reconsideration of the Order is warranted here because, for the reasons set out below, the Court appears to have overlooked and not "consider[ed] material facts or dispositive legal arguments which were presented to the Court" before it issued its Order. Civ. L.R. 7-9(b)(3).[1] "Further, a district court has the discretion to reconsider its prior orders" where, as here, it is shown that the court "committed clear error." *Garcia v. City of Napa*, No. C-13-03886 EDL, 2014 WL 342085, at *1 (N.D. Cal. Jan. 28, 2014) (citing *Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). And as the Jump Entities have sought reconsideration a mere 16 days since the Court issued the Order, they have been reasonably diligent in bringing this Motion.

**A. The Court's Order Did Not Consider Defendants' Legal Arguments for Dismissal of Plaintiffs' Control Person Claim in Count VIII**

In Count VIII of the 4AC, Plaintiffs asserted a control person liability claim under Section 15 against the Jump Entities based on TFL's alleged primary violations of Section 5(a) and 5(c) of the Securities Act. Order at 27. In that Count, Plaintiffs alleged in conclusory fashion that "Jump" "participated in and/or controlled TFL," "had the power and influence and exercised the same to cause the unlawful offer and sale of Terra Tokens securities," and "had the power to direct or cause the direction of the management and policies of TFL." 4AC ¶¶ 72, 411–13. Defendants moved to dismiss this claim both based on the statute of repose and because Plaintiffs failed to allege control over TFL. *See* Dkt. No. 208 at 42-44; Dkt. No. 215 at 19-20. The Order addressed the statute of repose, finding that Count VIII is barred by the statute of repose as against Defendants Kariya and DiSomma, but not against the Jump Entities. Order at 35-36. However, the Order did not address Plaintiffs' failure to sufficiently plead the Jump Entities' control over TFL. Reconsideration of that

[1] The limited set of issues on which the Jump Entities seek reconsideration of the Court's Order and the reasons that warrant reconsideration are set out fully in this Motion seeking leave. Accordingly, if the Court grants Defendants leave to seek reconsideration, then in the interest of time and efficiency and consistent with the Court's prior practice in other cases, Defendants respectfully request that the Court treat this submission as the Jump Entities' motion for reconsideration. *See Leventhal v. Chegg, Inc.*, No. 21-CV-09953-PCP, Dkt. No. 158 (Pitts, J.) (granting defendants' motion for leave to file a motion for reconsideration, accepting said filing as notice of motion and motion for reconsideration, and directing plaintiffs to file response to same).

portion of the Order under Civ. L.R. 7-9(b)(3) is warranted. *See, e.g.*, *Fredenburg v. Cnty. of Santa Clara*, No. C 07-04412 JW, 2010 WL 11639785, at *9 (N.D. Cal. Sept. 24, 2010) (granting reconsideration of order that failed to consider certain portions of party's filings).

In seeking dismissal of Count VIII, the Jump Entities argued that the 4AC lacks any allegations of fact from which this Court could reasonably infer that any of the Jump Entities controlled TFL. Dkt. No. 208 at 42-44; Dkt. No. 215 at 19-20. Plaintiffs' principal basis for alleging Defendants' control over TFL rests on allegations that the Jump Entities, as a group, acted "as statutory underwriters" and "as a conduit for the transfer of the securities to the public market." 4AC ¶¶ 408–13. Those allegations are not about control and as the Jump Entities showed, they are simply "not a sufficient basis for 'control person' liability, which requires the exercise of actual power or influence over a company." Dkt. No. 208 at 43 (citing *In re Stratosphere Corp. Securities Litig.*, 1 F. Supp. 2d 1096, 1122 (D. Nev. 1998)). The Court's Order does not address that deficiency in Plaintiffs' pleading of Count VIII. Moreover, the Court itself observed in discussing Plaintiffs' securities fraud claims that "Jump did ***not have any governing control*** over [TFL]." Order at 8 (emphasis added).

Defendants further showed that Plaintiffs' conclusory claims of the Jump Entities' alleged control over TFL were contradicted by Plaintiffs' allegations that the Jump Entities' relationship with TFL was that of counterparties. *See, e.g.*, Dkt. No. 208 at 43 (citing 4AC ¶ 14 ("Jump operated as the 'liquidity provider and general business partner' of TFL and Do Kwon."); ¶ 16 ("the partnership between the Defendants, TFL, and Kwon"); ¶ 53 (alleging "Jump . . . partner[ed] with Terraform and Do Kwon"); ¶ 69 (Kwon announced that TFL "agreed to enter a partnership with Jump Trading"); ¶ 157 ("Kariya connected communications employees at [Jump and TFL] to "coordinate efforts between teams," which a Jump employee characterized as "mutually beneficial synergy")). Indeed, the only plausible inference to draw from Plaintiffs' allegation of Kwon's announcement that "Jump will deploy its own resources to improve liquidity of Terra and Luna" is that Defendants did not control TFL but, to the contrary, were dealing with TFL at arms' length. 4AC ¶¶ 66–69. And as the Jump Entities explained, Plaintiffs' remaining allegations in support of

Count VIII were all boilerplate recitations of the claim elements, which, as this Court previously recognized, are mere "legal conclusions which must be ignored at this stage." Dkt. No. 215 at 20 (citing *Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1012–13 (N.D. Cal. 2024)).

Accordingly, the Court should reconsider its ruling with respect to Count VIII and dismiss that cause of action.

**B. The Court Mistakenly Found That Plaintiffs Had Brought Section 12 Claims Against the Jump Entities In Prior Pleadings When, In Fact, They Had Not**

The Court declined to dismiss Plaintiffs' Section 12 claim against the Jump Entities for TMSL's purported sales of allegedly unregistered securities in Count V, despite finding that the applicable statute of repose had run by the time Plaintiffs raised that claim in the 4AC. Order at 29-30 (finding that the 4AC was filed on October 31, 2025, but that "the statute of repose for Counts V-VII expired in January 2024"). In allowing Plaintiffs' untimely Count V to proceed against the Jump Entities, the Court overlooked the material fact that the 4AC was the ***first*** time that Plaintiffs asserted a Section 12 claim against any of the Jump Entities; instead, the Court mistakenly stated that Plaintiffs had previously sued the Jump Entities for Section 12 violations. Order at 35. In light of that error, the Court should reconsider its decision not to dismiss Count V. As a corollary, should the Court grant reconsideration and find that Count V should be dismissed as untimely, then it should also dismiss Plaintiffs' control person claim in Count VII, which is wholly derivative of Count V. *See* Dkt. No. 208 at 40-41; 4AC ¶¶ 401–07.

The Court correctly found that "[a]n amendment outside the repose period cannot add new legal claims ***or*** parties, because permitting such a change would abridge the defendant's substantive rights."[2] Order at 35 (emphasis added); *see* Dkt. No. 208 at 36-37; Dkt. No. 215 at 16. Yet, the Court went on to find that Plaintiffs' unregistered securities claim could proceed against the Jump Entities because "plaintiffs initially brought their unregistered securities claims against Jump Trading and Jump Crypto before the expiration of the statute of repose . . . ." Order at 35. That is

[2] Indeed, on that basis, the Court dismissed Counts V-VIII against Defendants William DiSomma and Kanav Kariya as untimely. Order at 35-36.

factually incorrect. None of Plaintiffs' prior four pleadings had ever asserted a Section 12 claim against either Jump Trading, LLC or Jump Crypto Holdings LLC. Plaintiffs' original Complaint, the First Amended Complaint, and the Second Amended Complaint asserted Section 12 claims only against former Defendant TFL and its employees, Nicholas Platias and Do Kwon. *See* Dkt. No. 1 at 50 (Second Cause of Action); Dkt. No. 88 at 55 (Third Cause of Action); Dkt. No. 102 at 75-76 (Fourth Cause of Action). Plaintiffs' Third Amended Complaint then dropped Section 12 claims altogether. *See* Dkt. No. 156.

The Court's mistaken belief that Plaintiffs first sued Jump Trading, LLC and Jump Crypto Holdings LLC for alleged Section 12 violations in their "timely-filed second amended complaint" led the Court to the erroneous conclusion that Plaintiffs' "reassertion of those claims in the operative complaint properly relates back to the filing of that complaint" so that "neither the statute of limitations nor the statute of repose bars those claims." Order at 35. But, there was no "reassertion" of Section 12 claims and, hence, there was nothing to which Plaintiffs' untimely Count V could relate back to avoid the statute of repose. *See id.*

Plaintiffs' demonstrated failure to bring a Section 12 claim against the Jump Entities within the relevant 3-year repose period also shows why the Third Circuit's decision in *Orrstown* and this Court's decision in *Wang* do not support the Court's decision to allow Count V to proceed here. *See* Order at 35. Those cases dealt with reassertion of previously dismissed claims that had been timely brought against the applicable defendants, not new assertion of a claim against them for the first time in a pleading filed outside the repose period. *See Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 12 F.4th 337, 344 (3d Cir. 2021) (noting that "through the Third Amended Complaint, [plaintiff] only sought to 'reassert the *same* claims against the *same* parties originally brought by way of the [First Amended Complaint],' which was filed within the repose period." (emphases in original) (citation omitted)); *Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1008 (N.D. Cal. 2024) (holding that previously dismissed Section 15 claims against defendant funds in second amended complaint related back because they were "the *very same claims* [that] were asserted" against those defendant funds "in that prior [timely-filed] complaint" (emphasis added)).

Indeed, *Orrstown* made clear that its holding that amendments may relate back to avoid statutes of repose was limited to cases where, unlike here, the amended pleading "merely add[ed] more factual detail to *existing* claims." 12 F.4th at 345 (alterations in original) (emphasis added). *Orrstown* explained that the amended pleading in that case could relate back despite being outside the repose period because the plaintiff there "[was] not bringing any new legal claims . . . that were not included in the First Amended Complaint." *Id.* at 350 (emphasis added). That critical circumstance is absent here. Unlike in *Orrstown*, here none of Plaintiffs' earlier complaints asserted any Section 12 claims against Jump Trading, LLC, Jump Crypto Holdings LLC, or TMSL. *See supra* at 6-7. Thus, by any measure, when Plaintiffs sued the Jump Entities for Section 12 violations for the first time in the 4AC, they necessarily raised a new claim at a time when the repose period for that previously unasserted claim had expired. This outcome falls squarely within the circumstance that this Court already determined requires dismissal: "[a]n amendment outside the repose period ***cannot add new legal claims*** . . . because permitting such a change would abridge the defendant's substantive rights." Order at 35 (emphasis added).

Accordingly, the Court should revisit its ruling that Plaintiffs' untimely Count V related back to their earlier pleadings. If the Court agrees to reconsider its decision and ultimately concludes that Count V should be dismissed as untimely, then it should also dismiss Count VII in the 4AC. That control person claim rests solely on Count V as the alleged primary violation and, as such, cannot survive independently. 4AC ¶¶ 401–07; *see In re PG&E Corp. Sec. Litig.*, 806 F. Supp. 3d 962, 1014 (N.D. Cal. 2025) ("Without the predicate 'primary violation of federal securities law,' Plaintiffs cannot establish control liability.").

### C. The Court Did Not Address Dispositive Legal Arguments and Overlooked Material Facts Regarding Plaintiffs' Alter Ego Claims

Lastly, in their motion to dismiss briefing, the Jump Entities argued that whether Plaintiffs sufficiently pled their alleged alter ego status should be resolved under the laws of jurisdictions where those companies were formed, i.e., Delaware and the Cayman Islands, consistent with the internal affairs doctrine. Dkt. No. 215 at 2-3. The Jump Entities further argued that Plaintiffs' alter

ego claims were insufficiently pled under those laws. *Id.* Although Plaintiffs never contested (either in briefing or during oral argument) that Delaware and Cayman law applied, the Court disagreed and determined that California law, as the law of the forum state, supplied the standard for alter ego liability and that Plaintiffs' allegations met that standard. Order at 5-6. As explained below, those rulings should be reconsidered.

### 1. The Court Applied Incorrect Governing Law for Alter Ego Claims

As a threshold matter, the Court's decision to apply California law to the alter ego question is inconsistent with applicable choice-of-law rules.[3] As Plaintiffs pled in the 4AC, this Court has original jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiffs brought claims under the federal securities laws. 4AC ¶ 37. That means that "federal common law choice-of-law rules apply." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

In turn, to determine what law governs alter ego analyses, "[f]ederal common law follows the approach of the Restatement (Second) of Conflict of Laws." *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991). Under the Restatement, "'[t]he general rule is that a plaintiff's alter ego theory is governed by the law of the state in which the business at issue is organized.'" *Boeing Co. v. KB Yuzhnoye*, No. CV 13-00730 ABC (AJW), 2014 WL 12601330, at *1 (C.D. Cal. Feb. 20, 2014) (citing Restatement (Second) of Conflict of Laws, § 307); *see also Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1128-29 (N.D. Cal. 2011) (finding alter ego liability is a matter of LLC's internal affairs); *MacRae v. HCR Manor Care Servs.*, LLC, No. SACV140715DOCRNB, 2017 WL 11480091, at *3 (C.D. Cal. Sept. 14, 2017) (recognizing alter ego claims by third parties against LLC implicate its internal affairs); Restatement (Second) of Conflict of Laws, § 313, cmt. e (noting that in "a suit involving the internal affairs of a foreign corporation" a court will ordinarily "apply the local law of the state of incorporation in arriving at

[3] The Court based its decision to apply California law on the Ninth Circuit's opinion in *In re Schwarzkopf*, 626 F.3d 1032 (9th Cir. 2010). Order at 5-6. Plaintiffs' opposition to Defendants' motion to dismiss never addressed the choice of law for their alter ego claims and, thus, did not make any arguments based on *Schwarzkopf*, which was raised for the first time in the Court's Order. Accordingly, this is Defendants' first opportunity to explain why *Schwarzkopf* is inapplicable here. *See infra* at 12-13.

the ultimate decision of the case"). Thus, Plaintiffs' alter ego claims should be governed by the laws of Delaware and the Cayman Islands.

But even if California law were to govern the choice-of-law analysis, the result would be the same. Because Jump Trading, LLC and Jump Crypto Holdings LLC are limited liability companies, section 17708.01 of the California Corporations Code, which governs LLCs, would require application of the law of jurisdictions where they were formed.[4] Indeed, "[f]ederal courts that have addressed this issue have found that [the] language [in § 17708.01] encompasses the determination of an LLC's alter ego liability." *MacRae*, 2017 WL 11480091, at *3; *Wehlage*, 821 F. Supp. 2d at 1128 (holding that under California law "[w]here a statute dictates the choice-of-law, the court need not apply a common law choice-of-law analysis" and that pursuant to California's LLC statute Washington's law determined alter ego liability of Washington LLCs); *Greenlight Sys., LLC v. Breckenfelder*, No. 19-CV-06658-EMC, 2021 WL 2651377, at *17 (N.D. Cal. June 28, 2021) (holding that, under California's statutory law, "Ohio law should apply" to alter ego claims against an Ohio LLC), *aff'd*, No. 21-16245, 2022 WL 17222415 (9th Cir. Nov. 25, 2022); *Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 486 (E.D. Cal. 2022) ("California law provides that to determine whether a limited liability company is liable under the alter ego theory, courts apply the substantive law of the state where the limited liability company is formed.").

As for TMSL, it is a Cayman exempted company and, as such, is akin to a corporation. *See*, *e.g.*, *Dennis v. JPMorgan Chase & Co.*, 342 F. Supp. 3d 404, 409–10 (S.D.N.Y. 2018) (treating Cayman Islands exempted company as a corporation); *see also* 4AC ¶ 34 (pleading TMSL is "a Cayman Islands corporation"). "Because no statute governs the choice of law for the alter ego

---

[4] California Corporations Code section 17708.01 provides, in relevant part, as follows:

> (a) The law of the state or other jurisdiction under which a foreign limited liability company is formed governs all of the following:
>
> > (1) The organization of the limited liability company, its internal affairs, and the authority of its members and managers.
> >
> > (2) The liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of the limited liability company. . . . Cal. Corp. Code § 17708.01.

liability of corporations . . . California's governmental interests test determines which State's law applies" to alter ego liability claims against a foreign corporation. *Wehlage*, 821 F. Supp. 2d at 1129; *see Matter of Yagman*, 796 F.2d 1165, 1170 (9th Cir. 1986) ("California uses a 'governmental interest' approach to the choice of laws."). Under that three-part test, a court determines: (1) whether the relevant laws in potentially affected jurisdictions differ; (2) if there is a difference, whether both jurisdictions have legitimate but conflicting interests in applying their own laws such that there is a true conflict; and (3) if there is a true conflict, which jurisdiction's interest would be more impaired if its law were not applied. *Wehlage*, 821 F. Supp. 2d at 1129. Under that test, Cayman Islands law, not California law, would apply.

As to the first prong, the standards for alter ego liability under Cayman Islands law and California law are different. This Court recognized that establishing alter ego liability under California requires a showing (1) such unity of ownership and interest among companies such that their separate personalities no longer exist, and (2) that inequity would result from recognizing their separate status. Order at 6. By contrast, as Defendants argued, Cayman law is more stringent as it prohibits veil piercing absent a showing that a company has been used as a device for an illegal or improper purpose of evading or frustrating an existing legal obligation or liability to the plaintiff or another party. Dkt. No. 215 at 2-3 (citing *Glob. Gaming Phil., LLC v. Razon*, 2022 WL 836716, at *7 (S.D.N.Y. Mar. 21, 2022)). As for the second and third prongs, they weigh heavily in favor of applying Cayman law to determine if TMSL's corporate form may be disregarded. Courts in this Circuit find that, when addressing alter ego liability, "the law of the state of incorporation should be applied, because that state has a 'substantial interest in determining whether to pierce the corporate veil of one of its corporations,'" and that "[w]hatever interest California has in regulating the conduct of foreign businesses is insubstantial by comparison." *Leitner v. Sadhana Temple of N.Y., Inc.*, No. CV 13-07902 MMM (EX), 2014 WL 12588643, at *16 (C.D. Cal. Oct. 17, 2014) (collecting cases). Indeed, to find otherwise "could impose conflicting demands on corporations" by subjecting matters concerning their internal affairs to different laws simply based on where those companies are sued. *MacRae*, 2017 WL 11480091, at *3.

Given the above, it is respectfully submitted that the Court's reliance on the Ninth Circuit's decision in *In re Schwarzkopf*, 626 F.3d 1032 (9th Cir. 2010) was erroneous. Order at 5-6. There is no indication *Schwarzkopf* intended to overturn this Circuit's precedent that in federal law cases, like this one, federal choice-of-law rules govern. And as noted above, those federal rules adopt the Restatement (Second) of Conflict of Laws and thus incorporate the internal affairs doctrine. *See Charles v. Portfolio Recovery Assocs., LLC*, No. 22-35613, 2024 WL 1672350, at *1 (9th Cir. Apr. 18, 2024) (citing *Schoenberg*, 930 F.2d at 782); *Boeing*, 2014 WL 12601330, at *1. Second, even if California's choice-of-law rules applied, *Schwarzkopf* did not displace California's choice-of-law principles, discussed above, for deciding the governing law of alter ego claims against LLCs and corporations. *Schwarzkopf* dealt with the specific question of whether a trust settled by a bankrupt debtor was that debtor's alter ego. *Schwarzkopf*, 626 F.3d at 1035. Thus, *Schwarzkopf* did not concern LLCs, and therefore it did not purport to resolve whether the law of the forum governs alter ego liability of LLCs like Jump Trading, LLC and Jump Crypto Holdings LLC in contravention of California's LLC statute stating otherwise. *See, e.g.*, *Greenlight Sys., LLC*, 2021 WL 2651377, at *17 (acknowledging *Schwarzkopf*, but still holding that Ohio law governed alter ego liability against an Ohio LLC "because of California Corporations Code section 17708.01").

In addition, *Schwarzkopf* did not displace California's established governmental interest test, discussed above, for deciding the governing law for alter ego liability of corporations. In stating that "we apply the law of the forum state," all *Schwarzkopf* did was adopt, without any analysis, a statement from *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387 (9th Cir. 1993). But that earlier case did not address the question at issue here—which jurisdiction's law supplies the standard for alter ego liability—because in that case the issue was undisputed. *Towe Antique*, 999 F.2d at 1391 ("The parties do not dispute that Montana law is applicable[.]"). Thus, as one court in this District aptly found, *Schwarzkopf*'s recitation of *Towe Antique*'s pronouncement did not set a blanket rule "that there is no need to perform a choice-of-law analysis" for alter ego liability and that the forum state's law always prevails because *Towe Antique* did not make the statement "in the

context of the potential application of the laws of multiple states." *Khoros, LLC v. Lenovo (United States), Inc.*, No. 3:20-CV-03399-WHO, 2020 WL 12655516, at *14 n.11 (N.D. Cal. Oct. 5, 2020).

**2. Plaintiffs Failed To Sufficiently Plead Alter Ego Under Delaware Law or Cayman Law**

As Defendants' motion to dismiss showed, Plaintiffs' alter ego allegations are insufficient under Delaware law, which allows corporate veil-piercing only when the entity "exist[s] for no other purpose than as a vehicle for fraud" and plaintiff further pleads "an overall element of injustice or unfairness," Dkt. No. 215 at 2 (citing *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416–17 & n.86 (Del. Ch. 2025)), and under Cayman law, which requires Plaintiffs to plead facts that Defendants formed TMSL as a mere façade to evade some legal obligations to plaintiffs or other parties. Dkt. No. 215 at 2. Here, the 4AC simply makes no allegations that any injustice or unfairness would result from recognizing the Jump Entities' corporate separateness, let alone pleads facts that any of them were formed for no other purpose than as a vehicle for fraud, to defraud Plaintiffs specifically, or to evade some preexisting obligations. Dkt. No. 215 at 2. In stark contrast to the complete absence of such allegations, Plaintiffs do allege that the Jump Entities comprise "one of the largest private trading firms in the world, focusing on algorithmic and high-frequency trading strategies" and "engage[] in algorithmic trading of a variety of asset classes, including both traditional and digital assets." 4AC ¶¶ 43-44. Those admissions by Plaintiffs that the Jump Entities form part of a legitimate longstanding operating business preclude any reasonable inference that any of those companies were formed for a fraudulent purpose such that ignoring their separate corporate form would be permissible either under Delaware law or Cayman law.

**3. The Court Overlooked That, Even Under California Law, Plaintiffs Failed To Plead a Key Element**

Even if California law governed the alter ego analysis here, Plaintiffs' deficient allegations still fail to plausibly plead alter ego. Order at 6. The Court recognized that, to plead alter ego under California law, Plaintiffs were required to allege with particularity under Rule 9(b): (1) such unity of interest and ownership that the separate personalities of the corporations no longer exist and (2)

"that, if the acts are treated as those of the corporation alone, an inequitable result will follow." Order at 6. In holding that Plaintiffs sufficiently pled alter ego, the Court overlooked that Plaintiffs made no allegations to support the second element of California's alter ego standard.

Plaintiffs were required to plead "specific facts supporting *both* of the elements of alter ego liability to state a claim under this theory." *Howse v. Chiquita Canyon, LLC*, 757 F. Supp. 3d 1049, 1075 (C.D. Cal. 2024) (emphasis in original) (internal quotation marks and citations omitted). Pleading the second element of California's alter ego standard requires specific allegations that would "support the inference that . . . Defendants have abused the corporate privilege such that a fraud or inequity will result." *Id.* To plead such "fraud or inequity," Plaintiffs had to allege that Defendants "were formed or exist to carry out fraud or similarly inequitable activities." *Khoros*, 2020 WL 12655516, at *15. And to plead that element properly, it is not enough to point to Defendants' alleged misconduct giving rise to Plaintiffs' substantive claims. Rather, Plaintiffs needed to plausibly allege "[t]hat *the corporate form itself* enables fraud or sufficiently unjust activity." *Id.* at *16 (emphasis added). That, in turn, typically requires specific allegations that a "corporation is undercapitalized, that the corporations have disregarded formalities, or that funds were used by any corporation for an improper purpose." *Howse*, 757 F. Supp. 3d at 1075. Indeed, the Court itself recognized that, to plead alter ego, Plaintiffs had to allege "unity of interest" ***and*** "undercapitalization of the corporate entity." Order at 6.

Here, the 4AC is devoid of any allegations, let alone plausible ones, that any of the Jump Entities was undercapitalized. Notably, in listing the allegations that, in the Court's view, supported Plaintiffs' alter ego theory, the Order did not identify a single one that pled undercapitalization or anything else that went to the second prong of the alter ego claim. Order at 6. To the contrary, Plaintiffs pled that Defendants earned profits of "over $1 billion" from the trading activities at issue in this case and that TMSL had the financial wherewithal to settle with the SEC for a significant dollar amount. 4AC ¶¶ 27, 190, 271. Those allegations undermine any notion of undercapitalization. The Court therefore should have concluded that, even under California law, Plaintiffs insufficiently pled alter ego. *See*, *e.g.*, *Howse*, 757 F. Supp. 3d at 1075 (dismissing alter

ego allegations where plaintiffs "failed to allege any facts in support of the second element—that adhering to separate identities would 'sanction a fraud or promote injustice'"); *Khoros*, 2020 WL 12655516, at *16 (dismissing alter ego claim where plaintiff "has not alleged any facts that, if true, would demonstrate that [defendant] existed separately from the other entities to perpetrate fraud or similarly unjust activities"); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1045–46 (C.D. Cal. 2015) (alter ego liability insufficiently pled where plaintiff alleged that "inequitable result will follow" from recognizing defendants' separate forms but pled "no facts that support these conclusions").

And although the Court concluded that Plaintiffs sufficiently pled the "unity of interest" element of alter ego, Defendants respectfully request that the Court revisit that finding as well. "The 'unity of interest and ownership' prong . . . requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks and citations omitted). In this case, the Court found that Plaintiffs sufficiently pled "unity of interest" based not on any allegations of pervasive control but on allegations of shared ownership, office space, and email domains. Order at 6. Such allegations, however, "are not atypical of a normal corporate relationship and, standing alone, are insufficient to establish the requisite unity of interest." *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 912 (N.D. Cal. 2023); *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-CV-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (finding allegations of defendants' sharing "facilities, finances, website, email address, phone number, employees, and customers" are "not enough to establish a unity of interest or even suggest the existence of a sham corporate veil").

Indeed, the Ninth Circuit expressly recognized that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control" for alter ego liability. *Ranza*, 793 F.3d at 1073. In fact, that is precisely how most corporate groups operate, so something more must be required to allege alter ego liability. Similarly, Plaintiffs' allegation that Jump Crypto negotiated loans ultimately granted to TMSL does not suffice. Order at 6. At best, it

shows one company's involvement "in discrete business decisions" of another, which "is legally insufficient to satisfy the unity of interest prong of the alter ego test." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016).

If the Court ultimately agrees that Plaintiffs insufficiently pled their alter ego theory, the appropriate course would be to dismiss the 4AC against the Jump Entities. Dkt. No. 208 at 8. As the Jump Entities argued, Dkt. No. 208 at 8, applicable pleading standards do not permit Plaintiffs to "merely lump multiple defendants together but 'require[] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Plaintiffs failed to do that here.[5] And their failure to properly plead that TMSL is an alter ego of the other Jump Entities provides an independent basis for dismissing Counts V and VII against TMSL as untimely. The Court permitted those claims to proceed against TMSL despite finding they fell outside the repose period by concluding that, as an alleged alter ego of the other Defendants, TMSL was not a truly new party here. Order at 35.

### D. Defendants Were Reasonably Diligent In Bringing This Motion

The Jump Entities brought this Motion for leave to seek reconsideration within 16 days from the date of the Order and therefore acted with reasonable diligence. Local Rule 7-9 "imposes no time limits on filing" motions for leave to seek reconsideration, *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 2015 WL 1548833, at *5 n.9 (N.D. Cal. Apr. 7, 2015), and courts in this District have found that taking up to four weeks to seek leave to move for reconsideration is reasonably diligent. *See, e.g., Synopsys, Inc. v. Siemens Indus. Software Inc.*, No. 20-CV-04151-WHO, 2023 WL 6385609, at *3 (N.D. Cal. Sept. 14, 2023). And in *Leventhal*, this Court granted a motion for leave to seek reconsideration filed seven weeks after issuing its order denying a motion to dismiss. *Leventhal v. Chegg, Inc.*, No. 21-CV-09953-PCP, Dkt. Nos. 150, 155, 158 (Pitts, J.).

---

[5] If the Court dismisses the 4AC against the Jump Entities, it should also dismiss Count IV as to Messrs. DiSomma and Kariya because that count is a control person claim, which cannot stand if the underlying securities fraud claims on which it is based are dismissed. Because Count IV is the lone surviving claim as to Mr. DiSomma, see Order at 36, the 4AC would be entirely dismissed as to Mr. DiSomma as well.

## III. CONCLUSION

For the foregoing reasons, the Jump Entities respectfully request that the Court (i) grant their Motion for Leave to Seek Reconsideration based on the grounds set forth above and (ii) if such relief is granted, treat this submission as the Jump Entities' motion for reconsideration.

Dated: September 18, 2026

Respectfully Submitted,

KOBRE & KIM LLP

/s/ *Jonathan D. Cogan*

Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Igor Margulyan (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Tel.: +1 212 488 1206
Fax: +1 212 488 1231
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
igor.margulyan@kobrekim.com

Daniel Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, California 94111
Tel.: +1 415 582 4751
Fax: +1 415 582 4811
daniel.zaheer@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: +1 202 664 1965
Fax: +1 202 664 1920
erika.berman@kobrekim.com

*Attorneys for Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and Tai Mo Shan Limited*